**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

MDL No. 01-1396 (JRT/FLN)

IN RE: ST. JUDE MEDICAL, INC. SILZONE HEART VALVES PRODUCTS LIABILITY LITIGATION

**MEMORANDUM OPINION AND ORDER ON MOTION FOR CLASS AND SUBCLASS CERTIFICATION**

---

J. Gordon Rudd, Jr. and Charles S. Zimmerman, ZIMMERMAN REED, P.L.L.P., 651 Nicollet Mall, Suite 501, Minneapolis, MN 55402; Steven E. Angstreich, Michael Coren, and Carolyn Lindheim, LEVY, ANGSTREICH, FINNEY, BALDANTE, RUBENSTEIN & COREN, P.C., Woodcrest Pavilion, Suite 100, 10 Melrose Avenue, Cherry Hill, NJ 08003; James T. Capretz, CAPRETZ & ASSOC., 5000 Birch Street, Suite 2500, West Tower, Newport Beach, CA 92660; Joe D. Jacobson, GREEN, SCHAAF & JACOBSON, P.C., 7733 Forsyth, Suite 700, St. Louis, MO 63105; and Patrick Murphy, BOCHANIS AND MURPHY LEGAL ASSOCIATES, 1701 West Charleston Boulevard, Suite 550, Las Vegas, NV 89102, for plaintiffs.

Tracy J. Van Steenburgh, HALLELAND, LEWIS, NILAN, SIPKINS & JOHNSON, 600 Pillsbury Center South, 220 South Sixth Street, Minneapolis, MN 55402; James C. Martin and David E. Stanley, REED SMITH CROSBY HEAFEY LLP, 355 South Grand Avenue, Suite 2900, Los Angeles, CA 90071; Steven M. Kohn, REED SMITH CROSBY HEAFEY LLP, 1999 Harrison Street, Oakland, CA 94612, for defendant.

On April 18, 2001, the cases comprising this multidistrict litigation were transferred to this Court by the Judicial Panel on Multidistrict Litigation for consolidated pretrial proceedings under 28 U.S.C. § 1407. The plaintiffs moved for class certification, and on March 27, 2003, the Court issued an Opinion and Order ("March 27 Order")

FILED JAN 0 5 2004
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ____
DEPUTY CLERK ____

conditionally certifying two classes (Class I, the monitoring class, and Class II, the injury class) pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Court anticipated creating subclasses to address any substantial differences in state law and requested additional briefing on potential subclasses.

The parties briefed the state law differences, and the Court heard extensive oral argument regarding those differences. For the reasons discussed below, the Court finds that of the previously conditionally certified classes only the medical monitoring class will continue to be conditionally certified. The previously certified class based on the Minnesota Consumer Fraud laws will remain certified.[1] No additional subclasses will be certified.

## BACKGROUND

The circumstances giving rise to this litigation have been repeatedly recited by this Court, and the Court incorporates those discussions by reference. In short,[2] defendant manufactured an artificial heart valve called the "Silzone" valve. The Silzone valve was approved by the Food and Drug Administration (FDA) and implanted into over 10,000 individuals in the United States. The valve was voluntarily recalled after its safety and efficacy were called into question. Individuals who allege they have been harmed by the Silzone valve, or individuals who have the valve though currently have no symptoms,

[1] The Court invites discussion of the propriety of such a limited class at the next status conference.

[2] This summary is intended only to aid those unfamiliar with this litigation and should in no way be construed as findings of the Court.

began bringing lawsuits against St. Jude Medical. Approximately two years ago, these cases were consolidated in this Court pursuant to 28 U.S.C. § 1407.

Plaintiffs brought a motion in this Court seeking certification of two classes. Class I, the monitoring class, was to include every patient in the United States who still has a Silzone valve implanted. Class I sought injunctive relief, in the form of medical monitoring. Class II, the injury class, was to consist of all people in the United States who received a Silzone valve and who have sustained physical injuries due to the valve, including but not limited to injuries requiring explantation surgery and injuries resulting in death. Class I sought injunctive relief only, while Class II sought money damages.

In the March 27 Order, the Court found that both proposed classes met the threshold requirements of Rule 23(a), that common issues of law and fact predominated, and that a class action was likely the superior way to adjudicate the claims. Therefore, the Court conditionally certified plaintiffs' common law claims for both Class I and Class II pursuant to Rule 23(b)(3) and (c)(4). The Court also conditionally certified the medical monitoring claims of the Class I plaintiffs, pursuant to Rule 23(b)(2). Finally, the Court determined that common issues of law and fact predominated in plaintiffs' claims under Minnesota's consumer protection and deceptive trade practices acts and that a class action was the superior method of adjudicating those claims. The Court unconditionally certified plaintiffs' claims under those statutes pursuant to Rule 23(b)(3).

As to the conditionally certified classes, the Court requested briefing from the parties on what minimum number and type of subclasses would be appropriate for plaintiffs' negligence, strict liability, breach of warranty, and medical monitoring claims.

The parties completed such briefing, and the Court heard extensive argument on the issue on October 14, 2003.

## ANALYSIS

### I. RULE 23

The Court assumes a familiarity with the requirements of class certification and only briefly reviews those requirements. Federal Rule of Civil Procedure 23 sets forth the requirements for class action certification. For a class to qualify for certification, each of the requirements of Rule 23(a) must be satisfied. Rule 23(a) requires the proponents of certification to establish each of the following: (1) that the members of the proposed class are so numerous that joinder of the individual claims would be impracticable; (2) that there is commonality among issues of law or fact raised by the class members; (3) that the claims of the proposed class representatives are typical of the claims of the class members; and (4) that the proposed class representatives will adequately represent the interests of the class.

If all requirements of 23(a) are satisfied, the class proponents must also satisfy one of the three requirements of 23(b). Rule 23(b) identifies three different types of class actions, and the proposed class must fit into one of those three "types." The first type of class, as set out by (b)(1), provides for class certification in cases where the prosecution of separate actions would create a risk of either inconsistent judgments that would establish incompatible standards of conduct for the party opposing the class, or adjudications that may substantially impair or prejudice the claims of parties not involved in the action. Section (b)(2) allows for class certification where the party opposing the

class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Finally, Section (b)(3) provides for class certification in cases where the issues of law or fact common among the class members "predominate" over issues affecting individual members of the class, and class action treatment is superior to other methods of adjudication. In this case, the Court determined that sections (b)(2) and (b)(3) were applicable.

## II. CONTINUING DUTY

Even after a class is certified, the Court faces a continuing duty to ensure that the requirements of Rule 23 remain satisfied. "The decision to certify a class is not set in stone; the trial court retains the power to decertify or modify the class at any time prior to final judgment." *Sollenbarger v. Mountain States Telephone & Telegraph Co.*, 121 F.R.D. 417, 422 (D.N.M. 1988) (citing Fed. R. Civ. P. 23(c)(1) ("An order under this subdivision ... may be altered or amended before the decision on the merits.")). Further, where, as here, subclasses are contemplated, each subclass must meet the class action requirements before the subclass properly may be certified. *Retired Chicago Police Ass'n v. Chicago*, 7 F.3d 584, 599 (7th Cir. 1993).

## III. PERSONAL INJURY CLASS

A critical factor in the decision to maintain certification is a determination of how state law variations would affect the appropriateness of class treatment. *See, e.g., In re American Medical Systems Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) (noting that "[t]he

district judge also failed to consider how the law of negligence differs from jurisdiction to jurisdiction, a consideration dictated by *Erie R.R. v. Tompkins*, 304 U.S. 64, 78-80 (1938) (federal court sitting in diversity must apply common law of the state in which case would normally be tried rather than a general federal common law)"); *Castano v. American Tobacco Co.*, 84 F.3d 734, 740-41 (5th Cir. 1996) (reversing class certification where district court failed to consider how variation in state law affect predominance and superiority).

To demonstrate that a class action is superior to other forms of litigation in the context of diversity based actions, plaintiffs must show that such an action is manageable in light of state law variations. *Castano,* 84 F.3d at 741. "[W]hen a request for class certification encounters differing state laws, the burden is on the party seeking certification to 'creditably demonstrate, through an extensive analysis of state law variances, that class certification does not present insuperable obstacles.'" *Duncan v. Northwest Airlines, Inc.*, 203 F.R.D. 601, 613-14 (W.D. Wash. 2001) (quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) (citing *Adams v. Kansas City Life Ins. Co.,* 192 F.R.D. 274, 278 (W.D. Mo. 2000) (finding that plaintiff did not meet burden despite submitting a series of tables showing that the elements of plaintiff's tort claims are similar in every state). For that reason, the Court requested briefing from the parties on significant variations among the states' laws, for each of plaintiffs' claims.

After careful consideration of the parties' thorough analyses of the variations in state law, and the Court's own investigation into those variations, the Court concludes that certification of the injury class is inappropriate. *See, e.g., In re Hotel Tel. Charges,*

500 F.2d 86, 90 (9th Cir. 1974) ("The purpose of conditional certification is to preserve the Court's power to revoke certification in those cases wherein the magnitude or complexity of the litigation may eventually reveal problems not theretofore apparent."). Given the significant differences in state law and the number of plaintiffs' claims, combined with potential individual differences among the plaintiffs, the Court can no longer find that a class action would be the superior method of adjudication of these disputes.

It is possible that the continuing certification would be appropriate, and manageable, if plaintiffs were pursing only one claim.[3] However, plaintiffs state six liability theories. Each of those six theories will require at least two subclasses (resulting in twelve subclasses). Perhaps twelve subclasses could be manageable, however, the difficulty does not stop there. The Court is persuaded that no two states' law is substantially alike when the Court considers all of plaintiffs' substantive claims, therefore the Court faces the proposition of managing upwards of 25 subclasses. Despite plaintiffs' conviction that the subclasses might be managed with special interrogatories and verdict forms, the Court simply cannot fathom a workable trial plan, given the sheer number of subclasses.

For example, plaintiffs represent that Minnesota and North Dakota apply substantially the same law of strict product liability as it applies to claims of failure to

---

[3] Even if plaintiffs pursued only the negligence claim, certification of a nationwide class applying the law of fifty states is not an uncontroversial proposition. *See Matter of Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1301 (7th Cir. 1995) (ordering decertification of nationwide class because of the variation in negligence law among the States: "The voices of the quasi-sovereigns that are the [S]tates of the United States sing negligence with a different pitch.").

warn. (Plfs.' Br. in Sup. of Proposed Subclasses and App. at Ex. C.) However, plaintiffs represent that Minnesota and North Dakota do not apply the same principles of design defect. (*Id.* at 10, figure 3.) As a result, despite the obvious similarities, Minnesota plaintiffs cannot fairly be grouped with North Dakota plaintiffs.[4]

After fully considering the variations in all the states' laws, it is relatively clear that no two states apply substantially the same law to all of the plaintiffs' claims. Although the Court is not convinced that it is *per se* impossible to certify and successfully try a class action involving the laws of 50 states, the Court does find that given the magnitude of the variations in these particular claims, the class action is not the superior method of adjudication in this dispute. *See* March 27 Order at 21 (citing cases in which courts have held that the application of all 50 states laws renders class action unmanageable).

## IV. MEDICAL MONITORING CLAIMS OF CLASS I

In their medical monitoring claims, plaintiffs seek to recover the quantifiable costs of periodic, future medical examinations intended to detect the onset of injuries stemming from the allegedly defective Silzone valve. The monitoring class seeks equitable relief in the form of a medical monitoring program that would watch for side effects associated with defective heart valves. This would include an epidemiological program to collect

[4] It appears that the plaintiffs envision fluid subclasses, with individual plaintiffs floating from one subclass to another, for each claim. Although the Court finds this theory intriguing, it runs afoul of the requirement that subclasses be clearly defined and renders a workable trial plan nearly impossible.

data and study the effects of the Silzone valves. As envisioned by plaintiffs, this monitoring program would be paid for by a trust account funded by St. Jude.

Unlike the personal injury class, the Court will continue to attempt to manage the monitoring class as a class action. The Court makes this distinction because the monitoring claims, unlike personal injury claims, are typically smaller value claims and are closer to the "negative value" lawsuits that class actions were intended to encompass.[5] The Court notes that some courts have been reluctant to certify medical monitoring classes in cases involving exposure to environmental toxins, and in some cases, in disputes regarding prescription or over-the-counter drugs. The rationale for such hesitancy however is not applicable here. Unlike claims involving uncertain levels of exposure and an uncertain number of potential individuals exposed, the medical monitoring class here is certain and discrete. In addition, in contrast to cases involving environmental toxins, the Court will not face issues of length or amount of exposure. Finally, because the Court defines the class narrowly to include only asymptomatic individuals, this case does not present issues of causation.

The Court therefore continues the conditional certification of the medical monitoring class pursuant to Rules 23(b)(2) and (c)(4). Rule 23(b)(2) provides for certification of an action seeking declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds generally applicable to the class,

---

[5] *See, e.g,* John C. Coffee, Jr., *Class Wars: The Dilemma of the Mass Tort Class Action*, 95 Colum. L. Rev. 1344, 1350 (1995) (describing traditional role of class action in mass tort as "a vehicle by which small claimants can aggregate their claims in order to make litigation economically feasible"). *See also* Def.'s Br. in opp'n to subclasses at 3 (noting that the drafters of Rule 23 contemplated representative plaintiffs vindicating small claims).

thereby making appropriate final injunctive relief . . . with respect to the class as a whole."[6] The Court found Rule 23(b)(2) appropriate because plaintiffs are requesting medical monitoring via a court-supervised medical monitoring program, which is appropriate injunctive relief as contemplated by Rule 23(b)(2). *See* March 27 Order at 23-29. The Court also determined that the medical monitoring class was adequately cohesive, noting that the medical monitoring action is primarily injunctive in nature, and concluding "because individual questions of monetary relief will not arise for Class I, its cohesiveness is not impaired." *See* March 27 Order at 30-35. The Court declined to certify the medical monitoring class pursuant to Rule 23(b)(1)(A). *Id.* at 35-36.

In so certifying the medical monitoring class, the Court rejected plaintiffs' contention that Minnesota law should apply to all the medical monitoring claims. March 27 Order at 32. The Court recognized that it must predict how each state would address medical monitoring claims and "envision[ed] that Class I will be broken down into at least two sub-groups of plaintiffs: those who are asymptomatic but who may have some injury that is presently unknown, and those who have some known injury (that has not yet required explanation) but who have not filed a personal injury claim." March 27 Order at 35 n.19. The Court also recognized that a "consequence of this sub-classing is that class members who are asymptomatic and whose claims arise in jurisdictions that require injury for a tort action to proceed will have to be excluded from the class entirely." *Id.* (citing *In re Diet Drugs Prod. Liability Lit.*, Civ. No. A-98-20626, 1999 WL 673066 at *16 (E.D. Pa. Aug. 26, 1999)).

---

[6] Unlike Rule 23(b)(3), Rule 23(b)(2) has no requirement of superiority or predominance.

Although Rule 23(b)(2) has no predominance or superiority requirements, the rule does include "an implicit 'cohesiveness' requirement, which precludes certification when individual issues abound." *Thompson*, 189 F.R.D. at 557. *See Barnes v. American Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998); *In re Rezulin Prod. Liability Lit.*, 210 F.R.D. 61, 75 (S.D.N.Y. 2002); *Diet Drugs*, 1999 WL 673066 at *14 (noting that Rule 23(b)(2) requires that "the class be entitled to the same relief"). *But see* Daniel L. Martens and Ernest J. Getto, *Medical Monitoring & Class Actions*, 17-SPG Nat. Resources & Env't 225, 273-74 (2003) (noting that not all courts have read Rule 23(b)(2) to have this "cohesiveness" requirement, but the trend since *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) has been to recognize the cohesiveness requirement).

After reviewing the law on medical monitoring claims, the Court is not convinced that the differences in state laws, of those states recognizing medical monitoring as a stand-alone claim, fatally undermine the medical monitoring class. As a Court in this District recently noted, "[o]f the states that do recognize medical monitoring as an independent cause of action, the elements of such a claim appear to be the same." *In re Baycol Prod. Lit.*, ___ F.R.D. ___, 2003 WL 22160426 at *13 (D. Minn. Sept. 17, 2003).[7] *See also In re Telectronics Pacing Systems, Inc.*, 172 F.R.D. 271, 287 (S.D. Ohio 1997) (certifying medical monitoring class and noting that only relevant variation in state law is whether injury is required). Consistent with these opinions, the Court will

[7] The Court in *Baycol* declined to certify the medical monitoring class. The Court noted that the class representatives were inadequate because they had already received the requested testing and monitoring. The proposed representatives were also inadequate because they had suffered injury, and the Court was not convinced that the injured representatives would adequately represent the interests of the uninjured class members.

conditionally certify the medical monitoring class as follows: those plaintiffs whose valves were implanted in states that recognize a stand-alone cause of action for medical monitoring, absent proof of injury.[8]

The Court turns next to an analysis of the state of medical monitoring law in the various jurisdictions.

### A. States that have not spoken on medical monitoring

Plaintiffs urge the Court to apply Minnesota law to members of the class whose valves were implanted in states that have not addressed medical monitoring claims. Plaintiffs argue that as a matter of choice of law principles, the law of undecided states is not "in conflict" with Minnesota law, and therefore application of Minnesota law is not unconstitutional. *Phillips Petroleum v. Shutts*, 472 U.S. 797, 823 (1985) (Stevens, J. concurring) (noting that "there can be no constitutional injury in applying Kansas law if it is not in conflict with that of any other jurisdictions connected to this suit. . . . [T]he Kansas court has examined the law of connected jurisdictions and has correctly concluded that there is no 'direct' or 'substantive' conflict between the law applied by Kansas and the laws of those other States. . . . Kansas has merely developed general

---

[8] By so defining the class, the Court excludes individuals who have injuries. The Court is not satisfied that a sub-class of individuals who are injured satisfies the cohesiveness requirement of the Rule. In addition, those plaintiffs with injuries are more likely to pursue their claims as those claims are less likely to be "negative value" claims.

Theoretically, a class member might be precluded from a later lawsuit should injury occur. *See, e.g.*, Kara L. McCall, Comment, *Medical Monitoring Plaintiffs and Subsequent Claims for Disease*, 66 U. Chi. L. Rev. 969 (1999). The contours of the preclusive effect of medical monitoring litigation on future claims was not addressed by either party. The Court expresses no opinion on the potential preclusive effects, but the parties should be prepared to address this issue at the next status conference.

common-law principles to accommodate the novel facts of this litigation--other state courts either agree . . . or have not yet addressed precisely similar claims.").

The Court continues to reject this argument, and instead will undertake the task of determining the state medical monitoring law in each jurisdiction.[9] The Court recognizes, as defendant emphatically argues, that medical monitoring law is not a well-established cause of action. As noted above, those states that have allowed claims for medical monitoring have established similar elements. Nonetheless, heeding the warning voiced by the Eighth Circuit in *Trimble v. Asarco, Inc.*, 232 F.3d 946, 963 (8th Cir. 2000), the Court will not include plaintiffs in states in which neither a court nor the legislature has embraced stand alone medical monitoring claims, without proof of injury. Addressing a similar situation, the Eighth Circuit in *Trimble* remarked that, absent recognition of medical monitoring claims by the Nebraska courts, "it would be both imprudent and improper for us to allow plaintiffs to pursue their medical monitoring claim." *Id.* (citing *Tucker v. Paxson Mach. Co.*, 645 F.2d 620 (8th Cir. 1981) (in diversity case under Missouri law, rejecting plaintiff's argument for adoption in federal court of expanded strict products liability doctrine under state law, on ground that the trend was not well established); *Birchler v. Gehl Co.*, 88 F.3d 518, 521 (7th Cir. 1996) ("When we are faced with opposing plausible interpretations of state law, we generally choose the narrower interpretation which restricts liability, rather than the more expansive

[9] The task is made somewhat easier by plaintiffs' briefing on the issue, as well as by extensive commentary in legal periodicals regarding the claim. *See, e.g.,* Daniel L. Martens and Ernest J. Getto, *Medical Monitoring & Class Actions*, 17-SPG Nat. Resources & Env't 225 (2003); Kenneth S. Abraham, *Liability for Medical Monitoring & the Problem of Limits*, 88 Vir. L. Rev. 1975 (2002); Note, Pankaj Venugopal, *The Class Certification of Medical Monitoring Claims*, 102 Colum. L. Rev. 1659 (2002).

interpretation which creates substantially more liability."); *Pearson v. John Hancock Mut. Life Ins. Co.*, 979 F.2d 254, 259 (1st Cir. 1992) (plaintiffs who chose federal forum "cannot justifiably complain if the federal court manifests great caution in blazing new state-law trails"); *Villegas v. Princeton Farms, Inc.*, 893 F.2d 919, 925 (7th Cir. 1990) ("federal court is not the place to press innovative theories of state law")). *See also Hillside Enters., Inc. v. Continental Carlisle, Inc.*, 147 F.3d 732, 735 n.4 (8th Cir. 1998) ("It is not the place of the federal courts, however, to reexamine state court determinations of state law questions. 'We are . . . bound to accept the interpretation of [state] law by the highest court of the State.'" (quoting *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n,* 426 U.S. 482, 488 (1976) (alterations in original)).

The Court notes, however, that medical monitoring is a relatively rapidly developing area of the law. The Court anticipates that plaintiffs from jurisdictions in which the legislature or a court adopts the claim in such a way as to allow the claim to "relate back" will be added to the class.

**B. States recognizing a <u>stand alone</u> claim for medical monitoring absent proof of injury**

Arizona, Colorado, Connecticut, District of Columbia, Florida, Kansas, Montana, New Jersey, New York, Pennsylvania, Texas, Tennessee, Utah, and West Virginia recognize an independent cause of action for medical monitoring, and do not require proof of "injury."

**Arizona** — *Burns v. Jaquays Min. Corp.*, 752 P.2d 28, 33-34 (Az. Ct. App. 1987) (not lump sum, but fund administered through the court).

**Colorado** — *Cook v. Rockwell Int'l. Corp.*, 755 F. Supp. 1468, 1477 (D. Colo. 1991) (predicting that Colorado Supreme Court would recognize a claim for medical monitoring) (citing *Ayers v. Township of Jackson*, 525 A.2d 287, 312 (1987)).

**Connecticut** — *Martin v. Shell*, 180 F. Supp. 2d 313, 323 (D. Conn. 2002) (noting that the "Connecticut Supreme Court has cited favorably a Third Circuit case that allowed medical monitoring in the absence of present injury. *Doe v. City of Stamford*, 241 Conn. 692, 699 n.8, 699 A.2d 52 (1997).").

**District of Columbia** — *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 824-25 (D.C. Cir. 1984) (predicting that the tort law of District of Columbia would recognize an action for medical monitoring in the absence of physical injury). *See also W.R. Grace v. Gordon*, 663 A.2d 25 (D.C. Ct. App. 1993).

**Florida** — *Petito v. A.H. Robins*, 750 S.2d 103, 107-08 (Fla. Ct. App. 2000) (reversing trial court and holding that Florida would recognize action for medical monitoring absent physical injury, and finding "nothing in Florida law barring such a claim and case law, equity, common sense, and the decisions of courts around the country persuade us that under the limited and appropriate circumstances outlined herein, such a claim is viable and necessary to do justice.") (Footnote and citations omitted).

**Kansas** — *Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515, 1523 n.6 (D. Kan. 1995) (noting that a "tort action for medical monitoring arises in an instance where a plaintiff has been exposed to hazardous materials, which may increase his or her susceptibility to contracting a latent disease, but the plaintiff has not yet suffered any injuries").

**Montana** — *Lamping v. American Home Products*, DV-97-85786 (Mont. 4th Dist., Feb. 2, 2000) (commenting that "the patient's independent claim for medical monitoring accrues when the patient can meet all of the elements of the claim, which notably does not include an actual physical injury element" and adopting the elements of the claim as set out by *Petito v. A.H. Robins*, 750 S.2d 103, 107-08 (Fla. Ct. App. 2000)).

**New Jersey** — *Ayers v. Township of Jackson*, 525 A.2d 287, 312 (N.J. 1987).

**New York** — *Patton v. General Signal Corp.*, 984 F. Supp. 666, 674 (W.D.N.Y. 1997) (collecting cases and predicting that New York Court of Appeals would recognize cause of action for medical monitoring without proof of injury) (citing *Gibbs v. E.I. DuPont De Nemours & Co.*, 876 F. Supp. 475, 478-79 (W.D.N.Y. 1995); *Jones v. Utilities Painting Corp.*, 198 A.D.2d 268 (N.Y. 2d Dep't 1993); *Askey v. Occidental Chem. Corp.*, 102 A.D.2d 130 (N.Y. 4th Dep't 1984)).

**Pennsylvania** — *Redland Soccer Club, Inc. v. Department of the Army*, 696 A.2d 137, 143-46 (Penn. 1997) (examining Pennsylvania common law and determining the elements of a claim for medical monitoring).

**Texas** — *Earthman v. American Home Products*, 97-10-03790 (9th Dist. Texas 1998) (conditionally certifying class of individuals who had ingested certain prescription diet drugs on several causes of action including medical monitoring).

**Tennessee** — *Craft v. Vanderbilt University*, 174 F.R.D. 396, 406 (M.D. Tenn. 1996) (determining that group of women and children exposed to radioactive iron isotope met requirements of Rule 23(b)(2) and would be certified as a class on their medical monitoring claims, but not discussing elements of medical monitoring claim).

**Utah** — *Hansen v. Mountain Fuel Supply*, 858 P.2d 970 (Utah 1993). Note that Utah requires a plaintiff prove that a treatment exists which makes the early detection of the disease beneficial.

**West Virginia** — *Bower v. Westinghouse*, 522 S.E.2d 424, 426 (W. Va. 1999) (answering certified question from United States District Court for the Northern District of West Virginia, and concluding that West Virginia law supports common-law cause of action for recovery of anticipated medical monitoring costs in circumstances where the plaintiffs have been tortiously exposed to toxic substances, but do not presently exhibit symptoms of any resulting disease).

### C. States requiring injury

Alabama, Delaware, Kentucky, Louisiana, Michigan, Minnesota, Missouri, Nevada, North Carolina, Ohio, Tennessee, Virginia, the Virgin Islands, and Washington recognize a claim for medical monitoring, but impose an "injury" requirement. Therefore, individuals whose valves were implanted in these states will not be included in the class.

**Alabama** — *Hinton ex rel. Hinton v. Monsanto Co.*, 813 So.2d 827, 828 (Ala. 2001) (answering the following certified question in the negative "Does a complaint which does not allege any past or present personal injury to the plaintiff state a cause of action for medical monitoring and study when the plaintiff alleges that he has been exposed to hazardous contamination and pollution by the conduct of the defendant?"). *See also Southern Bakeries, Inc. v. Knipp*, 852 So. 2d 712, 717-19 (Ala. 2002) (affirming grant of summary judgment to defendant because plaintiffs failed to show injury, even

though the plaintiffs had been exposed to a toxic substance, and reiterating that Alabama does not recognize a cause of action for medical monitoring).

**Delaware** — *Mergenthaler v. Asbestos Corp.*, 480 A.2d 647, 651 (Del. 1984) (holding asbestos-exposure plaintiffs must show physical injury before the defendants can be made to bear expenses for medical surveillance).

**Kentucky** — *Wood v. Wyeth-Ayers Labs.*, 82 S.W.3d 849, 856-60 (Ky. 2002) ("rejecting prospective medical monitoring claims (in the absence of present injury)" and reasoning "having weighed the few potential benefits against the many almost-certain problems of medical monitoring, we are convinced that this Court has little reason to allow such a remedy without a showing of present physical injury").

**Louisiana** — Louisiana Civil Code article 2315 (defining damages, and specifically noting that "Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease.").

**Michigan** — *Meyerhoff v. Turner Const.*, 534 N.W.2d 204, 495 (Mich. Ct. App. 1995) ("medical-monitoring expenses are a compensable item of damages where the proofs demonstrate that such surveillance to monitor the effect of exposure to toxic substances, such as asbestos, is reasonable and necessary"); *vacated by* 575 N.W.2d 550 (1998) ("The factual record is not sufficiently developed to allow a medical monitoring damages [claim]. Accordingly, that portion of the Court of Appeals decision which holds that medical monitoring expenses are a compensable item of damages is vacated."). *See*

*also Taylor v. American Tobacco Co., Inc.*, 2000 WL 34159708 at *12 (Mich. Cir. Ct. Jan. 10, 2000) (noting that it is uncertain whether medical monitoring claims are viable in Michigan).

**Minnesota** — *Werlein v. United States*, 746 F. Supp. 887, 904 (D. Minn. 1990) *vacated in part on other grounds*, 793 F. Supp. 898 (1992). (holding that plaintiffs are entitled to recover the costs of future medical monitoring as tort damages under the common law, and noting, "assuming that a given plaintiff can prove that he has present injuries that increases his risk of future harm, medically appropriate monitoring is simply a future medical cost, which is certainly recoverable."). *See also Bryson v. Pillsbury*, 573 N.W.2d 718, 721 (Minn. Ct. App. 1998) (reversing grant of summary judgment on plaintiff's medical monitoring claims because plaintiff's allegations of chromosome damage presented a fact question for the jury).

**Missouri** — *Thomas v. FAG Bearings Corp. Inc.*, 846 F. Supp. 1400, 1410 (W.D. Mo. 1994) (noting that "[e]ntitlement to the costs of future medical monitoring requires plaintiff to prove actual present injury and an increased risk of future harm").

**Nevada**— *Badillo v. American Brands, Inc.,* 16 P.3 435 (Nev. 2001) (holding that Nevada common law did not recognize a medical monitoring cause of action but that a medical monitoring remedy may be appropriate depending on the cause of action).

**North Carolina** — *Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 284-85 (4th Cir. 2000). In *Ashcraft v. Conoco, Inc.*, the issue presented in the appeal was whether a reporter was appropriately held in contempt after he reported on a "confidential," court-approved settlement and then refused to divulge his sources. The underlying litigation, however,

informs the medical monitoring question. The Fourth Circuit describes the underlying litigation as follows:

> In December 1995, an environmental torts action was filed . . . against . . . Conoco. Conoco was alleged to be responsible for harmful gasoline contamination present in two underground wells located in Wilmington, North Carolina. The lawsuit was brought on behalf of 178 trailer park residents whose drinking water was drawn from the contaminated wells. The initial liability phase of the lawsuit went to trial before a jury in August 1997. On August 25, 1997, the jury returned a verdict in favor of the plaintiffs, finding that Conoco was liable for both compensatory and punitive damages, **as well as for $9.5 million in future medical monitoring costs**.
>
> Following the verdict, the jury heard additional evidence relating to the amount of the punitive damages award. Before the jury could report the results of its deliberations, however, the parties reached a comprehensive $36 million settlement

*Id.* at 284-85 (emphasis added).

**Ohio** — *Verbryke v. Owens-Corning Fiberglas Corp.*, 616 N.E.2d 1162 (Ohio Ct. App. 1992) (addressing whether pleural thickening or plaques were not injuries, as a matter of law. The court held that it was error to say that pleural thickening is not injury, as matter of law. Court also noted that

> even if [plaintiff's/appellant's] disease is asymptomatic it does not necessarily mean he is unharmed in the sense of the traditional negligence action. Appellant's medical expert [], testified that [appellant's] x-ray showed a characteristic pattern indicative of asbestos exposure. [The expert] further stated that this exposure having been discovered, it now becomes medically prudent to monitor [appellant's] condition because of the increased likelihood of the development of other asbestos-related conditions which may be debilitating or life threatening. At a minimum, required medical surveillance supports pecuniary harm to appellants. *Accord Burns v. Jaquays Min. Corp.* 752 P.2d 28, 33-34 (Ariz. Ct. App. 1987) [(recognizing cause of action for medical monitoring absent physical injury)].

*Id.* at 1167.)

**Tennessee** — *Trimble v. Asarco, Inc.*, 232 F.3d 946, 963 (8th Cir. 2000) (agreeing with district court's prediction that Tennessee would not recognize a cause of action for medical monitoring absent proof of physical injury).

**Virginia**— *Ball v. Joy Technologies, Inc.*, 958 F.2d 36, 39 (4th Cir. 1991) (holding that Virginia requires that the plaintiffs demonstrate that they are suffering from a present, physical injury before they are entitled to recover medical surveillance costs), *cert. denied*, 502 U.S. 1033 (1992). Note, *Ball v. Joy Technologies, Inc.* also held that West Virginia requires physical injury, but see *Bower v. Westinghouse*, 522 S.E.2d 424 (W.Va. 1999).

**Virgin Islands** — *Purjet v. Hess Oil Virgin Islands Corp.*, 1986 WL 1200, at *4 (D.V.I. Jan. 8, 1996) (holding that in the Virgin Islands actual injury is a prerequisite to a medical monitoring claim).

**Washington** — *Duncan v. Northwest Airlines*, 203 F.R.D. 601, 606 (W.D. Wash 2001) (predicting that Washington Supreme Court would not recognize a "stand-alone" cause of action for medial monitoring, and noting that "plaintiffs with a present injury may seek medical monitoring as a remedy to a negligence cause of action under existing Washington law").

**D. Other excluded states**

The following states have either not addressed medical monitoring, or have done so and rejected the claim. Also included in this category are states that allow medical monitoring as a form of damages, but not as a "stand alone" or independent claim.

**Alaska** — *Lynden Inc. v. Walker*, 30 P.3d 609, 619-20 (Ak. 2001) (reversing jury award for future medical expenses because the award lacked evidentiary basis, noting that plaintiff must present some data on which the jury might reasonably estimate the amount of future medical expenses). *See also Blumenshine v. Baptiste*, 869 P.2d 470, 473 (Ak. 1994) (holding that future medical expenses must be proven by a reasonable probability).

**Arkansas** —*Baker v. Wyeth-Ayerst Labs. Division*, 992 S.W.2d 797, 799 n.2 (Ark. 1999) (noting that although the complaint originally contained a claim for medical monitoring, the plaintiffs agreed to treat medical monitoring as a type of damages instead of a separate cause of action).

**California** *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 823 (Cal. 1993) (concluding "that a reasonably certain need for medical monitoring **is an item of damage** for which compensation should be allowed. Recognition that a defendant's conduct has created the need for future medical monitoring does not create a new tort. **It is simply a compensable item of damage when liability is established under traditional tort theories of recovery**."). *See also Lockheed Martin Corp. v. Superior Court (Carrillo)*, 63 P.3d 913 (Cal. 2003), *aff'g* 94 Cal. Rptr. 652 (Cal. App. 2000) (no per se prohibition to medical monitoring claims as class action).

**Georgia**—Ga. Code Ann. § 51-12-7. Necessary expenses. "In all cases, necessary expenses consequent upon an injury are a legitimate item in the estimate of damages."

**Hawaii** —*Roes v. FHP, Inc.*, 985 P.2d 661, 668 (Haw. 1999) (answering question certified from federal district court and holding that "(1) Hawai'i law recognizes a cause of action for negligent infliction of emotional distress arising out of a fear of developing AIDS following actual exposure to HIV-positive blood and resulting in actual physical peril to the claimant; and (2) damages may be based solely upon serious emotional distress, even absent proof of a predicate physical injury.").

**Illinois** — *Betts v. Manville Personal Injury Settlement Trust*, 588 N.E.2d 1193, 1217-18 (Ill. Ct. App. 1992) (holding trial court erred in allowing reference to "cancer" by plaintiffs, and discussing medical monitoring claim, noting that "The measure of damages [for medical monitoring] includes the reasonable expense of medical care, treatment, and services reasonably certain to be received in the future." The Court rejected defendant's suggestion that plaintiffs should pay for their own medical monitoring).

**Vermont** — *Stead v. F.E. Myers*, 785 F. Supp. 56, 57 (D. Vt. 1990) (holding plaintiffs are entitled to medical monitoring **as a form of damages**, when plaintiffs can prove an increased risk of disease as a result of exposure).

## V. ADDITIONAL BRIEFING

It is plaintiffs' burden to establish that the named representatives will fairly and adequately represent the class. *See* Fed. R. Civ. P. 23(a)(4) (requiring that the class representatives will adequately represent the interest of the class). Plaintiffs have noted the difficultly of naming subclass representatives before the subclasses have been identified. Now that the Court has clearly identified the class for plaintiffs' medical

monitoring claims, plaintiffs must identify adequate representatives. Plaintiffs may submit additional briefing on this issue.

In addition, plaintiffs have the burden to provide the Court with a manageable trial plan. *See, e.g., Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1195-96 (9th Cir. 2001), *amended at* 273 F.3d 1266 (noting that because plaintiff sought certification of a nationwide class for which the law of numerous states potentially applies, plaintiff bears the burden of demonstrating a suitable and realistic plan for trial of the class claims) (citing *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 454 (D.N.J. 1998) (quoting *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 624 (1997)). *See also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (abuse of discretion to certify class because plaintiffs did not show how class trial could be conducted); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 742 (5th Cir. 1996) (court cannot rely merely on assurances of counsel that any problems with predominance or superiority can be overcome); *In re Paxil Litigation*, 218 F.R.D. 242, 249 (C.D. Cal. 2003) (declining to certify class because plaintiffs had not offered a manageable and workable trial plan). Because the class is only now being finally delineated, plaintiffs have not yet proposed a sufficiently complete trial plan. Plaintiffs have the opportunity to do so now.

Finally, defendant briefed the law of medical monitoring from only seven states.[10] If defendant wishes to draw the Court's attention to additional case law, defendant will be permitted to submit additional briefing on the state of medical monitoring law in the

[10] The Court notes that defendant did provide extensive and comprehensive surveys of most of plaintiffs' claims.

remaining jurisdictions.[11] *Sun Oil v. Wortman*, 486 U.S. 717, 731 (1988) ("The Constitution is not violated if the court misconstrues the law of another State. The misconstruction must contradict law of the other State that is clearly established and that has been brought to the court's attention.").

Given the import of this ruling, the Court believes that the parties, and the Court will benefit from a discussion of these issues before briefing is submitted. Therefore, the Court will not issue a briefing schedule at this time, but requests that the parties are prepared to discuss these issues at the next status conference.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that plaintiffs' Motion for Class Certification [Docket No. 49] is **GRANTED IN PART and DENIED IN PART**.

1. The Court **CONDITIONALLY CERTIFIES** Class I (the monitoring class), consistent with this opinion and contingent upon the plaintiffs' identification of adequate class representatives, and plaintiffs' submission to the Court of a manageable trial plan.

---

[11] Plaintiffs, for their part, are free to supplement their briefing on medical monitoring. Although plaintiffs provided the Court with a chart listing authority from each state, plaintiffs did not explain how the cited cases supported the proposition for which the case was cited. Although in many cases, the particular case's relevance was obvious, in some instances, the Court would benefit from a short explanation of plaintiffs' understanding of the particular case. For example, plaintiffs cite *Adams v. Clean Air Sys.*, 586 N.E.2d 940 (Ind. Ct. App. 1992) for the proposition that Indiana allows a cause of action for medical monitoring absent proof of injury. However, it is unclear that the *Adams* case stands for such a broad proposition. *See id.* at 942 (holding only that "plaintiffs cannot maintain an action for damages including the expense of periodic medical examinations where they assert only that they possibly inhaled a toxin").

2. The Court **DOES NOT CERTIFY** Class II (the injury class).

DATED: January 5, 2004
at Minneapolis, Minnesota.

John R. Tunheim

JOHN R. TUNHEIM
United States District Judge