**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

**IN RE ST. JUDE MEDICAL, INC.**
**SILZONE HEART VALVE PRODUCTS** **MDL DOCKET NO. 1396**
**LIABILITY LITIGATION**

Second Supplemental Report of Special Master's Findings on *In Camera* Review of Documents Claimed Privileged by St. Jude Medical, Inc.

## I. Introduction

In the Report dated May 11, 2004, the undersigned requested supplemental submissions as to a limited number of documents about which he had uncertainty as to the existing submissions. Such supplemental submissions have been received. Additionally, SJM also submitted a few comments on other documents, prompting an objection and related submission from plaintiffs' counsel. In respect thereto, the undersigned issued his June 2nd, 2004 Supplemental Report of Special Master's Findings on In Camera Review. In the original Report and the June 2nd Supplemental report, the undersigned asked for certain documents (C-1 to C-3) discussed but not submitted, and for certain clarifications in respect to Document I-17. Such materials having now been produced, the undersigned hereby issues his Second Supplemental Report dealing only with Documents C-1 to C-3, and I-17.

Documents C-1 to C-3: Lawyer-client and work-product objections as to C-1 are sustained, as this is a direct request of two lawyers for comment on certain documentation, and the request is of a legal nature inherently for the purpose of obtaining legal advice. Documents C-2 and C-3 are subject to mixed rulings. As to the facsimile cover sheet and the contained communication from SJM's inside counsel to outside counsel (Bates . . . . 0960, 0961 and 0969, the lawyer-client objection are sustained, as they are direct communications from SJM's inside counsel to its outside counsel of a legal nature inherently for the purpose of obtaining legal advice.

However, the balance of Documents C-2 and C-3 (Bates 0962 to 0968 and 0970 to 0984) appear to be (1) pre-existing SJM marketing materials about which there is no evidence they constituted confidential communications between client and counsel nor that they were prepared because of the prospect of litigation as opposed to the purpose of marketing or advertising the product and (2) preexisting and earlier-authored scientific articles on related subjects having to do with related properties of silver written either by scientists acting alone, or acting with scientists at SJM. They plainly were intended to be scientific literature available to a general audience, and were not prepared as a communication with counsel. As to work product, the documents were prepared in part by persons outside SJM as scientific literature and thus were neither prepared by SJM or its agents alone, nor "because" of a prospect of litigation. The fact that these preexisting documents were transmitted to counsel does not, of course, render them communications from client to counsel and does not transform them from unprotected to protected documents. These documents, if not already produced, should be produced.

Document I-17: SJM has produced the requisite affidavits of Hunn and Ladner sufficient to convince the undersigned that these documents constituted an email chain of communications to SJM counsel for the purpose of achieving legal advice, and the documents can be so construed. Accordingly, the email traffic between Jaksha to Hunn, Hunn to Schultz and Schultz to Hunn is protected by the lawyer-client privilege. Again, however, the email from the apparent customer/patient of July 26, 2001 at 3:47 pm to "heartvalves@sjm.com" is not privileged and must be produced, as should any final response to such person's inquiry. Again, such documents are neither lawyer client communications nor work product, as the communications were created by a customer, and the final response was prepared (as admitted) to answer a customer/patient inquiry, rather than "because" of the prospect of litigation. The fact that the customer/patient could become an adversary or claimant and that SJM understandably wanted to take care in its response does not mean that the response (actually sent to and thus shared with the potential adversary) was prepared

"because" of the prospect of litigation rather than "because" of the business need to respond to customer inquiry.

Dated at Minneapolis this
14th day of June, 2004

Master

Richard B. Solum