**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| **IN RE ST. JUDE MEDICAL, INC.** | : | |
| **SILZONE HEART VALVES** | : | |
| **PRODUCTS LIABILITY** | : | **MDL DOCKET NO. 1396** |
| **LITIGATION** | : | |

# MEMORANDUM OF LAW IN SUPPORT OF MDL PSC'S MOTION TO COMPEL ST. JUDE TO ANSWER PLAINTIFFS' THIRD SET OF INTERROGATORIES AND SEVENTH REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT (MERITS PHASE)

On May 20, 2004, the PSC served Defendant, *Plaintiffs' Third Interrogatories and Seventh Request for Production of Documents to Defendant (Merits Phase).*" The only interrogatory in the set requested that SJM provide in tabular format the annual linearized incidence rates for five adverse events[1] associated with SJM's mechanical prosthetic valve product line [2] stratified by valve position (i.e- aortic and mitral). Similarly, Plaintiffs made a single document request in conjunction with the single interrogatory. SJM objects to answering the interrogatory and providing documents on annual linearized rates, except for a set of purported annual linearized rates for the patients in SJM's AVERT study. A true and correct copy

---

[1] The five complications or events are bleeding, endocarditis, paravalvular leak, thromboembolism and valve thrombosis.

[2] SJM marketed or distributed 12 versions or forms of its bileaflet mechanical valve product. They are: SJM Mechanical Heart Valve – Standard cuff; SJM Mechanical Heart Valve – Expanded cuff; SJM Mechanical Heart Valve – PTFE Standard cuff; SJM Mechanical Heart Valve – PFTE Expanded cuff; SJM Mechanical Heart Valve – - HP cuff; Master Series Valve with Silzone; Master Series Valve with Polyester cuff; Master Series Valve with PTFE cuff; Epic Valve with Conventional cuff; Epic Valve with Silzone cuff; Regent Valve with Conventional cuff; and Regent Valve with Silzone cuff.

of the Interrogatory, the document response, and St. Jude's objection and response thereto is attached as Exhibit "A." (Hereinafter referred to as the **Linearized Rate Discovery**")

At the June 22, 2004, Status Conference Plaintiffs advised the Court of the need to file this motion to compel because of the significance of the information on merits discovery and expert reports.

The Linearized Rate Discovery will allow the fact finder to compare the safety and efficacy of SJM's Silzone product line with Silzone sewing cuffs to its similar conventional cuffed prosthetic products. Plaintiffs' experts have also requested this information and, as will be demonstrated further herein, SJM routinely gathers and utilizes the requested information for marketing and other purposes.

Instead of fully responding, SJM interposed several objections and refused to respond, except to provide a single reference relating to its purported AVERT paravalvular leakage incidence rate mentioned above. SJM's objections can be gathered and summarized as follows:

1. The discovery is overbroad in scope and thus seeks irrelevant information not reasonably calculated to lead to discovery of admissible evidence;

2. The interrogatory including its subparts, exceeds the number of interrogatories permitted under PTO 16;

3. The requested information is protected by attorney-work product doctrine (albeit there is no explanation nor privilege log presented for this);

4. The discovery is vague and ambiguous because it does not specify any particular population of patients; and

5. To the extent the discovery seeks linearized information rates for all patients who have ever received the 12 types of valves identified, SJM does not calculate such

rates in the ordinary course of business nor have access to the information on which to do so.

For the following reasons, SJM's objections are not well-taken or are baseless and, accordingly, should be overruled.

Information regarding annual linearized incident rates for bleeding, endocarditis, paravalvular leak, thromboembolism and valve thrombosis are relevant to the issues of Silzone's safety and efficacy. They are key adverse medical events or complication rates that all prosthetic valve manufacturers, including SJM, routinely calculate and use for evaluation, regulatory and marketing purposes.[3] It is also undeniable that SJM's management routinely calculates the rates for these purposes and therefore has them available. For SJM to claim otherwise contradicts the May 14, 2004, deposition testimony of its current Medical Director, Robert W. M. Frater, M.D. During his deposition Dr. Frater testified about a journal article he had co-authored on gathering information about bleeding, thrombus and embolic events associated with prosthetic valves:

> Q. [By Mr. Coren] Okay. So this was a mechanism so that you could gather information into a format so that one may compare the experiences of a group of patients with one type of valve versus another, and then draw conclusions therefrom. Right?
>
> A. That is one of the reasons, yes.
>
> Q. And as a matter of fact, manufacturers use that, for example, your company would utilize that information. They would gather the rates of thrombus, embolism, explant, death, of various St. Jude valves for marketing purposes. Correct?
>
> A. Well, yes.
>
> Q. Okay. And that's important to know if you've got a valve that has a better TE profile, thromboembolism profile than, say a CarboMedics heart valve, that is something that the company wants to make known to surgeons, and that surgeons want to know. Correct?
>
> A. Yes, and in fact, this was not written from a commercial part of view. This was an academic article.

[3] For example, each year SJM calculates and submits to the FDA incident rates for each of the 12 valves based on the Medical Device Reports it submits to the FDA.

Q. Um-hum. I understand that. But basically, you would agree that there is methodology from which one can compute the TE incidents rates, the paravalvular incidence rates, and explant rates. Things of that sort?

A. Yes.

Q. And would you agree that St. Jude knows those particular rates for its valves?

A. Yes.

Q. And that as Medical Director, that's information that you're – that's known to you?

A. Yes.

(Frater Dep. at pgs. 11-13.)[4]

* * *

Q. Earlier we spoke about that there are incident rates associated with the – with the valves for valve thrombosis, TE, paravalvular leakage, bleeding, endocarditis. Do you know what the linearized event rates for the St. Jude valves are? And breaking it down for the aortic position and the mitral position, what the rates are for valve necrosis, TE, those numbers?

MR. KOHN: Let me object to the form. What study are we talking about now? Conventional valves?

MR. COREN: What the rates the company maintains are for. I want to know if the Medical Director knows that.

MR. KOHN: Go ahead and answer if you can.

Q. For example, in the atrial position, do you know what the linearized event rate for valve necrosis [*sic* -thrombosis] is?

A. The mitral position. That's the sort of stuff I would look up. And I'll look it up in model studies. There may be an average of all the studies. I'm not sure what it is. It certainly depends on where you're using the valve.

Q. When you say it depends where you're using the valve, are you referring to the aortic position versus the mitral?

A, And I'm also referring to geographic use, in terms of the difference between the Bronx and Minnesota.

Q. But you have seen that the company has published linearized rates?

A. Yes, they have developed such information from literature surveys.

[4] True and correct excerpts form Dr. Frater's deposition are attached as Exhibit "B",

Q. So if we asked you in interrogatory, that could be information you could provide us with through the company?

A. I'm sure.

(Frater Dep. at pgs. 351-53.)

Following Dr. Frater's deposition, Plaintiffs prepared and served the Linearized Rate Discovery to obtain the information on adverse event rates that Dr. Frater was sure his Company could provide by interrogatory. Since there is no question that the only way to meaningfully obtain this information from SJM is in a form that can be easily referred to by experts and the fact finder at trial, it is improper for SJM now to contend that answering the discovery is impossible or too burdensome or that it need not respond because it exceeds the limit on the number of interrogatories established early in this case. As to SJM's objection based on work product or other privilege, SJM has not identified any documents or information that are privileged, or any factual basis to support such a claim. In any event, the claim of work product privilege is completely unavailing here since the interrogatory asks for facts and information, as Dr. Frater's testimony reveals, that SJM possesses and uses as part of its routine business operations. That SJM's counsel may also want to know the information does not render it privileged information that is beyond discovery.

In sum, the Linearized Rate discovery seeks information that bears upon the Silzone product line's safety and efficacy and is highly relevant information. It is information that SJM has in its possession, maintained by its medical director, and product safety, regulatory and marketing departments.

## CONCLUSION

For the foregoing reasons, Plaintiffs request this Court grant their Motion and overrule St. Jude Medical's objections, enter an Order compelling St. Jude Medical to provide the information in tabular form and produce the requested documents supporting their Answer within ten (10) days of the date of the Court's Order.

Respectfully submitted,

**ZIMMERMAN REED, P.L.L.P.**

DATED: July 1, 2004

BY: s/ J. Gordon Rudd, Jr.
CHARLES S. ZIMMERMAN
J. GORDON RUDD, JR.
DAVID M. CIALKOWSKI
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402
(612) 341-0400

**LEVY, ANGSTREICH, FINNEY, BALDANTE, RUBENSTEIN & COREN, P.C.**
STEVEN E. ANGSTREICH
MICHAEL COREN
CAROLYN C. LINDHEIM
Woodcrest Pavilion, Suite 100
Ten Melrose Avenue
Cherry Hill, New Jersey 08003
(856) 424-8967

**CAPRETZ & ASSOCIATES**
JAMES T. CAPRETZ
5000 Birch Street, Suite 2500
West Tower
Newport Beach, CA 92660
(949) 724-3000

**GREEN, SCHAAF &**
**JACOBSON, P.C.**
JOE D. JACOBSON
7733 Forsyth, Suite 700
St. Louis, MO 63105
(314) 862-6800

**KELLOG & SIGELMAN**
DANIEL SIGELMAN
DEBORAH M. SCHECHTER
1742 N. Street, N.W.
Washington, DC20036
(202) 223-9880

Counsel for Plaintiffs