IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| IN RE SJM, INC., SILZONE HEART VALVES PRODUCTS LIABILITY LITIGATION | : : : | MDL DOCKET NO. 1396 |

**PLAINTIFFS' OPPOSITION TO DEFENDANT SJM'S MOTION TO PROTECT CONFIDENTIALITY OF DISCOVERY MATERIAL DISCLOSED IN DEPOSITION OF PETER GOVE**

## INTRODUCTION

This motion concerns defendant SJM, Inc.'s improper attempt to designate and shield as confidential over half of the recent deposition testimony of Peter Gove ("Gove Deposition), SJM's Vice President of Corporate Relations. Despite the fact that the majority of information contained in the designated testimony refers primarily to SJM's publicly available annual reports, covers information only up to year 2001 (nearly three (3) years old), and centers around the Silzone heart valve no longer in production, SJM attempts to shoehorn 22 portions - well over 260 pages out of 352 total pages - of the Gove Deposition into the definition of Paragraph 2 of Pretrial Order No. 5 ("Order").

Paragraph 2 of the Order defines the term "confidential" as information which "contains or discloses a trade secret or other confidential research, development or commercial information, including but not limited to sensitive financial data, technical information, proprietary or nonpublic commercial information, information involving privacy interests, and other commercially and/or competitively sensitive information of a nonpublic nature, or received on a confidential basis."

SJM contends that the designated portions raise two types of confidential information covered by the Order: (1) nonpublic commercial information; and (2) commercially and/or competitively sensitive information of a nonpublic nature. However, as detailed below, aside from conclusory and summary statements that the information is commercially sensitive or discloses general corporate strategies, SJM has failed to make a sufficient showing that the designated portions fall under the protection of Paragraph 2 of the Order. Nor has SJM met its burden in demonstrating that any specific harm would result from release of the out-dated and Silzone specific information. Moreover, no legitimate reason exists to support a confidential designation of the Gove Deposition. Given the public health and safety interests surrounding the creation, manufacture, testing, sale and recall of the defective Silzone heart valve, any concerns regarding confidentiality of such information is far outweighed by the importance of maintaining public access to information pertaining to the defective valve.

## A. SJM'S BURDEN AS THE MOVING PARTY

It is axiomatic that the burden of justifying the confidentiality of discovery sought to be covered by a protective order falls on the party seeking the order. In meeting that burden, good cause must be shown. *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984); *Hunter v. International Sys. & Controls Corp.*, 51 F.R.D. 251 (W.D. Mo. 1970); *Essex Wire Co. v. Eastern Elec. Sales Co.*, 48 F.R.D. 308 (E.D. Pa. 1969). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Publicker Indus.*, 733 F.2d at 1071. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a showing of good cause. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987). In other words,

conclusory statements of harm are insufficient. *United States v. Hooker Chem. & Plastics Corp.*, 90 F.R.D. 421 (W.D.N.Y. 1981).

In addition, where information sought to be protected is "stale," a showing that disclosure will work a competitive disadvantage is necessarily undermined. *See e.g. United States v. International Business Mach. Corp.* 67 F.R.D. 40 (S.D.N.Y. 1975)(information three to fifteen years old was held not entitled to protection because, in the court's view, it revealed little, if anything, about the contemporary operations of the party resisting disclosure); *United States v. Lever Bros. Co.*, 193 F. Supp. 254 (D.C.N.Y. 1961)(information three to eight years old not protected); *Rosenblatt v. Northwest Airlines*, 54 F.R.D. 21 (S.D.N.Y. 1971)(information one year old not protected).

**B. SJM HAS NOT SUSTAINED ITS BURDEN IN DEMONSTRATING THAT THE DESIGNATED PORTIONS OF THE GOVE DEPOSITION FALL WITHIN THE PROTECTION OF PTO NO. 5**

As support for its motion, SJM relies primarily on a Southern District of New York federal court opinion, *Reliance Insurance Co. v. Barron's*, 428 F. Supp. 200 (S.D.N.Y. 1977), and on the affidavit of Mr. Gove.

First, SJM's reliance on *Reliance* is misplaced. *Reliance* is a district court opinion that has never been cited by the Court of Appeals for the Eighth Circuit or by any district court in this circuit. *Reliance* states a "test" for trade secrets that is different than that established by Minnesota law, which is the controlling law in this case. Furthermore, and directly contrary to SJM's position, the *Reliance* court rejected a party's effort to have certain internal documents designated as confidential trade secrets, holding:

> Here, plaintiff has made an insufficient showing both as to the confidentiality of the documents for which protection is sought and as to the expected harm which would result from their release, thereby failing to sustain the burden of proof required in order to secure a protective order.

*Reliance*, 428 F. Supp. at 204.

In this case, the law that applies to determine the scope and extent of trade secret protection is that of Minnesota. *See Sigma Chemical Co. v. Harris*, 794 F.2d 371, 373 (8th Cir. 1986). Minnesota uses a statutory definition of "trade secret," which appears in Section 325.01:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Minn. Stat. § 325C.01(5).

This statutory definition was applied by the Minnesota Supreme Court in *In re Rahr Malting Co.*, 632 N.W.2d 572 (Minn. 2001), in ruling that the lower court did not err in refusing to close court proceedings to protect against the disclosure of trade secrets.

> [H]ere the court simply found that, in light of the strong presumption in favor of open proceedings and the statute mandating a public trial, Rahr failed to make an adequate showing of the harm it would suffer if disclosure were allowed. The court's finding is supported by the record, as the affidavit and testimony stated only in conclusory terms that disclosure of the data would be "devastating" and affect the "survivability" of the company. Although Rahr claims some of the information it seeks to protect constitutes trade secrets, Rahr does not explain how the information satisfies the criteria established in Minn. Stat. § 325C.01, subd. 5 (2000). *Conclusory allegations of harm do not support a finding that data constitutes a trade secret.*

*Rahr Malting*, 632 N.W.2d at 576 (emphasis added).

Second, a comparison of the Gove Affidavit with the affidavit and information at issue in the *Rahr Malting* case demonstrates that the Gove affidavit is far more conclusory than the testimony held by the Minnesota Supreme Court in *Rahr Malting* to be inadequate to establish trade secret status:

> In support of its motion, Rahr submitted the affidavit of its Chief Executive Officer, John Alsip. According to Alsip, Rahr is one of four major malt producers in the United States and has only two main customers. At the hearing on the motion, which was apparently open to the public, Alsip testified that if Rahr's customers obtained data Rahr provided to the county during the discovery process the customers could force down Rahr's marginal profits. He also claimed that if Rahr's competitors obtained the date they could price against Rahr in a manner that would threaten Rahr's viability. Alsip noted that Rahr is a relatively small company compared to its competitors and is especially careful with the data, allowing access only to essential employees, and key shareholders.
>
> Alsip testified that Rahr is concerned about protecting: sales data, cost of grain, gross margin for malting (the sales price of malt less the acquisition cost of the unmalted grain), certain general and administrative expenses, dealings with Rahr and its Canadian subsidiary, costs associated with operating lines of credit, nature and extent of working capital, amount of money borrowed, overall profitability of the company, price charged for malt, and the quantity of product the company ships to a given customer. Alsip did not identify which of this information constituted trade secrets, as opposed to merely propriety information.

*Id.* at 574-75.

In contrast to the affidavit of the Chief Executive Office in *Rahr Malting*, which provided specific examples of the harm the company could face from disclosure, the Gove Affidavit is blank by comparison. Aside from vague and ambiguous statements that the designated testimony reveals internal corporate communications strategies, nowhere does the Gove Affidavit describe generally, let alone, with sufficient specificity, what, if any harm, would result from disclosure of this alleged internal corporate communications strategy.

Moreover, although Mr. Gove contends in his affidavit that certain information was not widely disseminated within SJM, even that claim is belied by several of the documents underlying his deposition testimony. As a prime example, SJM attempts to designate as confidential portions of the Gove Deposition which referred to document SJM1080248445MDL, a 11/15/99 memo regarding responses to a MDA Advisory Notice. Yet Gove testified at his deposition that the memo was of broad circulation and sent to all SJM employees in SJM's St. Paul, Puerto Rico, and Mississauga locations who had an email address, including secretaries -

essentially to anyone at those locations who had a computer. It simply defies logic to believe that SJM took any steps to limit the information to only essential employees and accept SJM's position that possible harm would result if not kept under seal, when the document was circulated to employees at all levels.

Similarly, SJM's reference to four limited portions of the Gove Deposition in which Mr. Gove testified in summary fashion that certain practices described in the deposition were "typical" is insufficient to support the confidentiality designation of over half the deposition testimony. As the ruling by the Minnesota Supreme Court in *Rahr Malting* makes clear, Mr. Gove's summary testimony which SJM attempts to stretch to each of the 22 portions of the Gove Deposition falls far short of the requirement that the basis for protection be set forth with specificity.

SJM also attaches a chart identified as Exhibit E to the Declaration of David Stanley which purports to identify the basis for its 22 confidentiality designations. However, aside from vague and ambiguous claims that the designated portions generally discloses "corporate communication strategy" or "non-public commercial, and technical information," SJM provides no specific basis why such information should be protected, or how, if not protected, damage to SJM would result. For ease of reference, Plaintiffs will separately address the individual designations in Exhibit E in the attached chart and will address in this brief SJM's designations as categorized in the Gove Affidavit:

**Deposition items 1, 2, 3, 6, 8, 9, 10, 12, 13, 14, 17 and 18.** The Gove Affidavit describes the purported business value of the testimony in summary fashion, stating only that: "SJM describes these portions of testimony as revealing internal communications within SJM and that have been maintained in confidence by SJM. These items reveal internal corporate

communication strategies that are applied to SJM product lines beyond the Silzone product at issue in this litigation." *Gove Aff.* at ¶ 4.

First, SJM has failed to attach the designated portions of the deposition testimony to either the Declaration of David E. Stanley or to the Gove Affidavit, leaving this Court to decide in a vacuum the purported confidential nature of the testimony. Second, and notwithstanding that procedural infirmity, SJM has not satisfied its obligation to provide the confidential nature of the designated testimony. In contrast to the affidavit in *Rahr Malting* (which, as discussed above, was itself rejected despite its greater specificity), SJM's motion and supporting papers are devoid of any specific factual details as to how the testimony reveals non-public commercial and technical information and/or competitively sensitive information of a nonpublic nature. Nor has SJM explained what product lines beyond the Silzone valve the communications strategies apply let alone explain how SJM would be damaged should the testimony not be sealed.

**Deposition items 2, 3, 5, 15, 16 and 19.** SJM claims that these are portions of testimony that relate to "internal communication within SJM that have been maintained in confidence by SJM. They reveal internal regulatory strategies that are applied to SJM product lines beyond the Silzone product at issue in this litigation." *Gove Aff.* at ¶ 5.

As with the foregoing category, SJM has not presented any portions of the deposition testimony for examination. And, as with the foregoing category, SJM has not met its burden under the applicable law in demonstrating that the testimony should be sealed, has not identified what product lines beyond Silzone the so-called strategies apply or how disclosure of the testimony would cause any damage to the company.

**Deposition items 4 and 7.** SJM claims these two portions discuss "highly sensitive technical and/or financial information that was not widely disseminated within SJM. SJM has

maintained the information in confidence. The testimony at issue discusses several different SJM products, and is not limited to the development and marketing of the Silzone products alone." *Gove Aff.* at ¶ 6.

Again, due to the lack of specificity in the Gove Affidavit and its failure to attach the portions it seeks to be sealed, one is left to guess what "sensitive technical and/or financial information" will be revealed, what steps SJM has taken to ensure that such information has not been widely disseminated or has been maintained in confidence, what product lines would be affected from not sealing the testimony, and what harm, if any, would result.

**Deposition item 11.** SJM's basis for confidential designation of this last item is even more generalized and vague than the previous categories. Here, the Gove Affidavit simply describes the testimony as revealing "non-public commercial information that applies to several different SJM products and divisions, and is not limited to the development and marketing of Silzone alone." *Gove Aff.* at ¶ 7.

Item 11 actually refers to testimony regarding SJM's document retention policy. Contrary to SJM's position that the related testimony should be protected, SJM has provided no rationale or explanation as to how a document retention policy constitutes commercially sensitive information or that it has any business value at all outside of SJM. There is nothing of a confidential about the testimony, let alone anything approaching trade secret status.

### C. CONFIDENTIALITY OF THE TESTIMONY IS FAR OUTWEIGHED BY THE IMPORTANCE OF MAINTAINING PUBLIC ACCESS TO INFORMATION PERTAINING TO THE DEFECTIVE SILZONE HEART VALVE

In this case where the allegations are squarely focused on issues of public health and safety, and where the testimony at issue centers around the defective Silzone heart valve, it would be reasonable for this Court to hold that the balance favors public access to the testimony

particularly since SJM has not met its burden in demonstrating that the testimony reveals any information approaching trade secret status. *See e.g., Van Etten v. Bridgestone / Firestone, Inc.*, 117 F. Supp. 1375, 1384 (S.D. Ga. 2000)(product liability case: balance in favor of disclosure strengthened by public interest described as "legitimate because the tire tread separation defect concerns the health and safety of the public – interest of the highest order"); *State by Humphrey v. Phillip Morris, Inc.*, 606 N.W.2d 676, 692 (tobacco case: "public interest and public health and safety concerns are factors that weigh in favor of allowing public disclosure"); *Hammock v. Hoffman-LaRoche, Inc.*, 142 N.J. 356, 379 (N.J. 1995)(prescription drug defect case: "profound public interest when matters of health, safety and consumer fraud are involved . . . as a matter of public there must be careful scrutiny prior to sealing records and documents filed with a court in a high public-interest case").

SJM's argument that under PTO 5, Plaintiffs may show the underlying documents to anyone connected with the litigation misses the point. Plaintiffs do not challenge the documents themselves. Plaintiffs made that clear to SJM during the meet-and-confer process. Those documents have already been designated confidential under PTO 5 and Plaintiffs have and will continue to comply with the restrictions on disclosure attendant to such designations. On the other hand, Plaintiffs do challenge SJM's attempt to improperly shield as confidential the designated portions of testimony which fall far short of approaching proprietary, non-public commercial information warranting protection under PTO 5 and the applicable case law.

## D. THE *SNIDER* STATE COURT RULING DOES NOT SUPPORT THE CONFIDENTIALITY DESIGNATIONS OF TESTIMONY IN THIS CASE

SJM's reliance on Judge Bjorkman's ruling on confidentiality in the state court Silzone action is of no avail. In the *Snider* action, SJM submitted the affidavits of four employees - Fonda Burley (product regulation manager), William Holmberg (Director of Technical services),

Roy Hosek (Director of Marketing for Tissue Valves), and Alan R. Flory (Vice President of Clinical and Regulatory Affairs for the Cardiac Surgery Division) as foundation for its argument that the documents sought for protection contained confidential business information in the areas of marketing, research and development and regulatory. Based on the multiple affidavits, the court determined that SJM had demonstrated that certain of documents in those areas were of limited distribution, were maintain in confidentiality, and had economic value to SJM's competitors.

In contrast, SJM here submits the singular Gove Affidavit to cover areas ranging from marketing, development and regulatory to technical and finance. Yet, Mr. Gove himself limits the scope of this affidavit to that "based on my experience as Vice President of Corporate Relations." SJM's burden cannot be sustained in this case with an affidavit from Mr. Gove who has not and cannot attested to any specific knowledge in the areas of SJM's marketing, development, regulatory, technical and finance divisions.

More important, Judge Bjorkman's order makes clear that Silzone specific documents are not covered by the protective order:

> the remaining documents contain information limited to the Silzone valve. That information is stale because St. Jude has not had a Silzone product on the market since January 2000.

*Snider* Order at 8.

As detailed above, and in the attached chart in response to Exhibit E of the Declaration of David E. Stanley, the majority, if not all, of the testimony designated by SJM dates back to year 2001 or earlier and is Silzone specific. Accordingly, under applicable case law as well as under Judge Bjorkman's ruling in *Snider*, the portions of the Gove Deposition designated by SJM do not fall under the protection of PTO 5 or warrant sealing from public access.

## CONCLUSION

For the foregoing reasons, SJM's motion to protect the confidentiality of discovery material disclosed in the deposition of Peter Gove should be denied.

**ZIMMERMAN REED, P.L.L.P.**

DATED: August 3, 2004

BY: s/ J. Gordon Rudd, Jr.

CHARLES S. ZIMMERMAN
J. GORDON RUDD, JR.
DAVID M. CIALKOWSKI
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402
(612) 341-0400

**LEVY, ANGSTREICH, FINNEY, BALDANTE, RUBENSTEIN & COREN, P.C.**
STEVEN E. ANGSTREICH
MICHAEL COREN
CAROLYN C. LINDHEIM
Woodcrest Pavilion, Suite 100
Ten Melrose Avenue
Cherry Hill, New Jersey 08003
(856) 424-8967

**CAPRETZ & ASSOCIATES**
JAMES T. CAPRETZ
5000 Birch Street, Suite 2500
West Tower
Newport Beach, CA 92660
(949) 724-3000

**GREEN, SCHAAF & JACOBSON, P.C.**
JOE D. JACOBSON
7733 Forsyth, Suite 700
St. Louis, MO 63105
(314) 862-6800

**KELLOG & SIGELMAN**
DANIEL SIGELMAN
DEBORAH M. SCHECHTER
1742 N. Street, N.W.
Washington, DC20036
(202) 223-9880

Counsel for Plaintiffs