IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| IN RE ST. JUDE MEDICAL, INC.<br>SILZONE® HEART VALVE PRODUCTS<br>LIABILITY LITIGATION | :<br>:<br>: | MDL DOCKET NO. 1396 |

**DECLARATION OF ROBERT W. M. FRATER, M.D., IN SUPPORT OF DEFENDANT ST. JUDE MEDICAL'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL ST. JUDE MEDICAL TO ANSWER PLAINTIFFS' THIRD SET OF INTERROGATORIES AND SEVENTH REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT (MERITS PHASE)**

# DECLARATION OF ROBERT W. M. FRATER, M.D.

I, Robert W. M. Frater, M.D., declare as follows:

1. I have personal knowledge of the facts set forth in this declaration and would and could competently testify to those facts if called as a witness.

## A. Summary of Qualifications

2. Since September 1999, I have been the Medical Director for St. Jude Medical's Heart Valve Division. Prior to my appointment as Medical Director, I served on St. Jude Medical's Scientific Advisory Board. I am a board certified thoracic surgeon with a primary interest in the treatment of valvular heart disease. I have spent more than 40 years in active clinical practice as a cardiac surgeon. Since 1972, I have been a full professor of thoracic and cardiovascular surgery at Albert Einstein College of Medicine. I have also served as chief of cardiac surgery at Albert Einstein Hospital and was in charge of training medical students, residents and fellows in cardiac surgery. I was the acting chairman, Department of Cardiothoracic Surgery, Albert Einstein College of Medicine and Montefiore Medical Center from 1988-1992.

3. Since 1964, my clinical practice has been based primarily at the Albert Einstein Hospital in New York. I have performed more than 2000 heart valve implant surgeries including both mechanical and biological valves. I have followed many of my patients who have received prosthetic heart valves for close

to thirty years, and I am familiar with the generally accepted guidelines for monitoring the health of such patients. Because of my interest in treatment of valvular heart disease I have been involved in the development of both mechanical and biological replacement heart valves and have performed both *in vitro* and *in vivo* evaluation of heart valves. Much of my research has been focused on long term consequences of valvular implants. I am board certified as follows: American Board of Surgery, 1965 and The Board of Thoracic Surgery, 1966. A current copy of my C.V. is attached as Exhibit 1.

4. In 1992, I was one of the founders of the Journal of Heart Valve Disease. This journal is the most widely cited journal in the area of valvular heart disease. Physicians around the world as well as medical device specialists and materials scientists use it as a source of reference. I am also a member of the Association for Thoracic Surgery, The Society of Thoracic Surgeons, and The American Heart Association. I have frequently been invited to speak internationally, and have been made an honorary member of the Association of Cardiothoracic Surgeons of Great Britain & Ireland. I have authored or co-authored 19 book chapters, 41 published discussions & letters, 179 abstracts, and over 200 articles in the peer reviewed medical literature. Many of these publications concern valvular heart disease.

5. In my role of Medical Director for St. Jude Medical's Heart Valve Division, I consult on a wide range of medical issues relating to the company's

cardiac products. I provide medical advice on issues relating to product development, government regulations as well as clinical studies and patient follow-up.

6. I make this Declaration in support of St. Jude Medical's Opposition to Plaintiff's Motion to Compel Answers to Interrogatories and Production of Documents seeking information concerning "linearized rates" of certain complications in recipients of twelve different St. Jude Medical valves.

## B. Linearized Rates of Complications

7. When evaluating the frequency of adverse events or complications experienced by medical device recipients *in a clinical study*, biostatisticians, epidemiologists and other researchers often express the frequency of such events in terms of "linearized rates." A linearized rate is an estimate that is derived by dividing the number of occurrences of a particular event in a patient population by the total number of follow-up years in the population of patients being studied. Linearized rates may vary considerably from study to study because such rates are influenced by a variety of factors including but not limited to the following: the number of patients being followed; the design of the study; the exclusion criteria employed; the length of follow-up time used in the calculation; the age and overall health of the patients in each study; and the geographic location being evaluated, among other factors.

8. Accordingly, the calculation of the linear rates of adverse events associated with any type of medical device requires not only an accurate number of the adverse events in question but also follow-up data regarding the population of patients implanted with the device (both those who experienced the adverse events and those who did not), including the number of patients who received the device, their medical outcome, the medical facts to determine whether a particular outcome meets the criteria to be classified as an adverse event, the amount of time each patient has had the device implanted, and the amount of time from implantation to the time that any particular adverse event occurred in each patient. Such extensive data concerning patients who received a medical device is only collected for patients *being followed in a controlled clinical trial or study*. For example, it is my understanding the AVERT investigators have calculated linearized rates for some complications from time to time for patients with both conventional and Silzone® mechanical valves. Neither St. Jude Medical nor any other medical device manufacturer collects data on every patient who is implanted with the company's medical devices. Outside a clinical study setting, the data required to develop linearized rates is simply not available.

9. I have reviewed Plaintiff's Third Interrogatories and Seventh Request for Production and can state that St. Jude Medical does not have in its possession the information requested. Interrogatory No. 1 asks for "the most current annual linearized incidence rate" for five complications that occur in mechanical heart valve patients: bleeding, endocarditis, paravalvular leak, thromboembolism and

valve thrombosis. The rates of these complications are requested for the entire population of the recipients of twelve models of St. Jude Medical mechanical or tissue valves in both the aortic and mitral position. As such, this request is not limited to any defined population of patients implanted with these valves as would be the case in a clinical study.

10. I am informed that Plaintiffs have represented in a motion to compel answers to these interrogatories and to produce documents that the management of St. Jude Medical "routinely calculates" the linearized rate information requested in the interrogatory. This statement is not correct. St. Jude Medical simply does not possess or have any means of obtaining the data necessary to calculate linearized rates of complications for the entire population of recipients of each of its heart valves. In order to comply with its regulatory obligations, St. Jude Medical collects data regarding adverse events that occur in patients who have received its valves. These adverse event data are reported to the company by physicians. That data is not sufficient, however, to calculate linearized rates of complications. First, as with every self-reporting system, the data are incomplete. But, more significantly, the adverse event data is what the name states: data only on those patients who experience an adverse event. To estimate linearized rates of complications for the entire population of recipients any of its valves, St. Jude Medical would also have to have access to detailed medical information about the population of valve recipients who did not experience an adverse event. As noted above, neither St. Jude Medical nor any other medical device manufacturer collects

such data for the entire population of patients who received the companies' valves or other medical device. Consequently, St. Jude Medical does not, indeed cannot, calculate information regarding linearized complication rates for any of its products.

11. To the extent that I or other individuals at St. Jude Medical have, from time to time, had knowledge of linearized complication rates in limited populations of recipients of some of the company's heart valves, that knowledge has come not from calculations but from "looking it up," i.e., from a review of the medical and scientific literature containing clinical studies in which linear rates have been calculated by those conducting the clinical study. This scientific and medical literature is publicly available. Thus, it might be possible to survey the medical and scientific literature and find studies that have estimated linearized rates for certain complications in limited populations of recipients of certain valves from already published studies. But, to provide estimates of linearized complication rates for *all* recipients of a particular valve, as requested

in these interrogatories, is impossible. Therefore, St. Jude Medical does not have the information requested in the interrogatory.

I declare, under penalty of perjury, under the laws of New York, that the foregoing is true and correct.

DATED: July 7, 2004.

Robert W. M. Frater, M.D.

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION