# Colorado

## COLORADO

| | Did SJM's conduct violate the consumer protection law? | Private cause of action? | Scienter requirement? | Individual Reliance? | Does the law prohibit material omissions? |
|---|---|---|---|---|---|
| MN | Yes | Yes | No | No | Yes |
| CO | Yes<br>Colo. Rev. Stat. Ann. §6-1-105(e); (g) | Yes[1] | Yes[2] | No[3] | Yes[4] |

**Are there any true conflicts of substantive law?**

Yes. Violations require knowing misrepresentation or in the case of omissions, an intention to induce the consumer to enter the transaction.

**Which state does the choice influencing factors favor?**

Colorado does not have a strong interest in imposing a scienter requirement. The defendant is not a Colorado company and the marketing misconduct emanated out of Minnesota by a Minnesota resident company. The Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101 to –511 (2003) ("CCPA") "is a remedial statute intended to deter and punish deceptive trade practices committed by businesses in dealing with the public." Coors v. Security Life of Denver Ins., 91 P.3d 393, 398 (Col. App. 2003) (citation omitted), cert. granted in part, 2004 WL 1146583 (Col. May 24, 2004) (No. 03SC682). "The CCPA's broad legislative purpose is 'to provide prompt, economical, and readily available remedies against consumer fraud.'" Id. (citation omitted). Accordingly application of Minnesota's consumer protection statures which does not require proof of the defendant's scienter would not frustrate Colorado's governmental

---

[1] Colo. Rev. Stat. Ann. §6-1-113; Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc., 62 P.3d 142, 147 (2003)( need to show public impact for private cause of action).

[2] Colo. Rev. Stat. Ann. §6-1-105(e) ("knowingly"); 6-1-105(g) ("knows or should know"); 6-1-105(u) ("intended").

[3] Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc., 62 P.3d 142, 147 (2003) (6-1-105(1)(e) "false representation" must either induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers").

[4] Colo. Rev. Stat. Ann. §6-1-105(u).

interests in requiring proof of scienter (presumably to restrain liability and protect legitimate business in Colorado).

Furthermore, Colorado has no interest in depriving its citizens of the benefits of Minnesota's consumer protections against a Minnesota corporation. See Downing v. Abercrombie & Fitch, 265 F.3d 994, 1006-07 (9th Cir. 2001) (dismissing as "pure fancy" the suggestion that Hawaii would wish to restrict its residents from recovery that others could obtain under California law); Mahne v. Ford Motor, 900 F.2d 83, 88 (6th Cir. 1990) (observing that Florida had no interest in having Florida statute of repose apply to a Florida accident involving a Florida plaintiff where such application "would not benefit the interest it was designed to protect," because it would instead serve to protect a foreign manufacturer in a foreign court at the expense of a Florida resident); Jackson v. Travelers Ins., 26 F. Supp. 2d 1153, 1162 (S.D. Iowa 1998); Magnant v. Medtronic, Inc., 818 F. Supp. 204, 207 (W.D. Mich. 1993) (Michigan's interest in protecting its own citizens did not weigh in favor of Michigan law where Minnesota law provided more protection); Fort Hammond Paper Co. v. William D. Witter, Inc., 1985 WL 1402, *8 (S.D.N.Y. 1985); Friends for All Children, Inc. v. Lockheed Aircraft Corp., 587 F. Supp. 180, 191 (D.D.C. 1984).

On the other hand, the governmental interests of Minnesota in applying its statutory consumer protection laws that do not require proof of defendant's scienter to a situation involving one of its own resident companies charged with committing misconduct arising and occurring predominantly in Minnesota, and that relates to an industry important to Minnesota's economy and citizens well being, would be greatly frustrated by applying Colorado's law. Minnesota's has a far greater interest in applying its laws to: (1) deter deceptive and unfair advertising and marketing practices by its resident manufacturers and merchants; (2) remedy any misleading and abusive marketing practices by its resident manufacturers and merchants that occurred, especially where, as here, issues of consumer health and safety are implicated; *see e.g.*- State by Humphrey v. Alpine Air Prods., Inc., 500 N.W.2d 788, 790 (Minn.1993)(misrepresenting ozone emitted by indoor air cleaner as being safe to consumer's health); Kociemba v. G.D. Searle & Co., 680 F.Supp. 1293, 1304-1305 (D.Minn.,1988) (misrepresentation of safety of intrauterine device product )and (3) provide compensating to consumers abused and harmed by its resident manufacturers and merchants misconduct committed, occurring or directed from Minnesota. Minnesota courts have long recognized that Minnesota has a strong interest in both compensating tort victims and promoting responsibility for corporations committing wrongful acts, particularly if the wrongdoer is a Minnesota corporation. Jacobson v. Universal Underwriters Ins. Group, 645 N.W.2d 741 (Minn. 2002); Boatwright v. Budak 625 N.W.2d 483, 489(2001); Bigelow v. Halloran, 313 N.W.2d 10 (Minn. 1981). This interest in fully compensating tort victims is not limited to Minnesota residents. See Jacobson 645 N.W.2d 741 (holding that a nonresident should be fully compensated); Gimmestad v. Gimmestad, 451 N.W.2d 662,

666 (Minn. App. 1990) (*same*). Under these circumstances, Minnesota's governmental interests in applying its consumer protection law are paramount to Colorado's.

Furthermore, Minnesota's interests in conforming the behavior of a Minnesota corporation to the strictures of Minnesota law, and in preserving national consumer confidence in Minnesota corporations, are strong. See CTS v. Dynamic Corp, 481 U.S. 69, 93 (1987); State by Humphrey v. Philip Morris, 551 N.W.2d 490, 495 (Minn. 1996) (noting Minnesota's policy of encouraging aggressive prosecution of statutory consumer law violations); Ferris Baker Watts v. Deutsche Bank, 2004 WL 2501563, *6-8; Simon v. Phillip Morris, 124 F. Supp. 2d 46, 72 (E.D.N.Y. 2000); Boyes v. Greenwich Boat Works, 27 F. Supp. 543, 547. (D.N.J. 1998).

C.R.S.A. § 6-1-101

**COLORADO STATUTE**

West's Colorado Revised Statutes Annotated Currentness
Title 6. Consumer and Commercial Affairs (Refs & Annos)
Fair Trade and Restraint of Trade
Article 1. Colorado Consumer Protection Act (Refs & Annos)
Part 1. Consumer Protection--General (Refs & Annos)

**→§ 6-1-101. Short title**

This article shall be known and may be cited as the "Colorado Consumer Protection Act".

**→§ 6-1-105. Deceptive trade practices**

(1) A person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person:

***

(e) Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith;

***

(g) Represents that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another;

***

(u) Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction;

***

(2) Evidence that a person has engaged in a deceptive trade practice shall be prima facie evidence of intent to injure competitors and to destroy or substantially lessen competition.

***

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**→§ 6-1-113. Damages**

(1) The provisions of this article shall be available in a civil action for any claim against any person who has engaged in or caused another to engage in any deceptive trade practice listed in this article. An action under this section shall be available to any person who:

(a) Is an actual or potential consumer of the defendant's goods, services, or property and is injured as a result of such deceptive trade practice, or is a residential subscriber, as defined in section 6-1-903(9), who receives unlawful telephone solicitation, as defined in section 6-1-903(10); or

***

(2) Except in a class action or a case brought for a violation of section 6- 1-709, any person who, in a private civil action, is found to have engaged in or caused another to engage in any deceptive trade practice listed in this article shall be liable in an amount equal to the sum of:

(a) The greater of:

(I) The amount of actual damages sustained; or

(II) Five hundred dollars; or

(III) Three times the amount of actual damages sustained, if it is established by clear and convincing evidence that such person engaged in bad faith conduct; plus

(b) In the case of any successful action to enforce said liability, the costs of the action together with reasonable attorney fees as determined by the court.

***

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**H**
Only the Westlaw citation is currently available.

Supreme Court of Colorado.
En Banc.
William K. COORS, individually, Petitioner,
v.
SECURITY LIFE OF DENVER INSURANCE CO., a registered domestic insurance corporation, Respondent.
**No. 03SC682.**

May 24, 2004.

Court of Appeals Case No. 02CA0851 (8/28/03).

***1** Petition for Writ of Certiorari GRANTED.

*Summary of Issues:*

Whether the court of appeals erred in concluding, as a matter of law, that the record lacked substantial evidence of public impact resulting from the defendant's conduct, as required for violation of the Colorado Consumer Protection Act.

Whether the court of appeals erred in holding that petitioner was not entitled to surrender his policy without a penalty, despite Security Life's misconduct, which both courts considered a material breach of the insurance contract.

Whether the court of appeals erred in reversing the district court's award of punitive damages and attorney fees.

DENIED AS TO ALL OTHER ISSUES.

Justice HOBBS would grant on the following issue:

Whether the court of appeals erred in deciding an issue of first impression, by ruling that a violation of Colorado's Unfair Competition--Deceptive Practice Act, which defines and makes illegal specific unfair trade practices by the insurance industry, does not constitute a *per se* violation of the Colorado Consumer Protection Act.

Not Reported in P.3d, 2004 WL 1146583 (Colo.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.