© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Briefs and Other Related Documents
Only the Westlaw citation is currently available.

United States District Court,C.D. California.
Michael ANUNZIATO, Plaintiffs,
v.
eMACHINES, INC., Defendants.
**No. SACV05-610JVSMLGX.**

Nov. 10, 2005.

**Background:** Laptop computer buyer brought putative class action against manufacturer, asserting claims for violations of California's Unfair Competition Law (UCL), False Advertising Law (FAL), and Song-Beverly Consumer Warranty Act, and for breach of express and implied warranties. Manufacturer moved to dismiss.

**Holdings:** The District Court, Selna, J., held that:

2 (1) California's UCL and FAL imposed no reliance requirement on plaintiffs;

6 (2) manufacturer's references to quality, reliability, and performance, in user manual, were non-actionable puffery;

10 (3) manufacturer's statements that computer passed through "most stringent quality control tests," and used brand-name components, were not mere puffery and were thus actionable;

12 (4) named plaintiff's express warranty claim was time-barred;

13 (5) buyer who purchased computer from retailer could not maintain claim against manufacturer for breach of implied warranty of merchantability; and

18 (6) Song-Beverly Act did not apply to purchase of computer over the internet by buyer, who was Massachusetts resident.

Granted in part and denied in part.

[1] **Consumer Protection 92H 🔑32**

92H Consumer Protection
92HII Remedies of Consumer
92Hk32 k. Right of Action in General. Most Cited Cases

To establish standing under California's Unfair Competition Law (UCL) and False Advertising Law (FAL), a plaintiff must have suffered injury and lost money or property. West's Ann.Cal.Bus. & Prof.Code § 17200 et seq.; West's Ann.Cal.Bus. & Prof.Code § 17500 et seq.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[2] **Consumer Protection 92H 🔑34**

92H Consumer Protection
92HII Remedies of Consumer
92Hk34 k. Fraud, Knowledge, Intent, or Reliance as Necessary Elements.
Most Cited Cases
Provisions of California's Unfair Competition Law (UCL) and False Advertising Law (FAL) allowing only claims brought by persons who have suffered injury in fact and lost money or property "as result of" unfair or unlawful acts impose no reliance requirement on plaintiffs alleging claims under those statutes. West's Ann.Cal.Bus. & Prof.Code § 17200 et seq.; West's Ann.Cal.Bus. & Prof.Code § 17500 et seq.

[3] **Consumer Protection 92H 🔑3**

92H Consumer Protection
92HI In General
92Hk2 Constitutional and Statutory Provisions
92Hk3 k. Purpose, Intent, and Construction in General. Most Cited Cases
The goal of both California's Unfair Competition Law (UCL) and its False Advertising Law (FAL) is the protection of consumers. West's Ann.Cal.Bus. & Prof.Code § 17200 et seq.; West's Ann.Cal.Bus. & Prof.Code § 17500 et seq.

[4] **Consumer Protection 92H 🔑32**

92H Consumer Protection
92HII Remedies of Consumer
92Hk32 k. Right of Action in General. Most Cited Cases
Harm in fact will meet the "as a result of" requirement of California's Unfair Competition Law (UCL) and False Advertising Law (FAL) provisions allowing only claims brought by persons who have suffered injury in fact and lost money or property "as result of" unfair or unlawful acts. West's Ann.Cal.Bus. & Prof.Code § 17200 et seq.; West's Ann.Cal.Bus. & Prof.Code § 17500 et seq.

[5] **Consumer Protection 92H 🔑7**

92H Consumer Protection
92HI In General
92Hk7 k. Advertisements and Labeling in General. Most Cited Cases
Generalized, vague, and unspecified assertions constitute mere "puffery" upon which a reasonable consumer could not rely, and hence are not actionable under California's Unfair Competition Law (UCL) or False Advertising Law (FAL). West's Ann.Cal.Bus. & Prof.Code § 17200 et seq.; West's Ann.Cal.Bus. & Prof.Code § 17500 et seq.

[6] **Consumer Protection 92H 🔑7**

92H Consumer Protection
92HI In General
92Hk7 k. Advertisements and Labeling in General. Most Cited Cases

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Term "quality" in statements made by computer manufacturer in user manual for its laptop computer was mere puffery and thus use of term was not actionable under California's Unfair Competition Law (UCL) and False Advertising Law (FAL). West's Ann.Cal.Bus. & Prof.Code § 17200 et seq.; West's Ann.Cal.Bus. & Prof.Code § 17500 et seq.

[7] **Consumer Protection 92H 🔑7**

92H Consumer Protection
92HI In General
92Hk7 k. Advertisements and Labeling in General. Most Cited Cases

Term "reliability" in statements made by computer manufacturer in user manual for its laptop computer was mere puffery and thus use of term was not actionable under California's Unfair Competition Law (UCL) and False Advertising Law (FAL); term was inherently vague and general and was incapable of objective verification. West's Ann.Cal.Bus. & Prof.Code § 17200 et seq.; West's Ann.Cal.Bus. & Prof.Code § 17500 et seq.

[8] **Consumer Protection 92H 🔑7**

92H Consumer Protection
92HI In General
92Hk7 k. Advertisements and Labeling in General. Most Cited Cases

Reference to "performance" in statements made by computer manufacturer in user manual for its laptop computer was mere puffery and thus use of term was not actionable under California's Unfair Competition Law (UCL) and False Advertising Law (FAL). West's Ann.Cal.Bus. & Prof.Code § 17200 et seq.; West's Ann.Cal.Bus. & Prof.Code § 17500 et seq.

[9] **Consumer Protection 92H 🔑7**

92H Consumer Protection
92HI In General
92Hk7 k. Advertisements and Labeling in General. Most Cited Cases

Computer manufacturer's statement, in user manual, that laptop computer used "latest technology" was mere puffery and thus use of term was not actionable under California's Unfair Competition Law (UCL) and False Advertising Law (FAL). West's Ann.Cal.Bus. & Prof.Code § 17200 et seq.; West's Ann.Cal.Bus. & Prof.Code § 17500 et seq.

[10] **Consumer Protection 92H 🔑7**

92H Consumer Protection
92HI In General
92Hk7 k. Advertisements and Labeling in General. Most Cited Cases

Computer manufacturer's statement, in user manual, that laptop computer passed through "most stringent quality control tests" was not mere puffery and thus was actionable under California's Unfair Competition Law (UCL) and False Advertising Law (FAL); statement was a specific factual assertion that could be established or disproved through discovery. West's Ann.Cal.Bus. & Prof.Code § 17200 et seq.; West's Ann.Cal.Bus. & Prof.Code § 17500 et seq.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[11] **Consumer Protection 92H 7**

92H Consumer Protection
    92HI In General
        92Hk7 k. Advertisements and Labeling in General. Most Cited Cases

Computer manufacturer's statement, in user manual, that laptop computer used brand-name components was not mere puffery and thus was actionable under California's Unfair Competition Law (UCL) and False Advertising Law (FAL), since reference to "brand-name components" was specific factual statement that could be established or disproved through discovery. West's Ann.Cal.Bus. & Prof.Code § 17200 et seq.; West's Ann.Cal.Bus. & Prof.Code § 17500 et seq.

[12] **Consumer Protection 92H 6**

92H Consumer Protection
    92HI In General
        92Hk6 k. Particular Subjects and Regulations. Most Cited Cases

Alleged overheating problem with buyer's laptop computer occurred after expiration of one-year warranty and thus buyer's claim of breach of express warranty was time-barred under California law notwithstanding buyer's claim that he had reported similar problem, and had laptop serviced by manufacturer, during warranty period, although buyer would be permitted to join another class representative with claim that was not time-barred in buyer's putative breach-of-warranty class action against manufacturer.

[13] **Federal Civil Procedure 170A 182.5**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors.
Most Cited Cases

**Sales 343 255**

343 Sales
    343VI Warranties
        343k255 k. Parties; Privity. Most Cited Cases

Under California law, laptop computer buyer who purchased computer from retailer lacked vertical privity with computer manufacturer, as required to state claim for breach of implied warranty of merchantability, although buyer would be permitted to join another class representative who could allege privity in buyer's putative breach-of-warranty class action against manufacturer.

Under California law, laptop computer buyer who purchased computer from retailer lacked vertical privity with computer manufacturer, as required to state claim for breach of implied warranty of merchantability, although buyer would be permitted to join another class representative who could allege privity in buyer's putative breach-of-warranty class action against manufacturer.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[14] **Sales 343 ⚷255**

343 Sales
343VI Warranties
343k255 k. Parties; Privity. Most Cited Cases
In California, a plaintiff alleging breach of warranty claims must stand in vertical privity with the defendant.

[15] **Sales 343 ⚷255**

343 Sales
343VI Warranties
343k255 k. Parties; Privity. Most Cited Cases
Under California law, "vertical privity" required for breach of warranty claims refers to links in the chain of distribution of goods; if the buyer and seller occupy adjoining links in the chain, they are in vertical privity with each other.

[16] **Sales 343 ⚷255**

343 Sales
343VI Warranties
343k255 k. Parties; Privity. Most Cited Cases
Under California law, if a retail buyer seeks warranty recovery against a manufacturer with whom he has no direct contractual nexus, the manufacturer may seek insulation via the vertical privity defense.

[17] **Sales 343 ⚷255**

343 Sales
343VI Warranties
343k255 k. Parties; Privity. Most Cited Cases
Under California law, there is no privity, for purpose of breach of warranty claim, between the original seller and a subsequent purchaser who is in no way a party to the original sale.

[18] **Consumer Protection 92H ⚷5**

92H Consumer Protection
92HI In General
92Hk5 k. Persons and Transactions Subject to Regulation, in General. Most Cited Cases
California's Song-Beverly Consumer Warranty Act, governing goods sold at retail in California, did not apply to Massachusetts resident's purchase of laptop computer over the internet. Cal. Civ.Code § 1792.

James E. Miller, Shepherd Finkelman Miller and Shah, Patrick A. Klingman, Chester, CT, James C. Shah, Nathan Zipperian, Shepherd Finkelman Miller and Shah, Media, PA, Thomas D. Mauriello, Thomas D Mauriello Law Offices, San Francisco, CA, for Plaintiffs.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Jeffery David McFarland, Shon Morgan, Stan Karas, Quinn Emanuel Urquhart Oliver & Hedges, Los Angeles, CA, for Defendants.

MEMORANDUM RE MOTION TO DISMISS

SELNA, District J.

## I. *BACKGROUND*

***1** The instant case is a putative class action alleging that a line of defendant eMachines, Inc.'s ("eMachines") laptop computers contains a defect causing some of them to overheat. Plaintiff Michael Annunziato ("Annunziato") has alleged five claims under California law and seeks relief on behalf of "[a]ll persons or entities who purchased ... the eMachines 5300 series laptops." (Complaint, ¶ 13.) Specifically, Annunziato's Complaint asserts claims against eMachines for violations of the Unfair Competition Law ("UCL" or "Section 17200"), Bus. & Prof.Code § 17200 *et seq.;* the False Advertising Law ("FAL" or "Section 17500"), Bus. & Prof.Code § 17500 *et seq.;* the Song-Beverly Consumer Warranty Act ("Song-Beverly Act" or "Section 1790"), Cal. Civ.Code § 1790 *et seq.;* and for breach of express and implied warranties.

In May 2003, eMachines started production and marketing of five models of laptop computers, known as the M5300 series. (Complaint, ¶ 2.) In December 2003, Annunziato purchased a M5312 laptop over the internet from BestBuy.com. (*Id.*, ¶ 8.) Annunziato's laptop contained a one-year warranty for "defects in material and workmanship under normal use." (*Id.*, ¶ 28.) On July 1, 2004, Annunziato sent his laptop to eMachines for warranty service based on an alleged overheating problem. (*Id.*, ¶ 29.) eMachines asserts that it corrected the problem and returned the laptop to Annunziato two weeks later. (*Id.*) Approximately seven months later, after the expiration of the one-year warranty, Annunziato contacted eMachines concerning an alleged overheating problem with his laptop. (*Id.*, ¶ 30.) eMachines stated that the warranty had expired and that it would not perform further service without payment of diagnostic and repair fees. (*Id.*)

## II. *LEGAL STANDARD*

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss will not be granted unless it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In resolving a Rule 12(b)(6) motion, the Court must construe the Complaint in the light most favorable to the plaintiff and must accept all well-pleaded factual allegations as true. *Cahill v. Liberty Mutual Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir.1996). The Court must also accept as true all reasonable inferences to be drawn from the material allegations in the Complaint. *Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th Cir.1998).

## III. *DISCUSSION*

### A. *Unfair Competition and False Advertising*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

eMachines advances two theories to defeat the UCL and FAL claims. First, eMachines asserts that Annunziato has failed to allege that he was harmed "as a result of" these violations, as required by recent statutory amendments introduced by Proposition 64. eMachines asserts that this requirement can only be met by pleading reliance. Second, eMachines contends that its allegedly unfair and misleading statements are puffery, which is not actionable.

1. *Proposition 64*

***2** Proposition 64 was adopted to curb abuses in California's consumer protection statutes. Prior to Proposition 64, a plaintiff could bring suit without standing and without any claim that he had suffered any injury because of the statutory violation he was attacking. This served as a gateway for diligent protectors of consumer rights as well as the unscrupulous.

[1] Propositions 64 eliminated so-called "unaffected plaintiff" standing. Under both the UCL and the FAL, a plaintiff must now have suffered injury and lost money or property. The new statutory language allows for only those claims brought "by any person who has suffered an injury in fact and has lost money or property as a result of such unfair competition." (Prop.64, § 3.)

[2] eMachines asserts that the "as a result of" language in Proposition 64 imposes a reliance requirement on all private persons alleging a claim under the UCL and the FAL. eMachines points out that California courts have construed "as a result of" language in other statutes as imposing a reliance requirement. *Wilens v. TD Waterhouse Group. Inc.*, 120 Cal.App.4th 746, 754, 15 Cal.Rptr.3d 271 (2003); *Caro v. Procter & Gamble Co.*, 18 Cal.App.4th 644, 668, 22 Cal.Rptr.2d 419 (1993). eMachines further claims that because Annunziato does not allege that he even saw, let alone relied upon, any of the challenged statements by eMachines, his claim must fail. (Mot., p. 5.)

Annunziato counters that Proposition 64 did not add any reliance pleading requirement to the UCL and the FAL, but even if it did, it can be presumed for purposes of his claims. (Opp'n, p. 3.) In addition, Annunziato states that because his claims are based not only on misrepresentations, but also on omissions, omissions alone can form the basis for UCL and FAL liability. (Opp'n, pp. 10-11.) For the reasons discussed below, the Court need not address the issues of presumed reliance or liability based on omissions.

*Caro* and *Wilens* are distinguishable from the present case. Both arise under the Consumer Legal Remedies Act ("CLRA"), Cal. Civ.Code 1780, *et seq.*, not the UCL or the FAL, and there are several reasons for declining to import the CLRA's reliance requirement. First, the statutes have significant structural differences. The CLRA lists twenty-three distinct practices which are actionable. Cal. Civ.Code § 1770(a). By contrast, the UCL broadly proscribes "unfair competition," and the FAL is equally broad in it proscription of "untrue or misleading" statements in advertising. Second, the remedies are different. A plaintiff suing under the CLRA may recover actual and punitive damages; those remedies are denied under both the UCL and the FAL. *Compare* Cal. Civ.Code § 1780(a)(1),(4) *with* Cal. Bus. & Prof.Code § § 17203, 17500. It does not follow that the limitations on one statute ought to,

or need to, be read into the other. Said another way, there is a legitimate basis for requiring reliance and causation where the plaintiff seeks monetary benefit. The same need does not exist when the principal benefit of statutory enforcement, even when undertaken by a single individual non-class representative plaintiff, is protection of the public. Moreover, a discussed below, reading reliance into the UCL and the FAL would subvert the public protection aspects of those statutes.

***3** [3] The goal of both the UCL and the FAL is the protection of consumers. However, the Court can envision numerous situations in which the addition of a reliance requirement would foreclose the opportunity of many consumers to sue under the UCL and the FAL. One common form of UCL or FAL claim is a "short weight" or "short count" claim. For example, a box of cookies may indicate that it weighs sixteen ounces and contains twenty-four cookies, but actually be short. Even in this day of increased consumer awareness, not every consumer reads every label. If actual reliance were required, a consumer who did not read the label and rely on the count and weight representations would be barred from proceeding under the UCL or the FAL because he or she could not claim reliance on the representation in making his or her purchase. Yet the consumer would be harmed as a result of the falsity of the representation.

Some consumers are likely never to read the representations. Suppose a father sends his young son on an adventure to the supermarket to purchase the same box of cookies. He would be cheated on the purchase but be without relief if he failed to read and rely on the label. Or consider a person with minimal or no literacy skills who purchases a product on the basis of the box design or other visual characteristics. That person could never allege reliance on the written representation. The Court notes that twenty-four percent of adults in California are at the lowest literacy level. (*http://www.caliteracy.org/resourcesreferrals/literacystatistics/index.html.*) Further, two million native English speakers in California are functionally illiterate. (*Id.*) "A functionally illiterate adult is unable to read, write, and communicate in English, and compute and solve problems at levels of proficiency necessary to function on the job and in society." (*Id.*)

A reliance requirement could also adversely affect individuals who are literate but have minimal or no English proficiency. Based on data collected in the 2000 census, over thirty-nine percent of people over five years of age living in California spoke a language other than English at home. (*http://www.census.gov/prod/2003pubs/c2kbr-29.pdf.*) In fact, in 2000, California had the highest percentage of people who spoke a language other than English at home in the nation. (*Id.*) Further, the Court notes that as of the 2000 Census, California had the second largest number of foreign born people who spoke a language other than English at home. (*English Abilities of U.S. Foreign-Born Population*, Elizabeth Greico, *http:// www.migrationinformation.org/USFocus/display.cfm?ID=84.*) Specifically, the proportion of the foreign-born population over the age of five who spoke a language other than English at home in California was eighty-nine percent.

The goal of consumer protection is not advanced by eliminating large segments of the public from coverage under the UCL or the FAL where they suffer actual harm merely because they were inattentive or for one reason or another lacked the language skills to appreciate the particular unfair or false representation in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

issue. A construction of these statutes that reduced them to common law fraud would not only be redundant, but would eviscerate any purpose that the UCL and the FAL have independent of common law fraud.

***4** [4] The Court need not torture the language of the UCL and the FAL statutes to conclude that harm in fact will meet the "as a result of" requirement. Where the manufacturer of a product makes a false representation as to weight or count, to continue the above example, the consumer is unquestionably harmed as a result of the falsity because he was shortchanged.

The Court finds that the remedial purposes of Proposition 64 are fully met without imposing requirements which go beyond actual injury. Significantly, none of the ballot materials which accompanied Proposition 64-the California Attorney General's summary, the commentary prepared by the California Legislative Analyst's Office, or the arguments for and against the Proposition-mention reliance. They do stress injury in fact.

The intent of Proposition 64 was to eliminate the filing of frivolous lawsuits brought to recover attorney's fees without a corresponding public benefit and the filing of lawsuits on behalf of the public welfare without any accountability to the public. (Prop.64, § 1(b).)) The California voters identified the gateway for these abuses as the "unaffected plaintiff," which was often the sham creation of attorneys, and expressed their intent "to prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact under the standing requirements of the United States Constitution." (Prop.64, § 1(e).) *See Molski v. Mandarin Touch Restaurant,* 347 F.Supp.2d 860, 867 (C.D.Cal.2004); *People ex rel. Lockyer v. Brar,* 115 Cal.App.4th 1315, 1316-17, 9 Cal.Rptr.3d 844 (2004) (observing that the Trevor Law Group has achieved infamy in California for carrying out shakedown schemes under Section 17200 *et seq.*). An injury in fact requirement achieves these goals. [FN1]

At oral arguments eMachines contended that even if the "as a result of language" did not impose a reliance requirement with respect to Section 17200, it did with respect to Section 17500. eMachines claims that there is a distinction between the "unfair" language in Section 17200, and the "unlawful" language in Section 17500. Section 17200 defines unfair competition as "any *unlawful,* unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." (Emphasis provided.) Given that Section 17200 includes unlawful activities, the Court sees no distinction between Section 17200 and Section 17500 for purposes of reading a reliance requirement into the "as a result of" language. Therefore, the Court declines to read a reliance requirement into the "as a result of" language in either Section 17200 or Section 17500.

2. *Puffery*

[5] Generalized, vague, and unspecified assertions constitute "mere puffery" upon which a reasonable consumer could not rely, and hence are not actionable. *Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir.2003); *See also Summit Technology, Inc. v. High-Line Medical Instruments, Co.*, 933 F.Supp.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

918, 931 (C.D.Cal.1996) ("Puffery is often described as 'involving outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude reliance by consumers" ') (internal citations omitted). While some of eMachines' representations constitute puffery, others do not. Thus, as discussed below, the UCL and the FAL claims cannot be dismissed in light of the fact that at least some actionable statements have been pled.

***5** The user manual accompanying Annunziato's laptop, and all of the 5300 series laptops, stated, among other things,

We are sure that you'll be pleased with the outstanding quality, reliability, and performance of your new notebook. Each and every eMachines notebook uses the latest technology and passes through the most stringent quality control tests to ensure that you are provided with the best product possible.

eMachines stands behind our value proposition to our customers-to provide best-of-class service and support in addition to high-quality, brand-name components at affordable prices. If you ever have a problem, our knowledgeable, dedicated Customer Care department will provide you with fast, considerate service.

(Complaint, ¶ 23.)

In addition, in a press release issued by eMachines on May 6, 2003, eMachines stated that the M5305 " 'offers consumers the "best-in-value" wide-screen notebook PC available ... we provide notebook users a full-featured, mobile PC for most business, academic and consumer computing applications." ' (*Id.*, ¶ 24; ellipses in original.)

eMachines contends that Annunziato's claims under California's unfair competition and false advertising statutes are non-actionable puffery.

a. *Quality, Reliability, Performance*

i. *Quality*

[6] The Court finds that the word "quality" is non-actionable puffery.

In *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1008 (7th Cir.2004), the Court held that the phrase "high quality," in that case as applied to the amount of care to residents of a nursing home, "comes under the category of sales puffery upon which no reasonable person could rely in making a decision ...." *See also* *Osborne v. Subaru of America, Inc.*, 198 Cal.App.3d 646, 660, 243 Cal.Rptr. 815 (1988) ("Sellers are permitted to 'puff' their products by stating opinions about the quality of the goods so long as they don't cross the line and make factual representations about important characteristics like a product's safety").

ii. *Reliability*

[7] The Court finds that the word "reliability" is non-actionable puffery.

"The word 'reliable' is inherently vague and general-in common parlance akin to a

statement that the machine is 'fine." ' *Summit Technology, Inc. v. High-Line Medical Instruments, Co.*, 933 F.Supp. 918, 931 (C.D.Cal.1996). Further, the *Summit* court held that a claim that machines are "reliable" is "incapable of objective verification and not expected to induce reasonable consumer reliance." (*Id.*) *See also Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 825 P.2d 588, 592 (Nev.1992) (representations at to the reliability and performance of a telephone system were mere puffery).

iii. *Performance*

[8] The Court finds that the word "performance" is non-actionable puffery.

"Describing a product as 'quality' or as having 'high performance criteria' are the types of subjective characterizations that Illinois courts have repeatedly held to be mere puffing." *Avery v. State Farm Mutual Automobile Ins. Co.*, 835 N.E.2d 810, 2005 WL 1981444 * 37 (Ill.2005) In addition, statements that a car would "perform excellently" have been held to be mere puffing. *Serbalik v. General Motors Corp.*, 246 A.D.2d 724, 667 N.Y.S.2d 503, 504 (N.Y.A.D.1998).

b. *Latest Technology*

***6** [9] The Court finds that the phrase "latest technology" is non-actionable puffery. For instance, in *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086, 1096 (C.D.Cal.1999), the court held that statements by one company that it had developed technology superior to its competitors' was non-actionable puffery.

c. *Most Stringent Quality Control Tests*

[10] The Court finds that the phrase "most stringent quality control tests" is actionable, and is not mere puffery.

In *Touchet Valley Grain Growers, Inc. v. Opp & Seibold General Construction, Inc.*, 119 Wash.2d 334, 831 P.2d 724, 731 (Wash.1992), the court held that statements in a manufacturer's brochure stating that steel frame structures where "carefully checked by our quality control department," constituted more than mere puffery. The Court agrees with the holding in *Touchet*, and finds that this statement is a specific factual assertion which could be established or disproved through discovery, and hence is not mere puffery.

d. *High-Quality, Brand-Name Components*

[11] As discussed above, the Court finds that the term "high-quality" is non-actionable puffery. However, the Court finds that the phrase "brand-name components" is a specific factual statement which could be established or disproved through discovery, and hence is not mere puffery.

B. *Express Warranty*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[12] eMachines contends that Annunziato's affirmative allegations show that any claim for express warranty is contractually time-barred. The Court agrees.

eMachines claims that Annunziato's breach of express warranty claim fails because eMachines complied with the one-year warranty, and that any later problem occurred after the warranty expired. (Mot., p. 9.) eMachines characterizes Annunziato's claims of a laptop malfunction after the warranty expired as a *subsequent* malfunction. (*Id.*)

However, Annunziato avers that eMachines "supposedly repaired [his] laptop," (Complaint, ¶ 29), and alleges that the defect is of a "continuing nature" and not a subsequent malfunction. (Opp'n, p. 12.) Annunziato further contends that eMachines "simply masked the problem until after the express warranty had allegedly expired." (*Id.*)

The Court finds that Annunziato's express warranty has expired, and hence his claims based on breach of the express warranty fails as a matter of law. However, the Court grants Annunziato leave to join another potential class representative who has a claim which is not time-barred.

C. *Implied Warranty of Merchantability*

[13] eMachines contends that under California law, Annunziato must establish privity in order to assert a claim for implied warranty against eMachines, and that he is barred because his Complaint affirmatively negates privity. The Court agrees.

[14] [15] [16] [17] California recognizes the implied warranty of merchantability. *Torres v. City of Madera*, 2005 WL 1683736 * 16 (E.D.Cal.2005). In California, a "plaintiff alleging breach of warranty claims must stand in 'vertical privity' with the defendant." (*Id.*) "The term 'vertical privity' refers to links in the chain of distribution of goods. If the buyer and seller occupy adjoining links in the chain, they are in vertical privity with each other." *Osborne*, 198 Cal.App.3d at 656 n. 6, 243 Cal.Rptr. 815. Further, "if the retail buyer seeks warranty recovery against a manufacturer with whom he has no direct contractual nexus, the manufacturer would seek insulation via the vertical privity defense." (*Id.*) Finally, "there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale." *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 695, 268 P.2d 1041 (1954).

***7** The Court finds that Annunziato's breach of implied warranty claim fails because Annunziato did not, and cannot, allege privity with eMachines. (Mot., p. 10.) Annunziato purchased his laptop from BestBuy.com, not eMachines. In addition, Annunziato does not fall within any of the exceptions to the privity requirement.

The Motion is granted on this claim. However, Annunziato is granted leave to add another potential class representative who can allege privity. FN2

D. *Song-Beverly Act*

eMachines contends that Annunziato's Song-Beverly Act claim must fail because he cannot meet the statute's requirements. The Court agrees.

1. *Place of Purchase*

[18] The Song-Beverly Act only governs goods sold at retail in California. Cal. Civ.Code § 1792. However, Annunziato resides in Massachusetts where he purchased the product over the internet. Hence Annunziato's Song-Beverly Act claim fails as a matter of law.

2. *Warranties as Basis of Each Purchase*

eMachines contends that the Song-Beverly Act only covers warranty statements "arising out of a sale to the consumer of a consumer good." Cal. Civ.Code § 1791.2(a)(1), and hence Annunziato's claim fails because Annunziato does not allege that the warranty statements played any causal role in his purchase, which is required in order to pursue an express warranty claim under the Song-Beverly Act. The Court need not address this issue at this time in view of Annunziato's failure to plead an in-state purchase.

The Motion is granted as to this claim. However, Annunziato is granted leave to add a potential class representative who can plead the requirements of Song-Beverly Act.

IV. *CONCLUSION*

For the forgoing reasons, the motion to dismiss is granted in part and denied in part. Annunziato shall have thirty-five days to replead.

FN1. It should noted that Proposition 64 also adopted other procedural safeguards. For example, a private plaintiff must also meet the requirements of a class action.

FN2. The Court need not reach eMachines' contention that Annunziato's claim for breach of the implied warranty of merchantability fails because it is allegedly coextensive in duration with the express warranty.

C.D.Cal.,2005.
Anunziato v. eMachines, Inc.
--- F.Supp.2d ----, 2005 WL 3263892 (C.D.Cal.)

Briefs and Other Related Documents (Back to top)

- 8:05cv00610 (Docket) (Jun. 22, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Only the Westlaw citation is currently available.

United States District Court; S.D. New York.
FORT HOWARD PAPER COMPANY, Plaintiff,
v.
WILLIAM D. WITTER, INC. THOMSON McKINNON SECURITIES, INC. and CHARLES F. HUBER, Defendants.
CHARLES F. HUBER, II, Third Party Plaintiff,
v.
FORT HOWARD PAPER COMPANY and MARYLAND CUP CORPORATION, Third Party Defendants.
**No. 83 Civ. 6588 (JFK).**

May 17, 1985.

Sanford M. Litvack, Esq. Charles W. Gerdts, III, Esq. Valerie A. Cohen, Esq. Donovan, Leisure, Newton & Irvine New York, New York, for plaintiff and third party defendants.
James W. Nellen, II, Esq. Fort Howard Paper Co. Green Bay, Wisconsin, for plaintiff and third party defendants.
Elliot Paskoff, Esq. Townley & Updike New York, New York, for defendants and third party plaintiffs.

OPINION AND ORDER

JOHN F. KEENAN, United States District Judge:
*1 Plaintiff-third party defendants move for a determination whether, New York law is applicable and for what amounts to summary judgment. Defendant-third party plaintiffs contend that the law of states other than New York should control this action, thus precluding summary judgment. For the reasons stated below, third-party plaintiff's claims are dismissed.

BACKGROUND

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In its search of the record for material issues of fact, the Court must resolve all adbiguities in favor of the party opposing the motion. Universal City Studios, Inc. v. Nintendo Co., 746 F.2d 112, 115 (2d Cir. 1984). However, on choice of law questions, the facts should be considered in a light most favorable to the plaintiff. Intercontinental Planning, Ltd. v. Daystrom, Inc., 300 N.Y.S.2d 817, 824 (N.Y. 1969). Fort Howard and Maryland Cup, the proponents of summary judgment, apparently confident of their position with respect to the law applicable to this case, have offered virtually no factual discussion in their motion papers. Consequently, for purposes of this motion, there are no real factual disputes and the following factual presentation is substantially that offered by the defendants and third-party plaintiff.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.