# North Dakota

**NORTH DAKOTA**

| | Did SJM's conduct violate the consumer protection law? | Private cause of action? | Scienter requirement? | Individual Reliance? | Does the law prohibit material omissions? |
|---|---|---|---|---|---|
| MN | Yes | Yes | No | No | Yes |
| ND | Yes<br>N.D.C.C.<br>§§ 51-12-01,<br>51-15-02 | Yes[1] | No[2] | No[3] | Yes[4] |

**Are there any true conflicts of substantive law?**

No.

[1]N.D.C.C. § 51-15-09. Fargo Women's Health Org. v. FM Women's Help and Caring Connection, 444 N.W.2d 683, 685 (N.D. 1989). Under the North Dakota Unfair Trade Practices Act, N.D.C.C., a private right of action is available for injunctive relief but not for damages. Trade 'N Post, L.L.C. v. World Duty Free Americas, Inc., 628 N.W.2d 707, 712 (N.D. 2001) citing N.D. C.C. § 51-10-06.

[2]N.D.C.C. § 51-15-09.

[3]N.D.C.C. § 51-15-02 (act done with intent that others rely is actionable regardless of whether plaintiff was in fact deceived).

[4]In a class action context under North Dakota's consumer fraud statutes, individual reliance was not an issue as plaintiffs' claims are based primarily on defendants' uniform failure to disclose material facts to members of the proposed class (*i.e.*, no reasonable person would have purchased or renewed the insurance policies at issue had the alleged facts been known, and consequently reliance may be inferred from the circumstances). Hanson v. Acceleration Life Insurance Co., 1999 WL 33282234 (D.N.D.).

NORTH DAKOTA CENTURY CODE
TITLE 51. SALES AND EXCHANGES
CHAPTER 51-12. FALSE ADVERTISING.

### ➡ 51-12-01 False and misleading advertising prohibited.

1. No person with intent to sell, dispose of, increase the consumption of, or induce the public to enter an obligation relative to or to acquire title or interest in any food, drug, medicine, patent and proprietary product, merchandise, security, service, performance, medical treatment, paint, varnish, oil, clothing, wearing apparel, machinery, or anything offered to the public may make, publish, disseminate, circulate, or place before the public, or directly or indirectly shall cause to be made, published, disseminated, circulated, or placed before the public in a newspaper, or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, tab, label, letter, or in any other way, an advertisement that contains any assertion, representation, or statement of fact, including the price thereof, which is untrue, deceptive, or misleading regarding such food, drug, medicine, patent and proprietary product, merchandise, security, service, performance, medical treatment, paint, varnish, oil, clothing, wearing apparel, machinery, or anything offered to the public.

* * *

NORTH DAKOTA CENTURY CODE
TITLE 51. SALES AND EXCHANGES
CHAPTER 51-15. UNLAWFUL SALES OR ADVERTISING PRACTICES.

**→ 51-15-02 Unlawful practices - Fraud - Misrepresentation.**

The act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice.

NORTH DAKOTA CENTURY CODE
TITLE 51. SALES AND EXCHANGES
CHAPTER 51-15. UNLAWFUL SALES OR ADVERTISING PRACTICES.

**→ 51-15-09 Claims not barred.**

The provisions of this chapter do not bar any claim for relief by any person against any person who has acquired any moneys or property by means of any practice declared to be unlawful in this chapter. If the court finds the defendant knowingly committed the conduct, the court may order that the person commencing the action recover up to three times the actual damages proven and the court must order that the person commencing the action recover costs, disbursements, and actual reasonable attorney's fees incurred in the action.

Only the Westlaw citation is currently available.

United States District Court, D. North Dakota, Southeastern Division.

Harold HANSON, Nellie McIlroy, and Estate of Gladys Schimke, and the class of similarly situated North Dakota purchasers of Nursing Home Benefit Policies, Plaintiffs,

v.

ACCELERATION LIFE INSURANCE COMPANY, Interstate Service Insurance Agency, Inc., Benefit Plans II, and Commonwealth Life Insurance Company, Defendants.

**No. CIV A3-97-152.**

March 16, 1999.

*MEMORANDUM AND ORDER*

WEBB.

*1 Before the Court are various motions dealing with the issues of fraud, the **filed rate doctrine**, class certification and the pleading of exemplary damages. The matters have been fully briefed and oral argument was heard on February 26, 1999. For the reasons set out below, the Court rules as follows:

1. Motion by Defendants for Summary Judgment on All Claims (Fraud), (doc. # 94), is hereby DENIED except with respect to plaintiffs' Claim No. 6, for breach of implied warranty, which is hereby DISMISSED;

2. Motion by Plaintiffs for Leave to Amend Complaint, (doc. # 77), to the extent not already ruled upon by the Honorable Karen K. Klein, Magistrate Judge, i.e., to add a claim for exemplary damages, is hereby GRANTED, the plaintiffs are DIRECTED to forward the Amended Complaint to the Clerk of Court, and the amended complaint is hereby authorized and ORDERED FILED;

3. Motion by Plaintiffs for Partial Summary Judgment on the **Filed Rate Doctrine**,(doc. # 82), is hereby GRANTED;

4. Motion by Defendants for Summary Judgment on the **Filed Rate Doctrine**, (doc. # 83), is hereby DENIED;

5. Motion by ACLI for Leave to File an Amicus Curiae Brief on the **Filed Rate Doctrine**, (doc. # 102), is hereby GRANTED and the lodged brief ORDERED FILED, however ACLI is DIRECTED to make no further filings in this case;

6. Motion by Defendants to Strike the Class Allegations in the Complaint, (doc. # 13), is hereby DENIED; and

7. Motion by Plaintiffs to Certify Class Action, (doc. # 36), is hereby GRANTED, and plaintiffs are hereby DIRECTED to present within ten days of receipt of this Order a revised class definition.

In light of the Court's rulings, and given the Court's concerns regarding the ability of the parties to be adequately prepared for the scheduled May 3, 1999, trial date, the parties are hereby DIRECTED to confer and present to the Court a case management plan within ten days following receipt of this Order.

## I. BACKGROUND

Harold Hanson, Nellie McIlroy and Gladys Schimke were senior citizens when they first purchased nursing home insurance policies [FN1] from defendant Acceleration Life Insurance Company (Acceleration) in 1987. Said policies were apparently developed, marketed and administered by Interstate Service Insurance Agency, Inc., (Interstate). These policies were "guaranteed renewable for life" upon payment of the premiums, and were allegedly sold as "level premium policies."

FN1. The "policies" referred to throughout this memorandum are Acceleration Life Insurance Company-Nursing Care Benefit Policies forms 520, 521 and 522. They are also referred to as "long term care" policies as denominated by the applicable North Dakota statutes.

Commonwealth Life Insurance Company (Commonwealth) assumed all obligations and duties connected to Acceleration's nursing home policies. This was approved in North Dakota in 1990. Plaintiffs were notified that this was "good news" because of Commonwealth's "financial strength." Later, Commonwealth ceased selling these nursing home policies in North Dakota. Acceleration and Commonwealth eventually assumed all assets and liabilities of Interstate. Benefit Plans, a unit of Commonwealth, took over the administration of these policies.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

***2** Although these policies were allegedly sold as "level premium policies," the premiums increased each year from 1989 to 1996. Plaintiffs allege that the increases were exorbitant and that policyholders were forced to pay or drop their coverage. Plaintiffs assert that defendants had a plan to defraud consumers and that it was the regular policy and practice of defendants to conceal certain material facts, e.g., the policies were initially underpriced for marketing advantages, the policies were poorly underwritten, the block was closed thus making large premium increases inevitable. It is further asserted that the defendants structured the increases to foster lapses. Plaintiffs allege actual and constructive fraud, consumer fraud, false advertising, misrepresentation and breach of implied warranty on behalf of the class of similarly situated North Dakota purchasers of Nursing Home Benefit Policies.

Plaintiffs initiated this action in state court and the cause was removed to federal court based on diversity jurisdiction. Defendants move for summary judgment asserting that plaintiffs' claims are precluded by the **filed rate doctrine**. Defendants also raise various defenses with respect to the merits of plaintiffs' claims. Plaintiffs move for class certification. Plaintiffs also move to amend the complaint to assert a claim for punitive damages.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is "material" if it might affect the outcome of a case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Churchill Bus. Credit, Inc. v. Pacific Mut. Door Co.,* 49 F.3d 1334, 1336 (8th Cir .1995).

The "basic inquiry" for purposes of summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." *Quick v. Donaldson Co., Inc.,* 90 F.3d 1372, 1376 (8th Cir.1996) (citing *Anderson,* 477 U.S. at 251-52). In making this inquiry, however, this Court will not "weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Id.* (citing *Anderson,* 477 U.S. at 249). Rather, this Court's function is to determine only whether a dispute is genuine, and "[i]f reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. *Id.* at 1377 (citing *Anderson,* 477 U.S. at 250). This determination is made by reading the record in the light most favorable to the non-moving party and drawing all "justifiable inferences" in the non-movant's favor. *Id.* (citing *Anderson,* 477 U.S. at 255); *Churchill,* 49 F.3d at 1336 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)).

***3** The moving party has the initial burden of demonstrating to the Court that there is no genuine issue as to any material fact. *Webb v. Lawrence County,* 144 F.3d 1131, 1134 (8th Cir.1998)(citing *Celotex Corp.,* 477 U.S. at 323). Once the moving party has met this burden, however, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings; rather, the non-movant must set forth specific facts showing that there is a general issue for trial. *Id.* (citing Fed.R.Civ.P. 56(e)).

## III. DISCUSSION

### A. **FILED RATE DOCTRINE**

Preliminarily, the Court acknowledges receipt of an amicus curiae brief lodged by the American Council of Life Insurance, (ACLI), and has read and considered the same. Although the Court is not convinced that it is obligated to allow the filing, no harm is done to plaintiffs by doing so. The motion by ACLI for leave to file an amicus curiae brief on the **filed rate doctrine** is hereby GRANTED, and the lodged brief ORDERED FILED. However, ACLI is DIRECTED to make no further filings in this case as the parties are capable of fully presenting the issues and ACLI participation is not necessary.

Defendants assert that plaintiffs' claims are precluded under the **filed rate doctrine** and that they are entitled to judgment as a matter of law. The Court does not agree. The Court concludes that the **filed rate doctrine** does not apply to the facts of this case and rejects the defense as a matter of law.

The question of whether the **filed rate doctrine** acts as an absolute bar to fraud based claims against insurers involving discussion of rate increases in the context of long term care insurance policies has not been previously determined under North Dakota law. "It is this court's duty in a diversity case not to formulate the legal mind of the state, but merely to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ascertain and apply it." *Simundson v. United Coastal Ins. Co.,* 951 F.Supp. 165, 167 (D.N.D.1997) (citations omitted). "Where neither the legislature nor the highest court in a state has addressed an issue, this court must determine what the highest state court would probably hold were it called upon to decide the issue." *Id.* (citations omitted). In making this determination, the Court "may consider relevant state precedent, analogous decisions, considered dicta, scholarly works and any other reliable data." *Anderson v. Nissan Motor Co., Ltd.,* 139 F.3d 599, 601-02 (8th Cir.1998) (citation omitted).

"Federal courts have applied the **filed rate doctrine** in a variety of contexts to bar recovery by those who claim injury by virtue of having paid a filed rate." *Taffet v. Southern Co.,* 967 F.2d 1483, 1488 (11th Cir.1992)(en banc) (citing *Keogh v. Chicago & Northwestern Ry.,* 260 U.S. 156 (1922)). In *Taffet,* utility customers brought a RICO action against the providers alleging that approval of rates was gained by fraud. 967 F.2d at 1486-87. The Eleventh Circuit *en banc* found that there was no legally cognizable injury by having paid a supposedly higher than reasonable rate. *Id.* at 1488. "[T]he **filed rate doctrine** recognizes that where a legislature has established a scheme for utility rate-making, the rights of the rate-payer in regard to the rate he pays are defined by that scheme." *Id.* at 1490 (discussing Supreme Court precedent). Upon examining the comprehensiveness of the rate setting schemes at issue, the court in *Taffet* concluded that the rate-payer had no right to pay other than the agency set rate, notwithstanding any allegations of fraud.

***4** The Eighth Circuit is in accord. In *H.J. Inc. v. Northwestern Bell Tel. Co.,* the court emphasized that "the focus for determining whether the **filed rate doctrine** applies is the impact the court's decision will have on agency procedures and rate determinations," not on underlying conduct such as fraud. 954 F.2d 485, 489 (8th Cir.1992)(discussing *Montana-Dakota Util. Co. v. Northwestern Pub. Servs. Co.,* 341 U.S. 246, 248-52 (1951); *Square D Co. v. Niagra Frontier Tariff Bureau, Inc.,* 476 U.S. 409, 415-23 (1986); *Keogh,* 260 U.S. at 159-65). The court distinguished cases involving situations where a plaintiff could show they had been fraudulently induced to enter contracts. *H.J. Inc.,* 954 F.2d at 490 (discussing *Gulf States Utils. Co. v. Alabama Power Co.,* 824 F.2d 1465, 1471-72 (5th Cir.1987)(noting that setting aside contracts because of fraud in the inducement would not interfere with agency rate-making authority), and *Nordlicht v. New York Tele. Co.,* 617 F.Supp. 220, 227-28 (S.D.N.Y.1985)(noting that the **filed rate doctrine** "is of no help to a defendant which fraudulently induces a plaintiff to pay a filed rate ... by fraud")).

To determine whether the plaintiffs here have alleged cognizable claims, or whether defendants have an absolute defense to plaintiffs' claims, this Court must "examine the rate-making *scheme.*" *Taffet,* 967 F.2d at 1490 (emphasis added). The court in *Taffet* discussed several important factors including the elaborateness of the legislatively established administrative scheme, public participation in the rate making process, and the ability of the agency to provide a remedy. *Id.* at 1490-94. Unlike the regulatory schemes discussed in *Taffet,* North Dakota's regulation of long term care insurance is not comprehensive.

In North Dakota, there is no statutory language indicating that application of the **filed rate doctrine** is required; but there is statutory language inconsistent with its application, e.g., an insurer may make changes in premium rates in accordance with policy provisions. N.D. Cent.Code § 26.1-45-05.2 (1995). Further, there is a lack of statutory language requiring approval of rate increases. *See generally id.* Ch. 26.1-45. Further, the statutory scheme provides no mechanism for meaningful review of rates filed with the Insurance Commissioner or for public input in a rate determination, hearings or otherwise. *Id.* Simply put, the North Dakota Insurance Commissioner does not have the authority to establish long term care insurance policy rates. Defendants themselves have recognized this. *See* Letter from Dickinson to Foley of 8/28/97. The Court does not reach the conclusion as a matter of judicial estoppel, rather as one of good logic.

Further, the North Dakota Supreme Court has never applied the **filed rate doctrine** as a bar to a claim, although it has recognized the existence of the doctrine in the common carrier context. *See* *E.W. Wylie Corp. v. Menard, Inc.,* 523 N.W.2d 395, 398-99, 403 (N.D .1994)(discussing statutory **filed rate doctrine** and finding it inapplicable in contract carriage case). Defendants' arguments that the North Dakota Supreme Court would apply the **filed rate doctrine** in the present context of long term care insurance contracts are unpersuasive. This Court concludes that the North Dakota Supreme Court would not preclude the presentation of this case based on the **filed rate doctrine** defense.

***5** For the above discussed reasons, plaintiffs' motion for partial summary judgment on the **filed rate**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**doctrine** is hereby GRANTED, and defendants' motion for summary judgment on the **filed rate doctrine** is hereby DENIED.

B. ALL CLAIMS-FRAUD

Preliminarily, the Court finds that the plaintiffs' fraud based claims are not time-barred. Section 28-01-16 of the North Dakota Century Code provides that a fraud based claim "must be commenced within six years after the claim for relief has accrued," and the claim for relief in a fraud case is "not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." *See also Phoenix Assurance Co. v. Runck,* 366 N.W.2d 788, 791 (1985)("A fraud action is not barred by the passage of time until six years after discovery of the facts constituting the fraud."). Plaintiffs commenced the original state action against the defendants on or about October 27, 1997. *See* Notice of Removal (defense counsel states it was served on October 27, 1997), *compare* Original State Complaint (signed by plaintiffs' counsel October 21, 1997). If plaintiffs discovered the facts constituting the fraud before October 27, 1991, the cause of action would be barred by the statute of limitations. Plaintiffs have sufficiently alleged that facts constituting the fraud could not have been discovered by October 1991. For example, Mr. Hanson was not notified that the block of business was closed until February, 1996. Whether plaintiffs had sufficient knowledge under the discovery rule to trigger the limitation period is "ordinarily a fact question which is inappropriate for summary judgment." The Court is reluctant to dismiss these claims based on a statute of limitations defense, especially given the nature of the case, i.e., this is an omissions or failure to disclose case.

1. Actual Fraud

Defendants assert that plaintiffs cannot satisfy the elements of actual fraud and emphasize a lack of reliance. Plaintiffs disagree, highlight several examples of fraudulent representations and nondisclosures, and argue that reliance can be inferred from the circumstances.

In North Dakota, actual fraud is defined by statute, N.D. Cent.Code § 9-03-08, with which the parties are well familiar. "Fraud is never presumed, but must be proved by evidence that is clear and convincing." *Albrecht v. Walter,* 572 N.W.2d 809, 813 (N.D.1997)(citing *Kary v. Prudential Ins. Co.,* 541 N.W.2d 703, 705 (N.D.1996)). A key element of establishing fraud is reliance upon the false or misleading representations. *Kary,* 541 N.W.2d at 706. However, reliance, and inducement, may be inferred from the facts and circumstances surrounding a transaction. *Adams v. Little Missouri Minerals Ass'n,* 143 N.W.2d 659, 684 (N.D.1966). In *Adams,* the North Dakota Supreme Court noted that facts inferred from circumstances surrounding a transaction are often stronger and more satisfactory evidence of fraudulent inducement and reliance than direct testimony to the same effect. *Id.* at 683.

***6** In *Adams,* landowners contributed mineral rights to a corporation in exchange for stock not knowing that they would never have any opportunity to control the corporation. *Id.* Inferring inducement and reliance, the court concluded that since the landowners would not have exchanged their minerals for stock had the suppressed facts been given to them, the landowners were victims of fraud. *Id.* at 684. Here, if all of the alleged suppressed facts are accepted by a jury, (e.g., that the policies were experimental, that the policies were initially underpriced to gain market advantages, that the underwriting was faulty, that it was known that the rates would need to be drastically increased, that the block of business would be closed), it could be fairly concluded that the plaintiffs would not have purchased or renewed the long term care policies at issue from the defendants. It could reasonably be concluded that since pertinent and material facts were withheld, plaintiffs were victims of fraud.

Actual fraud is always a question of fact. *First State Bank of Buxton v. Thykeson,* 361 N.W.2d 613, 616 (N.D.1985)(quoting N.D. Cent.Code § 9-03-10). Whether or not there have been fraudulent representations or omission depends upon the facts of the case. *Gershman v. Engelstad,* 160 N.W.2d 80, 83 (N.D.1968). "Summary judgment cannot be granted merely because the court believes that the movant [may] prevail if the action is tried on the merits." *Thykeson,* 361 N.W.2d at 616 (citing Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2728). Reading the record in the light most favorable to the non-moving party and drawing all justifiable inferences in plaintiffs' favor, the Court finds a sufficient disagreement on genuine issues of material fact to require submission to a jury; it certainly is not so one sided that defendants must prevail as a matter of law. *See Quick,* 90 F.3d at 1376 (citations omitted). Thus, summary judgment is inappropriate on the actual fraud claim.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2. Constructive Fraud

Constructive fraud is defined by statute as any breach of duty which, without an actual fraudulent intent, gains an advantage to the person in fault by misleading another to his prejudice. N.D. Cent.Code 9-03-09. *See also* *Asleson v. West Branch Land Co.,* 311 N.W.2d 533 (N.D.1981)(discussing contours of constructive fraud claim). "Constructive fraud is based on a relationship between the parties which gives rise to a duty of disclosure." *Holcomb v. Zinke,* 365 N.W.2d 507, 511 (N.D.1985). Defendants assert that plaintiffs' constructive fraud claim fails because no fiduciary or confidential relationship existed between defendants and plaintiffs. While the duty of disclosure may arise from a fiduciary or other confidential relationship, which is not conspicuous in the present case, a duty of disclosure may also "arise from *other* circumstances." *Id.* (emphasis added)(imposing duty to disclose on seller of real estate as to condition of property being sold based on seller's superior position).

***7** Section 26.1-29-16 of the North Dakota Century Code imposes special duties upon parties to insurance contracts to communicate in good faith and to disclose facts material to the contract. This duty to disclose is obviously sufficient to create liability under the constructive fraud statute, and the Court so holds as a matter of law. *See* *Holcomb,* 365 N.W.2d at 511 ("whether or not a duty exists is a question of law"). As sufficient disagreement on genuine issues of material fact surround the constructive fraud claim, submission to a jury is required; summary judgment on the constructive fraud claim is inappropriate.

3. Consumer Fraud & False Advertising

The North Dakota Supreme Court has held that one injured by a violation of North Dakota's false advertising statutes (chapter 51-12, N.D. Cent.Code) may bring an action to recover damages. *Fargo Women's Health Org. v. FM Women's Help and Caring Connection,* 444 N.W.2d 683, 685 (N.D.1989). A private right of action is also apparent under North Dakota's consumer fraud statutes. N.D. Cent.Code § 51-15-09 (allowing private claims for relief for violations of the consumer fraud statutes); *see also* *State ex rel. Spaeth v. Eddy Furniture Co.,* 386 N.W.2d 901, 903 (N.D.1986)(noting that consumer protection statutes must be liberally construed). Furthermore, these claims are distinguishable from the claims of actual or constructive fraud, discussed above, because the alleged fraudulent conduct need only be proven by a preponderance of the evidence, as opposed to the clear and convincing standard otherwise required. *Eddy Furniture Co.,* 386 N.W.2d at 903 (adopting concept that consumer fraud is a cause of action separate and distinct from common law fraud). The Court concludes that the plaintiffs have sufficiently established that genuine issues of material fact exist precluding summary judgment on these fraud based claims, thus summary judgment is inappropriate.

4. Misrepresentation

The parties agree that negligent misrepresentation is a cognizable claim in North Dakota law under the provisions of section 9-03-08(2) of the North Dakota Century Code, the actual fraud statute. *Bourgois v. Montana-Dakota Util. Co.,* 466 N.W.2d 813, 817-18 (N.D.1991); *see also* *Cooperative Power Ass'n v. Westinghouse Elec. Corp.,* 60 F.3d 1336, 1342-43 (8th Cir.1995)(discussing negligent misrepresentation claim under North Dakota law). Further, the misrepresentation claim is distinguishable from a claim of actual or constructive fraud because intent to deceive is not a necessary element. *See* *Westinghouse,* 60 F.3d at 1342. The Court here notes that the negligent misrepresentation claim does have an "inducement to contract" requirement, *see id.,* and that it has been sufficiently pled by the plaintiffs. In light of the Court's conclusion that a sufficient genuine issue of material fact exists precluding summary judgment on the other fraud based claims, it follows that summary judgment is inappropriate on this claim as well.

5. Breach of Implied Warranty

***8** The implied warranty theory upon which plaintiffs rely in Claim No. 6 of the Amended Complaint applies to the sale of goods. The Uniform Commercial Code "does not apply to insurance contracts because insurance contracts are not for the sale of goods." *Nielsen v. United Servs. Auto. Ass'n,* 612 N.E.2d 526, 531 (Ill.App.Ct.1993)(agreeing that no implied warranty existed in context of sale of insurance)(citing *Elrad v. United Life and Accident Ins. Co.,* 624 F.Supp. 742, 744 (N.D.Ill.1985)(sale of life insurance is not the sale of goods under UCC)). *See also* *Bartley v. National Union Fire Ins. Co.,* 824 F.Supp. 624, 637 (N.D .Tex.1992) (declining to recognize novel implied warranty claim under UCC

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

because insurance contracts do not easily fit within definition of goods); *Mills v. Agrichemical Aviation, Inc.,* 250 N.W.2d 663, 672 (N.D.1977)(noting similarity between insurance and sale of services). Furthermore, if the UCC did apply in this context, any implied warranty claim here would be time-barred. *See* N.D. Cent .Code § 41-02-104 (1983 & Supp.1998)(providing for four year limitation period accruing when breach occurs regardless of complainant's lack of knowledge of breach). Thus, summary judgment in favor of the defendants is appropriate on plaintiffs' implied warranty claim.

6. Exemplary Damages

The Court concludes that plaintiffs have followed the proper procedure for the pleading of exemplary damages as required under North Dakota law. The plaintiffs' motion for leave to amend the complaint, to the extent not already ruled upon by the Honorable Karen K. Klein, Magistrate Judge, i.e., to add a claim for exemplary damages, is hereby GRANTED. The plaintiffs are directed to forward the amended complaint to the Clerk of Court, and the Amended Complaint is hereby ORDERED FILED.

C. CLASS CERTIFICATION

1. Standards

The Court may only certify a class action if it satisfied, after a "rigorous analysis," that the prerequisites of Rule 23 are satisfied. *General Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 161 (1982); *Bishop v. Committee on Professional Ethics,* 686 F.2d 1278, 1287 (8th Cir.1982). Nonetheless, the trial court does have broad discretion in determining whether a class action may be maintained. *Bishop,* 686 F.2d at 1287.

Federal Rule of Civil Procedure 23(a) sets out the following prerequisites to a class action: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." In addition, plaintiffs must show that the action is maintainable under Rule 23(b)(1), (2), or (3). *Amchem Products, Inc. v. Windsor,* 117 S.Ct. 2231, 2245 (1997). Rule 23(b)(3) "encompasses cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness." Fed.R.Civ.P. 23, Advisory Committee's Notes. The intent of Rule 23(b)(3) is the "vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.' " *Amchem,* 117 S.Ct. at 2246 (citation omitted). Further, class members may opt out under Rule 23(b)(3). *See* Fed.R.Civ.P. 23(c); *In re Federal Skywalk Cases,* 680 F.2d 1175, 1178 (8th Cir .1982).

***9** Certification under Rule 23(b)(3), which plaintiffs here seek, requires that the Court find "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23. Factors relevant to the inquiry include: "the interest of members of the class in individually controlling the prosecution ... of separate actions;" "the extent and nature of any litigation concerning the controversy already commenced by ... members of the class;" "the desirability or undesirability of concentrating the litigation of the clams in a particular forum;" and "the difficulties likely to be encountered in the management of a class action." *Id.*

2. Numerosity/Impracticality

The numerosity requirement of Rule 23(a)(1) requires an inquiry into whether the class is "so numerous that joinder of all members is impracticable." *Paxton v. Union National Bank,* 688 F.2d 552, 559 (8th Cir.1982). There is no arbitrary rule regarding the necessary size of class. *Id.* (citing *Boyd v. Ozark Air Lines, Inc.,* 568 F.2d 50, 54 (8th Cir.1977)). Relevant factors include the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the proposed class members. *Id.* at 559-60 (citing Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1762). The Court should determine whether impracticability exists based upon all the circumstances surrounding a case. *Boyd v. Ozark Air Lines, Inc.,* 568 F.2d 50, 55 (8th Cir.1977). Impracticable does not mean that joinder must be impossible, but it does require a showing that it would be extremely difficult or inconvenient to join

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

all members of the proposed class. *Morgan v. United Parcel Service*, 169 F.R .D. 349, 355 (E.D.Mo.1996).

Here, the named plaintiffs have demonstrated that the class may include up to approximately 2,000 members. The plaintiffs are not required to specify an exact number or prove the identity of each class member, but must only show a reasonable estimate of the number of class members. *See id.* Given the group's advanced age, with naturally increased health and other mental or physical concerns, the finite size of the individual claims, and the inconvenience of trying individual suits (not only to individual plaintiffs, but to the defendants and judicial system as well), the Court finds that joinder here is impracticable.

3. Commonality and Predominance of Common Questions

It is here noted that Rule 23(a)(2)'s commonality requirement is subsumed under the more stringent predominance requirement of Rule 23(b)(3). *Amchem*, 117 S.Ct. at 2243. The commonality requirement is satisfied when the common questions of law or fact "linking the class members is substantially related to the resolution of the litigation." *DeBoer v. Mellon Mortgage Co.,* 1171, 1174 (8th Cir.1995) (citing *Paxton v. Union National Bank*, 688 F.2d 552, 561 (8th Cir.1982)).

***10** Predominance is a test readily met in certain cases alleging consumer fraud. *Amchem*, 117 S.Ct. at 2250 (citing Advisory Committee's Notes). Where a common scheme of deceptive conduct is alleged, common question of law and fact will exist. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 325 (S.D.Fla.1996)(citing *Green v. Wolf Corp.*, 406 F.2d 291, 198 (2d Cir.1968)). This is so notwithstanding the need for separate determination of damages suffered by individuals within the class. Fed.R.Civ.P. 23, Advisory Committee's Notes.

An underlying allegation here is based on how the plaintiffs were treated *as a group*-i.e., the block of business to which they all belonged was closed and this fact, the events leading up to it, and its ramifications, were not disclosed. The contract language at issue is identical for each member of the proposed class, rate hikes were class wide, there is a singular state regulatory scheme involved, and defendants' defenses are asserted class-wide as well. The class action may not be the proper vehicle in certain fraud cases if there is significant variation in the representations made or in degrees of reliance by persons aggrieved. *See id.* However, that is not problematic here because, as addressed at length above, the plaintiffs' claims are based primarily on defendants' uniform failure to disclose to any and all members of the proposed class that which there was a duty to disclose, that the facts withheld were material in the sense that no reasonable person would have purchased or renewed the policies at issue had the alleged facts been known, and consequently reliance may be inferred from the circumstances. *See also cf. Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972)(noting that where a claim involves primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery; "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision").

"Where the question of basic liability can be established readily by common issues, then it is apparent that the case is appropriate for class action." *Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791, 796 (10th Cir.1970). Here, as in *Gold Strike Stamp,* the Court does not believe that the question of liability requires the "specific individualistic examination" proposed by the defendants. *See id.* That there may be individualized issues does not here outweigh the number, significance and predominance of the common questions of law and fact. The Court finds that the plaintiffs have met the commonality and predominance requirements.

4. Typicality

The typicality provision requires that plaintiffs show that other members of the proposed class have the same or similar grievances as the plaintiff. *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir1996); *Belles v. Schweiker*, 720 F.2d 509, 515 (8th Cir.1983). The typicality requirement is "fairly easily met so long as other class members have claims similar to the named plaintiff." *Alpern*, 84 F.3d at 1540. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.* (citations omitted). A claim is typical if it challenges the same unlawful conduct affecting the named plaintiffs and the proposed class members. *Id.* (citation omitted).

***11** In the instant case, the Court finds that the named

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

plaintiffs have met the typicality requirement. Here, plaintiffs have alleged unlawful conduct by defendants similarly affecting them and the proposed class members. The named plaintiffs have asserted the same claims based upon the same legal theories on behalf of themselves as well as all of the proposed class members.

5. Adequacy of Representation

The Court must also confirm that the "representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The focus of Rule 23(a)(4) is whether the class representatives have common interests with the members of the class, and whether the class representatives will vigorously prosecute the interests of the class through qualified counsel. *Paxton,* 688 F.2d at 562-63. Class representatives must be part of the class and possess the same interest and suffer the same injury as the proposed class members. *Amchem,* 117 S.Ct. at 2236; *Bishop,* 686 F.2d at 1289. The first element, whether the class representatives have common interests with the members of the class, has been sufficiently addressed by the Court in its discussion of commonality and typicality-there are no antagonistic interests.

The Court also concludes that the class representatives will vigorously prosecute the interests of the class through qualified counsel. Defendants assert that the representative of Mrs. Schimke's estate has no personal knowledge regarding the issues in this lawsuit and thus is not an adequate class representative. Defendants further assert that Mrs. McIlroy, who suffers from dementia, is not an adequate class representative either. But, the class representatives need not be perfect or the best of all possible representatives, rather, they must act in the best interests of the class. *Dura Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 101 (S.D.N.Y.1981). *See also* *Umbriac v. American Snacks, Inc.,* 388 F.Supp. 265, 275 (E.D.Pa.1975)("It is in the nature of motion practice on class action determination issues that defendants, who naturally have no interest in the successful prosecution of the class suit against them, are called upon to interpose arguments in opposition to class determination motions verbally grounded upon a concern for the 'best' representation for the class, while the implicit, but nonetheless real objective of their vigorous legal assault is to insure 'no' representation for the class.")(cited in *Dura-Bilt* ). Further, it can be argued that the adequacy of representation depends more on the integrity, skill and industry of plaintiffs' counsel than on personal qualities of the named plaintiffs. *Dura-Bilt,* 89 F.R.D. at 101 n14.

Here, defendants do not challenge the competency or expertise of plaintiffs' counsel, and the Court notes that plaintiffs' counsel are experienced in class action litigation and have already demonstrated competent and vigorous representation in this case. Nonetheless, the implications of plaintiffs' old age and/or ill health on their ability to vigorously and competently prosecute a class action are of some concern to the Court. Despite the Court's earlier conclusion that in this case a jury may infer reliance from circumstances proven, the Court cannot dismiss the reliance defense as irrelevant or insignificant. The named plaintiffs' ability to testify and actively participate may become more important as trial approaches. This is not to say that, because there may be difficulties in this regard, plaintiffs should automatically be precluded from pursuing the class action. Plaintiffs' advanced ages and health concerns go to the very heart of this case and certainly should not act as a bar to the action. Should this litigation be drawn out any more, we would soon be without any "adequate" plaintiffs as defendants would have them defined.

***12** In any event, one representative is sufficient for the prosecution of a class action, and no objection has been raised as to Mr. Hanson as an adequate representative plaintiff. *See* Fed.R .Civ.P. 23(a)(providing "*[o]ne* or more members of a class may sue ... as representative")(emphasis added). The Court here certifies the three named plaintiffs as adequate representatives at this juncture; the issue may be revisited upon a proper showing of necessity, and the Court may need, at some future date, to take remedial measures such as substitution of a new representative. *See* *James v. Jones,* 148 F.R.D. 196, 202 (W.D.Ky.1993); *Moskowitz v. Lopp,* 128 F.R.D. 624, 635 (E.D.Penn.1989).

6. Superiority

Under Rule 23(b)(3), the class action must be superior to other available methods for the fair and efficient adjudication of the controversy. Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1779 (1986). As mentioned above, relevant factors include: "the interest of members of the class in individually controlling the prosecution ... of separate actions;" "the extent and nature of any litigation concerning the controversy already

commenced by ... members of the class;" "the desirability or undesirability of concentrating the litigation of the clams in a particular forum;" and "the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3). No single element is determinative, nor is the list exhaustive, and the Court has discretion to consider other factors when making the superiority determination. *Walco Investments, Inc. v. Thenen,* 168 F.R.D. 315, 337 (S.D.Fla.1996).

The class action device should achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness. Fed.R.Civ.P. 23, Advisory Committee's Notes. The Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternate available methods of adjudication." *Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 632 (3d Cir.1996); *see also* Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1779 (court should justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court). The economy consideration affects the time of judges and court personnel, as well as the parties.

A review of the (b)(3) factors indicates that a class action is the superior method of adjudicating this controversy. Initially, the Court is aware of no other actions filed by any of the individual class members. Thus, the interest of members of the class in individually controlling the prosecution of separate actions appears low. Further, the Court notes that it would be extremely costly, not to mention unnecessarily duplicative, for each proposed class member to try this action separately.

***13** The purposes behind class actions, "eliminating the possibility of repetitious litigation and providing small claimants with a means of obtaining redress for claims too small to justify individual litigation," *DeBoer,* 64 F.3d at 1175, are met here. *See also Amchem,* 117 S.Ct. at 2246 (Rule 23(b)(3) enables the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all"). The situation here is such that it may well be impossible for separate actions to proceed, i.e., the cost of doing so may exceed any recovery they might secure. Every class member is faced with the obstacle of having to establish the existence of the alleged fraud, whether it be actual, constructive, and/or fit the statutory strictures of consumer fraud or false advertising. This would not be a simple task for an individual. Although the potential individual recoveries here are not insignificant, the Court recognizes the considerable time, effort, and expense already invested by both parties and the Court related to discovery and pretrial motions. Certainly, the costs of pursuing these actions individually far outweigh any recovery any individual could hope to obtain. Certifying this class will prevent the duplication of effort and the possibility of inconsistent results.

Regarding the desirability of concentrating this action in this forum, the Court notes that this case has been actively litigated in this forum since its filing in 1997. In addition, given the nature of the class and the allegations, it can be safely presumed that most of the proposed class members, along with many of the witnesses, reside with the District of North Dakota.

Finally, the Court finds that there will be no major difficulties in the management of this case as a class action. There may be some minor difficulties, such as the reliance and individual recovery issues; but, these difficulties are nowhere near the magnitude of problems that will arise if this case were to be tried in several hundred separate trials. Thus, the Court finds that the existence of any individual issues will not make this case unmanageable as a class action.

The defendants propose no alternative, let alone preferable, method to litigate this controversy. Defendants do suggest that because treble damages and attorneys' fees are available under the consumer fraud statute, and punitive damages are available under the false advertising statute, there is sufficient incentive for proposed class members to pursue their claims individually. Mere feasibility of individual claims does not demonstrate that the method is preferable. Nor does the suggestion beget economies of time, effort and expense, and promote uniformity of result. The Court here suggests that the possibility of treble damages, attorneys' fees, and punitive damages would be an incentive for the defendants to keep plaintiffs' attorneys' fees in check, resolve the issue in one forum, and bind all proposed class members uniformly.

***14** Based on the above reasoning, the Court finds that a class action is the appropriate method for the action to proceed. The Court concludes that the superiority requirement is met in that the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

7. Conclusion and Definition of Class

For the reasons set forth above, the Court concludes that the prerequisites for class certification under Rule 23(a) and (b)(3) are satisfied. Plaintiffs' motion for class certification is GRANTED, and defendants' motion to strike the class allegations is DENIED. Nonetheless, the Court agrees that, as a ministerial matter, a more precise definition of the class than that which appears at paragraph 53 of the Amended Complaint should be drafted and proposed by the plaintiffs. The definition should be limited to North Dakota purchasers of specifically identified policies within a specific time-frame. The plaintiffs are hereby DIRECTED to present within ten days of receipt of this Order such class definition for the Court's acceptance or rejection.

IT IS SO ORDERED.

D.N.D.,1999.
Hanson v. Acceleration Life Ins. Co.
Not Reported in F.Supp.2d, 1999 WL 33283345 (D.N.D.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.