# Pennsylvania

**PENNSYLVANIA**

| | Did SJM's conduct violate the consumer protection law? | Private cause of action? | Scienter requirement? | Individual Reliance? | Does the law prohibit material omissions? |
|---|---|---|---|---|---|
| MN | Yes | Yes | No | No | Yes |
| PA | Yes<br>73 Pa. Stat. Ann. §201-3; §201-2(4)(ii); (v); (vii) (xxi) | Yes[1] | Yes[2] | Yes[3] | Yes[4] |

**Are there any true conflicts of substantive law?**

Yes. Individual justifiable reliance and scienter ("intent to mislead" and "knowledge/recklessness as to falsity of representation") are required elements under Pennsylvania's Unfair Trade Practices and Consumer Protection Law. However, the statute was amended since the seminal case requiring these elements were handed down by adding the word "deceptive" to the "catch-all" provision in addition to the previous key word "fraudulent," and the issue of justifiable reliance is now before the Pennsylvania Supreme Court for reexamination. See Toy v. Metropolitan Life Insurance Co., 882 A.2d 462(2005) (Granting allowance of appeal on, *inter alia*, justifiable reliance requirement).

**Which state do the choice influencing factors favor?**

Minnesota.

---

[1] 73 Pa. Stat. Ann. §201-9.2.

[2] Debbs v. Chrysler Corp., 810 A.2d 137, 155, 2002 Pa. Super. 326 (Pa. Super. 2002).

[3] Toy v. Metropolitan Life Insurance Co., 863 A.2d 1, 10 (Pa. Super. 2004) (justifiable reliance), allowance of appeal granted and pending, 882 A.2d 462(2005); Yocca v. Pittsburgh Steelers Sports, Inc., 578 Pa. 479, 501, 854 A.2d 425, 438 (2004); Debbs v. Chrysler Corp., 810 A.2d 137, 155, 2002 Pa. Super. 326 (Pa. Super. 2002). *But see*, Zwiercan v. General Motors Corp., 2003 WL/848571 (Pa. Com. Pl.) (Plaintiff entitled to class wide presumption of reliance where it can be proven that defect may cause serious bodily harm or death).

[4] Debbs v. Chrysler Corp., 810 A.2d 137, 155, 2002 Pa. Super. 326 (Pa. Super. 2002).

Pennsylvania does not have a strong interest in imposing a scienter requirement on plaintiffs. The defendant is not a Pennsylvania company and the marketing misconduct emanated out of Minnesota by a Minnesota resident company. The Pennsylvania Supreme Court has explained the purpose behind the enactment of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"):

> The Legislature sought by the Consumer Protection Law [UTPCPL] to benefit the public at large by eradicating, among other things, 'unfair or deceptive' business practices. . . . [P]revention of deception and the exploitation of the unfair advantage has always been an object of remedial legislation.
>
> Although the Consumer Protection Law did articulate the evils desired to be remedied, the statute's underlying foundation is fraud prevention. This Court emphatically stated in Verona v. Schenley Farms Co., 167 A.2d 317, 320 (1933), '[a]s a statute for the prevention of fraud, it must be liberally construed to effect the purpose . . . .

Com., by Creamer v. Monumental Properties, Inc., 329 A.2d 812, 815-17 (Pa. 1974) (*citations omitted*).Accordingly application of Minnesota's consumer protection statures which does not require individualized proof of plaintiff's justifiable reliance or defendant's scienter (presumably to restrain liability and protect legitimate business in Pennsylvania) would not frustrate Pennsylvania's governmental interests in requiring same.

Furthermore, Pennsylvania has no interest in depriving its citizens of the benefits of Minnesota's consumer protections against a Minnesota corporation. See Downing v. Abercrombie & Fitch, 265 F.3d 994, 1006-07 (9th Cir. 2001) (dismissing as "pure fancy" the suggestion that Hawaii would wish to restrict its residents from recovery that others could obtain under California law); Mahne v. Ford Motor, 900 F.2d 83, 88 (6th Cir. 1990) (observing that Florida had no interest in having Florida statute of repose apply to a Florida accident involving a Florida plaintiff where such application "would not benefit the interest it was designed to protect," because it would instead serve to protect a foreign manufacturer in a foreign court at the expense of a Florida resident); Jackson v. Travelers Ins., 26 F. Supp. 2d 1153, 1162 (S.D. Iowa 1998); Magnant v. Medtronic, Inc., 818 F. Supp. 204, 207 (W.D. Mich. 1993) (Michigan's interest in protecting its own citizens did not weigh in favor of Michigan law where Minnesota law provided more protection); Fort Hammond Paper Co. v. William D. Witter, Inc., 1985 WL 1402, *8 (S.D.N.Y. 1985); Friends for All Children, Inc. v. Lockheed Aircraft Corp., 587 F. Supp. 180, 191 (D.D.C. 1984).

On the other hand, the governmental interests of Minnesota in applying its statutory consumer protection laws that do not require proof of reliance or defendant's scienter to a situation involving one of its own resident companies charged with

committing misconduct arising and occurring predominantly in Minnesota, and that relates to an industry important to Minnesota's economy and citizens well being, would be greatly frustrated by applying Pennsylvania's law. Minnesota's has a far greater interest in applying its UADP laws here in order to: (1) deter deceptive and unfair advertising and marketing practices by its resident manufacturers and merchants; (2) remedy any misleading and abusive marketing practices by its resident manufacturers and merchants that occurred, especially where, as here, issues of consumer health and safety are implicated; *see e.g.*- State by Humphrey v. Alpine Air Prods., Inc., 500 N.W.2d 788, 790 (Minn.1993)(misrepresenting ozone emitted by indoor air cleaner as being safe to consumer's health); Kociemba v. G.D. Searle & Co., 680 F.Supp. 1293, 1304-1305 (D.Minn.,1988) (misrepresentation of safety of intrauterine device product )and (3) provide compensating to consumers abused and harmed by its resident manufacturers and merchants misconduct committed, occurring or directed from Minnesota. Minnesota courts have long recognized that Minnesota has a strong interest in both compensating tort victims and promoting responsibility for corporations committing wrongful acts, particularly if the wrongdoer is a Minnesota corporation. Jacobson v. Universal Underwriters Ins. Group, 645 N.W.2d 741 (Minn. 2002); Boatwright v. Budak 625 N.W.2d 483, 489(2001); Bigelow v. Halloran, 313 N.W.2d 10 (Minn. 1981). This interest in fully compensating tort victims is not limited to Minnesota residents. See Jacobson 645 N.W.2d 741 (holding that a nonresident should be fully compensated); Gimmestad v. Gimmestad, 451 N.W.2d 662, 666 (Minn. App. 1990) (*same*). Under these circumstances, Minnesota's governmental interests in applying its consumer protection law are paramount to Pennsylvania's.

Furthermore, Minnesota's interests in conforming the behavior of a Minnesota corporation to the strictures of Minnesota law, and in preserving national consumer confidence in Minnesota corporations, are strong. See CTS v. Dynamic Corp, 481 U.S. 69, 93 (1987); State by Humphrey v. Philip Morris, 551 N.W.2d 490, 495 (Minn. 1996) (noting Minnesota's policy of encouraging aggressive prosecution of statutory consumer law violations); Ferris Baker Watts v. Deutsche Bank, 2004 WL 2501563, *6-8; Simon v. Phillip Morris, 124 F. Supp. 2d 46, 72 (E.D.N.Y. 2000); Boyes v. Greenwich Boat Works, 27 F. Supp. 543, 547. (D.N.J. 1998).

## PENNSYLVANIA STATUTE

Purdon's Pennsylvania Statutes and Consolidated Statutes Annotated Currentness
Purdon's Pennsylvania Statutes Annotated
Title 73. Trade and Commerce (Refs & Annos)
Chapter 4. Fair Trade, and Business Practices (Refs & Annos)
Unfair Competition, Acts or Practices (Refs & Annos)

### →§ 201-1. Short title

This act shall be known and may be cited as the "Unfair Trade Practices and Consumer Protection Law."

### →§ 201-2. Definitions

As used in this act.

***

(4) **"Unfair methods of competition"** and **"unfair or deceptive acts or practices"** mean any one or more of the following:

***

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

***

(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

***

(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

***

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

### →§ 201-3. Unlawful acts or practices; exclusions

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section

2 of this act and regulations promulgated under section 3.1 of this act are hereby declared unlawful. The provisions of this act shall not apply to any owner, agent or employe of any radio or television station, or to any owner, publisher, printer, agent or employe of a newspaper or other publication, periodical or circular, who, in good faith and without knowledge of the falsity or deceptive character thereof, publishes, causes to be published or takes part in the publication of such advertisement.

**➡§ 201-9.2. Private actions**

(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

(b) Any permanent injunction, judgment or order of the court made under section 4 of this act shall be prima facie evidence in an action brought under section 9.2 of this act that the defendant used or employed acts or practices declared unlawful by section 3 of this act.

**H**
Briefs and Other Related Documents

Only the Westlaw citation is currently available.Shirley **ZWIERCAN**, et al., Plaintiffs
v.
**GENERAL MOTORS** CORP., et al., Defendants
**No. 3235 JUNE.TERM 1999, CONTROL 112612.**

March 18, 2003.

Automobile manufacturer filed renewed motion for summary judgment as to automobile buyer's claim for violations of the Unfair Trade Practices and Consumer Protection Law. The Court of Common Pleas, Philadelphia County, No. 3235, June Term, 1999, Gene D. Cohen, J., held that genuine issues of material fact precluded summary judgment.

Motion denied.

West Headnotes

**Judgment 228 ⚷181(29)**

228 Judgment
228V On Motion or Summary Proceeding
228k181 Grounds for Summary Judgment
228k181(15) Particular Cases
228k181(29) k. Sales Cases in General. Most Cited Cases

Genuine issues of material fact as to whether alleged defect in front seats of automobiles could cause serious bodily harm or death and whether automobile manufacturer had knowledge of defect precluded summary judgment in automobile buyer's class action against manufacturer for violations of the Unfair Trade Practices and Consumer Protection Law. 73 P.S. § 201-1 et seq.

MEMORANDUM

COHEN, J.

*1 Defendant General Motors Corporation ("GM") has filed a Renewed Motion for Summary Judgment as to Plaintiff's claim for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. For the reasons set forth below, the Renewed Motion for Summary Judgment is Denied.

BACKGROUND

This action focuses on alleged material defects in vehicles manufactured by GM between 1990 and 1999 (the "Class Vehicles"). Plaintiff, the owner of a 1997 Chevy Blazer, alleges that the front seats of all Class Vehicles are designed in such a way that the front seats are prone to collapse rearward during moderate speed rear-end collisions. It is further alleged that Defendant knew of the alleged defect, and that the defect has caused, and is likely to continue to cause serious bodily injury or death to Class Vehicle occupants.

Although Plaintiff's vehicle has not been involved in a rear-end collision, she brings these claims, as a class representative, on behalf of herself and similarly situated owners of Class Vehicles, for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and breach of implied warranty of merchantability. On May 22, 2002, this Court granted Defendant's Motion for Summary Judgment as to the breach of warranty claim and denied summary judgment as to the UTPCPL claim. [FN1] On September 11, 2002 this Court granted summary judgment as to Defendant's claim that Plaintiff is preempted from using Defendant's statements made to the National Highway Transportation Safety Administration, and denied summary judgment on the Plaintiff's remaining UTPCPL claim. [FN2]

FN1. *Shirley Zwiercan, et al. v. General Motors Corp., et al*, 2002 WL 1472335 (C.P. Phila. May 22, 2002)(Herron, J.). Ruling on Defendant's first motion for Summary Judgment, Judge Herron held that Plaintiff's cost to repair the alleged defective seats is sufficient to sustain a claim of damages in a UTPCPL action. *Zwiercan v. General Motors*, 2002 WL 1472335 (C.P. Phila. May 22, 2001)(Herron, J.).

FN2. *Shirley Zwiercan, et al. v. General Motors Corp., et al*, 58 Pa. D. & C.4th 251 (C.P.Phila.Sept. 11, 2002)(Cohen, J.).

Pursuant to Rule 1035.2, Defendant urges this Court to reconsider its September 11, 2002 ruling. Pa. R. Civ. Pro. 1035.2. Defendant argues that the Superior

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Court issued an intervening and controlling opinion, Debbs v. Daimler Chrysler Corp., 810 A.2d 137 (Pa.Super.Oct.24, 2002), which Defendant claims addressed many of the same issues ruled on by this Court. Upon review of the pleadings and after hearing oral argument, Defendant's Renewed Motion for Summary Judgment is Denied.

DISCUSSION

This Court Original Ruling Stands-Plaintiff's UTPCPL Claim Survives Summary Judgment.

Defendant argues that the Superior Court's holding in Debbs v. DailmerChrysler, 810 A.2d 137 (Pa.Super.2002) is controlling authority that is contrary to this Court's September 11, 2002 ruling. Defendant argues that *Debbs,* precludes this Court from holding that Plaintiff is entitled to a presumption of reliance, and that Defendant has a duty to disclose known dangerous and material latent defects to consumers.

Defendant ignores a key distinction between the facts under *Debbs,* and those presented in the instant case. In *Debbs,* it was alleged that Chrysler withheld information that serious burns could result from a deployment of the air bag in its vehicles. Although, the claim against Chrysler was based on an alleged "material" omission, it was undisputed that the risk of serious burns was relatively low. Debbs, 810 A.2d at 158. Moreover, the Superior Court was wholly unpersuaded by the plaintiff's claim as to the "materiality" of the allegedly withheld information, stating that, "[u]nder these facts, consumers could have a wide range of reactions to the undisclosed information ... [s]ome consumers may not have bought a Chrysler at all; others may have bought the car but replaced the air bag; and others may have bought the car but not replaced the air bag." *Id.* Further clarifying its holding, the Superior Court stated that "[r]easonable consumers could come to different conclusions about the *materiality* of the withheld information." *Id.* (emphasis added).

***2** In the instant case, there can be no doubt as to the materiality of the alleged defect. As more fully outlined in this Court's September 11, 2002 opinion, Plaintiff has alleged facts that, if true, support finding that the alleged defect in the front seats of Defendant's Class Vehicles are likely to cause paralysis or even death. Shirley Zwiercan, et al. v. General Motors Corp., et al, 58 Pa. D. & C.4th 251 (C.P.Phila.Sept. 11, 2002). It is further alleged that Defendant deliberately withheld its knowledge of this material and potentially life threatening defect. Given the severity of the consequences at issue in *Zwiercan,* materiality can not be questioned. Therefore, this Court finds Plaintiff is entitled to a class wide presumption of reliance where it can be proven that the defect may cause serious bodily harm or death.

Without causing harm to this Court's original opinion, it should be noted that this Court was persuaded by the severity of the harm and the alleged egregious nature of the Defendant's withholding of such material information from consumers. Defendant's argument that, following *Zwiercan,* manufacturers will be compelled to disclose "all information to potential purchasers" because manufacturers always have "superior knowledge" of the facts, is belied by this Court's original opinion. This Court's holding in *Zwiercan* is limited to finding a duty to disclose known serious and life threatening latent defects. In so holding, this Court's opinion is consistent with the law in most states; a party has a duty to disclose known material and dangerous defects, *i.e.* those defects which are likely to cause significant bodily harm. As Defendant is well aware, the public policy debate over a manufacturer's duty to disclose known life threatening defects was settled decades ago. The *Zwiercan* opinion simply and quite appropriately applies that duty in the context of Pennsylvania's consumer protection statute. Defendant cannot argue in good faith that it is under no duty to disclose such a significant and material safety defect to the public.

Defendant and Plaintiff should be reminded that Plaintiff must overcome a heavy burden in order to prevail. Plaintiff's ultimate success at trial depends on her ability to prove the seriousness of the latent defect and Defendant's knowledge of that defect. Materiality of the defect is the keystone of Plaintiff's case. Plaintiff must first establish Defendant's knowledge of the serious and dangerous defect before being entitled to a presumption of reliance.

CONCLUSION

For the reasons stated, this Court finds that Plaintiff has alleged sufficient facts, which if accepted by a finder of fact, are sufficient to establish a valid UTPCPL claim against Defendant. Accordingly, relying on its original opinion and all matters of record, this Court denies Defendant's Renewed Motion for Summary Judgment. This Court will issue

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

a contemporaneous Order consistent with this Opinion.

*ORDER and MEMORANDUM*

***3** AND NOW, this 18th day of MARCH, 2003, upon consideration of Defendant General Motors Corporation's Renewed Motion for Summary Judgment, Plaintiff Shirley Zwiercan's response thereto, oral argument from the parties, and in accordance with the Memorandum Opinion being filed contemporaneously with this Order, it is hereby ORDERED and DECREED that the Motion is DENIED.

Pa.Com.Pl.,2003.
Zwiercan v. General Motors Corp.
Not Reported in A.2d, 2003 WL 1848571 (Pa.Com.Pl.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 2413314 (Trial Motion, Memorandum and Affidavit) General Motors' Supplemental Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification (Jul. 06, 2004)
• 1999 WL 33915737 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion for Class Certification (Jun. Term 1999)
• 1999 WL 33915738 (Trial Motion, Memorandum and Affidavit) General Motors Corporation's Response to Plaintiff's Motion for Class Certification (Jun. Term 1999)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.