# Wisconsin

**WISCONSIN**

| | Did SJM's conduct violate the consumer protection law? | Private cause of action? | Scienter requirement? | Individual Reliance? | Does the law prohibit material omissions? |
|---|---|---|---|---|---|
| MN | Yes | Yes | No | No | Yes |
| WI | Yes<br>Wisc. Stat. § 100.18(1) | Yes[1] | No[2] | Yes[3] | No[4] |

**Are there any true conflicts of substantive law?**

Yes.

**Which state do the choice influencing factors favor?**

Minnesota.

Minnesota's interests in conforming the behavior of a Minnesota corporation to the strictures of Minnesota law, and in preserving national consumer confidence in Minnesota corporations, are strong. See CTS v. Dynamic Corp., 481 U.S. 69, 93 (1987); State by Humphrey v. Philip Morris, 551 N.W.2d 490, 495 (Minn. 1996) (noting Minnesota's policy of encouraging aggressive prosecution of statutory consumer law violations); Ferris Baker Watts v. Deutsche Bank, 2004 WL 2501563, *6-8; Simon v. Phillip Morris, 124 F. Supp. 2d 46, 72 (E.D.N.Y. 2000); Boyes v. Greenwich Boat Works, 27 F. Supp. 543, 547 (D.N.J. 1998).

By contrast, Wisconsin has ***no*** interest in depriving its citizens of the benefits of Minnesota's consumer protections against a Minnesota corporation. See Downing v. Abercrombie & Fitch, 265 F.3d 994, 1006-07 (9th Cir. 2001) (dismissing as "pure fancy" the suggestion that Hawaii would wish to restrict its residents from recovery that others

---

[1] Wisc. Stat. §100.18(11)(b)(2).

[2] Only certain acts or omissions must be made with knowledge that the act or omission was false. Compare Wisc. Stat. § 100.18(1) and § 100.18(12)(b). See also Ricco v. Riva, 266 Wis.2d 696, 669 N.W.2d 193, 200-203 (Wisc. App. 2003). In this action, plaintiffs do not rely on any provision requiring knowledge or falsity. See also HBN v. Schappe, 532 N.W.2d 144 (Wisc. App. 1993).

[3] Lunde v. Chase, 224 Wis. 2d 642, 590 N.W.2d 282 (Wisc. App. 1999).

[4] Tietsworth v. Harley-Davidson,, 677 N.W.2d 233, 237 (Wisc. 2004).

could obtain under California law); Mahne v. Ford Motor, 900 F.2d 83, 88 (6th Cir. 1990) (observing that Florida had no interest in having Florida statute of repose apply to a Florida accident involving a Florida plaintiff where such application "would not benefit the interest it was designed to protect," because it would instead serve to protect a foreign manufacture in a foreign court at the expense of a Florida resident); Jackson v. Travelers Ins., 26 F. Supp. 2d 1153, 1162 (S.D. Iowa 1998); Magnant v. Medtronic, Inc., 818 F. Supp. 204, 207 (W.D. Mich. 1993) (Michigan's interest in protecting its own citizens did not weigh in favor of Michigan law where Minnesota law provided more protection); Fort Hammond Paper Co. v. William D. Witter, Inc., 1985 WL 1402, *8 (S.D.N.Y. 1985); Friends for All Children, Inc. v. Lockheed Aircraft Corp., 587 F. Supp. 180, 191 (D.D.C. 1984).

To deny plaintiffs the rights afforded by the Minnesota statutes here – in favor of reduced or more-difficult-to-enforce rights under Wisconsin law -- would thwart Minnesota's entrenched policies of deterrence and domestic corporate regulation, and provide no comparable support to any policies of Wisconsin. Neither the Wisconsin court system nor any Wisconsin defendant will be burdened by the application of salutary Minnesota law in aid of Wisconsin citizens against a Minnesota corporation in a Minnesota court. Indeed, to the contrary, application of Minnesota's more liberal consumer protections here would support Wisconsin's express interest in enhancing consumer protections for its citizens.

AGRICULTURE; FOODS AND DRUGS; MARKETS
CHAPTER 100. MARKETING; TRADE PRACTICES

*Wis. Stat. § 100.18* (2005)

100.18. Fraudulent representations.

(1) No person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service, shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

(2)

(a) In advertising or otherwise representing the sale or furnishing of any property or services combined with or conditioned on the purchase of any other property or services described in such advertisement or other representation, it is deceptive for a retailer to:

1. Fail to state the price or amount which must be paid for the property or services included in such sale, along with any other condition to the receipt of such property or services, if the advertisement or representation does not refer to the price of the property or services as the "regular price". The price or amount which must be paid shall be set forth clearly, conspicuously and in such manner that the total price or amount to be paid may be readily ascertained.

2. Sell the property or services at more than the regular price or fail to state any other condition to the receipt of the property or services included in the sale, if the advertisement or representation refers to the price of the property or services as the "regular price".

3. Mark up the regular price of the property or services which must be purchased.

4. Substitute property or services of inferior value or quality for the property or services which must be purchased.

(b) This subsection does not apply to advertisements or representations concerning custom-made property.

(c) In this subsection, "regular price" means the lowest price for the same quantity and quality of product or the same services, at which the seller or advertiser of the product or services openly and actively sold the product or services in the geographic trade area of the advertisement or representation during the sellers or advertisers most recent and regular 30-day course of business.

(3) It shall be deemed deceptive advertising, within the meaning of this section, for any person, firm or corporation, engaged in the business of buying or selling new or secondhand furs, wearing apparel, jewelry, furniture, pianos, phonographs, or other musical instruments, motor vehicles, stocks, or generally any form of property, real, personal or mixed, or in the business of furnishing any kind of service or investment, to advertise such articles, property or service for sale or purchase, in any manner indicating that the sale or purchase is being made by a private party or householder not engaged in such business. And every such firm, corporation or association, engaged in any such business, in advertising goods, property or service for sale or purchase, shall affirmatively and unmistakably indicate and state that the seller or purchaser is a business concern and not a private party.

(3m) It is deceptive advertising to represent the retailing of merchandise to be a selling-out or closing-out sale if the merchandise is not of a bankrupt, insolvent, assignee, liquidator, adjuster, trustee, personal representative, receiver, wholesaler, jobber, manufacturer, or of any business that is in liquidation, that is closing out, closing, or disposing of its stock, that has lost its lease or has been or is being forced out of business, or that is disposing of stock on hand because of damage by fire, water, or smoke. This subsection does not apply to any "closing-out sale" of seasonal merchandise or any merchandise having a designated model year if the person conducting the sale is continuing in business.

(5) Any person, firm, corporation or association engaged in any business mentioned in sub. (3) , or in any other kind of business, whether conducting such business in a store, business block, residence or other building, shall at all times keep a conspicuous sign posted on the outside of his or her establishment and another conspicuous sign in the salesroom, which sign shall clearly state the name of the association, corporation or individual who actually owns said merchandise, property or service which is being offered to the public and not the name of any other person; provided, however, that the exterior sign shall not be required where the seller has no control over the exterior of the premises where such business is conducted.

(6) All advertising which shows or in any manner relates to the price at which motor fuel is offered for sale at retail, except multiple gallon computers attached to or forming a part of any dispensing equipment shall show only (a) the single gallon unit price including all applicable taxes in one amount or (b) the single gallon product price, the taxes applicable thereto, and the total single gallon unit price including all applicable taxes. In any such advertising, all numerals which represent either price or taxes shall be of the same type and size except that fractions of a cent shall be shown in figures one-half the height, width and prominence of the whole numbers.

(8) Every wholesaler and every other person selling or distributing motor fuel in this state shall keep posted in a conspicuous place, most accessible to the public at his or her place of business, and on every pump from which delivery is made directly into the fuel tank attached to a motor vehicle, a placard showing the net selling price per gallon of all grades of motor fuel and the amount of all taxes per gallon thereon. On pumps or other dispensing equipment from which motor fuel is sold and delivered directly into fuel supply tanks attached to motor vehicles, such posting shall be in figures not less than one inch high, except that no such placard shall be required on a computer pump whereon the total net selling price per gallon including all taxes is legibly shown on its face. Except for sales to drivers of motor vehicles used by physically disabled persons under *s. 100.51 (5)* , all sales shall be made at the posted price. Delivery slips shall also show the net selling price per gallon of all grades of motor fuel and the amount of all taxes per gallon thereon. If the wholesaler or person has more than one place of business in this state, the wholesaler or person shall post that placard at all of his or her places of business. All prices posted shall remain in effect for at least 24 hours after they are posted. It shall be considered deceptive advertising to advertise or represent in any manner the price of motor fuel offered for sale at retail to be less than the price so posted on each pump.

(9)

(a) It is deemed deceptive advertising, within the meaning of this section, for any person or any agent or employee thereof to make, publish, disseminate, circulate or place before the public in this state in a newspaper or other publication or in the form of book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label or over any radio or television station or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to the purchase, sale, hire, use or lease of real estate, merchandise, securities, service or employment or to the terms or conditions thereof which advertisement, announcement, statement or representation is part of a plan or scheme the purpose or effect of which is not to sell, purchase, hire, use or lease the real estate, merchandise, securities, service or employment as advertised.

(b) This section does not apply to the owner, publisher, printer, agent or employee of a newspaper or other publication, periodical or circular, or of a radio or television station, who in good faith and without knowledge of the falsity or deceptive character thereof, publishes, causes to be published or takes part in the publication of such advertisement.

(9m) It is deemed deceptive advertising to misrepresent the nature of a local energy resource system under *s. 101.175*

(10)

(a) It is deceptive to misrepresent the nature of any business by use of the words manufacturer, factory, mill, importer, wholesaler or words of similar meaning, in a corporate or trade name or otherwise.

(b) It is deceptive to represent the price of any merchandise as a manufacturers or wholesalers price, or a price equal thereto, unless the price is not more than the price

which retailers regularly pay for the merchandise. The effective date of this subsection shall be January 1, 1962.

(10m) It is deceptive or misleading advertising for a person who sells new motor vehicles to compare new motor vehicle selling prices, including the offered prices or the actual sale prices, to the manufacturers suggested retail price for that vehicle unless it is clearly and conspicuously disclosed that the latter price is a manufacturers suggested retail price and may not represent actual sale prices.

(10r) It is deceptive and misleading for a person who is conducting business in a community or region from a location outside that community or region to use the name of the community or region, or other description of the community or region, in the corporate or trade name of the business or in any other information that is published if the use of the name or description of the location creates the misrepresentation that the business is located in the community or region.

(11)

(a) The department of agriculture, trade and consumer protection shall enforce this section. Actions to enjoin violation of this section or any regulations thereunder may be commenced and prosecuted by the department in the name of the state in any court having equity jurisdiction. This remedy is not exclusive.

(b)

2. Any person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees, except that no attorney fees may be recovered from a person licensed under ch. 452 while that person is engaged in real estate practice, as defined in *s. 452.01 (6)* Any person suffering pecuniary loss because of a violation by any other person of any injunction issued under this section may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including reasonable attorney fees, except that no attorney fees may be recovered from a person licensed under ch. 452 while that person is engaged in real estate practice, as defined in *s. 452.01 (6)*

3. No action may be commenced under this section more than 3 years after the occurrence of the unlawful act or practice which is the subject of the action. No injunction may be issued under this section which would conflict with general or special orders of the department or any statute, rule or regulation of the United States or of this state.

(c)

1. Whenever the department has reason to believe that a person is in possession, custody or control of any information or documentary material relevant to the enforcement of this section it may require that person to submit a statement or report, under oath or otherwise, as to the facts and circumstances concerning any activity in the course of trade or commerce; examine under oath that person with respect to any activity in the course of trade or commerce; and execute in writing and cause to be served upon such person a

civil investigative demand requiring the person to produce any relevant documentary material for inspection and copying.

2. The department, in exercising powers under this subsection, may issue subpoenas, administer oaths and conduct hearings to aid in any investigation.

3. Service of any notice by the department requiring a person to file a statement or report, or service of a subpoena upon a person, or service of a civil investigative demand shall be made in compliance with the rules of civil procedure of this state.

4. If a person fails to file any statement or report, or fails to comply with any civil investigative demand, or fails to obey any subpoena issued by the department, such person may be coerced as provided in *s. 885.12* , except that no person shall be required to furnish any testimony or evidence under this subsection which might tend to incriminate the person.

(d) The department or the department of justice, after consulting with the department, or any district attorney, upon informing the department, may commence an action in circuit court in the name of the state to restrain by temporary or permanent injunction any violation of this section. The court may in its discretion, prior to entry of final judgment, make such orders or judgments as may be necessary to restore to any person any pecuniary loss suffered because of the acts or practices involved in the action, provided proof thereof is submitted to the satisfaction of the court. The department and the department of justice may subpoena persons and require the production of books and other documents, and the department of justice may request the department to exercise its authority under par. (c) to aid in the investigation of alleged violations of this section.

(e) In lieu of instituting or continuing an action pursuant to this section, the department or the department of justice may accept a written assurance of discontinuance of any act or practice alleged to be a violation of this section from the person who has engaged in such act or practice. The acceptance of such assurance by either the department or the department of justice shall be deemed acceptance by the other state officials enumerated in par. (d) if the terms of the assurance so provide. An assurance entered into pursuant to this section shall not be considered evidence of a violation of this section, provided that violation of such an assurance shall be treated as a violation of this section, and shall be subjected to all the penalties and remedies provided therefor.

(12)

(a) This section does not apply to the insurance business.

(b) This section does not apply to a person licensed as a broker or salesperson under *s. 452.09* while that person is engaged in real estate practice, as defined in *s. 452.01 (6)* , unless that person has directly made, published, disseminated, circulated or placed before the public an assertion, representation or statement of fact with the knowledge that the assertion, representation or statement of fact is untrue, deceptive or misleading.

LEXSEE 224 WIS2D 642

**Destin L. Lunde, Plaintiff-Appellant, v. Fredric L. Chase and Helen B. Chase, Defendants-Third-Party Plaintiffs-Respondents, Linda Echavarry and Century 21, Defendants, v. Assured Realty, Inc., d/b/a Century 21 Assured Realty, Linda M. Echavarry and AAI Syndicate # 1, Ltd., Third-Party Defendants.**

**No. 98-0716**

**COURT OF APPEALS OF WISCONSIN, DISTRICT TWO**

***224 Wis. 2d 642; 590 N.W.2d 282; 1999 Wisc. App. LEXIS 1***

**January 6, 1999, Released**

**NOTICE:** [*1] UNPUBLISHED LIMITED PRECEDENT OPINION - REFER TO LOCAL RULE 809.23(1)(B)5, STATS.

**PRIOR HISTORY:** APPEAL from a judgment of the circuit court for Walworth County: JAMES L. CARLSON, Judge.

**DISPOSITION:** Affirmed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff purchaser appealed from a judgment of the Circuit Court for Walworth County (Wisconsin) that granted summary judgment in favor of defendant sellers in plaintiff's suit for breach of warranty, breach of contract, and misrepresentation in the sale of a house to plaintiff.

**OVERVIEW:** Plaintiff purchaser contracted to buy a home from defendant sellers. Prior to closing, defendants gave plaintiff a condition report which indicated that the property possessed a number of defects. Despite this, the parties closed on the house. When plaintiff began remodeling the home, he discovered that the house was missing many major components, including support beams and floor joists. He demolished the home because the cost of repairs exceeded the home's value. Plaintiff sued defendants for breach of contract, breach of warranty, and misrepresentation. The trial court granted defendants motion for summary judgment, and plaintiff appealed. The court affirmed. Proceeding with a real estate purchase despite awareness of a defect constituted a waiver of any claim based on warranties or representations relating to the disclosed defect.

**OUTCOME:** Summary judgment in favor of defendant sellers in plaintiff purchaser's suit for breach of contract, breach of warranty, and misrepresentation in the sale of a house to plaintiff was affirmed because plaintiff waived his claims when he closed on the house, notwithstanding his knowledge that the home contained defects.

**LexisNexis(R) Headnotes**

***Civil Procedure > Appeals > Standards of Review > De Novo Review***

***Civil Procedure > Summary Judgment > Summary Judgment Standard***
[HN1] The appeals court's review on summary judgment is independent of the circuit court's determination.

***Real & Personal Property Law > Sales, Exchanges & Remedies > Duty to Disclose***
[HN2] Proceeding with a real estate purchase despite awareness of a defect constitutes a waiver of any claim based on warranties or representations relating to the disclosed defect.

***Real & Personal Property Law > Sales, Exchanges & Remedies > Duty to Disclose***
[HN3] The ability to rescind after disclosure of a defect is statutory and stands independent of the "as is" sale.

***Torts > Business & Employment Torts > Deceit & Fraud***
[HN4] To recover for false advertising under *Wis. Stat. § 100.18*, a plaintiff must show a causal connection between the illegal practice and the pecuniary loss suffered.

**JUDGES:** Before Snyder, P.J., Brown and Nettesheim, JJ.

**OPINION:**

**PER CURIAM. Destin L. Lunde appeals from a judgment dismissing his action against Fredric and Helen Chase for breach of warranty, breach of contract and misrepresentation in the sale of a house to Lunde. We conclude that Lunde waived any claims based on prior warranties or representations by choosing to close the transaction after his receipt of the condition report disclosing defects.** ***See Lambert v. Hein****, 218 Wis. 2d 712, 730, 582 N.W.2d 84, 92* (Ct. App.), *review denied, 220 Wis. 2d 365, 585 N.W.2d 157 (1998).* We affirm the judgment.

Lunde's offer to purchase the home owned by the Chases was accepted on August 22, 1995. The contract required the Chases to provide a Real Estate Condition Report within ten days of his acceptance of the sale contract. On September 28, 1995, the Chases provided the condition report which indicated an awareness of certain types of defects, including: [*2]

> defects in the structure of the property. Structural defects with respect to the residence or other improvements might include, but are not limited to movement, shifting or deterioration in walls or foundation; major cracks or flaws in interior or exterior walls, siding, partitions or foundation; wood rot; or significant problems with driveways, sidewalks, patios, decks, fences, waterfront piers or walls, windows, doors, floors, ceilings, stairways or insulation.

Thirteen of the twenty-eight paragraphs in the form report indicated certain defects. The report even acknowledged that remodeling had been done during the Chases' ownership without required permits. In the "additional information" section of the report, the Chases wrote in "Sold: AS-IS." Lunde's signature on the report acknowledges his receipt of the document.

The closing was held on October 9, 1995. After the purchase, Lunde began to perform "finishing touches" to remodeling work the

Chases had performed. Much of the drywall began to crack and the ceiling started to cave in. In trying to make repairs, Lunde discovered that supporting beams and floor joists were missing. Other missing components [*3] were discovered as well. Eventually Lunde had the house razed because the cost of repairs exceeded the value of the house.

Lunde commenced this action alleging that the Chases misrepresented the condition of the home. During discovery, the Chases served Lunde with a request to admit "that the property was sold to you as is.'" Lunde admitted that request but later moved to amend the admission. The circuit court concluded there were no questions of fact that the sale was "as is" and granted the Chases summary judgment dismissing Lunde's claims.

[HN1] Our review on summary judgment is independent of the circuit court's determination. *See* ***Lambert****, 218 Wis. 2d at 722, 582 N.W.2d at 88.* Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* ***id.*** *at 723, 582 N.W.2d at 88.*

It is undisputed that the condition report disclosed an awareness of numerous defects. Under *§ 709.05(1), Stats*., Lunde had the right to rescind the purchase contract after receipt of the report which disclosed defects. Lunde chose to proceed with the purchase.

In ***Lambert***, we held that [HN2] proceeding [*4] with a real estate purchase despite awareness of a defect constitutes a waiver of any claim based on warranties or representations relating to the disclosed defect. *See* ***Lambert****, 218 Wis. 2d at 730, 732-33, 582 N.W.2d at 92-93.* Our holding was based on the purposes of inspection and disapproval procedures, which are to avoid future disputes and possible litigation and to give the buyer the opportunity to make an informed choice about whether to proceed with the contract or seek amendments to its terms. *See* ***id.*** *at 729, 582 N.W.2d at 91.* The delivery of the condition report and consequential right to rescind serve the same purposes. Thus, Lunde waived his right to pursue a breach of warranty or misrepresentation claim regarding matters disclosed in the condition report.

Having determined that Lunde's choice to proceed in the face of disclosed defects precludes his claims, we need not decide the issues Lunde raises with respect to the "as is" clause penned in the condition report. [HN3] The ability to rescind after disclosure of a defect is statutory and stands independent of the "as is" sale. We note, however, that Lunde's contention that the condition report, and [*5] consequently the "as is" clause, was not a part of the contract is facially weak because the second page of the offer to purchase specifically referred to the condition report and the report was required by law. Moreover, Lunde acknowledged receipt of the condition report, and the insertion of the "as is" clause did not stand as a unilateral contract modification.

Lunde claims that the circuit court erroneously exercised its discretion in not permitting him to modify his admission that the purchase was "as is." Lunde attempts to create an issue of fact by modifying his admission. Although the "as is" clause makes the Chases' position stronger, it is not the decisive contractual provision. Lunde's admission of an "as is" sale is of no consequence because he had the right to rescind after receipt of the condition report which disclosed defects.

Lunde attempts to create a factual issue by questioning whether the disclosure in the condition report was "full and fair." He contends that there was no actual disclosure because the condition report did not include an explanation as to the known defects. Lunde would like to explain away the disclosed defects as an acknowledgment that certain [*6] remodeling tasks had not been completed. If Lunde wanted more of an explanation of the defects than the "as is" clause inserted in the explanatory sec-

tion provided, he should have asked for it. As ***Lambert*** notes, a real estate transaction is a fluid, not frozen, situation. *See **id.** at 730, 582 N.W.2d at 92.* Lunde accepted the report as complete enough.

Further, given the extent of the defects disclosed in the condition report-thirteen out of twenty-eight paragraphs affirmatively indicated defects-as a matter of law, Lunde knew that the Chases' representation in the offer of no defects and their oral representation that they were selling Lunde a "good house" were false. Lunde chose to purchase the house despite that knowledge. Lunde's reliance on any representations was not justifiable. *See Lambert, 218 Wis. 2d at 731-33, 582 N.W.2d at 92; **Foss v. Madison Twentieth Century Theaters, Inc.**, 203 Wis. 2d 210, 218-20, 551 N.W.2d 862, 865-66 (Ct. App. 1996).*

Finally, we address Lunde's claim under *§ 100.18(1), Stats*. We agree with the Chases that a claim under § 100.18(1) for false advertising is not adequately set forth in the complaint simply by parenthetically [*7] including the statutory reference, as Lunde did here. Even if adequately raised in the complaint, the claim fails. [HN4] To recover under § 100.18, a plaintiff must show a causal connection between the illegal practice and the pecuniary loss suffered. *See* § 100.18(11)(b); ***Tim Torres Enters., Inc. v. Linscott**, 142 Wis. 2d 56, 70, 416 N.W.2d 670, 675 (Ct. App. 1987)*. The required causal connection includes an inquiry into whether the reliance on the information provided was justified. As we have already noted, Lunde's reliance was not justified in light of the condition report.

*By the Court.*-Judgment affirmed.

This opinion will not be published. *See* Rule *809.23(1)(b)5, Stats*.

LEXSEE 532 NW2D 144

**HBN PARTNERSHIP, Plaintiff-Respondent-Cross Appellant, v. PERRY J. SCHAPPE, as trustee for Perry J. Schappe Revocable Trust, Defendant-Appellant, HOVDE & HOVDE, INC., and GLENN HOVDE, Defendants-Third Party Plaintiffs- Co-Appellants-Cross Respondents, JAY BUSSE CENTURY 21 - THE BUSSE COMPANY, REALTOR, MADISON AREA TECHNICAL COLLEGE, Third Party Defendants.**

**No. 93-1866**

**COURT OF APPEALS OF WISCONSIN, DISTRICT FOUR**

*191 Wis. 2d 824; 532 N.W.2d 144; 1995 Wisc. App. LEXIS 118*

**February 2, 1995, Released**

**NOTICE:** [*1]

UNPUBLISHED LIMITED PRECEDENT OPINION - REFER TO LOCAL RULE 809.23(1)(B)5, STATS.

**PRIOR HISTORY:** APPEAL from judgments of the circuit court for Dane County: RICHARD J. CALLAWAY, Judge.

**DISPOSITION:** *Affirmed in part; reversed in part and cause remanded.*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellants, trustee and corporation, challenged portions of a judgment of the circuit court for Dane County (Wisconsin), which rescinded a contract and dismissed their third-party action. Respondent partnership appealed the dismissal of its claim for damages and attorney fees under the false advertising statute, *Wis. Stat. § 100.18(1)*.

**OVERVIEW:** A partnership sued a trustee and corporation for rescission of a real estate purchase contract and damages, attorney fees, and costs under the false advertising statute, based on allegations that the trustee and corporation failed to disclose fuel oil contamination on the property. The trustee and corporation brought a third-party action for contribution against the original property owner. The trial court dismissed the false advertising claim, rescinded the contract, and ordered the trustee to return the purchase price of the property to the partnership, together with restorative damages. The third-party complaint was also dismissed. The trustee and corporation challenged the portion of the judgment rescinding the contract and dismissing the third-party action. The partnership challenged the dismissal of its claim for damages and attorney fees under the false advertising statute. The court held that dismissal of the third-party action was improper because the third-party defendant had not appeared in court to challenge the claim. The court also reversed and remanded on the cross-appeal for damages in order to determine whether the statutory conditions for liability were met.

**OUTCOME:** The court reversed the judgment dismissing the third-party complaint because the third-party defendant had not appeared to challenge the claim. The court also reversed and remanded on the cross-appeal for damages in order to determine whether the statutory conditions for liability were met.

**LexisNexis(R) Headnotes**

***Contracts Law > Remedies > Rescission & Redhibition***
[HN1] Rescission is an equitable remedy which is properly tried to the trial court. The effect of rescinding a contract is to restore the parties to the position they would have occupied had no contract ever been made. And while misrepresentation of varying degrees has been held to be grounds for rescission, one seeking to rescind a contract must make some showing of prejudice, damage or detriment.

***Contracts Law > Remedies > Rescission & Redhibition***
***Contracts Law > Defenses > Fraud & Misrepresentation***
[HN2] Misrepresentation can form the basis for contract rescission, even if that misrepresentation was innocently made, and nondisclosure can form the basis for a misrepresentation sufficient to allow the avoidance of a contract obligation under general principles of contract law.

***Contracts Law > Remedies > Rescission & Redhibition***
***Contracts Law > Defenses > Fraud & Misrepresentation***
***Contracts Law > Breach > Causes of Action***
[HN3] The most innocent misrepresentation may result in unforeseen liability to a likewise innocent party. In circumstances such as these, where both parties, the misrepresenter and the other party are innocent of any wrongdoing there is a dilemma as to the proper treatment to be accorded each. But between two innocent parties, the party making the misrepresentation will bear the loss. There is a basic inequity of allowing one party to benefit from his own misstatements or misrepresentations, however honestly he believed them to be at the time made.

***Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review***
***Civil Procedure > Trials > Bench Trials***
***Evidence > Witnesses***
[HN4] A reviewing court will overturn a trial court's factual findings only if they are clearly erroneous. It will examine the record not for evidence to support a finding which the trial court did not make but for facts to support the finding the trial court did make. Matters of witness credibility are to be determined by the trier of fact and that determination will not be disturbed where more than one reasonable inference can be drawn from the credible evidence.

***Contracts Law > Formation > Detrimental Reliance***
[HN5] A party's reliance on another's representations may be considered reasonable and justifiable where the relationship between the parties would justify such reliance.

***Contracts Law > Remedies > Rescission & Redhibition***
[HN6] While a showing of actual pecuniary loss is not necessary to establish a claim for rescission based on a seller's misrepresentation of the status of the property, there must be some showing of prejudice, damage or detriment to the buyer. The proposition that a purchaser cannot rescind unless the thing of which

he or she claims is of practical consequence from some point of view is not difficult to maintain.

***Contracts Law > Remedies > Rescission & Redhibition***
[HN7] A trial court may award restorative damages in a rescission action.

***Contracts Law > Remedies > Rescission & Redhibition***
[HN8] Rescission is an equitable remedy and the nature and scope of the relief ordered in such cases are committed to the discretion of the trial court.

***Contracts Law > Remedies > Rescission & Redhibition***
[HN9] Reasonable expenditures in reliance on the contract are recoverable as awards of restitution in rescission cases.

***Antitrust & Trade Law > Consumer Protection > False Advertising***
[HN10] *Wis. Stat. § 100.18(1)* provides that no agent with intent to sell real estate or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase of any real estate shall make an advertisement, announcement, statement or representation of any kind to the public relating to such purchase or sale of such real estate or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading. Any person suffering pecuniary loss due to a violation of the statute may sue for such loss, costs and reasonable attorney fees. *Wis. Stat. § 100.18(11)(b)2.*

***Governments > Legislation > Interpretation***
[HN11] The aim of all statutory interpretation is to discern the intent of the legislature. In ascertaining a statute's meaning, the court's first inquiry is to the plain language of the statute. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning.

***Governments > Legislation > Interpretation***
[HN12] The legislature, in adopting a statute, choses its terms carefully and precisely to express its meaning.

***Civil Procedure > Appeals > Reviewability > Preservation for Review***
***Contracts Law > Statutes of Frauds***
[HN13] A statute of frauds defense is waived if not raised in the pleadings.

***Contracts Law > Statutes of Frauds***
[HN14] A party may, by his or her conduct, be estopped from asserting the statute of frauds.

***Business & Corporate Entities > Agency > Duties & Liabilities > Authorized Acts of Agents***
[HN15] A principal is responsible for the representations--or misrepresentations--of an authorized agent.

***Contracts Law > Remedies > Rescission & Redhibition***
***Contracts Law > Defenses > Fraud & Misrepresentation***
[HN16] Even innocent misrepresentations will support rescission of a contract.