# Exhibit 99

United States District Court, E.D. Pennsylvania.
John J. BUNNION, Jr., et al., individually and on behalf of all others similarly situated
v.
CONSOLIDATED RAIL CORP., et al.
**No. Civ.A. 97-4877.**

May 14, 1998.

Stephen G. Console, Law Offices of Stephen G. Console, Phila., PA, USA, Carol A. Mager, Debora A. O'Neill, Mager, Liebenberg & White, Philadelphia, PA, USA, Joel C. Schochet, Mager Liebenberg & White, Philadelphia, PA, for John J. Bunnion, Jr., Plaintiff.
Stephen G. Console, Carol A. Mager, Debora A. O'Neill, Joel C. Schochet, (See above), for Anthony D. Falcone, on Behalf of Themselves and All Similarly Situated Persons, Plaintiff.
Laurence Z. Shiekman, Brian T. Ortelere, Pepper, Hamilton & Scheetz, Phila, PA, USA, for Consolidated Rail Corporation, Defendant.
Laurence Z. Shiekman, Brian T. Ortelere, (See above), for Consolidated Rail Corporation Matched Savings Plan, Defendant.
Laurence Z. Shiekman, Brian T. Ortelere, (See above), for Supplemental Pension Plan of Consolidated Rail Corporation, and the Fiduciaries and Administrators of the Foregoing Plans, Defendant.
Stephen G. Console, Law Offices of Stephen G. Console, Phila., PA, USA, Carol A. Mager, Debora A. O'NeillMager, Liebenberg & White, Philadelphia, PA, USA, for C. Dyana Reed, Plaintiff.
Stephen G. Console, Carol A. Mager, Debora A. O'Neill, (See above), for Frances E. Bronson, Plaintiff.
Stephen G. Console, Carol A. Mager, Debora A. O'Neill, (See above), for George Hall, Plaintiff.
Stephen G. Console, Carol A. Mager, Debora A. O'Neill, (See above), for Deborah Daley, Plaintiff.
Stephen G. Console, Carol A. Mager, Debora A. O'Neill, (See above), for John L. Raybuck, Plaintiff.
Brian T. Ortelere, Pepper, Hamilton & Scheetz, Phila, PA, USA, for Administrative Committee of the Conrail Matched Savings Plan, Defendant.
Brian T. Ortelere, (See above), for Supplemental Pension Plan Administrative Committee, Defendant.
Brian T. Ortelere, (See above), for Flexible/Medical/Dental Dependent Plan, Life Insurance, Dismemberment and Long Term Disability and Retirees Life Insurance Plan, Severance Plan, Defendant.
Brian T. Ortelere, (See above), for Deborah A. Melnyk, Defendant.
Brian T. Ortelere, (See above), for Richard J. Davison, Defendant.
Brian T. Ortelere, (See above), for Peter F. Barr, Defendant.
Brian T. Ortelere, (See above), for Christian D. Hill, Defendant.
Brian T. Ortelere, (See above), for Gerhard A. Thelen, Defendant.
Brian T. Ortelere, (See above), for Marianne S. Gregory, Defendant.
Brian T. Ortelere, (See above), for John A. Mckelvey, Defendant.
Brian T. Ortelere, (See above), for Richard D. Huffman, Defendant.
Brian T. Ortelere, (See above), for Dale A. Shaub, Fiduciaries and Administrators of the Foregoing Plans and Other Doe Fiduciaries, Defendant.
Brian T. Ortelere, (See above), for Supplemental Pension Plan of Consolidated Rail Corporation, Defendant.

MEMORANDUM

BARTLE, J.
***1** Before the court is the motion of plaintiffs for class certification under Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 201 of the Fair Labor Standards Act.

This putative class action challenges the propriety of certain actions taken by Consolidated Rail Corporation ("Conrail"), a railway freight-hauling corporation, with respect to its pension plan, its treatment of older workers, and its voluntary separation program ("VSP"). Plaintiffs, all former employees of Conrail who accepted the VSP, have sued Conrail, the Conrail Matched Savings Plan, the Administrative Committee of the Conrail Matched Savings Plan, the Supplemental Pension Plan of Conrail, its administrative committee, the flexible medical/dental dependent plan, life insurance, dismemberment and long-term disability and retirees life insurance plan, severance plan, and the fiduciaries and administrators of these plans.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiffs assert violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § § 1001 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § § 621 *et seq.*, and the Pennsylvania Wage Payment and Collection Law ("WPCL"), Pa. Stat. Ann. tit. 43, § § 260.1 *et seq.* They also allege common law claims.

Plaintiffs propose one class composed of "all persons formerly employed by defendant Conrail at any Conrail location who tendered their resignations as part of the March 1, 1996, Conrail separation plan ("VSP")." Amended Compl. ¶ 31 (hereinafter "Compl."). In addition, plaintiffs seek certification of a subclass comprised of "those VSP participants who returned to work for Conrail to positions of employment which Conrail designated as non-employee status" for the claims set forth in Counts VI, VIII, IX, X, XI, XII, and XIII. This subclass also seeks certification under 29 U.S.C. § 201 for its ADEA claim contained in Count VII.

Plaintiffs John J. Bunnion, Jr., Anthony D. Falcone, C. Dyana Reed, Frances E. Bronson, George Hall, Deborah Daley and John Raybuck seek to be the designated class representatives of the main class, with plaintiffs Bunnion, Falcone, Reed, Daley, and Raybuck seeking to represent the subclass. Plaintiffs propose Carol A. Mager, Esquire and Debora A. O'Neill, Esquire of Mager Liebenberg & White as well as Stephen G. Console, Esquire, Law Offices of Stephen G. Console, as class counsel.

I

According to plaintiffs' amended complaint, Conrail provides certain benefit plans to its employees. These include a Matched Savings Plan/Employee Stock Ownership Plan ("ESOP"), [FN1] APAR and APAR Plus, [FN2] life insurance, vacation and holiday benefits, medical and dental plans, sick-time leave, short-term disability benefits, long-term disability benefits, a Supplemental Pension Plan, a long-term incentive plan, tuition reimbursement as well as "other paid leave and stock purchase plans." Compl. ¶ 40.

FN1. This plan, also known as an "ESOP," was described at length in a prior opinion dealing with three other class actions against Conrail. *See Bennett v. Conrail Matched Savings Plan Admin. Comm.*, Nos. CIV. A. 97-4535, 97-5017, 97-5345, 1997 WL 700538 (E.D.Pa. Oct.30, 1997).

FN2. Plaintiffs do not define or explain these acronyms.

On February 21, 1996 Conrail declared that it would be eliminating 900 of its employees over the next few months. To achieve this job reduction, Conrail announced on March 1, 1996, its "four stage separation plan." Stage 1 was labeled a "Voluntary Retirement Program" and was for those non-union employees who would be 55 years of age or older by February 28, 1997. Stage 2, a Voluntary Separation Program ("VSP"), was applicable to "non-union employees with 15 years of continuous Conrail service who are not covered under Stage 1 and whose applications are accepted by [Conrail]." Compl. ¶ 58. Both Stages 1 and 2 were offered immediately and simultaneously. Stages 3 and 4 were entitled "Involuntary Staff Rationalization" and the "Workforce Redeployment Program" respectively. Compl. ¶ 58.

***2** The putative class accepted the VSP, the offering of Stage 2, by April 19, 1996. Plaintiffs contend that the VSP was "devised for the purpose of substantially reducing defendants' costs of providing benefits to employees by interfering with the attainment of pension and welfare benefits by long service Conrail employees." Compl. ¶ 54. Not only was the VSP designed to deprive employees of benefits, but the plaintiffs aver that Conrail management continually and intentionally misrepresented certain facts regarding the VSP. In particular, the defendants allegedly "led the plaintiffs and other employees of Conrail to believe that if they did not accept the terms of the VSP and voluntarily terminate their employment, they would be involuntarily terminated from their jobs, without any severance." Compl. ¶ 56. Plaintiffs claim that Conrail constantly reminded employees that they would soon lose their jobs and that accepting the VSP was a "dignified way to leave the company." [FN3] Compl. ¶ 62. Conrail also led plaintiffs to believe that "subsequent packages, if offered, would not be as favorable." Compl. ¶ 62. Incident to acceptance of the VSP, plaintiffs were "induced" to sign a general release of all claims. Compl. ¶ ¶ 61, 63.

FN3. According to plaintiffs, in 1995, Conrail removed some involuntarily terminated employees by police escort. The reference to a "dignified" way to leave the company, plaintiffs aver, was an implicit threat of a similar undignified removal.

Compl. ¶ 64.

Plaintiffs allege that had they stayed and not accepted the VSP, they would have received substantially greater benefits than those provided by the VSP. Purportedly, those who did not accept the VSP but remained Conrail employees later received a severance package of greater value, as well as a staying bonus. Compl. ¶ 84. Further, Conrail never implemented Stages 3 and 4 of the 4 stage separation plan, and no Conrail facility has yet closed.

While all the members of the putative class accepted the VSP at or around the same time, their actual departure from Conrail varied, as Conrail had "retained the right to delay the actual termination of any employee who accepted [the VSP] up to one year after the date of the acceptance." Compl. ¶ 71. When plaintiffs did eventually leave, approximately 30% of them returned to work at Conrail as "independent contractors." Compl. ¶ 81. Often they performed the exact same work they had formerly done. However, as independent contractors, they earned a lower salary, could not participate in or accrue service credit for Conrail pension plans, and received no Conrail benefits. One such named plaintiff, Anthony Falcone, was terminated one day and started work as an independent contractor the next. Although classified as independent contractors, plaintiffs claim that they were in reality Conrail employees and therefore entitled to all Conrail employee compensation levels and benefits.

Plaintiffs also aver that the VSP "disparately treated and impacted on older workers." Compl. ¶ 100.
As further evidence of the fact that the VSP was not motivated by a reduction in available work, before the announcement of the March 1, 1996 separation plan (at a time when upon information and belief Conrail knew about the intended downsizing), Conrail hired several former independent contractors under age 40, converting them into full-benefit employees.

***3** Compl. ¶ 103.

Conrail will soon cease to exist. Subsequent to Conrail's offering of the VSP, Norfolk Southern Corporation and CSX Corporation agreed to acquire Conrail jointly. In April, 1997, they formed a new entity which made a tender offer to acquire Conrail's outstanding stock. This offer was successful. By early June, 1997, the new entity created by CSX and Norfolk Southern merged into Conrail. "[P]ending governmental approval, Conrail will go out of existence and its assets will be divided between CSX and Norfolk Southern." Compl. ¶ 53.

II

In determining a motion for class action certification, we do not examine the merits of the plaintiffs' underlying claims. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Rather, we focus on the requirements of Rule 23 of the Federal Rules of Civil Procedure. In order to obtain class certification plaintiffs must meet the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure and at least one part of Rule 23(b). *Id.* at 162-63.

Plaintiffs have the burden of proving that this action meets the certification requirements. *Heastie v. Community Bank of Greater Peoria,* 125 F.R.D. 669, 673 (N.D.Ill.1989). The Supreme Court has explained that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). In keeping with this policy, the Court of Appeals for the Third Circuit has adopted a liberal construction of Rule 23. *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.), *cert. denied,* 474 U.S. 946 (1985). The court has declared that "the interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing a class action." *Id.*

We will first examine whether plaintiffs meet the requirements of Rule 23(a) which provides:
One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Defendants do not dispute that plaintiffs meet the numerosity and adequacy requirements of Rule 23(a). We agree. The main class is predicted to number approximately 600 persons, while the subclass will contain approximately 70. Further, the representative plaintiffs and their proposed class counsel will adequately represent the class and subclass.

However, defendants vigorously contest plaintiffs'

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ability to meet 23(a)(2), the commonality requirement, as well as 23(a)(3), the typicality requirement. Defendants essentially contend that plaintiffs' amended complaint contains too many individualized aspects to meet Rule 23(a). *See* *Georgine v. Amchem Prod. Inc.*, 83 F.3d 610, 624 (3d Cir.1996), *aff'd sub nom,* *Amchem Prod. Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). FN4

FN4. Overall, we find the *Georgine* case inapplicable here. In *Georgine,* the Third Circuit held that the commonality barrier is higher in a personal injury damages class action which seeks to resolve noncommon issues of liability and damages. *Georgine,* 83 F.3d at 627. There, some plaintiffs had various asbestos-related diseases while others had been exposed to asbestos, but no disease had yet manifested itself. The court found these factual and legal differences too extreme to sustain a finding of commonality or typicality.

***4** While the concepts of commonality and typicality are similar, they remain distinct components of Rule 23(a). *Id.* at 632. Commonality concerns the nature of the proposed class while typicality concerns the sufficiency of the named plaintiffs. *Hassine v. Jeffes,* 846 F.2d 169, 176 n. 4 (3d Cir.1988). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." FN5 *Baby Neal For and By Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir.1994). For this reason, the commonality requirement is "easily met." *Id.* Factual differences may exist among plaintiffs because they do not need to share identical claims. *Id.* Even where facts unique to each plaintiff may be relevant, a class may still be certified, but later bifurcated. *Id.* at 57.

FN5. This is unlike the (b)(3) portion of Rule 23 which requires that common issues predominate.

The typicality inquiry focuses on "whether 'the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of the class members will perforce be based." *Eisenberg,* 766 F.2d at 786. A class meets this requirement if the named plaintiffs and the proposed class "challenge[ ] the same unlawful conduct." *Baby Neal,* 43 F.3d at 58. Factual differences between named plaintiffs and the class members do not defeat a motion for class certification if "the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Id.* "Indeed even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Id.* According to the Third Circuit, we must essentially discern whether potential conflicts exist within the class. *Georgine,* 83 F.3d at 632.

A.

Counts I, VI, and VIII assert ERISA claims for interference with benefits in violation of 29 U.S.C. § 1140. According to plaintiffs, the defendants created the VSP with the intention of interfering with their ERISA benefits and also coerced the plaintiffs to accept the VSP. FN6 Compl. ¶ ¶ 122-23. As to Count VIII, the subclass claims that the defendants "purposefully returned these class members to nominally non-employee positions (which were actually employee positions) and refused to acknowledge their employee status for the purpose of interfering with those employees' attainment of benefits in violation of ... ERISA." Compl. ¶ 161.

FN6. Counts I and VI are asserted on behalf of the entire class for interference with ERISA benefits and ESOP benefits, respectively.

To prevail under § 1140, a plaintiff must produce evidence showing: "(1) prohibited employer conduct; (2) taken for the purpose of interfering; (3) with the attainment of any right to which the employee may become entitled." *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522 (3d Cir.1997).

Defendants contend that whether an employee left voluntarily or was coerced to accept the VSP, and whether the defendants withheld information regarding future benefits are individualized inquiries, inappropriate for resolution in a class action. Defendants assert that claims involving coercion are particularly inappropriate for class action citing *Ungar v. Dunkin' Donuts of America, Inc.*, 531 F.2d 1211, 1226 (3d Cir.), *cert. denied,* 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976). Plaintiffs counter that the focus of a § 1140 ERISA claim is on the conduct of the defendants. The reasons that plaintiffs accepted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the VSP, such as through coercion, are irrelevant.

***5** Certification of an ERISA action predicated upon § 1140 may be proper if the requirements of Rule 23 are met. *Fischer v. Philadelphia Elec. Co.,* 96 F.3d 1533, 1543 (3d Cir.1996), *cert. denied,* 520 U.S. 1116, 117 S.Ct. 1247, 137 L.Ed.2d 329 (1997). We find that plaintiffs meet the commonality requirement of 23(a)(2) on Counts I, VI, and VIII. The proposed classes of plaintiffs need only have one question of law or fact in common. *Baby Neal,* 43 F.3d at 56. As to Counts I and VI, the obvious question in common is whether the defendants created the VSP with the intention of interfering with plaintiffs' ERISA and ESOP benefits. Key facts in common include receipt of ERISA benefits, participation in the ESOP prior to leaving Conrail, and acceptance of the VSP by all plaintiffs. Compl. ¶ ¶ 31, 121, 151. As to Count VIII, a common question is whether the defendants returned the subclass members as independent contractors for the purpose of interfering with the attainment of their employee benefits. All subclass members have in common that they accepted the VSP, returned to work with Conrail to what Conrail deemed to be "non-employee" positions and therefore did not receive benefits designated for only Conrail employees.

We also find that the proposed class and subclass meet the typicality requirements on Counts I, VI, and VIII. The named plaintiffs and their proposed class members all "challenge [ ] the same unlawful conduct," that is, the alleged interference with ERISA benefits. *Baby Neal,* 43 F.3d at 58. We see no potential conflicts between the representative plaintiffs and their proposed class and subclass members. [FN7] *Georgine,* 83 F.3d at 632.

FN7. We do not agree with defendants' assertions that individual issues control. Neither is such an inquiry relevant since plaintiffs only need to show one common issue. We do not see how the circumstances surrounding plaintiffs' acceptance of the VSP is pertinent to the issue of whether defendants' conduct in devising and offering the VSP was with the intent of interfering with plaintiffs' receipt of ERISA benefits. The instant action is unlike the *Ungar* case cited by defendants. *Ungar* was an antitrust case which required proof of coercion as an element of illegal tying. *Ungar,* 531 F.2d at 1226. Coercion is not an element here.

B.

Counts II and XIII claim that defendants breached their fiduciary duties in violation of ERISA, 29 U.S.C. § § 1104, 1105. In Count II, the entire class alleges that defendants failed to explain fully "the likelihood that they could remain in the employ of Conrail for the foreseeable future had they not elected the VSP" and failed to disclose the effect of their participation in the VSP on their "right to participate in future distributions from the ESOP." Compl. ¶ 128. But for these misrepresentations, plaintiffs allege that they would have remained Conrail employees. In Count XIII, the subclass avers that defendants failed to "enforce the various provisions of the applicable plans in a manner consistent with applicable law." Compl. ¶ 183. Without these breaches of fiduciary duty, the subclass of plaintiffs would have been able to participate in the ERISA plans.

As we discussed at length in our prior opinion which resolved the defendants' motion to dismiss, ERISA fiduciaries must act solely in the interest of the Plan participants. *See Bunnion v. Consolidated Rail Corp.,* No. CIV. A. 97-4877, 1998 WL 32715, at *5 (E.D.Pa. Jan. 6, 1998). They fail to do so if they make material misrepresentations or omissions. *Id.*

Citing *Sprague v. General Motors Corp.,* 133 F.3d 388 (6th Cir.1998), defendants aver that individual issues preclude a finding of commonality or typicality. According to defendants, the plaintiffs may have relied on a myriad of different representations to which not all plaintiffs were exposed. Even though plaintiffs point to some uniform information allegedly sent to all potential plaintiffs, they cannot say to what extent each plaintiff actually relied upon such disclosures. Defendants assert that this claim should not be certified as a class because it would require an inquiry of each individual plaintiff-what each read or heard or on what, if any, representations each relied. Moreover, according to defendants, whether a statement was "material" to a plaintiff depends upon that individual plaintiff.

***6** Where appropriate, ERISA breach of fiduciary duty claims may be certified as a class action. *See, e.g., In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.,* 57 F.3d 1255 (3d Cir.1995), *cert, denied,* 517 U.S. 1103 (1996); *Fischer,* 96 F.3d 1533. In the amended complaint, plaintiffs allege a variety of misrepresentations and omissions. Plaintiffs aver that defendants failed to mention material

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

information to all employees. Compl. ¶ 60. Further, some alleged misrepresentations took the form of company-wide distributions of documents or e-mails. Compl. ¶ ¶ 63, 67; Plaintiffs' Motion for Class Certification Exs. B, C, D. Conrail maintained an electronic bulletin board to post the answers to frequently asked questions regarding the VSP. Plaintiffs' Motion for Class Certification Ex. J at 123-25. Conrail also held various information sessions on the VSP at different locations. However, according to one plaintiff who attended two such sessions, the information communicated was identical, "like they were reading from a script." Plaintiffs' Motion for Class Certification Ex. K at 71-72. Other alleged misrepresentations were oral, made to a portion of the class, or in some circumstances to only one individual plaintiff. Compl. ¶ 66.

A court may further subdivide a class into subclasses when necessary to compensate for individual issues. *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 252-53 (3d Cir.), *cert. denied,* 421 U.S. 1011 (1975). In a case similar to the instant one, a court in this district has allowed a class action for breach of fiduciary duty where, in addition to company-wide representations, there were specific representations made to only certain plaintiffs. *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.,* No. CIV. A. 969, 1994 WL 284079, at *27 (E.D. Pa. June 23, 1994), *aff'd,* 57 F.3d 1255 (3d Cir.1995). Chief Judge Cahn stated, "because some plaintiffs have stronger cases than others based on their specific inquiries and the information given to them personally, the court finds that subclasses, and possibly even individual hearings will be necessary to adjudicate these claims." *Id.* The court did not hold that these individual representations precluded the continuance of the action as a class action.

Further, we agree with plaintiffs that the focus on a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs. For this reason, reliance of plaintiffs is immaterial at the liability phase. Further, the materiality of a misrepresentation does not differ from plaintiff to plaintiff as defendants contend. In the context of an ERISA case, materiality is "a mixed question of law and fact, ultimately turning on whether 'there is a substantial likelihood that [the misrepresentation] would mislead a reasonable employee in making an adequately informed decision about if and when to retire." ' *Fischer,* 96 F.3d at 1538 (quoting *Fischer v. Philadelphia Elec. Co.,* 994 F.2d 130, 135 (3d Cir.1993)). The standard is one of a reasonable employee, not an actual one. Therefore, we find that defendants' contentions that individual issues of materiality and reliance would predominate to be without merit. [FN8]

FN8. Whether common issues predominate is irrelevant under Rule 23(a). Plaintiffs need only an issue of law or fact in common. *Baby Neal,* 43 F.3d at 56. We also find the defendants' citation of and reliance upon *Sprague v. General Motors Corp.,* 133 F.3d 388 (6th Cir.1998), *petition for cert, filed,* (U.S. April 6, 1998) (No. 97-1639), to be inapposite with respect to this ERISA breach of fiduciary claim. In *Sprague,* the Court of Appeals for the Sixth Circuit held that class certification on the claims of estoppel and breach of a "bilateral" contract was an abuse of discretion. *Id.* at 398-99. The breach of contract claim averred that defendant General Motors had made a "side deal" with each individual plaintiff. *Id.* at 398. The plaintiffs had signed differing forms, or no form at all, in the acceptance of this side deal. *Id.* Because the representations were not uniform, and issues of reliance were individualized, the claims of plaintiffs were not common and the representative plaintiffs could not be typical of the class. *Id.* at 398-99. As we discussed above, issues of reliance are not relevant in this ERISA claim. Further, we are confronted with predominantly uniform representations.

*7 Under the circumstances presented, we conclude that plaintiffs meet the commonality and typicality requirements of Rule 23(a) on Count II. The proposed class of plaintiffs have more than one question of law or fact in common. The obvious common issue is whether the company-wide documents or e-mails were misrepresentations which breached the fiduciary duties defendants owed the plaintiffs. Further, plaintiffs claim that the defendants uniformly omitted material information to the class. Because the plaintiffs all challenge the same unlawful conduct, that is, alleged company-wide misrepresentations and omissions, the representative plaintiffs are typical of the class. The fact that some individual plaintiffs may also have received personal misrepresentations from Conrail managers or supervisors does not pose a conflict within the class. *See In re Unisys,* 1994 WL 284079, at *27. Where "plaintiffs' evidence appears to follow a pattern, and the people they claim made the representations are largely the same people," oral representations do not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

preclude a finding of typicality under Rule 23(a)(2). *Bittinger v. Tecumseh Prod. Co.,* 123 F.3d 877, 884 (6th Cir.1997).

The proposed subclass of plaintiffs in Count XIII also meets the typicality and commonality requirements. A common issue is whether defendants breached their fiduciary duties in failing to enforce the plans to include the subclass members. The plans at issue were the same, and plaintiffs aver that the defendants uniformly interpreted the plans to exclude them. Because the same conduct is at issue, the representative plaintiffs are also typical of the class.

C.

Counts III and IX assert claims for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). Count III reads that "[b]y failing to provide the class members with the benefits to which they were entitled under defendant Conrail's employee pension and welfare benefit plans, including without limitation the ESOP plan, defendants violated [ERISA]." Compl. ¶ 137. In Count IX, the subclass asserts that defendants violated ERISA by "failing to provide the class members who were returned to work by Conrail into nominally non-employee status with the benefits to which they were entitled under defendant Conrail's" ERISA plans. Compl. ¶ 166.

Pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), a plaintiff may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

Defendants first assert that the named plaintiffs are not typical of the class because the named plaintiffs have exhausted their administrative remedies while the other members of the class have not done so. Plaintiffs counter that administrative remedies need not be exhausted because it would be futile to do so.

Exhaustion of administrative remedies is a prerequisite to a plaintiff "seek [ing] to enforce the terms of the Plan" in court. *Berger v. Edgewater Steel Co.,* 911 F.2d 911, 916 (3d Cir.1990), *cert. denied,* 499 U.S. 920, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991); *Thomas v. Kemper Nat'l Ins. Co.,* 984 F.Supp. 885, 890 (E.D.Pa.1997). This requirement is "strictly enforced" unless proceeding through the administrative remedies would be futile. *Berger,* 911 F.2d at 916.

***8** The named plaintiffs requested benefits from the applicable Plans and upon their denial petitioned the Plans for appellate review. Attached as Exhibit P to the defendants' opposition to the motion for class certification are the various Plan Committees' written rationale for the denial of these benefits. The letter from each Committee is basically the same. The Committees state that because subclass representative plaintiffs Bunnion, Falcone, Daley, Raybuck, and Reed did not receive earnings directly from Conrail which were subject to federal income tax withholding by Conrail, they were not "employees" as defined by the Plans and thus not eligible for receipt of benefits under the Plans. As to representative plaintiffs Hall and Bronson, members of the class but not the subclass, the Committees state in a footnote that because they elected the VSP and did not return to perform any services for Conrail, they are also not employees and therefore not eligible for Plan benefits. One such letter from the Matched Savings Plan states that determinations of whether a person is an employee is "determined, in part, by looking to that individual's relationships with the Plan sponsor, including the sources and the nature of the federal income tax treatment of the individual's compensation. In other words, the claims can be properly considered only on an individualized basis." Defendants' Response in Opposition to Plaintiffs' Motion for Class Certification Ex. P at page 2.

Based upon the reasons given by the Plans for the denial of benefits, we find that requiring all members of the class to exhaust their administrative remedies would be futile. The overall class proposed by plaintiffs contains those persons who accepted the VSP, including those who later returned to Conrail as independent contractors and those who never returned to work at Conrail. The subclass comprises those members of the class who accepted the VSP and then returned to work into what Conrail designated as non-employee positions. The representative plaintiffs, members of the class and subclass, have been denied Plan benefits for the very same reasons that qualify them as members of the class-acceptance of the VSP and either a complete absence of further performance at Conrail or performance as an independent contractor. We find the statement in the one letter regarding a need to look at each individual to determine if he or she was an "employee" is not significant for purposes of the pending motion. FN9

FN9. The letter was written February 13, 1998, after commencement of the instant

action and two days after the plaintiffs' filed their motion for class certification.

Further, we find that the requirements of commonality and typicality have been met as to Counts III and IX. The class members jointly allege that the ERISA Plans wrongfully denied benefits to those who accepted the VSP. The subclass members all have in common the fact that they accepted the VSP and then returned to work for Conrail on an independent contractor basis. They jointly allege that their re-employment status entitles them to benefits. The resolution of both counts will depend upon the interpretation and legality of plan terms. We further find that the situations of the representative plaintiffs are typical of those members of the class and subclass. Defendants note that each employee who returned as an independent contractor negotiated a separate contract, which varied among individuals, upon his or her return. However, regardless of the exact language of the contract negotiated, the subclass plaintiffs all have been classified by Conrail as independent contractors, or non-employees. In this respect they are the same. The claims of the representative subclass plaintiffs do not conflict with those of the proposed members of the subclass.

D.

***9** In Counts IV and V plaintiffs assert the common law claims of fraud and negligent misrepresentation. As we held in our prior opinion, because of the broad reach of ERISA preemption, these claims may only assert fraud and misrepresentation regarding employment, not the employee benefit plans. Bunnion, 1998 WL 32715 at *8.

Defendants first note that the potential plaintiffs reside in different states, which presumably maintain different standards or requirements for these common law claims. Because the laws differ between states, and a federal court cannot create a federal version of state law claims, defendants contend that this legal difference precludes class certification. However, plaintiffs argue that sufficient contacts exist for Pennsylvania law to apply to the entire class.

The Supreme Court has held that the choice of law in a nationwide class action depends upon the significance of contacts with the state whose law the parties seek to apply. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). The Court held that the state "must have a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [ ] law is not arbitrary or unfair." *Id.* (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981)). In *Phillips,* the Supreme Court found such significant contacts lacking. The fact that Phillips Petroleum Company owned property and conducted substantial business in Kansas was not enough. *Id.* at 819.

Utilizing this significant contact analysis, a court in our district found significant contact existed such that Pennsylvania law could apply in a securities' fraud case. *Gruber v. Price Waterhouse*, 117 F.R.D. 75, 82 (E.D.Pa.1987). The corporation whose stock was at the center of the case maintained its principal place of business and its offices in Pennsylvania. *Id.* Further, a majority of the auditing work and the corporation's "financial statements were prepared in and disseminated from Pennsylvania." *Id.*

Conrail is incorporated and licensed to do business in Pennsylvania. Its principal place of business is in Philadelphia. Compl. ¶ 27. Further, plaintiffs' amended complaint avers that the Plans at issue in this lawsuit are administered in the Eastern District of Pennsylvania. Compl. ¶ 30. Indeed, the letters from the Plans rejecting the administrative appeals of the representative plaintiffs were sent from Conrail's Philadelphia address. Defendants' Response in Opposition to the Motion for Class Certification, Ex. P. Given the significant amount of contacts in Pennsylvania, we find that its law should apply. [FN10]

FN10. We believe the case of *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293 (7th Cir.), *cert, denied,* 516 U.S. 867, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995), cited by the defendants, is inapplicable. In that case, the Seventh Circuit held that a court could not apply a legal standard which represented an amalgam of the various state laws at issue, one that "does not exist anywhere in the world." *Id.* at 1300. The significant contact test was not applied. Here, plaintiffs seek to apply Pennsylvania law, not some amalgam of legal principles.

Defendants contend that even assuming Pennsylvania law would apply, individual issues of reliance thwart class certification on these counts. Plaintiffs concede that reliance is an element of these claims of fraud and negligent misrepresentation, but assert that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

reliance issues will not defeat class certification because of the common course of fraudulent action perpetrated by the defendants. Further, reliance is presumed where material information has been omitted. FN11 As an alternative, plaintiffs contend that we can deal with reliance issues later in the litigation.

FN11. We agree that reliance may be presumed in certain types of cases, such as securities fraud. *See* Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir.1985).

***10** We find that the proposed class meets the requirements of commonality and typicality on the state law claims of fraud and negligence. Plaintiffs aver that they were all led to believe in early 1996 that failure to accept the VSP would result in involuntary termination and were otherwise misled about the prospects of continued employment. Compl. ¶ 56. Whether the alleged statements occurred and whether they misrepresented the facts are common issues of fact and law. Because the same course of conduct is at issue, the misleading statements regarding future employment, the representative plaintiffs are typical and do not conflict with other members of the proposed class.

E.

Counts X avers an action under the WPCL on behalf of the subclass for non-ERISA benefits. The WPCL requires an employer to pay promptly wages, fringe benefits, and wage supplements to its employees. Pa. Stat. Ann. tit. 43, § 260.3 (West 1992). Failure to do so may subject it to a civil suit by its employees, a labor organization, or the Secretary of Labor and Industry as well as possible liquidated damages and criminal penalties. *Id.*

Again, defendants assert that issues unique to each individual plaintiff preclude a finding of commonality or typicality under Rule 23(a). Further, defendants assert that the WPCL only extends to those employees based in Pennsylvania.

One court in our district has held that the WPCL was intended to apply only to those persons employed in Pennsylvania. *Killian v. McCulloch,* 873 F.Supp. 938, 942 (E.D.Pa.1995), *aff'd,* 82 F.3d 406 (3d Cir.1996). The court, after analyzing legislative history, found that the Pennsylvania legislature "has a strong interest in enacting legislation to protect those who work in the Commonwealth, but has almost no interest in extending that protection to those who work outside Pennsylvania." *Id.* Rather, "its primary aim is to ensure that those who are employed *in Pennsylvania* receive compensation for their work." *Id.* (emphasis added). As support for this conclusion, the court noted that no reported case allowed an out-of-state employee to assert a WPCL action in Pennsylvania.

We find this reasoning persuasive. Proposed representatives of the subclass Bunnion, Falcone, Daley, and Raybuck all reside in Pennsylvania according to the amended complaint, but no information is provided regarding the location of their work as an "independent contractor." FN12 Compl. ¶ ¶ 6-10, 20-25. Representative plaintiff Reed is a resident of Nevada. Plaintiffs provide no information regarding the number of members of the proposed subclass who have worked for Conrail in Pennsylvania. As such, we are unable to discern whether the proposed representatives are typical of the subclass. On a claim under the WPCL, whether or not the plaintiffs worked in Pennsylvania is extremely relevant. Therefore, we find that the proposed subclass does not meet the commonality or typicality requirements of Rule 23(a).

FN12. Later in the amended complaint, we learn that plaintiffs Bunnion and Falcone worked at the Island Avenue facility. Compl. ¶ 66(b). The court believes that this site is located in Pennsylvania.

F.

***11** Counts XI sets forth a breach of contract claim on behalf of the subclass while Count XII seeks unjust enrichment on behalf of the entire class. As we noted in our prior opinion, these claims are limited to non-ERISA benefits. *Bunnion,* 1998 WL 32715 at *9.

Again, defendants assert that issues unique to each individual plaintiff preclude a finding of commonality or typicality under Rule 23(a). As to the breach of contract claims, defendants note that the contract for each employee was unique and therefore commonality and typicality do not and cannot exist. For instance, deposition testimony reveals that plaintiff Daley could only be terminated for cause, while plaintiff Hall worked under no written contract at all. *See* Defendants' Response in Opposition to the Motion for Class Certification Exs. H at 158, and I at 42. Plaintiffs aver that the defendants created this scheme, of differing contracts, so they cannot now

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

contest class certification on these grounds. FN13 Further, plaintiffs contend that Conrail is the actual employer who excluded the subclass from benefits because of their arbitrary classification as non-employees. Plaintiffs also claim that subclasses can be created if necessary.

FN13. Plaintiffs cited the case of *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1221 (5th Cir.), *cert. denied*, 506 U.S. 820, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992), in support of this contention. However that case, to the extent it is at all relevant, did not deal with class certification.

We note initially that it is unclear whether plaintiffs are claiming that a contract existed prior to plaintiffs' acceptance of the VSP or at the time of their return to work at Conrail as independent contractors. In either case, the subclass plaintiffs do not contest defendants' assertions that their contracts differ. Moreover, evidently not all subclass plaintiffs even had *a* contract.

Thus, in these circumstances we conclude that typicality does not exist. Commonality may exist because all subclass plaintiffs returned to work but were classified as independent contractors by Conrail. However, we find that on the breach of contract claim the representative plaintiffs are not typical of the subclass because their circumstances are "markedly different." *Eisenberg*, 766 F.2d at 786. Some had contracts, which varied, and at least one had no contract at all. Because potential conflicts may arise between the terms of the various contracts or between those plaintiffs with and without contracts, we conclude that the typicality requirement is not met. *See Georgine,* 83 F.2d at 632.

The claim for unjust enrichment in Count XII asserts that defendants "have been unjustly enriched in that they have or will receive certain monies that they would not have obtained or retained but for their wrongful conduct at the expense of the plaintiffs and the plaintiff class." Compl. ¶ 178. Defendants maintain that even if there is no contract, a court or jury would need to look at each individual "deal" to see the basis for an unjust enrichment claim.

We find that we are confronted with insufficient information to determine whether this count meets the commonality and typicality requirements. Unjust enrichment is an equitable doctrine that, in our view, depends upon the analysis of each individual situation. *See Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 939, 999 (3d Cir.1987). As such, the claims of the representative plaintiffs are not, and cannot be, typical of those of the rest of the class. Further, we do not know what the "wrongful conduct" mentioned in the amended complaint references. Without this knowledge we cannot determine whether the plaintiffs are all challenging the same common course of conduct. The burden is on the plaintiffs to prove that this count meets the certification requirements. Because they have failed to do so, we hold that this count is inappropriate for class certification.

G.

***12** The entire proposed class of plaintiffs sets forth a federal common law claim of equitable estoppel in Count XIV. Plaintiffs assert that by virtue of their material misrepresentations, "defendants are estopped from denying, or interpreting the Conrail plans so as to deny benefits under the Plans to plaintiffs and members of the plaintiff class." Compl. ¶ 192.

According to *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir.1994), the elements of equitable estoppel are: "(1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances." Plaintiffs aver that the misrepresentations discussed earlier in this opinion were material, intentional, and constituted the necessary extraordinary circumstances.

Defendants contend that this claim is the least susceptible to class action certification because of the individual proof needed as to the reliance element. Plaintiffs claim that individual issues of reliance are not sufficient to preclude class certification and that *Curcio* shifted the burden of disproving reliance to defendants.

We do not read *Curcio* as shifting the burden of disproving reliance to the defendants. An examination under Rule 23(a) only requires we find a common issue of law or fact and that the representative plaintiffs are typical of the class. We find that these requirements are met on this count. The class of plaintiffs allegedly all accepted the VSP based upon the common representations by defendants and they all claim that these representations were material and constituted extraordinary circumstances. At this juncture, we see no conflict or potential for conflict between the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

representative plaintiffs and the proposed class.

III

As to Counts I, II, III, IV, V, VI, VIII, IX, XIII and XIV, which we find meet the requirements of Rule 23(a), we must next consider whether they meet at least one of the requirements under Rule 23(b). If so, we must certify the class without consideration of the merits. *Eisen,* 417 U.S. 156, 177-78, 94 S.Ct. 2140, 40 L.Ed.2d 732. Plaintiffs initially seek certification under 23(b)(1)(A), 23(b)(1)(B), and 23(b)(2) which state in relevant part:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests or;

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; [ ]

A.

***13** Certification under either (b)(1) or (b)(2) constitutes a mandatory class. That is, the class members may not opt out of the action and "pursue separate litigation that might prejudice other class members or the defendant." 5 James Wm. Moore, Moore's Federal Practice § 23.40[2] (3d ed.1998) [hereinafter Moore's]. FN14

FN14. This is unlike certification under 23(b)(3) where a potential class member may do just that.

Certification pursuant to Rule 23(b)(1)(A) is appropriate if it would be inconsistent and damaging to defendants to have portions of an ERISA plan interpreted in different ways by different courts. *Schutte v. Maleski,* No. CIV. A. 93-0961, 1993 WL 218898, at *9 (E.D. Pa. June 18, 1993). "This provision ... has been construed as requiring a party seeking certification to establish that there is a realistic possibility that separate actions involving the same subject matter will be brought in the absence of a class action." 5 Moore's § 23.41[1]. Actions certified under this portion of Rule 23, seek primarily injunctive or declaratory relief. *Id.* § 23.41[5][c]. Monetary damages may also be sought, but such relief should not predominate. *Id.*

While 23(b)(1)(A) focuses on possible prejudice to the defendants, 23(b)(1)(B) focuses on possible prejudice to the members of the proposed class "and seeks to protect them against situations in which they would be prejudiced by separate litigation." 5 Moore's § 23.42[1]. Certification under (b)(1)(B) may be appropriate if this action could potentially harm, or as a practical matter would be dispositive of, claims by other class members who were not represented in that suit. *Lloyd v. City of Philadelphia,* 121 F.R.D. 246, 251 (E.D.Pa.1988).

Certifications under both 23(b)(1)(A) and 23(b)(1)(B) are common in labor relations cases. 5 Moore's § § 23.41[4], 23.42[3][c]. "Because a defendant often provides unitary treatment to all members of the putative class [in] such an area, a putative class member's rights may be implicated by litigation brought by other class members." *Id.* § 23.42[3][c].

Defendants dispute the applicability of 23(b)(1)(A) and (B) because they contend that the dissimilarity of plaintiffs' claims preclude it. According to defendants, (b)(1) should be limited to those cases with no or few individual questions.

While Rule 23(b)(1) contains no such explicit requirement, a certain level of similarity is necessary in order for multiple suits to risk prejudicing either the defendants, or plaintiffs who could be members of a class. In a fraud case in this district, the court held that "because of the individual issues of reliance endemic to proving fraud ... resolution of an individual claim will not necessarily either be dispositive of the interests of the non-party class members, or an impairment or impediment to the ability of non-party class members to protect their respective interest." *Truckway, Inc. v. General Electric,* No. CIV. A. 91-0122, 1992 WL 70575, at *6 (E.D.Pa. March 30, 1992).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

With these principles in mind, we examine the remaining counts to ascertain whether certification under 23(b)(1)(A) or (b)(1)(B) is appropriate. We find that the ERISA actions in Counts I, II, III, VI, VIII, IX, and XIII are appropriate for certification under both of these provisions of Rule 23. All of these claims relate to the interpretation and application of ERISA plans. Conrail treated the proposed class and subclass identically and any equitable relief granted will affect the entire class and subclass. Failure to certify a class would leave future plaintiffs without adequate representation. Moreover, we see a high likelihood of similar lawsuits against defendants should this class be denied. [FN15] Inconsistent judgments concerning how the Plans should have been interpreted or applied would result in prejudice. While plaintiffs list a variety of relief sought in their amended complaint, ERISA specifically limits the relief available to that of an equitable, that is, declaratory or injunctive, nature. 29 U.S.C. § 1132. To the extent that money damages are awarded or sought, we find them to be incidental.

FN15. Indeed, one such action has already been filed and assigned to the undersigned. *See Buxton v. Consolidated Rail Corp.,* No. CIV. A. 98-2409.

***14** Our review of the state law claims as well as the claim of equitable estoppel is more difficult. Counts IV (fraud), V (misrepresentation), and XIV (equitable estoppel) all contain reliance as an essential element. While individual issues of reliance are not enough to preclude a finding of typicality or commonality under 23(a), it may be enough to preclude certification under 23(b)(1)(A) or (B). *See Eisenberg,* 766 F.2d at 786; *Truckway,* 1992 WL 70575, at *6. Reliance also may not be enough to preclude class certification under 23(b)(3). *Eisenberg,* 766 F.2d at 786. However, under the standards for (b)(1), we agree with the court in *Truckway* that certification under this portion of the rule is inappropriate for Counts IV, V, and XIV.

Moreover, even if plaintiffs were to prevail on actions of fraud or misrepresentation the remedy would be necessarily monetary. The actions in Counts IV and V are limited to claims for employment. Since Conrail will soon cease to exist, rehiring is not an available remedy. Because money would not be merely an incidental remedy sought, certification is inappropriate under either portion of (b)(1) on Counts IV and V.

B.

A class may be certified under Rule 23(b)(2) if the defendants have acted in ways generally applicable to the class and final declaratory or injunctive relief is sought by the class. [FN16] 5 Moore's § 23.43[1][a]. While monetary damages may also be sought, they must be incidental to the request for equitable relief. *Id.* § 23.43[3][a]. As a practical matter, key factual questions should be dispositive as to all class members. *Stoetzner v. United States Steel Corp.,* 897 F.2d 115, 119 (3d Cir.1990). The proposed class "must demonstrate that the interests of the class members are so like those of the individual representatives that injustice will not result from their being bound by such judgment in the subsequent application of principles of res judicata." *Hassine,* 846 F.2d at 179. Courts have described a class action under (b)(2) as one which "seeks to define the relationship between the defendant(s) and the world at large." *Id.* (quoting *Weiss v. York Hosp.,* 745 F.2d 786, 811 (3d Cir.1984)).

FN16. According to one treatise, under (b)(2) administrative remedies need be exhausted by the named plaintiffs only, not the entire class. 5 Moore's § 23.43[1][c]. This further supports our earlier conclusion that the class members need not exhaust their administrative remedies because doing so would have been futile.

Defendants claim that (b)(2) does not apply because plaintiffs in reality seek only monetary remedies. Since Conrail will soon cease to exist, defendants contend that equitable relief could not be awarded. Conversely, plaintiffs contend that they seek primarily equitable relief.

Defendants are correct that, in determining whether a suit seeks equitable or monetary relief, a court must examine the "realities of the litigation." *Yeager's Fuel v. Pennsylvania Power & Light,* 162 F.R.D. 471, 480 (E.D.Pa.1995). On the information presently before us, we construe plaintiff's requests for relief as seeking predominantly equitable relief on the ERISA claims, as we stated earlier. However, as just discussed above, we find that the state law claims in Counts IV and V seek primarily monetary relief. For this reason they are inappropriate for certification under Rule 23(b)(2).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

***15** Our examination of the ERISA claims convinces us that they are appropriate for certification under (b)(2). The proposed class and subclass of plaintiffs aver that defendants treated them equally in the denial of ERISA benefits. Their interests are essentially identical. Certain key facts are dispositive of the entire class. For example, did defendants interpret the Plans incorrectly or violate the terms of the Plan, did defendants create the VSP for the purpose of interfering with plaintiffs' ERISA benefits, and did defendants breach fiduciary duties by misrepresenting material information to the entire class? Finally, this suit seeks to define the relationship between Conrail and its employees who accepted the VSP offering. In conclusion, we find certification under (b)(2) also appropriate.

The equitable estoppel claim in Count XIV falls between the ERISA cause of actions and the state law claims. While it requires the element of reliance, it seeks purely equitable relief. Because the claim challenges actions of defendants that were generally applicable to the class, we will certify equitable estoppel under (b)(2) at this time. This may be revisited at a later time if individual issues of reliance predominate.

C.

Plaintiffs also seek, as an alternative, certification under 23(b)(3) if the court finds certification under (b)(1) or (b)(2) inapplicable. Because we so found as to Counts IV and V, we now examine these counts to see if they meet the certification requirements of (b)(3). An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

To meet the requirement of Rule 23(b)(3) that common questions predominate, claims of the plaintiffs need not be identical and the "necessity of answering individual questions after answering common questions will not prevent a class action." *Heastie*, 125 F.R.D. at 675. The Advisory Committee Notes to the 1966 Amendments to Rule 23 state "a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class."

***16** Whether individual issues of reliance are enough to preclude certification under Rule 23(b)(3) is unclear in this Circuit. The Third Circuit has broadly suggested that reliance alone may not be enough to defeat a motion for class action certification. *See Peil v. Speiser*, 806 F.2d 1154, 1159 n. 8 (3d Cir.1986); *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.1985). However, it has not specifically so held. As a result, several decisions in our district, including at least one by the undersigned, have held that individual issues of reliance do prevent class certification. *See J/H Real Estate, Inc. v. Abramson*, Nos. CIV. A. 95-4176, 95-7180, 1996 WL 63712, at *6-7 (E.D.Pa. Feb. 9, 1996); *In re Herley Sec. Litig.*, 161 F.R.D. 288, 292 (E.D.Pa.1995); *Squitieri v. Gould*, 133 F.R.D. 25, 28 (E.D.Pa.1990); *In re Bexar County Health Facility Dev. Corp. Sec. Litig.*, 125 F.R.D. 625, 636 (E.D.Pa.1989); *Gavron v. Blinder Robinson & Co.*, 115 F.R.D. 318, 325 (1987); *Snider v. Upjohn Co.*, 115 F.R.D. 536, 542 (E.D.Pa.1987). However, a recent trend of cases has held that reliance alone is not enough to preclude certification. *See Hanrahan v. Britt*, 174 F.R.D. 356, 365 (E.D.Pa.1997); *In re Intelligent Elec. Inc. Sec. Litig.*, No. CIV. A. 92-1905, 669 So.2d 1265, 1996 WL 67522, at *6 (E.D.Pa. Feb. 13, 1996); *In re Bell Atlantic Corp. Sec. Litig.*, No. CIV. A. 91-514, 1995 WL 733381, at *7 (E.D.Pa. Dec. 11, 1995); *First Eastern Corp. v. Mainwaring*, No. CIV. A. 92-1176, 1993 WL 223607, at *3 (E.D. Pa. June 22, 1993); *In re Healthcare Servs. Group Sec. Litig.*, No. CIV. A. 91-6097, 1993 WL 54437, at *7-8 (E.D.Pa. March 1, 1993); *In re Kulicke & Soffa Indus. Sec. Litig.*, No. CIV. A. 86-1656, 1990 WL 1478, at *8 (E.D.Pa. Jan. 9, 1990).

I am now convinced, based on a close reading of the Third Circuit's language in *Eisenberg* and *Peil*, as well as other recent cases in this district, that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Court of Appeals, if faced with the issue, would certify Counts IV and V, under (b)(3), based on the information present in the record. We note at this juncture that had the plaintiffs not allegedly relied on the representations regarding future employment prospects, at issue in Counts IV and V, they would still be current Conrail employees. We may later revisit our conclusion on certification if we find that individual issues of reliance may predominate.

In any event, we conclude that common class issues of law and fact predominate over any individual issues in this case on the claims of fraud and misrepresentation. While individual issues are present, especially in the context of reliance, they do not predominate. Rather, the central issues revolve around whether the defendants negligently or intentionally misrepresented information regarding prospects of future employment as to the fraud and misrepresentation claims in Counts IV and V. The necessity of individual information regarding reliance does not preclude the certification of this class under (b)(3).

***17** Rule 23(b)(3) also requires that the class action be the superior method of trying the case. According to the Supreme Court, "[c]lass actions [ ] may permit the plaintiffs to pool claims which would be uneconomical to litigate individually ... most of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips,* 472 U.S. at 809.

We believe that a class action would be superior for trying these state law issues of fraud and misrepresentation. It is likely that the damages received from any individual claim would be uneconomical for each individual plaintiff to litigate.

As to the remaining considerations under Rule 23(b)(3), we find that each plaintiff would have no compelling interest in individually controlling separate lawsuits and that there would be no significant difficulties, presently foreseeable, in the management of the class. Finally, it is not undesirable to have this action proceed in the Eastern District of Pennsylvania. Conrail maintains its principal place of business here and most of the representative plaintiffs reside in the district.

IV

Count VII sets forth a claim for age discrimination. The ADEA requires enforcement "in accordance with the powers, remedies, and procedures" of select portions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § § 201 *et seq. See* 29 U.S.C. § 626(b). For purposes of class action certification, we follow the relevant portion of the FLSA, 29 U.S.C. § 216, rather than Rule 23 of the Federal Rules of Civil Procedure. *Sperling v. Hoffman-La Roche, Inc.,* 118 F.R.D. 392, 399 (D.N.J.), *aff'd in part,* 862 F.2d 439 (3d Cir.1988), *aff'd,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). It reads:

An action to recover the liability prescribed ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

The definition of "similarly situated" is not set forth in the statute. One court has found that most "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Sperling,* 118 F.R.D. at 407. While the statute requires that the plaintiffs be "similarly situated," they need not be identical. *Id.* at 405.

In *Lockhart v. Westinghouse Credit Corp.,* 879 F.2d 43, 51 (3d Cir.1989), *overruled in part on other grounds by, Hazen Paper Co. v. Biggins,* 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), the Court of Appeals for the Third Circuit applied a three part test to determine if the plaintiffs are similarly situated, that is, whether they were "(1) employed in the same corporate department, division and location; (2) advanced similar claims of age discrimination; and (3) sought substantially the same form of relief." The Third Circuit found this test met where the employees, although employed at different locations, all had been employees in the same division, challenged the same employment practice and sought the same forms of relief. *Id.* at 52. Further, in considering whether to certify the class, a court has significant discretion to determine whether defendants' assertion of defenses unique to each individual employee "would make manageability of the class impossible." *Id.*

***18** Plaintiffs claim that the proposed plaintiff class

is similarly situated because all plaintiffs are over 40 years of age, with 15 or more years of experience at Conrail. They all elected the VSP and were rehired as independent contractors performing work similar to that which they performed as an employee, but at a lower salary and without benefits.

Defendants contend that three reasons preclude certification. First, the plaintiffs are not victims of a single decision, policy, or plan infected by discrimination. The potential class of 70 former employees worked at various facilities in varying jobs, and thus are not similarly situated. Rather, each Conrail facility made its own individual decisions regarding the rehiring of former employees as independent contractors. Second, the defendants' defenses as to each individual plaintiff in the class would be individualized, to show that defendants' actions were based on reasonable factors other than age. Certifying a class would purportedly deprive Conrail of its essential and individualized defenses. FN17 Finally, defendants contend that fairness and procedural considerations militate against certification of this class. Here, defendants contend that they would call two defense witnesses for every ADEA plaintiff who testified, comprising at least 70 days of trial time.

FN17. As one example, defendants note that plaintiff Falcone signed a document saying he would not represent any party in any action against Conrail. The instant action allegedly breaches this agreement.

Plaintiffs argue that the defendants again exaggerate the extent of the individual defenses. Further, according to plaintiffs, defendants fail to articulate why they could not raise their defenses if a class is certified. Plaintiffs contend the defenses raised could certainly be applied on a class-wide basis.

We find that the plaintiffs are similarly situated for the reasons asserted by plaintiffs-they are all over 40 years of age with more than 15 years of experience at Conrail, and they accepted the VSP and were re-employed as independent contractors for less money and no benefits while younger employees retained their employee positions. Although plaintiffs were employed at various facilities throughout the country, they all left Conrail pursuant to a nationwide early retirement offering, the VSP. The fact that approximately 70 plaintiffs returned to work in substantially similar positions as independent contractors, at varying locations throughout the country, indicates to us that rehiring VSP persons as independent contractors was not an isolated practice at certain locations. The plaintiffs advance the identical claim of age discrimination and seek the same relief-reinstatement as an employee or receipt of wages and benefits commensurate with that of employees. If further discovery reveals that each Conrail facility or location did maintain its own procedures regarding rehiring former employees, distinct from that of Conrail overall, this class may be decertified or further subdivided.

We also do not find defendants' allegations of individualized defenses sufficient to preclude class certification. Defendants assert that their actions were required by business necessity, a defense which could certainly be applied on a class-wide, or location-wide basis. Defendants present only two other individual defenses, both as to plaintiff Falcone. Based upon these sparse allegations, we find it is not enough to preclude class certification.

***19** In conclusion, Count VII will be certified as a class action.

V

Our final concern is the scope of the class and subclasses to be certified. Defendants did not address the scope of the class in their 79 page response. For the reasons set forth above, we find the description of the class and subclass proposed by plaintiffs to be sufficient:

In conclusion, the motion of the plaintiffs for class certification will be granted in part and denied in part. A class comprised of all persons formerly employed by Conrail at any Conrail location who separated from Conrail as part of the March 1, 1996 Conrail VSP will be certified with respect to the claims in Counts I, II, III, IV, V, VI, and XIV. A subclass comprised of those VSP participants who returned to work for Conrail to positions of employment which Conrail designated as non-employee status will be certified with respect to the claims in Counts VIII, IX, and XIII. Finally, an ADEA subclass composed of those class members over 40 years of age who were returned to work into non-employee status, will be certified on Count VII. The motion will be denied as to Counts X, XI, and XII.

ORDER

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

AND NOW, this 14th day of May, 1998, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of plaintiffs for class certification is GRANTED in part and DENIED in part as follows:

1. A class comprised of all persons formerly employed by Conrail at any Conrail location who separated from Conrail as part of the March 1, 1996 Conrail Voluntary Separation Program ("VSP") is certified with respect to the claims in Counts I, II, III, and VI pursuant to Rule 23(b)(1)(A), (b)(1)(B), and (b)(2) of the Federal Rules of Civil Procedure.

2. The class set forth in paragraph 1 is hereby certified with respect to the claims set forth in Counts IV and V pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

3. A subclass comprised of those VSP participants who returned to work for Conrail in positions of employment which Conrail designated as non-employee status is certified with respect to the claims in Counts VIII, IX, and XIII pursuant to Rule 23(b)(1)(A), (b)(1)(B), and (b)(2) of the Federal Rules of Civil Procedure.

4. An Age Discrimination in Employment Act subclass comprised of those class members over 40 years of age who were returned to work into non-employee status, is certified on Count VII pursuant to 29 U .S.C. § § 216(b) and 626(b).

5. The motion of plaintiffs is denied in all other respects.

E.D.Pa.,1998.
Bunnion v. Consolidated Rail Corp.
Not Reported in F.Supp., 1998 WL 372644 (E.D.Pa.), 5 Wage & Hour Cas.2d (BNA) 717

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.