# Exhibit 100

**No. 04-3117**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

**In re St. Jude Medical, Inc.**
**Silzone® Heart Valve Products Liability Litigation**

Lester Grovatt, Beatrice Bailey, Levy D. Redden, Bonnie L. Sliger and Joe W. Sanchez, on behalf of themselves and all others similarly situated,

Plaintiffs and Respondents,

vs.

St. Jude Medical, Inc.,

Defendant and Petitioner.

**On Appeal From an Order Granting Class Certification by the United States District Court for the District of Minnesota Multidistrict Litigation No. 01-1396 (JRT/FLN)**
**The Honorable John R. Tunheim**

# BRIEF *AMICUS CURIAE* OF THE STATE OF MINNESOTA IN SUPPORT OF AFFIRMING THE DISTRICT COURT AND IN SUPPORT OF RESPONDENTS GROVATT, ET AL.

MIKE HATCH
Attorney General
State of Minnesota

PRENTISS COX
Assistant Attorney General
Atty. Reg. No. 218844

445 Minnesota Street, #1400
St. Paul, Minnesota 55101-2131
(651) 297-4606 (Voice)

Attorneys for *Amicus Curiae* State of Minnesota

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... ii

IDENTITY AND INTEREST OF *AMICUS CURIAE* .......... 1

ARGUMENT .......... 1

I. STATE CONSUMER PROTECTION STATUTES PROTECT NONRESIDENT CONSUMERS FROM DECEPTIVE CONDUCT THAT ORIGINATES FROM THAT STATE. .......... 1

II. PUBLIC POLICY FAVORS APPLYING STATE CONSUMER PROTECTION LAWS TO CONDUCT DIRECTED FROM HOME STATE .......... 6

III. APPLYING STATE CONSUMER PROTECTION LAWS TO CONDUCT DIRECTED FROM THE HOME STATE DOES NOT DEPRIVE OTHER STATES OF PUBLIC POLICY CHOICES .......... 7

CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Page**

**PUBLISHED OPINIONS**

*Arizona ex. rel. Corbin v. Pickrell*,
667 P.2d 1304 (Ariz. 1983) .......... 5

*Avery v. State Farm Ins. Co.*,
746 N.E.2d 1242 (Ill. App. Ct. 2001) .......... 5

*Boyes v. Greenwich Boat Works, Inc.*,
27 F. Supp.2d 543 (D.N.J. 1998) .......... 5, 6

*Brown v. Mkt. Dev., Inc.*,
322 N.E.2d 367 (Ohio C.P. 1974) .......... 5

*Citizens Ins. Co. of Amer., v. Hakim Daccach*,
105 S.W.3d 712 (Tex. App.-Austin 2003) .......... 5

*Demitropoulos v. Bank One Milwaukee*,
N.A., 915 F. Supp. 1399 (N.D. Ill 1996) .......... 5

*Goshen v. Mut. Life Ins. Co. of New York*,
774 N.E.2d 1190 (N.Y. 2002) .......... 5

*In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litigation*
201 F.R.D. 456 (D. Minn. 2001) .......... 4

*In Re Simon II Litigation*,
211 F.R.D. 86 (E.D. N.Y. 2002) .......... 5

*In re Warfarin Sodium Antitrust Litigation*,
212 F.R.D. 231 (D. Del. 2002) .......... 5

*Lobo Explor. Co. v. Amoco Prod. Co.*,
991 P.2d 1048 (Okla. Civ. App. 1999) .......... 5

*Millennium Communications & Fulfillment, Inc., v. State of Florida*,
761 So.2d 1256 (Fla. 3 Dist. Ct. App. 2000) .......... 5

*Nesbitt v. Amer. Community Mutual Ins. Co.*,
600 N.W.2d 427 (Mich. Ct. App. 1999) .......... 5

*Pacamor Bearings, Inc. v. Minebea Co. Ltd.*,
918 F. Supp. 491 (D.N.H. 1996) .......... 5

*State of Iowa v. New Womyn, Inc.*,
679 N.W.2d 593 (Iowa 2004) .......... 5

*State of Minnesota v. Alpine Air Products, Inc.*,
490 N.W.2d 888 (Minn. Ct. App. 1992) .......... 2

*Steed Realty v. Oveisi*,
823 S.W.2d 195 (Tenn. Ct. App. 1991) .......... 5

*Wershba v. Apple Computer, Inc.*,
110 Cal. Rptr. 2d 145 (Cal. Dist. Ct. App. 2001) .......... 5

**STATUTES**

Fed. R. App. P. 29(a) .......... 1

Minn. Stat. § 325F.69, subd. 1 .......... 1

Minn. Stat. § 8.31, subd. 1 .......... 1

Minn. Stat. § 8.32, subd. 2(a) .......... 1

**UNPUBLISHED OPINIONS**

*Diesel Injection Serv. v. Jacobs Vehicle Equip.*,
23 Conn. L. Rptr. 621, 1998 WL 950986
(Conn. Super. Ct. Dec. 4, 1998) .......... 5

*In re AEFS, Inc., et al.*,
No. 461855 (Minn. 2nd Dist. Ct. Mar. 24, 1983) .......... 3

*In re Creative Labs, Inc.*,
No. C2-96-12368 (Minn. 2nd Dist. Ct. Dec. 5, 1996) .......... 3

*In re Damark Internat'l, Inc.*,
No. C8-99-10638 (Minn. 2d Dist. Ct. Dec. 3, 1999) .......... 3

*In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litigation*,
No. 99-MD-1309 (D.Minn. July 22, 2003) (Magnuson, J.) .......................... 4

*In re Tony Downs Foods, Inc.*,
No. C0-94-12347 (Minn. 2nd Dist. Ct. Dec. 13, 1994)................................ 3

*In re Viking Magazine Serv., Inc.*,
No. C1-02-1159 (Minn. 2nd Dist. Ct. Feb. 7, 2002) ..................................... 3

*In re Zephyr Publishing Corp.*,
No. C4-01-7804 (Minn. 2d Dist. Ct. Aug. 24, 2001).................................... 3

*State of Minnesota v. Alpine Air Products, Inc.*,
No. C5-90-6972 (Minn. 10th Dist. Ct. Mar. 19, 1992)
*aff'd* 490 N.W.2d 888 (Minn. Ct. App. 1992) *and*
500 N.W.2d 788 (Minn. 1993)........................................................................ 2

*State of Minnesota v. Barnett and Associates, Inc.*,
No. C4-03-928 (Minn. 9th Dist. Ct. Aug. 18, 2004) ..................................... 2

*State of Minnesota v. Furey*
No. MC91-021980 (Minn. 4th Dist. Dec. 7, 1992) ....................................... 2

*State of Minnesota v. Gartenberg*,
No. 91-17314 (Minn. 4th Dist. Ct. May 27, 1993)........................................ 2

*State of Minnesota v. Orange Communications, Inc.*,
No MC93-14352 (Minn. 4th Dist. Ct. Mar. 7, 1995) ................................ 2, 6

## IDENTITY AND INTEREST OF *AMICUS CURIAE*

The Minnesota Attorney General's Office ("Attorney General") is charged with enforcement of Minnesota's consumer protection laws. Minn. Stat. § 8.31, subd. 1; Minn. Stat. § 8.32, subd. 2(a). The State of Minnesota, by its Attorney General Mike Hatch, submits this brief in the public interest and in support of affirming the district court decision. Rule 29(a) of the Federal Rules of Appellate Procedure provides authority for a State to file a brief *amicus curiae* without leave of court.

## ARGUMENT

This brief primarily addresses the public policy basis for applying state consumer protection laws to protect residents and nonresidents alike from deceptive conduct directed from the home state. Courts across the country have so applied state consumer protection laws -- a result consistent with the broad, remedial purpose of such laws. Important public policy concerns underlie this result. If adopted by this Court, the position advocated by St. Jude's could adversely affect public enforcement of state consumer protection laws.

### I. STATE CONSUMER PROTECTION STATUTES PROTECT NONRESIDENT CONSUMERS FROM DECEPTIVE CONDUCT THAT ORIGINATES FROM THAT STATE.

Minnesota courts regularly have employed the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1 ("the CFA") to remedy deceptive conduct

directed from Minnesota. For instance, in *State of Minnesota v. Alpine Air Products, Inc.*, No. C5-90-6972 (Minn. 10th Dist. Ct. Mar. 19, 1992) (amended order for judgment) (ST-ADD 1),[1] *aff'd* 490 N.W.2d 888 (Minn. Ct. App. 1992) *and* 500 N.W.2d 788 (Minn. 1993), the Minnesota Attorney General obtained a judgment at trial requiring restitution to all purchasers of the defendant's air purifier product regardless of whether the purchaser was a Minnesota resident, despite defendant's contention that other state laws vary. *Alpine*, No. C5-90-6972, slip op. at 9-10 (Minn. 10th Dist. Ct. Mar. 19, 1992) (ST-ADD 15-16). The court of appeals upheld the trial court's order of restitution. *Alpine,* 490 N.W.2d at 896.

The same result has been obtained in other actions brought by the Minnesota Attorney General under the CFA. See, e.g., *State of Minnesota v. Orange Communications, Inc.*, No. MC93-14352 (Minn. 4th Dist. Ct. Mar. 7, 1995) (Order and Memorandum) (ST-ADD 25); *State of Minnesota v. Gartenberg*, No. 91-17314 (Minn. 4th Dist. Ct. May 27, 1993) (Findings of Fact, Conclusions of Law, and Order for Judgment) (ST-ADD 28); *State of Minnesota v. Furey*, No. MC 91-021980 (Minn. 4th Dist. Dec. 7, 1992) (Findings of Fact, Conclusions of Law, and Order for Judgment) (ST-ADD 50). Recently, in *State of Minnesota v. Barnett and Associates, Inc.,* No. C4-03-928 (Minn. 9th Dist. Ct. Aug. 18, 2004) (Order for Restitution) (ST-ADD 73), the State received summary judgment ordering

[1] "ST-ADD" citations are to the Addendum of *Amicus Curiae* State of Minnesota.

restitution to consumers nationwide for defendants' sale of a fraudulent "mortgage elimination" program. Homeowners throughout the United States paid the Minnesota defendants about $7,500 per person based on the defendants' bogus claim that they could arrange to have their mortgage declared void.

Similarly, Minnesota courts also have approved numerous settlements of State enforcement actions involving nationwide injunctive relief and/or restitution based on the CFA. *See, e.g., In re Viking Magazine Serv., Inc.,* No. C1-02-1159 (Minn. 2d Dist. Ct. Feb. 7, 2002 (Assurance of Discontinuance) (ST-ADD 80); *In re Zephyr Publishing Corp.*, No. C4-01-7804 (Minn. 2d Dist. Ct. Aug. 24, 2001) (Assurance) (ST-ADD 94); *In re Creative Labs., Inc.*, No. C2-96-12368 (Minn. 2d Dist. Ct. Dec. 5, 1996) (Assurance) (ST-ADD 140); *In re Tony Downs Foods, Inc.*, No. CO-94-12347 (Minn. 2d Dist. Ct. Dec. 13, 1994) (Assurance) (ST-ADD 146); *In re AEFS, Inc.,* No. 461855 (Minn. 2d Dist. Ct. Mar. 24, 1983) (Assurance) (ST-ADD 151). In *Damark Int'l*, for example, the court approved a settlement ordering wide-ranging injunctive relief for consumers nationwide. The company directed its telemarketing scheme from Minnesota, although it used call centers in Kansas and North Carolina to conduct phone solicitations nationwide. *In re Damark Internat'l, Inc.*, No. C8-99-10638, at ¶¶ 15-20 (Minn. 2d Dist. Ct. Dec. 3, 1999) (Assurance) (ST-ADD 167).

Minnesota federal district courts likewise have confirmed that the CFA may be constitutionally applied in private attorney general cases to protect nonresident consumers defrauded by conduct that emanates from Minnesota. Furthermore, in *In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litigation*, the court certified a claim under the CFA for potentially thousands of non-resident plaintiffs in a class action against a Minnesota-based fraternal benefits society that sold "vanishing premium" life insurance policies. 201 F.R.D. 456, 461-464 (D. Minn. 2001), *class decertification denied*, No. 99-MD-1309, at 10-11 (D. Minn. July 22, 2003) (Magnuson, J.) ("*Lutheran Brotherhood*") (ST-ADD 197). In denying defendant's motion to decertify the plaintiff class in *Lutheran Brotherhood*, Judge Magnuson recognized:

> As the Attorney General argues, the CFA is intended to apply both to the conduct of foreign corporations that injures Minnesota residents and to the conduct of Minnesota companies that injures non-residents.

*Id.* at 11 (ST-ADD 207) (noting plaintiffs' claim that "the genesis of the misrepresentations at issue was Lutheran Brotherhood's home office" in Minnesota).

These cases are consistent with the overwhelming weight of case law throughout the nation holding that state consumer protection laws apply to

deceptive or fraudulent conduct originating from within that state, regardless of where the deceived consumer may reside.[2]

[2] *See, e.g.*, Arizona *ex. rel. Corbin v. Pickrell*, 667 P.2d 1304, 1312 (Ariz. 1983) (Arizona); *Wershba v. Apple Computer, Inc.*, 110 Cal. Rptr. 2d 145, 160 (Cal. Dist. Ct. App. 2001) (California); *Diesel Injection Serv. v. Jacobs Vehicle Equip.*, 23 Conn. L. Rptr. 621, 1998 WL 950986, at *5-6 (Conn. Super. Ct. Dec. 4, 1998) (order denying motion to strike) (Connecticut) (ST-ADD 223); *In re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. 231, 248, n. 15 (D. Del. 2002) (Delaware); *Millennium Communications & Fulfillment, Inc., v. State of Florida*, 761 So.2d 1256, 1260-62 (Fla. 3 Dist. Ct. App. 2000) (Florida); *Avery v. State Farm Ins. Co.*, 746 N.E.2d 1242, 1254-55 (Ill. App. Ct. 2001) (Illinois); *State of Iowa v. New Womyn, Inc.*, 679 N.W.2d 593, 597 (Iowa 2004) (Iowa); *Nesbitt v. Amer. Community Mutual Ins. Co.*, 600 N.W.2d 427, 433 (Mich. Ct. App. 1999) (Michigan); *Pacamor Bearings, Inc. v. Minebea Co. Ltd.*, 918 F. Supp. 491, 504 (D.N.H. 1996) (New Hampshire); *Boyes v. Greenwich Boat Works, Inc.*, 27 F. Supp.2d 543, 547 (D.N.J. 1998) (New Jersey); *Brown v. Mkt. Dev., Inc.*, 322 N.E.2d 367, 369 (Ohio C.P. 1974) (Ohio); *Lobo Explor. Co. v. Amoco Prod. Co.*, 991 P.2d 1048, 1054-55 (Okla. Civ. App. 1999); *Steed Realty v. Oveisi*, 823 S.W.2d 195, 198 (Tenn. Ct. App. 1991) (Tennessee); *Citizens Ins. Co. of Amer., v. Hakim Daccach*, 105 S.W.3d 712, 724 (Tex. App.-Austin 2003) (Texas); *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1415 (N.D. Ill 1996) (interpreting Wisconsin law). Some state statutes specifically limiting the statute's scope to within the state's borders have been held not to apply to non-resident victims. *See Goshen v. Mut. Life Ins. Co. of New York*, 774 N.E.2d 1190, 1194-96 (N.Y. 2002) (limiting reach of New York's consumer fraud law only to fraudulent acts committed against New York residents because of statutory language and legislative history limiting scope to persons "in this state"). *But see In Re Simon II Litigation*, 211 F.R.D. 86 (E.D. N.Y. 2002) (applying New York consumer fraud act to nationwide class). The CFA, at issue here has no such restriction in its language.

## II. PUBLIC POLICY FAVORS APPLYING STATE CONSUMER PROTECTION LAWS TO CONDUCT DIRECTED FROM THE HOME STATE.

There are compelling policy reasons underlying this established result. First, each state has an important interest in ensuring that its merchants deal honestly with citizens of other states. A New Jersey federal district court aptly summarized this interest as follows: "While there can be no doubt the New Jersey legislature desired to protect its own residents, it is equally clear that this state has a powerful incentive to ensure that local merchants deal fairly with citizens of other states and countries." *Boyes*, 27 F. Supp. 2d at 547. Allowing non-resident recovery under state consumer protection laws is "in the interests of . . . the protection of honest businesspeople operating within the state's borders." *Orange Communications*, slip op. (ST-ADD 27).

Second, if a state could not enforce its consumer protection laws against deceptive conduct perpetrated from within its borders against nonresidents, dishonest companies would have an incentive to hide in that state and simply not do business with that state's residents to minimize consumer fraud liability. This would especially be the case with fringe operations, such as telemarketing boiler rooms and credit repair scams, who sometimes deliberately do not target the residents of the state where they are located, hoping to escape prosecution for consumer fraud violations by the home state under a "not in my backyard" theory. Such a situation could both tarnish the state's reputation and harm its economy and

honest businesses within that state. It would also lead to the absurd result where the State from which the business operated would be powerless to remedy the fraudulent conduct because only another state into which the fraud extended, or a defrauded nonresident, could bring a consumer fraud action.

Third, judicial and prosecutorial efficiency support applying state consumer protection laws to conduct directed from a state. Limiting state consumer protection laws to apply only to sales completed within a state would mean the same pattern of conduct could be remedied only through action by all fifty state attorneys general, or fifty separate private attorney general class action suits, unnecessarily burdening courts and litigants. As part of state consumer protection efforts, the offices of state attorneys general routinely share and exchange consumer fraud complaints about businesses in other states. This practice promotes efficient prosecution of cases and resolution of complaints, but it only makes sense if most state attorneys general have authority to obtain nationwide relief against a pattern of deceptive conduct directed from within its borders.

## III APPLYING STATE CONSUMER PROTECTION LAWS TO CONDUCT DIRECTED FROM THE HOME STATE DOES NOT DEPRIVE OTHER STATES OF PUBLIC POLICY CHOICES.

St. Jude's brief never acknowledges the case law recognizing the general rule that state consumer protection laws can be applied to remedy deceit against nonresidents. Instead, it presents several constitutional and choice-of-law

arguments. St. Jude's repeatedly argues the notion that applying state consumer protection law to remedy deception directed at nonresidents is a means of imposing national regulation by a single state. Among the many iterations of its central idea, St. Jude's argues that applying state consumer protection laws to nonresidents would "displace all other law nationwide," would transform Minnesota law into "a nationwide regulatory regime," and would constitute the "unilateral displacing of the laws of other interested states," would "overrule, or at least render moot, the public policy choices" of 34 other states. Appellant's brief at 22, 24, 28, and 30. This argument misconstrues the nature of state consumer protection laws and their application to a pattern of deceptive conduct.

While there are some variations in who can sue for what under different state consumer protection laws, such laws are all general antifraud laws of remedial purpose. These laws are designed to protect consumers from deception and remedy unequal bargaining power. Put another way, state consumer protection laws are proscriptive, not prescriptive; these laws do not establish specific requirements for price,. content, labeling or any other aspect of merchandise sold in interstate commerce, other than that it should *not* be false, misleading or deceptive. Applying these broad, remedial laws to conduct directed from the home state is not the same as creating a prescriptive national regulatory system for the sale of products.

States with slightly varying laws are not asserting an interest in precluding their citizens from recovering losses in a consumer protection action based on another state's laws. The inclusion of nonresidents when applying Minnesota's CFA to conduct directed from Minnesota impacts other states' public policy choices only to the extent that meaningful variations in state consumer protection laws provide consumer remedies for deception that would be unavailable for the conduct in question under the consumer's home state law *and* only if that state would not want its consumers to obtain the same remedy available to consumers in other states in a nationwide or regional action. There is no evidence or reason to believe that any state would want to prevent its citizens from participation in such a recovery. That Iowa has decided not to allow its own citizens a private right of action when using Iowa consumer protection laws in Iowa courts is very different from asserting that allowing Iowans to recover under the Minnesota CFA along with other consumers for a fraud directed from Minnesota somehow offends Iowa's sovereignty.

The relevant conduct must be directed from the state for that state's consumer protection statutes to apply to nonresidents.[3] It is not enough that a

[3] St. Jude's constitutional arguments and its reliance on the dormant Commerce Clause, Due Process Clause, Full Faith and Credit Clause and the even *Erie* doctrine are beyond the scope of this *amicus* brief. The Attorney General assumes
(Footnote Continued on Next Page)

company is based in a given state. If a consumer is a victim of deceptive conduct the genesis of which is in Minnesota, the Minnesota CFA should apply to that conduct -- whether the suit is a class action or a public law enforcement action by the Minnesota Attorney General -- because the conduct at issue occurred in Minnesota. A class plaintiff cannot apply the law of a particular state if the alleged deceptive conduct giving rise to the consumer loss did not emanate from that state.

(Footnote Continued From Previous Page)
for purposes of this brief that the conduct at issue was planned and directed from Minnesota.

## CONCLUSION

Case law and sound public policy support affirming the established practice of allowing actions by Attorneys General and under private attorney general laws to provide recovery under state consumer protection laws from non-residents based on deceptive conduct directed from the home state.

MIKE HATCH
Attorney General,
State of Minnesota

PRENTISS COX
Assistant Attorney General
Atty. Reg. No. 218844

CATHERINE M. POWELL
Assistant Attorney General
Atty. Reg. No. 296430

445 Minnesota St., #1400
St. Paul, MN 55101-2131
(651) 297-4606 (Voice)
(651) 297-7206 (TTY)

Attorneys for *Amicus Curiae*
State of Minnesota

**CERTIFICATE OF COMPLIANCE**
**WITH FRAP 32(a)(7)(B)**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 1,902 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Word XP in 14 pt Times New Roman font.

PRENTISS COX
Assistant Attorney General

**CERTIFICATE OF COMPLIANCE**
**WITH 8TH CIR. R. 28A(d)**

The undersigned, on behalf of the party filing and serving this brief, certifies that each computer diskette to be filed and served, containing the full text of the brief, has been scanned for viruses and that it is virus-free.

LINDA J. KROLICK