# Exhibit 101

C
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION IS DESIGNATED AS UNPUBLISHED AND MAY NOT BE CITED EXCEPT AS PROVIDED BY MINN. ST. SEC. 480A.08(3).

Court of Appeals of Minnesota.
DIVERSIFIED BUSINESS INVESTMENTS, INC., Respondent,
v.
Stephen FISHER, Appellant.
**No. C3-91-182.**

Aug. 27, 1991.

Appeal from District Court, Hennepin County; James D. Rogers, Judge.

M. Gregory Simpson, Sara A. Poulous, Robins, Kaplan, Miller & Ciresi, Minneapolis, for respondent.

Michael C. Glover, Jeffrey L. Shlosberg, Mackall, Crounse & Moore, Minneapolis, for appellant.

Considered and decided by RANDALL, P.J., and HUSPENI and SCHUMACHER, J.

UNPUBLISHED OPINION

RANDALL, Presiding Judge.

***1** This appeal is taken from an order and judgment granting respondent summary judgment on its claim to recover under the terms of a promissory note. Appellant Stephen Fisher contends that a "conflict of laws" requires application of a Wisconsin statute, which would defeat respondent's right to seek recovery on the note. We disagree and affirm.

FACTS

Appellant Stephen Fisher is a citizen and resident of the State of Wisconsin. Respondent Diversified Business Investments, Inc. is a Minnesota corporation and is engaged in the business of identifying and matching potential buyers and sellers for business entities. Respondent employs Bob Griesgraber (who is also half owner) and Melody Michaels. Both Griesgraber and Michaels are licensed real estate brokers in the State of Minnesota. Neither is licensed in Wisconsin.

In 1987, John Troll contacted Griesgraber to help him find a buyer for the Valley House Supper Club in Hudson, Wisconsin. At the time, the Valley House Supper Club was owned by Village Five, Inc., a Wisconsin corporation. The shareholders of Valley Five, Inc., were Wisconsin residents John and Judy Troll. Griesgraber knew, from previous contacts, that appellant might be interested in buying such a business. Appellant was contacted and indicated an interest.

After appellant indicated his interest in Valley House, discussions among Griesgraber, Michaels and appellant followed. These discussions were conducted at respondent's Minneapolis office, and by telephone. Michaels visited the restaurant to inspect the premises. The negotiations took place between John Troll and appellant at the Valley House.

Upon appellant's decision to purchase the Valley House, Michaels drafted the purchase agreement which was sent to the sellers and accepted. The transaction was closed May 30, 1988, without any employee of respondent's present, at the office of the Trolls' attorney in Hudson, Wisconsin. Prior to the closing, during a January 22, 1988, meeting at respondent's Minneapolis office, appellant and respondent entered into a commission agreement. The agreement promised that the buyer (appellant) would pay the broker (respondent) a commission of $25,000 within 120 days of the date of the sale of the Valley House. The agreement promised that appellant would execute a promissory note for that amount at the time of the closing. There was a clause that stated the proper venue for any collection action would be the county in which the broker's office is located. The agreement was printed on respondent's stationery which stated at the top that its office was in Minneapolis, Minnesota.

On February 25, 1988, appellant executed a buyer-broker agreement with respondent at its Minneapolis office. The agreement confirmed the previous commission agreement. Finally, on May 31, 1988, appellant executed a promissory note for $25,000. The note was executed in respondent's Minneapolis office. The note was in favor of respondent for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

$25,000 and it obligated appellant to pay the money within four months of the closing date. Payments were to be made at respondent's Minneapolis office.

***2** Appellant paid $10,000 on the note, but has since refused to pay the balance. On March 8 respondent commenced this action for recovery of the balance due on the note and for attorney fees. In his answer to the summons and complaint, appellant raised the affirmative defense that Wis.Stat. § 452.20 (1990) bars respondent's action. On July 11, 1990, respondent moved for summary judgment.

On August 1, 1990, the trial court heard arguments on respondent's summary judgment motion. Appellant relied on the defense that Wis.Stat. § 452.20 barred respondent's claim. The trial court granted respondent's motion. The amount of judgment, amended to include attorney fees, was $20,188 plus costs and prejudgment interest.

DECISION

The two statutes at issue are Wis.Stat. § 452.20 and Minn.Stat. § 82.33, subd. 1. The statutes are both part of chapters regulating real estate brokers and salesmen.

Wis.Stat. § 452.20 (1990) provides:

No person engaged in the business or acting in the capacity of a broker or salesperson within this state may bring or maintain an action in the courts of this state for the collection of a commission or compensation for the performance of any act mentioned in this chapter without alleging and proving that he or she was a duly licensed broker or salesperson at the time the alleged cause of action arose.

Minn.Stat. § 82.33, subd. 1 (1990) provides:

No person shall bring or maintain any action in the courts of this state for the collection of compensation for the performance of any of the acts for which a license is required under this chapter without alleging and proving that the person was a duly licensed real estate broker, salesperson, or closing agent at the time the alleged cause of action arose.

Appellant contends Wis.Stat. § 452.20 should have been applied by the trial court. Appellant argues the Wisconsin statute would preclude respondent from bringing suit seeking recovery of the outstanding $15,000.00 on its commission due from the purchase by appellant of Valley House Supper Club. We disagree. "When faced with a conflict of law question, the first step is determining whether there is a conflict." *Gate City Fed. Sav. & Loan Ass'n v. O'Connor*, 410 N.W.2d 448, 450 (Minn.App.1987), *pet. for rev. denied* (Minn.Oct. 21, 1987).

The two statutes are not meant to have extra-territorial effect, and therefore are not in conflict. The plain language of the statutes makes clear they apply only to actions seeking compensation for broker services brought *within* a court of each respective state. *See* Wis.Stat. § 452.20; Minn.Stat. § 82.33, subd. 1. It has been stated:

there are some statutes in which the territorial scope of the enactment appears by inescapable implication. * * * [O]f this sort, * * * are most licensing laws * * *. In all such cases a choice-of-law rule can be found in the law itself.

R. Leflar, L. McDougal, R. Felix, *American Conflicts Law* § 93 (4th ed. 1986).

***3** The Minnesota Supreme Court has recognized that Minn.Stat. § 82.33, subd. 1 would have application only in Minnesota courts. In *Relocation Realty Serv. Corp., v. Carlson Companies, Inc.*, 264 N.W.2d 643, 646 n. 5 (Minn.1978), the court said that statute did not bar an Illinois realtor's suit seeking compensation, but that the statute only barred the suit from the courts of Minnesota. Wis.Stat. § 452.20 precludes persons "engaged in the business or acting in the capacity of a broker or salesperson within [Wisconsin] [from bringing or maintaining] *an action in the courts of [Wisconsin]* for the collection of a commission or compensation." The Wisconsin statute by its own language does not preclude actions in the courts of Minnesota. Since the Wisconsin statute is not in conflict with the Minnesota statute, the Minnesota trial court did not err by applying Minnesota law.

However, to address all of appellant's arguments, we will assume that Wis.Stat. § 452.20 and Minn.Stat. § 82.33, subd. 1 are in conflict. The next step is to determine whether the law involved is procedural (also remedial) or substantive. *Gate City*, 410 N.W.2d at 450. In Minnesota:

the well settled rule is that matters of procedure and remedies are governed by the law of the forum. *Davis v. Furlong*, 328 N.W.2d 150, 153 (Minn.1983). * * *

The court of the forum, subject only to the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

limitations of the federal constitution * * *, determines whether a given question involves one of substance or of remedy.

*Zaretsky v. Molecular Biosystems, Inc.,* 464 N.W.2d 546, 548 (Minn.App.1990) (quoting *Anderson v. State Farm Mut. Auto. Ins. Co.,* 222 Minn. 428, 432, 24 N.W.2d 836, 839 (1946)). The Minnesota Supreme Court distinguished substantive from procedural questions as follows:

It has long been recognized that substantive law is that part of law which creates, defines, and regulates rights, as opposed to *"adjective or remedial " law, which prescribes method of enforcing the rights or obtaining redress for their invasion.*

*Id.* (quoting *Meagher v. Kavli,* 251 Minn. 477, 488, 88 N.W.2d 871, 879- 80 (1958)) (emphasis added).

Appellant contends that Wis.Stat. § 452.20 (if interpreted to apply to Minnesota courts) would preclude respondent's suit to recover the outstanding balance of the commission, and since this result is outcome determinative, appellant contends the statute must be viewed as substantive. We are not persuaded. " 'A rule of procedure may have an impact upon the substantive result and be no less a rule of procedure on that account.' " *Zaretsky,* 464 N.W.2d at 548-49 (quoting *Busik v. Levine,* 63 N.J. 351, 364, 307 A.2d 571, 578 (1973), *appeal dismissed,* 414 U.S. 1106, 94 S.Ct. 831 (1973)).

Minn.Stat. § 82.33, subd. 1 is a procedural/remedial statute. In *Albers v. Fitschen,* 274 Minn. 375, 143 N.W.2d 841 (1966), the Minnesota Supreme Court addressed the procedural versus substantive question regarding Minn.Stat. § 82.16, subd. 2, which is the substantially identical predecessor of Minn.Stat. § 82.33, subd. 1. *See* *Relocation Realty Services,* 264 N.W.2d at 645 n. 3. The *Albers* court noted,

***4** [i]t is necessary to consider whether such a condition [alleging and proving a broker's license] relates to the right to the commission as distinguished from the remedy to enforce payment of it.

*Albers,* 274 Minn. at 377, 143 N.W.2d at 843.

In answer to the question the *Albers* court posed for itself, Minn.Stat. § 82.16, subd. 1 was found not to deprive the claimant of any contractual right to compensation which may have grown out of the real estate brokerage, but rather that "[t]he provision requiring the allegation and proof of the existence of a license is more in the nature of a statute of limitations." *Id.* It is instructive to note that in Minnesota, " '[t]he limitation of time within which an action may be brought relates to the remedy and is governed by the law of the forum.' " *United States Leasing Corp. v. BIBA Information Processing Serv., Inc.,* 436 N.W.2d 823, 825 (Minn.App.1989) *pet. for rev. denied* (Minn. May 24, 1989) (quoting *In re Estate of Daniel,* 208 Minn. 420, 427, 294 N.W. 465, 469 (1940)). Accordingly, the *Albers* court concluded that Minn.Stat. § 82.16, subd. 2 was procedural/remedial because it regulated or limited the enforcement of a right. We find no reason to view th eidentical successor statute, Minn.Stat. § 82.33, subd. 1, any differently.

The language of the Minnesota and Wisconsin statutes at issue is the same; the public policy behind the statutes is the same. *See* *Hilboldt v. Wisconsin Real Estate Brokers' Bd.,* 28 Wis.2d 474, 481, 137 N.W.2d 482, 485 (1965) (policy behind broker regulatory statutes is to protect the public from unscrupulous dealers in real estate); *Albers,* 274 Minn. at 376, 143 N.W.2d at 843 (public policy behind broker regulatory statutes is "to prevent abuses by unqualified or unreliable real estate brokers and salesmen") (Minn.Stat. § 82.16, subd. 2 was procedural/remedial). Therefore, Wis.Stat. § 452.20 should be viewed as procedural/remedial under Minnesota conflict of law rules.

Wisconsin law also holds Wis.Stat. § 452.20 to be procedural/remedial in nature. In *Kemmerer v. Roscher,* 9 Wis.2d 60, 64, 100 N.W.2d 314, 317 (1960), the Wisconsin Supreme Court construed Wis.Stat. § 136.11, the identical predecessor to Wis.Stat. § 452.20, to be a remedial statute. The *Kemmerer* court found the effect of the statute was to place the burden of proving proper licensure as a broker on the party seeking to collect a commission, while not affecting the cause of action. *Id.*

Finally, as first discussed above, Wis.Stat. § 452.20 and Minn.Stat. § 82.33, subd. 1, by their plain language, require a party to allege and prove that they are licensed brokers in each respective state before they will be allowed to enforce any existing rights to compensation or commissions in the courts of each respective state. The language of both statutes precludes extra-territorial effect. The result of controlling access to the means of enforcement provided by state court's also weighs in favor of finding the statutes to be procedural/remedial in nature.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

***5** [A]nother type of rule often called procedural actually is designed to govern access to courts, and necessarily governs access only to the courts of the state having the the rule. A state can control access to its own courts, but it cannot prevent courts of another state, if they have jurisdiction, from proceeding to exercise it.

R. Leflar, L. McDougal, R. Felix, *American Conflicts Law* § 122 (4th ed. 1986) (footnotes omitted.

While Wis.Stat. § 452.20 proscribes procedures for those actions brought in Wisconsin courts, it could not be used to control respondent's access to a Minnesota court where a Minnesota statute provides respondent access to judicial relief. Further, the Minnesota District Court had personal jurisdiction over appellant because he contractually consented to the jurisdiction of Minnesota courts to resolve disputes regarding the $25,000 promissory note.

The purpose and effect of both Wis.Stat. § 452.20 and Minn.Stat. § 82.33, subd. 1 are procedural/remedial in nature, and the trial court properly applied Minnesota's procedural law in the action below. *Zaretsky,* 464 N.W.2d at 548 (matters of procedure and remedy are governed by the law of the forum). Either analysis set out above resolves this case for respondent. The result would be no different under a conflict of laws approach applied to substantive choice-of-law questions in Minnesota courts.

In *Milkovich v. Saari,* 295 Minn. 155, 203 N.W.2d 408 (1973), the Minnesota Supreme Court set out how this state would resolve substantive choice-of-law questions. The tests adopted in *Milkovich* are:

(1) Predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law.

*Myers v. Gov't Employees Ins. Co.,* 302 Minn. 359, 365, 225 N.W.2d 238, 242 (1974).

"Predictability of results applies primarily to consensual transactions where the parties desire advance notice of which state law will govern in future disputes." *Id.* In this case, this factor weighs in favor of applying Minnesota law.

The focus of this dispute is the enforcement of a promissory note. This note was negotiated, drafted, and executed in Minnesota. The holder of the note is a Minnesota resident. The note was to be performed in Minnesota. Finally, the parties agreed in writing that any actions to enforce the promissory note would be venued in Minnesota. It is clear the parties could expect Minnesota law to govern the promissory note.

Maintenance of interstate order is generally satisfied as long as the state whose laws are ultimately applied has sufficient contacts with the case at issue. *Gate City,* 410 N.W.2d at 451 (quoting *Hague v. Allstate Ins. Co.,* 289 N.W.2d 43, 48 (Minn.1979), *aff'd.,* 449 U.S. 302, 101 S.Ct. 633 (1981)). All material activities related to the promissory note were conducted in Minnesota and one party is a Minnesota resident. Applying Minnesota law does not disrupt interstate order.

***6** As to simplifying the judicial task, "[f]requently this factor is irrelevant since one court can apply the applicable statute as well as any other court." *Id.* Such is the present case. The Wisconsin and Minnesota statutes involved in this case are not complex and are comparable in semantics and purpose. A Minnesota court could apply the Wisconsin statute or the Minnesota statute if called upon to do so.

Advancement of the forum's governmental interests is a choice-of-law factor favoring application of Minnesota law.

The concern under this consideration is that Minnesota courts not be required to determine issues under rules which, although acceptable in other states, are inconsistent with our own concept of fairness and equity.

*Lindquist v. State Farm Mut. Auto. Ins. Co.,* 415 N.W.2d 28, 32 (Minn.App.1987).

Wis.Stat. § 452.20 and Minn.Stat. § 82.33, subd. 1 have the same purpose. In analyzing a forum's interest, the public policy of a conflicting state should also be considered. *Gate City,* 410 N.W.2d at 451. The statutes are both designed to protect residents of their respective states from unscrupulous realtors by limiting the access of unlicensed realtors conducting business within each state to that state's courts. The statutes operate as an incentive to realtors to conduct their business in accord with state laws regulating realtor licensure.

Respondents were licensed realtors in Minnesota.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Appellant does not contend that respondents were in any way remiss in the performance of their services. Wisconsin's policy of protecting appellant is served by applying Minnesota law. The application of Minnesota law did not countenance unethical real estate practice. The application of Minnesota law merely insured that a just debt would be paid.

Respondent is a licensed realtor in Minnesota, had complied with Minnesota's state laws for licensure, and is entitled to access to our courts to enforce payment for services rendered.

Affirmed.

Not Reported in N.W.2d, 1991 WL 162984 (Minn.App.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.