# Exhibit 103

**FEDERAL TRADE COMMISSION**
**WASHINGTON, D. C. 20580**

PAUL RAND DIXON
CHAIRMAN

APR 14 1966

Forwarded to Council of State Govts. 6.21.66

Honorable William D. Carey
Executive Assistant Director
Bureau of the Budget
Executive Office of the President
Washington, D. C. 20503

Dear Mr. Carey:

Reference is made to your letter of February 10, inviting submittal of legislative proposals for consideration by the Council of State Governments and the State legislatures.

The Federal Trade Commission renews the suggestion which it made to you in 1964 that the State legislatures enact uniform laws dealing with trade regulation, so drafted as to supplement without conflict the laws administered by the Department of Justice and the Federal Trade Commission.

This contemplates that each State will, in the long run, adopt legislation supplementing the Sherman Act, the Clayton Act as amended by the Robinson-Patman Antidiscrimination Act, and the Federal Trade Commission Act, as well as the Wool Products Labeling Act, the Fur Products Labeling Act, the Flammable Fabrics Act and the Textile Fiber Products Identification Act. The Commission will from time to time be making specific proposals for carrying the above general plan into effect. The purpose is to provide the public throughout the country with a reasonable degree of protection against unfair, restrictive, discriminatory and deceptive trade practices, and at the same time provide for administration at the lowest practicable level of government.

The Commission's 1964 proposal that the states consider enactment of a uniform false advertising law modeled after the New York statute of 1963, has progressed. The Council of State Governments included such a uniform false advertising law among its promulgations during 1965. A copy of the Council's draft of law is attached, as taken from Suggested State Legislation 1965, pages 156-7.

It is noted, however, that this draft of uniform law appears to contain an error of omission in the first clause of Section 2 where false advertising is defined. To correct the omission, and conform the draft to the New York law, the clause should be changed to read as follows: "The term 'false advertising' means advertising, including labeling, which is misleading in a material respect;...".

The Commission now suggests that the States give consideration to uniform legislation in three additional areas, as follows:

1. To prevent unfair methods of competition and unfair or deceptive acts or practices in trade and commerce.

2. To provide for licensing of hearing aid fitters and dealers.

3. To provide for regulation of correspondence and vocational schools.

Statements with regard to each of these proposals are attached, identified as "FTC Proposal No. 1", "FTC Proposal No. 2" and "FTC Proposal No. 3", respectively.

Also attached is reprint of article from State Government which describes the Commission's program for cooperation with state and local officials in trade regulation matters. As indicated in that article, this agency stands ready, through its office of Federal-State Cooperation, to be of aid and assistance to State Governments in such matters.

By direction of the Commission.

Paul Rand Dixon
Chairman

Enclosures

Proposal by the Federal Trade Commission for enactment of uniform state laws to prevent unfair methods of competition and unfair or deceptive acts or practices in trade and commerce:

Established in 1914 to stop trade practices which unfairly injure honest businessmen, and given responsibility in 1938 to protect consumers from false advertising and other deception, the Federal Trade Commission desires to share its experience in a program of cooperation with State officials interested in the enactment or administration of similar legislation.

The purpose is to aid local initiative in meeting rising demands from the public for more adequate protection against unfair and deceptive practices. By stopping such practices in their incipiency at the state or local level, before they grow into problems of interstate or national significance, the need for federal action will be minimized and judgments about what constitutes unfair or deceptive practice will so far as possible be decentralized to the people who are most directly affected.

The Commission invites State officials to report any unfair or deceptive practices in interstate commerce which might warrant corrective attention under laws administered by it. This will facilitate the Commission's rendering most effective service to the people in each section of the country.

When the Commission encounters unfair or deceptive practices of an intrastate or local character falling outside its jurisdiction, these will be reported to the official appearing to have jurisdiction of such matters under State or local law. Complaints of this character come to the Commission not only from consumers. Just as frequently they come from businessmen who would prefer to operate on a higher level of ethics than the level to which they are being forced by local competition. Or the complaint may come from the operator of a multi-state business who is losing trade to intrastate concerns which divert trade to themselves by use of false advertising or other misleading or unfair practice. The Commission recently established an office of Federal-State Cooperation to provide legal and technical assistance to the State Attorneys General and other state officials in the treatment of such matters.

The problem is that many of the States do not have adequate legislation to deal with unfair or deceptive trade practices. The Commission accordingly urges that the States

adopt legislation, as nearly uniform as practicable, to prohibit the types of unfair and deceptive practices which would be unlawful if coming within the interstate jurisdiction of the F.T.C. Adoption of uniform state legislation would facilitate trade and commerce and consumer understanding of business practices in our highly mobile society, and would establish minimum standards to prevent unfair competition and deceptive or monopolistic practice.

The Commission accordingly proposes that the states enact a uniform law to prohibit use in trade or commerce of "unfair methods of competition" and "unfair or deceptive acts or practices", modeled after Section 5 of the Federal Trade Commission Act (Title 15, U.S.Code, Sec. 45(a)(1)). The States of Hawaii and Washington have already adopted such legislation (Revised Laws of Hawaii, Sec. 205A-1.1 approved June 16, 1965; and Revised Code of Washington, Sec. 19.86.020 approved March 20, 1961).

The Commission suggests that such legislation include declaration of intent that the State courts in construing the law be guided by the interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act, as has been done in Hawaii (H.R.L., Sec. 205A-1.2 approved June 16, 1965). This will give the administering official and the courts the benefit of fifty years of federal experience in the interpretation of similar language. The 800-odd court decisions reviewing F.T.C. orders to cease and desist are published in six volumes and three paperback supplements entitled Statutes and Decisions, Federal Trade Commission. Rules and guides as issued by the Commission from time to time are in a single volume, Title 16 of the Code of Federal Regulations. These publications are available to State officials and affected or interested parties at nominal cost from the U. S. Government Printing Office. The Commission's decisions, numbering several thousand, are published in sixty-one volumes, and are digested and indexed along with the rules, guides and court decisions in handy loose-leaf services available from commercial publishers of trade regulation material.

Another advantage of delineating the prohibited areas of conduct by use of the general terms "unfair" or "deceptive" is that these terms encompass all lines of business, the sale of goods as well as services, and all types of practices which may be detrimental to competition or injurious to consumers, including, but not limited to, "bait" advertising, deceptive guarantees, fictitious pricing, oral misrepresentation by house-to-house salesmen, misbranding, sale of reconditioned or used products as new, false claims as to quality

or performance of products, agreements among competitors to fix prices or restrict competition, and conspiracies to eliminate a competitor.

Such general language not only deals with unfair or deceptive practices as they now exist; it is flexible enough to cope with novel practices, or variations on old practices, which sharp operators constantly are inventing in their ceaseless efforts to eliminate competition unfairly or to cheat the public.

Exemption should be provided for acts done pursuant to regulation of the State public service commission or other regulatory body or officer acting under statutory authority of the State or the United States, as in Section 19.86.170 of the Washington State law. This would avoid conflict, for example, with any "Fair Trade Law" which the State may have adopted.

Designation of the Attorney General as the administering official is suggested, to achieve equitable and uniform administration of the law throughout the State. This would provide a central record of violations within the State, and a focal point for cooperation and exchange of information as between the state and federal governments and among the states themselves.

To shield the administering official from pressure to become involved in matters of private controversy, such as alleged trade name infringements or determinations of rights and obligations under private contracts, he would be authorized to institute action "when in the public interest", similar to Section 5(b) of the Federal Trade Commission Act (15 U.S.C. 45(b)). The U. S. Supreme Court interpreted this language in a 1929 decision, F.T.C. v. Klesner, 280 U.S. 19.

It is proposed that injunctive relief be provided under equitable procedures to restrain unfair and deceptive practices, and the administering official should not be required to prove knowledge, intent, wilfulness, actual deception or injury to competition as an element of the violation. As was said by the U. S. Supreme Court in a 1924 decision interpreting the Federal Trade Commission Act, the overriding consideration should be protection of consumers from deception and honest businessmen from unfair competition, placing on the seller the burden of avoiding practice which is unfair or deceptive. F.T.C. v. Winsted Hosiery Co., 258 U.S. 483. Commenting on this point in a 1941 decision, the U. S. Court of Appeals for the Second Circuit declared: "Whether or not the advertiser knows the representation to be false, the

deception of purchasers and the diversion of trade from competitors is the same. The purpose of the statute is protection of the public, not punishment of a wrongdoer." Gimbel Bros., Inc. v. F.T.C., 116 F. 2d 578, 579.

The administering official should be permitted, in lieu of bringing action for injunction, to take voluntary assurances of compliance, along the lines of Section 19.86.100 in the Washington State law. Similar provision is embodied in the Federal Trade Commission's General Procedures, Section 1.21. These assurances of voluntary compliance would not constitute admissions of law violation.

The administering official should be given authority to conduct investigations to determine whether violation has occurred or is about to occur, similar to Sections 6, 9 and 10 of the Federal Trade Commission Act (15 U.S.C. 46, 49 and 50) or the Federal Antitrust Civil Process Act (15 U.S.C. 1311-14) or Section 19.86.110 of the Washington State statute. We suggest the latter, since it seems most aptly tailored for state use.

For violation of an injunction issued under the Act to restrain unfair or deceptive practices, the court is authorized to assess civil penalties in an amount up to $25,000; and the court additionally is authorized, in its discretion, to order dissolution, or suspension or forfeiture of franchise of any corporation which violates such an injunction. This is similar to Sections 19.86.140 and 19.86.150 of the Washington State law.

A proposed "Uniform Deceptive Trade Practices Act" as promulgated in 1964 by the National Conference of Commissioners on Uniform State Laws is included in the Council of State Government's publication Suggested State Legislation for 1965, at pages 186 through 190.

That proposed Act contains a number of very desirable features. For example, it provides injunctive remedy to deal with deceptive trade practices; it extends to the sale of all types of goods and services; it prohibits "likelihood of confusion or of misunderstanding" as well as outright misrepresentation or deception; and to sustain a charge of violation, it is not necessary to prove existence of competition, injury to competition, monetary damage, loss of profits, actual confusion or misunderstanding, or intent to deceive.

But it is deficient in two important respects, as follows:

1. Only a private person injured by a deceptive trade practice enumerated in the statute would be authorized to institute remedial action. No provision is made for a public official, such as the state's Attorney General, to institute corrective proceedings in the public interest.

2. The prohibition of eleven specific practices and "any other conduct which similarly creates a likelihood of confusion or misunderstanding" leaves doubt as to whether all types of unfair and deceptive practice are covered. The Commission's substitute proposal as made herein would extend the prohibitory language to comprehend all "unfair methods of competition and unfair or deceptive acts or practices in trade or commerce".

The Commission's draft of uniform law is set forth below, for consideration by the State Governments. Comments, suggestions and inquiries are invited. They may be addressed to the Assistant General Counsel for Federal-State Cooperation, Federal Trade Commission, Washington, D. C. 20580.

UNIFORM UNFAIR TRADE PRACTICE
AND CONSUMER PROTECTION LAW

Sec. 1. Definitions. As used in this Act,

(a) "Person" shall include, where applicable, natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity.

(b) "Trade" and "commerce" shall include the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this State.

(c) "Documentary material" shall include the original or a copy of any book, record, report, memorandum, paper, communication, tabulation, map, chart, photograph, mechanical transcription, or other tangible document or recording, wherever situate.

Sec. 2. Unfair competition, practices, declared unlawful. Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

Sec. 3. Interpretation. It is the intent of the legislature that in construing Section 2 of this Act the courts will be guided by the interpretations given by the Federal Trade Commission and the federal courts to Section 5 (a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)).

Sec. 4. Exemptions. Nothing in this Act shall apply to actions or transactions permitted under laws administered by the State public service commission or other regulatory body or officer acting under statutory authority of this State or the United States.

Sec. 5. Attorney General may restrain prohibited acts. Whenever the Attorney General has reason to believe that any person is using or is about to use any method, act or practice declared by Section 2 of this Act to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the State against such person to restrain by temporary or permanent injunction the use of such method, act or practice. The action may be brought in the superior court of the county in which such person resides or has his principal place of business, or, with consent of the parties, may be brought in the superior court of the county in which the State Capitol is located.1/ The said courts are authorized to issue temporary or permanent injunctions to restrain and prevent violations of this Act, and such injunctions shall be issued without bond.

Sec. 6. Assurances of voluntary compliance. In the administration of this Act, the Attorney General may accept an assurance of voluntary compliance with respect to any method, act or practice deemed to be violative of the Act from any person who has engaged or was about to engage in such method, act or practice. Any such assurance shall be in writing and be filed with and subject to the approval of the superior court of the county in which the alleged violator resides or has his principal place of business, or the county

1/ This designation of the court to have jurisdiction is taken from the Washington State law, and should be modified to fit the judicial system of each individual state.

in which the State Capitol is located. Such assurance of voluntary compliance shall not be considered an admission of violation for any purpose. Matters thus closed may at any time be reopened by the Attorney General for further proceedings in the public interest, pursuant to Section 5.

Section 7. Civil investigative demand.

(a) Whenever the Attorney General believes that any person may be in possession, custody, or control of the original or a copy of any documentary material relevant to the subject matter of an investigation of a possible violation of this Act, he may execute in writing and cause to be served upon such a person, a civil investigative demand requiring such person to produce such documentary material and permit inspection and copying: Provided, That this Section shall not be applicable to criminal prosecutions.

(b) Each such demand shall:

(1) State the statute and section thereof, the alleged violation of which is under investigation, and the general subject matter of the investigation;
(2) Describe the class or classes of documentary material to be produced thereunder with reasonable specificity so as fairly to indicate the material demanded;
(3) Prescribe a return date within which the documentary material is to be produced; and
(4) Identify the members of the Attorney General's staff to whom such documentary material is to be made available for inspection and copying.

(c) No such demand shall:

(1) Contain any requirement which would be unreasonable or improper if contained in a subpoena duces tecum issued by a court of this State; or
(2) Require the disclosure of any documentary material which would be privileged, or which for any other reason would not be required by a subpoena duces tecum issued by a court of this State.

(d) Service of any such demand may be made by:

(1) Delivering a duly executed copy thereof to the person to be served or to a partner or to

any officer or agent authorized by appointment or by law to receive service of process on behalf of such person;

(2) Delivering a duly executed copy thereof to the principal place of business in this State of the person to be served; or

(3) Mailing by registered or certified mail a duly executed copy thereof addressed to the person to be served at the principal place of business in this State or, if said person has no place of business in this State, to his principal office or place of business.

(e) Documentary material demanded pursuant to the provisions of this Section shall be produced for inspection and copying during normal business hours at the principal office or place of business of the person served, or at such other times and places as may be agreed upon by the person served and the Attorney General.

(f) No documentary material produced pursuant to a demand under this Section shall, unless otherwise ordered by a court for good cause shown, be produced for inspection or copying by, nor shall the contents thereof be disclosed to, any person other than the authorized employee of the Attorney General, without the consent of the person who produced such material: Provided, That, under such reasonable terms and conditions as the Attorney General shall prescribe, such documentary material shall be available for inspection and copying by the person who produced such material or any duly authorized representative of such person. The Attorney General or any attorney designated by him may use such documentary material or copies thereof as he determines necessary in the enforcement of this Act, including presentation before any court: Provided, That any such material which contains trade secrets shall not be presented except with the approval of the court in which the action is pending after adequate notice to the person furnishing such material.

(g) At any time before the return date specified in the demand, or within twenty days after the demand has been served, whichever period is shorter, a petition to extend the return date for, or to modify or set aside the demand, stating good cause, may be filed in the superior court of the county where the parties reside or in the county where the State Capitol is located.

(h) A person upon whom a demand is served pursuant to the provisions of this Section shall comply with the terms thereof unless otherwise provided by order of court. Any person who, with intent to avoid, evade, or prevent compliance, in whole or in part, with any civil investigative demand under this Section, removes from any place, conceals, withholds, or destroys, mutilates, alters, or by any other means falsifies any documentary material in the possession, custody or control of any person subject of any such demand shall be guilty of an offense against the State, and shall be subject, upon conviction, to a fine not to exceed five thousand dollars or to imprisonment for a term of not more than one year, or both.

(i) Whenever any person fails to comply with any civil investigative demand duly served upon him under this Section or whenever satisfactory copying or reproduction of any such material cannot be done and such person refuses to surrender such material, the Attorney General, through such officers or attorneys as he may designate, may file, in the superior court of the county in which such person resides, is found, or transacts business, and serve upon such person a petition for an order of such court for the enforcement of this Section, except that if such person transacts business in more than one county such petition shall be filed in the county in which such person maintains his principal place of business, or in such other county as may be agreed upon by the parties to such petition. Whenever any petition is filed in the superior court of any county under this Section, such court shall have jurisdiction to hear and determine the matter so presented, and to enter such order or orders as may be required to carry into effect the provisions of this Section. Any final order so entered shall be subject to appeal to the State Supreme Court. Any disobedience of any final order entered under this Section by any court shall be punished as a contempt thereof.

Sec. 8. Civil penalties. Any person who violates the terms of an injunction issued under Section 5 of this Act shall forfeit and pay to the State a civil penalty of not more than twenty-five thousand dollars. For the purposes of this Section, the superior court of any county issuing an injunction shall retain jurisdiction, and the cause shall be continued, and in such cases the Attorney General acting in the name of the State may petition for recovery of civil penalties.

Sec. 9. Forfeiture of corporate franchise. Upon petition by the Attorney General, the court may, in its discretion, order the dissolution, or suspension or

forfeiture of franchise of any corporation which violates the terms of an injunction issued under Section 5 of this Act.

Sec. 10. Severability. If any provision of this Act is declared unconstitutional, or the applicability thereof to any person or circumstances is held invalid, the constitutionality of the remainder of the Act and the applicability thereof to other persons and circumstances shall not be affected thereby.

Sec. 11. Short title. This act shall be known and designated as the "Unfair Trade Practice and Consumer Protection Act".

Sec. 12. Effective date. (To be inserted; 60 days after enactment is suggested).

-o-0-o-