# Exhibit 105

Clearinghouse No. 31,035 B
13pp.

*Reprinted from*

# 1970 SUGGESTED STATE LEGISLATION

VOLUME XXIX

## UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW-REVISION

Developed by
The Committee on Suggested State Legislation

The Council of State Governments
Iron Works Pike
Lexington, Kentucky 40505

## 72-31-00 Unfair Trade Practices and Consumer Protection Law — Revision

This suggested legislation, developed by the Federal Trade Commission, is a revision of the Unfair Trade Practices and Consumer Protection Act initially published in *Suggested State Legislation for 1967*. This draft incorporates the changes which were published in *Suggested State Legislation for 1969*, and additional changes discussed below.

The 1967 proposal has been adopted by the following ten states: Arizona, Kansas, Maryland, Massachusetts, Missouri, New Mexico, Pennsylvania, Rhode Island, Texas, and Vermont.

To meet differing requirements in the several States, slightly different language is suggested for Section 2 which declares what acts and practices are unlawful. Three alternative forms of language have evolved for this section. Alternative Form No. 1 prohibits use of those "unfair methods of competition and unfair or deceptive acts or practices" which, if used in interstate commerce, are prohibited by Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)). This form has been adopted in Washington, Hawaii, Vermont, and Massachusetts, and is the form preferred by the Federal Trade Commission. It enables the enforcement official to reach not only deceptive practices which prey upon consumers, but also unfair methods which injure competition. This form will reach price-fixing arrangements, boycotts by suppliers, coercion of retailers, and other trade restraints which tend to creat monopoly and enhance prices. However, in some States such anti-competitive practices are already covered by other legislation. For those States, Alternative Form No. 2 is suggested.

Alternative Form No. 2 enables the enforcement official to enjoin all types of deceptive trade practice. This alternative declares unlawful "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" and is acceptable to, and recommended by, the Federal Trade Commission. Similar language is used in the laws of Arizona, Delaware, Illinois, Iowa, Kansas, Maryland, Missouri, New Jersey, and North Dakota.

Alternative Form No. 3, like the 1967 draft, prohibits the twelve specific types of deceptive practice enumerated in the Uniform Deceptive Trade Practices Act as promulgated by the National Conference of Commissioners on Uniform Laws in 1964. The latter Act provides a remedy only for a private person injured by a deceptive practice. In the draft set forth below, there has been added a subsection (13) to prohibit "any other act or practice which is unfair or deceptive to the consumer." This language was incorporated in *Suggested State Legislation for 1969*, and is acceptable to the Federal Trade Commission. It is somewhat narrower in scope than the language of either Alternative No. 1 or Alternative No. 2.

The common feature of these laws is that they enable an enforcement official, usually the attorney general, to investigate alleged or suspected deceptive and unfair trade practices,

and to obtain court injunction when violation exists. The enforcement official is given power to accept an assurance of voluntary compliance, when he considers that method of disposition appropriate. This, along with the authority to proceed when "in the public interest", protects him from contentious complainants and from the necessity of pursuing every matter, regardless of its relative importance, to formal litigation.

The provision in Section 3(a) that the administering official shall give due consideration and great weight to interpretations rendered by the Federal Trade Commission and the courts, in their administration of similar language of the Federal Trade Commission Act, was adopted by the Council of State Governments in *Suggested State Legislation for 1969.* This language is from the Rhode Island Consumer Protection Law.

The provision in Section 3(b) for the administering official to issue rules and regulations interpreting the Act is taken from the law of Massachusetts. This provision will reduce costs of administration by allowing the administering official to carry on an educational program among businessmen and consumers, to acquaint them with the requirements and protections of the act, and will encourage self-regulatory effort among the businessmen to attain a high level of compliance at minimum cost.

Section 4(a) continues the exemption for acts done pursuant to other laws of the State or the United States, as in the 1967 draft.

To this draft has been added, in Section 4(b), an exemption for acts done by newspaper and magazine publishers and radio and television broadcasters, and their agents and employees, in the publication or dissemination of advertising, when they do not have knowledge of the false, misleading or deceptive character of the advertisement. The language used is similar to that found in the New York False Advertising Law, and the Consumer Protection Laws of Delaware, Illinois, Iowa, Kansas, Maryland, Missouri, New Jersey, Pennsylvania, Vermont, and Washington. It is also similar to Section 145 of the Consumer Credit Protection Act (the Federal Truth-in-Lending Law) (P.L. 90-321) which provides there is no liability under the chapter relating to credit advertising on the part of any owner or personnel, as such, of any medium in which an advertisement appears or through which it is disseminated. However, in this draft publishers and broadcasters would be held responsible if they prepared the advertisement, or had a financial interest in the sale or distribution of the product being advertised. Thus, the exemption extends only to acts done in their capacity as publishers and broadcasters on behalf of other advertisers, and does not permit them to misrepresent their own goods or services, or goods or services in which they have a direct financial interest, or to prepare false advertisements for others.

Section 5 is amended by adding the words "has used" in the phrase which authorizes the attorney general to proceed when he has reason to believe that any person "is using, has used, or is about to use" any method, etc., which is unlawful. This corrects an oversight which occurred in drafting the 1967 model. Addition of these words will obviate the

problem which might occur if a defendant contends that he discontinued the alleged practice some days before trial, and that the prosecutor has failed to show continuance of the unlawful practice up to and through the day of trial.

Sections 6 and 7 provide additional relief, by authorizing the court to decree restitution of money or property to anyone who suffered damage from the unlawful acts or practices, and to appoint a receiver or revoke a license or certificate for doing business. This is similar to the laws of Arizona, Delaware, Illinois, Iowa, and several other States.

Section 8 provides for private and class actions, and for payment of attorney's fees and costs, so that the private bar may be brought into the consumer protection field. Ordinarily, the amount involved in a consumer transaction is not sufficient to interest a private practitioner, with the result that thousands of consumers suffer small losses, without remedy or relief being available. This section incorporates language and ideas suggested by David A. Rice, Assistant Professor of Law, Boston University, in an article entitled "Consumer Transaction Problems" (*Boston Univ. Law Review*, Fall 1968, p. 560).

Section 9 limiting the holder-in-due-course doctrine in the case of consumer paper is proposed on the basis of information and experience as reflected in *F.T.C. Economic Report on Installment Credit and Retail Sales Practices of District of Columbia Retailers* (March 1968), the *F.T.C. Report on District of Columbia Consumer Protection Program* (June 1968), and the *Record of F.T.C. National Consumer Protection Hearing* (November-December 1968). It is important and desirable to provide for the negotiability of commercial paper to the fullest extent practicable. But very often the finance company which purchases consumer paper knows, or should reasonably have known, of the existing defenses, such as non-performance of the seller or defect in the merchandise, and it places an unreasonable burden on the consumer to prove that the finance company had knowledge. It is suggested the consumer should be given the benefit of the doubt in such cases, by enabling him to assert all defenses against the finance company that he could have asserted against the original vendor or lessor of the goods or services.

This provision will help eliminate consumer deception, and the hardships which consumers suffer as a result of high-pressure selling methods. A main feature of the proposal is the built-in self-regulatory process by which finance companies will be encouraged to investigate more carefully the business practices of retailers with whom they deal. It should eliminate sources of financing which enable spurious operators to take advantage of aged, low-income and other unsuspecting consumers.

In selecting the language of Section 9, consideration was given "Alternative A" and "Alternative B" in Section 2.404 of the *Uniform Consumer Credit Code* promulgated in August 1968 by the National Conference of Commissioners on Uniform State Laws.[1]

[1] These provisions are found on pp. 74-75 of the *Uniform Consumer Credit Code*, 1969 Revised Final Draft.

Alternative A is considered less acceptable than the language of Section 9 recommended herein because Alternative A provides that rights of the buyer or lessee (the consumer) can only be asserted as a matter of defense to or set-off against a claim by the assignee (holder of the paper). Thus, unless the consumer is sued by the holder, he has no rights against the holder. This would allow continuation of threats to, and impairment of, a consumer's credit rating which result from harassing collection tactics sometimes used without any actual litigation being undertaken against the consumer. Alternative B which requires 90 days' notice to the holder by a debtor to preserve defenses is considered less acceptable, because it is unrealistic to expect low-income consumers or others not versed in the law to be apprised of their rights under the law and to defend themselves against the holder-in-due-course doctrine. Section 9 accordingly combines desirable features of Alternative A of the *Uniform Consumer Credit Code*, with the existing laws of Vermont and Massachusetts which abolish the holder-in-due-course doctrine for consumer paper (Section 2455 of the *Vermont Consumer Fraud Act*, approved April 17, 1967; and Section 12C, Chapter 255, *General Laws of Massachusetts*, approved May 31, 1961).

Section 10, providing for Assurances of Voluntary Compliance, is not changed from the 1967 version.

Sections 11 through 14 provide authority for the attorney general to require the filing of reports, to issue subpoenas, to interrogate persons under oath, to examine merchandise and to obtain relevant documentary material, in investigations to determine whether violation of the statute has occurred, similar to authority contained in the Consumer Protection Laws of Arizona, Delaware, Illinois, Iowa, and other States. Woven into these sections are pertinent provisions adapted from the Federal law applicable to issuance of civil investigative demands, similar to the 1967 draft.

Under Section 15, civil penalties of up to $2,000 per violation may be assessed by the court for initial violations of the Act when the violator acted willfully, that is, when he knew or should have known that his conduct violated the Act.

For violation of an injunction issued under the Act, civil penalties of up to $25,000 are provided, along with revocation of corporate charter, as in the 1967 draft.

Section 17 is new and authorizes participation in enforcement actions by County and City attorneys within the State, subject to approval of the attorney general. This is intended to promote the development of coordinated enforcement action at State, County and City level.

Additional information regarding this proposal, examples of existing consumer protection laws in the several States, and drafting assistance, may be obtained from: Assistant General Counsel for Federal-State Cooperation, Federal Trade Commission, Washington, D. C. 20580.

*Suggested Legislation*

(Title, enacting clause, etc.)

Section 1. Definitions

As used in this Act,

(1) "Person" means natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity.

(2) "Trade" and "commerce" mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this State.

(3) "Documentary material" means the original or a copy of any book, record, report, memorandum, paper, communication, tabulation, map, chart, photograph, mechanical transcription, or other tangible document or recording, wherever situate.

(4) "Examination" of documentary material shall include the inspection, study, or copying of any such material, and the taking of testimony under oath or acknowledgement in respect of any such documentary material or copy thereof.

Section 2. Unlawful acts or practices

**Alternative Form No. 1:**

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

**Alternative Form No. 2:**

False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

**Alternative Form No. 3:**

The following unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful:

(1) passing off goods or services as those of another;

(2) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) causing likelihood of confusion or of misundertanding as to affiliation, connection, or association with, or certification by, another;

(4) using deceptive representations or designations of geographic origin in connection with goods or services;

(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

(6) representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(8) disparaging the goods, services, or business of another by false or misleading representation of fact;

(9) advertising goods or services with intent not to sell them as advertised;

(10) advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(11) making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(12) engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding; or

(13) engaging in any act or practice which is unfair or deceptive to the consumer.

Section 3. Interpretation

(a) It is the intent of the legislature that in construing Section 2 of this Act due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) (1) of the Federal Trade Commission Act (15 U.S.C. 45 (a) (1)), as from time to time amended; and

(b) The attorney general may make rules and regulations interpreting the provisions of Section 2 of this Act. Such rules and regulations shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the federal courts in interpreting the provisions of Section 5(a) (1) of the Federal Trade Commission Act (15 U.S.C., 45(a) (1)), as from time to time amended.

Section 4. Exemptions

Nothing in this Act shall apply to:

(1) Actions or transactions permitted under laws administered by the state public service commission or other regulatory body or officer acting under statutory authority of this State or the United States (or the state fair trade law).

(2) Acts done by the publisher, owner, agent, or employee of a newspaper, periodical or radio or television station in the publication or dissemination of an advertisement, when the owner, agent or employee did not have knowledge of the false, misleading or deceptive character of the advertisement, did not prepare the advertisement, and did not have a direct financial interest in the sale or distribution of the advertised product or service.

Section 5. Restraining prohibited acts

Whenever the attorney general has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by Section 2 of this Act to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the State against such person to restrain by temporary or permanent injunction the use of such method, act or practice, upon the giving of appropriate notice to that person. The notice must state generally the relief sought and be served in accordance with Section 13 of this Act and at least three (3) days before the hearing of the action. The action may be brought in the (trial court of general jurisdiction of the county or judicial district) in which such person resides or has his principal place of business, or, with consent of the parties, may be brought in the (trial court of general jurisdiction of the county or judicial district) in which the State Capitol is located. The said courts are authorized to issue temporary or permanent injunctions to restrain and prevent violations of this Act, and such injunctions shall be issued without bond.

Section 6. Additional public relief

The court may make such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any practice in this Act declared to be unlawful, including the appointment of a receiver or the revocation of a license or certificate authorizing that person to engage in business in this state, or both.

Section 7. Powers of receiver

When a receiver is appointed by the court pursuant to this Act, he shall have the power to sue for, collect, receive and take into his possession all the goods and chattels, rights and credits, moneys and effects, lands and tenements, books, records, documents, papers, choses in action, bills, notes and property of every description, derived by means of any practice declared to be illegal and prohibited by this Act, including property with which such property has been mingled if it cannot be identified in kind because of such commingling, and to sell, convey, and assign the same and hold and dispose of the proceeds thereof under the direction of the court. Any person who has suffered damages as a result of the use of employment of any unlawful practices and submits proof to the satisfaction of the

court that he has in fact been damaged, may participate with general creditors in the distribution of the assets to the extent he has sustained out-of-pocket losses. In the case of a partnership or business entity, the receiver shall settle the estate and distribute the assets under the direction of the court. The court shall have jurisdiction of all questions arising in such proceedings and may make such orders and judgments therein as may be required.

Section 8. Private and class actions

(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by Section 2 of this Act, may bring an action under rules of civil procedure in the (trial court of general jurisdiction of the county or judicial district) in which the seller or lessor resides or has his principal place of business or is doing business, to recover actual damages or $200 whichever is greater. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper.

(b) Persons entitled to bring an action under subsection (a) of this Section may, if the unlawful method, act or practice has caused similar injury to numerous other persons similarly situated and if they adequately represent such similarly situated persons, bring an action on behalf of themselves and other similarly injured and situated persons to recover damages as provided for in subsection (a) of this Section. In any action brought under this Section, the court may in its discretion order, in addition to damages, injunctive or other equitable relief.

(c) Upon commencement of any action brought under subsection (a) of this Section the clerk of court shall mail a copy of the complaint or other initial pleading to the attorney general and, upon entry of any judgment or decree in the action, shall mail a copy of such judgment or decree to the attorney general.

(d) In any action brought by a person under this Section, the court may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs.

(e) Any permanent injunction, judgment or order of the court made under Section five of this Act shall be *prima facie* evidence in an action brought under Section eight of this Act that the respondent used or employed a method, act or practice declared unlawful by Section two of this Act.

Section 9. Non-negotiability of consumer paper[1]

(a) If any contract for sale or lease of consumer goods or services on credit entered into between a retail seller and a retail buyer requires or involves the

[1]With reference to this section, State may wish to consider Section 2.404 of the *Uniform Consumer Credit Code*, 1969 Revised Draft, pp. 74-75, which treats this issue in a substantially different manner. See also the discussion in the explanatory statement prefacing this legislation.

execution of a promissory note or instrument or other evidence of indebtedness of the buyer, such note, instrument or evidence of indebtedness shall have printed on the face thereof the words "consumer paper," and such note, instrument or evidence of indebtedness with the words "consumer paper" printed thereon shall not be a negotiable instrument within the meaning of the Uniform Commercial Code–Commercial Paper.

(b) Notwithstanding the absence of such notice on a note, instrument or evidence of indebtedness arising out of a consumer credit sale or consumer lease as described in this Section, an assignee of the rights of the seller or lessor is subject to all claims and defenses of the buyer or lessee against the seller or lessor arising out of the sale or lease. Any agreement to the contrary shall be of no force or effect in limiting the rights of a consumer under this Section. The assignee's liability under this Section may not exceed the amount owing to the assignee at the time the claim or defense is asserted against the assignee. Failure to imprint the words "consumer paper" on such note, instrument or evidence of indebtedness shall subject the seller or other responsible person to appropriate civil and criminal sanctions as provided in this Act.

## Section 10. Assurances of voluntary compliance

In the administration of this Act, the attorney general may accept an assurance of voluntary compliance with respect to any method, act or practice deemed to be violative of the Act from any person who has engaged or was about to engage in such method, act or practice. Any such assurance shall be in writing and be filed with and subject to the approval of (trial court of general jurisdiction of the county or judicial district) in which the alleged violator resides or has his principal place of business, or the (trial court of general jurisdiction of the county or judicial district) in which the State Capitol is located. Such assurance of voluntary compliance shall not be considered an admission of violation for any purpose. Matters thus closed may at any time be reopened by the attorney general for further proceedings in the public interest, pursuant to Section 5.

## Section 11. Investigation

(a) When it appears to the attorney general that a person has engaged in, is engaging in, or is about to engage in any act or practice declared to be unlawful by this Act, or when he believes it to be in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in, is engaging in or is about to engage in, any act or practice declared to be unlawful by this Act, he may execute in writing and cause to be served upon any person who is believed to have information, documentary material or physical evidence relevant to the alleged or suspected violation, an investigative demand requiring such person to furnish, under oath or otherwise, a report in writing setting forth the relevant facts and circumstances of which he has knowledge, or to appear and testify or to

produce relevant documentary material or physical evidence for examination, at such reasonable time and place as may be stated in the investigative demand, concerning the advertisement, sale or offering for sale of any goods or services or the conduct of any trade or commerce that is the subject matter of the investigation.

(b) At any time before the return date specified in an investigative demand, or within twenty days after the demand has been served, whichever period is shorter, a petition to extend the return date, or to modify or set aside the demand, stating good cause, may be filed in the (trial court of general jurisdiction of the county of judicial district) where the person served with the demand resides or has his principal place of business or in the (trial court of general jurisdiction of the county or judicial district) where the State Capitol is located.

Section 12. Subpoenas, hearings, rules and regulations

To accomplish the objectives and to carry out the duties prescribed by this Act, the attorney general, in addition to other powers conferred upon him by this Act, may issue subpoenas to any person, administer an oath or affirmation to any person, conduct hearings in aid of any investigation or inquiry, prescribe such forms and promulgate such rules and regulations as may be necessary, which rules and regulations shall have the force of law; provided that none of the powers conferred by this Act shall be used for the purpose of compelling any natural person to furnish testimony or evidence which might tend to incriminate him or subject him to a penalty or forfeiture; and provided further that information obtained pursuant to the powers conferred by this Act shall not be made public or disclosed by the attorney general or his employees beyond the extent necessary for law enforcement purposes in the public interest.

Section 13. Service of notice, demand or subpoena

Service of any notice, demand or subpoena under this Act shall be made personally within this State, but if such cannot be obtained, substituted service therefor may be made in the following manner:

(1) Personal service thereof without this State; or

(2) The mailing thereof by registered or certified mail to the last known place of business, residence or abode within or without this State of such person for whom the same is intended; or

(3) As to any person other than a natural person, in the manner provided in the (rules of civil procedure) as if a (complaint or other pleading which institutes a civil proceeding) had been filed; or

(4) Such service as a (trial court of general jurisdiction of the county or judicial district) may direct in lieu of personal service within this State.

Section 14. Enforcement of investigative demands

If any person fails or refuses to file any statement or report, or obey any subpoena or investigative demand issued by the attorney general, the attorney general may, after notice, apply to a (trial court of general jurisdiction of the county or judicial district) and, after hearing thereon, request an order:

(1) Granting injunctive relief to restrain the person from engaging in the advertising or sale of any merchandise or the conduct of any trade or commerce that is involved in the alleged or suspected violation;

(2) Vacating, annulling, or suspending the corporate charter of a corporation created by or under the laws of this State or revoking or suspending the certificate of authority to do business in this State of a foreign corporation or revoking or suspending any other licenses, permits or certificates issued pursuant to law to such person which are used to further the allegedly unlawful practice; and

(3) Granting such other relief as may be required, until the person files the statement or report, or obeys the subpoena or investigative demand.

Any disobedience of any final order entered under this Section by any court shall be punished as a contempt thereof.

Section 15. Civil and criminal penalties

(a) Any person who violates the terms of an injunction issued under Section 5 of this Act shall forfeit and pay to the State a civil penalty of not more than twenty-five thousand dollars ($25,000.00) per violation. For the purposes of this Section, the (trial court of general jurisdiction of a county or judicial district) issuing an injunction shall retain jurisdiction, and the cause shall be continued, and in such cases the attorney general acting in the name of the State may petition for recovery of civil penalties.

(b) In any action brought under Section 5 of this Act, if the court finds that a person is willfully using or has willfully used a method, act or practice declared unlawful by Section 2 of this Act, the attorney general, upon petition to the court, may recover, on behalf of the State, a civil penalty of not exceeding two thousand dollars ($2,000.00) per violation.

(c) For purposes of this Section, a willful violation occurs when the party committing the violation knew or should have known that his conduct was a violation of Section 2 of this Act.

Section 16. Forfeiture of corporate franchise

Upon petition by the attorney general, the (trial court of general jurisdiction of a county or judicial district) may, in its discretion, order the dissolution or suspension or forfeiture of franchise of any corporation which violates the terms of any injunction issued under Section 5 of this Act.

Section 17. Duties of County and City attorneys

It shall be the duty of the County and City attorneys to lend to the attorney general such assistance as the attorney general may request in the commencement and prosecution of actions pursuant to this Act, or, the County or City attorney with prior approval of the attorney general may institute and prosecute actions hereunder in the same manner as provided for the attorney general; provided that if an action is prosecuted by a County or City attorney alone, he shall make a full report thereon to the attorney general, including the final disposition of the matter.

413,087

# UNIFORM CONSUMER SALES PRACTICES ACT

*Drafted by the*

NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM STATE LAWS

*and by it*

APPROVED AND RECOMMENDED FOR ENACTMENT IN ALL THE STATES

*at its*

ANNUAL CONFERENCE
MEETING IN ITS EIGHTIETH YEAR
AT VAIL, COLORADO
AUGUST 21-28, 1971

WITH
PREFATORY NOTE AND COMMENTS

APPROVED BY THE AMERICAN BAR ASSOCIATION AT ITS MEETING AT NEW ORLEANS, LOUISIANA, FEBRUARY 7, 1972