# Exhibit 106

# REVISED UNIFORM DECEPTIVE TRADE PRACTICES ACT

Drafted by the

NATIONAL CONFERENCE OF COMMISSIONERS
ON UNIFORM STATE LAWS

and by it

APPROVED AND RECOMMENDED FOR ENACTMENT
IN ALL THE STATES

at its

ANNUAL CONFERENCE
MEETING IN ITS SEVENTY-FIFTH YEAR
MONTREAL, CANADA
JULY 30 – AUGUST 5, 1966

*WITH PREFATORY NOTE AND COMMENTS*

Approved by the American Bar Association at its Meeting in
Montreal, Canada, August 9, 1966

# REVISED UNIFORM DECEPTIVE TRADE PRACTICES ACT

**The Committee which acted for the National Conference of Commissioners on Uniform State Laws in preparing the Revised Uniform Deceptive Trade Practices Act was as follows:**

G. M. FULLER, 2500 First National Bank Bldg., Oklahoma City, Oklahoma, *Chairman*
THOMAS D. GRAHAM, 235 East High St., Jefferson City, Mo.
CHARLES S. HANSON, Supreme Court, Pierre, So. Dak.
JOHN W. WADE, Vanderbilt University School of Law, Nashville, Tenn.
ROBERT BRAUCHER, Langdell Hall, Harvard Law School, Cambridge, Mass., *Chairman, Section A, Ex-Officio*

RICHARD F. DOLE, JR., University of Iowa Law School, Iowa City, Iowa, *Draftsman*

Copies of all Uniform and Model Acts and other printed matter issued by the Conference may be obtained from

NATIONAL CONFERENCE OF COMMISSIONERS
ON UNIFORM STATE LAWS
1155 East Sixtieth Street
Chicago, Illinois 60637

# UNIFORM DECEPTIVE TRADE PRACTICES ACT

## PREFATORY NOTE

**Reasons for Proposed Uniform Act**

Deceptive conduct constituting unreasonable interference with another's promotion and conduct of business is part of a heterogeneous collection of legal wrongs knows as "unfair trade practices." This type of conduct is notoriously undefined. Commonly referred to as "unfair competition," its metes and bounds have not been charted. The tort action for deceptive trade practices or "passing off" developed from the common-law action for trademark infringement. It embraced imitation of fanciful and coined marks and names as well as those which had developed trade significance but did not qualify technically as trademarks. The action was historically available whenever one trader diverted patronage from a rival by falsely representing that his goods were the goods of his rival. This common-law notion of passing off reached its highest development in the federal courts.

The gradual expansion of passing off by the federal courts came to an abrupt halt in 1938 with *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). By the stroke of a pen the "liberal" federal diversity cases were deprived of binding effect in the very courts which had decided them. Federal judges were thereafter required to apply state law whenever they obtained jurisdiction of an unfair competition claim. The rub was that state law had marked time during the period that federal law was evolving. It varied from state to state and within the confines of a single federal circuit. Judge Medina has referred to distillation of the appropriate state law as an area "where angels fear to tread." He concluded: "Since most cases involve interstate transactions, perhaps some day the much needed federal statute or uniform laws on unfair competition will be passed." *American Safety Table Co. v. Schreiber*, 269 F.2d 255, 271 (2d Cir. 1959).

In 1958 the Section of Patents, Trademark and Copyright Law of the American Bar Association passed a resolution which stated that "there should be uniformity in the law of unfair competition among the respective states." The National Conference of Commissioners on Uniform State Laws began drafting the present proposed Uniform Act as a result of this resolution. At the same time, the Association of the Bar of the City of New York working with Congressman (now Mayor) Lindsey proposed federal legislation and this Bill has been introduced in the Congress several times but it has not been enacted. The Uniform Deceptive Trade Practices Act, on the other hand, promulgated by the National Conference in 1964 and approved by the American Bar Association in the same year, has been enacted

by Connecticut, Delaware, Idaho, Illinois, and Oklahoma. As Judge Medina has indicated, since most cases involved interstate transactions, the need for uniformity is great. Since the provisions of the Lindsey Bill and of the Uniform Act are sufficiently similar, the main question is the route by which uniformity is obtained – voluntary adoption by the state legislatures or by a federal act imposing a particular rule on the states. Although Congress has not responded to the request for federal uniformity, several state legislatures have enacted the Uniform Act and others are actively considering it.

**What the Proposed Act Does**

The Uniform Act is designed to bring state law up to date by removing undue restrictions on the common law action for deceptive trade practices. Certain objectionable practices are singled out, but the courts are left free to fix the proper ambit of the act in case by case adjudication.

The Uniform Act provides a private conjunctive remedy to persons likely to suffer pecuniary harm for conduct involving either misleading identification of business or goods or false or deceptive advertising. The amendment introduced by the National Conference in 1966 and approved by the American Bar Association authorizes the court to award reasonable attorney's fees to the plaintiff if the person charged with a deceptive trade practice has willfully engaged in the practice knowing it to be deceptive. By the same token, it awards reasonable attorney's fees to the defendant in an action if the party complaining of a deceptive trade practice brings his action knowing it to be groundless.

The deceptive trade practices singled out by the Uniform Act can be roughly subdivided into conduct involving either misleading trade identification or false or deceptive advertising. The principal state laws relating to trade identification are trademark registration statutes which supplement the common-law protection of registered marks through provisions for additional private remedies and procedural advantages. E.g., N.Y. Gen. Bus. Law art. 24 (Supp. 1963); see Note, "Statutory Treatment of the Model State Trademark Bill," 27 Geo. Wash. L. Rev. 353, 354-56 (1959). On the other hand, a businessman was not generally subject to common-law liability to a fellow tradesman for false or deceptive advertising. *Ely-Norris Safe Co. v. Mosler Safe Co.*, 7 F. 2d 603 (2d Cir. 1925), rev'd on other grounds, 273 U.S. 132 (1927). State legislative modification of the common law has been piecemeal and uncoordinated with an emphasis upon public remedies. See Note, "The Regulation of Advertising," 56 Colum. L. Rev. 1019, 1057-58 (1956). Most of the older legislation, characterized by criminal sanctions, has seldom been enforced. See *id.* at 1058-65 (1956). More recently some state attorneys general, e.g., N.J. Stat. Ann. §§ 56:8-1-56:8-12 (Supp. 1963); N.Y. Gen. Bus. Law art. 22-A

(Supp. 1963), and a few state administrative agencies, e.g., Wis. Stat. Ann. § 100.20 (1957) & (Supp. 1963), have been given broader powers to act against deceptive advertising, but there remains ample justification for a private action. See Restatement (Second), Torts § 712 (Tent. Draft No. 8, 1963; ATRR 133:A-3 (1/28/64) (remarks of Professor Glen E. Weston).

Although there are several state statutes which reflect aspects of the Uniform Act, Cal. Civ. Code § 3369 (Supp. 1963) represents a rough prototype. The California statute provides in part:

> 2. Any person performing or proposing to perform an act of unfair competition within this State may be enjoined in any court of competent jurisdiction.
>
> 3. As used in this section, unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, untrue or misleading advertising and any act denounced by Business and Professions Code of Sections 17500 to 17535, inclusive.

The pertinent conduct condemned by the Business and Professions Code includes making statements in connection with the sale of goods or services which are known or should be known to be untrue or misleading, and advertising goods or services without intent to sell them as advertised, Cal. Bus. & Prof. Code § 17500; stating that a person is a producer, manufacturer, processor, wholesaler, or importer, or that he owns or controls a factory or other source of supply of goods when that is not a fact, or otherwise misrepresenting the character, extent, volume, or nature of a business, Cal. Bus. & Prof. Code § 17505 (Supp. 1963); misrepresenting that goods are the product of blind workers, Cal. Bus. & Prof. Code § 17520; advertising second-hand, used, defective, "seconds," blemished, or rejected merchandise without disclosure of the fact, Cal. Bus. & Prof. Code § 17531; marketing unassembled toys without disclosure of the fact, Cal. Bus. & Prof. Code § 17531.1; advertising of federal surplus property without disclosure of the fact, Cal. Bus. & Prof. Code § 17531.5; knowingly advertising coal under other than its true name or description, Cal. Bus. & Prof. Code § 71531; purposefully misrepresenting newspaper or periodical circulation, Cal. Bus. & Prof. Code § 17533; selling surplus federal property if the seller's name has a tendency to lead the purchasing public to believe, contrary to the fact, that the seller has an official relationship with the United States Government, or that all articles sold are of higher quality and lower prices than elsewhere obtainable, Cal. Bus. & Prof. Code § 17533.5; and selling merchandise marked "made in U.S.A." when the merchandise or part thereof has been entirely or substantially manufactured elsewhere, Cal. Bus. & Prof. Code § 17533.7 (Supp. 1963).

The following adjudications under Cal. Civ. Code § 3369 reflect principles crystallized in the Uniform Act: likelihood of confusion is enough, *Metro-Goldwyn-Mayer, Inc. v. Lee*, 212 Cal. App. 2d 23, 27 Cal. Reptr. 833 (1963); accord, *MacSweeney Enterprises v. Tarantino*, 106 Cal. App. 2d 504, 235 P. 2d 266 (1951); actual competition between the parties is not a prerequisite of relief, *Academy of Motion Picture Arts & Sciences v. Benson*, 15 Cal. 2d 685, 104 P. 2d 650 (1940); accord, *Winfield v. Charles*, 77 Cal. App. 2d 64, 175 P. 2d 69 (1946); defendant need not be an intentional wrongdoer, *Visser v. Macres*, 214 Cal. App. 2d 249, 29 Cal. Reptr. 367 (1963); accord, *Hair v. McGuire*, 188 Cal. App. 2d 348, 10 Cal. Reptr. 414 (1961); the statute provides solely for injunctive relief although damages may also be awarded when otherwise permitted by law, see, e.g., *Hesse v. Grossman*, 152 Cal. App. 2d 536, 313 P. 2d 625 (1957); the statute does not contain a restrictive or exclusive definition of unfair competition, *Athens Lodge No. 70 v. Wilson*, 117 Cal. App. 2d 322, 255 P. 2d 482 (1953), what constitutes an unfair or fraudulent business practice under its terms is a question of fact with the essential test being likelihood of public deception, *People v. National Research Co.*, 201 Cal. App. 2d 765, 20 Cal. Reptr. 516 (1962).

The following conduct made actionable by the Uniform Act has been enjoined under Cal. Civ. Code § 3369: likelihood of confusion as to the sponsorship of goods, *MacSweeney Enterprises, Inc. v. Tarantino*, 106 Cal. App. 2d 504, 235 P. 2d 266 (1951); likelihood of confusion of goods caused by misleading trademarks, *Don Alvarado Co. v. Porganan*, 203 Cal. App. 2d 377, 21 Cal. Reptr. 495 (1962), product simulation, *Hesse v. Grossman*, 152 Cal. App. 2d 536, 313 P. 2d 625 (1957), deceptive packaging, *Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.*, 283 F. 2d 551 (9th Cir. 1960); or misleading advertising, *Metro-Goldwyn-Mayer, Inc. v. Lee*, 212 Cal. App. 2d 23, 27 Cal. Reptr. 833 (1963); likelihood of confusion of businesses, *Visser v. Macres*, 214 Cal. App. 2d 249, 27 Cal. Reptr. 367 (1963); accord, *Karsh v. Haiden*, 120 Cal. App. 2d 75, 260 P. 2d 633 (1953); and false or deceptive advertising injurious to the plaintiff, *Wood v. Peffer*, 55 Cal. App. 2d 116, 130 P. 2d 220 (1942); accord, *Ojala v. Bohlin*, 178 Cal. App. 2d 292, 2 Cal. Reptr. 919 (1960). But see *Show Management v. Hearst Pub. Co.*, 196 Cal. App. 2d 606, 16 Cal. Reptr. 731 (1961) (refusing damages). The broad dictum of the Show Management case is criticized in Note, 9 U.C.L.A. L. Rev. 719, 723-31 (1962).

**What State Laws Should Be Repealed**

Appended as a comment to section 8 is a state by state analysis of existing state legislation which should be repealed if the Uniform Act is adopted. It is evident that the list is a short one because the Uniform Act fills a void in most state

legislative schemes by providing a substantive private action for misleading trade identification and false or deceptive advertising.

It might be useful to compare the Uniform Act with existing state legislation of various common types to indicate the types which will not be significantly affected by passage of the Uniform Act; namely, fair trade acts, unfair practice acts, price discrimination acts, weights, measures, and labeling acts, food, drug and cosmetic acts, insecticides, fungicide and rodenticide acts, trademark registration statutes and false advertising acts.

Many states have "fair trade acts" which authorize sellers of trademarked merchandise to make contracts fixing the price at which wholesalers and retailers can resell the merchandise. Selling below the prices set by a fair trade contract is usually declared to be unfair competition actionable at the suit of the seller or distributor who required execution of the contacts. E.g., *General Electric Co. v. Telco Supply Co.*, 84 Ariz. 132, 325 P. 2d 394 (1958); see generally Oppenheim, Unfair Trade Practices 405-06 (2d ed. 1965). The Uniform Act deals with misleading identification of businesses and goods and false and deceptive advertising. It has nothing whatsoever to do with the legality of resale price maintenance. Consequently, "fair trade" legislation does not remove a need for the Uniform Act and enactment of the Uniform Act will not require repeal of existing "fair trade" acts.

Many states have "unfair practices acts" or "unfair sales acts" which prohibit certain sales below cost. Violation of these statutes is often made both a crime and actionalbe at the suit of a competitor. E.g., *Moore v. Northern Kentucky Independent Food Dealers Assn.*, 149 S.W. 2d 755 (1941); see generally Oppenheim, Unfair Trade Practices 444-45 (2d ed. 1965). The Uniform Act deals with misleading identification of business and goods and false and deceptive advertising. It has nothing whatsoever to do with the legality of sales below cost. Consequently, "unfair practices acts" and "unfair sales acts" do not remove a need for the Uniform Act and enactment of the Uniform Act will not require repeal of "unfair practices acts" and "unfair sales acts" dealing with sales below cost.

Many states have "unfair discrimination acts" or "anti-price discrimination acts" which typically prohibit sellers from selling the same goods at different prices in different areas of the state in order to injure competition or to promote a monopoly. Violation of these statutes is often made both a crime and actionable at the suit of a competitor. E.g., *Central Lumber Co. v. State*, 226 U.S. 157 (1912) (South Dakota statute). The Uniform Act deals with misleading identification of businesses and goods and false and deceptive advertising. It has nothing whatsoever to do with the legality of price discrimination. Consequently, "unfair discrimination acts" and "anti-price discrimination acts" do not remove a need for

the Uniform Act and enactment of the Uniform Act will not require repeal of "unfair discrimination acts" or "anti-discrimination acts."

Most states have "weights, measures, and labeling acts"; "food, drug, and cosmetic acts"; and "insecticide, fungicide, and rodenticide acts" which are enforced by a state administrative agency. These statutes perform similar functions. "Weights, measures, and labeling acts" set general standards for the packaging and labeling of packaged articles whereas "food, drug, and cosmetic acts," and "insecticide, fungicide, and rodenticide acts" generally require higher standards for the packaging and labeling of the limited types of products within their purview. These statutes may also set standards for advertising. E.g., Del. Code. Ann. tit. 6, § 5125 (Supp. 1964) (Delaware weights and measures statutes prohibit price misrepresentation); N.M. Stat. Ann. 54-1-3, (e) (1963) (ban on false or misleading advertising of "herbicides"). The Uniform Act's ban on misleading identification of businesses and goods and false and deceptive advertising may overlap the false advertising jurisdiction of state agencies charged with administration of "weights, measures, and labeling acts"; "food, drug and cosmetic acts," "insecticide, fungicide, and rodenticide acts," as well as other state statutes which confer limited false advertising jurisdiction on a state administrative agency. E.g., Ala. Code. tit. 28 §§ 90(1) – 90(14) (1958) (insurance commissioner given jurisdiction over methods of competition and unfair or deceptive acts or practices in the insurance business). However, any overlap that exists will not require amendment of the Uniform Act or repeal of the state statutes conferring limited false advertising jurisdiction on an administrative agency. Subsection 3(c) of the Uniform Act declares that "the relief provided in this section is in addition to remedies otherwise available against the same conduct under . . . other statutes of this state." This provision makes clear that the private remedy afforded by the Uniform Act supplements and does not supplant existing state administrative regulation of false advertising. Furthermore, subsection 4(a)(1) provides that "this Act does not apply . . . conduct in compliance with the orders or rules of, or a statute administered by, . . . a state, or local governmental agency." Subsection 4(a)(1) precludes conflict between state administration regulation of false advertising and the Uniform Act by removing from the ambit of the Uniform Act advertising required or approved by a state administrative agency.

Most states have trademark registration statutes which supplement commonlaw protection of trade symbols through provisions for additional private remedies and procedural advantages. E.g., N.Y. Gen. Bus. Law. art. 24; see Note, "Statutory Treatment of the Model State Trademark Bill," 27 Geo. Wash. L. Rev. 353, 354-56 (1959). The Uniform Act, like state trademark registration statutes, supplements common-law protection against use of misleading identification of business and goods. See subsection 2(a)(1), 2(a)(2), and 2(a)(3). Unlike a typical trademark registration statute, however, the Uniform Act modifies the substantive

law applicable to use of misleading trade identification by embracing a likelihood of confusion of sponsorship test for infringement, subsections 2(a)(2) and 2(a)(3), and by explicitly dispensing with proof of actual competition between the parties, section 2(b), and intent to deceive, section 3(a), as fixed prerequisites for injunctive relief. Inasmuch as trademark registration statutes principally afford procedural and remedial advantages with respect to protection of trade identification, whereas the Uniform Act principally provides substantive advantages with respect to protection of trade identification, state trademark registration statutes do not remove a need for the Uniform Act and enactment of the Uniform Act will not require repeal of state trademark registration statutes.

Most states have a general statute forbidding false advertising as well as a number of specific statutes forbidding false advertising of particular products. E.g., Tenn. Code. Ann. § 39-1910 (Supp. 1965) (general false advertising statute); Kan. Gen. Stat. Ann. §§ 8-902, 8-903, 8-908 (false advertising anti-freeze). The older legislation is characterized by criminal sanctions and has seldom been enforced. See Note, "The Regulation of Advertising," 56 Colum. L. Rev. 1019, 1058-65 (1956). More recently some state attorneys general, e.g., N.J. Stat. Ann. §§ 56-8-1 to 56-8-12 (Supp. 1963); N.Y. Gen. Bus. Law Art. 22-A, and a few state administrative agencies, e.g., Wis. Stat. Ann. § 100.20 (1957) & (Supp. 1963) have been given broader powers with respect to false advertising including the ability to obtain an injunction and, though less frequently, the ability to recover a civil penalty. Even the new type of state false advertising statutes do not, however, remove the need for the Uniform Act. The effectiveness of any public remedy for false advertising is necessarily limited by budget and personnel problems. Moreover, false advertising proceedings by state agencies are generally confined to false advertising which significantly affects the public or is outrageously flagrant. Thus, there remains ample justification for a correlative private action by a person likely to suffer pecuniary loss because of garden-variety false or deceptive advertising without widespread public impact. See Wetson, "Deceptive Advertising and the Federal Trade Commission," 24 Fed. B.J. 548, 575 (1964) (recommending enactment of both state public remedies against false advertising and the Uniform Deceptive Trade Practices Act ); Restatement (Second), Torts § 712 (tent. Draft No. 8, 1963) (recognition of a broad private remedy for false advertising). By the same token, enactment of the Uniform Act will not require repeal of existing public remedies against false advertising. Public remedies are necessary to protect the citizenry from false representations where no private suitor is likely to vindicate the public interest. E.g., *People v. National Research Co.*, 201 Cal. App. 2d 765, 20 Cal. Reptr. 516 (Third Dist. 1962). (California attorney general enjoins sale of bogus official letterheads for use in tracing delinquent debtors.)

As indicated, most of the existing state acts need not be repealed because of the language in section 3(c) of the Uniform Act that "the relief provided . . . is in addition to the remedies otherwise available against the same conduct under . . . other statutes of this state."

# UNIFORM DECEPTIVE TRADE PRACTICES ACT

**SECTION 1. [*Definitions.*]** As used in this Act, unless the context otherwise requires:

(1) "article" means a product as distinguished from its trademark, label, or distinctive dress in packaging;

**Comment**

This is substantially the definition utilized by the Supreme Court in *Sears, Roebuck & Co. v. Stiffel Co.*, 32 U.S.L. Week 4206 (1964) in defining the scope of state ability to enjoin the copying of articles. See subsection 2(a) for use of the defined term.

(2) "certification mark" means a mark used in connection with the goods or services of a person other than the certifier to indicate geographic origin, material, mode of manufacture, quality, accuracy, or other characteristics of the goods or services or to indicate that the work or labor on the goods or services was performed by members of a union or other organization;

**Comment**

A certification mark indicates that goods or services meet the standards or specifications of the certifier. See Restatement (Second), Torts § 715B, comment (Tent. Draft No. 8, 1963). Examples are the Good Housekeeping Seal of Approval and the seal of Underwriters' Laboratories. The definition is substantially the equivalent of the definition of "certification mark" in the Lanham Trademark Act, § 45, 60 Stat. 443 (1946), 15 U.S.C. § 1127 (1958). See subsection 4(b) for use of the defined term.

(3) "collective mark" means a mark used by members of a cooperative, association, or other collective group or organization to identify goods or services and distinguish them from those of others, or to indicate membership in the collective group or organization;

**Comment**

"Collective mark" refers both to a trade or service mark used by members of an organized group to identify goods or services with the organization rather than with individual vendors and to emblems used simply to indicate membership in an organized group. See Restatement (Second), Torts § 715A, comment (Tent. Draft No. 8, 1963). Examples are the "Quality Court" mark used by a group of independent motels, e.g., *Lyon v. Quality Courts United*, 249 F.2d 790 (6th Cir. 1957), and American Automobile Association decalcomania. The definition is substantially the same as the definition of "collective mark" in the Lanham Trademark Act. § 45, 60 Stat. 443 (1946), 15 U.S.C. § 1127 (1958). See subsection 4(b) for use of the defined term.

(4) "mark" means a word, name, symbol, device, or any combination of the foregoing in any form or arrangement;

(5) "person" means an individual, corporation, government, or governmental subdivision or agency, business trust, estate, trust, partnership, unincorporated association, two or more of any of the foregoing having a joint or common interest, or any other legal or commercial entity;

**Comment**

This definition is substantially the same as the definition of "person" in Uniform Commercial Code § 1-201(28) and (30) (1962 official text with comments).

(6) "service mark" means a mark used by a person to identify services and to distinguish them from the services of others;

(7) "trademark" means a mark used by a person to identify goods and to distinguish them from the goods of others;

**Comment**

The definitions of trademark and service mark parallel those of the Lanham Trademark Act and several state statutes. § 45, 60 Stat. 443 (1946), 15 U.S.C. § 1127 (1958), as amended, 15 U.S.C. § 1127 (Supp. IV, 1963); e.g., Ill. Ann. Stat. ch. 140, § 8(a) (Supp. 1963); N.Y. Gen. Bus. Law § 360(a) & (a-i) (Supp. 1963). See subsection 4(b) for use of the defined terms.

(8) "trade name" means a word, name, symbol, device, or any combination of the foregoing in any form or arrangement used by a person to identify his business, vocation, or occupation and distinguish it from the business, vocation, or occupation of others.

**Comment**

The definition is substantially the same as the definition of trade name in the Lanham Trademark Act and several state statutes. § 45, 60 Stat. 443 (1946), 15 U.S.C. § 1127 (1958); e.g., Ill. Ann. Stat. ch. 140 § 8(f) (Supp. 1963); N.Y. Gen. Bus. Law. § 360 (a-iii) (Supp. 1963). See subsection 4(b) for use of defined terms.

**SECTION 2. [*Deceptive Trade Practices.*]**

(a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he:

(1) passes off goods or services as those of another;

**Comment**

Passing off has been said to be "a convenient name for the doctrine that no one should be allowed to sell his goods as those of another." *Vogue Co. v. Thompson-Hudson Co.*, 300 Fed. 509, 512 (6th Cir. 1924). Passing off originally denominated unauthorized use of trade identification but today the term is also applied to covert substitution of a different brand of goods for the one requested by a customer. E.g., *Coca-Cola Co. v. Foods, Inc.*, F. Supp. 101 (D.S.D. 1963).

(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

**Comment**

The "likelihood of confusion" test is referred to in the Restatement (Second), Torts § 729, comment *a* (Tent. Draft No. 8, 1963) as "a phrase which has long been used in statutes, Federal and State, and in court opinions. . . ." In encompassing probable confusion as to commercial source, approval, endorsement, or certification of goods or services caused by trademarks, service marks, certification marks, or collective marks likely to be associated with preexisting trade symbols, this subsection reflects the trand of authority. E.g., *Triangle Pub., Inc. v. Rohrlich*, 167 F.2d 969 (2d Cir. 1948); *L. E. Waterman Co. v. Gordon*, 72

F.2d 272 (2d Cir. 1934); *James Burrough, Ltd. v. Ferrara*, 8 Misc. 2d 819, 169 N.Y.S.2d 93 (Sup.Ct. N.Y. County 1957). See Restatement (Second), Torts § 717 & comments (Tent. Draft No. 8, 1963); Comment, "The Anti-Competitive Aspects of Trade Name Protection and the Policy Against Consumer Deception," 29 U.Chi.L.Rev. 371, 373-75 (1962).

(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

**Comment**

This subsection concerns likelihood of confusion caused by misleading trade names, e.g., *Viser v. Macres*, 214 Cal. App. 2d 249, 29 Cal. Reptr. 367 (1963) (defendant opened up a competing florist shop with the same name as plaintiff's at plaintiff's former location after the latter had moved across the street).

(4) uses deceptive representations or designations of geographic origin in connection with goods or services;

**Comment**

This subsection applies to deceptively misdescriptive representations and designations of geographic origin. If geographic terms or symbols are used in a nongeographic sense and are unlikely to be considered descriptive, e.g., "Everest" as a trademark for wrist watches, the subsection is inapplicable. Section 43(a) of the Lanham Trademark Act contains an analogous provision. § 43(a) 60 Stat. 441 (1946), 15 U.S.C. § 1125(a) (1958); *Federal-Mogul-Bower Bearings, Inc. v. Azoff*, 201 F. Supp. 788 (N.D. Ohio 1962), rev'd on other grounds, 313 F.2d 405 (6th Cir. 1963).

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

**Comment**

This subsection deals with false advertising of goods, services or businesses. It includes false representations that a person is the representative, successor, associate, or affiliate of another, e.g., *Alaska Sales and Service, Inc. v.*

*Rutledge*, 128 F. Supp. 1 (D. Alaska 1955) (false representation of automobile dealership franchise), false representations that goods or services were designed, approved, or sponsored by another, e.g., *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641 (3d Cir. 1958) (false representation of trademark license), and false representations concerning goods of which another is truthfully represented as the commercial source, e.g., false representations by a retailer concerning "Arrow" shirts. See Restatement (Second), Torts § 712, comment *d* (Tent. Draft No. 8, 1963). Section 43(a) of the Lanham Act, § 43(a), 60 Stat. 441 (1946), 15 U.S.C. § 1125(a) (1958), and Idaho Code Ann. § 48-412 (Supp. 1963) authorize similar private actions.

(6) represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or second-hand;

**Comment**

The conduct referred to in this subsection has been condemned both at common law, e.g., *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125 (1947) (alternative holding) (requiring disclosure that spark plugs were repaired); see Restatement (Second), Torts § 714 (Tent. Draft No. 8, 1963), and by a few statutes, e.g., Cal. Bus. & Prof. Code § 17531.

(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

**Comment**

The conduct referred to in this subsection has been condemned both at common law, e.g., *Burlington Mills Corp. v. Roy Fabrics, Inc.*, 91 F. Supp. 39 (S.D.N.Y.), aff'd per curiam, 182 F.2d 1020 (2d Cir. 1950) (semble) (forbidding sale of second grade materials as first grade); see Restatement (Second), Torts § 714 (Tent. Draft No. 8, 1963); and by a few statutes, e.g., Idaho Code Ann. § 48-412 (Supp. 1963).

(8) disparages the goods, services, or business of another by false or misleading representation of fact;

**Comment**

This subsection reflects the trend of authority allowing businessmen to enjoin disparagement by competitors, e.g., *Maytag Co. v. Meadows Mfg. Co.*, 35 F.2d 403 (7th Cir. 1929), cert. den., 281 U.S. 737 (1930) (bad faith assertions of patent infringement); accord, *Roger v. Stoody Co.*, 192 F.Supp. 949 (W.D. Okla. 1961) (false assertion of product inferiority stated cause of action); *H. E. Allen Mfg. Co. v. Smith*, 224 App. Div. 187, 229 N.Y. Supp. 692 (4th Dep't 1928) (false claims of product inferiority), and noncompetitors, e.g., *Carter v. Knapp Motor Co.*, 243 Ala. 600, 11 So. 2d 383 (1943) (dissatisfied customer enjoined from attempting to coerce auto dealer into giving him another automobile by driving vehicle with white elephant painted on it); accord *Menard v. Houle*, 298 Mass. 546, 11 N.E. 2d 436 (1937) (dissatisfied customer enjoined from continuous, malicious campaign designed to convince public that automobile dealer had sold him a worthless vehicle); *Mayfair Farms, Inc. v. Socony Mobil Oil Co.*, 68 N.J. Super. 188, 172 A.2d 26 (1961) (allegation that Mobile Travel Guide had arbitrarily given plaintiff's establishments unjustified low ratings stated a cause of action for an injunction).

(9) advertises goods or services with intent not to sell them as advertised;

(10) advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

**Comment**

Subsections 2(a)(9) and 2(a)(10) deal with "bait advertising," a practice by which a seller seeks to attract customers through advertising at low prices products which he does not intend to sell in more than nominal amounts. When prospective buyers respond to the advertisement, sale of the "bait" is discouraged through various artifices including disparagement and exhaustion of a minuscule stock in order to induce purchase of unadvertised goods on which there is a greater markup. A bait advertising scheme which involved disparagement has been held enjoinable at common law by the manufacturer of the "bait." *Electrolux Corp. v. Val-Worth, Inc.*, 6 N.Y. 2d 556, 161 N.E. 2d 197, 190 N.Y.S. 2d 977 (1959). A Connecticut statute similarly authorizes private parties to enjoin bait advertising. Conn. Gen. Stat. Ann. § 42-115(a) (Supp. 1962). Odd lot or clearance sales in which bargains are offered in limited quantities will not run afoul of the proposed statute as long as disclosure is made of the limited stock. Cf. *ibid.*

(11) makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; or

**Comment**

This subsection applies to spurious "fire" and "liquidation" sales as well as to fictitious price cuts. Hawaii Rev. Laws §§ 289-14 and 289-15 (1955) and Mich. Stat. Ann. §§ 28.79(7) and (8) (1962) authorize similar private actions.

(12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

**Comment**

This subsection permits the courts to block out new kinds of deceptive trade practices. The broad language of Cal. Civ. Code § 3369 (Supp. 1963) has been interpreted as creating the analogous general standard of "likelihood of public deception." *People v. National Research Co.*, 201 Cal. App. 2d 765, 20 Cal. Reptr. 516 (1962).

(b) In order to prevail in an action under this Act, a complainant need not prove competition between the parties or actual confusion or misunderstanding.

**Comment**

This subsection removes the enumerated factors as absolute bars to relief.

(c) This section does not affect unfair trade practices otherwise actionable at common law or under other statutes of this state.

**Comment**

This subsection is intended to ensure that enactment of the Uniform Deceptive Trade Practices Act will not inhibit future development of the law of unfair trading.

**SECTION 3. [*Remedies.*]**

(a) A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. Proof of monetary damage, loss of profits, or intent to deceive is not required. Relief granted for the copying of an article shall be limited to the prevention of confusion or misunderstanding as to source.

**Comment**

Deceptive commercial conduct is made enjoyable at the suit of any person including a nonprofit organization, e.g., *Mayo Clinic v. Mayo's Drug & Cosmetic, Inc.*, 262 Minn. 101, 113, N.W. 2d 852 (1962) (Mayo Clinic held entitled to enjoin use of similar name by a drug wholesale and packaging operation), provided that there is a reasonable probability that the complainant will otherwise incur actual damage. It is immaterial that the amount of this damage is not provable with certainty or that loss of profits cannot be shown. Similar phraseology determines standing to sue under Section 43(a) of the Lanham Trademark Act, 60 Stat. 441 (1946), 15 U.S.C. § 1125(a) (1958), and some state statutes, e.g., Conn. Gen. Stat. Ann. § 42-115(a) (Supp. 1962) ("any aggrieved party"). A few state statutes treat false or deceptive advertising as a public wrong enjoinable by any private parties who care to bring suit, e.g., Cal. Civ. Code § 3369(5) (Supp. 1963), Hawaii Rev. Laws, § 289-15 (1955).

Among the principles governing the scope of injunctions against misleading trade identification are the privilege of every tradesman to use commercially necessary language in a nondeceptive fashion, *King-Seeley Thermos Co. v. Aladdin Indus., Inc.*, 321 F.2d 557 (2d Cir. 1963), and state disability to enjoin the copying of articles because of the preemptive operation of the Federal patent and copyright laws. *Sears, Roebuck & Co. v. Stiffel Co.*, 32 U.S.L. Week 4206 (1964); *Compco Corp. v. Day Brite Lighting, Inc.*, 32 U.S.L. Week 4208 (1964).

(b) Costs shall be allowed to the prevailing party unless the court otherwise directs. The court [in its discretion] may award attorneys' fees to the prevailing party if (1) the party complaining of a deceptive trade practice has brought an action which he knew to be groundless or (2) the party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive.

**Comment**

Although there is no comparable statutory authorization, federal courts have awarded attorney's fees as an element of cost when deceptive trade practices were

fraudulent or malicious. *See, A. Smith Bowman Distillery, Inc. v. Schenley Distillers, Inc.*, 204 Fed. Supp. 374 (District Delaware, 1962). This section gives discretion to state judges to do likewise in appropriate cases whether the prevailing party is the defendant or the plaintiff. The section directs the court to award attorney's fees to the prevailing party unless the court expressly otherwise directs.

(c) The relief provided in this section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this state.

**Comment**

This subsection preserves a complainant's right to seek damages under the common law or other statutes as well as any available criminal remedies.

**SECTION 4. [*Application.*]**

(a) This Act does not apply to:

(1) conduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency;

(2) publishers, broadcasters, printers, or other persons engaged in the dissemination of information or reproduction of printed or pictorial matters who publish, broadcast, or reproduce material without knowledge of its deceptive character; or

(3) actions or appeals pending on the effective date of this Act.

(b) Subsections 2(a)(2) and 2(a)(3) do not apply to the use of a service mark, trademark, certification mark, collective mark, trade name, or other trade identification that was used and not abandoned before the effective date of this Act, if the use was in good faith and is otherwise lawful except for this Act.

**SECTION 5. [*Uniformity of Interpretation.*]** This Act shall be construed to effectuate its general purpose to make uniform the law of those states which enact it.

**SECTION 6.** **[*Short Title.*]** This Act may be cited as the Uniform Deceptive Trade Practices Act.

**SECTION 7.** **[*Severability.*]** If any provision of this Act or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable.

**SECTION 8.** **[*Repeals.*]** The following acts or parts of acts are repealed:

(1)

(2)

(3)

**Comment**

State statutes that could be repealed in conjunction with enactment of the Uniform Deceptive Trade Practices Act are:

**Alabama** – None
**Alaska** – None
**Arizona** – None
**Arkansas** – None
**California** – Cal. Civil Code § 3369 provides a broad private substantive remedy for "unfair competition" the scope of which is not definitively defined. It is recommended that the Uniform Deceptive Trade Practices Act, which specifically highlights major aspects of actionable unfair competition, be appended to section 3369 as a clarifying amendment.
**Colorado** – None
**Connecticut** – The Act should be amended in Section 3(b) to conform to the 1966 amendment of the Uniform Act.
**Delaware** – The Act should be amended in Section 3(b) to conform to the 1966 amendment of the Uniform Act.
**District of Columbia** – None
**Florida** – None
**Georgia** – Ga. Code Ann. § 106-5 (1963) authorizes a private injunctive remedy for some, but not all, of the conduct condemned by the Uniform Act. It is therefore recommended that present chapter 16-5 be repealed and that the Uniform Act be

enacted in its stead. If this course of action is adopted, present sections 106-501 and 106-503 should be re-enacted in those sections of chapter 106-99 which currently incorporate them by reference.

**Hawaii** – Hawaii Rev. Laws 289-15 (Supp. 1963) authorizes a substantive private action for some, but not all, of the conduct condemned by the Uniform Act. Because section 289-15 differs from the Uniform Act in authorizing a damage recovery as well as injunctive relief it is recommended that the Uniform Act be enacted without repeal of section 289-15.

**Idaho** – The Act should be amended in Section 3(b) to conform to the 1966 amendment of the Uniform Act.

**Illinois** – The Act should be amended in Section 3(b) to conform to the 1966 amendment of the Uniform Act.

**Indiana** – None

**Iowa** – None

**Kansas** – None

**Kentucky** – None

**Louisiana** – None

**Maine** – None

**Maryland** – None

**Massachusetts** – Mass. Gen. Laws Ann. ch. 266, §§ 91, 91B (1964) authorize a private substantive remedy for some, but not all, of the conduct condemned by the Uniform Act. Because section 91 differs from the Uniform Act in requiring intentional or reckless conduct on the part of the defendant for injunctive relief, it is recommended that the Uniform Act be enacted without amendment of section 91. On the other hand, the private remedy afforded by section 91B duplicates subsections 2(a)(9) and 2(a)(10) of the Uniform Act and it is accordingly recommended that "or any aggrieved party" be deleted from § 91B in conjunction with the enactment of the Uniform Act.

**Michigan** – Mich. Comp. Laws §§ 28.79(10) (as amended Supp. 1963) authorize a substantive private remedy for some, but not all, of the conduct condemned by subsections 2(a)(5) and 2(a)(11) of the Uniform Act. However, in view of the additional remedies provided for by §§ 28.79(10), notably rescission by a purchaser and a court order to pay sales tax, it is recommended that the Uniform Act be enacted without repeal.

**Minnesota** – Minn. Stat. Ann. §§ 325.141-325.148 (1964) authorize a substantive private remedy for some, but not all, of the conduct condemned by subsections 2(a)(5); 2(a)(7); and 2(a)(11) of the Uniform Act. However, in view of the fact that § 325.147 authorizes recovery of damages whereas the Uniform Act does not provide for a damage remedy, it is recommended that the Uniform Act be enacted without repeal.

**Mississippi** – None

**Missouri** – None

**Montana** – None

**Nebraska** – None
**Nevada** – None
**New Hampshire** – None
**New Jersey** – None
**New Mexico** – N.M. Stat. Ann. §§ 49-12-1 to 49-12-7 (Supp. 1965) authorizes a substantive private action with respect to some, but not all, of the conduct condemned by the Uniform Act. Because the conduct proscribed by §§ 49-12-1 & 2 is not as clearly defined as the conduct proscribed by section 2(a) of the Uniform Act, and because it is desirable that conduct giving rise to a private remedy be as specifically defined as possible it is recommended that section 49-12-5 be amended by striking "or a private citizen" and the last sentence in conjunction with enactment of the Uniform Act.
**New York** – None
**North Carolina** – None
**North Dakota** – N.D. Cent. Code § 51-12-07 (1960) authorizes a substantive remedy for a portion of the conduct condemned by subsection 2(a)(5) of the Uniform Act. In view of the trivial nature of this aspect of § 51-12-07, it is recommended that the last sentence of that section be repealed in conjunction with enactment of the Uniform Act.
**Ohio** – None
**Oklahoma** – The Act should be amended in section 3(b) to conform to the 1966 amendment of the Uniform Act.
**Oregon** – None
**Pennsylvania** – None
**Rhode Island** – None
**South Carolina** – None
**South Dakota** – None
**Tennessee** – Tenn. Code Ann. §§ 69-601 to 69-607 (Supp. 1965) authorizes a private substantive remedy for a fraction of the conduct condemned by subsection 2(a)(5) of the Uniform Act. Nevertheless, because §§ 69-601 to 69-607 provide remedies not contained in the Uniform Act, notably damages and rescision, it is recommended that the Uniform Act be enacted without repeal of §§ 69-601 to 69-607.
**Texas** – None
**Utah** – None
**Vermont** – None
**Virginia** – None
**Washington** – None
**West Virginia** – None
**Wisconsin** – None
**Wyoming** – None

**SECTION 9.** ***[Time of Taking Effect.]*** This Act takes effect . . . . . . . . . . . . . . . . .