# Exhibit 107

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Minnesota.
In re **LUTHERAN BROTHERHOOD** VARIABLE INSURANCE PRODUCTS CO. SALES PRACTICES LITIGATION
**No. 99-MD-1309(PAM/JGL).**

April 28, 2004.

John W. Borg, pro se.
Katheryn A. Andresen, Patricia A. Bloodgood, Richard A. Lockridge, Robert K. Shelquist, Lockridge Grindal Nauen, Mpls, MN, for Plaintiffs.
James F. Jorden, Jerome V. Bolkcom, Jorden Burt, Washington, DC, Jerry W. Snider, Michael F. Cockson, Edward T. Wahl, Sonya A. Royston, Faegre & Benson, Mpls, MN, for Defendant.
James Brehl, Afton, MN, pro se.

AMENDED MEMORANDUM AND ORDER

MAGNUSON, J.
***1** The Court has received a report and recommendation from the Special Master in this matter. Based on the Special Master's recommendations, the Court sua sponte amends its Order of July 22, 2003 (Clerk Doc. No. 331). The previous Order is stricken and this Amended Order is substituted for that Order.

This matter is before the Court on four separate Motions. Defendant has brought two Motions for Summary Judgment and one Motion to Decertify the Class, and Plaintiffs move to strike all of these Motions.

## BACKGROUND

This multidistrict litigation challenging the sale of "vanishing premium" life insurance policies has been before this Court on several substantive Motions and even more non-dispositive Motions. The facts of the matter have been set forth in the Orders on those Motions. The Court will not plow that ground again here.

## DISCUSSION

### A. Motion to Decertify the Class

Lutheran Brotherhood first asks the Court to decertify the class. According to Lutheran Brotherhood, discovery has established that there are no common questions of fact among the class members. Specifically, Lutheran Brotherhood contends that Plaintiffs cannot prove either a common misrepresentation, common damages, or common causation. Lutheran Brotherhood also argues that there is no common question of law because the Constitution prohibits applying Minnesota's Prevention of Consumer Fraud Act ("CFA"), Minn.Stat. § 325F.69 *et seq.*, to sales that occurred outside Minnesota. Thus, according to Lutheran Brotherhood, the Court must perform a choice-of-law analysis for each non-resident Plaintiff's claim to determine whether the claim may be brought in Minnesota or must be brought under the consumer protection statute of the non-resident's home state. Finally, Lutheran Brotherhood asserts that the class device will deprive Lutheran Brotherhood of its right to a jury trial and right to due process under the Constitution.

#### 1. *Common Questions of Fact*

In making this argument, Lutheran Brotherhood overlooks the alternative nature of the Federal Rule of Civil Procedure 23. Rule 23 provides that a class action may be maintained if there are common questions of fact *or* common questions of law. Fed.R.Civ.P. 23(b)(3). Lutheran Brotherhood reads the "or" out of the Rules and essentially asks the Court to decertify the class if it finds that if there are not common questions of fact, regardless of whether there are common questions of law. Moreover, Lutheran Brotherhood fails to recognize that "[a] finding of commonality does not require that all class members share identical claims." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 310 (3rd Cir.1998). Indeed, "not every question of law or fact must be common to every member of the class." *In re Workers' Compensation*, 130 F.R.D. 99, 104 (D.Minn.1990) (Rosenbaum, J.).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

a. Common Misrepresentation

Lutheran Brotherhood argues that Plaintiffs have failed to show that Lutheran Brotherhood and/or its District Representatives ("DRs"), used a uniform misleading illustration when selling the vanishing premium policies.

***2** The underlying misrepresentation alleged by Plaintiffs is that the obligation to pay premiums would vanish at some point in the future. This misrepresentation is common to all Plaintiffs. The details that each DR provided to each Plaintiff may have been slightly different and the interest rates used to illustrate the vanishing premium scenario may have been slightly different, but these differences do not change the uniform nature of the basic misrepresentation that Plaintiffs allege. For example, simply because one Plaintiff was told that her obligation to pay premiums would cease in seven to ten years and another Plaintiff was told that his obligation would cease in nine to eleven years does not mean that these Plaintiffs were not given the same misrepresentation or were not mislead in the same way.

Thus, even though Lutheran Brotherhood is correct that the exact alleged misrepresentation varies by Plaintiff, Plaintiffs do allege a uniform type of misrepresentation. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F.Supp. 450, 513-14 (D.N.J.1997) (finding common questions of fact because of "common scheme of deception" that was carried out with oral representations that were not identical but were "substantially similar"). It would certainly be the rare case in which a widespread fraud of the sort alleged by Plaintiffs was founded on exactly the same misrepresentation. Moreover, in a case involving life insurance contracts, each misrepresentations would by definition be different because the information given would depend on the potential purchaser's age, health, and the amount of coverage he or she elected. Plaintiffs have succeeded in showing a common misrepresentation sufficient to maintain this action as a class action.

b. Common Damages

Lutheran Brotherhood contends that Plaintiffs cannot prove the fact of damages to each individual class member. This argument ties in to the argument made in support of Lutheran Brotherhood's Motions for Summary Judgment that Plaintiffs are limited to out-of-pocket damages and not benefit-of-the-bargain damages. Putting aside that argument, which is discussed more fully below with respect to the Motions for Summary Judgment, Lutheran Brotherhood's contention in this Motion is two-fold. First, Lutheran Brotherhood asserts that Plaintiffs cannot show that each class member was damaged. Second, Lutheran Brotherhood asserts that Plaintiffs cannot prove any such damage on a class-wide basis.

Lutheran Brotherhood's first contention is simply wrong. Assuming that Plaintiffs can prove the elements of their case, then they clearly have suffered damages. The form of these damages may be the difference between what Plaintiffs thought they were getting and what they actually got, or it may be the amount of money that Plaintiffs paid in premiums after the alleged vanish date. In any case, Plaintiffs can show damages and Lutheran Brotherhood's argument on this point has no merit.

***3** The second part of Lutheran Brotherhood's argument similarly does not mandate decertification. The presence of individual damages will not, by itself, decertify a class. *In re Prudential,* 962 F.Supp. at 517 ("Individual damages do not defeat an otherwise valid certification attempt."). Moreover, although Plaintiffs are responsible for proving the fact of damages, they need not prove the amount of such damages to a mathematical certainty. *Sports Page Inc. v. First Union Mgmt., Inc.,* 438 N.W.2d 428, 433 (Minn.Ct.App.1989); *see also Rochez Bros., Inc. v. Rhoades,* 527 F.2d 891, 895 (3rd Cir.1975). Indeed, in a class action, it is permissible for plaintiffs to prove damages by an expert witness's testimony regarding aggregation of damages, or by testimony regarding an appropriate formula to use to calculate individual damages. *See In re Prudential,* 962 F.Supp. at 517. This is precisely the sort of evidence that Plaintiffs have put forward here. Lutheran Brotherhood's argument on this issue fails.

c. Common Causation

Lutheran Brotherhood insists that Plaintiffs must show that each Plaintiff relied on the alleged misrepresentation to his or her detriment. According to Lutheran Brotherhood, proof of such reliance is unworkable in the class action format. Plaintiffs, under the mantel of *Group Health Plan, Inc. v. Philip Morris Inc.,* 621 N.W.2d 2 (Minn.2001) [hereinafter *Group Health I* ], contend that proof of individualized reliance is not required.

In *Group Health I,* the Minnesota Supreme Court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

relaxed the causation requirements for claims under the CFA. As the court stated, "the legislature clearly intended to make it easier to sue for consumer fraud than it had been to sue for fraud at common law. The legislature's intent is evidenced by the *elimination* of elements of common-law fraud, such as proof of damages or reliance on misrepresentations." Group Health I, 621 N.W.2d at 12 (quoting State by Humphrey v. Alpine Air Prods., Inc., 500 N.W.2d 788, 790 (Minn.1993)). It is also clear, however, that some sort of proof of causation is still required. *Id.* at 13 ("[C]ausation remains an element of such a claim."). The court noted that, where damages are alleged to be caused by misleading conduct or statements, proof of reliance will be required to satisfy the causation element. *Id.* However, in cases involving a large group of consumers or a large-scale fraud, the court held that proof of individual reliance was not required. *Id.* at 14 ("[I]n cases such as this, where the plaintiffs' damages are alleged to be caused by a lengthy course of prohibited conduct that affected a large number of consumers, the showing of reliance that must be made to prove a causal nexus need not include direct evidence of reliance by individual consumers of defendants' products."). The court specifically rejected two cases from this District holding that proof of individual reliance was required. *Id.* (citing Thompson v. Am. Tobacco Co., 189 F.R.D. 544, 553 (D.Minn.1999); Parkhill v. Minn. Mut. Life Ins. Co., 188 F.R.D. 332, 345 (D.Minn.1999)). It bears noting that, like the instant matter, *Parkhill* involved a putative class action challenging vanishing premium life insurance policies.

***4** The court left it up to the trial courts to determine how plaintiffs might prove the required "causal nexus," and offered only general suggestions to guide those courts. The court cited with approval cases under the Lanham Act, 15 U.S.C. § 1125(a), which permit the use of circumstantial evidence such as consumer surveys or, in extreme cases, burden-shifting, to allow plaintiffs to prove causation. *Id.* at 15 n. 11.

Plaintiffs urge the Court to apply a burden-shifting scheme and find that evidence of the deceptive nature of Lutheran Brotherhood's alleged scheme gives rise to a presumption of causation. Although such a presumption is explicitly permitted by the opinion in *Group Health* I, this Court rejected a similar argument in Group Health Plan, Inc. v. Philip Morris Inc., 188 F.Supp.2d 1122 (D.Minn.2002) [hereinafter *Group Health II* ]. Stating that shifting the burden on causation to defendants would amount to a "radical sea change in Minnesota consumer protection law," the Court determined that it would not "elevate the examples in footnote 11 [of *Group Health I* ] to a burden-shifting rule in consumer fraud cases." Group Health II, 188 F.Supp.2d at 1126-27. Similarly, the Court does not believe that the extreme remedy of burden-shifting is appropriate in this case.

Plaintiffs have presented sufficient evidence of both the alleged misrepresentations and their own reliance to establish that genuine issues of fact remain to be resolved as to whether there is a causal nexus between those misrepresentations and Plaintiffs' purchase of vanishing premium policies. There is evidence that Lutheran Brotherhood knew that some of what its members were being told about vanishing premiums was misleading and that members were buying contracts based on the misleading information. Although much of Plaintiffs' evidence is from the 1980s and is thus only tangentially relevant, there are several damning documents from the class period that establish what Lutheran Brotherhood thought about these vanishing premium contracts. For example, a March 1994 memo lists "ten strategies that have caused, are causing and will cause us problems in the future." (Bloodgood Aff. Tab 83 at LBE 1369739.) Number one on this list is "Vanishing Premium." The memo goes on to describe the problems with illustrations used to sell vanishing premium contracts: "client rarely understands" (and "it is often misunderstood in the field") that the illustration is valid only under current dividend scale and that premiums may reappear in the future. (*Id.* at LBE 1369740.)

In February 1996, Lutheran Brotherhood drafted a letter to its field representatives. (*Id.* Tab 84). The draft letter told the representatives that the language used in sales pitches and illustrations "led customers to become confused and angry when premiums don't 'vanish' in the number of years that were originally projected." (*Id.* at LBE 1373574.)

In April 1996, Lutheran Brotherhood's "Underfunded Contract Committee" wrote in a memo that Lutheran Brotherhood "provided to our District Representatives flexible illustrations that allowed the illustration of minimum premium payments. This was accomplished through vanishing premium illustrations.... This illustration capability both encouraged replacements and gave a false sense of certainty to the numbers shown. Many of these illustrations resulted in sales...." (*Id.* Tab 124 at LBE 1010677.) This memo goes on to state that some contracts were sold "improperly without disclosure or

where misleading or incorrect information was provided by the DR." (*Id.* at LBE 1010678.) The Committee recognized that some members "were mislead [sic] and entered into a contract under false pretenses. The contract performance was either intentionally or unintentionally misrepresented and our members are left with unmet expectations." (*Id.* at LBE 1010679.)

***5** Evidence of what the defendant knew or thought about the sales practice involved is evidence that the sales statements were misleading. Further, evidence of what the defendant knew or thought about the effect its sales practices on consumers were having is evidence that the consumers relied on the sales practices. Because this case involves direct sales, there can be no question that simply by virtue of the fact that the allegedly misleading illustrations were sales illustrations, Lutheran Brotherhood intended that potential customers rely on the illustrations. Lutheran Brotherhood cannot formulate illustrations seeking to convince customers to buy products, observe that those illustrations are indeed convincing customers to buy, and then argue that the record contains no evidence of reliance.

Taken in the light most favorable to Plaintiffs, the evidence in this case shows that Lutheran Brotherhood knew that sales illustrations used by DRs were misleading and that these illustrations influenced the customers' decisions to purchase vanishing premium policies. Further, there is no dispute that Plaintiffs can prove that they purchased vanishing premium policies. On summary judgment, Plaintiffs must establish only that genuine issues of fact exist on the elements of their prima facie case. The evidence proffered by Plaintiffs establishes that there is indeed a genuine issue of fact on the elements of Plaintiffs' CFA claim.

2. *Common Questions of Law*

Lutheran Brotherhood couches this argument in terms of a challenge to the constitutionality of the extraterritorial application of the CFA. The Court notified the Minnesota Attorney General of the challenge and the Attorney General submitted an amicus brief on this issue.

Lutheran Brotherhood contends that the Court must perform a choice-of-law analysis for each non-resident Plaintiff to determine whether Minnesota has sufficient interest in the transaction at issue to warrant the application of the CFA, or whether the Court must apply the consumer protection statute of the non-resident's home state. Because the class Complaint does not purport to raise consumer protection statutes generally but rather makes a claim only under the Minnesota CFA, however, the choice-of-law analysis presumes that the Court has sua sponte amended the Complaint to insert claims under other states' consumer protection statutes. The Court is neither inclined nor empowered to do this.

Even assuming that the Court should do a choice-of-law analysis for each class member's claim, Minnesota has the most significant interest in the claims at issue here, requiring the Court to apply Minnesota law to those claims. As the class certification Order noted, Lutheran Brotherhood is organized under the laws of Minnesota and is headquartered in Minnesota, and according to Plaintiffs, much of the conduct occurred in or emanated from Minnesota. *In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.*, 201 F.R.D. 456, 461 n. 1 (D.Minn.2001) (Magnuson, J.). There is no constitutional impediment to applying the Minnesota CFA to the claims of non-resident class members. *See In re St. Jude Med., Inc. Silzone Heart Valves Prods. Liab. Litig.*, No. 01-MDL-1396, 2003 WL 1589527, at *18 n. 22 (D.Minn. Mar.27, 2003) (Tunheim, J.) (holding, in context of class certification motion, that applying CFA to non-resident plaintiffs is not unconstitutional). Thus, the Minnesota CFA may be applied to all class members' claims.

***6** However, the choice-of-law analysis is unnecessary. As the Attorney General argues, the CFA is intended to apply both to the conduct of foreign corporations that injures Minnesota residents and to the conduct of Minnesota companies that injures non-residents. Because Lutheran Brotherhood was a Minnesota company during the relevant time period and because Plaintiffs claim that the genesis of the misrepresentations at issue was Lutheran Brotherhood's home office, Plaintiffs can properly bring a Minnesota CFA claim.

3. *Constitutionality of Class Device*

Lutheran Brotherhood argues that using the class action device in this situation will unconstitutionally deprive Lutheran Brotherhood of its Seventh Amendment right to a jury trial and its Due Process rights, and will deprive absent class members of their Due Process rights. In essence, Lutheran Brotherhood contends that, because Plaintiffs are attempting to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

rely on "class-wide" proof, Lutheran Brotherhood will not have a jury determine each Plaintiff's claim and each Plaintiff's damages individually.

This argument is merely another way to look at Lutheran Brotherhood's challenges to the existence of common questions of fact and law. Rule 23 provides that, if a group of plaintiffs have sufficiently common questions of fact or law among them, then they will be permitted to resolve those claims in a single action. Because the Court has concluded that sufficient common questions exist for this case to proceed as a class action, Lutheran Brotherhood's argument on this point has no merit.

B. Motion for Summary Judgment Against the Class

Several of Lutheran Brotherhood's arguments in this Motion are the same as those made in the decertification Motion. Lutheran Brotherhood contends that summary judgment against the class is appropriate because Plaintiffs cannot prove that each class member received a misrepresentation, that each class member was damaged, or that each class member relied on the alleged misrepresentations. In addition, Lutheran Brotherhood seeks summary judgment on Plaintiffs' claim for punitive damages.

This Order has previously discussed the damage and reliance arguments raised by Lutheran Brotherhood in this Motion. However, the argument in this Motion regarding whether each Plaintiff received a misrepresentation is slightly different than the argument discussed above regarding whether there was a common misrepresentation. The Court will also address Lutheran Brotherhood's argument regarding punitive damages.

1. *Misrepresentations*

Lutheran Brotherhood contends that because Plaintiffs now base their claims on oral misrepresentations, as opposed to some uniform contract language or sales illustration, Plaintiffs must show that each member of the Plaintiff class received such an oral misrepresentation. According to Lutheran Brotherhood, Plaintiffs cannot make this showing and summary judgment is appropriate against every Plaintiff who cannot prove that he or she received a misrepresentation.

***7** This argument is akin to Lutheran Brotherhood's decertification argument that, because each representation is allegedly different, the misrepresentations are incapable of class-wide proof. The Court concluded above that, for class certification purposes, Plaintiffs need only show that the same type of misrepresentation was made, not that the exact same words were used with each Plaintiff. Because the Court determined that class action treatment is appropriate, Lutheran Brotherhood's argument here necessarily fails. As in any class action, Plaintiffs are entitled to proceed by establishing that the class representatives can prove the elements of their cases. In certifying the class, the Court determined that the claims of the class representatives are representative of the claims of every other class member. Thus, Plaintiffs are not required to put forward evidence as to each individual class member and Lutheran Brotherhood's contentions on this point are without merit.

2. *Punitive Damages*

Lutheran Brotherhood makes four different arguments against allowing Plaintiffs to recover punitive damages. It bears noting that Plaintiffs have not yet amended, or sought to amend, their Complaint to add a punitive damages claim, although Plaintiffs' opposition memorandum makes clear that they intend to seek punitive damages.

Lutheran Brotherhood contends that punitive damages for violations of the CFA are not available under the Private Attorney General ("Private AG") statute, Minn.Stat. § 8.31. The Minnesota Supreme Court recently revisited the scope of the statute. *Ly v. Nystrom,* 615 N.W.2d 302 (Minn.2000). Although the *Ly* court was not faced with the precise question at issue here, that court's discussion of the remedies allowed by the Private AG statute is instructive. The court stated that "the role and duties of the attorney general with respect to enforcing the fraudulent business practices laws must define the limits of the private claimant under the statute." *Id.* at 313. Implicit in this finding is that the remedies available to the attorney general and any additional remedies spelled out in the Private AG statute define the limits of what remedies are available to a private plaintiff in a CFA action.

The Private AG statute provides that private plaintiffs may get relief in the form of "damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court." Minn.Stat. § 8.31, subd. 3a. The statute

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

makes no mention of punitive damages. Because the statute that gives rise to Plaintiffs' cause of action contains no authorization for punitive damages, the Court finds that punitive damages are not available in actions based on the CFA.

3. *Other Arguments*

Lutheran Brotherhood makes other arguments in this Motion, including an argument that the CFA does not apply to insurance contracts. This argument has no merit. Lutheran Brotherhood also brings a challenge to one of Plaintiffs' expert witnesses, Dr. Wayne D. Hoyer. At this juncture, Dr. Hoyer's opinions meet the standards of *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and will be allowed. However, a final resolution of the admissibility of Dr. Hoyer's testimony is better left to motions in limine and more complete briefing on the issue. Thus, the Court denies this portion of Lutheran Brotherhood's Motion without prejudice.

C. Summary Judgment Against Named Plaintiffs and Class Representatives

***8** Lutheran Brotherhood also moves for summary judgment against the individual named Plaintiffs and the individual class representatives. Lutheran Brotherhood contends that summary judgment should be granted not just as to these Plaintiffs' CFA claims, but also as to their claims for common-law fraud and breach of fiduciary duty. There is a difference in this case between class representatives and named Plaintiffs. The named Plaintiffs are the original ten Plaintiffs, nine of whose claims the statute of limitations Order rendered untimely. There are five class representatives, only one of which, Barbara Watson, is also a named Plaintiff. In this Motion, Lutheran Brotherhood seeks summary judgment against the named Plaintiffs and against the class representatives.

Lutheran Brotherhood attacks the prima facie case of the individual Plaintiffs. First, Lutheran Brotherhood contends that, because the computer printout illustrations that the individual Plaintiffs received contained a disclaimer about fluctuating interest rates, the class representatives cannot prove that a misrepresentation was made and cannot show that they reasonably relied on the illustrations. Second, Lutheran Brotherhood also argues that the class representatives cannot prove that they were damaged by the allegedly misleading statements. Third, Lutheran Brotherhood asserts that the common-law fraud claims of the individual Plaintiffs are barred by the statute of limitations. (There is no dispute that the CFA claims of the named Plaintiffs who are not class representatives are barred by the statute of limitations.) Fourth, Lutheran Brotherhood argues in the alternative that the common-law fraud claims fail on their merits. Finally, Lutheran Brotherhood contends that the individual Plaintiffs cannot establish the elements of their claims for breach of fiduciary duty.

1. *Misrepresentations and Reliance*

Again, some of Lutheran Brotherhood's argument in this Motion rehashes arguments made in the decertification Motion. In addition to the proof of individualized reliance argument discussed previously, Lutheran Brotherhood also contends that the individual Plaintiffs' CFA and common-law fraud claims fail because these Plaintiffs cannot show that a misrepresentation was made to them and, in any event, cannot establish that they reasonably relied on the alleged misrepresentations.

Much of Lutheran Brotherhood's argument on this point rests on what it characterizes as "prominent" disclaimers in the computer printout illustrations given to class members. Taking the evidence in the light most favorable to Plaintiffs, the Court finds that, while the disclaimers are not printed in type smaller than that used in the body of the illustration, they are not in any way "prominent ." Nor are the disclaimers particularly helpful. For example, the illustration for Barbara Watson shows zeros in the "Annual Premium" column for years two through 18. The illustration shows that, even if she paid no annual premiums, under both the "guaranteed" and the "assumed" rates of return, her policy would remain in force at least through year 18. Moreover, the "assumed" rate of return illustrates a cash value of more than $35,000 in year 18, even if Ms. Watson were to make no annual premium payments. The disclaimer trumpeted by Lutheran Brotherhood is at the bottom of the page and is not written in particularly clear language. What stands out on the illustration is the column of zeros in the "Annual Premium" column, not the small paragraph of legal disclaimers at the bottom.

***9** The individual Plaintiffs who were shown illustrations similar to those shown to Ms. Watson have raised a genuine issue of fact as to whether they

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

received a misrepresentation and whether their reliance on what they received was reasonable.

2. *Damages*

Lutheran Brotherhood contends that summary judgment is appropriate because Plaintiffs have failed to show damages. Specifically, Lutheran Brotherhood contends that in Minnesota, a plaintiff attempting to recover for fraudulent conduct is limited to recovering her out-of-pocket damages. In contrast, according to Lutheran Brotherhood, here Plaintiffs are attempting to recover benefit-of-the-bargain damages, and such damages are not allowed under Minnesota law.

Lutheran Brotherhood reads Minnesota law too narrowly. As the Eighth Circuit has explained, Minnesota courts take "a broad view of what constitutes out-of-pocket losses" such that Minnesota's damages rule "lies somewhere between a strict application of the out-of-pocket rule and the more liberal benefit-of-the-bargain rule." *Commercial Prop. Inv., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 647-48 (8th Cir.1995). Thus, Minnesota courts strive to "compensate actual losses, not prospective gains." *Id.* at 648. The Minnesota Supreme Court put it this way: "[P]laintiff may recover for any injury which is the direct and natural consequence of his acting on the faith of defendant's representations." *Lewis v. Citizens Agency of Madelia, Inc.*, 306 Minn. 194, 235 N.W.2d 831, 835 (Minn.1975).

Much of the damages Plaintiffs claim here arise directly from Lutheran Brotherhood's alleged misrepresentations. Some Plaintiffs surrendered other policies to purchase a vanishing premium policy, only to find that the cash value of the new policy was well below that promised by the DR. These Plaintiffs' damages must include the difference between the value of that prior policy and the value of the new policy. Moreover, when a Plaintiff had to make premium payments after the time that the DR promised that the premium would vanish, that Plaintiff was damaged. Summary judgment on this issue is not warranted.

3. *Statute of Limitations*

Lutheran Brotherhood contends that the named Plaintiffs' common-law fraud and breach of fiduciary duty claims are untimely, but cites to no authority to support that argument. Indeed, Lutheran Brotherhood does not even cite the relevant statutes of limitations for these claims.

Lutheran Brotherhood's argument on this point is without merit. It is undisputed that both common-law fraud and breach of fiduciary duty claims are subject to the discovery rule. Thus, Lutheran Brotherhood's reliance on the Court's previous statute of limitations ruling is misplaced. In that ruling, the Court determined that claims under the CFA were not subject to the discovery rule or to equitable tolling. The Court did not hold that the discovery rule was inapplicable to the common-law fraud or breach of fiduciary duty claims. Although the previous ruling found that some Plaintiffs might have had the opportunity to discover the fraud prior to the limitations period, this finding does not preclude the application of the discovery rule to different claims. Nor could that dicta have definitively decided the issue: whether a plaintiff knew or should have known of the existence of his or her claim is a question of fact that cannot be resolved on a motion for summary judgment. *Murphy v. Country House, Inc.*, 307 Minn. 344, 240 N.W.2d 507, 512 (Minn.1976). Until those facts are decided, the statute of limitations does not bar these claims. The Court determines that the individual Plaintiffs' common-law fraud and fiduciary duty claims are not barred by the statute of limitations and that the individual Plaintiffs may avail themselves of the discovery rule to establish the timeliness of these claims.

4. *Common-Law Fraud*

***10** Lutheran Brotherhood contends that the individual Plaintiffs' common-law fraud claims fail on their merits because Plaintiffs cannot show an actionable misrepresentation, causation, or damages. This memorandum has previously addressed the damages issue.

a. Misrepresentation

Both in this Motion and in the Motion against the class, Lutheran Brotherhood argues that there is no actionable misrepresentation because the statements at issue were statements of future performance, not of a past or existing fact. While it is true that the alleged misrepresentations regarding vanishing premiums were representations that something would happen in the future, the alleged misrepresentations are not the sort of speculative statements that Minnesota courts

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

have found insufficient to support a claim for fraud.

Lutheran Brotherhood cites two cases in support of this argument, *Cady v. Bush,* 283 Minn. 105, 166 N.W.2d 358 (Minn.1969), and *Exeter Bancorp., Inc. v. Kemper Sec. Group, Inc.,* 58 F.3d 1306 (8th Cir.1995). The representations at issue in *Cady* were statements to a potential purchaser of a hotel that he would have no trouble renting rooms and that the hotel was a moneymaking proposition. *Cady,* 166 N.W.2d at 360. Similarly, in *Exeter Bancorp.,* the defendant stated that it would use its nationwide network for the plaintiff's benefit and that the defendant had an investor "locked up" to by the plaintiff's stock. *Exeter Bancorp.,* 58 F.3d at 1310. These statements are quite different from computer printouts that show zero premium payments resulting in increasing cash values and oral statements that the policyholder's obligation to pay premiums would cease in a certain number of years. The representations Plaintiffs allege are sufficient to satisfy the misrepresentation element of their for common-law fraud claims.

Next, Lutheran Brotherhood challenges each individual Plaintiffs' prima facie case. In the main, Lutheran Brotherhood contends that the disclaimer language on the contracts and the policy notices belies any claim that any individual Plaintiff received a misrepresentation. Lutheran Brotherhood cites to each individual Plaintiff's deposition to support this argument. The Court has examined the record and reaches a different conclusion. Each individual Plaintiff testified that they were told something that was ultimately false, and although some Plaintiffs' testimony is more specific than others, taking the evidence in the light most favorable to Plaintiffs, there is at least a question of fact as to whether they received a misrepresentation.

b. Causation

Lutheran Brotherhood's arguments with respect to causation are similar to the arguments about the misrepresentation element of the individual Plaintiffs' prima facie case. Lutheran Brotherhood picks out select deposition testimony to support its claim that Plaintiffs cannot show that they relied on the alleged misrepresentation. Other testimony, however, shows that Plaintiffs did rely on what their DRs told them about their policies. Thus, there is a question of fact as to the causation element.

5. *Fiduciary Duty*

***11** Analysis of the individual Plaintiffs' breach of fiduciary duty claims is complicated by the fact that it is not clear which state's law applies to their claims. Lutheran Brotherhood argues that each individual Plaintiff's residence provides the common law for the fiduciary duty claims. Plaintiffs claim that Minnesota law may be applied to the fiduciary duty claims. Neither party specifies the differences between the substantive law of the various states-Minnesota, Ohio, and Wisconsin-that could potentially supply the law on the breach of fiduciary duty claims. However, at least with respect to Minnesota and Ohio, it appears that there is little difference between the two states' fiduciary duty laws. (*See* Def .'s Supp. Mem. at 21 (noting that "Ohio sets the same standard [as Minnesota].").) There is no need to conduct a lengthy choice-of-law analysis if the different states' laws do not differ in a way that is outcome-determinative. *See Meyers v. Gov't Employees Ins. Co.,* 302 Minn. 359, 225 N.W.2d 238, 241 (Minn.1974). Because Lutheran Brotherhood does not argue that the application of Wisconsin or Ohio law will affect the ultimate outcome of the fiduciary duty claim, the Court may apply Minnesota law.

The existence of a fiduciary relationship is usually a question of fact. *See Toombs v. Daniels,* 361 N.W.2d 801, 809 (Minn.1985). Under Minnesota law, a fiduciary duty between an insured and insurer arises in "special circumstances." *Parkhill v. Minn. Mut. Life Ins. Co.,* 174 F.Supp.2d 951, 959 (D.Minn.2000) (Doty, J.). Plaintiffs have failed to show that there is a genuine issue of fact as to whether Lutheran Brotherhood and its agents owed Plaintiffs a fiduciary duty.

A fiduciary relationship does not arise between an insurance agent and an insured merely because the agent and insured have known each other for a long time or because the insured has "faith and confidence" in the agent. *Stark v. Equitable Life Assurance Soc. of U.S.,* 205 Minn. 138, 285 N.W. 466, 470 (Minn.1939). An insured "should know that [the agent] is representing adverse interests." *Id.* In *Stark,* the Minnesota Supreme Court found that an insurance company owed its insured a fiduciary duty only because of a provision in the insurance contract that encouraged the insured not to hire counsel but instead to rely on the advice of the agent when settling claims under the insurance contract. *Id.* There is no similar contractual provision here, nor is there any evidence that any of the DRs encouraged Plaintiffs not to seek outside advice before

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

purchasing their policies. Plaintiffs' evidence is confined to general assertions that Lutheran Brotherhood viewed itself as having a fiduciary relationship with its insureds. This type of evidence does not create a question of fact as to whether the special circumstances required to impose a fiduciary duty on Lutheran Brotherhood exist in this case.

Lutheran Brotherhood's Motion for Summary Judgment is granted as to the individual Plaintiffs' breach of fiduciary duty claims.

D. Motion to Strike

***12** Plaintiffs ask the Court to strike all of the above Motions because of Lutheran Brotherhood's alleged failure to disclose information about the cases of two named Plaintiffs, Sandra Rost and Gerald Zimmerman. According to Plaintiffs, Lutheran Brotherhood knew that the CFA claims of these Plaintiffs were not time-barred but did not disclose that information to Plaintiffs, instead letting Plaintiffs believe that their claims were time-barred.

Even assuming that Plaintiffs' allegations are true, the Court finds that the conduct in question is not egregious enough to justify the severe sanctions that Plaintiffs seek. The Court will therefore deny the Motion to Strike.

CONCLUSION

For the reasons set forth above, the Court concludes that summary judgment is appropriate only as to the punitive damages claim and the individual Plaintiffs' breach of fiduciary duty claims. Similarly, the Court declines to decertify the class.

Accordingly, IT IS HEREBY ORDERED that:
1. The Court's Order of July 22, 2003 (Clerk Doc. No. 331) is stricken and this Amended Order is substituted for that Order;
2. Defendant's Motion to Decertify the Class (Clerk Doc. No. 276) is DENIED;
3. Defendant's Motion for Summary Judgment Against the Class (Clerk Doc. No. 280) is GRANTED in part and DENIED in part as follows:
a. Summary Judgment is GRANTED as to Plaintiffs' claim for punitive damages under the Minnesota Consumer Fraud Act;
b. Summary Judgment is DENIED without prejudice as to Defendant's challenge to Plaintiffs' expert witness; and
b. Summary Judgment is DENIED as to the remainder of Plaintiffs' class claims;
4. Defendant's Motion for Summary Judgment Against the Individual Plaintiffs (Clerk Doc. No. 285) is GRANTED in part and DENIED in part as follows:
a. Summary Judgment is GRANTED as to the individual Plaintiffs' breach of fiduciary duty claims; and
b. Summary Judgment is DENIED as to the remainder of the individual Plaintiffs' class claims; and
5. Plaintiffs' Motion to Strike (Clerk Doc. No. 310) is DENIED.

D.Minn.,2004.
In re Lutheran Broth. Variable Ins. Products Co. Sales Practices Litigation
Not Reported in F.Supp.2d, 2004 WL 909741 (D.Minn.)

Briefs and Other Related Documents (Back to top)

• 0:99md01309 (Docket) (Dec. 23, 1999)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.