# Exhibit 109

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
FINANCIAL SOFTWARE SYSTEMS, INC., Plaintiff,
v.
FIRST UNION NATIONAL BANK, Defendant.
**No. Civ.A. 99-CV-623.**

Dec. 16, 1999.

Joseph A. McGinley, Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, Phila, PA, for Financial Software Systems, Inc., Plaintiff.
Robert J. Dougher, Hoyle, Morris and Kerr, LLP, Phila, PA, Joseph G. De Respino, Raeder & Derespino, P.C., Philadelphia, PA, for First Union National Bank, Defendant.

Memorandum and Order

YOHN, J.
***1** In 1997, Financial Software Systems contracted with First Union National Bank to develop and deliver software enhancements to an existing computer system used by First Union. Plaintiff alleges that shortly after executing the contract, defendant breached its terms. Plaintiff filed this suit, alleging causes of action based on state contract and tort law. Jurisdiction is proper pursuant to the court's diversity jurisdiction.

Plaintiff has filed the present motion to determine which state's law should apply in this action and defendant has responded to the motion. Plaintiff alleges that the choice of applicable law will affect the availability both of punitive damages and of a cause of action for deceptive trade practices. Plaintiff, a Pennsylvania citizen, suggests that North Carolina law should apply. Defendant, a North Carolina citizen, responds that Pennsylvania law should apply. I conclude that the laws of the two states do not produce different results with respect to punitive damages. Consequently, the law of Pennsylvania, the forum state, will control the availability of punitive damages. Further, I conclude that the conflict between the laws of the two states with respect to deceptive trade practices is a false conflict and that North Carolina law should apply to that cause of action. Moreover, analysis of the relevant contacts and interests supports application of North Carolina's law of deceptive trade practices.

BACKGROUND

The facts, as alleged by plaintiff, are as follows. FN1 On April 21, 1994, defendant and plaintiff entered a contract whereby plaintiff was to provide defendant with "computer based risk management systems," along with necessary support and maintenance. *See* Pl.'s Mot. to Det. Appl. Law Ex. B (Doc. No. 11) [hereafter "Pl.'s Mot."]. On August 12, 1994, defendant and plaintiff entered a second contract whereby plaintiff was to provide defendant with the source-code for a computer system. *See* Pl.'s Mot. Ex. C. Each contract included a choice of law clause providing that North Carolina law should control the contract "in all respects." *See* Pl.'s Mot. Ex. B, art. 16; Pl.'s Mot. Ex. C, art. 13. These contracts are not at issue in this case. A third contract is the source of the present controversy.

FN1. This motion is in the nature of a *motion in limine. See, e.g., Kirby v. Lee,* No. 98-CV-6483, 1999 U.S. Dist. Lexis 11688, at *2 n. 1 (E. D.Pa. July 22, 1999) (renaming motion to determine applicable law a *motion in limine* ); *Argonaut Ins. Co. v. I.E., Inc.,* No. 97-CV-4636, 1999 U.S. Dist. Lexis 10936, at *2 (E.D.Pa. July 21, 1999) (considering *motion in limine* to determine applicable law). I need not accept plaintiff's account of the facts and I do so only for the purpose of providing background because it is the fullest account available at this time. Further, because the questions presented are resolved as matters of law, the facts are not determinative. Finally, the motion may be renewed if further factual development justifies.

In the summer of 1997, the parties began negotiating a software development contract. *See* Aff. of Gerald H. Thurston at Pl.'s Mot. Ex. D. After receiving from defendant a draft of a contract to develop enhancements to defendant's computer system, plaintiff executed the contract on September 2, 1997. *See* Amended Complaint ¶ 4 (Doc. No. 7) [hereafter

"Amend. Compl."]; Pl.'s Mot. Ex. A. Plaintiff mailed the contract to defendant and, on September 5, 1997, defendant executed the agreement in North Carolina. *See* Amend. Compl. ¶ 4; Pl.'s Mot. Ex. A; Def.'s Ans. to Amend. Compl. ¶ 4 (Doc. No. 8) [hereafter "Def.'s Ans."]. The agreement did contain language of integration, but did not specify the law to govern the contract. *See* Pl.'s Mot. Ex. A.

***2** Plaintiff alleges that it developed and shipped the major software components to defendant in December of 1997. *See* Pl.'s Mot. ¶ 10. In February of 1998, defendant notified plaintiff for the first time that it desired to terminate the contract. *See* Pl .'s Mot. ¶ 12. Subsequently, defendant refused plaintiff's multiple demands for payment under the contract. *See* Amend. Com pl. ¶ ¶ 10-17.

Plaintiff initially filed a complaint, followed by an amended complaint on April 1, 1999. This diversity action alleges violations of state contract and tort law. FN2 Plaintiff contends that the laws of Pennsylvania and North Carolina differ regarding punitive damages and regarding deceptive trade practices. *See* Pl.'s Mot. ¶ ¶ 22-23. Plaintiff suggests North Carolina law should apply to both issues because it was the unspoken understanding of the parties and because the interests of the two states, as well as the parties' contacts with North Carolina, favor applying North Carolina law. *See* Pl.'s Mot. ¶ ¶ 6-7, 16-25. Defendant replies that the parties did not agree which law should control and contends that the interests of the two states, as well as the parties' contacts with Pennsylvania, favor applying Pennsylvania law. *See* Def.'s Resp. to Pl.'s Mot. to Det. Appl. Law at 2-10 (Doc. No. 14) [hereafter "Def.'s Resp."].

FN2. The Amended Complaint lists the following seven counts: breach of contract, unjust enrichment, violation of the Uniform Commercial Code, misrepresentation, fraud, bad faith, and deceptive trade practices.

I conclude that the respective laws of punitive damages are not in conflict and will presume that the law of Pennsylvania, the forum state, will control punitive damages. Further, I conclude that the laws of the two states regarding deceptive trade practices present a false conflict and I conclude that North Carolina law should apply to the deceptive trade practices cause of action. Application of North Carolina's law of deceptive trade practices is supported by an analysis of the relevant contacts and interests on the existing record.

DISCUSSION

In diversity cases, federal courts apply the substantive law of the forum state. *See* Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1940); Borman v. Raymark Indus., 960 F.2d 327, 331 (3d Cir.1990). A federal court sitting in diversity looks to the choice of law rules of the state in which it sits. *See* Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir.1996). Because the court is in Pennsylvania, I look to the choice of law rules that a Pennsylvania court would apply. *See* LeJeune, 85 F.3d at 1071.

I. THE PENNSYLVANIA CHOICE OF LAW INQUIRY.

Where the parties to a contract effectively choose the law of one state to govern the contract, that choice should control. *See* In re Allegheny Int'l, Inc., 954 F.2d 167, 178 (3d Cir.1992); Smith v. Commw. Nat'l Bank, 384 Pa.Super. 65, 557 A.2d 775, 777 (Pa.Super.Ct.1989). The contract in this case contains no choice of law provision. *See* Pl.'s Mot. Ex. A. Moreover, no case law is cited to support the proposition that the parties' two prior agreements demonstrate an effective choice of law for the 1997 contract. FN3 Plaintiff has failed to demonstrate an effective agreement on choice of law.

FN3. Plaintiff suggests, by reference to the 1994 agreements of the parties, that it was understood that North Carolina law should apply. *See* Pl.'s Mot. ¶ 16; Pl.'s Mot. Ex. D. Plaintiff's allegation is not that the parties agreed to the application of North Carolina law but rather that the parties did not agree that any other law was to apply. *See* Pl.'s Mot. Ex. D. Defendant responds that because the contract is integrated, evidence of prior agreements may not be introduced to add terms to the contract. *See* Def.'s Resp. at 11-14.
Essentially, plaintiff seeks to supplement the contract with an additional, consistent term. Plaintiff declines to raise or brief the issue of whether the contract is one for sale of goods or for services. The difference appears important. Under the UCC, a contract for the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

sale of goods may be supplemented by consistent, additional terms or by evidence of the prior course of dealing between the contacting parties. *See* N.C. Gen.Stat. § 25-2-202 (1998). Under state common law in North Carolina, such additional terms may not be added to a contract for services. *See* *Williamson v. Miller*, 231 N.C. 722, 58 S.E.2d 743 (N.C.1950); N.C. Gen.Stat. § 25-2-202 N .C. Cmt. (explaining that § 25-2-202 differs from the common law rule, which permits parole evidence only to explain a term, never to add or supplement). Nor does plaintiff address whether the two prior contracts constitute a course of dealing. Thus, I decline to decide these questions in light of the insufficient briefing before the court.

***3** Where no effective choice of law has been made, courts in the Third Circuit interpret Pennsylvania law to require a two-prong inquiry into applicable law. *See* *LeJeune*, 85 F.3d at 1071; *Kirby v. Lee*, No. 98-CV-6483, 1999 U.S. Dist. Lexis 11688, at *4 (E.D.Pa. July 22, 1999). The choice of law analysis must be conducted with respect to the particular issues presented, such that different law may apply to different causes of action. *See generally* *DuSeosi v. United Roofing Co.*, 540 F.Supp. 1260, 1266-68 & 1272-73 (W.D.Pa.1982) (analyzing choice of law separately as to breach of written contract, breach of oral contract, and fraud); Restatement (Second) Conflicts of Law § § 145 (limiting tort analysis to "particular issue"), 188 (limiting contract analysis to "particular issue").

First, I must determine whether an actual conflict exists. Where the different laws do not produce different results, courts presume that the law of the forum state shall apply. *See* *McFadden v. Burton*, 645 F.Supp. 457, 461 (E.D.Pa.1986); *Denenberg v. American Family Corp.*, 566 F.Supp. 1242, 1251 (E.D.Pa.1983), *superseded on other grounds as explained in*, *Miniscalo v. Gordon*, 916 F.Supp. 478, 481 (E.D.Pa.1996) (regarding state law elements of abuse of process claim). *See generally* *Borman*, 960 F.2d at 331 (noting that law of the forum state applies in diversity cases).

Where the different laws produce different results, I must determine whether a false conflict exists. *See* *LeJeune*, 85 F.3d at 1071; *Kirby*, 1999 U.S. Dist. Lexis 11688 at *4; *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854, 855-56 & n. 1 (Pa.1970). "A false conflict exists if only one jurisdiction's governmental interests would be impaired by application of the other jurisdiction's law." *See* *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir.1991); *see also Kirby*, 1999 U.S. Dist. Lexis 11688 at *5. If a false conflict exists, I must apply the law of the jurisdiction whose interests would be impaired. *See* *Lacey*, 932 F.2d at 187.

Where the different laws would produce different results and the application of the law of either state would impair the interests of the other, the court should move to the second prong of the inquiry. *See* *LeJeune*, 85 F.3d at 1071-72; *Lacey*, 932 F.2d at 187; *Cipolla*, 267 A.2d at 855-56. The second prong requires a qualitative analysis of the contacts between the parties, the causes of action, and the several states, as well as analysis of the interests of the several states. *See* *LeJeune*, 85 F.3d at 1072; *Kirby*, 1999 U.S. Dist. Lexis 11688 at *4; *Allstate Ins. Co. v. McFadden*, 407 Pa.Super. 537, 595 A.2d 1277, 1279 (Pa.Super.Ct.1991). Contact analysis is not necessary where the different laws do not lead to different results because the law of the forum state is presumed to apply. *See* *McFadden*, 645 F.Supp. at 461; *Denenberg*, 566 F.Supp. at 1251. Contact analysis also is not required where there is a false conflict because courts apply the law only of the state whose interests will be impaired if its law is not applied. *See* *Lacey*, 932 F.2d at 187; *Kirby*, 1999 U.S. Dist. Lexis 11688 at *8.

***4** Plaintiff suggests that the laws of North Carolina and Pennsylvania truly conflict in two respects relevant to this matter: standards for punitive damages and liability for deceptive trade practices. *See* Pl.'s Mot. ¶ ¶ 22-23. I disagree, and will treat each in turn.

## II. PUNITIVE DAMAGES.

Plaintiff has alleged several causes of action in tort against defendant for which plaintiff seeks punitive damages. [FN4] Plaintiff contends that the threshold for punitive damages is lower in North Carolina than in Pennsylvania. *See* Pl.'s Mot. ¶ 23. Plaintiff argues that punitive damages are available in North Carolina for conduct done in a "willful or oppressive manner," which it compares to Pennsylvania's requirement of "outrageous conduct." *See* Pl.'s Mot. at 23, *comparing* *Martin v. Johns-Manville*, 508 Pa. 154, 494 A.2d 1088 (Pa.1985), *with* *United Labs., Inc. v. Kuykendall*, 335 N.C. 183, 437 S.E.2d 374 (N.C.1993).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN4. *See* Amend. Compl. ¶ ¶ 34-39 (misrepresentation), ¶ ¶ 40-45 (fraud), ¶ ¶ 50-54 (deceptive trade practice).

Upon investigation, these prove to be the same and present no true conflict. The courts of North Carolina permit an award of punitive damages "only where the wrong is done willfully or under circumstances of rudeness, oppression, or in a manner which evidences a reckless and wanton disregard of a plaintiff's rights." *See Moore v. City of Creedmoor,* 345 N.C. 356, 481 S.E.2d 14, 24 (N.C.1997) (stating that conduct due to spite or revenge would qualify) (citations omitted). *United Labs, Inc. v. Kuykendall,* cited by plaintiff, is not to the contrary. In that case, the North Carolina Supreme Court affirmed an award of punitive damages for tortious interference with a contract not to compete. *See United Labs., Inc.,* 437 S.E.2d at 379. Punitive damages were available because the tort was committed willfully. *See id.* at 376-77.

The courts of Pennsylvania do permit punitive damages on proof of "outrageous conduct," but that includes conduct done "willfully, maliciously, or so carelessly as to indicate a wanton disregard of the rights of the party injured." *See G.J.D. v. Johnson,* 552 Pa. 169, 713 A.2d 1127, 1129 (Pa.1998) (citations omitted); *see also Rizzo v. Haines,* 520 Pa. 484, 555 A.2d 58, 69 (Pa.1989) (explaining that punitive damages available for conduct that is outrageous, including "malicious, wanton, reckless, willful or oppressive"). In *Martin,* the case cited by plaintiff, the Pennsylvania Supreme Court defined "outrageous conduct" to include "acts done with a bad motive or reckless indifference to the interests of others." *See id.* Plaintiff cites no cases demonstrating a higher requirement. Finally, I note that the Pennsylvania Supreme Court has affirmed awards of punitive damages for claims of fraud and misrepresentation between businesses. *See, e.g., College Watercolor Group v. William H. Newbauer, Inc.,* 468 Pa. 103, 360 A.2d 200, 203 & 206 (Pa.1976) (affirming liability for misrepresentation and award of punitive damages).

I conclude that each state permits punitive damages on a sufficient showing of willfulness or malice. Because there is no difference in the law, much less a conflict, no choice of law is required. Therefore, I presume the law of Pennsylvania will apply. *See McFadden,* 645 F.Supp. at 461; *Denenberg,* 566 F.Supp. at 1251.

III. DECEPTIVE TRADE PRACTICES.

***5** Plaintiff suggests that a true conflict exists also with respect to statutory deceptive trade practices claims. The different laws lead to different results, but the differences reveal a false conflict.

A. Laws of North Carolina and Pennsylvania.

The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") permits a private action for deceptive trade practices against a business only by "any person who purchases or leases goods or services *primarily for personal, family, or household purposes* and thereby suffers any ascertainable loss" due to an unlawful act or practice. *See* Pa.C.S. § 201-9.2(a) (1993 & Supp.1999) (emphasis added). The act is designed to redress inequality in bargaining power between consumers and sellers. *See Katz v. Aetna Casualty & Surety Co.,* 972 F.2d 53, 56 (3d Cir.1992) (stating purpose of law); *Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.,* 393 Pa.Super. 339, 574 A.2d 641, 647 (Pa.Super.Ct.1990). It does not extend to transactions between businesses. *See id.; Granite St. Ins. Co. v. Aamco Transmissions, Inc.,* 57 F.3d 316, 320 n. 3 (3d Cir.1995) (explaining that business competitors have no private cause of action); *Merv Swing Agency, Inc. v. Graham Co.,* 579 F.Supp. 429, 430 (E.D.Pa.1983) (explaining that business competitor is barred from private cause of action); *Valley Forge Towers S. Condo.,* 574 A.2d at 647 (noting that federal courts have decided correctly that the primary purpose restriction of section precludes "a cause of action by one business against another business for various types of unfair competition"). In Pennsylvania, a business has no UTPCPL action against another business.

In contrast, in North Carolina, a private action for unfair or deceptive trade practices may be maintained "[i]f any person shall be injured or *the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation* in violation of the provisions of this Chapter." N.C. Gen.Stat. § 75-16 (1998) (granting private right of action for deceptive trade practices) (emphasis added). North Carolina law permits, and North Carolina courts have recognized, a private action by one business against another. *See Olivetti Corp. v. Ames Bus. Sys., Inc.,* 81 N.C.App. 1, 344 S.E.2d 82, 94-95 (N.C.Ct.App.1986) (holding distributor liable

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to dealer), *rev'd in part on other grounds,* 319 N.C. 534, 356 S.E.2d 578 (N.C.1987) (finding insufficient proof of damages); *Winston Realty Co. v. G.H.G., Inc.,* 70 N.C.App. 374, 320 S.E.2d 286, 290-91 (N.C.Ct.App.1984) (holding employment agency liable to employer for unpaid referral), *aff'd,* 314 N.C. 90, 331 S.E.2d 677 (N.C.1985); *Philson v. Cold Creek Farms, Inc.,* 947 F.Supp. 197, 202-03 (E.D.N.C.1996) (holding corporate turkey seller could sue corporate turkey buyer). In North Carolina, one business may sue another for an unfair or deceptive trade practice.

Consequently, plaintiff may obtain different results depending on which law applies. If Pennsylvania law applies, plaintiff can state no claim upon which relief may be granted for a deceptive trade practice. If North Carolina law applies, plaintiff may state such a claim upon proof by sufficient evidence.

B. False Conflict of Laws.

***6** A true conflict of laws is not proved by different results alone, however. Where application of the law of one state would impair the interests of the other, but not vice-versa, a false conflict is presented. *See* *Lacey,* 932 F.2d at 187; *Kirby,* 1999 U.S. Dist. Lexis 11688 at *5. That is the case here.

Pennsylvania's law is designed to deter businesses from deceptive trade practices in their dealings with commercially unsophisticated consumers. *See* *Katz,* 972 F.2d at 56; *Valley Forge Towers S. Condo.,* 574 A.2d at 647. It does not protect businesses in their relationships with other businesses. [FN5] *See* *Merv Swing Agency Inc.,* 579 F.Supp. at 430. *But cf.* *Granite St. Ins. Co.,* 57 F.3d at 320 n. 3 (noting that state or local prosecutor may bring action). North Carolina's broader law protects both individuals and commercial entities. *See* *Olivetti Corp.,* 344 S.E.2d at 95 ("Individual consumers are not the only ones protected and provided a remedy."); *Winston Realty Co.,* 320 S.E.2d at 290-91. Although the North Carolina law is designed similarly to protect North Carolina consumers, *see* *Bhatti v. Buckland,* 328 N.C. 240, 400 S.E.2d 440, 444 (N.C.1991), it is designed also to subject North Carolina businesses to greater liability in order to ensure the ethical conduct of North Carolina businesses. [FN6] *See* *Olivetti,* 344 S.E.2d at 94-95 (noting the original purpose of the statute included ensuring ethical conduct between businesses); *United Roasters, Inc. v. Colgate-Palmolive Co.,* 485 F.Supp. 1041, 1046 (E.D.N.C.1979) (same).

FN5. It is not impossible that the Pennsylvania legislature may have deliberately excluded business plaintiffs from a private cause of action. *See* Rest. (2d) Conflicts § 145 cmt. c (noting difficulty of ascertaining purpose behind exclusion from liability). Nonetheless, my research reveals no indication that exclusion of businesses was an intended consequence of the legislation. In fact, the Third Circuit has noted that businesses do receive protection under a statutory provision permitting the Attorney General or district attorneys to bring suit for a an unlawful trade practice. *See* *Granite State Ins. Co.,* 57 F.3d at 320 n. 3 (citing 73 Pa.C.S. § 201-4). Moreover, neither party cites any authority with respect to the interests affected by the law. Finally, even if a true conflict exists, the contacts analysis favors application of North Carolina law.

FN6. Defendant suggests that North Carolina's law is designed only to protect intrastate consumers. *See* Def.'s Resp. at 9. The cases cited for the proposition evince a clear intention to protect consumers. I recognize that unexceptional proposition. Neither case, however, excludes the separately stated purpose of ensuring ethical conduct between businesses. In fact, that purpose has explicitly been recognized by the courts of North Carolina, as noted. Moreover, no cited case limits the scope of the law to North Carolina business plaintiffs only. I note that the state and federal courts in North Carolina have permitted out-of-state plaintiffs to maintain causes of action for deceptive trade practices under North Carolina law. *See, e.g.,* *Taha v. Thompson,* 120 N.C.App. 697, 463 S.E.2d 553, 555 & 557-58 (N.C.Ct.App.1995) (holding that the Egyptian citizen owner of a restaurant in North Carolina alleged sufficient facts to support a jury finding of deceptive trade practices against a North Carolina lessor); *Wayne v. 360 Communication Co.,* No. 5:99CV65-BR(2), 1999 U.S. Dist. Lexis 9727, at **13-15 (E.D.N.C. Apr. 30, 1999) (denying motion to dismiss claim brought by California limited partners); *Uniden Amer. Corp. v. Ericsson, Inc.,* No. 1:97CV00021, 1998 U.S. Dist. Lexis 8149, at **16-21

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(M.D.N.C. Mar. 13, 1998) (denying motion to dismiss claim by foreign corporation suing North Carolina corporation for deceptive trade practice). Moreover, the North Carolina state courts have considered such claims by foreign citizens and corporations without barring them per se. *See, e.g., Market America, Inc. v. Robin Christman-Orth,* No. COA98-1118, 1999 N.C.App. Lexis 976,*3 & **23-28 (N.C.Ct.App. Oct. 5, 1999) (denying counterclaim for deceptive trade practices by Pennsylvania corporation against North Carolina corporation on the substantive ground that the acts alleged did not rise to unfair or deceptive trade practices). I do not find that foreign plaintiffs are unprotected by the North Carolina deceptive trade practices act.

North Carolina evinces an interest in ensuring that, even among themselves, businesses deal ethically with one another. Applying Pennsylvania law in this case would immunize defendant from the consequences of its alleged violation of North Carolina law. Consequently, application of Pennsylvania's law of deceptive trade practices would impair North Carolina's interest in ensuring ethical conduct by North Carolina businesses. In contrast, Pennsylvania has no interest in plaintiff's business contracts within the scope of its deceptive practices act. Application of North Carolina's law would not impair any interest protected by Pennsylvania's deceptive trade practices act. To the extent that the laws of North Carolina and Pennsylvania differ, the interests of North Carolina are subject to injury while those of Pennsylvania are not implicated. Because that false conflict exists, I hold that North Carolina law should apply to the cause of action for deceptive trade practices.

Even assuming that there is a true conflict of laws regarding deceptive trade practices, the second prong of the Pennsylvania inquiry also favors applying North Carolina law to this claim.

C. The Pennsylvania Contacts and Interest Standards.

The present controversy arises out of the formation and performance of a contract. *See* Amend. Compl. ¶ ¶ 4-17. In their respective briefs, the parties address the choice of law inquiry only as governed by Pennsylvania conflicts of law standards for causes of action in contract. *See* Pl.'s Mot. at 3-5; Def.'s Resp. at 2-10. Because the conflicts inquiry is only proper where a true conflict is presented, however, the law to govern each cause of action must be separately determined. *See* Rest. (2d) Conflicts § 145 cmt. d; § 188 cmt. d.

*7 In each state, a cause of action for deceptive trade practices is not based entirely in either tort or contract law. *See Marshall v. Miller,* 302 N.C. 539, 276 S.E.2d 397, 400 (N.C.1981) (noting that the act is designed to supplement common law contract and tort remedies); *DiLucido v. Terminix Int'l, Inc.,* 450 Pa.Super. 393, 676 A.2d 1237, 1240 (Pa.Super.Ct.1996) (noting that causes of action covered by the statute sound in both contract and tort). Moreover, the cause of action presented for deceptive trade practices is premised on both tortious activity and breach of contract. *See* Amend. Compl. ¶ ¶ 51-54. Therefore, I will consider the choice of applicable law with reference to Pennsylvania's choice of law principles for both tort and contract actions.

1. The tort action inquiry.

For causes of action in tort, the Third Circuit has noted that Pennsylvania courts analyze the relationship between the parties, the states, and the litigation, as well as the interests of the involved states. *See Shields v. Consolidated Rail. Corp.,* 810 F.2d 397, 400 (3d Cir.1987); *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796, 802-03 (Pa.1964). In evaluating the relevant relationships, the courts have considered the following contacts between the parties, the states, and the cause of action: FN7

FN7. Section 145 of the Restatement (Second) of Conflicts of Laws provides the relevant contacts for all torts, *see id.* cmt. a, and § 148 provides the relevant contacts for fraud and misrepresentation. *See* Rest. (2d) Conflicts § 148 cmt. a. I consider the contacts of § 145, not § 148, for three reasons. First, I find no Pennsylvania state court applying the factors delineated in § 148. Second, the factual development of this case is insufficient to make determinations required by § 148. *See, e.g.,* Rest. (2d) Conflicts § 148(2)(a)-(c) (considering places of representation, receipt, and reliance). Finally, both sections are designed not to pose strict rules but rather to give

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

effect to the policies articulated in § 6 of the Restatement (Second) of Conflicts. *See* Rest. (2d) § § 145(1) & 148(1) (referring to principles in § 6). Because § 145 "states a principle applicable to all torts and to all issues in tort," I find that it is relevant and appropriate. *See* Rest. (2d) § 145 cmt. a.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*See* Restatement (Second) Conflict of Laws § 145 (1971).

The contacts are analyzed qualitatively, not quantitatively. *See Shields,* 810 F.2d at 400; *Cipolla,* 267 A.2d at 856. As explained below, analysis of the different contacts favors application of North Carolina's deceptive trade practices law. FN8

FN8. It will be recalled that resolution of this motion is premised on plaintiff's account of facts in the record. *See supra,* note 1. Thus, each act or consequence discussed hereafter is alleged, and no language herein should be read to imply a conclusive finding of fact or final determination of a mixed question of fact and law.

a. Place of injury.

Plaintiff lost payment for services rendered and expenses incurred in performing those services. *See* Amend. Compl. ¶ ¶ 12 & 54. The majority of work was to be done at plaintiff's Pennsylvania location. *See* Pl.'s Mot. Ex. A (showing development hours). Payment was due in Pennsylvania, and plaintiff was injured by non-payment in Pennsylvania. Consequently, this consideration favors application of Pennsylvania law.

b. Place of conduct causing injury.

Plaintiff was injured by defendant's misrepresentations and failure to perform pursuant to the contract. *See* Amend. Compl. ¶ ¶ 4-17. Defendant's refusal to pay for services rendered and goods delivered occurred in North Carolina. *See* Amend. Compl. ¶ ¶ 8-17 & Exs. B-E. The conduct causing injury therefore occurred in North Carolina. This contact supports application of North Carolina law.

c. Place of residence, incorporation and business.

***8** Plaintiff is a citizen by incorporation and place of business of Pennsylvania. *See* Amend. Compl. ¶ 1. Defendant is a citizen of North Carolina by organization certificate and principal place of business. *See id.* ¶ 2. At the time of contract, defendant had no Pennsylvania presence. *See id.* ¶ ¶ 4 & 7. Defendant now has branches and offices in Pennsylvania. *See* Def.'s Mot. to Dismiss Amend. Compl. for Lack of Subj. Matter Juris. Aff. of Ronald I. Nagel ¶ 3 (Doc. No. 12). Because each party maintains a presence in Pennsylvania, application of Pennsylvania law is favored by this contact.

d. Place of relationship.

The center of the parties' relationship is North Carolina. Two prior contracts concerned plaintiff's provision of goods and services for defendant's North Carolina office only. *See* Pl.'s Mot. Exs. B & C. Both of those agreements were governed explicitly by North Carolina law. *See* Pl.'s Mot. Ex. B art. 16; *id.* Ex. C art. 13. In negotiating the instant contract, plaintiff visited North Carolina. *See id.* Ex. D at 1. Plaintiff shipped its product to North Carolina only. *See* Amend. Compl. Exs. B & C. Plaintiff contracted to limit defendant's use of the product to North Carolina. *See* Pl.'s Mot. Ex. B art. 7. The work was done based on, and done for, a North Carolina location. Application of North Carolina law is favored because it was the place where the parties centered their relationship.

e. Weighing the contacts.

The place of injury supports application of Pennsylvania law only marginally. The place of injury is ordinarily an important factor in a contacts analysis because a defendant should not be allowed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to escape liability in the forum in which it caused injury. *See* Rest. (2d) Conflicts § 145 cmt. e. It would be anomalous, however, to give it great weight in this matter precisely because the alleged tort-feasor would evade liability under Pennsylvania law. Moreover, the place of injury is generally less important in cases of fraud and misrepresentation than in cases of personal injury. *See* Rest .(2d) Conflicts § 145 cmt. e. I find these considerations minimize the weight of this contact.

The place of residence, business or incorporation similarly favors applying Pennsylvania law only marginally. Where the parties to the action are corporate citizens, the place of business of each is to be given more consideration than places of domicile or places where they are doing business "if the interest is a business or financial one, such as in the case of unfair competition, interference with contractual relations or trade disparagement." *See* Rest. (2d) Conflicts § 145 cmt. e. Although each party is now a resident of Pennsylvania and does business therein, each maintains its principal place of business in a different state. Consequently, this factor slightly favors application of Pennsylvania law.

The place of conduct has peculiar significance where the tort rule is designed to deter and punish certain conduct. *See* Rest. (2d) Conflicts § 145 cmt. e. The laws of deceptive trade practices are designed, in part, to deter and punish certain conduct. *See* *Marshall,* 276 S.E.2d at 402 (noting punitive facet of North Carolina statute); *Johnson v. Hyundai Motor America,* 698 A.2d 631, 639-40 (Pa.Super.Ct.1997) (explaining that treble damage availability under UTPCPL is to be governed by punitive damage standards of punishment and deterrence). Therefore, the location of the injury causing conduct favors North Carolina law because the tort law at issue here is designed to deter and punish unethical conduct by businesses.

***9** Finally, the relationship between the parties was centered in North Carolina. Where North Carolina law provides more extensive protection against injury than the place of injury, and where North Carolina was the clear center of the relationship between the parties, the qualitative nature of the contacts between the parties, the states, and the litigation favor application of North Carolina law to this cause of action.

2. The contract action inquiry.

The cause of action for deceptive trade practices is, in part, an action for breach of contract. *See* Amend. Compl. ¶ ¶ 4-17. In contract actions, the Third Circuit has held that Pennsylvania courts would consider the qualitative contacts between the parties, the states, and the cause of action. *See* *Compagnie des Bauxites de Guinee v. Argonaut-Midwest Ins. Co.,* 880 F.2d 685, 689 & n. 9 (3d Cir.1989). Furthermore, federal courts have looked to the Restatement (Second) Conflict of Laws § 188 for guidance in analyzing conflicts of laws issues in contract actions. *See id.* That section provides guidance in cases where the parties have not agreed upon the governing law as follows:

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting;

(b) the place of negotiation of the contract;

(c) the place of performance;

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*See* Restatement (Second) Conflict of Laws § 188 (1971).

An analysis of the factors in § 188, as applied to this cause of action, follows.

a. Place of contracting

This contact looks to the place where the last necessary act occurred to give the contract binding effect under the rules of the forum state. *See* Rest. (2d) Conflicts § 188 cmt. e.

The contract was drafted in North Carolina. *See* Pl.'s Mot. Ex. D. It was executed by plaintiff in Pennsylvania, and then executed by defendant in North Carolina. *See id.* By its terms, the agreement was not final until it was countersigned in North Carolina. *See* Pl.'s Mot. Ex. A. This factor favors application of North Carolina law.

b. Place of negotiation.

During the negotiation of this contract, plaintiff

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

visited North Carolina on at least one occasion. *See* Pl.'s Mot. Ex. D. That visit involved extensive presentation by plaintiff in order to secure a contract with defendant. *See id.* The preliminary agreement to proceed was made in North Carolina. *See id.* The proposal was sent from North Carolina to Pennsylvania, and signed there without alteration. *See id.* Because most of the negotiation took place in North Carolina, this contact favors application of North Carolina law.

c. Place of performance.

***10** Many hours of software development work were to be done in Pennsylvania. *See* Pl.'s Mot. Ex. A (explaining estimated labor). Also, delivery of the software enhancements to North Carolina was part of plaintiff's anticipated performance and a condition to receipt of final payment. *See id.* (explaining "Payment Grouping"). Plaintiff's performance, then, was to be in both Pennsylvania and North Carolina.

Also at issue in this action is the performance of defendant. *See* Amend. Com pl. ¶ ¶ 6-17. "The state where performance is to occur under a contract has an obvious interest in the nature of the performance and in the party who is to perform." *See* Rest. (2d) Conflicts § 188 cmt. e. Defendant's performance was to occur primarily in North Carolina, where defendant was to test the software and to remit payment therefor. *See* Pl.'s Mot. Ex. A. Consequently, this factor favors clearly the law of neither state.

d. Location of the subject matter.

The subject matter of the relevant contract was software enhancements for a computer system in North Carolina. *See* Pl.'s Mot. Ex. A. They were to be customized for defendant's operations in North Carolina. *See* Pl.'s Mot. Ex. A. By the terms the earlier agreements, the systems were to be used only in North Carolina in the absence of notice to the plaintiff. *See id.* Ex. B art. 7; *id.* Ex. C art. 5. This contact favors application of North Carolina law.

e. Place of domicile, residence, incorporation or business.

As already explained, this contact favors Pennsylvania. *See supra,* Part III.C.1.d.

f. Weighing the contacts.

Although each party has a Pennsylvania presence, each party also maintains its principal place of business in a different state from the other. *See* Amend. Compl. ¶ ¶ 1 & 2. As previously explained, this contact favors application of Pennsylvania law marginally. *See supra,* Part III.C.1.e.

The contract was negotiated in North Carolina. *See* Pl.'s Mot. Ex. D. The place of negotiation is a significant contact because the parties actually met and concentrated most of their negotiation in one place. *See* Rest. (2d) Conflicts § 188 cmt. e. Thus, plaintiff's visit to defendant's North Carolina office to negotiate the contract significantly favors application of North Carolina law.

North Carolina was the place of contracting because the last binding act occurred therein. *See* Pl.'s Mot. Ex. A. Although this factor favors application of North Carolina law, generally it is given only moderate consideration. *See* Rest. (2d) Conflicts § 188 cmt. e.

Plaintiff agreed to develop software in Pennsylvania, to deliver the software to North Carolina, and to accept final payment after delivery and acceptance in North Carolina. *See* Pl.'s Mot. Ex. A. The performance of this contract was to vary depending on the party and the part of the contract at issue. This contact favors application of Pennsylvania law to the extent that more actual work was to be done in Pennsylvania than in North Carolina. Nonetheless, the quality of the performance in North Carolina-delivery of the software and payment therefor-mitigate the exclusivity of Pennsylvania's relationship.

***11** The purpose of the contract was to provide software enhancements to North Carolina. *See id.* The location of the subject matter of the contract is of particular relevance to the state of its situs and the expectations of the parties. *See* Rest. (2d) Conflicts § 18 cmt. e. [FN9] This contact strongly favors application of North Carolina law.

FN9. Indeed, "it can often be assumed that the parties, to the extent that they thought about the matter at all, would expect that the local law of the state where the thing or risk was located would be applied to determine many of the issues arising under the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

contract." *See* Rest. (2d) Conflicts § 188 cmt. e. Defendant has offered no evidence of its expectations, and plaintiff has suggested that it expected North Carolina law to govern, and that it was never assumed any other law would control. *See* Pl.'s Mot. Ex. D. Although this is insufficient evidence of an effective choice of law by the parties, it is evidence of the reasonable expectations of the parties, which the contact analysis is to effect. *See* Rest. (2d) Conflicts § 6(2)(d) & cmt. g.

I conclude that the qualitative nature of the contacts favors application of the North Carolina deceptive trade practices law. FN10 A contract whose subject matter was located in North Carolina was negotiated, formed, and partly performed in North Carolina. The partial performance of the contract in Pennsylvania and the fact that both parties now do business in Pennsylvania do not, qualitatively, undermine the strength of the relationship between the parties, the contract, and North Carolina.

FN10. The contact analysis is a practical means of giving effect to the underlying policies and principles which generally control this area of law, including:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
Restatement (Second) of Conflicts § 6(2).
None of the articulated criteria contravene the finding that relevant contacts support an application of North Carolina law. Application of North Carolina law to this disputed issue accounts for the "needs and policies of other states" by considering the relationship between he parties, the states, and the litigation, and favoring the law of the state with the strongest relation. *See* Rest. (2d) Conflicts § 6 cmt. d. Nor will application of North Carolina law offend the policies of Pennsylvania regarding the question of deceptive trade practices. *See supra,* Part III.B. Actually, application of North Carolina law on this issue will further the interests of North Carolina. *See supra,* Part III.B. The justified expectations of the parties will also be protected to the extent articulated and to the extent they may reasonably be inferred from the relationship of the parties. *See* Rest. (2d) Conflicts § 6 cmt. g. As explained, the basic policies of punishment and deterrence favor application of the law of the state in which the tortious conduct took place. Finally, certainty, predictability, and ease of determination are all furthered, in the absence of an express choice of law by the parties, by applying the laws of the state with the strongest relationship to the parties and the cause of action involved. Similarly, focusing on those relationships discourages forum-shopping. *See* Rest. (2d) Conflicts § 6 cmt. i. In short, there is no principle of conflict of laws which is undermined by the result of the contacts analysis in this matter.

D. States' Interests.

In Part III.B, *supra,* the interests of both Pennsylvania and North Carolina were elucidated as they pertain to a cause of action for deceptive trade practices. The interests of North Carolina favor application of its law to punish and deter unethical conduct by North Carolina businesses. In contrast, Pennsylvania has no interest, under the law of deceptive trade practices, in providing a remedy to Pennsylvania businesses. Consequently, North Carolina's interest will be furthered and Pennsylvania's will not be compromised. In short, analysis of the interests of the state is in accord with the finding that North Carolina's deceptive trade practices law should govern that cause of action.

CONCLUSION

A Pennsylvania plaintiff brought this action against a North Carolina defendant, alleging breach of contract and torts related thereto. Plaintiff moved the court to hold that North Carolina law should apply, and defendant responded that Pennsylvania law would be more appropriate. I conclude that the law of punitive damages does not differ between the states, and therefore that Pennsylvania's law of punitive damages should apply. I conclude further that although

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

statutory causes of action for deceptive trade practices differ between the states, a false conflict is presented which favors application of North Carolina law to protect the interests of North Carolina. An analysis of the relevant contacts and interests of the parties, the states, and the litigation further supports application of North Carolina's deceptive trade practices law.

An appropriate order follows.

Order

And now, this 16 day of December, 1999, upon consideration of plaintiff's Motion to Determine Applicable Law (Doc. No. 11), and defendant's Response thereto (Doc. No. 14), it is HEREBY ORDERED that the law of Pennsylvania shall apply to the availability of punitive damages and that the law of North Carolina shall apply to the deceptive trade practice cause of action.

E.D.Pa.,1999.
Financial Software Systems, Inc. v. First Union Nat. Bank
Not Reported in F.Supp.2d, 1999 WL 1241088 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:99cv00623 (Docket) (Feb. 05, 1999)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.