# EXHIBIT Z

**NOT FOR PUBLICATION WITHOUT APPROVAL OF THE COMMITTEE ON OPINIONS**

| | |
|---|---|
| LYNN VADINO, KAROL DEBERADINIS, and DENEEN GIANTONIO<br><br>for themselves and all others similarly situated<br>Plaintiffs,<br><br>vs.<br><br>AMERICAN HOME PRODUCTS CORP., et al.,<br>Defendants | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MIDDLESEX COUNTY<br>DOCKET NO.: MID-L-425-98<br>CIVIL ACTION<br>DIET DRUG CASE CODE #240<br><br>OPINION |

Argued: December 08, 1998
Decided: January 25, 1999

David Jacoby, Esq. (Tomar, Simoff, Adourian, O'Brien, Kaplan, Jacoby & Griziano), Attorney for Plaintiffs

Martin J. D'Urso, Esq. and William E. Hoese, Esq. (Kohn, Swift & Graf, P.C.), Attorneys for Plaintiffs

Seth R. Lesser, Esq. (Bernstein Litowitz Berger & Grossmann), Attorney for Plaintiffs

Esther Berezofsky, Esq. (Williams & Cuker), Attorney for Plaintiffs

Sol H. Weiss, Esq. (Anapol, Schwartz, Weiss & Cohan , P.C.), Attorney for Plaintiffs

Carol L. Forte, Esq. (Blume, Foldfaden, Berkowitz, Donnelly, Fried, & Forte, P.C.), Attorney for Plaintiffs

Marc. A. Saperstein, Esq. (Davis Saperstein & Solomon, P.C.), Attorney for Plaintiffs

Peter S. Pearlman, Esq. (Cohn, Lifland, Pearlman, Herrmann & Kopff, LLP), Attorney for Plaintiffs

Andrew R. Jacobs, Esq. and Michael E. Coslit, Esq. (Fitzsimmons, Ringle & Jacobs, P.C.), Attorneys for Plaintiffs

James Den-Uyl, Esq. (Garruto Trial Lawyers), Attorney for Plaintifffs

James J. Petit, Esq. (Grieitzer & Locks), Attorney for Plaintiffs

Michael Coren, Esq. (Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P.C.), Attorney for Plaintiffs

Michael Francis Lombardi, Esq. and Scott A. Telson (Law Offices of Lombardi & Lombardi, P.C.), Attorney for Plaintiffs

Richard Altman, Esq. (Pellettieri, Babstein and Altman),Attorney for Plaintiffs

Joseph R. Santoli, Esq., Attorney for Plaintiffs

Stephen A. Sheller, Esq., John P. Kopesky, Esq.,Jamie L. Sheller, Esq. (Sheller, Ludwig, Badey), Attorneys for Plaintiffs

Christopher M. Placitella, Esq. (Wilentz Goldman & Spitzer), Attorney for Plaintiffs

Roberta K. Glassner, Esq. and Bertram J. Glassner, Esq. (Wysoker Glassner & Weingartner), Attorneys for Plaintiffs

Russell D. Henkin, Esq. and Jonathan Auerbach, Esq. (Berger & Montauge) Of Counsel, Attorneys for Plaintiffs

Garwin, Bronzaft, Gerstein & Fisher, LLP of Counsel, Attorneys for Plaintiffs

Anita Hotchkiss, Esq. and Lauren E. Handler, Esq., On the Brief (Porzio, Bromberg & Newman P.C.), Attorneys for Defendants American Home Products Corporation, Wyeth Ayerst Laboratories Division, A.H. Robins Company, Inc.

Marc Wrubel, Esq. Pro Hac Vice (Arnold & Porter) National Counsel for Defendants Attorneys for Defendants American Home Products Corporation, Wyeth Ayerst Laboratories Division, A.H. Robins Company, Inc.

CORODEMUS, J.S.C.

## I. INTRODUCTION

Plaintiffs, Lynn Vadino, Karol DeBerardinis, and Deneen Giantonnio (formerly known as Deneen Varalli), ("plaintiffs") seek class certification pursuant to R. 4:32-2(a) on behalf of all persons in New Jersey who ingested fenfluramine (also known as "Pondimin®") and/or

dexfenfluramine (also known as "Redux™") and who have not been diagnosed with pulmonary hypertension or valvular heart disease. As a result of consuming the aforementioned drugs, plaintiffs allege that they are at an increased risk of developing pulmonary hypertension and valvular heart disease. Plaintiffs therefore, allege that they require periodic medical tests and examinations.

Plaintiffs ask that the medical monitoring be provided in the form of a comprehensive and integrated program funded by defendants and supervised by the court. Furthermore, plaintiffs seek additional relief, which they characterize as equitable, namely: (1) locating persons who use or used fenfluramine and/or dexfenfluramine and notifying them of the ongoing potential harm resulting from such use; (2) ongoing testing and monitoring of fenfluramine and/or dexfenfluramine users; (3) establishing an epidemiological or data analysis component to the program to detect secular trends of adverse health effects related to class members' use of fenfluramine or dexfenfluramine, including population-based studies of and the establishment of an adverse health effects registry; and (4) gathering and forwarding to treating physicians information related to the diagnosis and treatment of injuries that may result from the use of fenfluramine or dexfenfluramine.

It was made clear to this court that plaintiffs are ***not*** seeking damages for fenfluramine-induced or dexfenfluramine-induced personal injuries. Neither plaintiffs, nor future class members, have been or will have been diagnosed with pulmonary hypertension or valvular heart disease.

## II. PROCEDURAL HISTORY

Plaintiffs filed their initial complaint on October 2, 1997, in the Superior Court of New Jersey, Morris County ("Initial Complaint") as one of nine cases seeking class-wide medical monitoring relief and that motion for class certification was denied. See, Opinion dated October 7, 1998 This court voiced concern about any "carve-out" of certain claims, in particular those based

upon personal injuries, as between the group of proposed representative plaintiffs and the class they sought to represent. See Opinion dated October 7, 1998 at 20-21. Moreover, this court was also confronted with having to certify a single class among nine different actions predicated upon a myriad of causes of action pled in the underlying complaints seeking various forms of relief. See Opinion dated October 7, 1998 at 3. The original class certification motion did not present a clear and specific request for certification of a class of New Jersey diet drug users who were asymptomatic.[1]

Plaintiffs have filed an amended complaint, but that too presents problems. While plaintiffs are correct that the amended complaint provides the basis to certify a class of presently asymptomatic New Jersey consumers of fenfluramine or dexfenfluramine, who seek a court-supervised fund for medical monitoring as equitable relief; Count I still seeks relief under common law negligence. As for Counts III and IV which seek relief under the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1, et. seq. ("NJPLA"). While this court is not ruling on the merits of plaintiffs' claims, the failure to warn and design defect claims may present plaintiffs with problems of proof. However, such issues will be determined at the conclusion of discovery and subsequent summary judgment motions. Count II seeks relief under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et. seq. ("CFA"). In Count II, plaintiffs are requesting a court-supervised medical monitoring program, encompassing a fund for research and reimbursement for the costs of the drugs and/or previously incurred costs for medical examinations. This court is persuaded that the costs of medical monitoring are recoverable under the Consumer Fraud Act because the request for medical

[1] For ease of reference, "asymptomatic" or "presently asymptomatic" refers to those diet drug consumers who are presently without pulmonary hypertension or valvular heart disease.

monitoring alone is an ascertainable loss and may be categorized as economic damages.

The purpose of the Consumer Fraud Act is to protect consumers from fraud and deception, even when the alleged illegal acts were committed in good faith. Gennari v. Weichert Co. Realtors, 148 N.J. 581, 604 (1997). In pertinent part, the Act provides that:

> [t]he act, use or employment by any person of unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentations, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby is declared to be an unlawful practice. . . .

[N.J.S.A. 56:8-2.] In addition to proving the above, a plaintiff must also show "that he or she 'suffered an ascertainable loss . . . as a result of the unlawful conduct'" Gross v. Johnson & Johnson, 303 N.J. Super. 336, 344-45 (quoting Meshinsky v. Nichols Yacht Sales. Inc., 110 N.J. 464, 473 (1988). A defendant is liable for an affirmative misrepresentation "even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive." Gennari, supra, 148 N.J. at 605. Omissions by a defendant, however, require the plaintiff to prove that the defendant acted with knowledge. Ibid.

The New Jersey Supreme Court has explained that a class action should be liberally construed in litigation involving consumer fraud. In re Cadillac, supra, 93 N.J. at 435; Riley, supra, 61 N.J. at 228. The purpose behind the Court's liberal construction of this State's class action rule is to equalize the opportunity of parties, particularly plaintiffs, to pay for and enforce their rights in court. Without certification, the Court has observed that wrongs by the defendants may go without redress, and the defendants "may continue with impunity to place defective products on the market." In re Cadillac, supra, 93 N.J. at 435.

Whether or not medical monitoring damages are recoverable under the Consumer Fraud Act depends upon whether the damages are a form of "ascertainable loss." N.J.S.A. 56:8-19 provides, in relevant part, that:

> [a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . may bring an action . . . therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest.

[Id.]

More specifically, this court must determine whether plaintiffs' proposed medical monitoring fund is a form of economic or non-economic damage. In Ayers, the Supreme Court discussed the differences between claims for enhanced risk of disease and medical monitoring. Ayers v. Jackson Tp., supra, 106 N.J. at 590-91. The Court stated that, "[t]he enhanced risk claim seeks a damage award, not because of any expenditures of funds, but because plaintiffs contend that the unquantified injury to their health and life expectancy should be presently compensable, even though no evidence of disease is manifest." Id. at 590. On the other hand, the Court explained that medical monitoring seeks recovery of "specific monetary damages measured by the cost of periodic medical examinations." Id. at 591. In the present matter, because of plaintiffs' exposure to alleged defective drugs, they claim that they will require medical monitoring of disease associated with their use of the drugs and that monitoring is a claim for ascertainable loss, i.e. monetary or economic damages.

The only definitive answer to the question of whether medical monitoring seeks to remedy an economic injury comes from the third circuit. In the case of, In re Paoli R.R. Yard PCB Litig. v. Southeastern Pa. Trans. Auth., 916 F.2d 829 (3d Cir. 1990), Judge Becker found that, "Plaintiffs

are asking for money because, allegedly their exposure to PCB's requires them to bear the costs associated with increased medical surveillance. This is an economic injury. . . ." Id. at 861.

There are two reported decisions in New Jersey which discuss whether a plaintiff may recover for non-economic injury under the consumer fraud act. In Jones v. Sportelli, 166 N.J. Super. 383 (Law Div. 1979), the court considered whether pain and suffering was compensable under N.J.S.A. 56:8-19. Id. at 391-92. Sportelli involved an action against a manufacturer with respect to damages in its marketing of an IUD. Plaintiffs sought damages under the consumer fraud act in the form of pain and suffering and loss of consortium in addition to compensatory damages. Id. at 385-86. After reviewing two possible interpretations of the Act's language, the court held that "[s]ince monetary damages for pain and suffering are awarded because of a loss of good health and not on the basis of a loss of moneys or property, treble recompense of pain and suffering is not statutorily authorized and cannot be recovered." Id. at 392. As to threefold damages, should plaintiffs be successful at trial, this court thinks that such monies will be entered into the monitoring fund to satisfy plaintiffs' second prong of their medical monitoring relief, which is medical research. This should be done to maintain the equitable nature of plaintiffs' relief as sought under Rule 4:32-1(b)(2).

More recently, in Gennari v. Weichert Co. Realtors, supra, the New Jersey Supreme Court re-examined whether a party may recover non-economic damages pursuant to the Consumer Fraud Act. Gennari, 148 N.J. at 612. In that case, plaintiffs sought recovery for "foreseeable consequences including interference with beneficial use and enjoyment of [their] new homes." Id. The Supreme Court observed, as the Sportelli court had, that there are two different interpretations of the Act. Id. The first reading is "that a party who suffers any ascertainable loss has standing to sue and can recover three times any and all damages sustained." Id. The second interpretation is that "damages

are limited to ascertainable loss." Ibid. The court determined that the latter reading was more appropriate because, at common law, a party could only recover for injuries sustained. Ibid; accord Sportelli, supra, 166 N.J. Super. at 391 (observing that statutes are strictly construed when they establish rights not recognized by or in derogation of common law, and common law only recompensed party for injury sustained). Thus, the Supreme Court held that "[a]bsent a clear expression of legislative intent changing the common-law rule, . . . [it was] reluctant to read the Act to encompass non-economic losses." Gennari, supra, 148 N.J. Super. at 612-13.

The present plaintiffs' request for a medical monitoring fund is more akin to the loss of monies associated with the purchase and insertion of an IUD and the subsequent medical services needed to correct physical injury that the Sportelli court observed is compensable under the Consumer Fraud Act. Sportelli, supra, 166 N.J.Super. at 392. Although plaintiffs are not obligated to prove reliance under the Consumer Fraud Act. Carroll v. Cellco Partnership, 313 N.J. Super. 488, 501, they must show that their ascertainable loss is causally related to defendants' unlawful conduct. Ibid. This court agrees with the Carroll court that causation poses "special difficulties" in the context of a class action because of the individual nature of the claims. Ibid. These difficulties however are not so insurmountable in this context where there are only two (2) defendants and three (3) identified products; not an entire industry and unidentifiable products. See In re Copley Pharmaceutical, Inc., 161 F.R.D. 456 (1995)(a Wyoming district court case which involved a manufacturer of a prescription pharmaceutical that was contaminated and recalled nationwide.) The Copley court certified a class under Rule 23(b)(3) for strict liability, negligence, negligence per se, breach of warranties and declaratory relief. Id. at 457. The Copley court found that unlike tobacco, which is an industry-wide suit, that matter dealt with only one identified manufacturer and one product in an

enormous pharmaceutical industry and that as to causation, individual issues were not uncontrollable. Id. at 461. Applying the same analysis to the facts in the present matter, the costs of medical monitoring are a form of economic damages and compensable under the consumer fraud act. Whether or not this remedy will be available after discovery and/or motions in limine, is yet to be seen.

The New Jersey Products Liability Act was devised "to establish clear rules [in] actions for damages for harm caused by products, including certain products under which liability is imposed." N.J.S.A. 2A:58C-1. The Act, in relevant part, provides:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a.) deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b.) failed to contain adequate warnings or instructions, or c.) was designed in a defective manner. [N.J.S.A. 2A:58C-2.]

One policy behind the Act was to "limit the liability of manufacturers so as to 'balance the interests of the public and the individual with a view towards economic reality.'" Zaza v. Marquess and Nell, Inc., 144 N.J. 34, 48 (1996) (quoting Shackil v. Lederle Labs., 116 N.J. 155, 188 (1989)). The New Jersey Legislature, however, did not intend the Act to be the exclusive authority for products liability law in this State. Jurado v. Western Gear Works, 131 N.J. 375, 384 (1993). See also, Restatement (Third) of Torts: Products Liability and New Jersey Law-Not Quite Perfect Together, William A. Dreier, 50 Rutgers Law Journal 2059 (1998). It "generally leaves unchanged the . . . theories under which a manufacturer . . . may be held strictly liable for harm caused by a product. . . . " Ibid.

In a strict liability action the focus is on the product defect not the manufacturer's conduct.

A plaintiff need not prove that a defect was caused by any negligence or fault of the manufacturer. The manufacturer is charged with knowing the harmful propensities of its product. In a manufacturing defect action, plaintiff must prove that the defect was in the product when it left the manufacturer and that the defect was the proximate cause of the damage. Coffman v. Keene Corp., 133 N.J. 581, 583 (1993).

Under the Act when using a design defect or warning defect analysis, the issue is the reasonableness of the manufacturer in marketing a product of such design or warning or by not warning of the alleged dangers of the product. Then the issues of fault and proximate cause enter the case. Jurado, supra, 131 N.J. at 384. The proximate cause standard is the same as under a negligence theory. However, in strict liability the plaintiff must demonstrate that he or she did not affirmatively misuse the product. If the plaintiff did misuse the product, plaintiff must show that his misuse was reasonably foreseeable. Brown v. United States Stove Co., 98 N.J. 555 (1984). A plaintiff must show that the product was not "'reasonably fit, suitable and safe for its intended or reasonably foreseeable purposes. . . . '" Jurado, supra, 131 N.J. at 384 (quoting Michalko v. Cooke Color & Chem Corp., 91 N.J. 386, 394 (1982)).

In a failure to warn strict products liability action, the defect is the absence or inadequacy of a warning that a product may cause injury. Coffman, supra, 133 N.J. at 593. The New Jersey Products Liability Act expressly defines a manufacturer's duty to the consumer in a failure to warn case. It states:

> [i]n any product liability action the manufacturer or seller shall not be liable for harm caused by a failure to warn if the product contains an adequate warning or instruction or, in the case of dangers a manufacturer or seller discovers or reasonably should discover after the product leaves its control, if the manufacturer or seller provides an adequate warning or instruction. An adequate warning or instruction is one that a reasonably

prudent person in the same or similar circumstances would have provided with respect to the danger and that [the] communication [provides] adequate information on the dangers and safe use of the product. . . .[N.J.S.A. 2A:58C-4.]

One such recent recognition of the flexibility of our courts came in the Supreme Court's decision in James v. Bessemer Processing Co., Inc., 155 N.J. 279 (1998). The issue in that case was whether plaintiff in a toxic tort, failure to warn case can establish a prima facie case on the elements of "medical causation" by satisfying the "frequency, regularity and proximity" test in Sholtis, absent evidence that the illness was caused by a specific product manufactured by a specific defendant. Sholtis v. American Cyanamid, 238 N.J.Super. 8 (1989). The Sholtis court held that a plaintiff may demonstrate such medical causation by: (1) providing factual proof of frequent, regular and proximate exposure to a defendant's product; and (2) that the plaintiffs' injuries were proximately caused by exposure to the defendant's product. Id. at 299. To prove medical causation in a toxic tort action, a plaintiff must show that the exposure to each defendant's product was a substantial factor in causing or exacerbating the disease. Id. Again, this remedy may not survive the merits portion of the case and/or motions in limine.

## III. DISCUSSION.

### A. Standard For A Motion To Dismiss

Pursuant to Rule 4:32 (b) of the New Jersey Rules of Court, this court has certified a class of New Jersey plaintiffs for medical monitoring relief and now the question becomes under which theory may plaintiffs' claim lie, the CFA or the NJPLA. It is this court's opinion that, at this juncture in the litigation, plaintiffs may seek such relief under either Act. However, AHP moved pursuant to

R. 4:6-2(e) for failure to state a claim upon which relief can be granted as to plaintiffs' CFA claim.[2]

When considering a motion pursuant to R. 4:6-2(e) for failure to state a claim upon which relief can be granted, the court is required to search the complaint to determine a cause of action can be found within its four corners.[3] Relying on Printing Mart v. Sharp Electronics Corp., 116 N.J. 739, 746 (1989), Judge Drier in Van Natta Mechanical Corp. v. Di Staulo, 277 N.J. Super. 175, 180 ( App. Div. 1994), follows the analysis set forth in prior considerations by stating:

> A reviewing court "searches the complaint in depth and with great liberality to ascertain whether the fundamental cause of action may gleaned even from obscure statement of claim, opportunity being given to amend if necessary." At this preliminary stage of the litigation the court is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint... For the purpose of analysis, plaintiffs are entitled to every reasonable inference of fact... The examination of a complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a generous and hospitable approach.

Quoting, DiCristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 252 (App. Div. 1975).

As noted in New Jersey Court Rules, Rule 4:6-2, comment 2, "[E]very reasonable inference is therefore accorded the plaintiff and the motion granted only in rare instances and ordinarily without prejudice." See, Liberman v. Port Authority, 132 N.J. 76, (1993), which admonished the courts to approach motions to dismiss for failure to state a cause of action pursuant to Rule 4:6-2(e) with caution because such motions are usually brought at the earliest stage of the litigation, they

---

[2]As noted at oral argument on January 22, 1999, plaintiffs' opposition to defendant's motion to dismiss was procedurally deficient in that it lacked a statement of facts. Ordinarily a responsive brief that does not contain a statement of facts or a counter-statement of facts should be considered by the court as the responsive party's acceptance of the moving party's statement of facts as true. However, the court considered plaintiffs' statement of facts from the within motion for reconsideration because that motion was interrelated to the motion to dismiss. In fact, disposition of both motions are encompassed here.

[3]In the present matter, defendants do not seek a motion to dismiss outside the pleadings and therefore this court will not use the Rule 4:46 standard in determining this matter.

should only be granted in the rarest instances. Printing Mart, supra., 116 N.J. at 772. Therefore, every reasonable inference is afforded the plaintiff and the motion is only granted in rare instances and ordinarily without prejudice. See, F.G. v. MacDonnell, 150 N.J. 550, 556 (1997); Craig v. Suburban Cablevision, 140 N.J. 623, 625-626 (1995); and Lieberman v. Port Authority, 132 N.J. 75 (1993).

In light of the foregoing, and after searching the complaint in depth and with liberality and affording plaintiff every reasonable inference, this court holds that defendant's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 4:6-2(e) is DENIED. If after further discovery defendants wish to bring an appropriate motion, this court will entertain such motion at that time.

B. New Jersey Court Rule 4:32

New Jersey Court Rule 4:32 "is a replica of Rule 23 of the Federal Rules of Civil Procedure."[4] Riley v. New Rapids Carpet Center, 61 N.J. 218, 226 (1972). Plaintiffs seek class certification under Rule 4:32-1(a) and (b)(2), or alternatively (b)(3).

C. Plaintiffs Have Met The Requirements of R. 4:32-1(a)

This Court has held -- and it is presently the law of the case--that the Rule 4:32-1(a) requirements of numerosity, commonality, typicality and adequacy of representation have been met. See, Opinion dated October 7, 1998 at 13-20, 22.

---

[4]Because R. 4:32 is modeled after Rule 23 of the Federal Rules of Civil Procedure, relevant federal court decisions are cited where helpful in interpreting Rule 4:32. Cf. In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 424-25 (1983).

1. The Class Is So Numerous That Joinder Is Impracticable

R. 4:32-1(a)(1) requires that the class be so numerous that joinder of all members is impracticable. The fact that the precise number of class members is not known does not bar class certification. Gallano v. Running, 139 N.J. Super. 239, 245, (Law Div. 1976); Kronisch v. Howard Savings Institution, 133 N.J. Super. 124, 132 (Ch. Div. 1975); Vargas v. Calabrese, 634 F.Supp. 910, 918 (D.N.J. 1986); In re Data Access Systems Securities Litigation, 103 F.R.D. 130, 137 (D.N.J. 1984).

This court has found that the numerosity requirement of R. 4:32-1(a) is easily met in this case: "[D]efendant AHP estimates [the proposed class of] New Jerseyans numbers in the tens of thousands, which this Court deems sufficient to meet the numerosity requirement of the statute. Hence, this court finds that plaintiffs' class of diet drug users is sufficiently numerous that joinder is impracticable and numerosity is established." Opinion dated October 7, 1998 at 13. Accordingly, the first requirement of Rule 4:32-1(a) is satisfied.

2. There Are Questions Of Law Or Fact Common To The Class

R. 4:32(a)(2) requires the existence of common questions of law or fact. This prerequisite requires only that there be some questions of law or fact common to the class. It is not necessary that all the factual or legal issues raised by the case concern each class member. Vargas v. Calabrese, supra, 634 F. Supp. at 918. This court has identified fourteen questions of fact and law in the litigation before it that are common to The Class and has held that the "plaintiffs in the present matter satisfy the commonality prong of Rule 4:32-1(a)." See, Opinion dated October 7,

Dbtf !1;15.dw11246.SI L.BKC!!!!!Epdvn f ou44.8!!!!!Gjrhe!23041031115!!!!!Qbhf !27!pg53

1998 at 16.[4]

3. Plaintiffs' Claims Are Typical of The Claims of The Class

R. 4:32-1(a)(3) requires that the claims of the representative plaintiffs be typical of those of the class. The representative's claims need only be typical, not identical. To a large extent, typicality overlaps with the commonality and adequacy requirements. Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985), cert. denied, 474 U.S. 946 (1985). Typicality is present where the factual circumstances of the class representatives are not "markedly different" from that of other members of the class, and where the legal theory of the plaintiffs is the same as that of the claims of the class. Id.

In the present matter, the typicality requirement is met because plaintiffs' claims "have the essential characteristics common to the claims of the class," In re Cadillac, supra, 93 N.J. at 425, and arise from the same practice and course of conduct that forms the basis of the claims of the class. Gross v. Johnson & Johnson, 303 N.J. Super. 336, 432 (App. Div. 1997). See also, Baby Neal v. Casey, 43 F.3d 48, 58 (3rd Cir. 1994), Shamberg v. Ahlstrom, 111 F.R.D. 689, 695 (D.N.J. 1986); Vargas v. Calabrese, supra, 634 F.Supp. at 919.

The present plaintiffs contend that all have been similarly aggrieved by defendants' conduct, all are the victims of defendants' illegal conduct, all seek recovery for breaches of the same statutory duties, and all press identical legal claims. Additionally, plaintiffs assert that each has suffered damages upon ingesting fenfluramine or dexfenfluramine, which defendants manufactured and distributed. Finally, plaintiffs contend that they, as well as each member of The Class was damaged

[4] This court noted that concerns regarding uncommon issues which might "normally" bar class certification could possibly be addressed through the use of the subclass device. Opinion dated October 7, 1998 at 15 and n.5.

in the same way due to defendants' fraudulent and unconscionable commercial practices.

In its prior opinion, this court found that "the named plaintiffs are typical of the class to the extent that they overlap or fall into a range of claims asserted by the class." See, Opinion dated October 7, 1998 at 18. Furthermore, the court found that "despite the factual differences described" by defendants, they failed to demonstrate that the "'legal theories of the named plaintiffs potentially conflict with those of the absentees.'" Id. (quoting, Baby Neal v. Casey, 43 F.3d at 57). This court has concluded that "plaintiffs claims are typical of the class" and the element of typicality is satisfied. See, Opinion dated October 7, 1998 at 18

4. Adequacy of Representation

The final requirement of R. 4:32-1(a) is that the plaintiffs must adequately represent the interests of The Class. Courts have interpreted R. 4:32-1(a)(4) to require that 1) the plaintiff's attorney must be qualified, experienced, and generally able to vigorously conduct the proposed litigation, and 2) the plaintiff must not have interests antagonistic to those of the class. See, Gallano v. Running, 139 N.J. Super. 239,(L.D. 1976); Wetzel v. Liberty Mutual Insurance Co., 508 F.2d 239, 247 (3d Cir.), cert. denied, 421 U.S. 1011 (1975). The burden is on the opposing party to demonstrate that the proposed representation will be inadequate. Delgozzo v. Kenny, 266 N.J. Super. 169, 188 (1993).

Both prerequisites of adequacy of representation are met. As discussed infra, the representative plaintiffs' interests are co-extensive and not in conflict with the interests of The Class members and plaintiffs' claims are typical of the claims of the other members of The Class. Similarly, there is no dispute about whether plaintiffs' counsel are capable of prosecuting this

litigation.[5] This court has made a determination that, "counsel in this action is qualified and generally able to conduct this litigation." Opinion dated October 7, 1998 at 22.

Moreover, plaintiffs do not present the court with an "Entire Controversy Doctrine" dilemma. As of September 1, 1998, the amendment of Rule 4:30A along with Rule 4:5-1(b) and the adoption of Rule 4:29-(b) represent a change in the application of the entire controversy doctrine. Mandatory party joinder has been eliminated and preclusion of a successive action against a person not a party to the first action has been abrogated except in special situations involving both inexcusable conduct as in Crispin v. Volkswagenwerk, A.G., 96 N.J. 336 (1984), and substantial prejudice to the non-party resulting from omission from the first suit. See, Mitchell v. Procini, 315 N. J. Super. 557 (App.Div. 1998) and Dinzo v. Butler, 315, N.J. Super. 317, 321(App.Div. 1998) (wherein the court stated that, while mandatory joinder is no longer required, disclosing the identity of a non-party who has potential liability stemming from the same transactional facts is required.) Id.

Since mandatory joinder of parties is no longer required, the entire controversy doctrine does not preclude certification nor is it applicable in this instance because the facts in the present matter do not arise out of the same occurrence or transaction. Furthermore, even if the facts did arise out of the same occurrence or transaction, as a matter of fairness to all parties the court could manage the claims in its discretion. Moreover, the entire controversy doctrine does not affect persons who have unknown, unarisen or unaccrued injuries as of the time of the original action. Harley Davidson v. Advance Die Casting, 150 N.J. 489, 494 (1997). Therefore, this court holds that the representatives'

---

[5] Although counsel representing plaintiffs Vadino, DeBerardinis and Giantonnio from the inception of their case have been the law firms of Cohn Lifland Pearlman Herrman & Knopf, L.L.P. and Berger & Montague, P.C., for purposes of the present motion and the duration of the litigation these firms are joined by the constituent members of the New Jersey Diet Drug Plaintiffs' Steering Committee in seeking to serve as class counsel. Firm resumes have previously been provided to the Court with Plaintiffs' Original Class Certification Motion dated April 20, 1998.

actions have not jeopardized any legitimate claims that many absent class members may have against the defendant in this action.

D. Plaintiffs Have Met the Requirements of R. 4:32-1(b)(2)

This court held that "medical monitoring may be certified as a class action under R. 4:32-1(b)(2)," and that "[t]he request for the establishment of a fund for monitoring and research is injunctive in nature and could be established under this court's equity powers, if plaintiffs have met their burden." Opinion dated October 7, 1998, at 27-28. Importantly, this court has held that medical monitoring does not inherently raise individualized issues that preclude class treatment. Opinion dated October 7, 1998 at 23. This was determined after noting that, "individualized issues of medical history and causation are not inherent because government agencies have recognized medical surveillance for ALL diet drug users." Id. Also, actual injury is not required before medical monitoring can be awarded. Id. at 23-24.

Furthermore, the state courts in Texas and Washington recently have certified medical monitoring classes under the analog of R. 4:32-1(b)(2), finding that medical monitoring relief was primarily injunctive. See, Earthman, et al. v. American Home Products Corporation, et al., No. 97-10-03790-CV, District Court of Montgomery County, Texas (October 14, 1998)(certifying a medical monitoring class of fenfluramine and dexfenfluramine users for relief in the form of an injunction creating a medical screening program for Class member); Fred St. John, et al. v. American Home Products Corp., et al., No. 97-2-06368-4, Wash. Super., Spokane Co. (certifying a Rule 23(b)(2) medical monitoring class of fenfluramine and dexfenfluramine users)(October 23, 1998).[6]

---

[6] The Court in Earthman certified a class where liability for medical monitoring was separately predicated on each of the following causes of action: strict products liability, negligence, or implied warranty claims. The St. John court however,

Recently, in Barnes v. American Tobacco Co., 176 F.R.D. 479 (E.D. Pa. 1997), the court analyzed whether individual issues of law and fact developed during discovery in the litigation compelled it to decertify a Fed. R. Civ. P. 23(b)(2) class action of smokers that it had formally certified.[7] The Barnes court recognized that an action pursuant to (b)(2) must consist of a cohesive and homogeneous class of individuals. Because a class must be cohesive, the Barnes court concluded that, "it is required to examine whether the proposed class herein implicates too many individual issues and manageability problems to be certified under Rule 23(b)(2)." Id. at 499. The court stated that such an examination is required because "[a] (b)(2) class action with many individual issues would quickly degenerate into separate and distinct mini-trials, thus defeating the original purposes for class certification." Id. Based upon its reexamination of the matter, the court concluded that there were too many individual issues and manageability problems to be certified under Fed. R. Civ. P. 23(b)(2). Ibid. Among the issues that the Barnes court determined required decertification were addiction, alleged defects in defendants' products, and defendants' affirmative defenses. Id. at 499-502.

Defendants assert that certification is inappropriate in the present matter because the purported classes are not cohesive and there are too many individual issues concerning individual liability and affirmative defenses. Further, defendants argue that the levels of exposure to the drug and plaintiffs' pre-existing medical conditions vary significantly and different class members are

---

certified a class based on an initial screening test and the fact that in order to be a member of the class a plaintiff must have ingested the diet drugs for more than three (3) months. See. No. 97-2-06368-4, Wash. Super.. Spokane Co. Court Transcript at page 21.

[7] In reviewing its earlier decision in which it granted certification pursuant to Fed. R. Civ. P. 23(b)(2), the court stated that it did not err in its analysis of the individual issues that existed before it at that time. Id. at 496. Relying on Fed. R. Civ. P. 23(c)(2), the court explained that it had a continuing obligation and duty to define, redefine, subclass or decertify a class when newly developed evidence requires such action. Id. at 498.

already under a physician's care receiving various levels of supervision base on their pre-existing medical conditions and risk factors.

Additionally, defendants assert that the courts have consistently denied class certification where the allegations would require separate proofs for individual class members and defendants argue that this is such a case. See MacNeil, supra, 141 N. J. Super. at 412-13. Defendants contend that fraud, reliance, learned intermediary, failure to warn, and product defect, will require individual proofs and illustrate the presence of numerous individual issues involved in this litigation, and the inability to identify a cohesive class for R. 4:32-1 purposes. They further assert that any finding will require an independent analysis of each plaintiff in the class as to their drug combinations and longevity of use and whether or not the dosage was exceeded.

In reply, plaintiffs assert that had the truth been known about the drugs, then no doctor would have prescribed them and no individuals would have used them; which is why the drugs are now off the market. They contend that the FDA removal of the drug from the market removes from the learned intermediary the ability to take into account the propensities of the drug and the susceptibilities of the patient and to give highly individualized warning to the ultimate user based on the physicians specialized knowledge. See Spychala v. G.D. Searle & Co., 705 F.Supp. 1024 (D.N.J. 1988). Moreover, plaintiffs allege that defendants not only perpetrated a "fraud" on the consuming public and the physicians but upon the FDA as well.

Defendants argue that this court cannot certify a class under R. 4:32-1(b)(2) because the relief sought by the plaintiffs is not primarily injunctive. They contend that the medical monitoring program suggested by the plaintiffs is monetary in nature. Plaintiffs counter that the monetary relief sought by the representatives is incidental and related to their claims for medical monitoring.

Plaintiffs argue that when medical monitoring is administered through a court-supervised fund, as is requested here, the relief sought is equitable in nature and can be certified pursuant to R. 4:32-1(b)(2).

Additionally, the equitable nature of the relief sought by plaintiffs is illustrated by the benefits conferred by and derived from the group or class-wide measures sought and which cannot be obtained from a compensation scheme limited to individual-by-individual payment for prospective medical surveillance. Benefits of the class-wide relief sought here, such as early identification of new conditions or patterns and trends among the exposed population of diet drug users, are an essential component of that relief and are absent without an overarching medical monitoring program available to purported class as a whole. This is relief that is appropriate for class members. See, Ayers v. Township of Jackson, 106 N.J. 557, 605 (1987) (a medical monitoring program may have "the beneficial effect of preventing or mitigating serious future illnesses and thus reduce the overall costs to the responsible parties"). See also id. at 608 ("the use of a court-supervised fund to administer medical-surveillance payments in mass exposure cases, particularly for claims under the Tort Claims Act, is a highly appropriate exercise of the Court's equitable powers").

Here, plaintiffs seek relief similar to that sought in Day v. NLO, Inc., 144 F.R.D. 330 (S.D. Ohio 1992) where the relief requested was for the court to "establish an elaborate medical monitoring program of its own, managed by court-appointed court supervised trustees, pursuant to which a plaintiff is monitored by particular physicians and the medical data utilized for group studies." Day v. NLO, Inc., supra, 144 F.R.D. at 335 (S.D. Ohio 1992). The district court in Day, relying on authorities such as Werlein v. U.S., 746 F. Supp. 887 (D. Minn. 1990), and Barth v. Firestone Tire

& Rubber Co., 661 F. Supp. 193 (N.D. Cal. 1987), held that, in such circumstances, the relief constitutes injunctive relief as required by federal Rule 23(b)(2). Day v. NLO, Inc., supra, 144 F.R.D. at 335. The Sixth Circuit in In re NLO, Inc., 5 F.3d 154 (6th Cir. 1993), upheld the Day court's reasoning and denied defendants' mandamus petition challenging class certification under Rule 23(b)(2). The In re NLO, Inc. court noted that, "although none of the cases relied upon by the district court specifically hold that medicai monitoring claims are cognizable under Rule 23(b)(2), they generally support the proposition that such relief is injunctive in nature." Id. at 159.

This court recognizes that in order for the relief sought to be characterized as "injunctive" it must not be exclusively or predominantly in the form of money damages. However, "some amount of monetary relief is allowable in a R. 23(b)(2) class action." Allison v. Citgo Petroleum Corp., 151 F.3d 402, 413 (1998); see also, Opinion dated October 7, 1998 at 28. Moreover, the committee found that "[m]onetary damages are incidental if they 'flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief.'" Allison, supra, 151 F.3d at 415. The test of whether damages are incidental requires:

> [liability for incidental damages] require additional hearings to resolve the disparate merits of each individual's case; [they] introduce new and substantial legal or factual issues, [or] entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

Allison, supra, 151 F.3d at 415. In this case, plaintiffs allege that they will establish defendants' liability under the CFA, NJPLA, and common law utilizing the identical proofs for each member of The Class. Plaintiffs contend that expert testimony will establish the need for medical monitoring

on a class-wide basis and such testimony will not vary class member-by-class member.[8] In support of that proposition, plaintiffs again rely on Allison:

> Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established. See Manual for Complex Litigation, supra, at 348 (citing, Simer v. Rios, 661 F.2d 655 (7th Cir. 1981)); see also, e.g., Arnold v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439 (N.D. Cal. 1994) (defendant's liability entitled class to a statutorily mandated damage award). That is, the recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief. Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances.

Allison, supra, 151 F.3d at 415.

Plaintiffs further contend that defendants' liability for the medical monitoring and additional incidental economic relief all arises from the same predicate acts and omissions. The question of ascertaining costs of reimbursement for purchase of the defective products (fenfluramine or dexfenfluramine) is reduced to an objective and arithmetic exercise and individual class members may simply offer proof of purchase of these diet pills.[9]

The U.S. District Court in the Eastern District of Pennsylvania has explained the difference in a medical monitoring claim that seeks legal (monetary/ lump sum payment) relief and a medical

---

[8] In contrast, the plaintiffs in Allison sought both compensatory and punitive damages for racial discrimination under Title VII and § 1981, requiring highly individualized proofs of damage: "The very nature of these damages, compensating plaintiffs for emotional and other intangible injuries, necessarily implicates the subjective differences of each plaintiff's circumstances; they are an individual, not class-wide remedy. The amount of compensatory damages to which any individual class member might be entitled cannot be calculated by objective standards." Allison, 151 F.3d at 417.

[9] It is well-settled that class certification will not be denied in treble-damage antitrust and securities fraud actions simply because the class members necessarily must demonstrate proof of purchase of the offending product or stock on an individual basis. See, e.g., Bogosian v. Gulf Oil Corp., 561 F.2d 434, 456 (3d Cir. 1977), cert. denied, 434 U.S. 1086 (1978); Epstein v. MCA, Inc., 50 F.3d 644, 669 (9th Cir. 1995)("The amount of damages is invariably an individual question and does not defeat class action treatment.")(Citations omitted).

monitoring claim that seeks equitable (injunctive/court administered fund "payment") relief. In Fried v. Sunguard Recovery Services, Inc., 925 F. Supp. 372 (1996), citizens of Pennsylvania filed a Clean Water Action against contractors for alleged violations of the laws regarding asbestos removal and included a damage claim for medical monitoring. Id. at 372. The court was faced with the question of whether or not plaintiffs claim for medical monitoring was an issue for a jury. Id. at 372. The court concluded that a plaintiff may seek medical monitoring expenses in one of two ways. "The plaintiffs can either seek to establish a fund to compensate them or they can seek a lump sum disbursement. The first request seeks equitable relief. The second demands legal relief." Id. at 373-74. See also Cook v. Rockwell International Corp., 778 F. Supp. 512, 515 (D.Colo. 1991). However, the court went on to further clarify by stating that, "a plaintiff will only be entitled to medical monitoring if he or she can prove 'through reliable expert testimony, that surveillance to monitor the effects of exposure to toxic chemicals is reasonable and necessary.'" Id. at 374-75, citing Burns v. Gauchos Mining Corp., 752 P.2d 28, 33 (App.1987). Even though establishing "a fund mechanism that encourages regular medical monitoring for victims of toxic exposure clearly serves the public health and is within the court's equitable powers", Ayers v. Jackson Township, 106 N.J. at 609, defendants assert that the New Jersey Supreme Court specifically would not expand traditional theories of tort liability in a case which involves prescription drugs. See Shackil v. Lederle Laboratories, 116 N.J. 155 (1989). Moreover, defendants further assert that recovery for medical monitoring will not be allowed if a reasonable physician would not prescribe the monitoring procedures. Hansen v. Mountain Fuel Supply Co., 858 P.2d 970, 980 (Utah 1993). Where such individual determinations are necessary, certification pursuant to paragraph (b)(2) is improper. Allison v. Citgo Petroleum Corp., 151 F.3d 404, 419(1998).

In the instant matter, medical monitoring may be certified as a class action under R. 4:32-1(b)(2). The request for the establishment of a fund for monitoring and research is injunctive in nature and could be established under this court's equity powers. See Ayers, supra, 106 N.J. at 608.

E. Plaintiffs Have Not Met the Requirements of R. 4:32-1(b)(3)

Having established that the requirements of R. 4:32-1(a) are met, the plaintiffs' remaining argument is that if a class is not certified under Rule 4:32-1 (b)(2), then the rule permits a Rule 4:32-1(b)(3) class to be considered. In analyzing a potential class under R. 4:32-1(b)(3), a court must make two separate determinations. First, the court must determine whether common questions of law and fact predominate over individual issues. Id. Second, the court must examine whether a class action is the superior method of adjudication. Id. For the reasons set forth below, this court holds that certification under R. 4:32-1(b)(3) is not appropriate.

1. Predominance

At the outset it should be noted that predominance does not require that class member's claims be proven by identical evidence or that individual proof cannot be introduced on some issues. Predominance is a factor in the court's analysis is not a decision on the merits of the plaintiffs' claims. It merely forecasts the proof issues to be offered at trial. Opinion of October 7, 1998 at 34. Predominance of common issues of law and fact over individual issues is required because R. 4:32-1(b)(3) "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Federal Rules Advisory Committee Notes, supra, 39 F.R.D. at 102.

Predominance is not quantitatively determined by adding up the number of common and

individual issues. Carroll, supra, 313 N.J.Super. 488. The New Jersey Supreme Court has stated that predominance exists when there is a "common nucleus of operative facts" or when the class seeks to rectify a common legal grievance. In re Cadillac, supra, 93 N.J. at 430-31. The mere existence of individual issues will not prevent certification. See Opinion dated October 7, 1998.

In Delgozzo, the Appellate Division stated that a court may certify a class "even though individual questions, such as the degree of damages due a particular class member, or reliance by individual class members on defendants' alleged misrepresentations, may remain following resolution of the common questions." Delgozzo, supra, 266 N.J. Super. at 181. This court notes plaintiffs' arguments; but is forbidden from making a preliminary resolution of the factual merits of this litigation. Riley, supra, 61 N.J. at 223. [10] As the Arch court observed, "the possibility that plaintiffs' common defect theory will fail and that the class will be splintered into various subclasses-creating manageability concerns-'weighs against a finding of predominance of common issues.'" Arch, supra, 175 F.R.D. at 489 (quoting Harding v. Tambrands, 165 F.R.D. 623, 630 (D. Kan. 1996)).

Prior courts have discussed the difficulties in determining whether to certify a class in mass tort litigation. In Georgine v. Amchem Products, Inc., supra, the Third Circuit doubted whether a court could ever find that common issues of law or fact predominated in mass toxic tort litigation because:

---

10 The court must accept plaintiffs' substantive allegations, but there is a fine line between acknowledging those allegations and making a merit determination. Examining the various considerations of a litigation often involves questions that are "'enmeshed in factual and legal issues comprising the plaintiffs' cause of action.'" Id. at 489 (quoting, Coopers & Lybrand v. Livesay, 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)). As the Barnes court observed, "this [c]ourt must attempt to strike the fine balance between permissibly identifying the issues that the case will present for purposes of determining whether the requirements of Rule 23 have been met and impermissibly deciding those issues on the merits." Id.

the class members' claims vary widely in character. Class members were exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods. Some class members suffer no physical injury or have only asymptomatic pleural changes, while others suffered from lung cancer. . . . Each has a different history of cigarette smoking, a factor that complicates the causation inquiry.

[Georgine, supra, 83 F.3d at 626.] The result of these differences is that there would necessarily be "disparate applications of legal rules, including matters of causation, comparative fault, and the types of damages available to each plaintiff." Id. at 827. Similarly, in Sterling v. Velsicol Chemical Corp., 855 F.2d 1188 (6th Cir. 1988), the court stated:

In complex, mass tort accidents, where no one set of operative facts establishes liability, no single proximate cause equally applies to each potential class member and each defendant, and individual issues outnumber common issues, the district court should properly question the appropriateness of a class action for resolving the controversy. However, where the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy.

[Id. at 1197.]

Even the Advisory Committee for Rule 23(b)(3) acknowledged the limitations of certifying a class in mass torts. It observed:

A "mass accident" resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried.

[Advisory Committee Notes, supra, 39 F.R.D. at 103.]

Either certification or denial of certification by a court must depend upon the court's examination of the plaintiffs' specific claims and whether they comply with the requirements of R. 4:32. See Smith v. Brown & Williamson Tobacco Corp., 174 F.R.D. 90, 94(W.D. Mo. 1997),

wherein the court said, "[t]he only way to decide the issue in the context of this case is to examine the claims plaintiffs wish to assert and determine whether they can be presented in a manner that complies with Rule 23's requirements."

Defendants contend that plaintiffs' claim for medical monitoring depends upon proof of an underlying tort that will vary from class member to class member based on individual facts and issues. For example, the consumer fraud issues regarding marketing defective products will not only vary from defendant to defendant but also by the fact that various class members used Redux in conjunction with other drugs; others used Redux alone; and still others never used Redux at all. Thus, the presence of individual issues excludes commonality which in turn overrides the plaintiffs' attempts to establish predominance. Furthermore the court in Georgine v. Amchem Products, Inc. 83 F.3d 610, 627 (3rd Cir. 1996), commented that the commonality requirement has a low threshold in certain cases, but that the commonality requirement is higher, "in a personal injury damages class action . . . that seeks to resolve all issues, including non-common issues of liability and damages." Id. However, the Georgine court declined to establish a higher threshold of commonality in personal injury or mass tort class actions where the class encompasses all issues. Id.

Plaintiffs assert that the proposed class is maintainable and should be certified pursuant to Rule 4:32-1(b)(3). The rule requires that common questions of law and fact predominate over individualized claims, and that a class action is superior to other methods of adjudication. In re Cadillac, 93 N.J. at 426. Predominance is found if there is "common nucleus of operative facts." Id. at 431. Individual issues of causation, reliance and damages do not preclude class certification. Strawn v. Canuso, 140 N.J. 43, 67 (1995). In the instant matter, plaintiffs contend that they seek to remedy a common legal grievance and there are two predominate issues: (a) defendants' tortious

course of conduct in manufacturing, selling and/or distributing fenfluramine/ dexfenfluramine and/or phentermine in New Jersey and (b) the potentially fatal consequences of ingesting fenfluramine and dexfenfluramine as recognized by federal regulatory agencies.

Plaintiffs further assert that this case is different from other class actions previously brought in New Jersey because the remedy they seek is medical monitoring which does not need individualized proof such as individual causation in other cases. Defendants assert that this is flawed reasoning because medical monitoring does not eclipse the need for plaintiffs to prove the underlying tort claims. As defendants have explained, each plaintiff carries with him or her a varied and particular health history and the risks associated with taking the drugs depend upon individual habits and the presence of other risk factors. These risk factors can include high cholesterol, hypertension, family history, diabetes, lack of exercise, diet and age. Resultantly, this court concludes that common issues of law and fact do not predominate over individual issues concerning causation and defendants' affirmative defenses, and this court DENIES plaintiffs' request for certification under R. 4:32-1(b)(3).[11]

## IV. CONCLUSION

"[M]ass exposure toxic tort cases involve public interests not present in conventional tort litigation. The public health is served by a fund mechanism that encourages regular medical monitoring for victims of toxic exposure." Ayers, 106 N.J. 557, 609. The New Jersey Consumer

[11] It should be noted that this court recognizes the differences in a cohesiveness requirement pursuant to Rule 4:32(b)(2) and the predominance requirement of Rule 4:32(b)(3). Predominance needs to be just that, an overarching commonality among all plaintiffs, while cohesiveness is not such a high standard. This court understands the delicate balancing that must take place between these requirements and holds that while a cohesive claim for medical monitoring may be found among different plaintiffs, a predominance of common claims does not exist. See, In re American Medical Systems, Inc., 75 F.3d 1069 (6th Cir. 116); Reilly v. Gould, Inc., 965 F. Supp. 588, 597-98; Sprague v. General Motors Corporation, 133 F.3d 388; and Wilks v. Ford Motor Company, 174 F.R.D. 332.

Fraud Act and R. 4:32 are procedural remedial devices which have been and should be liberally construed in favor of plaintiff-consumers. See, Cox v. Sears Roebuck & Company, 138 N.J. 2, 15, (1994)(New Jersey Consumer Fraud Act "should be construed liberally in favor of consumers"); In re Cadillac, 93 N.J. 412, 435 (1983)("class action rule should be construed liberally in a case involving allegations of consumer fraud"); accord, Eisen v. Carlisle & Jacquelin, 391 F.2d 555; Newberg on Class Actions, §§ 2076 and 2085, at 587 (1st ed).

Plaintiffs have met the requirements of R. 4:32 and demonstrated that a class of injured consumers as set forth above should be certified. Additionally, this court holds that plaintiffs do not seek relief that consists merely of money damages prospectively to compensate for the anticipated costs of individual testing. Rather, plaintiffs seek medical monitoring relief consisting of implementation of an integrated program of medical monitoring to: (1) maximize identification of persons at risk; (2) maintain an adverse effects registry for The Class; (3) optimize diagnosis by providing bulletins to health professionals regarding newly revealed trends uncovered by population-based studies of The Class of fenfluramine- and dexfenfluramine-exposed persons; and (4) broadcast developments regarding the relative effectiveness of various diagnostic modalities as they are deployed to The Class.

Therefore, this court ORDERS, that a medical monitoring class of asymptomatic plaintiffs is certified under Rule 4:32 (b)(2). It is FURTHER ORDERED that plaintiffs' reliefs sought under Rule 4:32(b)(3) are DENIED. Additionally, this court FURTHER ORDERS that defendant AHP's motion to dismiss for failure to state a claim upon which relief can be granted is DENIED. It is FURTHER ORDERED that the parties confer with Special Master to set down dates for plaintiffs to submit a Class Notice and Order for Notice.