Only the Westlaw citation is currently available.

District Court of Minnesota.
Gregory CURTIS, Joni Kay Hanzal, Josephine Leonard and Randy Hoskins, Individually and on Behalf of All Others Similarly Situated, Plaintiffs,
v.
PHILIP MORRIS COMPANIES INC., and Philip Morris USA Inc., Defendants.
**No. PI 01-018042.**

Nov. 29, 2004.

ORDER

OLEISKY, J.

***1** The above-entitled matter came before the undersigned Judge of the District Court, on October 1, 2004 at the Hennepin County Government Center, Minneapolis, Minnesota, on Plaintiff's motion for class certification.

GALE D. PEARSON, Esq. and PHILLIP COLE, Esq., appeared for and on behalf of Plaintiffs.

EDWARD B. MARGARIAN, Esq. and WILLIAM STUDER, Esq., appeared for and on behalf of Defendant.

Based upon all files, records and proceedings herein, together with the arguments of counsel, IT IS HEREBY ORDERED:

1. That Plaintiffs' motion for reconsideration of class certification is hereby GRANTED.

2. That the attached Memorandum is hereby incorporated into and made part of this Order.

*MEMORANDUM*

FACTS

The facts of this case have been fully and completely set forth in this Court's recent Order and Memorandum of January 16, 2004, denying Plaintiffs' motion for class certification. This Court granted Plaintiffs leave to file this motion for reconsideration of this Court's prior denial of class certification.

ANALYSIS

I. MOTION FOR RECONSIDERATION OF CLASS CERTIFICATION

A. Plaintiffs' Proposed Class

As stated in this Court's previous Order Plaintiffs' proposed class is described as:

> All persons, who purchased Defendants' Marlboro Lights cigarettes in Minnesota for personal consumption from the first date Defendants, sold Marlboro Lights in Minnesota through the date of the certification of the class.

Plaintiffs bring claims for common law fraud, unjust enrichment, and violation of the Minnesota consumer protection statutes.

B. Minn.R.Civ.P. 23.01 and 23.02

In interpreting the Minnesota Rules of Civil Procedure, the Court is mindful of the guidance provided by Minn.R.Civ.P. 1, which provides that these rules "shall be construed and administered to secure the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

just, speedy, and inexpensive determination of every action."

As previously stated in this Court's Order dated January 16, 2004, the issue of class certification is considered before a case is decided on the merits. Minn.R.Civ.P. 23.03(1); *Streich v. American Family Mut. Ins. Co.,* 399 N.W.2d 210, 214 (Minn.App.1987). District courts have considerable discretionary power to determine whether a class action is maintainable. *Streich* at 213 (*citing Forcier v. State Farm Mut. Auto. Ins. Co.,* 310 N.W.2d 124, 130 (Minn.1981)). Minn.Stat. § 23.01 sets forth a number of prerequisites that must be satisfied before a court can certify a group of plaintiffs for class action status:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if
> (a) the class is so numerous that joinder of all members is impracticable;
> (b) there are questions of law or fact common to the class;
> (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (d) the representative parties will fairly and adequately protect the interests of the class.

***2** In addition to satisfying the prerequisites of Rule 23.01 the purported class action must also fall within one of three categories set forth in Minn.R.Civ.P. 23.02. *Streich* at 213. A class action may be maintained if the prerequisites of Rule 23.01 are satisfied, and in addition:

> (a) the prosecution of separate actions by or against individual members of the class would create a risk of
> (1) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> (2) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
> (b) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
> (c) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
> (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (4) the difficulties likely to be encountered in the management of a class action.

Minn.R.Civ.P. 23.02.

C. This Court agreed to hear Plaintiff's Motion for Reconsideration of Denial of Class Certification.

Defendant Philip Morris suggests that there are certain parameters/restrictions that are placed on this Court's authority to reconsider

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

its earlier orders denying class certification. Minnesota Rule of Civil Procedure 54.02 specifically entitles this Court to change its decision at any time prior to the entry of final judgment based upon re-examining evidence and/or newly decided caselaw. Minn.R.Civ.P. 54.02.

D. Conduct of the Defendant Philip Morris

The Minnesota Supreme Court has stated that the Consumer Fraud Act reflects the Minnesota Legislature's intent "to make it easier to sue for consumer fraud than it had been to sue for common law fraud." *Wiegand v. Walser Automotive Groups Inc.,* 683 N.W.2d 807 (Minn.2004) *citing State by Humphrey v. Alpine Air Products, Inc.,* 500 N.W.2d 788, 790 (Minn.1993).

In this motion for reconsideration the essential question presented by Plaintiffs is whether the marketing of Marlboro Lights as a so-called "light" cigarette that allegedly delivers "lowered tar and nicotine" to its users may be challenged in a class action seeking damages, as deceptive conduct in a trade or business in violation of the Minnesota Consumer Fraud Act. Relying on recent Minnesota Supreme Court decisions and the newly returned decision by the Massachusetts Supreme Judicial Court, Plaintiffs contend that a mere causal nexus is required to prove Plaintiffs' reliance and that due to the nature of Defendant's deceptive representations about the Marlboro Lights cigarette products to consumers, it is the conduct of Defendants that is the pivotal point of focus under the Minnesota Consumer Fraud Act, not the conduct of individual consumers *See Wiegand,* 683 N.W.2d 807 (Minn.2004); *Peterson v. BASF Corp.,* 675 N.W.2d 57 (Minn.2004); *Aspinall v. Philip Morris Companies Inc.,* 442 Mass. 381, 813 N.E.2d 476 (Mass.2004). Minnesota case law has failed to provide a clear standard for determining what constitutes a sufficient causal nexus between a defendant's alleged misrepresentations and the damage done to the plaintiffs, however the recent Supreme Judicial Court of Massachusetts's *Aspinall* opinion appears to persuasively shed some light on the facts present in the matter currently before this Court.

***3** In this Court's previous Order it was stated that evidence has been presented that entities other than Philip Morris, such as health groups and other governmental entities, have represented that "light" cigarettes deliver less tar and nicotine and that it is possible that some of the class members could have decided to smoke Marlboro Lights based upon these other representations. That issue is however, a fact issue that Philip Morris would be able to raise as a defense at trial. While this defense remains available for Philip Morris, this Court believes that the lengthy course of intentional misrepresentations concerning "light" cigarettes, which affected a large number of Minnesota cigarette consumers, is probative and creates a sufficient causal nexus of reliance.

Plaintiffs here allege that their damages were caused by deceptive, misleading, and fraudulent statements or conduct in violation of the misrepresentations in sales laws, and as a practical matter this Court believes that it would not be possible for these damages to be caused by a violation without reliance on the statements or conduct alleged to violate the statutes. *See Group Health Plan, Inc., v. Philip Morris Inc.,* 621 N.W.2d 2, 13 (Minn.2001). Therefore a causal nexus between the allegedly wrongful conduct of the defendants and the damages of the plaintiffs must be proved to this Court.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

However, as set out by the Supreme Court of Minnesota in the *Group Health* case, the showing of reliance that must be made to prove a causal nexus need not include direct evidence of reliance by individual consumers of defendants' products. *Id.* at 14. Here, Plaintiffs contend that the lengthy course of misrepresentations concerning "light" cigarettes, which affected a large number of Minnesota cigarette consumers, is sufficient evidence of reliance at this stage of the proceedings, and this Court agrees.

1. Causal Nexus

Pursuant to *Group Health,* the Minnesota Supreme Court pointed to three examples of a causation nexus under the Federal Lanham Act, 15 U.S.C. § 1125(a), a statute which is similar to the Minnesota Consumer Protection Act in that they both proscribe false or deceptive marketing practices. *Group Health,* 621 N.W.2d at 15 fn. 11. Each of the examples utilizes the deliberately--deceptive conduct of the defendant to establish a sufficient causal nexus. In the *Group Health* case, the Minnesota Supreme Court utilized language that stated:

• Expenditure ... of substantial funds in an effort to deceive consumers and influence their purchasing decision justifies a presumption of actual confusion, and the burden shifts to the defendant to rebut that presumption. Citing *U-Haul Int'l, Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1041 (9th Cir.1986).

• Where evidence shows the defendant deliberately engaged in deceptive commercial practice, the burden shifts to the defendant to demonstrate the absence of consumer confusion. Citing *Resource Developers, Inc. v. The Statute of Liberty-Ellis Island Found., Inc.,* 926 F.2d 134, 140 (2d Cir.1991).

***4** • Egregious deception eliminates need for the plaintiff to prove actual confusion even for damages, citing *PPX Enters., Inc. v. Audiofideliety Enters., Inc.,* 818 F.2d 266, 272 (2d Cir.1987).

The Minnesota Supreme Court recently stated that a class members' awareness of advertisements may provide a sufficient causal nexus. *See Peterson v. BASF Corp.,* 675 N.W.2d 57, 73 (Minn.2004). While the Minnesota Supreme Court was applying the New Jersey Consumer Fraud Act's principles of law in the *Peterson* case, there is no reason to believe that those same principles are not applicable to the nearly identical Minnesota Consumer Fraud Act. "An advertisement is deceptive when it has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently form the way they would otherwise would have acted (i.e., to entice a reasonable consumer to purchase the product)." *Aspinall,* 813 N.E.2d at 488.

The Supreme Judicial Court of Massachusetts discusses the issue of deceptive advertising with regard to the influence and misleading impression created by such practices.

> If, as alleged, the defendants intentionally labeled their cigarettes 'Lights' with 'lowered tar and nicotine' in order to establish in the individual and collective consumer consciousness the concept that Marlboro Lights are more healthful (or, at least, less unhealthful) to smoke the regular cigarettes, and thereby increase the defendants' market share of cigarette sales, with full knowledge that most Marlboro Lights smokers would not in fact receive the promised benefits of "lowered tar and nicotine," then there can be no question that the sales of Marlboro Lights occurred in circumstances that make the sales

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

deceptive under G.L. c. 93A. [FN1] No individual inquiries concerning each class member's smoking behavior are required to determine whether the defendants' conduct caused compensable injury to all the members of the class--consumers of Marlboro Lights were injured when they purchased a product that, when used as directed, exposed them to substantial and inherent health risks that were not (as a reasonable consumer likely could have been misled into believing) minimized by their choice of the defendants' "light" cigarettes.

FN1. Deceptive conduct in a trade or business in violation of Massachusetts General Laws.

*Id.*

Here, Philip Morris has marketed and sold to consumers in Minnesota cigarettes labeled as "lights" and has described them in their marketing campaigns as having "low tar," "low nicotine" and an alternative to "regular" cigarettes. As stated by Plaintiffs, the words "lower tar and nicotine" or "low tar and nicotine" have appeared on every pack of Marlboro Lights sold in Minnesota. While Philip Morris made claims of lower tar and nicotine, information concerning the true delivery of tar and nicotine in the "light" cigarettes in relationship to the Marlboro regular cigarettes was not disclosed.

In this Court's previous Order it was stated that a determination would have to be ascertained as to whether or not an individual class member garnered the benefits of low tar and nicotine from Marlboro Lights and that analysis would depend upon the manner in which that individual class member smoked the "light" cigarette. This Court now agrees with the recent Massachusetts Supreme Judicial Court's decision which states, "So far as we are aware, the actual level of tar and nicotine received by an individual smoker is a factor that cannot be measured by any test." *Aspinall,* 813 N.E.2d at 489. Additionally, the Massachusetts Court goes on to say, "Indeed it may be unlikely that any individual would smoke a cigarette the exact same way twice. Thus, by implication, it is probable that no smoker received the promised benefit of lowered tar and nicotine every time he or she smoked a Marlboro Lights cigarette ." *Id.* at fn. 20.

CONCLUSION

***5** The Plaintiffs are similarly situated to other consumers of Marlboro Lights, and because the injury claimed is economic and not a personal injury, all have been similarly injured. Were there to be individual trials, the common aspects of Defendants Philip Morris's conduct would become a predominant aspect of each trial. Considerations of delay, and high costs provide additional support for the appropriateness of class certification. This Court concludes that a class action is not only an appropriate method to resolve the plaintiffs' allegations, but pragmatically, the only method whereby purchasers of Marlboro Lights in Minnesota can seek redress for the alleged deception.

Not Reported in N.W.2d, 2004 WL 2776228 (Minn.Dist.Ct.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.