Case Number: 01-MD-1396 JRT / FLN

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

In Re: St. Jude Medical, Inc. Silzone Heart Valves Products Liability Litigation

File No. 01-MD-1396 (JRT/FLN)

Minneapolis, Minnesota
March 22, 2006
11:38 A.M.

---

BEFORE THE HONORABLE JOHN R. TUNHEIM
UNITED STATES DISTRICT COURT JUDGE

(TELEPHONIC STATUS CONFERENCE)

APPEARANCES
For the Plaintiffs: LEVY, ANGSTREICH, FINNEY, BALDANTE, RUBENSTEIN & COREN
STEVEN E. ANGSTREICH, ESQ.
MICHAEL COREN, ESQ.
1616 Walnut Street, 18th Floor
Philadelphia, Pennsylvania 19103

CAPRETZ & ASSOCIATES
JAMES T. CAPRETZ, ESQ.
5000 Birch Street, Suite 2500
Newport Beach, California 92660

ZIMMERMAN REED
DAVID M. CIALKOWSKI, ESQ.
651 Nicollet Mall
Suite 501
Minneapolis, Minnesota 55402

GREEN, SCHAAF & JACOBSON

JOE D. JACOBSON, ESQ.
7733 Forsyth Blvd., Suite 700
St. Louis, Missouri 63105

MURPHY, SMALL & ASSOCIATES
MICHAEL SMALL, ESQ.
1701 W. Charleston Blvd., Suite 550
Las Vegas, Nevada 89102

KRISTINE MOUSSEAU, CRR-RPR
(612) 664-5106

For the Plaintiffs: ROBERT ROUNDTREE, ESQ.

For the Defendant: HALLELAND, LEWIS, NILAN & JOHNSON
TRACY J. VAN STEENBURGH, ESQ.
600 Pillsbury Center South
220 South Sixth Street
Minneapolis, Minnesota 55402

REED, SMITH, CROSBY, HEAFEY
STEVEN M. KOHN, ESQ.
DAVID E. STANLEY, ESQ.
355 South Grand Avenue
Suite 2900
Los Angeles, California 90071

LIZ PORTER, ESQ.

Court Reporter: KRISTINE MOUSSEAU, CRR-RPR
1005 United States Courthouse
300 Fourth Street South
Minneapolis, Minnesota 55415
(612) 664-5106

Proceedings recorded by mechanical stenography; transcript produced by computer.

KRISTINE MOUSSEAU, CRR-RPR
(612) 664-5106

(In chambers via telephone.)

THE COURT: Good morning and good afternoon, everyone.

MR. CAPRETZ: Good morning, Judge.

MS. VAN STEENBURGH: Good morning, Judge.

MR. ANGSTREICH: Good morning, Your Honor.

MR. KOHN: Good morning, Your Honor.

THE COURT: For the record this is case number 01-1396, In re St. Jude Medical, Incorporated, Silzone Heart Valves Products Liability Litigation. We have --

MR. CAPRETZ: Judge, you need to speak up. It's like a distant planet.

MR. KOHN: I'm sorry. Same thing, Your Honor. Steve Kohn. I can barely hear what you're saying.

THE COURT: Okay. We'll try to talk louder. I think we have our phone up on the highest volume. We have all counsel identified for the record already, so I don't think we need to go through that. Let's turn right to the agenda for this telephonic status conference today.

The class certification briefing I have noted is ongoing.

MR. ANGSTREICH: Yes, Your Honor. Steve Angstreich.

THE COURT: Go ahead.

MR. ANGSTREICH: Our reply brief, Your Honor,

would be due on Friday. Defense counsel has graciously agreed, subject to Your Honor's agreement, to allow us to file our reply on April 7th.

The argument I believe is the 26th, so the question is whether or not if Your Honor doesn't get our reply in until April 7th, that would in any way cause you a problem in being ready for the 27th -- 26th.

THE COURT: No. I believe April 7th would be just fine, so that's okay.

MR. ANGSTREICH: Wonderful, and we appreciate the defendant's courtesy.

MR. KOHN: Your Honor, this is Steven Kohn for St. Jude. Without seeing what plaintiffs intend to file by way of reply, and I don't know the reason for the extension, but if it's -- if there are new issues raised and the scope of the reply makes it such that we feel a surreply is necessary, we would want to alert the Court now that that may be a possibility.

Obviously we can't say that with any degree of certainty until we see what is being prepared, but we just wanted to highlight that as a potential possibility.

THE COURT: If you believe --

MR. ANGSTREICH: As we had a discussion a long time ago -- again this is Steve Angstreich -- the question was, what was going to be presented. And we took the

position, as Your Honor will recall, that we thought the only thing that needed to be briefed and argued was the issue of the 50 state analysis and whether as a result of that Minnesota law still was the appropriate law to be applied to the entire class or whether some other group or groupings of laws should apply.

And we thought that the defense would take the position that there needs to be another look at the entire issue of certification, irrespective of the 50 state analysis, and as expected, our brief only focused on the 50 state analysis.

The defendant's brief, as we anticipated, addressed our approach as well as raised again the full panoply of Rule 23 analysis for class certification, and in our opinion, raised some issues that have never been argued before, nor raised as a basis for lack of certification during the period of time when we might have been able to take substantive discovery on some of those issues.

So it is conceivable that Mr. Kohn is anticipating the fact that we're going to be addressing those issues as we view it to be beyond the scope of what

was to be provided. We would have no objection to the extent that he feels that our response to that broad brush Rule 23 argument needs a surreply.

MR. KOHN: And to follow up on that, Your Honor,

to the extent a surreply would be required, we would definitely get it to the Court in advance of the hearing on the 26th. So I don't at this time, subject to taking a look at their reply, anticipate the need to move the hearing, although we might need the Court's permission to file it shortly before the hearing.

MR. CAPRETZ: Your Honor, this is Capretz speaking. I wonder, Mr. Kohn uses the word "would be required," a surreply would be required, and I think Mr. Angstreich's point is well taken. Perhaps we need a definition in what we're arguing in doing here.

I did think the scope of this was an analysis of the 50 state laws and whether or not Minnesota law applies. So all else seems to be extraneous, and if we get off on the side issues, we're diverting from the main issue at hand, and I'm not sure it's appropriately before the Court.

THE COURT: Well, let's see what happens after the brief is in.

Mr. Kohn, if you believe you have a basis for a surreply, be in touch with the Court. We will get that taken care of right away.

MR. CAPRETZ: Okay.

THE COURT: Okay. Anything else on class certification? I think we're still set for a hearing on the 26th of April. I hope that date is still good for

everyone.

MR. CAPRETZ: Yes.

MR. ANGSTREICH: Yes, Your Honor.

THE COURT: Okay. Expert discovery, how is that coming along?

MR. ANGSTREICH: Your Honor, we have been given some dates. We're trying to fill those dates in so that the three experts that we have identified move forward.

What we have tried to do, Your Honor, is to limit depositions at this time until Your Honor's ruling to those experts whose testimony would be necessary in individual cases, those generic experts that are unrelated to issues of medical monitoring and things of that nature. So we're trying to limit it on both sides.

We've identified three we believe fall within the concept of generic experts, and we've identified those on the other side that would parallel our experts. So we're moving forward to finalize some dates for that.

THE COURT: Okay. Anything from the defendant?

MR. KOHN: No, Your Honor. We agree with that, and the time frame, I think we've agreed that the expert

actual depositions will not commence until after the argument on the 26th of April and that we will try to get the plaintiffs' experts concluded by the end of June, and then our experts would be deposed during July and August.

MR. ANGSTREICH: That's correct.

THE COURT: Sounds good. Okay. The next issue here, who is handling that, the discovery dispute here?

MR. CAPRETZ: Your Honor, before we move if I may interject, I'm one of the individuals who has a case, as the Court is aware, that we believe is going to have to be tried in Ramsey County.

I just want to parenthetically say that it is important that we conclude these depositions of the generic experts as discussed and agreed upon by plaintiff independents as soon as possible so we can be in a position to move forward with trial proceedings. Our plaintiff is in a precarious health circumstance, and we're very concerned about that.

And as the Court knows, everything has been elongated due to a various combination of circumstances. So I just want to bring it to the Court's attention that it is important to finish these generic experts as suggested and agreed upon by plaintiffs and defendants today.

THE COURT: Okay. Good point.

MR. ANGSTREICH: If I might address this issue of

the Epic Slide discovery dispute, Your Honor. Steve Angstreich again.

THE COURT: Go ahead.

MR. ANGSTREICH: We, David Stanley and I, had a

discussion along with Mike Coren from my office, of the issue of rebuttal expert reports, and we basically came to the conclusion that rebuttal experts were those who were other than those identified at the present who would be offered to rebut something that was presented in the defense expert reports, but that to the extent that those experts we've identified already are merely commenting on the report, they would not be considered, quote unquote, rebuttal experts, and therefore there would not be a rebuttal expert report.

That's at least my understanding and Michael's understanding, and before I go any further, if that is not David's understanding, he ought to speak on that issue first.

MR. STANLEY: Why don't you explain? I think the whole issue has got to be explained --

MR. ANGSTREICH: Okay. Then I will go forward.

MR. STANLEY: -- in context.

MR. ANGSTREICH: One of the defense experts in responding to our expert Kevin Healy -- I'm sorry -- Wilson, our expert Wilson, referenced certain slides,

they're called the Epic Slides. It's a different valve, but it's also a valve that has a Silzone coating on it. And those slides were not requested, nor provided obviously because they weren't requested, in connection with Wilson's

review -- okay -- over Wilson's review -- Wilson's report.

So since their expert has commented on these Epic Slide issues, we wanted the slides to be made available to Wilson so that he could comment since that was part of their report. The dispute, as I understand it, and David or Michael can correct me if I'm wrong, the dispute centers around whether or not Wilson's review of those slides requires a commitment from us that Wilson will supply a rebuttal expert report as it relates to those slides.

Our position is that that does not come within the scope of our discussion as to what did or did not qualify or require an expert -- rebuttal expert report, and since Wilson is being deposed that once he gets the Epic Slide, they can ask him all kinds of questions they want as to the impact of those slides on his opinion and any comments he has with respect to their expert.

Therein lies the dispute. So we can't get the Epic Slides until we agree or Your Honor tells us we don't have to agree to provide a rebuttal expert report.

David, did I articulate the dispute?

MR. STANLEY: I think you have articulated the

dispute.

MR. ANGSTREICH: Okay.

MR. STANLEY: And, Your Honor, my response is that, and Steve Kohn knows more about what is actually in

these reports than I do, but it's my understanding that Dr. Wilson did discuss the Epic study and Epic results and Epic pathology in his report, but he did not discuss the slides in his report.

In response, our expert did review the slides and has some opinions about that in response, and now what the plaintiffs are asking to do is, they want to now request the slides from us, have Dr. Wilson review them and supplement his opinions, and that's where the dispute lies.

You know, this is significant additional work to buttress his opinions and in our view Rule 26 requires a supplemental report, and, you know, the -- when we talked about rebuttal witnesses, we were talking about, in my view anyway, as I recall the conversation, that, you know, if they had brand-new witnesses to offer opinions solely to rebut opinions offered by our experts, and they had to give us rebuttal reports and rebuttal designations, but this is different than that, Your Honor.

These are definitely additional work being done by their expert to supplement their opinions, and in order for us to be able to prepare to take Dr. Wilson's

deposition, you know, we need to see what his opinions are based upon his review of those slides.

MR. ANGSTREICH: Your Honor, if I just might respond. Their expert has critiqued Dr. Wilson's analysis

using those slides as a basis for the critique. In order for Dr. Wilson to explain why his analysis in the first place is correct and why resort to those slides does not undercut his conclusion, he has got to get the slides.

A long, long, long time ago we had a dispute over those slides and whether or not Dr. Wilson had to go to the slides or the slides could go to Dr. Wilson, and there was an insistence that Dr. Wilson go to the slides. End of dispute. No examination of the slides.

Now they become a part of, if not a linchpin, in the expert report as to why Dr. Wilson is wrong. We now need to see them so that he can explain why he is still right and those slides don't undercut him. That's not a new report. That goes to supporting his position.

So for us to be placed in a position where we have to agree to a supplemental or rebuttal -- in effect it's a rebuttal report, every one of our experts would thereby have to give a rebuttal report if they're going to say why defendant's experts are wrong, and that's what we agreed would not be necessary.

MR. KOHN: Your Honor, this is Steve Kohn. Since

I'm the one who will be taking Dr. Wilson's deposition in Toronto, let me just address a couple of points here. One is that, and I could be wrong about this, but my recollection of it was a long time ago, is that the slides

that Dr. Wilson did review, they weren't the Epic Slides, they were other animal study slides, were sent to him by courier and picked up by courier.

He did not have to come to St. Jude to look at slides, but even if he had, the slides would have been made available to him, so that's not really the issue. As Mr. Angstreich said correctly the first time around, these slides were never requested. If they had been, they would have been provided.

I can't go to take Dr. Wilson's deposition in a meaningful way unless I have a preview of what his opinions are by means of a report and have the opportunity to review that with our expert. It seems to me that pathologists, as a matter of routine, whenever they review pathology, they typically generate reports.

It's a trivial matter. It could be done in an hour or two by dictation. It's not a burden on them, and in fairness to us, I think we're entitled to it.

MR. ANGSTREICH: Your Honor, if I might correct Steve Kohn, his rendition. They were requested. They would not release them. Dr. Wilson had to go to St. Jude.

It is correct that the other slides they did courier, but the Epic Slides had to be reviewed. That was the position taken, and that's why they were not reviewed for that -- for that reason.

Now, apparently their expert relies upon the Epic Slides coincidentally or maybe just serendipitously because Dr. Wilson never had them to review, and now we need to get them reviewed without an obligation for a supplemental report or rebuttal report. Otherwise isn't that what every one of our present experts would be required to do before Steve Kohn takes their deposition?

MR. KOHN: We're not asking for any other supplemental reports or rebuttal reports except this one.

MR. ANGSTREICH: I understand, but you're telling us that you don't know what -- how to ask the questions. It's the same thing. You don't know what our experts are going to say as to what is wrong with your expert's analysis, but this one, because you're holding the slides again hostage, this time you will courier them to him, but he has got to give you a rebuttal report.

I think we may have exhausted this subject. At least the plaintiffs have exhausted this subject.

MR. KOHN: I submit it as well, Your Honor.

THE COURT: Okay. Very well. I think that the defense is entitled to a brief report on this, the opinions

of the plaintiff expert Dr. Wilson on these slides. I don't think it has to be extensive. It just, if they, his opinion is that they bolster his prior opinion, that should be a very brief report.

I think that that would enable his deposition to go more smoothly, and so I will order that Dr. Wilson generate a brief report after his review of these slides and that the slides should be submitted to him just as quickly as possible for his review.

MR. ANGSTREICH: Very good.

THE COURT: Anything else on that point?

MR. CAPRETZ: No. I think that covers that, Your Honor.

THE COURT: Okay. Should we move on to Ms. Sliger?

MR. CAPRETZ: Yes, and I was --

MR. JACOBSON: I am here. Joe Jacobson.

MR. CAPRETZ: Yes, because David Stanley had asked that we bring up the motion to file an amended complaint. Joe?

MR. STANLEY: Let me just cover this real quick, Your Honor, because I think Joe and I are on the same page on this. We have settled the Sliger case, and as the Court may recall, the Sliger case was originally filed as the personal injury class action, and then when that was

decertified, then Mrs. Sliger kept her case as her individual personal injury case.

And then she died last year, and the case was transformed into a recovery action by the estate, and we

have now settled all of these claims with Mr. Jacobson's office, but we need to have the complaint include all of the claims that are being released. So we need to amend the complaint to add the wrongful death claims and the claims that are being released.

And what Mr. Jacobson's office has been telling me is that we need to make some special motion to sever this case from the MDL back to the home jurisdiction, which by the way is your court, Your Honor, and then amend the complaint so we can go ahead and proceed with the settlement and get it approved.

My thought was, I didn't think that was necessary, that Your Honor could just grant leave to file or for them to file the amended complaint so we could get this resolved. That's why I put it on the calendar today.

MR. JACOBSON: Judge, Dave Bush, my partner, who has been handling the personal injury part of the case tells me that it is important for a number of reasons that we do the severance and re-filing, one of which is to make it clear that the claim that we have is the wrongful death claim which will allow Ms. Sliger's descendents to receive

some money, otherwise it was all for her injuries.

There is an old medical lien out there that will eat up a significant portion of it. So the idea is to try to get the clients their money here.

THE COURT: Well, that sounds acceptable. I think -- let's handle it this way, Mr. Jacobson: Why don't you provide the Court with a draft order that accomplishes this and run it by Mr. Stanley, and if it looks acceptable to the Court, we will sign it and file it and get it taken care of so you can file the amended complaint.

MR. JACOBSON: All right. I will have David give you a proposed order severing and doing the rest of it.

THE COURT: Sounds good.

MR. JACOBSON: Thank you, Your Honor.

MR. STANLEY: Thank you very much, Your Honor.

THE COURT: Mediation, anything on that?

MR. CAPRETZ: Mr. Stanley has volunteered to report on that.

MR. STANLEY: Just a brief report, Your Honor. Since the last status conference, two cases have settled. That's the Sliger case and the Meaux case, M-e-a-u-x. Those two cases are settled. I believe that Mr. Capretz just filed a brand-new case, this Jurgena case, J-u-r-g-e-n-a.

So that leaves us right now with 15 pending

individual injury cases, of which five continue in our view to be no injury cases so we will not mediate them, and the other ten we're still talking about. We just transitioned through the last insurance layer, so we hope to heat up

some settlement negotiations in these cases in the upcoming months.

THE COURT: Okay. Anything else on that subject?

MR. CAPRETZ: From the plaintiffs' perspective that's about as accurate a report that can be given at this time.

THE COURT: Okay.

MR. CAPRETZ: We conclude that portion, Your Honor, and might move on to the next if you will.

THE COURT: Just a quick comment. Obviously the focus coming up in the next month or two will be the class certification motion. At some point here, I intend to turn our focus to the remaining individual cases and set on for trial or return or whatever the situation may be the ones that there is no mediation that is scheduled for.

So I am not pushing that point yet, but once the class certification issue is resolved by the Court, then I think that is where I would like to turn my attention. Okay. Let's move on to the next item, then.

MR. CAPRETZ: The next item basically is, Mr. Stanley gave a brief overview of the status. The only

difference might be the state court -- not the MDL proceedings, but the state court proceedings. The last report we gave you in January of '06, there were 30 pending we counted, and there are now 28 pending in Ramsey

County -- I assume that they're all in Ramsey County. I don't know.

David or Steve, do you know of any others in state courts anywhere else?

MR. SMALL: No. No. This is Mike Small. I know of no others.

MR. CAPRETZ: Okay. So that's the status on the report. There is nothing yet set for trial. We should be number one on the list of trials once we get through this discovery and we can move forward, and we're looking to conclude that sometime in the early fall. So hopefully Judge Gearin can set some dates in the not too distant September for our trial, and there are others in sequence if they aren't settled similarly will be heard there.

MR. ANGSTREICH: This is Steve Angstreich, Your Honor. As an update, Gordon Rudd attended a status conference, along with Tracy, on ten cases that his office and our office are involved in, and we're looking to try to get those to trial I believe in January.

THE COURT: Okay. Anything in Canada?

MR. CAPRETZ: In the -- with the Canadian

litigation, the only development I'm aware of, there was a ruling by the appellate division on St. Jude Medical's appeal of the fees and costs award made by the lower court judge, and the appellate court ruled three to nothing in

favor of upholding the lower Court's ruling and awarded the plaintiffs' counsel their full fees and costs as was awarded by the original judge.

That's the only development that I'm aware of. I think discovery continues. I don't know. Steve Kohn, do you have any further update or comment on --

MR. KOHN: No. There is really is nothing to report on Canada other than what you just said.

MR. CAPRETZ: All right. That's it for the agenda for us, Your Honor.

THE COURT: Okay. In terms of the next status conference, can we do that together with the argument on the motion for class certification?

MR. ANGSTREICH: This is Steve Angstreich, Your Honor. I think that makes the most sense.

MR. CAPRETZ: Yes.

THE COURT: Okay. Let's plan on that, then. We will just make sure we have enough time set on the calendar for the arguments and for any additional status conference matters. Anything else for today?

MR. CAPRETZ: We appreciate your time.

THE COURT: Anything else anyone wants to raise today?

MR. ANGSTREICH: I think that covers it, Your Honor.

THE COURT: Okay. Very well. We will see everyone in about five weeks.

MR. CAPRETZ: Yes. Thank you, Your Honor.

MR. ANGSTREICH: Thank you very much, Your Honor.

MR. KOHN: Thank you, Your Honor.

THE COURT: We will be in recess.

* * *

I, Kristine Mousseau, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Certified by:
Kristine Mousseau, CRR-RPR

Dated: March 24, 2006