IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE ST. JUDE MEDICAL, INC., SILZONE HEART VALVES PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1396 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER TO TEMPORARILY STAY THE TRIAL PRESERVATION DEPOSITION OF PLAINTIFFS' GENERIC EXPERT WITNESS, ERIC G. BUTCHART, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(C)**

## INTRODUCTION

Plaintiffs rely heavily on the testimony of their generic expert witness, cardiothoracic surgeon, Dr. Eric G. Butchart. Central to Dr. Butchart's opinions are the results of a clinical trial known as the Cardiff Embolic Risk Factor ("CERF") study which he conducted involving Silzone and standard St. Jude Medical valves. Despite repeated requests, however, Plaintiffs have not yet produced all of the underlying data and information from the CERF study on which Dr. Butchart relied in forming his opinions. St. Jude Medical has not been provided with critical data regarding the complication rates Dr. Butchart found in the CERF study, as well as the risk factors for those complications seen in the CERF patients.

It was only last month that Plaintiffs finally produced the CERF data indicating that Dr. Butchart's standard aortic valve patients from the study experienced a high rate of thromboembolism and that his standard aortic valve patients actually experienced a ***higher*** rate of thromboembolism than his Silzone aortic valve patients. The fact that this was not disclosed either before or during his deposition is exactly the type of gamesmanship expressly prohibited by the Federal Rules of Civil Procedure and condemned by applicable case law.

Further compounding the harm to St. Jude Medical, Plaintiffs now seek to capitalize on the tactical advantage created by their delay by scheduling the trial preservation deposition of Dr. Butchart on April 3, 2007 for use in all federal and state Silzone cases. To allow Dr. Butchart's preservation deposition to go forward on April 3, 2007 before Plaintiffs have produced all of the information he relies upon would rob St. Jude Medical of its ***only*** opportunity to effectively cross-examine one of Plaintiffs' key experts. This would unavoidably and gravely prejudice St. Jude Medical in every federal

or state case the testimony is offered for trial.

Consequently, pursuant to Federal Rule of Civil Procedure 26(c), St. Jude Medical moves for a protective order temporarily staying the trial preservation deposition of Dr. Butchart. St. Jude Medical merely requests that the trial preservation deposition be rescheduled at least 30 days after Plaintiffs have produced the requested data and information necessary for St. Jude Medical to conduct a reasonable cross-examination.

## FACTS JUSTIFYING THE ISSUANCE OF A PROTECTIVE ORDER TEMPORARILY STAYING THE PRESERVATION DEPOSITION OF DR. BUTCHART

### A. Pretrial Order 51 Mandated Production Of All Documents And Materials On Which Dr. Butchart Relied In Formulating His Opinions

On January 23, 2006, this Court entered Pretrial Order 51 governing the procedures for discovery of expert witnesses "who will be offering opinions on issues of general applicability that will be relevant to the cases pending in this MDL." *See* Pretrial Order 51, attached as Exhibit 1 to the Declaration of J. David Bickham. Pursuant to the Order, St. Jude Medical's expert disclosures and reports were due February 14, 2006, and Plaintiffs' were due on March 4, 2006. *Id.* at ¶¶1-2. Understanding the importance of full expert disclosure, the Court mandated production of "**[*a*]*ll*** documents, articles, data compilation, and other material on which a generic liability expert relied in formulating his or her opinion [] not later than ten (10) days in advance of a generic expert's deposition." *Id.* at ¶ 4 (emphasis added).

### B. Plaintiffs Failed To Produce Before Dr. Butchart's Deposition All Of The Underlying Raw Data And Information To The CERF Study On Which He Relied In Forming His Opinions

Although Plaintiffs provided some of the information on which Dr. Butchart relied in advance of his deposition, the information provided was far from complete. *See* Declaration of J. David Bickham, ¶ 3. For example, in what was purported to be the data from the CERF study, Plaintiffs produced spreadsheets containing a variety of variables followed in the CERF study. *Id.* Plaintiffs, however, failed to provide any key that explained what the variables reflected so that the data could be interpreted in any meaningful way. *Id.* Similarly, Plaintiffs provided portions of a multivariate statistical analysis relied upon by Dr. Butchart in opining that Silzone is a risk factor for embolic events, but did not produce all of the analyses. *Id.* Plaintiffs further failed to produce complete information regarding the risk factors for thromboembolism Dr. Butchart found in the CERF study, including anticoagulation (INR) levels. *Id.*

Dr. Butchart was deposed on June 26 and 27, 2006. *Id.* at ¶ 4. Nevertheless, Dr. Butchart was unfamiliar with the details of the CERF study data or the statistical analyses of the data on which his opinions were based, and therefore, was largely unable to testify to the substance of either during his deposition. *Id.* In particular, without a key to the Excel spreadsheets, Dr. Butchart was unable to interpret the information in the spreadsheets during his deposition, but testified that there was a key that would explain the data. *See* Deposition of Eric G. Butchart, 33:13-35:15, attached as Exhibit 2 to the Declaration of J. David Bickham. Nor was Dr. Butchart able to provide information explaining the statistical multivariate analyses on either the portions that were produced before his deposition, or those analyses that were not. *See* Declaration of J. David Bickham, ¶ 4. Dr. Butchart was unable to provide information in response because "the

analysis was done by two statisticians working with [him]." *See* Deposition of Eric G. Butchart, 33:13-35:1, 36:14-24; 126:23-127:11; 276:23-277:5, attached as Exhibit 2 to the Declaration of J. David Bickham.

### C. The Information Plaintiffs Have Produced Since Dr. Butchart's Deposition remains Incomplete

After a response to all of St. Jude Medical's requests for the additional CERF study evidence was not provided, on January 18, 2007, St. Jude Medical reiterated its request to Plaintiffs' counsel for the information relied on by Dr. Butchart. *See* January 18, 2007 letter from J. David Bickham to Michael Coren, attached as Exhibit 3 to the Declaration of J. David Bickham. Included among the items requested by St. Jude Medical were (1) a key or explanation of the CERF data produced in Excel spreadsheet form, (2) the complete multivariate statistical analyses of the CERF study data relied upon by Mr. Butchart in opining that Silzone is a risk factor for embolic events; (3) the data regarding significant embolic risk factors found in the CERF study that were not included in the published results of the study; and (4) the data regarding the anticoagulation intensity of the patients in the CERF study. *See* Declaration of J. David Bickham, ¶ 5.

St. Jude Medical reiterated its request on January 29, 2007 and again on February 22, 2007. *See* January 29, 2007 and February 22, 2007 emails from J. David Bickham to Michael Coren, attached as Exhibit 4 to the Declaration of J. David Bickham. On February 23, 2007, another email was sent to Plaintiffs' counsel, stating in pertinent part:

> In view of the fact that [Plaintiffs] wish to take a trial deposition of [Dr.] Butchart on April 3rd, it is critical that [St. Jude Medical] have the materials

> requested within the next week, i.e. no later than Friday March 2nd. If that's not possible, [St. Jude Medical is] requesting that the proposed deposition be rescheduled to a date at least 30 days after [it] receive[s] the materials requested.

*See* February 23, 2007 email from Steven M. Kohn to Michael Coren, attached as Exhibit 5 to the Declaration of J. David Bickham.

On February 26, 2007, Plaintiffs produced information that was responsive, in part, to St. Jude Medical's request for Dr. Butchart's CERF data. *See* February 26, 2007 letter from Michael Coren to J. David Bickham, attached as Exhibit 6 to the Declaration of J. David Bickham. Nevertheless, the information provided was incomplete in several important respects. *See* Declaration of J. David Bickham, ¶ 10. Plaintiffs have not produced any information about any reports of valve thrombosis in the CERF study, a key element of Dr. Butchart's opinions. *Id.* Further, the multivariate analyses provided do not include any analyses of the aortic valve recipients, all of the results of the relevant statistical calculations, all of the risk factors Dr. Butchart found to be significant for thromboembolism, or the underlying data for these analyses. *Id.* Likewise, Plaintiffs have not yet produced all of the data regarding all of the clinical risk factors for thromboembolism Dr. Butchart found to be significant in the CERF study, including the anticoagulation information. *Id*.

On February 28, 2006, St. Jude Medical sent another letter to Plaintiffs' counsel outlining in detail the deficiencies in Plaintiffs' production. *See* February 28, 2007 letter from J. David Bickham to Michael Coren, attached as Exhibit 7 to the Declaration of J. David Bickham. St. Jude Medical again asked that all such information be provided by March 5, 2007 or that the trial deposition be rescheduled until "at least 30 days after you

produce the materials requested." *Id*.

In response, on March 2, 2007, Plaintiffs' counsel sent a letter, stating in pertinent parts:

> . . . no matter what information is provided to [St. Jude Medical] [neither St. Jude Medical nor its] expert will accept as valid any of Mr. Butchart's conclusions . . . To the extent that the information is contained within the documents but you have been unable to discern it, our expert will assist you. ***And, to the extent that information is not contained therein and can be reasonably provided, same will be provided at our expert's convenience.*** We intend to proceed with Mr. Butchart's generic trial deposition on April 3, 2007. Should you choose not to attend, that is your prerogative.

*See* March 2, 2007 letter from Steven Angstreich to J. David Bickham, attached as Exhibit 8 to the Declaration of J. David Bickham.

St. Jude Medical remains hopeful that the dispute regarding the production of the evidence relied on by Dr. Butchart can be resolved informally. Nevertheless, until it is resolved, Dr. Butchart's should not be allowed to provide trial testimony. Accordingly, Plaintiffs left St. Jude Medical with no choice but to file this Motion.

## GOOD CAUSE EXISTS TO TEMPORARILY STAY THE TRIAL PRESERVATION DEPOSITION OF BUTCHART

Federal Rule of Civil Procedure Rule 26(c)(2) authorizes a court, "for good cause

shown," to make "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden," including that "the disclosure or discovery may be had only on specified terms and conditions . . ."

"Good cause" exists here for a protective order temporarily staying the trial preservation deposition of Dr. Butchart for the following reasons:

***First***, St. Jude Medical has not been provided all of the evidence relied on by Dr. Butchart in forming his opinions in this case. *See* Declaration of J. David Bickham, ¶¶ 3-10. In fact, Plaintiffs concede that this may be the case. *See* March 2, 2007 letter from Steven Angstreich to J. David Bickham, attached as Exhibit 7 to the Declaration of J. David Bickham ("And, to the extent that information is not contained therein and can be reasonably provided, same will be provided at our expert's convenience.") Without the underlying data, St. Jude Medical's ability to adequately prepare for its cross-examination in the preservation deposition will be significantly impeded. St. Jude Medical should not be expected to cross-examine Plaintiffs' key expert for use at trial without a full and complete review of all the underlying data and information and the opportunity to consult with its experts regarding that data. *See* Advisory Committee Note to Rule 26(b)(4) ("[e]ffective cross-examination of an expert witness requires advance preparation.") Anything less would result in grave prejudice to St. Jude Medical and subject it to a trial by ambush-- a result that the federal courts simply do not tolerate.[1] *Smith v. State Farm Fire & Casualty Co.*, 164 F.R.D. 49, 54 (S.D. W.Va. 1995)

[1] The Federal Rules favors liberal discovery of expert witnesses and disfavors unfair and prejudicial surprise. In fact, a litigant is required to disclose to his opponent all "data or information ***considered***" by the litigant's expert in forming an opinion. Fed. R. Civ. P. 26(a)(2) (emphasis added). The aim of such open discovery is to enable the opposing side to prepare an intelligent response to expert testimony. Failure to provide information concerning the underlying data that is specifically required by Rule 26(a)(2)(B) frustrates the purpose of candid and cost-efficient expert discovery.

(plaintiffs who fail to disclose required expert information "leave [d]efendants open to unfair surprise."); *Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992) (full expert disclosure "is consonant with the federal courts' desire to make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent."); *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995) (finding that plaintiff's expert affidavit failed to give defendant advance notice of the substance of the expert's testimony so that defendant could prepare to meet the testimony at trial); *Olson v. Mont. Rail Link, Inc.*, 2005 U.S. Dist. LEXIS 8061 (D. Mont., 2005)[2]; *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 177 F.R.D. 245, 261 (D.N.J. 1997) (when an expert does not "detail the methodology employed by him in arriving at" his conclusions and does not "provide the underlying data," "there is no basis for anyone, including the jury, to comprehend how" the expert arrived at his opinion), vacated in part by other grounds, 179 F.R.D. 450 (D.N.J. 1998). Indeed, full discovery of experts is entirely consistent with this Court's Pretrial Order 51.

***Second***, irreparable harm will occur if Plaintiff is allowed to proceed with the preservation deposition, as the testimony will be used in the trials of all federal and state cases filed against St. Jude Medical. The preservation deposition will constitute the only opportunity for cross-examination of Plaintiffs' critical expert and yet, St. Jude Medical will not be able to cross-examine Dr. Butchart about any of the data and information Plaintiffs have refused to provide.

---

[2] *Olson v. Mont. Rail Link, Inc.*, 2005 U.S. Dist. LEXIS 8061 (D. Mont., 2005) is on point. In *Olson*, the defendant produced its expert's report but did not produce any of the data on which the opinions contained in the report were based until after the expiration of the deadline for expert disclosures under Rule 26(a). *Id.* at *3-*4. The court held that "in light of [defendant's] significant delay in disclosing the underlying data as required by the Federal Rules and the Scheduling Order, and the grudging fashion in which the required material was eventually provided, Judge Erickson's decision not to impose sanctions against [defendant] is clearly erroneous." *Id.* at *8 (emphasis added).

***Lastly***, St. Jude Medical seeks only a temporary stay of the trial preservation deposition of Dr. Butchart.[3] A temporary stay of Dr. Butchart's deposition would allow time for Plaintiffs to complete the production of the requested information and leave Plaintiffs sufficient time to complete his trial testimony once the stay is lifted. Accordingly, Plaintiffs will suffer no prejudice as a result.

Given the grave harm to St. Jude Medical and the lack of prejudice to Plaintiffs, this Court should grant St. Jude Medical's Motion.

## CONCLUSION

The information requested by St. Jude Medical concerning the CERF study is at the foundation of the opinions expressed by Dr. Butchart. As such, it is essential that St. Jude Medical have the opportunity to review the data on which his opinions are based before he is allowed to provide trial testimony. Nevertheless, Plaintiffs seek to prejudice St. Jude Medical and garner an unfair advantage by forcing St. Jude Medical into a trial setting before it has been provided with that information and has an opportunity to adequately prepare for the cross-examination of Dr. Butchart.

Such tactics should not be countenanced and, for the reasons stated above, St. Jude Medical respectfully requests that the Court grant this Motion and stay Dr. Butchart's trial preservation deposition until production of all data and information is completed.

---

[3] Federal Rule of Civil Procedure 37(c)(1) gives teeth to the expert disclosure requirements "by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001 ) (noting that the Advisory Committee Notes describe Rule 37(c)(1) as "a 'self-executing,' 'automatic' sanction to 'provide[] a strong inducement for disclosure of material . . .'") Although there is good grounds for imposing sanctions against Plaintiffs for failure to disclose all data and information, St. Jude Medical merely requests that this Court temporarily stay the trial preservation deposition.

Dated: March 12, 2006

HALLELAND LEWIS NILAN & JOHNSON, P.A.

By ____s/ Tracy J. Van Steenburgh______

Tracy J. Van Steenburgh, Reg. No. 141173
U.S. Bank Plaza South, Suite 600
220 South Sixth Street
Minneapolis, Minnesota 55402-4501
(612) 338-1838

REED SMITH LLP
Steven M. Kohn
1999 Harrison Street, Suite 2400
Oakland, CA 94612

Attorneys for Defendant St. Jude Medical, Inc.