EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| IN RE ST. JUDE MEDICAL, INC., SILZONE HEART VALVES PRODUCTS LIABILITY LITIGATION | : : : | MDL NO. 01-1396 |

**PRETRIAL ORDER NO. 51**

This stipulated Order supersedes Pretrial Order No. 49, which governed the procedures for discovery of expert witnesses who will be offering opinions on issues of general applicability that will be relevant to the cases pending in this MDL (hereinafter "generic experts").

The parties having stipulated thereto, it is hereby ordered and adjudged:

1. By February 14, 2006, Defendants shall identify all generic liability experts they intend to offer and produce the Rule 26(a)(2) reports of those generic experts.

2. By March 4, 2006, Plaintiffs shall identify all generic liability experts they intend to offer in rebuttal and produce the Rule 26(a)(2) reports of those generic experts.

3. Depositions of designated generic liability experts shall take place between March 14, 2006 and June 13, 2006. The depositions of Plaintiffs' generic liability experts shall proceed and be completed before the depositions of Defendants' generic liability experts.

4. All documents, articles, data compilations and other material on which a generic liability expert relied in formulating his or her opinion shall be produced no later than ten (10) days in advance of a generic expert's deposition.

5. Depositions of generic liability experts shall be limited to fourteen (14) hours.

6. Daubert motions pertaining to generic liability expert testimony may be filed no later than thirty (30) days after all generic liability expert depositions have been completed. Oppositions to Daubert motions pertaining to generic liability expert testimony are due thirty (30) days after such motions have been filed. Reply briefs are due fifteen (15) days after the oppositions have been filed.

7. A new schedule for the designation and discovery of generic damage experts shall be established, if necessary, following the court's decision on the continued viability of the UDAP class in light of the recent 8th Circuit opinion.

Dated: January 23, 2006
at Minneapolis, Minnesota

s/John R. Tunheim
JOHN R. TUNHEIM
United States District Judge

EXHIBIT 2

(Pause.)

I could tell you it's my understanding that this is an Excel spreadsheet that sets forth the data that was collected for the Cardiff Embolic Risk Factor study which, for this deposition we'll call the CERF's study, C-E-R-F, and if you could just take a look at that and confirm that whether or not my understanding is correct?

A. Well, it has no heading. But it would make sense, yeah.

Q. But it appears to be the case that Defendant's Exhibits Number 3 through 7 is an Excel spreadsheet that sets forth the data collected for the Cardiff Embolic Risk Factor study, correct?

A. Correct. As far as I can tell. I did not supply this directly. So this I assume was supplied in the statistical documents that were supplied.

Q. Okay. We weren't supplied with a key to the column headings here.

So I was hoping you could shed some light on that.

A. I cannot. And I'll tell you why not. This -- the analysis was done by two statisticians working with us, Nicola Payne and Gary Grunkemeier. And the -- we left the statistical analysis entirely to them. So the column headings they would clearly understand much more than I would, I'm afraid.

Q. So you have no understanding as to what the column headings refer to in defendant's exhibit?

A. Not without a key. There must be a key somewhere that indicates what the column headings are but I don't have that key. As I say, this was handled entirely by the statisticians.

Q. Do you have any understanding as to what would indicate a positive finding in any of these columns?

A. I cannot help you there. I'm sorry. As I say, we left the statistical analysis entirely to the

statistician.

MR. BICKHAM: Mr. Coren, do you know if there is a key for the database that you provided us with?

MR. COREN: No, I don't.

A. Undoubtedly a key will exist, but I don't have it.

Q. You would expect a key would also provide some information as to what is or how a positive finding is indicated in each of the columns?

MR. COREN: Form. Objection you may answer.

A. Yes.

Q. Do you have any understanding as to who would have possession of that key?

A. Yes. The two statisticians who were involved, that's Nicola Payne and Gary Grunkemeier.

Q. Anyone else?

A. No, probably not.

Q. But, Dr. Butchart, can you

provide any insight into what data is reflected in Defendant's Exhibit Number 3 through 7?

A. Well, it's simply the basic data collection for the embolic risk factor study, which was, you know, a complex study, involved something like 340 separate items of data collection. This is why this is, you know, a large and complex data base, and that's why I'm sorry that I can't help you, not that I don't want to help you. I cannot help you. I'm sorry.

Q. Well, have you made any efforts to confirm the accuracy of the data reflected in Defendant's Exhibit Number 3 through 7?

A. I relied entirely on the statisticians, particularly Dr. Gary Grunkemeier, who has an international reputation as a biostatistician, and I trusted him and the other statistician to give me accurate results from this database.

A. I agree with the statement, you know, that I made at the time. I don't think that's the case now, because thankfully the U.S.A. has started to use INR as a means of monitoring anticoagulation intensity. So I think when you -- you concentrate on that particular sentence, you have to look at what went above it in that paragraph. This paper was published in...

Q. 1988.

A. 1988. And at a time when the U.S.A. had not gone to using INR for measuring anticoagulation intensity. It began in the -- thankfully in the 1990s, and then has continued since then, and I think now most centers do use INR as a means of measuring anticoagulation intensity.

Q. Okay. Things have changed. That's fair.

A. Things have changed.

Q. Moving to the conclusion section then. The first sentence, "It is

a basic principle of statistics that one variable can only be compared if all other variables are standardized." Do you agree with that?

A. I think one would have to ask a statistician really. That may have been somewhat of an overstatement because I think there are means of making comparisons. So I'm not sure that I would still agree with that statement really.

Q. And moving down, "Considerable variability and anticoagulation exists in any one patient, from patient to patient, from year to year, from clinic to clinic, from center to center and from country to country." Would you agree with that statement, Doctor?

A. I think there's less variability from center to center and country to country now because now the anticoagulation measurement has been standardized. I think that there is less

A. Well, prospective follow-up means that you collect the data, obviously, as you go along. Retrospective means that you only collect it after a time period has elapsed, and it has been shown in one study from Germany, for example, that retrospective or retrospective collection of data can influence TE event rates by a factor of more than two, underestimated by a factor of two. Because if you collect data after a long period of time, for example, some studies in the literature report after say ten years and they send a questionnaire out to patients at ten years. A lot of patients will have forgotten relatively minor events during that ten-year period, and so you will get an underestimate of events. So that's what I mean about, you know, the difference between prospective and retrospective data collection.

Q. Back to the confidence intervals. Did someone calculate the

confidence intervals for the CERFS 2002 data?

A. I would have to ask the statisticians about that, but I would imagine they probably did, but, you know.

Q. Will you provide that information?

A. We could provide it, yes.

Q. And I know you can't provide a specific amount, but the confidence intervals for CERFS 2002 certainly wouldn't fit on that graph, would they?

A. The upper confidence interval probably would not, no, but equally you got a pretty wide confidence interval in the AVERT data two entry.

Q. And you have designated --

A. No.

Q. And in this graph or AVERT 2002, is that based on the Schaff study?

A. Yes.

Q. And as we discussed, that data was collected in 2000. Would it be more accurate to say that that's the

EXHIBIT 3

ReedSmith

J. David Bickham
Direct Phone: 510.466.6775
Email: dbickham@reedsmith.com

Reed Smith LLP
1999 Harrison Street
Suite 2400
Oakland, CA 94612-3572
510.763.2000
Fax 510.273.8832

January 18, 2007

VIA FACSIMILE
Michael Coren, Esq.
Levy Angstreich Finney Baldante
Rubenstein & Coren P.C.
Woodcrest Pavillion, Suite 100
Ten Melrose Avenue
Cherry Hill, NJ 08003

**Re: St. Jude Medical - Silzone Heart Valve Litigation**
**<u>Our Reference Number: 350152.00830</u>**

Dear Michael:

During the deposition of Mr. Eric Butchart, I requested that a number of points of information and documents regarding the evidence on which Mr. Butchart is relying upon for his opinions in this case. We received the requested information correlating the echocardiography reports produced from the CERF study with the data provided regarding the CERF study, but have not received a response to the remaining requests. Accordingly, we are renewing our requests for that information and documents, which are summarized as follows:

- A key or explanation of the data from the CERF study reflected in the Excel spreadsheets that are marked as Defendant's exhibits #3-7 of Mr. Butchart's deposition transcript (pp. 33-35 and 45);
- The complete multivariate statistical analysis relied upon by Mr. Butchart in opining that Silzone is a risk factor for embolic events, which would include the analysis of patients who experienced TIAs, all of the risk factors that were considered, and the data on which that analysis was based (pp. 64-67 and 538);
- The email from Dr. Wilson regarding the findings from his analysis of the Silzone valve explanted by Mr. Butchart due to valve thrombosis (pp. 172-75);
- The photographs that were taken of the Silzone valve explanted by Mr. Butchart due to valve thrombosis (p. 175);
- The data regarding significant embolic risk factors found in the CERF study that are not included in Table 1 of Mr. Butchart's article, *Incidence of embolism and paravalvular leak after St. Jude Silzone valve implantation: experience from the Cardiff Embolic Risk Factor Study* (Defendant's Exhibit #15) (p. 213);

ReedSmith

- The linearized rates calculated for the TIA events that have occurred in all the patients in the CERF study, and the number of events that occurred beyond 30 days (p. 222-23);
- The confidence intervals for the event rates seen by Mr. Butchart in the patients involved in the CERF study (pp. 276-77);
- Confirmation of whether the combination of mitral and double valve rates are reported correctly in Table 3 of Mr. Butchart's report (pp. 289-90);
- The data regarding INR levels in the patients included in the Cardiff Late Review (p. 475-76);
- The submissions made to R & D and for ethics approval of Mr. Butchart's longer-term study of the Silzone and non-Silzone valve patients in the CERF study, including the protocol for that study (pp. 479-80 and 595).

In addition, without the key to the data provided in the Excel spreadsheet marked as Defendant's exhibits #3 – 7, neither Mr. Butchart nor I was able to confirm during his deposition whether these Excel spreadsheets include all of the data collected for the standard and Silzone valve recipients in the CERF study, and therefore, I would appreciate it if you could confirm whether all of that data has, in fact, been produced.

Please call me with any questions regarding the above and I look forward to receiving your response.

Very truly yours,

J. David Bickham

JDB:tab

DOCSOAK-9860572.1-DBICKHAM

ReedSmith

# FAX TRANSMITTAL

Reed Smith LLP
1999 Harrison Street
Suite 2400
Oakland, CA 94612-3572
Main Phone: 510.763.2000
Main Fax: 510.273.8832
Direct Fax: 510.273.8832

**From: J. David Bickham**
Direct Phone: 510.466.6775
Email: dbickham@reedsmith.com
Date: January 18, 2007

**Total Number Of Pages Including Cover Page**

**FAX TO**

| Name | Company | Fax Number | Phone Number |
|---|---|---|---|
| Michael Coren, Esq. | Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P.C. | 856.795.7447 | 856.424.8967 |

**No Original to follow**

**NOTES:**

**If you do not receive all of the pages, please call us at (510) 466-6169.**

Please Transmit Before ☐9 ☐10 ☐11 a.m. ☐12 ☐1 ☐2 ☐3 ☐4 ☐5 ☐6 ☐7 ☐8 p.m.

Client Number: 350152 Matter Number: 00830 Attorney Number: 5484
Transmission Time: ______ a.m./p.m. Finish Time: ______ a.m./p.m.
Operator: ______

**PLEASE NOTE:** The information contained in this facsimile message may be privileged and confidential, and is intended only for the use of the individual(s) or entity named above who has been specifically authorized to receive it. If the reader is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return all pages to the address shown above. Thank you.

DOCSOAK-9860622.1

EXHIBIT 4

**Kim, Junga P.**

---

**From:** Michael Coren [mcoren@levyangstreich.com]
**Sent:** Thursday, February 22, 2007 2:15 PM
**To:** Bickham, J. David
**Subject:** RE: Evidence Relied Upon By Dr. Butchart
**Follow Up Flag:** Follow up
**Flag Status:** Red

Shortly. I am working on.

Michael Coren
Levy, Angstreich, Finney, Baldante,
Rubenstein & Coren, P.C.
(800) 601-1616 (215) 735-1616 (856) 424-8967

This e-mail and any document(s) accompanying this transmittal contains information from Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P.C. that is confidential and /or legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or taking of any action in reliance upon the contents of this transmittal information is strictly prohibited and the document(s) should be returned to this firm immediately. If you have received this transmittal in error, please notify this firm immediately at (800) 601-1616 or (215) 735-1616 or (856) 424-8967 or by return e-mail.

**Circular 230 disclosure:** To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this document is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter that is contained in this document

---

**From:** Bickham, J. David [mailto:dbickham@reedsmith.com]
**Sent:** Thursday, February 22, 2007 4:42 PM
**To:** Michael Coren
**Subject:** RE: Evidence Relied Upon By Dr. Butchart

Michael,
Do you have any further word on when we can expect to receive a response to our request last month for the evidence relied upon by Dr. Butchart?

Regards,

Dave

J. David Bickham, Esq.
510.466.6775
dbickham@reedsmith.com

**Reed Smith**LLP
1999 Harrison Street

Oakland, CA 94612
510.763.2000 (reception)
510.273.8832 (fax)
www.reedsmith.com

This e-mail is confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. To do so could violate state and Federal privacy laws. Thank you for your cooperation. Please contact **J David Bickham** at **510-466-6775** or e-mail **dbickham@reedsmith.com** if you need assistance.

---

**From:** Michael Coren [mailto:mcoren@levyangstreich.com]
**Sent:** Wednesday, January 31, 2007 11:03 AM
**To:** Bickham, J. David
**Cc:** carol@patrickmurphylaw.com; DMC@zimmreed.com; Fernando Bermudez; fletcher@fletcherjohnsonlaw.com; J. Gordon Rudd Jr. ; JCAPRETZ@capretz.com; jtc@capretz.com; mbosko@stanfordalumni.org; Mgslaw@aol.com; farlite@aol.com; murphylaw@msn.com; dsigelman@CMHT.com; stjude@stlouislaw.com; Carolyn Lindheim; Steven E. Angstreich
**Subject:** RE: Evidence Relied Upon By Dr. Butchart

David,

Sorry for the delay in responding. There are something's the PSC will be providing in response to the requests outlined in your letter, such as the CERFS database field key. There are things your letter asked for that the PSC needs to discuss with Mr. Butchart. In view of his schedule and other commitments, we hope to have his attention on this next week. I will be back in touch.

Kind regards,

Michael Coren
Levy, Angstreich, Finney, Baldante,
Rubenstein & Coren, P.C.
(800) 601-1616 (215) 735-1616 (856) 424-8967

This e-mail and any document(s) accompanying this transmittal contains information from Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P.C. that is confidential and /or legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or taking of any action in reliance upon the contents of this transmittal information is strictly prohibited and the document(s) should be returned to this firm immediately. If you have received this transmittal in error, please notify this firm immediately at (800) 601-1616 or (215) 735-1616 or (856) 424-8967 or by return e-mail.

**Circular 230 disclosure:** To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this document is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter that is contained in this document.

---

**From:** Bickham, J. David [mailto:dbickham@reedsmith.com]
**Sent:** Monday, January 29, 2007 1:47 PM
**To:** Michael Coren
**Subject:** Evidence Relied Upon By Dr. Butchart

Michael,
I would appreciate it if you would let me know when we can expect a response to our request for the evidence relied upon by Dr. Butchart, as set forth in my letter of January 18, 2007.

Regards,
Dave

J. David Bickham, Esq.
510.466.6775
dbickham@reedsmith.com

**Reed Smith** LLP
1999 Harrison Street
Oakland, CA 94612
510.763.2000 (reception)
510.273.8832 (fax)
www.reedsmith.com

This e-mail is confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. To do so could violate state and Federal privacy laws. Thank you for your cooperation. Please contact **J David Bickham** at **510-466-6775** or e-mail **dbickham@reedsmith.com** if you need assistance.

EXHIBIT 5

**Kim, Junga P.**

**From:** Kohn, Steven M.
**Sent:** Friday, February 23, 2007 11:32 AM
**To:** sangstreich@levyangstreich.com (sangstreich@levyangstreich.com); Michael Coren (mcoren@levyangstreich.com)
**Subject:** Data underlying Mr Butchart's Opinions

**Importance:** High

**Attachments:** 5vcgs01!.DOC

5vcgs01!.DOC (61 KB)

Steve and Michael,

In deposition and subsequently, Dave Bickham requested certain information and data which Mr Butchart relies on to support his opinions. Attached is a copy of Dave's letter which was faxed to you on January 18, 2007, outlining the items requested, with references to the deposition.

On January 31st Michael advised Dave that he needed to discuss the requests with Mr Butchart and that he hoped to do that during the first week of February. Nevertheless, nothing has been received to date.

In view of the fact that you wish to take a trial deposition of Mr Butchart on April 3rd, it is critical that we have the materials requested within the next week, ie, no later than Friday March 2nd. If that's not possible, I am requesting that the proposed depostion be rescheduled to a date at least 30 days after we receive the materials requested. Please advise.

Steve

Steven M. Kohn, Esq.
510.466.6727 - direct
510.759.9699 - cell
skohn@reedsmith.com

ReedSmith LLP
1999 Harrison Street
Oakland, CA 94612
510.763.2000
510.273.8832 fax
www.reedsmith.com

New York Los Angeles Century City
San Francisco Washington, D.C.
Philadelphia Pittsburgh Princeton
Falls Church Richmond Leesburg
London U.K. Paris Munich

This e-mail is confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. To do so could violate state and Federal privacy laws. Thank you for your cooperation. Please contact **Steve Kohn** at **510-466-6727** or e-mail **skohn@reedsmith.com** if you need assistance.

EXHIBIT 6

JDB/CR/BT/DM

orig + CD to CR

Levy Angstreich Finney
Baldante Rubenstein & Coren P.C.
*Attorneys at Law*

Mark S. Levy ★✱
Steven E. Angstreich ✱
Lawrence D. Finney ∀㊊
John W. Baldante ✱
Martin G. Rubenstein ㊊
Michael Coren ✱
Carolyn C. Lindheim ✱
Thomas S. Harty, LL.M ✱
Amy R. Brandt ✱
Jack S. Cohen ✱
Silvia M. Ferri ✱
Paul N. Bonavita ✱
Theresa S. Corson ✱
R. Erick Chizmar ✱ ¥
Mark R. Cohen ✱

★ *Certified by the Supreme Court of New Jersey as a Civil Trial Attorney*
∀ *National Board of Trial Advocacy Certified Civil Trial Attorney*
✱ *Also Member of PA Bar*
㊊ *Member of PA Bar Only*
¥ *Also Member of New York Bar*

Woodcrest Pavilion
Suite 100
Ten Melrose Avenue
Cherry Hill, NJ 08003

856-424-8967
800-601-1616
Fax: 856-795-7447

1616 Walnut Street
5th Floor
Philadelphia, PA 19103

215-735-1616
Fax: 215-545-2642

www.levyangstreich.com

Of Counsel
David A. Parker

RECEIVED
FEB 27 2007
RS

February 26, 2007

**VIA FEDERAL EXPRESS**
J. David Bickham, Esquire
Reed Smith LLP
1999 Harrison Street
Suite 2400
Oakland, CA 94612-3572

Re: St Jude Medical, INC Silzone Litigation - Mr. Butchart/CERFS materials

David,

This and the accompanying CD ROM is in response to your letter of January 18, 2007. In the order you ask:

A. Supplied on the accompanying CD Rom is a PDF with a key of the data fields for the CERF study Excel spreadsheet.

B. Supplied on the CD Rom are PDFs with multivariate statistical analyses on the CERFS data on Silzone and other risk factors for embolic events.

C. Supplied on the CD Rom is a PDF of a copy of the email Mr. Butchart received from Dr. Wilson relative to his pathology analysis of the Silzone valve explanted by Mr. Butchart due to valve thrombosis. The patient's identify has been redacted.

D. Supplied on the CD Rom is a PDF with a photograph of the Silzone valve explanted by Mr. Butchart due to valve thrombosis.

E. The significant risk factors for TE found in the CERFS are detailed in the Circulation 2003 paper. You are also directed to the multivariate analyses referred to above.

F. Supplied on the CD Rom is a PDF with tables showing event rates in the CERFS, together with confidence intervals.

G. See response to F.

H. In figures 2 and 3 of his MDL report, the bar representing a TE rate of 12.6 after MVR in the CERFS actually represented the TE rate of MVR/DVR combined. The correct TE rate for MVR alone is 16.7.

I. Information on INR control was provided in the tables of individual patient data in the Cardiff Late Review that has been already supplied. INR data from the CERFS were also provided in the Ionescu paper in HEART 2003, in tables 4 and 5. Due to patient confidentially issues and the volume and the form of the underlying INR records, individual patient INR records can not be produced without a considerable time-consuming sorting, cross-referencing and redacting process. Your request is therefore unduly burdensome and unreasonable.

J. Mr. Butchart cannot supply you the submission to his University's Ethics Committee as that institution deems it confidential material. He is able, however, to provide you with the following description of the approved protocol of the study which has received Ethics Committee approval and has begun. Please note that the protocol applies to all patients in the CERFS (providing that sufficient funding can be obtained) and not just patients with standard SJM valves:

> Revalidation of a risk scoring system to predict thromboembolic complications after heart valve replacement.
>
> Patients who were previously enrolled in the CERFS will be invited to return for clinical assessment, blood tests, TEE and cinefluoroscopy. Their history of late complications, clinical findings, and the objective assessment of prosthetic valve function from TEE and cinefluoroscopy will be correlated with their originally determined risk score at the time of surgery, in order to revalidate its usefulness in long-term follow-up.
>
> Participation will be entirely voluntary and patients will receive no payment.
>
> Although not the primary objective of the study, the opportunity will be taken to compare data on long-term results with the standard SJM valve with equivalent data for the Silzone valve.

With respect your letter's unbulleted last item, the PSC is advised that the Excel spreadsheet supplied contains all of the data for variables in the CERFS database that were examined for the Ionescu HEART 2003 paper, which is what David Stanley

asked be supplied in his e-mail of February 3, 2006.

Very truly yours,

Levy, Angstreich, Finney, Baldante,
Rubenstein & Coren, P.C.

MICHAEL COREN

MC/amc
Encl.

EXHIBIT 7

ReedSmith

Reed Smith LLP
1999 Harrison Street
Suite 2400
Oakland, CA 94612-3572
510.763.2000
Fax 510.273.8832

J. David Bickham
Direct Phone: 510.466.6775
Email: dbickham@reedsmith.com

February 28, 2007

VIA FACSIMILE
Michael Coren, Esq.
Levy Angstreich Finney Baldante
Rubenstein & Coren P.C.
Woodcrest Pavillion, Suite 100
Ten Melrose Avenue
Cherry Hill, NJ 08003

**Re: St. Jude Medical - Silzone Heart Valve Litigation**
**Our Reference Number: 350152.00830**

Dear Michael:

We received yesterday your response to our January 18, 2007 request for the information relied upon by Mr. Butchart in forming his opinions in this action. Unfortunately, the information provided, as outlined below, does not appear to be complete or sufficient.

**Valve Thrombosis Data**

Now that a key to the CERF data in the hard copy spreadsheets (Exhibits 3-7 of Mr. Butchart's deposition transcript) has been provided, it does not appear that there are any data on the number of valve thrombosis events in the CERF patients. Likewise, there is no information on valve thrombosis in the tables of events reported in the CERF study. The valve thrombosis rates are a significant aspect of Mr. Butchart's opinion, both on their own and as part of his TEB index. Accordingly, it is critical that St. Jude Medical be provided with the data regarding the reports of valve thrombosis in his patients.

**Multivariate Analyses**

The multivariate analyses provided do not include any analyses that include aortic valve recipients. Given that Mr. Butchart failed to disclose in either his expert report or his deposition that his Silzone aortic valve recipients experienced a lower rate of thromboembolic events in his CERF study, it is imperative that St. Jude Medical be provided with all of the multivariate analyses performed on the CERF study patients, including all analyses of, or that include, aortic valve recipients.

In addition, while the multivariate analyses indicate the various risk factors that were apparently included in the models, neither the major thromboembolic event analysis or the all thromboembolic event analysis includes the results of the statistical calculations for all of the risk factors included in the models. Accordingly, we are requesting that St. Jude Medical be provided with the complete results of the multivariate analyses.

Furthermore, we requested the data on which the multivariate analyses were based, more specifically, the individual values for the Silzone valve recipients regarding the factors identified by Mr.

Butchart as being predictive of thromboembolic events in the CERF study. Since Mr. Butchart claims Silzone is more predictive of thromboembolic events than the other variables he analyzed in the CERF study and that each of these variables should be considered in evaluating and monitoring all Silzone valve recipients, we should be able to evaluate that underlying data – just as plaintiffs have done for the AVERT study. We have not, however, been provided with that data.

**Data re Significant TE Risk Factors Not Included in Mr. Butchart's Article**

Table 1 in Mr. Butchart's article, *Incidence of embolism and paravalvular leak after St. Jude Silzone valve implantation: experience from the Cardiff Embolic Risk Factor Study* (Defendant's Exhibit #15), sets forth a variety of clinical details regarding the St. Jude Medical patients in the CERF study, but does not provide data regarding all of the clinical risk factors Mr. Butchart found to be significant in the CERF study. Accordingly we asked to be provided with the data on the risk factors that were not reported in Table 1 of Mr. Butchart's article concerning the thromboembolic risk factors in the Silzone valve recipients in the CERF study. At his deposition, Mr. Butchart specifically mentioned that the data on at least the factor related to the presence of chronic chlamydia infection and the factors related to the blood test results were not included in the article, but could be obtained. Your response that the data is included in the paper is, therefore, not accurate.

The analysis of the thromboembolic risk factors in the Silzone patients in the CERF study is the foundation for much of Mr. Butchart's opinion. Accordingly, St. Jude Medical is entitled to that data, and we again request that it be provided to us.

**Anticoagulation Study Data**

Now that we have finally been provided with the rates of thromboembolic rates for Mr. Butchart's aortic valve recipients, it is apparent that Mr. Butchart's Silzone aortic valve recipients experienced a lower rate of thromboembolic events than his standard aortic valve recipients. It is also apparent that Mr. Butchart's standard mitral/double valve recipients experienced a thromboembolic event rate that was more than two and a half times the OPC rate. Although Mr. Butchart chose not to disclose these rates in his expert report or his deposition, obviously, something other than Silzone caused the high rate of thromboembolic events in his CERF study patients.

Inadequate anticoagulation is one of the primary causes of thromboembolic events in patients with mechanical heart valves; however Mr. Butchart does not believe that inadequate anticoagulation is the explanation for the higher thromboembolic event rates in his CERF study patients. Accordingly, St. Jude Medical should be provided the anticoagulation control data on which Mr. Butchart bases his opinion.

Nevertheless, the information we have been provided regarding INR control in Mr. Butchart's 2003 CERF study is far from complete. It includes only (1) the mean INR for 12 of the 13 the patients who experienced major thromboembolic events for an unspecified number of weeks before those events, and (2) an estimation of the percentage of patients below, in, or above the INR therapeutic range. There is no information as to the INRs for the remaining events that make up Mr. Butchart's TEB index (for either Silzone or standard valve recipients), specifically, 32 of the 49 thromboembolic events, the unspecified number of valve thrombosis events, and 17 bleeding events. Furthermore, the estimate of the percentage of patients falling below, in, or above the INR therapeutic range does not segregate the INR data between aortic, mitral, and double valve recipients.

After the repeated requests for documents and data from the PSC regarding the AVERT study that required extensive redaction, your response that it would be too burdensome to provide the INR data is, to say the least, ironic. Furthermore, it appears from Table 5 in Mr. Butchart's paper that the

anticoagulation data has already been collected and analyzed, and therefore, should not require substantial effort to provide to St. Jude Medical.

**Mr. Butchart's MDL Trial Deposition**

All of the above information should have been produced long ago since it is central to fundamental opinions held by Mr. Butchart in this action. For this reason, we request that all of the information be provided no later than Monday, March 5, 2007. If this cannot be done, we request that the trial deposition of Mr. Butchart be rescheduled until at least 30 days after you produce the materials requested.

In addition, Mr. Angstreich has informed us that plaintiffs' counsel do not intend to ask Mr. Butchart in his MDL trial deposition about subjects addressed in his expert report recently filed in the Andersen action in Canada that were not addressed in his MDL expert report, and this will confirm that intention.

Your prompt response to our request for the information relied on by Mr. Butchart would be appreciated.

Very truly yours,

J. David Bickham

JDB:tab

ReedSmith

# FAX TRANSMITTAL

Reed Smith LLP
1999 Harrison Street
Suite 2400
Oakland, CA 94612-3572
Main Phone: 510.763.2000
Main Fax: 510.273.8832
Direct Fax: 510.273.8832

**From: J. David Bickham**
Direct Phone: 510.466.6775
Email: dbickham@reedsmith.com
Date: February 28, 2007

**Total Number Of Pages Including Cover Page**

**FAX TO**

| Name | Company | Fax Number | Phone Number |
|---|---|---|---|
| Michael Coren, Esq. | Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P.C. | 856.795.7447 | 856.424.8967 |

**No Original to follow**

**NOTES:**

**If you do not receive all of the pages, please call us at (510) 466-6169.**

Please Transmit Before ☐9 ☐10 ☐11 a.m. ☐12 ☐1 ☐2 ☐3 ☐4 ☐5 ☐6 ☐7 ☐8 p.m.

Client Number: 350152 Matter Number: 00830 Attorney Number: 5484
Transmission Time: ________ a.m./p.m. Finish Time: ________ a.m./p.m.
Operator: ________

**PLEASE NOTE:** The information contained in this facsimile message may be privileged and confidential, and is intended only for the use of the individual(s) or entity named above who has been specifically authorized to receive it. If the reader is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return all pages to the address shown above. Thank you.

DOCSOAK-9860622.1

EXHIBIT 8

Levy Angstreich Finney
Baldante Rubenstein & Coren P.C.
*Attorneys at Law*

Mark S. Levy ✱✱
Steven E. Angstreich ✱
Lawrence D. Finney ∀⊕
John W. Baldante ✱
Martin G. Rubenstein ⊕
Michael Coren ✱
Carolyn C. Lindheim ✱
Thomas S. Harty, LL.M ✱
Amy R. Brandt ✱
Jack S. Cohen ✱
Silvia M. Ferri ✱
Paul N. Bonavita ✱
Theresa S. Corson ✱
R. Erick Chizmar ✱¥

✱ *Certified by the Supreme Court of New Jersey as a Civil Trial Attorney*
∀ *National Board of Trial Advocacy Certified Civil Trial Attorney*
✱ *Also Member of PA Bar*
⊕ *Member of PA Bar Only*
¥ *Also Member of New York Bar*

Woodcrest Pavilion
Suite 100
Ten Melrose Avenue
Cherry Hill, NJ 08003

856-424-8967
800-601-1616
Fax: 856-795-7447

1616 Walnut Street
5th Floor
Philadelphia, PA 19103

215-735-1616
Fax: 215-545-2642

www.levyangstreich.com

Of Counsel
David A. Parker

March 2, 2007

J. David Bickham, Esquire
Reed Smith LLP
1999 Harrison Street, Suite 2400
Oakland, CA 94612-3572

Re: St. Jude Medical – Silzone Heart Valve Litigation

Dear Mr. Bickham:

I am responding to your letter of February 28, 2007 to my partner, Michael Coren. At the outset, let me point out the following:

1. Your letter makes it clear that no matter what information is provided to you, neither you nor your client nor your client's experts will accept as valid any of Mr. Butchart's conclusions. As a result, I doubt whether we will ever be able to satisfy you with any level of information provided.

2. On March 22, 2006, David Stanley and Michael Coren discussed the "data" that St. Jude requested with respect to Mr. Butchart's expert report specifically as it relates to each and everyone of the requests contained in your letter. It was agreed and confirmed per Mr. Stanley's email that "SJM will clarify this request." Your letter of February 28, 2007 is the first "clarification" we have received.

As a result, we do not intend to be placed in a position of complying with your demand after you and your client waited eleven (11) months to provide the clarifying information. To the extent that the information is contained within the documents but you have been unable to discern it, our expert will assist you. And, to the extent that information is not contained therein and can be reasonably provided, same will be provided at our expert's convenience.

J. David Bickham, Esquire
March 2, 2007
Page 2

We intend to proceed with Mr. Butchart's generic trial deposition on April 3, 2007. Should you choose not to attend, that is your prerogative.

We will not agree, after you have waited 11 months, to a 30-day time frame between the production of materials, should we consent to produce them, and Mr. Butchart's deposition.

One final note: your representation of my statement to Steve Kohn is inaccurate. I advised Mr. Kohn that it was not my intention to question Mr. Butchart concerning his Canadian expert report. However, should any cross-examination question implicate that report, Mr. Butchart will reference it. I trust that you will discuss this with Mr. Kohn should you have any doubt as to its accuracy.

Very truly yours,

Steven E. Angstreich

SEA/ab
cc. All counsel of record.

#178

LEVY, ANGSTREICH, FINNEY, BALDANTE, RUBENSTEIN & COREN, P.C.
1616 WALNUT STREET; 5TH FLOOR
PHILADELPHIA, PA 19103

TELECOPIER: (215) 545-2642

TELECOPIER TRANSMITTAL SHEET

---

| | | |
|---|---|---|
| TO: | J. David Bickham, Esquire<br>Steven Kohn, Esquire | (510) 273-8832<br>(510) 273-8832 |
| FROM: | Steven E. Angstreich | |
| DATE: | March 2, 2007 | |

NUMBER OF PAGES (including cover sheet): 3

SPECIAL INSTRUCTIONS:

Please see attached correspondence.

IF YOU HAVE ANY PROBLEMS RECEIVING THESE PAGES, PLEASE CALL (215) 735-1616 IMMEDIATELY.

TIME SENT:__________

THE CONFIDENTIALITY OF A FAX TRANSMISSION CANNOT BE GUARANTEED.