IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE ST. JUDE MEDICAL, INC., SILZONE® HEART VALVES PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1396 |

**REPLY IN SUPPORT OF MOTION TO PRECLUDE TESTIMONY OF PLAINTIFFS' BIOMATERIALS EXPERT KEVIN E. HEALY PURSUANT TO FEDERAL RULE OF EVIDENCE 702**

# I.

# INTRODUCTION AND FACTUAL BACKGROUND

Years ago, Dr. Healy proposed a hypothesis concerning how silver might cause tissue damage and adverse clinical outcomes if enough of it came off a heart valve with a Silzone-coated sewing cuff. In deposition last year, however, he admitted that he did not have any facts to support any of his assumptions and that his theory was hypothetical and unproven. Though he identified tests that he could have run to determine if his assumptions were valid, neither he nor anyone else performed them.

Plaintiffs do not challenge any of these facts, but instead ask the Court to ignore its gatekeeper responsibilities under *Daubert*. Plaintiffs argue that unsupported hypotheses should be allowed, that having a factual basis for opinions should be optional, and that being unqualified in the relevant field should not be a barrier to an expert testifying. They further argue that because Dr. Healy is qualified to talk about materials and engineering, he should also be allowed to give opinions on toxicology, medicine, epidemiology, and clinical outcomes. Plaintiffs make these arguments even though each proposition has long been rejected by the Supreme Court, federal appellate courts, the Federal Rules of Evidence, and the Reference Manual on Scientific Evidence.

This is not a case of St. Jude Medical ("SJM") requiring too high a standard for the admissibility of expert opinions. Dr. Healy himself described what proof would

be needed to support his assumptions and admitted there was none. All of Dr. Healy's opinions should be excluded as a result.

## II.
## ARGUMENT

### A. Plaintiffs Mischaracterize The Law On The Admissibility Of Hypotheses

Rule 702 expressly requires an expert to employ "reliable principles and methods" and to have "sufficient facts or data" for his opinions. Further, "in order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method of evaluating data. **Proposed testimony must be supported by appropriate validation – i.e., 'good grounds,' based on what is known."** *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 590 (1993). The Court's gatekeeping role separates expert opinion evidence based on "good grounds" from subjective speculation. *Globetti v. Sandoz Pharms. Corp.*, 111 F. Supp. 2d 1174, 1177 (N.D. Ala. 2000).

Thus, the admissibility of a hypothesis turns on the scientific validity of its underlying reasoning and methodology, which requires a close examination of the factual evidence relied upon by the expert. *Daubert*, 509 U.S. at 592-593. These requirements were explained in *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 987-989 (8th Cir. 2001), a product liability case in which plaintiff claimed that her stroke was caused by the drug Parlodel. Soon after plaintiff's stroke, the FDA revoked Parlodel's approval because the risk of stroke in certain women outweighed its benefits. *Id.* Plaintiff offered

two expert witnesses on medical causation who proposed that the drug caused her stroke. *Id*. They hypothesized that Parlodel causes arteries to constrict, which in turn elevates blood pressure, increases blood flow to the brain, and thus causes stroke. *Id.* at 989. The Eighth Court upheld the exclusion of the experts' opinions, noting that while their reasoning appeared sound, the premises of the hypothesis were unproven. *Id*.

Plaintiffs in *Glastetter* argued that the opinions were supported by case studies suggesting the drug was a vasoconstrictor; by the FDA revocation due to a risk of stroke; and by the fact that other substances in the same medicinal class of compounds as Parlodel had caused strokes. *Id*. The Court held the proffered evidence was insufficient to support the hypothesis since the case studies and FDA revocation did not study vasoconstriction nor apply standards applicable to determining causation, and since the generic assumption that Parlodel would behave like others in its class ignored the fact that a slight change in structure could alter a substance's properties and effects. Thus, the Court excluded the proffered evidence because they did not support the experts' causation hypothesis. *Id.* at 989-992; *accord Smith v. Cangieter*, 462 F.3d 920, 923-25 (8th Cir. 2006)(opinion that was not supported by accident data or peer-reviewed articles, not tested by the expert or anyone else, and not subjected to scrutiny by the scientific community is inadmissible); *J.B. Hunt Transp., Inc. v. General Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001)("mere speculation and pure conjecture … is not competent proof and contributes nothing to a legally sufficient evidentiary basis").

Like *Glastetter*, Plaintiffs here offer a hypothesis based on a string of unproven and untested assumptions. Years ago, after Silzone was voluntarily withdrawn from the market, Dr. Healy proposed that Silzone might harm recipients because of a series of events starting with silver coming off the valve in sufficient amounts to cause a "gradient," which then causes a chronic inflammatory response, and which eventually leads to clinical problems. But in the years following, Dr. Healy did no testing, evaluation, or data gathering to corroborate his proposition, and he now admits his opinions are **hypothetical** and **unproven**. In fact, Dr. Healy admits "it is anybody's guess *when* or *if* a Silzone patient will experience complications."[1] But unsupported guesses are not admissible and so like *Glastetter*, *Smith* and *J.B. Hunt*, his opinions should be excluded.

Moreover, none of the cases cited by Plaintiffs hold that a speculative hypothesis unsupported by facts or data should be admissible under *Daubert*. In fact, these cases do not address this issue at all. In *United States v. Ruiz*, 412 F.3d 871 (8th Cir. 2005), the Court allowed a chemist to testify that a chemical compound he found at two methamphetamine labs was consistent with both sites using the same manufacturing process. *Id.* at 882. Hence, the case was not about an unfounded hypothesis, since the expert's testimony was based on actual data he collected. Likewise, in *United States v. Edwards*, *et al.*, 159 F. 3d 1117 (8th Cir. 1998), an arson expert was allowed to testify

1 Recognizing the seriousness of this admission, Plaintiffs have misquoted and attempted to soften the admission cited on page 13 of SJM's Motion, recasting it as Dr. Healy not being able to predict *which* Silzone patients are at a higher risk.

that the "blast cone" evidence at the ignition site indicated the explosion was consistent with what happens when a normally flammable substance is confined. *Id.* at 1123-1124. The *Daubert* defense was not applicable since it was not raised at trial. Plaintiffs also cite a **pre-*Daubert*** automobile accident case, *Stutzman v. CRST Inc.*, 997 F.2d 291 (7th Cir. 1993), in which the defense had not challenged the basis of the expert's opinions or qualifications. *Id.* at 296. Thus, *Stutzman* failed to address either the current standard for admissibility or facts similar to the present case.

### B. Dr. Healy's Failure To Support His Opinions Renders Them Inadmissible

Tellingly, Plaintiffs do not dispute Dr. Healy's admissions that he has not and cannot test his hypotheses that Silzone patients suffer from tissue damage and have an increased risk of future medical complications.[2] Nor do they offer any explanation or try to correct SJM's motion through a declaration by Dr. Healy, since he would have to contradict his sworn testimony. To dispute these facts would ultimately be futile, given that a recent peer-reviewed study has concluded that the risk of complications for those currently implanted with Silzone valves is no different from non-Silzone valve recipients.[3]

---

[2] Dr. Healy has repeatedly admitted that he has **no factual support** and has **not done any testing**, [*Depo.*, 81:23-83:9, 85:7-22, 89:2-92:7, 95:16-25, 364:7-365:4, 367:7-368:3, 377:8-16, 381:13-382:25], and that such **testing would be impossible to perform**, [*Id*. at 35:9-39:20, 79:18-80:13, 247:10-17, 366:24-367:6].

[3] "The additional risks of the Silzone valve, compared to Control, diminish over time and disappear by 4 years after implant. The minimum time after implant of the patients

Continued on following page

Plaintiffs are thus left to argue that Dr. Healy should be given a "pass," insinuating that SJM is improperly demanding "impossible tests on living people." *Opposition*, p.2. But it was Dr. Healy -- not SJM -- who developed the theory on how Silzone might cause tissue damage. It was Dr. Healy who theorized how the steps in that theory might be supported or tested. And it is now Dr. Healy who admits there is no support for the theory and no way to obtain any data – material admissions where, under *Daubert*, a "key question" for admissibility is "whether [the expert's theory] can be (and has been) tested." *Daubert*, 509 U.S. at 593. Dr. Healy did no such testing, and none of Plaintiffs' cases suggest that expert testimony that has not been and cannot be tested is admissible.

Moreover, to the extent Dr. Healy could test his theories – by examining explanted tissue – it is Plaintiffs' counsel who has stopped Dr. Healy. When Dr. Healy proposed testing explanted tissue to confirm his assumption of significant silver release, Plaintiff's counsel ignored him, and thus the test was never performed. *Depo*., 83:13-86:1, 89:2-91:10. Although Plaintiffs now claim that Dr. Healy has had a Silzone valve in his possession for almost one year, [*Opposition*, p.11, n.10] – though Dr. Healy did not mention the valve in his Rule 26 Report or deposition – he still has not performed any tests that would corroborate his theory. Leaving aside his violation of Rule 26's

---

Continued from previous page
currently alive with Silzone is now well beyond 5 years; thus, these current patients now have a risk profile similar to that of patients with a standard St. Jude valve." Gary L. Grunkemeier et al., *Time-Related Risk of the St. Jude Silzone Heart Valve*, 30 European J. Cardio-Thoracic Surgery 20, 26 (2006), Exh. 8 to Supp. Sylvester Aff.

disclosure requirements, Dr. Healy's failure to test is fatal to the admission of his opinion.

### C. Plaintiffs May Not Conjure Up A Factual Issue By Introducing New, Contradictory Information Not Relied On By Dr. Healy

Dr. Healy has admitted that he has no facts or data to validate his fundamental assumptions that silver leaches from the Silzone valve, [*Depo.*, 130:11-131:1, 132:1-19, 381:13-382:25], is present in the adjacent tissue [*Id.* at 81:23-83:9], forms a silver concentration gradient, [*Id.* at 364:7-365:4, 366:15-368:3], causes a chronic inflammatory response in Silzone patients, [*Id.* at 35:9-36:25, 38:5-18], and actually exposes Silzone patients to adverse medical events [*Id.* at 5:18-8:5, 30:2-18]. Plaintiffs' Opposition makes no mention of these admissions. Instead, Plaintiffs offer new information not included in Dr. Healy's opinions or identified as information supporting his opinions. *Opposition*, pp.23-26. Even this tactic cannot save Dr. Healy's theory from exclusion.

To begin with, Rule 26(a)(2)(B) expressly requires each expert witness to disclose "the data or other information **considered by [him or her]** in forming the opinions." Post hoc rationalizations created by counsel do not suffice for Rule 26, and do not render improper testimony admissible. For example, Plaintiffs' Opposition cites to the deposition testimony of Bill Holmberg and Gregory Wilson as "evidence" supporting Dr. Healy's opinions. *Opposition*, pp.24-25. But Dr. Healy never read Mr. Holmberg or

Dr. Wilson's deposition. *Depo.* 124:5-18. In fact, Dr. Wilson was deposed *after* Dr. Healy submitted his Rule 26 Report and gave his deposition, and thus Dr. Healy could not have relied on his testimony. Similarly, Plaintiffs point to Donald Guzik's deposition testimony concerning "adverse events," but Dr. Healy testified he never read it. *Depo.*, 208:14-17.[4]

Plaintiffs also attempt to contradict Dr. Healy's own deposition testimony and put a new spin on it. Plaintiffs claim, for example, that Bill Holmberg's August 21, 1996 memo is "evidence" of silver leaching that provides foundation for Dr. Healy's theories. *Opposition*, p.24. However, Dr. Healy testified he had only a superficial understanding of the memo, did not attempt to corroborate its accuracy, and did not know whether the corrosion issue described in the memo was the product of a miscalculation or how it was ultimately resolved. *Depo.*, 124:5-18, 125:24-126:5, 128:15-130:5. Similarly, Plaintiffs now claim that "evidence" exists to support Dr. Healy's opinion that Silzone causes adverse events. But Dr. Healy testified that he has no such evidence: he knew nothing about the medical condition of any Silzone valve patient, [*Depo.*, 5:18-6:2, 7:17-8:5, 14:3-12, 26:19-27:1, 36:15-25], he had not reviewed the most recent AVERT

---

4 This testimony is nevertheless inadmissible because it regards anecdotal reports of adverse events, which cannot support an opinion on causation. *Glastetter*, 252 F.3d at 989-990.

data [*Id.* at 42:13-19], and he admitted he had no confirmation whatsoever that Silzone patients today suffer from tissue damage [*Id.* at. 35:9-36:13, 39:8-20].[5]

### D. Dr. Healy's "Alarming Corrosion Rate" Opinion Lacks Reliable Methodology

Plaintiffs suggest that the declarations of Katherine Tweden and Bill Holmberg amount to little more than a battle of expert opinions for the jury. *Opposition*, pp.27-28. But this ignores the thrust of SJM's admissibility challenge, which is that Dr. Healy's opinion and his underlying methodology are unreliable. The purpose of the declarations is to demonstrate that the factual premises for his opinions are wrong.

Admissibility of expert testimony turns on whether it is grounded in correct assumptions and the facts as they exist. Although Dr. Healy based his opinion on statements from Dr. Tweden and Mr. Holmberg, he admitted he was guessing at the meaning of Dr. Tweden's statements, [*Depo.*, 386:21-387:8], did not verify his guess and read only a few pages of her deposition testimony, [*Id.* at 119:17-120:2, 388:10-14], and

5 The other new information Plaintiffs point to as post hoc support for Dr. Healy's opinions is demonstrably incorrect. For example, the email exchange between Bill Holmberg and Elizabeth Burnett, [*Opposition*, Exh. 17], does not prove that "Silzone® leaches silver, corrodes in the body, and sloughs of silver particulates" as Plaintiffs claim. To the contrary, the email states, " . . . [W]e have not seen any significant 'wear' or flaking of the coating." *Id.* The email exchange between Monica Schultz, Dr. Hartzell Schaff, and Dr. Gary Grunkemeier also does not prove that Silzone "causes" tissue damage. *Opposition*, Exh. 21. This email does not attribute the tissue ingrowth and inflammatory reaction issues observed by some explanting surgeons to Silzone. In fact, as Dr. Schaff states, "This is seen in valves with standard cuffs." *Id.* Likewise, the report entitled "Blood Biocompatibility of VEGF treated tissue, [*Opposition*, Exh. 22], focuses on an entirely different treatment than Silzone, i.e. VEGF, and it never concludes that Silzone causes inflammation and tissue damage. *Id.* at p.6. The new information does not support Dr. Healy's opinions.

did not read even one page of Mr. Holmberg's deposition testimony to determine the context and background for his statements [*Id.* at 124:5-18, 125:24:126:5, 128:15-130:5]. Dr. Healy's admitted failure to investigate and fully explore factors relevant to his opinion and review essential documents renders his opinion inadmissible, as does the fact that his assumptions about what Dr. Tweden and Mr. Holmberg meant are directly counter-factual to their declarations.

### E. Dr. Healy Is Not Qualified Outside Of Biomaterials For Orthopedic And Stent Devices

Plaintiffs argue that because Dr. Healy is established in the fields of orthopedics and stents that he should be allowed to address every other scientific subject. This argument contradicts both the law and Dr. Healy's own testimony.

Dr. Healy's qualifications in these fields do not allow him to opine in others. *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715-16 (8th Cir. 2001)(hydrologist prohibited from testifying about required standard of care for warehouseman); *Medalen v. Tiger Drylac U.S.A., Inc.*, 269 F. Supp. 2d 1118, 1127-29 (D. Minn. 2005)(toxicologist not qualified to opine on the etiology of basal cell carcinoma, noting that an expert in one subject may not be qualified to testify beyond that expertise); *Sutera v. The Perrier Group of America, Inc.*, 986 F. Supp. 655, 661 (D. Mass. 1997) ("'[A] scientist or medical doctor is not presumed to have expert knowledge about every conceivable scientific principle or disease.'"). Plaintiffs' repetitive *ipse dixit*

that Dr. Healy is eminently qualified to address medical device interactions with human blood and tissue is insufficient is to satisfy their burden and allow him to testify about toxicology, epidemiology, or clinical subjects.

In *Jones v. Lincoln Electric Co.*, 188 F.3d 709, 723-724 (7th Cir. 1999), plaintiff offered a highly qualified metallurgist to testify on how manganese is absorbed in the body and its clinical effects. *Id.* The metallurgist read reports and conversed with other Plaintiffs' experts, but admitted in deposition that he was not a toxicologist. *Id.* The Court excluded his proposed testimony, noting that it was outside his area of expertise and insufficient for him to merely repeat the opinions of other potentially qualified experts. *Id.*

Similar to *Jones*, Plaintiffs here offer a biomaterials engineer to address whether there is exposure to a metal (silver) and what the clinical effect of exposure would be on tissue and patients. But Dr. Healy admitted he is not qualified to render toxicology, epidemiology, or clinical opinions. *Depo.*, 24:20-26:13, 242:23-243:7. Where a witness admits that he lacks expertise on a particular subject, he cannot be deemed qualified under Rule 702. *Jones*, 188 F.3d at 723-724. Having Dr. Healy merely repeat another expert's opinions (like Dr. Wilson's) does not make him qualified.

Similarly, this Court's January 5, 2004 Order and the Canadian Court's October 9, 2003 Order are not determinative of Dr. Healy's expertise or the validity of

his opinions. The Orders are not relevant since they were made more than three years ago, were limited to preemption and class certification issues, and did not consider expert testimony on causation.

### F. Dr. Healy Should Not Be Allowed To Offer FDA-Related Opinions

Plaintiffs have not even tried to defend Dr. Healy's FDA opinions (FDA Opinions 1-5 in SJM's chart). *Motion*, pp.6-7. Though these FDA opinions comprise a major portion of Dr. Healy's declarations submitted with his Rule 26 Report, Plaintiffs now suggest that this Court postpone a decision on admissibility. But Plaintiffs' failure to defend these opinions is telling, and Dr. Healy should be precluded from offering any FDA opinions at trial.

## III.
## CONCLUSION

The evidence overwhelmingly demonstrates that Dr. Healy's opinions lack scientific reliability and thus are inadmissible.

HALLELAND LEWIS NILAN & JOHNSON PA

Dated: April 3, 2007.

By s/ Cortney G. Sylvester

Tracy J. Van Steenburgh Reg. No. 141173
Cortney G. Sylvester Reg. No. 231514
U.S. Bank Plaza South, Suite 600
220 South Sixth Street
Minneapolis, MN 55402-4501
Telephone: (612) 338-1838

REED SMITH LLP
Steven M. Kohn
1999 Harrison Street, Suite 2400
Oakland, CA 94612

Attorneys for Defendant St. Jude Medical, Inc.