IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE ST. JUDE MEDICAL, INC., SILZONE® HEART VALVES PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1396 |

**REPLY IN SUPPORT OF MOTION TO PRECLUDE TESTIMONY OF PLAINTIFFS' EXPERT ERIC G. BUTCHART PURSUANT TO FEDERAL RULE OF EVIDENCE 702**

# I.

# INTRODUCTION

Dr. Butchart's opinions are deficient in two fundamental respects. ***First***, Dr. Butchart's methodology and the evidence he relies upon for his opinions are not scientifically reliable. ***Second***, though a reputed cardiothoracic surgeon, Dr. Butchart is not an expert in toxicology, pathology, hematology, biomaterials, epidemiology, and statistics. Thus, he lacks the requisite qualifications to reliably opine on these subjects.

Here, rather than demonstrate how Dr. Butchart's opinions satisfy Rule 702 and *Daubert*, Plaintiffs devote much of their Opposition to mudslinging and storytelling, none of which is relevant to the admissibility of Dr. Butchart's opinions. As gatekeepers of admissible expert testimony, federal courts must exclude opinions that are not scientifically reliable and are not offered by a qualified witness. Because Dr. Butchart's opinions fall squarely into these categories, they must be excluded.

# II.

# ARGUMENT

## A. Dr. Butchart's Opinions That Silzone Is Toxic To Tissue And Blood Components And Causes An Increased Incidence Of Medical Complications Are Scientifically Unreliable And Must Be Excluded

To satisfy Rule 702, Courts must undertake "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 592-593 (1993). This assessment

requires a close examination of the evidence relied upon by the expert to determine whether that evidence provides a strong scientific basis for his theory. *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 992 (8th Cir. 2001)(excluding experts' theory of general causation because the supporting evidence did not provide a strong scientific basis for their theory). Opinions that are speculative or lack sufficient evidence are inadmissible. *J.B. Hunt Transp., Inc. v. General Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001)("mere speculation and pure conjecture … is not competent proof and contributes nothing to a legally sufficient evidentiary basis.").

*Glastetter*, 252 F.3d 986, is illustrative. There, the Eighth Circuit barred plaintiff's experts from opining that Parlodel causes vasoconstriction, the alleged causal mechanism linking Parlodel to plaintiff's intracerebral hemorrhage (ICH). *Id.* at 992. In doing so, the Court closely examined the experts' supporting evidence, which included case reports, medical treatises, human rechallenge/dechallenge data,[1] animal studies, internal company documents, and the FDA's revocation of Parlodel's indication for suppressing lactation. *Id.* at 989-992. The Court ruled on each item as follows:

(1) Case reports: Excluded because they are "not scientifically valid proof of causation." *Id.* at 989-990.

(2) Medical literature: Excluded because literature was based on inadmissible case reports or anecdotal information, and

[1] This type of study involves exposing patients to the alleged injury-causing drug (rechallenge), and then removing that exposure (dechallenge).

did not conclude that Parlodel causes vasoconstriction. One leading medical treatise had actually reached the opposite conclusion. Thus, the medical literature did not "present persuasive scientific evidence" of causation. *Id.* at 990.

(3) Rechallenge/dechallenge data: Excluded because the "paucity of examples presented statistically insignificant results," the data was not subject to "routine testing controls," and the data included irrelevant medical conditions. *Id.* 990-991.

(4) Animal studies: Excluded because they were not designed to test, and did not conclude, causation. *Id.* at 991.

(5) Internal company documents: Excluded because the proffered statements were lifted out of context and did not "admit" that Parlodel caused ICHs. *Id.* at 991.

(6) FDA revocation: Excluded because FDA action is unreliable proof of medical causation. "[T]he FDA employs a reduced standard (vis-à-vis tort liability) for gauging causation when it decides to rescind drug approval." *Id.* at 991.

Because neither the "different pieces of scientific evidence" nor "the aggregate of this evidence" provided a strong scientific basis for their theory, the Court affirmed the exclusion of the expert evidence. *Id.* at 992.

Dr. Butchart relies on largely the same types of evidence barred in *Glastetter*. Accordingly, his opinions and his underlying evidence must be excluded.

### 1. Dr. Butchart's Extrapolation From *Two* Explanted Silzone Valves Is Inadequate

Dr. Butchart improperly extrapolates from his observations of "loosely attached" thrombus on **two** explanted Silzone valves to conclude that Silzone is toxic. But *Glastetter* disapproved of such "paucity of examples." *Glastetter*, 252 F.3d at 990-991. Because two valves represent only 0.0056% of the 36,000 Silzone valves implanted in patients, Dr. Butchart's observations and the causation opinions derived therefrom cannot be deemed scientifically valid.

### 2. Dr. Butchart's Proffered Literature Is Not Persuasive Scientific Evidence

The scientific literature cited does not support Dr. Butchart's opinions. The Sawyer article, for instance, never concluded that silver is more thromobogenic relative to other metals and it never rejected silver as unsuitable for prosthetic heart valve construction. *Motion*, Exh. 5, pp. 124-130. Plaintiffs misrepresent the findings and conclusions of the article by suggesting that because thrombus developed on one of the two silver heart valves, then this purported "50% valve thrombosis rate" demonstrates that silver is an unsuitable biomaterial for heart valves. *Opposition*, p.16. The Sawyer article not only did not reach this conclusion, it also did not attribute the cause of the single thrombosed valve to silver. *Motion*, Exh. 5, p.126 ("Silver. These did not rapidly and invariably thrombose as had been expected. . . . **The reason for this is not entirely known.**"). Given that the Sawyer article involved ball and cage heart valves well-known

for causing thrombus, this further undercuts the suggestion that silver caused the one thrombosed valve.

Likewise, the Lee article does not support Dr. Butchart's opinion and, in fact, never directly studied silver or presented silver comparison data. *Motion*, Exh. 5, 63:809-819. That the article contains one sentence conclusorily stating that noble metals such as silver "invariably cause thrombosis" does not make it adequate foundation for Dr. Butchart's opinion, as the sentence is not supported with details about testing done on silver and is merely a summary of two studies performed more than six years earlier, neither of which actually tested prosthetic heart valves. *Id.* at 63:809-810. Notably, Dr. Butchart has made no effort at all to demonstrate the relevance and scientific validity of either study. *Report*, p.18.

Finally, Dr. Butchart improperly relies on the Goodman study. The conclusions of that study are clearly contradictory to Dr. Butchart's tissue/blood component damage theory: "Hence, silver coating may not only reduce infection by virtue of its bacterial toxicity, but may also reduce infection by **initiating a more rapid healing of the sewing ring.** This would then reduce the fabric surface area for bacterial adhesion and colonization. **Of course, more rapid healing may also have benefits with respect to device thrombogenicity."** *Motion*, Exh. 4.

Conceding that Dr. Butchart's conclusions differ from Goodman's, Plaintiffs insist that Dr. Butchart should not be bound by and can ignore the results and conclusions of a scientific study. The law mandates otherwise. When the literature underlying an expert's opinion does not provide "persuasive scientific evidence," *Glastetter* compels its exclusion. 252 F.3d at 990. Plaintiffs do not cite to a single case holding otherwise.[2]

### 3. Dr. Butchart Failed To Test His Toxicity Opinion

Plaintiffs do not dispute any of SJM's challenges to Dr. Butchart's poor methodology. Instead, they merely argue that it was unnecessary for Dr. Butchart to perform any testing at all. *Opposition*, p.15. But this argument ignores *Daubert*'s recognition of the importance of testing. 509 U.S. at 593 (a "key question" to determine the admissibility of an expert's theory is "whether it can be (and has been) tested").

The fact remains that Dr. Butchart did not perform any testing or gather any data to validate his theory that silver toxicity actually caused the loose thrombus he purportedly observed. *Depo.*, 173:9-21. He failed to rule out alternative causes for the

[2] In an effort to salvage Dr. Butchart's toxicology opinion, Plaintiffs badly misquote the deposition testimony of Dr. Kevin E. Healy, their biomaterials expert. Dr. Healy expressly testified that it would be impossible for there to be a statistically significant difference in the rate of thrombosis between Silzone and non-Silzone valves: ". . . I think statistically **it would almost be impossible to achieve any statistically significant results between patients treated -- patients treated with Silzone and patients not treated with silver coating**." *Motion*, Exh. 6, 54:6-17. This testimony only further confirms the unreliability of Dr. Butchart's opinions.

loose thrombus. *Id.* at 170:6-171:2. He has never tested his toxicity theory in any way, let alone attempt to gather basic information about silver dosage levels in the Silzone sewing ring or in adjacent human tissue. *Id.* at 173:9-21, 256:24-258:5. Dr. Butchart's failure test his opinion is a flagrant violation of *Daubert*.

### 4. Non-Randomized And Uncontrolled Studies And Adverse Event Reports Are Not Scientifically Reliable

Although he relies on his CERF and Cardiff Late Review studies as evidence of his opinion that Silzone causes a higher incidence of medical complications, Dr. Butchart admits these studies are less scientifically reliable. *Depo.*, 187:24-188:10 (admitting that unlike the CERF and Cardiff Late Review studies, a randomized study is a "better way" of making comparisons). The CERF study was a small, non-randomized study involving 83 Silzone patients from one hospital. *Report*, Appendix 1; *Depo.*, 187:11-14. The Cardiff Late Review is a non-randomized, uncontrolled, and non-blinded study. *Depo.*, 48:11-49:12, 348:14-22.

Furthermore, although Dr. Butchart relies heavily on the Cardiff Late Review to conclude that Silzone patients are at increased risk, he admits that he failed to use the appropriate control group – standard (non-Silzone) SJM valves. *Depo.*, 186:19-187:10, 297:24-298:22. Dr. Butchart thus violates his own standards for reliable scientific evaluation. Given Dr. Butchart's own testimony on the importance of using standard

SJM valves as the control group, Plaintiffs' counsel's argument that literature averages are adequate rings hollow.

In fact, because they lack randomization, controls, or consideration of relevant factors such as control group complication rates, the CERF and Cardiff Late Review studies are nothing more than patient case series. Eighth Circuit law holds that such case series are "not scientifically valid proof of causation." *Glastetter*, 252 F.3d at 989-990, 992; *Willert v. Ortho Pharm. Corp.*, 995 F. Supp. 979, 981 (D. Minn. 1998)(case reports are not reliable scientific evidence of causation). These studies and the opinions derived therefrom must be excluded.[3]

SJM's Top Accounts Study also does not constitute scientifically reliable evidence of causation. Significantly, the Top Accounts Study was an observational study that lacked a control group, was not randomized, not prospective, and its findings have never been published. *Report*, p.27. Absent a control group, the study "has little to say about causation." *Reference Manual On Scientific Evidence*, Federal Judicial Center 2000 (2nd Ed.) at 95. Consistent with *Glastetter*, the Court should exclude the Top Accounts Study because it does not constitute strong scientific evidence for Dr. Butchart's increased risk opinion. 252 F.3d at 989-992.

---

3 Although Plaintiffs claim that expert opinions based on case reports are admissible, [*Opposition*, p.23], the only Eighth Circuit case they cite is *Bonner v. Isp Techs.*, 259 F.3d 924, 929 (8th Cir. 2001), which did not address the issue of case reports or any other type of anecdotal evidence.

Finally, it is well-settled that adverse event reports such as SJM's Field Experience Reports are not reliable evidence of causation. *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1250 (11th Cir. 2005)(reversing jury verdict because expert testimony was based on adverse experience reports and other unreliable evidence); *Nelson v. American Home Prods. Corp.*, 92 F. Supp. 2d 954, 969 (W.D. Mo. 2000)(adverse experience reports are "not proof of causation in the courtroom or in the scientific community"). Plaintiffs' *ipse dixit* that adverse event reports are "valid scientific sources of data and information" is a gross misstatement of law. *Opposition*, p.23.

### 5. Dr. Butchart's Reliance On AVERT Complication Rates Lacking Statistical Significance Is Scientifically Unreliable

Statistical significance is a convention used among epidemiologists "to minimize false positive error." *Reference Manual On Scientific Evidence*, 357-358. Its purpose is to express the likelihood that any observed differences could have occurred as a result of chance alone. Where the results are statistically significant, the likelihood of chance is very low and any observed differences are probably real. But where the results are not statistically significant, the likelihood of chance is high and the differences seen are probably not real.

Based on fundamental statistical principles, federal courts have held that expert opinions based on statistically insignificant results are inadmissible. *General Elec.*

*Co. v. Joiner*, 522 U.S. 136, 518-519 (1997)(affirming exclusion of expert opinion that relied in part on a statistically insignificant study); *Glastetter*, 252 F.3d 986 (affirming exclusion of proffered data as proof of experts' general causation theory in part because results were statistically insignificant); *Good v. Fluour Daniel Corp.*, 222 F. Supp. 2d 1236, 1243 (E.D. Wash. 2002)("In the absence of a statistically significant difference upon which to opine, [the expert's] opinion must be excluded under *Daubert*.").

The cases cited by Plaintiffs to support the admission of statistically insignificant complication rates are inapposite. *Opposition*, pp.19-20. For example, *Kadas v. MCI* was an employment discrimination case in which the Court made only "observations" about statistical significance based on policy reasons relevant to "future discrimination" cases. 255 F.3d 359, 361 (7th Cir. 2001). Besides being non-binding dicta, employment discrimination policies are not applicable here. And *Cook v. Rockwell*, 2006 U.S. Dist. LEXIS 89121 at *54-57, 80-81 (D. Colo. 2006), involved a qualified epidemiologist using methodology validated in "several, published, peer-reviewed works and in expert testimony admitted in at least four trials," whereas Dr. Butchart lacks the necessary qualifications and did not employ sound scientific methodology to reliably opine on epidemiological and statistical subjects.

In *In Re Ephedra Products Liability Litigation*, the Court chose not to require plaintiffs to provide statistically significant results because no retrospective case-control study existed and therefore it was practically impossible for plaintiffs to obtain

such results. 393 F. Supp. 2d 181, 192-193 (S.D. N.Y. 2005). Here, a randomized and controlled study (AVERT) does exist and is available to Dr. Butchart.

### 6. Dr. Butchart's Post Hoc Consideration Of Relevant AVERT Data Is Scientifically Unreliable

In addition to improperly basing his opinions on statistically insignificant results, Dr. Butchart admittedly did not consider the latest AVERT data before forming his opinions about the increased risk of Silzone. *Depo.*, 130:9-131:10. The law is clear that an expert may not form opinions without first considering all relevant facts. *Nebraska Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410, 416 (8th Cir. 2005)("an expert opinion that fails to consider the relevant facts of the case is fundamentally unsupported").

When coupled with his admissions that it is currently impossible to conclude to a reasonable degree of medical probability that Silzone valves pose a long-term risk of medical complications, [*Depo.*, 347:24-348:13, 605:21-606:23, 668:17-669:6], the analytical gap between Dr. Butchart's methodology and his opinions on Silzone risks is too wide to be admissible.

## B. Dr. Butchart Is Not Qualified To Opine Outside Cardiothoracic Surgery

SJM does not dispute that Dr. Butchart is a cardiothoracic surgeon. That is why SJM worked with him. SJM's challenge to Dr. Butchart's qualifications is that he is

not qualified to testify *beyond* his surgical expertise to offer opinions in toxicology, pathology, hematology, biomaterials, epidemiology, and statistics. *Sutera v. The Perrier Group of America, Inc.*, 986 F. Supp. 655, 661 (D. Mass. 1997) ("'[A] scientist or medical doctor is not presumed to have expert knowledge about every conceivable scientific principle or disease.'"). Thus, his accomplishments as a *cardiothoracic surgeon* alone are insufficient to qualify him to opine on these other subjects.

In their Opposition, Plaintiffs provide no specific details demonstrating his knowledge or practical experience in toxicology, pathology, hematology, biomaterials, epidemiology, and statistics. They merely say that he has developed "substantial knowledge" in these fields over the past 25 years "by extensively reading the literature in a number of medical/scientific fields as it pertained to heart valve surgery and prosthetic heart valves, as well as attend lectures on these areas and consult with other experts in the field." *Opposition*, p.7. Plaintiffs also say he has edited medical textbook chapters on biomaterials and hematology, yet they do not provide any details about the chapters or the extent to which they addressed these subjects. *Id.* at pp.7-8. They identify a book chapter authored by Dr. Butchart and two journals he edited, but all regard cardiovascular subjects, not toxicology or any of the other subjects he is attempting to opine about. *Id.* at p.8.

Given Dr. Butchart's (1) express denial of expertise and formal training in pathology, hematology, biomaterials science, toxicology, statistics, or epidemiology,

[*Depo.*, 19:17-20:1, 20:2-15, 21:7-20, 22:2-8, 22:19-23:9, 652:3-9], (2) his admission that he is merely "familiar" with the "basics" of these subjects, [*Id.* at 17:2-18:11, 19:17-20:15, 21:21-22:13, 22:19-23:9], and (3) his very limited experience with explanting Silzone valves (a total of 2), [*Id.* at 26:15-27, 29:4-6], it would be an abuse of discretion to find that Dr. Butchart qualifies as an expert to opine in each of these subjects. *Jones v. Lincoln Electric Co.*, 188 F.3d 709, 723-724 (7th Cir. 1999)(metallurgist who admitted that he was not a toxicologist and that toxicology issues were outside of his expertise was not qualified to testify as to the toxicity of manganese); *Sutera,* 986 F. Supp. at 661 (barring physician with no expertise in epidemiology, toxicology, biostatistics, or risk assessment from opining on general causation).

### C. Dr. Butchart Should Be Barred From Testifying About His Clinical Monitoring And Epidemiology Study Opinions

Plaintiffs do not defend Dr. Butchart's opinions regarding clinical monitoring and the need for a long-term epidemiology study of Silzone patients (Opinions 3-4 in SJM's chart, *Motion*, p.5). Even though establishing admissibility is their burden, they contend the opinions are not part of his generic causation presentation and thus SJM's objections to them are premature. *Opposition*, p.4. St. Jude Medical asks the Court to sustain its objections and preclude Plaintiffs from offering these opinions in connection with any individual injury case. Should the Court defer its ruling on these opinions, St. Jude Medical preserves its objections and will seek to assert them at the appropriate time, and as necessary.

## III.

## CONCLUSION

Dr. Butchart's opinions, methodology, and his supporting facts and data lack sufficient scientific reliability and are inadmissible.

HALLELAND LEWIS NILAN & JOHNSON, P.A.

Dated: April 3, 2007. By s/ Cortney G. Sylvester

Tracy J. Van Steenburgh Reg. No. 141173
Cortney G. Sylvester Reg. No. 231514
U.S. Bank Plaza South, Suite 600
220 South Sixth Street
Minneapolis, MN 55402-4501
Telephone: (612) 338-1838

REED SMITH LLP
Steven M. Kohn
1999 Harrison Street, Suite 2400
Oakland, CA 94612

Attorneys for Defendant St. Jude Medical, Inc.