IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE ST. JUDE MEDICAL, INC., SILZONE® HEART VALVES PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1396 |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO PRECLUDE TESTIMONY OF PLAINTIFFS' PATHOLOGY EXPERT GREGORY J. WILSON PURSUANT TO FEDERAL RULE OF EVIDENCE 702**

## I. INTRODUCTION

Plaintiffs' opposition to St. Jude Medical (SJM)'s motion to preclude the testimony of Dr. Wilson is no more than an effort to deflect attention from their inability to establish that his opinions are scientifically reliable. Plaintiffs have failed to demonstrate that Dr. Wilson's opinions meet the standard of admissibility required under *Daubert* and its progeny. Accordingly, this Court, acting in the "gate-keeper" role assigned to it by *Daubert*, should grant SJM's motion and preclude Dr. Wilson's testimony.

## II. ARGUMENT

### A. DR. WILSON'S OPINIONS DO NOT MEET THE *DAUBERT* THRESHOLD STANDARD OF ADMISSIBILITY

Plaintiffs suggest that doubts about the foundations for expert opinions go to their weight, not admissibility. This argument ignores the mandatory admissibility inquiry required by *Daubert* trilogy, which is whether, in the first instance, the opinion is sufficiently reliable to be presented to the jury. *See, e.g.*, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *General Electric Co. v. Joiner*, 522 U.S. 136 (1997); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Under *Daubert*, the court conducts this threshold assessment as the "gate-keeper," charged with admitting only scientifically reliable evidence. *Id.; see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). If scientific reliability was merely a matter of weight for the jury, *Daubert*'s gate-keeper function would be meaningless. Even the cases cited by the plaintiffs affirm that for opinion evidence to be admissible, it must be grounded in methods that are

scientifically valid, *Synergetics v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007), and based "on good grounds tied to scientific method." *Bonner v. ISP Technologies,* 259 F.3d 924 at 929 (8th Cir. 2001).[1]

## B. DR. WILSON'S OPINIONS DO NOT AND CANNOT SATISFY *DAUBERT* AND THERE IS NO REASON TO DEFER RULING ON THEIR EXCLUSION

Plaintiffs next contend it would be premature for the Court to determine the admissibility of at least three of Dr. Wilson's opinions -- those relating to 1) medical monitoring, 2) the need for an epidemiological study, and 3) SJM's disclosures to the FDA.[2] Plaintiffs contend these opinions relate to class relief and/or FDA preemption, "which are not part of Dr. Wilson's generic expert presentation in the individual injury cases." *Plaintiffs' Brief* at 4.

But Dr. Wilson listed them in his Rule 26 disclosure and has identified all the support he has for them in expert discovery. It thus is notable Plaintiffs do not attempt to defend these opinions now, when the basis for them is clear and SJM's objections are fully briefed. Because it is the plaintiffs' burden, as proponents of these opinions, to establish their admissibility, and because plaintiffs have offered no opposition to SJM's objections, SJM's motion to exclude these opinions should be granted.

---

1 Other cases cited by plaintiffs are not to the contrary. *See, e.g., Margolies v. McCleary, Inc.*, 447 F.3d 1115 (8th Cir. 2006); *Minnesota Supply Co. v. Raymond Corp.*, 472 F.3d 524 (8th Cir. 2006); *Marvin Lumber & Cedar Co. v. PPG Industries, Inc.*, 401 F.3d 901 (8th Cir. 2005). In each case, the court distinguished between the factual basis for an expert opinion and the reliability of the methodology used to arrive at the opinion. Here, SJM takes issue with Dr. Wilson's methodology and the resulting lack of scientific reliability of his conclusions. Under *Daubert*, scientific reliability is an issue to be decided by the court.

2 SJM identifies these areas as addressed in opinions 4, 6 and 7 listed on the chart on page 6 of SJM's opening brief.

**C. DR. WILSON'S CURRICULUM VITAE DOES NOT RENDER HIS OPINIONS ADMISSIBLE.**

Plaintiffs rely heavily on Dr. Wilson's CV as if it, alone, establishes the reliability of his opinions. It does not. Rule 702 of the Federal Rules of Evidence requires that experts be qualified "by knowledge, skill, experience, training, or education" for each particular opinion offered. General knowledge of a field is not sufficient to support an expert opinion; specific expertise in the areas included in the opinions is required. *Garnac Grain Co., Inc. v. Blackley*, 932 F.2d 1563, 1566 (8th Cir. 1991). An opinion that exceeds the witness's expertise must be excluded. *Id.; Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715-16 (8th Cir. 2001).[3] Thus, the point here is not whether Dr. Wilson is an experienced pediatric pathologist. The question is whether the knowledge, education and skills reflected on his resume qualify him to supply the specific opinions he has tendered in this case.

For example, although he is not a biomaterials expert, *Rule 26 Decl.*, Ex. 1, plaintiffs cite to Dr. Wilson's resume to argue he has broad experience in the field of bio-materials, *Plaintiffs' Brief* at 4-6. His proffered opinions, however, speak to the specific properties of silver – not to bio-materials in general, and nothing in his CV suggests Dr. Wilson has expertise in the bio-mechanical properties of silver. Moreover, Dr. Wilson's deposition testimony clearly

3 Despite plaintiffs' suggestion otherwise, SJM's objection to Dr. Wilson testifying outside of pediatric pathology is not a personal attack. SJM's objections are directed solely to breadth and validity of Dr. Wilson's specific opinions which, in large part, Dr. Wilson has conceded are beyond his professional training and expertise. *See Sutera v. The Perrier Group of America, Inc.*, 986 F. Supp. 655, 661 (D. Mass. 1997) ("'[A] scientist or medical doctor is not presumed to have expert knowledge about every conceivable scientific principle or disease.'");

establishes he is not an expert – nor does he even have a particular interest – in the bio-mechanical properties of silver. *Wilson Depo.*, 451:4-8. Yet, Dr. Wilson offers an opinion that the Silzone® coating is mechanically unstable. Clearly this opinion is beyond his expertise.

Plaintiffs also suggest that Dr. Wilson is qualified to offer his opinion on the nature of the silver in the Silzone® sewing cuff because he is familiar with the sewing cuff fabric. *Plaintiffs' Brief* at 6. But the sewing cuff fabric is not the subject of his opinions. Rather, Dr. Wilson's opinion pertains to the properties of the Silzone® coating applied to the sewing cuff. Familiarity with the sewing cuff fabric is not only irrelevant to Dr. Wilson's opinions concerning the nature of Silzone®, but is also demonstrates his lack of qualifications regarding the very subject of his opinion.

In sum, plaintiffs have not established the requisite connection between Dr. Wilson's pediatric pathology qualifications and the opinions he has offered here, and they should be excluded.

## D. THE ADMISSION OF DR. WILSON'S OPINIONS IN LITIGATION IN CANADA HAS NO BEARING ON THEIR ADMISSIBILITY HERE

Plaintiffs further argue that a Canadian court ruling in a Silzone® action pending there (Justice Cullity's ruling in *Andersen v. St. Jude Medical, Inc.*, [2003] O.J. No. 4314 (S.C.J.)) supports admission of Dr. Wilson's opinions here. There is no authority for the proposition that this Court may substitute the judgment of a Canadian court (or any other court) for its own in performing its gate-keeping role under *Daubert.* Moreover, the ruling in Canada is irrelevant to the proceedings here because:

- The ruling was admitted in a Canadian class certification proceeding, a far cry from this court's determination of the admissibility of his opinion for trial;

- As plaintiffs themselves admit, Canadian expert admissibility law differs from the Federal Rules of Evidence. *Plaintiffs' Brief at note 6;*

- Significant discovery into the lack of basis for Dr. Wilson's opinions, including his MDL deposition, had not taken place before the Canadian court ruled; and

- Two of Dr. Wilson's opinions offered here were not offered in the Canadian proceedings.

The Canadian ruling provides no guidance on the admissibility of the Dr. Wilson's opinions here.

### E. DR. WILSON'S *IPSE DIXIT* RENDERS HIS OPINIONS SCIENTIFICALLY UNRELIABLE AND INADMISSIBLE

Dr. Wilson also leaves unbridgeable gaps between the opinions he proffers and the basis for those opinions; this is another reason requiring their exclusion. For example, Dr. Wilson does not rely on any statistically sound epidemiological study to support his opinions that silver is toxic and that Silzone® frustrates normal healing. Rather, plaintiffs argue that his observations of a mere 15 explanted valves (out of the approximately 36,000 implanted), his review of the pertinent literature on silver, his examination of portions of SJM FER files, and his

reliance on other experts support his sweeping opinions that Silzone® causes adverse events.

Then, citing to *In re Ephedra Litig., (MDL No. 1598),* No. 393 F.Supp.2d 181 (SDNY 2005), plaintiffs tacitly admit that while this support is inconclusive, it is not necessarily junk science that must be excluded: "Although gaps between [plausible and suggestive, even if inconclusive, scientific] data and definitive evidence are real and subject to challenge before the jury, they are not so great as to require the opinion to be excluded from evidence." *Id.*, at 194. This ruling is clearly at odds with *Daubert's* holding that only reliable evidence may be admitted.

In addition, plaintiffs have missed the point of the *Ephedra* ruling. While the *Ephedra* court did not exclude the challenged causation opinions, it did require that they be submitted to the jury in a qualified form, based, as they were, on "plausible and suggestive" but "inconclusive scientific data." *Id.*, at 194. Because there were no reliable epidemiological studies to support the proffered opinions that ephedra causes heart injury and stroke, the court prohibited the plaintiffs' experts from stating to any degree of medical certainty that ephedra causes these injuries. *Id.*, at 187. Instead, the court only permitted the experts to state that ephedra "may be a contributing cause" and required the further qualification of "a statement that there is not enough data to prove it definitively and that controlled studies, if and when they are done, may disprove it." *Id.*[4]

4 *See also Cella v. United States*, 998 F.2d 418, 427 (7th Cir. 1993) (expert testimony based on non-epidemiological materials allowed where the opinion stated that trauma was only one of several possible causes of polymyositis).

Moreover, while Dr. Wilson relies in part on Dr. Butany's[5] work to opine that all Silzone® patients experienced a frustrated healing process due to the Silzone® coating, Dr. Butany's conclusions are, strikingly, more limited. Dr. Butany concludes that silver toxicity is simply one possibility (in addition to infection and surgical technique) of the cause of adverse events in Silzone® patients. Butany, J., *et al.*, *Pathologic Analysis of 19 Heart Valves with Silver-Coated Sewing Rings*, 21 J. Card. Surg. 530 at 536 (2006) (Rudd Declaration, at Ex. 4). Moreover, Dr. Butany concludes that Silzone® valves that remain implanted beyond six months will likely function as well as the SJM standard (non-Silzone®) prosthesis. *Id.*, at 535. Neither conclusion supports Dr. Wilson's expansive opinion on the toxicity of silver in all Silzone® patients. Dr. Wilson's opinions are not reliable when they overstate the analysis on which they are based.

Similarly, Dr. Wilson's examination of 15 explanted valves is not adequate foundation for his opinion. These were all explanted due to adverse events (again, there is a known complication rate for all mechanical valves aside from any issues relative to Silzone®) and, therefore, as Dr. Wilson himself testified, none would have likely exhibited "normal" healing. *Depo.* at 83:10-17. Other anecdotal evidence (including the non-epidemiological data analyzed by Dr. Butany) also cannot support his expansive opinion that <u>all</u> Silzone® patients experience a frustrated healing process, as such case reports are not scientifically reliable. *See Glastetter v. Novartis Pharmaceuticals Corp.*, 252 F.3d 986, 989-990

5 Plaintiffs refer to Dr. Jagdish Butany, M.D., as an SJM consultant. While Dr. Butany was an SJM consultant in the past, he is not now, nor was he when his paper was published in 2006.

(8th Cir. 2001)(neither case reports nor "paucity of examples" constitute strong scientific basis for expert's theory).[6]

Another analytical gap exists between Dr. Wilson's analysis and his opinion that silver is toxic to human cells and therefore causes adverse events. Although Dr. Wilson testified that dosage is central to the definition of toxicity, he made no effort to obtain dosage information in connection with the tissue he analyzed. *Wilson Depo.*, 26:13-22 and 37:4-9. *See also Reference Manual On Scientific Evidence*, Federal Judicial Center 2000 (2nd Ed.) at 403 (the central tenet of toxicology is the "dose makes the poison.") Such information is critical to establish the scientific reliability, and therefore the admissibility, of his opinion that silver is toxic. For example, Eighth Circuit authority suggests evidence of the levels of exposure to a toxic substance is necessary to support an opinion that the exposure was toxic. *See Bonner v. ISP Technologies, Inc.*, 259 F.3d 924, 931 (8th Cir. 2001) (expert testimony that plaintiff's injuries were caused by exposure to toxic chemicals properly admitted where evidence established exposure "to a quantity of the toxin that 'exceeded safe levels.'").

---

6 Plaintiffs rely on several cases for the proposition that non-epidemiological materials may support an expert opinion. For example, in *In re Phenylpropanolamine Prods. Liab. Litig.*, 299 F.Supp.2d 1230, 1242 (D. Wash. 2003), the experts examined a myriad of non-epidemiological materials, "including case reports, textbooks and treatises, adverse drug reports, animal studies, and drug analogies," in developing general causation opinions. The court admitted the opinions, as these non-epidemiological materials had been considered *in conjunction with a statistically valid epidemiological study*. *Id.*, at 1243.

Similarly, in *Glaser v. Thompson Medical Co., Inc.*, 32 F.3d 969, 975 (6th Cir. 1994), another PPA case, the challenged expert had relied on both epidemiological and non-epidemiological materials. *See also Miller v. Pfizer, Inc.*, 196 F.Supp.2d 1062, 1072-73 (D. Kan. 2002) (while the court acknowledged that large scale epidemiological studies may not be essential to the formation of an opinion on causation, it nevertheless excluded the proffered causation opinions for lack of proper methodology under *Daubert*).

In contrast here, while Dr. Wilson reportedly observed silver particles on annular tissue, he could not explain what might exceed a safe level of silver. Dr. Wilson also failed to test the levels of silver in the tissue he examined, *Wilson Depo.*, 27:4-8, and thus there is no evidence that the Silzone® coating presents an exposure exceeding safe levels.[7] Absent this critical piece of the toxicity analysis, the logical gap is too great to support Dr. Wilson's broad conclusion that silver is toxic to human cells. Because the opinion is scientifically unreliable, it is inadmissible.

## III. CONCLUSION

*Daubert* requires more of an expert than a lengthy CV and impressionistic conclusions to which a jury may ascribe whatever weight it deems reasonable. The trial court, sitting as "gate-keeper" is obliged to determine the admissibility of expert evidence based on relevant qualifications and scientific reliability. Because Dr. Wilson's opinions fall beyond his expertise, and the logical gaps in his methodology render his expansive conclusions scientifically unsound, his opinions fail to meet the standards set by *Daubert* and Rule 702. Accordingly, this Court should grant SJM's motion and exclude Dr. Wilson's testimony.

HALLELAND LEWIS NILAN & JOHNSON PA

---

7 In footnote 13 of their brief, plaintiffs indicate Dr. Wilson would have performed testing of certain animal tissue had SJM not disposed of it. SJM was under no duty to preserve this material, any request to examine it is untimely and the suggestion of spoliation, raised here for the first time without notice or briefing, is unworthy of further response.

Dated: April 3, 2007.

HALLELAND LEWIS NILAN & JOHNSON, P.A.

By s/ Cortney G. Sylvester

Tracy J. Van Steenburgh Reg. No. 141173
Cortney G. Sylvester Reg. No. 231514
U.S. Bank Plaza South, Suite 600
220 South Sixth Street
Minneapolis, MN 55402-4501
Telephone: (612) 338-1838

REED SMITH LLP
Steven M. Kohn
1999 Harrison Street, Suite 2400
Oakland, CA 94612

Attorneys for Defendant St. Jude Medical, Inc.