# Exhibit B

## Analytical Tables of State UDAP Laws

## Part I

# Alabama

## ALABAMA

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| AL | Yes<br>Ala. Code §8-19-5(27); §8-19-6 | Yes[1] |

**Are there any true conflicts of substantive law?**

No

[1] Ala. Code. §8-19-6 (due consideration and great weight shall be given where applicable to interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)). Federal Trade Commission v. Accent Marketing, Inc., 2002 WL31257708 (S.D.Ala. 2002)("The FTC Act prohibits the use of unfair or deceptive acts or practices…A representation is deceptive if it contains a material claim or omission that is reasonably likely to mislead consumers acting reasonably under the circumstances to their detriment. A representation or omission is material if it is of the kind usually relied upon by a reasonably prudent person."). Also, misrepresentations by omission are prohibited in specific circumstances set forth in the statute (e.g. 8-19-5(12); (22)) which do not apply herein.

LexisNexis Total Research System
Switch Client | Preferences | Sign Out | ? Help
My Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector | History

Source: Legal > States Legal - U.S. > Alabama > Find Statutes, Regulations, Administrative Materials & Court Rules > AL - Alabama Statutes, Constitution, Court Rules & ALS, Combined
TOC: Alabama Statutes, Constitution, Court Rules & ALS, Combined > / . . . / > CHAPTER 19 Deceptive Trade Practices > § 8-19-5. Deceptive acts in trade or commerce prohibited.
Terms: § 8-19-5. Deceptive acts in trade or commerce prohibited.
Focus: omission (Exit FOCUS™)

*Code of Ala. § 8-19-5*

MICHIE'S ALABAMA CODE ANNOTATED
Copyright © 2008 by Matthew Bender & Company, Inc.,
a member of the LexisNexis Group.
All rights reserved.

*** Current through Act No. 08-135 of the 2008 Regular Session ***

TITLE 8 Commercial Law and Consumer Protection
CHAPTER 19 Deceptive Trade Practices

Go to the Alabama Code Archive Directory

Code of Ala. § 8-19-5 (2008)

**§ 8-19-5. Deceptive acts in trade or commerce prohibited.**

The following deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful:

**(1)** Passing off goods or services as those of another, provided that this section shall not prohibit the private labeling of goods or services.

**(2)** Causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

**(3)** Causing confusion or misunderstanding as to the affiliation, connection, or association with, or certification by another, provided that this section shall not prohibit the private labeling of goods or services.

**(4)** Using deceptive representations or designations of geographic origin in connection with goods or services.

**(5)** Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have.

**(6)** Representing that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, secondhand, or altered to the point of decreasing their value or rendering the goods unfit for the ordinary purpose for which they were purchased, provided that this subdivision shall not apply to new goods which have been reconditioned, reclaimed, or repaired and such fact is disclosed to the purchaser.

**(7)** Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

**(8)** Disparaging the goods, services, or business of another by false or misleading representation of fact.

**(9)** Advertising goods or services with intent not to sell them as advertised.

**(10)** Advertising goods or services with intent not to supply reasonably expectable public demand unless the advertisement discloses a limitation of quantity.

**(11)** Making a false or misleading statement of fact concerning the reasons for, existence of, or amounts of, price reductions.

**(12)** Knowingly failing to identify flood, water, fire, or accidentally damaged goods as damaged goods if they are damaged to the point of decreasing their value or rendering the goods unfit for the ordinary purpose for which they were purchased, provided, that this subdivision shall not apply to accidentally damaged new goods where the goods are reconditioned, reclaimed, or repaired to substantially their original condition and such fact is disclosed to the purchaser.

**(13)** Knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service.

**(14)** Misrepresenting the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction.

**(15)** Disconnecting, turning back, replacing, or resetting the odometer of any motor vehicle so as to reduce the number of miles indicated on the odometer gauge with the intent of deception.

**(16)** Advertising of any sale by falsely representing that a person is going out of business.

For the purposes of this subdivision, the term "package" means a pack, carton, or container of any kind in which cigarettes are offered for sale, sold, or otherwise distributed, or intended for distribution, to consumers. Also for the purposes of this subdivision, the term "Alabama revenue stamp" means the stamp or stamps by the use of which the tax levied under Article 1 of Chapter 25 of Title 40, is paid.

**(24)** Engaging in the sale, distribution, possession, acquisition, importation, or transportation of any cigarettes that do not comply with all applicable requirements imposed by or pursuant to federal law and federal implementing regulations.

**(25)** Engaging in a scheme or artifice to defraud by telephone communication. For purposes of this subdivision, a "scheme or artifice to defraud" means a systematic, ongoing course of conduct with the specific intent to defraud one or more persons in order to obtain property from that person by a telephone communication; and "telephone communication" means the transmission of information by the use of the telephone, with the specific intent of defrauding a person by a material misrepresentation and obtaining property from that person as a result of the fraud. Puffing or puffery does not constitute a scheme or artifice to defraud.

**(26)** Making any communication by telephone directly to another person which offers to the other person a gift, award, or prize, where the person making the communication has actual knowledge at the time of making the communication that the communication was materially false and the person making the communication specifically intended to deprive the other person of real or personal property as a result of the false communication.

**(27)** Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

**HISTORY:** Acts 1981, No. 81-355; Acts 1993, No. 93-203; Acts 1999, No. 99-583; Acts 2000, No. 00-712; Acts 2002, No. 02-496.

**NOTES:**
**Effective dates.**

Acts 2000, No. 2000-712, effective August 1, 2000.

Acts 2002, No. 02-496, effective July 1, 2002.

**2000 amendments.**

Rewrote subdivision (24); added subdivisions (25) and (26); and made a nonsubstantive change.

**2002 amendments.**

Rewrote paragraph (23)d., which formerly read "The package has been imported into the United States after January 1, 2000, in violation of 26 USCS. Sec. 5754"; added present subdivision (24); and redesignated former subdivisions (24) through (26) as present subdivisions (25) through (27).

**Cross references.**

This law is referred to in: §§ 6-12A-6, 8-19-4, 8-19-6, 8-19-10, 8-19-11, 8-31-3.

Alabama Unconscionable Pricing Act, § 8-31-1 et seq.

Revocation of cigarette stamping privileges for deceptive trade practices, § 6-12A-6(e).

**LexisNexis 50 State Surveys, Legislation & Regulations**

Network Marketing & Multilevel Distribution

**NOTES TO DECISIONS**

- Evidence -- Insufficient.
- Intent, knowledge.
- Standing.
- When applicable.
- Illustrative cases.

**Evidence -- Insufficient.**

Where retailer's bookkeeper mistakenly listed the wrong product as collateral on an installment contract, this action was the result of a human error rather than any attempt to engage in any unconscionable, false, misleading or deceptive act or practice in the conduct of trade or commerce. Billions v. White & Stafford Furniture Co., 528 So. 2d 878, 1988 Ala. Civ. App. LEXIS 189

**→§ 8-19-10. Private right of action.**

(a) Any person who commits one or more of the acts or practices declared unlawful under this chapter and thereby causes monetary damage to a consumer, and any person who commits one or more of the acts or practices declared unlawful in subdivisions (19) and (20) of Section 8-19-5 and thereby causes monetary damage to another person, shall be liable to each consumer or other person for:

(1) Any actual damages sustained by such consumer or person, or the sum of $100, whichever is greater; or

(2) Up to three times any actual damages, in the court's discretion. In making its determination under this subsection, the court shall consider, among other relevant factors, the amount of actual damages awarded, the frequency of the unlawful acts or practices, the number of persons adversely affected thereby and the extent to which the unlawful acts or practices were committed intentionally; and

(3) In the case of any successful action or counterclaim to enforce the foregoing liability or in which injunctive relief is obtained, the costs of the action or counterclaim, together with a reasonable attorney's fee. On a finding by the court that an action or counterclaim under this section was frivolous or brought in bad faith or for the purpose of harassment, the court shall award to the defendant (or counterclaim-defendant) reasonable attorney's fees and costs.

***

(e) At least 15 days prior to the filing of any action under this section, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be communicated to any prospective respondent by placing in the United States mail or otherwise. Any person receiving such a demand for relief who, within 15 days of the delivering of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning this rejection. If the court finds that the relief tendered was sufficient to compensate the petitioner for his actual damages, the court shall not award any additional damages or attorney's fees or costs to the petitioner. The demand requirements of this subsection shall not apply if the prospective respondent does not maintain a place of business or does not keep assets within the state, but such respondent may otherwise employ the provisions of this section by making a written offer of relief and paying the rejected tender into court as soon as practicable after receiving notice of an action commenced under this section. All written tenders of settlement such as described in this subsection shall be presumed to be offered without prejudice in compromise of a disputed matter.

(f) A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class; provided, however, that the office of the Attorney General or district attorney shall have the authority to bring action in a representative capacity on behalf of any named person or persons. In any such action brought by the office of the Attorney General or a district attorney the court shall not award minimum damages or treble damages, but recovery shall be limited to actual damages suffered by the person or persons, plus reasonable attorney's fees and costs.

***

**→§ 8-19-13. Defense.**

Any person against whom any civil action or proceeding is brought pursuant to this chapter shall have a defense to such action or proceeding upon a showing by a preponderance of the evidence presented that such person did not knowingly commit any act or knowingly engage in any activity which constitutes a violation of any provision of this chapter.

LexisNexis® Total Research System
Switch Client | Preferences | Sign Out | ? Help
My Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector | History

Source: Legal > States Legal - U.S. > Alabama > Find Statutes, Regulations, Administrative Materials & Court Rules > AL - Alabama Statutes, Constitution, Court Rules & ALS, Combined
TOC: Alabama Statutes, Constitution, Court Rules & ALS, Combined > /. . . / > CHAPTER 19 Deceptive Trade Practices > § 8-19-6. Legislative intent; interpretation.

*Code of Ala. § 8-19-6*

MICHIE'S ALABAMA CODE ANNOTATED
Copyright © 2008 by Matthew Bender & Company, Inc.,
a member of the LexisNexis Group.
All rights reserved.

*** Current through Act No. 08-135 of the 2008 Regular Session ***

TITLE 8 Commercial Law and Consumer Protection
CHAPTER 19 Deceptive Trade Practices

Go to the Alabama Code Archive Directory

Code of Ala. § 8-19-6 (2008)

**§ 8-19-6. Legislative intent; interpretation.**

It is the intent of the legislature that in construing Section 8-19-5, due consideration and great weight shall be given where applicable to interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Federal Trade Commission Act ( 15 U.S.C. 45(a)(1)), as from time to time amended.

**HISTORY:** Acts 1981, No. 81-355.

**NOTES:**

**RESEARCH REFERENCES**

**Roberts, Cusimano: Tort Law.**

20.22.1, n. 442.

**LexisNexis 50 State Surveys, Legislation & Regulations**

Deceptive Trade Practices

Source: Legal > States Legal - U.S. > Alabama > Find Statutes, Regulations, Administrative Materials & Court Rules > AL - Alabama Statutes, Constitution, Court Rules & ALS, Combined
TOC: Alabama Statutes, Constitution, Court Rules & ALS, Combined > /. . . / > CHAPTER 19 Deceptive Trade Practices > § 8-19-6. Legislative intent; interpretation.
View: Full
Date/Time: Monday, July 14, 2008 - 12:02 PM EDT

My Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Switch Client | Preferences | Sign Out | Help

LexisNexis® About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Briefs and Other Related Documents

United States District Court, S.D. Alabama Southern Division.
FEDERAL TRADE COMMISSION, et al., Plaintiffs,
v.
ACCENT MARKETING, INC., et al., Defendants.
**No. Civ.A. 02-405-CB-M.**

July 1, 2002.

ORDER

BUTLER, Chief J.
*1 On June 11, 2002, this court granted the Motion of the Federal Trade Commission ("FTC") for a Temporary Restraining Order ("TRO") without notice to the defendants, pursuant to Fed.R.Civ.P. 65(b). That TRO provided, in pertinent part, that a hearing would be held on June 21, 2002, at which defendants could show cause why the court should not enter a preliminary injunction. FN1

FN1. Despite reference to the hearing as defendant's opportunity to 'show cause,' the court notes that the burden of proof remains on the FTC to justify issuance of the preliminary injunction. However, the court considers all evidence previously submitted in support of the TRO, which the court had previously found to form a sufficient factual showing to allow entry of injunctive relief.

On June 21, 2002, this court held a hearing on the preliminary injunction at which the FTC and all defendants were represented and offered evidence. At the conclusion of the hearing, the court ordered that the TRO would remain in effect until the court entered its order either granting a preliminary injunction or dissolving the TRO. The court allowed the parties an opportunity to file supplemental briefs. Defendants Accent Marketing, John Nolan White and Monarch Vending, as well as plaintiff FTC filed post-hearing briefs within the time allowed.

*Preliminary Injunction Standard*

Ordinarily, a party seeking a preliminary injunction must demonstrate that (1) it has a substantial likelihood of success on the merits, (2) the movant will suffer irreparable injury unless the injunction is issued, (3) the threatened injury to the movant outweighs the possible injury that the injunction may cause the opposing party, and (4) if issued, the injunction would not disserve the public interest. See *Horton v. City of St. Augustine, Fla.*, 272 F.3d 1318, 1326 (11th Cir.2001)

The FTC argues that the court need only address factors 1), 3) and 4), above. FN2 *The agency cites* *FTC v. University Health, Inc.*, 938 F.2d 1206, 1217 (11th Cir.1991) for the proposition that irreparable injury is presumed in statutory enforcement actions. The court finds that this authority, though stated in an antitrust action in relation to a proposed merger, is nonetheless applicable in this case. However, the court also notes that plaintiff has demonstrated irreparable injury in this action. FN3

FN2. The FTC states that the court need only address the likelihood of success and balancing of the equities. That last phrase is sometimes used to include the balance between the movant's interests and those of both the party to be enjoined and of the public. In the absence of citation to authority deleting the requirement to satisfy the fourth element, the court presumes that the agency uses that phrase to refer to both steps.

FN3. *Inter alia*, the court notes that the FTC's purpose in bringing this suit is to prevent further fraud and to preserve the assets of the defendants for repayment to the defrauded customers. The court also notes evidence that defendant John Nolan White withdrew the entire balance of a bank account belonging to Accent Marketing after service of the TRO-which contained provisions for an asset freeze appointment of a receiver-upon the corporation.

*Likelihood of Success*

The FTC Act prohibits the use of "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C.A. § § 45(a). A representation is deceptive if it

contains a material claim or omission that is likely to mislead consumers acting reasonably under the circumstances, to their detriment. See *FTC v. World Travel Vacation Brokers*, 861 F.2d 10220, 1029 (7th Cir.1988); *FTC v. Atlantex Assocs.*, 1987 WL 20384, 1987-2 Trade Cas. (CCH) ¶ 67,788 at 59, 252 (S.D.Fla.1987), *aff'd*, 872 F.2d 966 (11th Cir.1989). A representation or omission is material if it is of the kind usually relied upon by a reasonably prudent person. See *FTC v. Slimamerica*, 77 F.Supp.2d 1263, 1272 (S.D.Fla.1999).

Naturally a lawyer in reading in printed lecture would note the failure of express or direct representation. It is doubtless true that a civil action for deceit or a criminal proceeding for obtaining money by false pretenses would not likely be sustained by a court. But the test of falsity in connection with this particular Act is different from that-it is the net impression which the advertisement is likely to make upon the general public. Charles of the Ritz Distributors Corporation v. Federal Trade Commission, 2d Cir., 143 F.2d 676. In determining the question of falsity, the advertisements must be considered in their entirety and as they would be read or understood by those to whom they appeal. Aronberg v. Federal Trade Commission, 7 Cir., 132 F.2d 165.

*2 *Federal Trade Commission v. National Health Aids*, 108 F.Supp. 340 (D.Md.1952).

The agency cites authority holding that it need not demonstrate that every reasonable consumer would be misled, nor indeed that any consumer was actually misled. *FTC v. Wilcox*, 926 F.Supp. 1091, 1099 (S.D.Fla.1995). It offers authority holding that it need not prove actual reliance of each consumer, but instead that reliance is to be presumed from proof that the representations were material and widely disseminated, and that consumers purchased the products or services. *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605-06 (9th Cir.1993). Defendants do not contest these matters, and the court finds the agency's citations correctly state the burden upon the FTC. Nonetheless, the agency did produce evidence and testimony of actual reliance and of the materiality of the deceptive representations to their decision to purchase the business opportunity.

The FTC has promulgated regulations establishing certain minimum disclosure requirements specifically designed for franchising and business opportunity ventures. 16 C.F.R. § 436.1, et seq. The FTC has offered evidence that defendant failed to make several such mandatory disclosures. The agency's evidence also tended to proved that defendant's earnings representations were unreasonable and not based upon valid data. Defendants have failed to offer substantial evidence in rebuttal. [FN4] The failure to make the mandatory disclosures renders several of the defendants' representations, including particularly its representations concerning earnings and potential earnings, unfair and deceptive. 16 C.F.R. § 436.2.

> FN4. The inclusion of a single-page spreadsheet purporting to show annual earnings for a company called Gumusements, Inc. is insufficient to comply with these required disclosures. See e.g. 16 C.F.R. § 436.1(b), (c), (d) and (e). The evidence also indicates that Gumusements was the company which invented and produced the vending machines defendant marketed to its customers. The company was not similarly situated to those customers, and its spreadsheet of dubious relevance to their situation. The FTC thus may be able to demonstrate at the trial on the merits that the inclusion of the spreadsheet was an additional deceptive act.

At the hearing, the FTC offered the testimony of one of its investigators, who detailed the results of her investigation; three individuals who had purchased various business opportunities from defendants; and the temporary receiver, who addressed the financial posture of the corporate defendants. The agency introduced additional documentary evidence through these witnesses. The three consumers addressed their dealings with the defendants and their employees, as well as describing their experiences in pursuing the vending machine venture they purchased from the defendants.

The most compelling testimony, however, came from a witness called by the defendants, Mr. J.C. McIntosh. The FTC had offered documentary evidence that the defendants provided 'references' to prospective customers, but that these references were paid by the defendants and acted as salespersons for Accent. Defendants called Mr. J.C. McIntosh, one of these references. He testified that he presently had 42 vending machines which he purchased from Accent, and-in general terms [FN5]-stated that he was making a sufficient income. [FN6] In response to questions by the court, Mr. McIntosh admitted that he was paid for acting as a reference. He testified that he received regular weekly payments of $600 from Accent regardless of the number of calls received or the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

amount of time spent on each call. This represents an annual income in excess of $30,000.00. FN7 Though he characterized these payments as reimbursement for his time spent in answering such calls, FN8 the court finds that the FTC has established a substantial likelihood that, in the trial on the merits, they will succeed in establishing that the failure to disclose such a material, ongoing relationship with Accent was an unfair or deceptive trade practice.

FN5. In the transcript of a call by an FTC investigator, Mr. McIntosh explained that his reticence to disclose his income from the vending machines arose from his desire to avoid tax liability on the cash income he received. He argued persuasively that the cash nature of the business made it attractive particularly for that reason. PX 26, p13 (transcript page 12).

FN6. As noted below, McIntosh paid a fraction of what the customers were paying per machine, and purchased them without being restricted to minimum multi-machine purchases. His expenses, and thus his profits, were thus entirely different from those of the customers whom he purported to advise. Even his general claims of a comfortable income were thus inapplicable to the potential customers and thus misleading, particularly in connection with the earnings claims made by Accent.

FN7. McIntosh also stated that he had received machines as bonuses, and was reimbursed for expenses, such as phone bills. It appears from the documentary evidence that the other 'references' were paid as well, though it s not clear whether or not they were all paid on the same basis or in the same amount. From the checks made out to one such other reference, it appears that she may have been paid on the basis of numbers of potential customers she talked to and/or the number of customers who thereafter purchased the business opportunity.

FN8. Defendants used a limited number of such 'references,' apparently less than a dozen, and provided each potential customer with 2 or 3 references. Given the number of customer calls shown in the documents seized by the FTC, each 'reference' would have been used often. Also, Mr. McIntosh, one of the references, indicated to the FTC investigator that he had begun answering such calls for Accent recently, informally and on an occasional basis. "Oh, they [Accent] called me here three or four weeks ago and asked me if I'd mind taking a call every now and then. I told them, not at all, because they've been very decent to me." PX 26, p 14 (transcript page 13). Mr. McIntosh certainly did not disclose his relationship to Accent, and apparently spoke as he did to disguise and minimize that relationship.

*3 Mr. McIntosh also testified that he had prior experience in vending machines, and had not purchased the 'business opportunity' offered by Accent, but instead had arranged a side deal to purchase the machines for a fraction of the price charged to Accent's ordinary customers. The FTC provided the court with transcripts of telephone calls made by FTC investigators posing as prospective customers. One of these is a transcript of a call to Mr. McIntosh. In that call, McIntosh states that he had originally purchased a route from Accent, and thereafter used their expansion program. (See PX 26 pp. 5, 16.) He told the investigator that Accent provided him his first 20 locations (*Id.* at p. 10) but testified at trial that he had prior experience with vending machines and had not purchased a route or used their location assistance.

The evidence concerning defendant's promises of location assistance was less clear. It was unquestionably shown that defendant's customers experienced considerable problems with the location assistance companies, but the evidence of defendants' knowledge of or responsibility for such problems was more equivocal. Nonetheless, it appeared that defendants promised location assistance without assuring that such assistance-provided by companies they recommended FN9-was adequate, and complied with defendant's representations. Further, there is the matter of the failure to disclose the relationship between defendant Accent and defendant Monarch, one of the locator services to which defendant Accent referred its customers. FN10 Also, some but not all of Accent's advertisements appear to represent that the customers would be buying existing routes and/or pre-selected locations, but are only later informed that they will need to seek the assistance of locator services-at an additional fee. Defendants represented to potential customers that the locators had already performed a "site study" of the area and had already

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

gained permission of businesses to place the machines. FN11 Finally, many of the customers' complaints concerning location assistance companies addressed defendant Monarch, which was owned by defendant John Nolan White, and which conducted its business from the same offices as defendant Accent.

FN9. Accent not only recommended particular locator services, but very strongly recommended that their customers utilize such a service.

FN10. In a taped conversation with an FTC investigator, one of Accent's telemarketers stated that Monarch was a completely separate company.

FN11. They also began telling customers that they needed to decide quickly because the opportunities were sold on a first-come, first-served basis. There was no indication, however, that there was any limit on the number of customers defendant would accept in a given area, and the printed materials expressly stated that defendant did not sell protected routes or areas.

Based upon the documentary evidence submitted by the parties and upon the testimony adduced at the hearing, the court finds that the plaintiff FTC has established that it has a substantial likelihood of success on the merits. The FTC's evidence tends to show that the corporate defendants have engaged in numerous unfair and deceptive practices; as to the individuals, the evidence is sufficient to demonstrate that they both had knowledge of and control over such unfair and deceptive practices, and indeed that each of them participated in those practices directly. See *FTC v. Wolf,* 1996 U.S. Dist. LEXIS 1760 at *23-24 (S.D.Fla.).

*Balancing of the Equities*

As noted above, the evidence tends to show that defendants were guilty of false and deceptive practices, and that they deceived and thereby injured numerous consumers. The FTC seeks the instant injunction to preserve the defendants' assets for redress of such injured parties, and also to prevent further injury to other consumers through continued fraud. The unfair and deceptive practices of which the FTC has offered evidence permeate the defendants' business dealings, so that it is impracticable to craft restrictions sufficiently broad to prevent further such practices and resultant injury to the public, while nonetheless allowing defendants to continue business operations in any form. Further, the court finds that there is a substantial risk of dissipation of assets if the asset freeze is lifted.

*4 It appears that defendants have not complied with several requirements of the TRO entered by this court, including preparation and presentation of sworn financial statements. Further, as noted above, there is evidence which tends to show that, after service of the TRO on the corporation, John Nolan White withdrew the balance of an account belonging to defendant Accent, totaling more than $25,000, and that, despite the TRO's freeze on business and personal assets, has not turned over or accounted for such funds. The court cannot rely upon defendants to comply with the terms of any injunction which would allow them access to the assets of the corporate defendants or which would allow them to resume business under detailed restrictions.

The court recognizes that the appointment of a receiver and the freeze of assets effectively puts the defendants out of business, at least for the duration of the preliminary injunction. However, as the the FTC has demonstrated a likelihood that it will ultimately prove that the practices of that business are contrary to law and detrimental to the public, FN12 the court finds that the equities, both public and private, weigh in favor of issuance of the preliminary injunction.

FN12. As the FTC notes in its brief, the typical customer initially invests approximately $10,000 on the business opportunities offered by defendants, and that initial investment can be as high as $36,000 or more. Defendants' records indicate sales revenue of approximately $18 million over the last two years.

*Conclusion*

For the reasons set forth above, it is hereby ordered that a Preliminary Injunction shall issue by separate order.

S.D.Ala.,2002.
Federal Trade Com'n v. Accent Marketing, Inc.
Not Reported in F.Supp.2d, 2002 WL 31257708 (S.D.Ala.), 2002-2 Trade Cases P 73,780

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Briefs and Other Related Documents (Back to top)

• 1:02cv00405 (Docket) (Jun. 04, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Alaska

## ALASKA

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| AK | Yes<br>Alask. Stat. §45.50.471(b)(12) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] Alask. Stat. §45.50.471(b)(12) (omission).

# ALASKA STATUTE

ALASKA STATUTES
Title 45. Trade and Commerce.
Chapter 50. Competitive Practices and Regulation of Competition.
Article 3. Unfair Trade Practices and Consumer Protection.

**Sec. 45.50.471 Unlawful acts and practices.**

(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful.

(b) The terms "unfair methods of competition" and "unfair or deceptive acts or practices" include, but are not limited to, the following acts:

***

(4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

***

(6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

***

(11) engaging in any other conduct creating a likelihood of confusion or of misunderstanding and which misleads, deceives or damages a buyer or a competitor in connection with the sale or advertisement of goods or services;

(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged;

**Sec. 45.50.531 Private and class actions.**

(a) A person who suffers an ascertainable loss of money or property as a result of another person's act or practice declared unlawful by AS 45.50.471 may bring a civil action to recover for each unlawful act or practice three times the actual damages or $500, whichever is greater. The court may provide other relief it considers necessary and proper. Nothing in this subsection prevents a person who brings an action under this subsection from pursuing other remedies available under other law, including common

law.

***

**Sec. 45.50.535 Private injunctive relief.**

(a) Subject to (b) of this section and in addition to any right to bring an action under AS 45.50.531 or other law, any person who was the victim of the unlawful act, whether or not the person suffered actual damages, may bring an action to obtain an injunction prohibiting a seller or lessor from continuing to engage in an act or practice declared unlawful under AS 45.50.471.

***

**Sec. 45.50.537 Attorney fees, costs, and damages.**

(a) In an action brought by a private person under AS 45.50.471 - 45.50.561, a prevailing plaintiff shall be awarded costs as provided by court rule and full reasonable attorney fees at the prevailing reasonable rate.

***

**Sec. 45.50.545 Interpretation.**

In interpreting AS 45.50.471 due consideration and great weight should be given the interpretations of 15 U.S.C. 45(a)(1) (§ 5(a)(1) of the Federal Trade Commission Act).

***

**Sec. 45.50.561 Definitions.**

(a) In AS 45.50.471 - 45.50.561

***

(11) "knowingly" means actual awareness of the falsity or deception, but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness;

***

(b) AS 45.50.471 - 45.50.561 may be cited as the Alaska Unfair Trade Practices and Consumer Protection Act.

# Arizona

## ARIZONA

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| AZ | Yes<br>Ariz. Rev. Stat. Ann. §44-1522(A) | Yes[1] |

**Are there any true conflicts of substantive law?**

No

[1] Ariz. Rev. Stat. Ann. §44-1522(A).

## ARIZONA STATUTE

Arizona Revised Statutes Annotated Currentness
Title 44. Trade and Commerce
Chapter 10. Competition and Competitive Practices
Article 7. Consumer Fraud (Refs & Annos)

### → § 44-1522. Unlawful practices; intended interpretation of provisions

**A.** The act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

**B.** The violation of chapter 9, article 16 [FN1] or chapter 19, article 1 [FN2] of this title is declared to be an unlawful practice and subject to enforcement under this article.

**C.** It is the intent of the legislature, in construing subsection A, that the courts may use as a guide interpretations given by the federal trade commission and the federal courts to 15 United States Code § § 45, 52 and 55(a)(1). [FN3]

# Arkansas

## ARKANSAS

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| AR | Yes<br>Ark. Code Ann. §4-88-108(2) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] Ark. Code Ann. §4-88-108(2).

ARKANSAS STATUTE

West's Arkansas Code Annotated Currentness
Title 4. Business and Commercial Law
Subtitle 7. Consumer Protection (Chapters 86 to 108)
Chapter 88. Deceptive Trade Practices
Subchapter 1. General Provisions (Refs & Annos)

**→§ 4-88-107. Deceptive and unconscionable trade practices**

(a) Deceptive and unconscionable trade practices made unlawful and prohibited by this chapter include, but are not limited to, the following:

(1) Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model;

***

(10) Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade;

***

**→§ 4-88-108. Unlawful acts**

When utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, the following shall be unlawful:

(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or

(2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission.

**→§ 4-88-113. Civil enforcement and remedies--Suspension or forfeiture of charter, franchise, etc.**

***

(f) Any person who suffers actual damage or injury as a result of an offense or violation as defined in this chapter has a cause of action to recover actual damages, if appropriate, and reasonable attorney's fees.

# California

## CALIFORNIA

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| CA | Yes<br>Cal. Bus. & Prof. Code §§ 17200, 17500 | Yes[1] |

**Are there any true conflicts of substantive law?**

No

[1] See, e.g., Arizona Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Int'l., Inc., 421 F.3d 981, 985-86 (9th Cir. 2005) (failure to disclose relevant information, which failure renders statements likely to mislead or deceive a customer, actionable under Cal. Bus. & Prof. Code §§ 17200 & 17500). California's unfair competition law parallels section 5 of the FTC Act (15 U.S.C. § 45(a)) in language and purpose, and federal interpretations of the Act are therefore regarded as "more than ordinarily persuasive." Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 185, 973 P.2d 527, 543 (1999). Section 5 of the FTC Act covers omissions. See Simeon Management Corp. v. F.T.C., 579 F.2d 1137, 1145 (9th Cir. 1978). See also F.T.C. v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1029 (7th Cir. 1988); F.T.C. v. Wilcox, 926 F. Supp. 1091, 1098 (S.D. Fla. 1995). Materially misleading omissions in consumer communications thus likewise violate California's unfair competition law.

## California Bus. & Prof. Code Sections

West's Annotated California Codes
Business and Professions Code
Division 7. General Business Regulations
Part 2. Preservation and Regulation of Competition
→ Chapter 5. Enforcement

### § 17200. Unfair competition; prohibited activities

As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

### § 17201. Person

As used in this chapter, the term person shall mean and include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons.

West's Annotated California Codes
Business and Professions Code
Division 7. General Business Regulations
Part 3. Representations to the Public
Chapter 1. Advertising
⇒ Article 1. False Advertising in General

**§ 17500. False or misleading statements; penalty**

It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine.

* * *

**§ 17506. Person defined**

As used in this chapter, "person" includes any individual, partnership, firm, association, or corporation.

* * *

# Colorado

## COLORADO

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| CO | Yes<br>Colo. Rev. Stat. Ann. §6-1-105(u) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] Colo. Rev. Stat. Ann. §6-1-105(u).

**COLORADO STATUTE**

West's Colorado Revised Statutes Annotated Currentness
Title 6. Consumer and Commercial Affairs (Refs & Annos)
Fair Trade and Restraint of Trade
Article 1. Colorado Consumer Protection Act (Refs & Annos)
Part 1. Consumer Protection--General (Refs & Annos)

**→§ 6-1-101. Short title**

This article shall be known and may be cited as the "Colorado Consumer Protection Act".

**→§ 6-1-105. Deceptive trade practices**

(1) A person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person:

***

(e) Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith;

***

(g) Represents that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another;

***

(u) Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction;

***

(2) Evidence that a person has engaged in a deceptive trade practice shall be prima facie evidence of intent to injure competitors and to destroy or substantially lessen competition.

***

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Connecticut

# CONNECTICUT

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| CT | Yes<br>Conn. Gen. Stat. Ann. §42-110b | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] Southington Savings Bank v. Rodgers, 40 Conn. App. 23, 28, 668 A.2d 733, 736 (Conn. App. 1995) (need duty to disclose).

# CONNECTICUT STATUTE

Connecticut General Statutes Annotated Currentness
Title 42. Business, Selling, Trading and Collection Practices
Chapter 735A. Unfair Trade Practices (Refs & Annos)

## → § 42-110b. Unfair trade practices prohibited. Legislative intent

(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

(b) It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 USC 45(a)(1)), as from time to time amended.

(c) The commissioner may, in accordance with chapter 54, [FN1] establish by regulation acts, practices or methods which shall be deemed to be unfair or deceptive in violation of subsection (a) of this section. Such regulations shall not be inconsistent with the rules, regulations and decisions of the federal trade commission and the federal courts in interpreting the provisions of the Federal Trade Commission Act. [FN2]

(d) It is the intention of the legislature that this chapter be remedial and be so construed.

## → § 42-110g. Action for damages. Class actions. Costs and fees. Equitable relief. Jury trial

(a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. Proof of public interest or public injury shall not be required in any action brought under this section. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper.

(b) Persons entitled to bring an action under subsection (a) of this section may, pursuant to rules established by the judges of the Superior Court, bring a class action on behalf of themselves and other persons similarly situated who are residents of this state or injured in this state to recover damages.

***

(d) In any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. In a class action in which there is no monetary recovery, but other relief is

granted on behalf of a class, the court may award, to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorneys' fees. In any action brought under this section, the court may, in its discretion, order, in addition to damages or in lieu of damages, injunctive or other equitable relief.

***

(g) In any action brought by a person under this section there shall be a right to a jury trial except with respect to the award of punitive damages under subsection (a) of this section or the award of costs, reasonable attorneys' fees and injunctive or other equitable relief under subsection (d) of this section.

# Delaware

## DELAWARE

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| DE | Yes<br>6 Del. Code § 2513(a) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] Del. Code § 2513(a) (specifically including "concealment, suppression, or omission of any material fact"); see also Brandywine, 312 A.2d at 634 (holding that a failure to disclose can constitute a misrepresentation).

DELAWARE CODE ANNOTATED
TITLE 6. COMMERCE AND TRADE
SUBTITLE II. OTHER LAWS RELATING TO COMMERCE AND TRADE
CHAPTER 25. PROHIBITED TRADE PRACTICES
SUBCHAPTER II. CONSUMER FRAUD

**§ 2513 Unlawful practice.**

(a) The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

* * *

# District of Columbia

## DISTRICT OF COLUMBIA

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| DC | Yes<br>D.C. Code §28-3904 (f) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1]D.C. Code § 28-3904(f) (unlawful trade practice includes failure to state a material fact). A material omission that has a tendency to mislead is actionable. Alicke v. MCI Communications Corp., 111 F.3d 909 (C.A.D.C. 1997); Williams v. Purdue Pharma Co., 297 F.Supp.2d 171 (D.D.C. 2003).

District of Columbia Official Code 2001 Edition Currentness
Division V. Local Business Affairs
Title 28. Commercial Instruments and Transactions. (Refs & Annos)
Subtitle II. Other Commercial Transactions.
Chapter 39. Consumer Protection Procedures.

**→§ 28-3904. Unlawful trade practices.**

It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:

* * *

(d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

(e) misrepresent as to a material fact which has a tendency to mislead;

(f) fail to state a material fact if such failure tends to mislead;

* * *

DISTRICT OF COLUMBIA OFFICIAL CODE 2001 EDITION
DIVISION V. LOCAL BUSINESS AFFAIRS
TITLE 28. COMMERCIAL INSTRUMENTS AND TRANSACTIONS.
SUBTITLE II. OTHER COMMERCIAL TRANSACTIONS.
CHAPTER 39. CONSUMER PROTECTION PROCEDURES.

**→§ 28-3905. Complaint procedures.**

* * *

(k)(1) A person, whether acting for the interests of itself, its members, or the general public, may bring an action under this chapter in the Superior Court of the District of Columbia seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia and may recover or obtain the following remedies:

(A) treble damages, or $1,500 per violation, whichever is greater, payable to the consumer;

(B) reasonable attorney's fees;

(C) punitive damages;

(D) an injunction against the use of the unlawful trade practice;

(E) in representative actions, additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice; or

(F) any other relief which the court deems proper.

(2) The remedies or penalties provided by this chapter are cumulative and in addition to other remedies or penalties provided by law. Nothing in this chapter shall prevent any person who is injured by a trade practice in violation of a law of the District of Columbia within the jurisdiction of the Department from exercising any right or seeking any remedy to which the person might be entitled or from filing any complaint with any other agency.

* * *

# Florida

## FLORIDA

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| FL | Yes<br>Fla. Stat. § 501.204(2) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] Fla. Stat. § 501.204(2) ("Due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to sec. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1)"). See 15 U.S.C. § 45(a)(1) ("Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practice in or affecting commerce, are hereby declared unlawful"). This FTC Act language covers omissions. See e.g., F.T.C. v. World Travel Vacation Brokers, Inc.. 861 F.2d 1020, 1029 (7th Cir. 1988); Simeon Management Corp., v. F.T.C., 579 F.2d 1137, 1145 (9th Cir. 1978); F.T.C. v. Wilcox, 926 F.Supp. 1091, 1098 (S.D. Fla. 1995). Materially misleading omissions in consumer communications thus likewise violate the Florida Deceptive and Unfair Trade Practices Act.

West's Florida Statutes Annotated
Title XXXIII. Regulation of Trade, Commerce, Investments, and Solicitations (Chapters 494-560)
Chapter 501. Consumer Protection
→ Part II. Deceptive and Unfair Trade Practices

**501.201. Short title**

This part shall be known and may be cited as the "Florida Deceptive and Unfair Trade Practices Act."

**501.202. Purposes; rules of construction**

The provisions of this part shall be construed liberally to promote the following policies:

(1) To simplify, clarify, and modernize the law governing consumer protection, unfair methods of competition, and unconscionable, deceptive, and unfair trade practices.

(2) To protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

(3) To make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection.

**501.203. Definitions**

As used in this chapter, unless the context otherwise requires, the term:

* * *

(3) "Violation of this part" means any violation of this act or the rules adopted under this act and may be based upon any of the following as of July 1, 2001:

(a) Any rules promulgated pursuant to the Federal Trade Commission Act, 15 U.S.C. ss. 41 et seq.;

(b) The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts;

(c) Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

* * *

(6) "Interested party or person" means any person affected by a violation of this part or any person affected by an order of the enforcing authority.

(7) "Consumer" means an individual; child, by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity, however denominated; or any other group or combination.

(8) "Trade or commerce" means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

(9) "Thing of value" may include, without limitation, any moneys, donation, membership, credential, certificate, prize, award, benefit, license, interest, professional opportunity, or chance of winning.

**501.204. Unlawful acts and practices**

(1) Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

(2) It is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2001.

* * *

# Georgia

## GEORGIA

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| GA | Yes<br>Ga. Code Ann. §10-1-391(b) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1]See, e.g., Regency Nissan, Inc. v. Taylor, 391 S.E.2d 467 (1990). In addition, the FBPA is modeled on the FTC Act.

1 of 1 DOCUMENT

OFFICIAL CODE OF GEORGIA ANNOTATED
Copyright 2007 by The State of Georgia
All rights reserved.

*** Current Through the 2007 Regular Session Annotations Current Through February 8, 2008. ***

TITLE 10. COMMERCE AND TRADE
CHAPTER 1. SELLING AND OTHER TRADE PRACTICES
ARTICLE 15. DECEPTIVE OR UNFAIR PRACTICES
PART 2. FAIR BUSINESS PRACTICES ACT

**Go to the Georgia Code Archive Directory**

*O.C.G.A. § 10-1-391* (2008)

§ 10-1-391. Purpose and construction of part

(a) The purpose of this part shall be to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state. It is the intent of the General Assembly that such practices be swiftly stopped, and this part shall be liberally construed and applied to promote its underlying purposes and policies.

(b) It is the intent of the General Assembly that this part be interpreted and construed consistently with interpretations given by the Federal Trade Commission in the federal courts pursuant to Section 5(a)(1) of the Federal Trade Commission Act (*15 U.S.C. Section 45(a)(1)*), as from time to time amended.

**HISTORY:** Ga. L. 1975, p. 376, § 1.

**NOTES:**
CROSS REFERENCES. --Applicability of Art. 2, T. 11, to laws regulating sales to consumers, *§ 11-2-102*.

LAW REVIEWS. --For comment, "The Georgia Fair Business Practices Act: Business As Usual," see *9 Ga. St. U.L. Rev. 453 (1993)*.

JUDICIAL DECISIONS

PURPOSE. --Objective of part is elimination of deceptive acts and practices in "consumer marketplace." *Zeeman v. Black, 156 Ga. App. 82, 273 S.E.2d 910 (1980)*.

LIBERAL CONSTRUCTION. --This part is to be liberally construed and applied to promote its underlying purposes and policies, which are to protect consumers. *Standish v. Hub Motor Co., 149 Ga. App. 365, 254 S.E.2d 416 (1979)*.

PART APPLIES TO CONSUMERS MARKET. --Legislature intended to limit scope of this part to consumer market. Its coverage is limited to activities in the conduct of consumer transactions and consumer acts or practices in trade or commerce. *Larson v. Tandy Corp., 187 Ga. App. 893, 371 S.E.2d 663 (1988)*.

PART APPLIED TO DEBT COLLECTION. --A debtor who was provided medical services could recover against a collection agency under the Fair Business Practices Act (FBPA), *O.C.G.A. § 10-1-390* et seq. A consumer transaction occurred when the debtor was provided medical services, and collecting a debt incurred by a consumer for medical services could harm the general consuming public if conducted deceptively; moreover, the trial court found that the agency violated the Fair Debt Collection Practices Act (FDCPA), under *15 U.S.C. § 1692l*(a), a violation of the FDCPA was a

West's Code of Georgia Annotated Currentness
Title 10. Commerce and Trade
Chapter 1. Selling and Other Trade Practices
Article 15. Deceptive or Unfair Practices
Part 2. Fair Business Practices Act (Refs & Annos)

## → § 10-1-399. Private actions, notice before filing

(a) Any person who suffers injury or damages as a result of a violation of Chapter 5B of this title, as a result of consumer acts or practices in violation of this part, as a result of office supply transactions in violation of this part or whose business or property has been injured or damaged as a result of such violations may bring an action individually, but not in a representative capacity, against the person or persons engaged in such violations under the rules of civil procedure to seek equitable injunctive relief and to recover his general and exemplary damages sustained as a consequence thereof in any court having jurisdiction over the defendant; provided, however, exemplary damages shall be awarded only in cases of intentional violation. Notwithstanding any other provisions of law, a debtor seeking equitable relief to redress an injury resulting from a violation of paragraph (20) of subsection (b) of Code Section 10-1-393, upon facts alleged showing a likelihood of success on the merits, may not, within the discretion of the court, be required to make a tender. Nothing in this subsection or paragraph (20) of subsection (b) of Code Section 10-1-393 shall be construed to interfere with the obligation of the debtor to a lender who is not in violation of paragraph (20) of subsection (b) of Code Section 10-1-393. A claim under this Code section may also be asserted as a defense, setoff, cross-claim, or counterclaim or third-party claim against such person.

* * *

# Hawaii

## HAWAII

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| HI | Yes<br>Haw. Rev. Stat. §§ 480-2(b) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] Haw. Rev. Stat. § 480-2(b) ("The courts and the office of consumer protection shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended."); Beerman, 615 P.2d at 754 (noting that the Hawaii legislature indicated that interpretations of the Federal Trade Commission Act should be consulted in applying the provisions of this section). See 15 U.S.C. § 45(a)(1) ("Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."). This FTC Act language covers omissions. See, e.g., F.T.C. v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1029 (7th Cir. 1988); Simeon Management Corp. v. F.T.C., 579 F.2d 1137, 1145 (9th Cir. 1978); F.T.C. v. Wilcox, 926 F. Supp. 1091, 1098 (S.D. Fla. 1995). Materially misleading omissions in consumer communications thus likewise violate the Florida consumer protection statutes.

1 of 1 DOCUMENT

MICHIE'S HAWAII REVISED STATUTES ANNOTATED
© 2008 Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT IS CURRENT THROUGH 2008 LEGISLATION OF THE 2008 REGULAR SESSION FOR ACTS 1 THROUGH 25 ***
*** ANNOTATIONS CURRENT THROUGH MAY 1, 2008 ***

DIVISION 2. BUSINESS
TITLE 26 Trade Regulation And Practice
CHAPTER 480 Monopolies; Restraint of Trade
PART I. Antitrust Provisions

**Go to the Hawaii Code Archive Directory**

*HRS § 480-2* (2008)

**§ 480-2. Unfair competition, practices, declared unlawful.**

(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

(b) In construing this section, the courts and the office of consumer protection shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act *( 15 U.S.C. 45*(a)(1)), as from time to time amended.

(c) No showing that the proceeding or suit would be in the public interest (as these terms are interpreted under section 5(b) of the Federal Trade Commission Act) is necessary in any action brought under this section.

(d) No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.

(e) Any person may bring an action based on unfair methods of competition declared unlawful by this section.

**HISTORY:** L 1965, c 129, pt of § 1; Supp, § 205A-1.1; *HRS § 480-2*; am L 1987, c 274, § 2; am L 1988, c 51, § 1; am L 2002, c 229, § 2

NOTES:

**Cross references.**

As to the misbranding of meat as unfair competition, see § 159-3.

As to the misbranding of poultry as unfair competition, see § 161-3.

As to the effect of pool buying agreements, see § 281-46.

As to agricultural cooperative association exemptions, see § 421-20.

As to cooperative association exemptions, see § 421C-32.

As to revocation, suspension or renewal of a license of a contractor, see § 444-17.

**LexisNexis 50 State Surveys, Legislation & Regulations**

Anti-trust & Monopolies

# Idaho

**IDAHO**

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| ID | Yes<br>Idaho Code § 48-604(1) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] Idaho Code § 48-604 (1) ("In construing this act due consideration and great weight shall be given to the interpretation of the federal trade commission and the federal courts relating to section 5(a)(1) of the federal trade commission act (15 U.S.C. 45(a)(1)), as from time to time amended."); State ex rel. Kidwell, 615 P.2d at 122 ("Federal case law as it has developed under § 5(2)(1) of the Federal Trade Commission Act, although not binding, is persuasive in application of the Idaho Consumer Protection Act, §§ 48-601 to 48-619."). See 15 U.S.C. § 45(a)(1) ("Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."). This FTC Act language covers omissions. See, e.g., F.T.C. v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1029 (7th Cir. 1988); Simeon Management Corp. v. F.T.C., 579 F.2d 1137, 1145 (9th Cir. 1978); F.T.C. v. Wilcox, 926 F. Supp. 1091, 1098 (S.D. Fla. 1995). Materially misleading omissions in consumer communications thus likewise violate the Idaho Consumer Protection Act.

* * *

**48-604 Intent of legislature -- Attorney general to make rules and regulations.**

(1) It is the intent of the legislature that in construing this act due consideration and great weight shall be given to the interpretation of the federal trade commission and the federal courts relating to section 5(a)(1) of the federal trade commission act (15 U.S.C. 45(a)(1)), as from time to time amended; and

(2) The attorney general may make rules and regulations interpreting the provisions of this act. Such rules and regulations shall not be inconsistent with the rules, regulations and decisions of the federal trade commission and the federal courts in interpreting the provisions of section 5(a)(1) of the federal trade commission act (15 U.S.C. 45(a)(1)), as from time to time amended. Rules and regulations shall be promulgated as provided in chapter 52, title 67, Idaho Code.

* * *

**48-608 Loss from purchase or lease -- Actual and punitive damages.**

(1) Any person who purchases or leases goods or services and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by this act, may treat any agreement incident thereto as voidable or, in the alternative, may bring an action to recover actual damages or one thousand dollars ($1,000), whichever is the greater; provided, however, that in the case of a class action, the class may bring an action for actual damages or a total for the class that may not exceed one thousand dollars ($1,000), whichever is the greater. Any such person or class may also seek restitution, an order enjoining the use or employment of methods, acts or practices declared unlawful under this chapter and any other appropriate relief which the court in its discretion may deem just and necessary. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper in cases of repeated or flagrant violations.

* * *

**48-619 Limitation of action.**

No private action may be brought under this act more than two (2) years after the cause of action accrues.

# Illinois

## ILLINOIS

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| IL | Yes<br>815 ILCS 505/2 | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] ILCS 505/2 (covering the concealment, suppression or omission of any material fact).

West's Smith-hurd Illinois Compiled Statutes Annotated
Chapter 815. Business Transactions
Deceptive Practices
→ Act 505. Consumer Fraud and Deceptive Business Practices Act

* * *

## 505/2. Unlawful practices; construction with Federal Trade Commission Act

§ 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, [FN1] in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act. [FN2]

[FN1] 815 ILCS 510/2.

[FN2] 15 U.S.C.A. § 45.

* * *

## 505/10a. Action for actual damages

§ 10a. Action for actual damages.

(a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person.

* * *

## 505/11a. Construction of Act

§ 11a. This Act shall be liberally construed to effect the purposes thereof.

# Iowa

**IOWA**

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| IA | Yes<br>Iowa Code<br>§ 714.16 .2.a | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] Iowa Code § 714.16. 2.a.

Iowa Code Annotated
Title XVI. Criminal Law and Procedure
Subtitle 1. Crime Control and Criminal Acts
Chapter 714. Theft, Fraud, and Related Offenses

**714.16. Consumer frauds**

1. Definitions:

* * *

n. "Unfair practice" means an act or practice which causes substantial, unavoidable injury to consumers that is not outweighed by any consumer or competitive benefits which the practice produces.

* * *

2. a. The act, use or employment by a person of an unfair practice, deception, fraud, false pretense, false promise, or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon the concealment, suppression, or omission, in connection with the lease, sale, or advertisement of any merchandise or the solicitation of contributions for charitable purposes, whether or not a person has in fact been misled, deceived, or damaged, is an unlawful practice.

It is deceptive advertising within the meaning of this section for a person to represent in connection with the lease, sale, or advertisement of any merchandise that the advertised merchandise has certain performance characteristics, accessories, uses, or benefits or that certain services are performed on behalf of clients or customers of that person if, at the time of the representation, no reasonable basis for the claim existed. The burden is on the person making the representation to demonstrate that a reasonable basis for the claim existed.

A retailer who uses advertising for a product, other than a drug or other product claiming to have a health related benefit or use, prepared by a supplier shall not be liable under this section unless the retailer participated in the preparation of the advertisement; knew or should have known that the advertisement was deceptive, false, or misleading; refused to withdraw the product from sales upon the request of the attorney general pending a determination of whether the advertisement was deceptive, false, or misleading; refused upon the request of the attorney general to provide the name and address of the supplier;

or refused to cooperate with the attorney general in an action brought against the supplier under this section.

"Material fact" as used in this subsection does not include repairs of damage to or adjustments on or replacements of parts with new parts of otherwise new merchandise if the repairs, adjustments or replacements are made to achieve compliance with factory specifications and are made before sale of the merchandise at retail and the actual cost of any labor and parts charged to or performed by a retailer for any such repairs, adjustments and parts does not exceed three hundred dollars or ten percent of the actual cost to a retailer including freight of the merchandise, whichever is less, providing that the seller posts in a conspicuous place notice that repairs, adjustments or replacements will be disclosed upon request. The exemption provided in this paragraph does not apply to the concealment, suppression or omission of a material fact if the purchaser requests disclosure of any repair, adjustment or replacement.

* * *

7. A civil action pursuant to this section shall be by equitable proceedings. If it appears to the attorney general that a person has engaged in, is engaging in, or is about to engage in a practice declared to be unlawful by this section, the attorney general may seek and obtain in an action in a district court a temporary restraining order, preliminary injunction, or permanent injunction prohibiting the person from continuing the practice or engaging in the practice or doing an act in furtherance of the practice. The court may make orders or judgments as necessary to prevent the use or employment by a person of any prohibited practices, or which are necessary to restore to any person in interest any moneys or property, real or personal, which have been acquired by means of a practice declared to be unlawful by this section, including the appointment of a receiver in cases of substantial and willful violation of this section. If a person has acquired moneys or property by any means declared to be unlawful by this section and if the cost of administering reimbursement outweighs the benefit to consumers or consumers entitled to the reimbursement cannot be located through reasonable efforts, the court may order disgorgement of moneys or property acquired by the person by awarding the moneys or property to the state to be used by the attorney general for the administration and implementation of this section. Except in an action for the concealment, suppression, or omission of a material fact with intent that others rely upon it, it is not necessary in an action for reimbursement or an injunction, to allege or to prove reliance, damages, intent to deceive, or that the person who engaged in an unlawful act had knowledge of the falsity of the claim or ignorance of the truth. A claim for reimbursement may be proved by any competent evidence, including evidence that would be appropriate in a class action.

In addition to the remedies otherwise provided for in this subsection, the attorney general may request and the court may impose a civil penalty not to exceed forty thousand dollars

per violation against a person found by the court to have engaged in a method, act, or practice declared unlawful under this section; provided, however, a course of conduct shall not be considered to be separate and different violations merely because the conduct is repeated to more than one person. In addition, on the motion of the attorney general or its own motion, the court may impose a civil penalty of not more than five thousand dollars for each day of intentional violation of a temporary restraining order, preliminary injunction, or permanent injunction issued under authority of this section. A penalty imposed pursuant to this subsection is in addition to any penalty imposed pursuant to section 537.6113. Civil penalties ordered pursuant to this subsection shall be paid to the treasurer of state to be deposited in the general fund of the state.

* * *

# Kansas

## KANSAS

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| KS | Yes<br>Kan. Stat. Ann. §50-626(b)(3) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] Kan. Stat. Ann. §50-626(b)(3).

CHAPTER 50. UNFAIR TRADE AND CONSUMER PROTECTION
ARTICLE 6. CONSUMER PROTECTION
CONSUMER PROTECTION

*K.S.A. § 50-626* (2005)

50-626. Deceptive acts and practices.

(a) No supplier shall engage in any deceptive act or practice in connection with a consumer transaction.

(b) Deceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act, whether or not any consumer has in fact been misled:

(1) Representations made knowingly or with reason to know that:

(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;

(B) the supplier has a sponsorship, approval, status, affiliation or connection that the supplier does not have;

(C) property is original or new, if such property has been deteriorated, altered, reconditioned, repossessed or is second-hand or otherwise used to an extent that is materially different from the representation;

(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;

(E) the consumer will receive a rebate, discount or other benefit as an inducement for entering into a consumer transaction in return for giving the supplier the names of prospective consumers or otherwise helping the supplier to enter into other consumer transactions, if receipt of benefit is contingent on an event occurring after the consumer enters into the transaction;

(F) property or services has uses, benefits or characteristics unless the supplier relied upon and possesses a reasonable basis for making such representation; or

(G) use, benefit or characteristic of property or services has been proven or otherwise substantiated unless the supplier relied upon and possesses the type and amount of proof or substantiation represented to exist;

(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;

(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact;

(4) disparaging the property, services or business of another by making, knowingly or with reason to know, false or misleading representations of material facts;

(5) offering property or services without intent to sell them;

(6) offering property or services without intent to supply reasonable, expectable public demand, unless the offer discloses the limitation;

(7) making false or misleading representations, knowingly or with reason to know, of fact concerning the reason for, existence of or amounts of price reductions, or the price in comparison to prices of competitors or one's own price at a past or future time;

(8) falsely stating, knowingly or with reason to know, that a consumer transaction involves consumer rights, remedies or obligations;

(9) falsely stating, knowingly or with reason to know, that services, replacements or repairs are needed;

(10) falsely stating, knowingly or with reason to know, the reasons for offering or supplying property or services at sale or discount prices;

(11) sending or delivering a solicitation for goods or services which could reasonably be interpreted or construed as a bill, invoice or statement of account due, unless:

(A) Such solicitation contains the following notice, on its face, in conspicuous and legible type in contrast by typography, layout or color with other printing on its face:

"THIS IS A SOLICITATION FOR THE PURCHASE OF GOODS OR SERVICES AND NOT A BILL, INVOICE OR STATEMENT OF ACCOUNT DUE. YOU ARE UNDER NO OBLIGATION TO MAKE ANY PAYMENTS UNLESS YOU ACCEPT THIS OFFER"; and

(B) such solicitation, if made by any classified telephone directory service not affiliated with a local telephone service in the area of service, contains the following notice, on its face, in a prominent and conspicuous manner:

"________________________________ IS NOT AFFILIATED WITH

(name of telephone directory service)

ANY LOCAL TELEPHONE COMPANY"; and

(12) using, in any printed advertisement, an assumed or fictitious name for the conduct of such person's business that includes the name of any municipality, community or region or other description of the municipality, community or region in this state in such a manner as to suggest that such person's business is located in such municipality, community or region unless: (A) Such person's business is, in fact, located in such municipality, community or region; or (B) such person includes in any such printed advertisement the complete street and city address of the location from which such person's business is actually conducted. If located outside of Kansas, the state in which such person's business is located also shall be included. The provisions of this subsection shall not apply to the use of any trademark or service mark registered under the laws of this state or under federal law; any such name that, when applied to the goods or services of such person's business, is merely descriptive of them; or any such name that is merely a surname. Nothing in this subsection shall be construed to impose any liability on any publisher when such publisher had no knowledge the business was not, in fact, located in such municipality, community or region.