# Exhibit B

## Analytical Tables of State UDAP Laws

## Part II

# Kentucky

## KENTUCKY

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| KY | Yes<br>KRS § 367.170 | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] See Smith v. General Motors Corp. 979 S.W.2d 127, 130-31 (Ky. App. 1998) (denying summary judgment because fact-finder could reasonably conclude that non-disclosure in connection with vehicle sale constituted a false, misleading, or deceptive act under KRS 367.170).

Baldwin's Kentucky Revised Statutes Annotated
Title XXIX. Commerce and Trade
→ Chapter 367. Consumer Protection

**367.110 Definitions**

As used in KRS 367.170 to 367.300:

(1) "Person" means natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity.

(2) "Trade" and "commerce" means the advertising, offering for sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value, and shall include any trade or commerce directly or indirectly affecting the people of this Commonwealth.

* * *

**367.120 Legislative intent; title**

(1) The General Assembly finds that the public health, welfare and interest require a strong and effective consumer protection program to protect the public interest and the well-being of both the consumer public and the ethical sellers of goods and services; toward this end, a Consumers' Advisory Council and a Division of Consumer Protection of the Department of Law are hereby created for the purpose of aiding in the development of preventive and remedial consumer protection programs and enforcing consumer protection statutes.

(2) KRS 367.110 to 367.300 may be cited as the "Consumer Protection Act."

* * *

**367.170 Unlawful acts**

(1) Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

(2) For the purposes of this section, unfair shall be construed to mean unconscionable.

* * *

**367.220 Action for recovery of money or property; when action may be brought**

(1) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170, may bring an action under the Rules of Civil Procedure in the Circuit Court in which the seller or lessor resides or has his principal place of business or is doing business, or in the Circuit Court in which the purchaser or lessee of goods or services resides, or where the transaction in question occurred, to recover actual damages. The court may, in its discretion, award actual damages and may provide such equitable relief as it deems necessary or proper. Nothing in this subsection shall be construed to limit a person's right to seek punitive damages where appropriate.

* * *

# Louisiana

## LOUISIANA

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| LA | Yes<br>La. R. S. § 51:1405.A; 1409 | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] Louisiana's Unfair Trade Practices and Consumer Protection Law (UTPCPL) tracks the language of the FTC Act, 15 U.S.C. § 45(a), regarding prohibited practices, and federal court interpretations of the FTC Act guide interpretation of the UTPCPL. See Coffey v. Peoples Mortgage & Loan of Shreveport, Inc., 408 So.2d 1153, 1156 (La. App. 1981); Gour v. Daray Motor Co., Inc., 373 So.2d 571, 577-78 (La. App. 1979); Guste v. Demars, 330 So.2d 123, 125 (La. App. 1976). The FTC Act covers omissions. See, e.g., F.T.C. v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1029 (7th Cir. 1988); Simeon Management Corp. v. F.T.C., 579 F.2d 1137, 1145 (9th Cir. 1978); F.T.C. v. Wilcox, 926 F. Supp. 1091, 1098 (S.D. Fla. 1995). Materially misleading omissions in consumer communications thus likewise violate Louisiana's UTPCPL.

West's Louisiana Statutes Annotated
Louisiana Revised Statutes
Title 51. Trade and Commerce
→ Chapter 13. Unfair Trade Practices and Consumer Protection Law (Refs & Annos)

## § 1401. Short title

This Chapter shall be known and may be cited as the "Unfair Trade Practices and Consumer Protection Law."

## § 1402. Definitions

As used in this Chapter, the following words and phrases shall have the meanings hereinafter ascribed to them:

(1) "Consumer" means any person who uses, purchases, or leases goods or services.

(2) "Consumer interest" means those acts, practices, or methods that affect the economic welfare of a consumer.

(3) "Consumer transaction" means any transaction involving trade or commerce to a natural person, the subject of which transaction is primarily intended for personal, family, or household use.

* * *

(8) "Person" means a natural person, corporation, trust, partnership, incorporated or unincorporated association, and any other legal entity.

(9) "Trade" or "commerce" means the advertising, offering for sale, sale, or distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of the state.

(10) "Knowingly" means that the act or practice used was such that a reasonably prudent businessman knew or should have known that the act or practice was a violation of this Chapter.

* * *

**§ 1405. Unfair acts or practices; interpretation and rule making authority**

A. Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

* * *

**§ 1409. Private actions**

A. Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages. If the court finds the unfair or deceptive method, act or practice was knowingly used, after being put on notice by the director or attorney general, the court shall award three times the actual damages sustained. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney's fees and costs. Upon a finding by the court that an action under this section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney's fees and costs.

# Maine

## MAINE

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| ME | Yes<br>Me. Rev. Stat. Ann. tit.5, § 207 | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] Binett 688 A.2d at 906; see also Suminski v. Maine Appliance Warehouse, Inc., 602 A.2d 1173, 1174-75 n.1 (Me. 1992) (Maine guided by interpretations given by the Federal Trade Commission and the federal courts as to "material representation, omission, act or practice"). Me. Rev. Stat. Ann. tit 5, § 201(2)(same). Weinschenk, 868 A.2d at 207. Federal courts have long held that material omissions stand as violations of the FTC Act. "In order to establish that an act or practice is deceptive [under § 45(a)], the FTC must establish that the representations, ***omissions***, or practices likely would mislead consumers, acting reasonably, to their detriment." F.T.C. v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1029 (7th Cir. 1988) (emphasis added); see also F.T.C. v. Wilcox, 926 F. Supp 1091, 1098 (S.D. Fla. 1995) ("In order to establish that an act or practice is deceptive, the FTC must establish that the representations, ***omissions***, or practices likely would mislead consumers, acting reasonably, to their detriment."); Simeon Mgmt. Corp. v. F.T.C., 579 F.2d 1137 (9th Cir. 1978) ("Failure to disclose material information may cause an advertisement to be false or deceptive within the meaning of the FTCA even though the advertisement does not state false facts.").

Maine Revised Statutes Annotated Currentness
Title 5. Administrative Procedures and Services
Part I. State Departments
Chapter 10. Unfair Trade Practices (Refs & Annos)

### → § 207. Unlawful acts and conduct

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful.

**1. Intent.** It is the intent of the Legislature that in construing this section the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1) ), as from time to time amended.

**2. Rules and regulations.** The Attorney General may make rules and regulations interpreting this section. Such rules and regulations shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the Federal Courts interpreting the provisions of 15 U.S.C. 45(a)(1) (The Federal Trade Commission Act) as from time to time amended. Evidence of a violation of a rule or regulation made by the Attorney General shall constitute prima facie evidence of an act or practice declared to be unlawful by this chapter in any action thereafter brought under this chapter.

Maine Revised Statutes Annotated Currentness
Title 5. Administrative Procedures and Services
Part 1. State Departments
Chapter 10. Unfair Trade Practices (Refs & Annos)

## § 213. Private remedies

**1. Court action.** Any person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 207 or by any rule or regulation issued under section 207, subsection 2 may bring an action either in the Superior Court or District Court for actual damages, restitution and for such other equitable relief, including an injunction, as the court determines to be necessary and proper. There is a right to trial by jury in any action brought in Superior Court under this section.

# Maryland

## MARYLAND

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| MD | Yes<br>Md. Code Ann. Com. Law § 13-301 (9)(i) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] The Federal Trade Commission's (FTC) Policy Statement, the FTC's rulings, and the relevant federal case law, are appropriate tests under the Maryland Consumer Protection Act. Legg v. Castruccio, 642 A.2d 906 (Md. 1994). Federal courts have long held that material omissions stand as violations of the FTC Act. "In order to establish that an act or practice is deceptive [under § 45(a)], the FTC must establish that the representations, ***omissions***, or practices likely would mislead consumers, acting reasonably, to their detriment." F.T.C. v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1029 (7th Cir. 1988) (emphasis added); see also F.T.C. v. Wilcox, 926 F. Supp. 1091, 1098 (S.D. Fla. 1995) ("In order to establish that an act or practice is deceptive, the FTC must establish that the representations, ***omissions***, or practices likely would mislead consumers, acting reasonably, to their detriment."); Simeon Mgmt. Corp. v. F.T.C., 579 F.2d 1137 (9th Cir. 1978) ("Failure to disclose material information may cause an advertisement to be false or deceptive within the meaning of the FTCA even though the advertisement does not state false facts.").

West's Annotated Code of Maryland Currentness
Commercial Law
Title 13. Consumer Protection Act
Subtitle 3. Unfair or Deceptive Trade Practices (Refs & Annos)

**→§ 13-301. Proscribed practices**

Unfair or deceptive trade practices include any:

(1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

(2) Representation that:

(i) Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;

* * *

(iv) Consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not;

(3) Failure to state a material fact if the failure deceives or tends to deceive;

* * *

(9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with:

(i) The promotion or sale of any consumer goods, consumer realty, or consumer service;

* * *

West's Annotated Code of Maryland Currentness
Commercial Law
Title 13. Consumer Protection Act
Subtitle 4. Enforcement and Penalties

### § 13-408. Damage actions

(a) In addition to any action by the Division or Attorney General authorized by this title and any other action otherwise authorized by law, any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title.

(b) Any person who brings an action to recover for injury or loss under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees.

(c) If it appears to the satisfaction of the court, at any time, that an action is brought in bad faith or is of a frivolous nature, the court may order the offending party to pay to the other party reasonable attorney's fees.

(d) Notwithstanding any other provision of this section, a person may not bring an action under this section to recover for injuries sustained as a result of the professional services provided by a health care provider, as defined in § 3-2A-01 of the Courts Article.

# Massachusetts

## MASSACHUSETTS

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| MA | Yes<br>Mass. Gen. Laws Ann., Ch. 93A, §§ 2, 9 | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

---

[1] Underwood v. Risman, 605 N.E.2d 832, 414 Mass. 96 (1993) (duty exists to disclose material facts known to party at time of sales transaction and liability will attach for failure to disclose known material fact if there is partial disclosure, misrepresentation, or false statement); Aspinall v. Philip Morris Companies, Inc., supra, 813 N.E.2d at 487 (advertising may be deemed deceptive under consumer protection statute if it consists of a half truth, or even may be true as a literal matter, but still creates an over-all misleading impression through failure to disclose material information). Furthermore, Ch.93A § 2(b) states that Massachusetts courts must be guided by interpretations of the Federal Trade Commission of 15 U.S.C. § 45(a)(1), which construes deception to include "omission".

MASSACHUSETTS GENERAL LAWS ANNOTATED
PART I. **ADMINISTRATION OF THE GOVERNMENT** (CH. 1-182)
TITLE XV. **REGULATION OF TRADE** (CH. 93-110G)
CHAPTER 93A. **REGULATION OF BUSINESS PRACTICES FOR CONSUMERS PROTECTION**

## →§ 2. Unfair practices; legislative intent; rules and regulations

(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

(b) It is the intent of the legislature that in construing paragraph (a) of this section in actions brought under sections four, nine and eleven, the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.

* * *

MASSACHUSETTS GENERAL LAWS ANNOTATED
PART I. **ADMINISTRATION OF THE GOVERNMENT** (CH. 1-182)
TITLE XV. **REGULATION OF TRADE** (CH. 93-110G)
CHAPTER 93A. **REGULATION OF BUSINESS PRACTICES FOR CONSUMERS PROTECTION**

**→§ 9. Civil actions and remedies; class action; demand for relief; damages; costs; exhausting administrative remedies**

(1) Any person, other than a person entitled to bring action under section eleven of this chapter, who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder or any person whose rights are affected by another person violating the provisions of clause (9) of section three of chapter one hundred and seventy-six D may bring an action in the superior court, or in the housing court as provided in section three of chapter one hundred and eighty-five C whether by way of original complaint, counterclaim, cross-claim or third party action, for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper.

* * *

# Michigan

## MICHIGAN

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| MI | Yes<br>Mich. Comp. Laws Ann. §§ 445.903<br>(3)(1) (s) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] Mich. Comp. Laws. Ann. § 445.903(s)

Michigan Compiled Laws Annotated Currentness
Chapter 445. Trade and Commerce
Michigan Consumer Protection Act (Refs & Annos)

**→445.903. Unfair trade practices; rules**

Sec. 3. (1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows:

* * *

(c) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have.

* * *

(e) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

* * *

(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

* * *

(z) Charging the consumer a price that is grossly in excess of the price at which similar property or services are sold.

* * *

(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

Michigan Compiled Laws Annotated Currentness
Chapter 445. Trade and Commerce
Michigan Consumer Protection Act (Refs & Annos)

**→445.911. Actions; declaratory judgments; injunctions; actual damages; class actions for damages; orders for relief; receiver; sequestration of assets; cost of notice; limitations; defense and counterclaim**

Sec. 11. (1) Whether or not he seeks damages or has an adequate remedy at law, a person may bring an action to do either or both of the following:

(a) Obtain a declaratory judgment that a method, act, or practice is unlawful under section 3. [FN1]

(b) Enjoin in accordance with the principles of equity a person who is engaging or is about to engage in a method, act, or practice which is unlawful under section 3.

(2) Except in a class action, a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees.

(3) A person who suffers loss as a result of a violation of this act may bring a class action on behalf of persons residing or injured in this state for the actual damages caused by any of the following:

(a) A method, act, or practice in trade or commerce defined as unlawful under section 3.

(b) A method, act, or practice in trade or commerce declared to be unlawful under section 3(1) [FN2] by a final judgment of the circuit court or an appellate court of this state which is either reported officially or made available for public dissemination pursuant to section 9 [FN3] by the attorney general not less than 30 days before the method, act, or practice on which the action is based occurs.

(c) A method, act, or practice in trade or commerce declared by a circuit court of appeals or the supreme court of the United States to be an unfair or deceptive act or practice within the meaning of section 5(a)(1) of the federal trade commission act, 15 U.S.C. 45(a)(1), in a decision which affirms or directs the affirmance of a cease and desist order issued by the federal trade commission if the order is final within the meaning of section 5(g) of the federal trade commission act, 15 U.S.C. 45(g), and which is officially reported not less than 30 days before the method, act, or practice on which the action is based occurs. For purposes of this subdivision, a method, act, or practice shall not be deemed to be unfair or

deceptive within the meaning of section 5(a)(1) of the federal trade commission act solely because the method, act, or practice is made unlawful by another federal statute that refers to or incorporates section 5(a)(1) of the federal trade commission act.

(4) On motion of a person and without bond in an action brought under subsection (3) the court may make an appropriate order: to reimburse persons who have suffered damages; to carry out a transaction in accordance with the aggrieved persons' reasonable expectations; to strike or limit the application of unconscionable clauses of contracts to avoid an unconscionable result; or to grant other appropriate relief. The court after a hearing may appoint a receiver or order sequestration of the defendant's assets if it appears to the satisfaction of the court that the defendant threatens or is about to remove, conceal, or dispose of his assets to the detriment of members of the class.

(5) If at any stage of proceedings brought under subsection (3) the court requires that notice be sent to the class, a person may petition the court to require the defendant to bear the cost of notice. In determining whether to impose the cost on the defendant or the plaintiff, the court shall consider the probability that the person will succeed on the merits of his action.

(6) If the defendant shows by a preponderance of the evidence that a violation of this act resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid the error, the amount of recovery shall be limited to actual damages.

(7) An action under this section shall not be brought more than 6 years after the occurrence of the method, act, or practice which is the subject of the action nor more than 1 year after the last payment in a transaction involving the method, act, or practice which is the subject of the action, whichever period of time ends at a later date. However, when a person commences an action against another person, the defendant may assert, as a defense or counterclaim, any claim under this act arising out of the transaction on which the action is brought.

# Mississippi

## MISSISSIPPI

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| MS | Yes<br>Miss. Code Ann. § 75-24-3 (c) | Yes[1] |

**Are there any true conflicts of substantive law?**
No.

[1] Miss. Code Ann. § 75-24-3(c) (courts interpreting statute to be guided by interpretations to FTC Act by FTC and federal courts). Federal courts have long held that material omissions stand as violations of the FTC Act. "In order to establish that an act or practice is deceptive [under § 45(a)], the FTC must establish that the representations, ***omissions***, or practices likely would mislead consumers, acting reasonably, to their detriment." F.T.C. v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1029 (7th Cir. 1988) (emphasis added); see also F.T.C. v. Wilcox, 926 F. Supp. 1091, 1098 (S.D. Fla. 1995) ("In order to establish that an act or practice is deceptive, the FTC must establish that the representations, ***omissions***, or practices likely would mislead consumers, acting reasonably, to their detriment."); Simeon Mgmt. Corp. v. F.T.C., 579 F.2d 1137 (9th Cir. 1978) ("Failure to disclose material information may cause an advertisement to be false or deceptive within the meaning of the FTCA even though the advertisement does not state false facts.").

*WEST'S* ANNOTATED MISSISSIPPI CODE
TITLE 75. REGULATION OF TRADE, COMMERCE AND INVESTMENTS
CHAPTER 24. REGULATION OF BUSINESS FOR CONSUMER PROTECTION
GENERAL PROVISIONS

**→§ 75-24-3. Definitions; construction**

As used in this chapter:

* * *

(c) It is the intent of the Legislature that in construing what constitutes unfair or deceptive trade practices that the courts will be guided by the interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 USCS 45(a)(1)) as from time to time amended.

# Missouri

**MISSOURI**

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| MO | Yes<br>§407.020, RSMo 2005 | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] §407.020, RSMo 2005

TITLE 26. TRADE AND COMMERCE (Chs. 400-421)
CHAPTER 407. MERCHANDISING PRACTICES

*§ 407.020 R.S.Mo.* (2006)

§ 407.020. Unlawful practices, penalty--exceptions

1. The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in *section 407.453*, in or from the state of Missouri, is declared to be an unlawful practice. The use by any person, in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in *section 407.453*, in or from the state of Missouri of the fact that the attorney general has approved any filing required by this chapter as the approval, sanction or endorsement of any activity, project or action of such person, is declared to be an unlawful practice. Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

2. Nothing contained in this section shall apply to:

(1) The owner or publisher of any newspaper, magazine, publication or printed matter wherein such advertisement appears, or the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher or operator has no knowledge of the intent, design or purpose of the advertiser; or

(2) Any institution or company that is under the direction and supervision of the director of the department of insurance, director of the division of credit unions, or director of the division of finance, unless the directors of such divisions specifically authorize the attorney general to implement the powers of this chapter or such powers are provided to either the attorney general or a private citizen by statute.

3. Any person who willfully and knowingly engages in any act, use, employment or practice declared to be unlawful by this section with the intent to defraud shall be guilty of a class D felony.

4. It shall be the duty of each prosecuting attorney and circuit attorney in their respective jurisdictions to commence any criminal actions under this section, and the attorney general shall have concurrent original jurisdiction to commence such criminal actions throughout the state where such violations have occurred.

5. It shall be an unlawful practice for any long-term care facility, as defined in *section 660.600, RSMo*, except a facility which is a residential care facility I or a residential care facility II, as defined in *section 198.006, RSMo*, which makes, either orally or in writing, representation to residents, prospective residents, their families or representatives regarding the quality of care provided, or systems or methods utilized for assurance or maintenance of standards of care to refuse to provide copies of documents which reflect

the facility's evaluation of the quality of care, except that the facility may remove information that would allow identification of any resident. If the facility is requested to provide any copies, a reasonable amount, as established by departmental rule, may be charged.

6. Any long-term care facility, as defined in *section 660.600, RSMo*, which commits an unlawful practice under this section shall be liable for damages in a civil action of up to one thousand dollars for each violation, and attorney's fees and costs incurred by a prevailing plaintiff, as allowed by the circuit court.

# Montana

## MONTANA

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| MT | Yes<br>M.C.A.<br>§ 30-14-103, 104 | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

---

[1] Montana's Consumer Protection Act must be guided by decisions related to the FTC Act. Mont. Code Ann. § 30-14-104; Britton v. Farmers Ins. Group, 721 P.2d 303, 323 (Mont. 1986). Federal courts have long held that material omissions stand as violations of the FTC Act. "In order to establish that an act or practice is deceptive [under § 45(a)], the FTC must establish that the representations, ***omissions***, or practices likely would mislead consumers, acting reasonably, to their detriment." F.T.C. v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1029 (7th Cir. 1988) (emphasis added); see also F.T.C. v. Wilcox, 926 F. Supp. 1091, 1098 (S.D. Fla. 1995) ("In order to establish that an act or practice is deceptive, the FTC must establish that the representations, ***omissions***, or practices likely would mislead consumers, acting reasonably, to their detriment."); Simeon Mgmt. Corp. v. F.T.C., 579 F.2d 1137 (9th Cir. 1978) ("Failure to disclose material information may cause an advertisement to be false or deceptive within the meaning of the FTCA even though the advertisement does not state false facts.").

MONTANA CODE ANNOTATED
TITLE 30. TRADE AND COMMERCE
CHAPTER 14. UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION
PART 1. CONSUMER PROTECTION ACT

## ⇒30-14-103. Unlawful practices

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

MONTANA CODE ANNOTATED
TITLE 30. TRADE AND COMMERCE
CHAPTER 14. UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION
PART 1. CONSUMER PROTECTION ACT

**➡30-14-104. Federal interpretation -- rules determining unfair competition and deception**

(1) It is the intent of the legislature that in construing 30-14-103 due consideration and weight shall be given to the interpretations of the federal trade commission and the federal courts relating to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C., 45(a)(1)), as amended.

(2) The department may make rules interpreting the provisions of 30-14-103. Such rules shall not be inconsistent with the rules, regulations, and decisions of the federal trade commission and the federal courts in interpreting the provisions of section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C., 45(a)(1)), as amended.

# Nebraska

## NEBRASKA

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| NE | Yes<br>Neb. Rev. Stat. §§ 59-1602; 87-303.01(1) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

---

[1] In the absence of direct Nebraska authority, Nebraska courts require adherence to federal decisional law with regard to its consumer protection act. "[A]ny provision of Chapter 59 shall follow the construction given to the federal law by the federal courts." Neb. Rev. Stat. Ann. § 59-829. Under Neb. Rev. Stat. Ann. § 59-1602, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." The federal law counterpart to this statute is substantively identical: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C.A. § 45(a)(1). Federal decisional law includes material omissions as violations of section 45(a). "In order to establish that an act or practice is deceptive [under § 45(a)], the FTC must establish that the representations, ***omissions***, or practices likely would mislead consumers, acting reasonably, to their detriment." F.T.C. v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1029 (7th Cir. 1988) (emphasis added); see also F.T.C. v. Wilcox, 926 F. Supp. 1091, 1098 (S.D. Fla. 1995) ("In order to establish that an act or practice is deceptive, the FTC must establish that the representations, ***omissions***, or practices likely would mislead consumers, acting reasonably, to their detriment."). Thus, material omissions stand as violations of Nebraska's Consumer Protection Act. Furthermore, Nebraska's Uniform Deceptive Trade Practices Act states, "Sections 87-301 to 87-306 shall be construed to effectuate their general purpose to make uniform the law of those states which enact them." Neb. Rev. Stat. Ann. § 87-305. It also states, "Sections 87-301 to 87-306 do not apply to: (1) Conduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency ...." Id. at § 87-304(a)(1). Taken together, Nebraska's legislature mandates that its courts avoid creating conflict with other deceptive trade practices statutes where there is none while indicating that any act that does not comply with federal deceptive trade law is fair game under Nebraska's law. Because material omissions stand as violations under both the FTC Act and her sister jurisdictions, Nebraska courts would clearly recognize material omissions as deceptive conduct under Chapter 87.

NEBRASKA REVISED STATUTES OF 1943
CHAPTER 59. MONOPOLIES AND UNLAWFUL COMBINATIONS
ARTICLE 16. CONSUMER PROTECTION ACT

**→§ 59-1602. Unfair competition; practices; unlawful.**

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful.

NEBRASKA REVISED STATUTES OF 1943
CHAPTER 87. TRADE PRACTICES
ARTICLE 3. DECEPTIVE TRADE PRACTICES
(A) UNIFORM DECEPTIVE TRADE PRACTICES ACT

**→§ 87-303.01. Unconscionable act or practice; violation; determination.**

(1) An unconscionable act or practice by a supplier in connection with a consumer transaction shall be a violation of sections 87-301 to 87-306.

* * *

# Nevada

## NEVADA

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| NV | Yes<br>Nev. Rev. Stat. §§ 598.0923 | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] Deceptive trade practices" includes "fail[ure ] to disclose a material fact". Nev. Rev. Stat. § 598.0923.

West's Nevada Revised Statutes Annotated Currentness
Title 52. Trade Regulations and Practices
Chapter 598. Deceptive Trade Practices (Refs & Annos)
General Provisions (Refs & Annos)

### →598.0923. "Deceptive trade practice" defined

A person engages in a "deceptive trade practice" when in the course of his business or occupation he knowingly:

* * *

2. Fails to disclose a material fact in connection with the sale or lease of goods or services.

3. Violates a state or federal statute or regulation relating to the sale or lease of goods or services.

* * *

# New Hampshire

## NEW HAMPSHIRE

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| NH | Yes | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] In determining what actions are unlawful outside of the enumerated categories of the consumer statutes, New Hampshire courts look to federal courts' interpretation of the Federal Trade Commission Act for guidance. State v. Moran, 861 A.2d 763, 785-66 (N.H. 2004). Federal decisional law includes material omissions as violations of section 45(a). "In order to establish that an act or practice is deceptive [under 15 U.S.C. § 45(a)], the FTC must establish that the representations, ***omissions***, or practices likely would mislead consumers, acting reasonably, to their detriment." F.T.C. v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1029 (7th Cir. 1988) (emphasis added); see also F.T.C. v. Wilcox, 926 F. Supp. 1091, 1098 (S.D. Fla. 1995) ("In order to establish that an act or practice is deceptive, the FTC must establish that the representations, ***omissions***, or practices likely would mislead consumers, acting reasonably, to their detriment."); see also Simeon Mgmt. Corp. v. F.T.C., 579 F.2d 1137 (9th Cir. 1978) ("Failure to disclose material information may cause an advertisement to be false or deceptive within the meaning of the FTCA even though the advertisement does not state false facts."). Thus, material omissions stand as violations of New Hampshire's consumer protection statutes.

In addition, the First Circuit has noted that the New Hampshire Supreme Court looks to the "well developed" decisional law construing Massachusetts's deceptive practices act, which caselaw "is replete with decisions holding that a failure to disclose a material fact may constitute an unfair or deceptive practice." Chroniak v. Golden Inv. Corp., 983 F.2d 1140, 1146 n. 11, 1147 n. 12 (1993).

# New Jersey

## NEW JERSEY

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| NJ | Yes<br>N.J. Stat. Ann. §56:8-2 | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] N.J. Stat. Ann. §56:8-2.

NEW JERSEY STATUTE

New Jersey Statutes Annotated Currentness
Title 56. Trade Names, Trade-marks and Unfair Trade Practices
Chapter 8. Frauds, Etc., In Sales or Advertisements of Merchandise (Refs & Annos)

**→56:8-2. Fraud, etc., in connection with sale or advertisement of merchandise or real estate as unlawful practice**

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser.

**→56:8-2.11. Violations; liability**

Any person violating the provisions of the within act shall be liable for a refund of all moneys acquired by means of any practice declared herein to be unlawful.

**→56:8-2.12. Recovery of refund in private action**

The refund of moneys herein provided for may be recovered in a private action or by such persons authorized to initiate actions pursuant to P.L.1975, c. 376 (C. 40:23-6.47 et seq.).

**→56:8-19. Action or counterclaim by injured person; recovery of treble damages and costs**

Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, including those brought by the Attorney General, the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.

# New Mexico

## NEW MEXICO

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| NM | Yes<br>N.M. Stat. Ann. §§ 57-12-3 and 57-12-2 (5), (14) and | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] N.M. Stat. Ann § 57-12-2 (D) (14).

West's New Mexico Statutes Annotated Currentness
Chapter 57. Trade Practices and Regulations
→ Article 12. Unfair Trade Practices (Refs & Annos)

## § 57-12-1. Short title

Chapter 57, Article 12 NMSA 1978 may be cited as the "Unfair Practices Act".

## § 57-12-2. Definitions

As used in the Unfair Practices Act:

* * *

D. "unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person and includes:

* * *

(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

* * *

(7) representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another;

* * *

(14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive;

* * *

E. "unconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts which to a person's detriment:

(1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or

(2) results in a gross disparity between the value received by a person and the price paid.

**§ 57-12-3. Unfair or deceptive and unconscionable trade practices prohibited**

Unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful.

**§ 57-12-10. Private remedies**

A. A person likely to be damaged by an unfair or deceptive trade practice or by an unconscionable trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. Proof of monetary damage, loss of profits or intent to deceive or take unfair advantage of any person is not required. Relief granted for the copying of an article shall be limited as to the prevention of confusion or misunderstanding as to source.

B. Any person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater. Where the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has willfully engaged in the trade practice, the court may award up to three times actual damages or three hundred dollars ($300), whichever is greater, to the party complaining of the practice.

C. The court shall award attorney fees and costs to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if the party prevails. The court shall award attorney fees and costs to the party charged with an unfair or deceptive trade practice or an unconscionable trade practice if it finds that the party complaining of such trade practice brought an action that was groundless.

D. The relief provided in this section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this state.

E. In any class action filed under this section, the court may award damages to the

named plaintiffs as provided in Subsection B of this section and may award members of the class such actual damages as were suffered by each member of the class as a result of the unlawful method, act or practice.

* * *

# New York

## NEW YORK

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| NY | Yes<br>N.Y. G.B.L. § 349; 350(a) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] "Whether a representation ***or an omission***, the deceptive practice must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" Stutman, 731 N.E.2d at 611-12 (quoting Oswego Laborers' Local 214 Pension Fund, 647 N.E.2d at 745)) (emphasis added).

MCKINNEY'S CONSOLIDATED LAWS OF NEW YORK ANNOTATED
GENERAL BUSINESS LAW
**CHAPTER 20 OF THE CONSOLIDATED LAWS**
**ARTICLE 22-A--CONSUMER PROTECTION FROM DECEPTIVE ACTS AND PRACTICES**

### →§ 349. Deceptive acts and practices unlawful

(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

* * *

(h) In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

LexisNexis Total Research System
Switch Client | Preferences | Sign Out | Help
My Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector | History



*NY CLS Gen Bus § 350-a*

Retrieve State Legislative Impact® ($)

NEW YORK CONSOLIDATED LAW SERVICE
Copyright © 2008 Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved

Practitioner's Toolbox
Case Notes
Legislative History
Resources & Practice Tools
Related Statutes & Rules

*** THIS SECTION IS CURRENT THROUGH CH. 115, 06/17/2008 ***

GENERAL BUSINESS LAW
ARTICLE 22-A. CONSUMER PROTECTION FROM DECEPTIVE ACTS AND PRACTICES

**Go to the New York Code Archive Directory**

NY CLS Gen Bus § 350-a (2008)

§ 350-a. False advertising

1. The term "false advertising" means advertising, including labeling, [fig 1] of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect [fig 2] . In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual. For purposes of this article, with respect to the advertising of an employment opportunity, it shall be deemed "misleading in a material respect" to either fail to reveal whether the employment available or being offered requires or is conditioned upon the purchasing or leasing of supplies, material, equipment or other property or whether such employment is on a commission rather than a fixed salary basis and, if so, whether the salaries advertised are only obtainable if sufficient commissions are earned.

2. An employer shall not be liable under this section as a result of a failure to disclose all material facts relating to terms and conditions of employment if the aggrieved person has not suffered actual pecuniary damage as a result of the misleading advertising of an employment opportunity or if the employer has, prior to the aggrieved person suffering any pecuniary damage, disclosed in writing to that person a full and accurate description of the kind, character, terms and conditions of the employment opportunity.

3. It shall constitute false advertising to display or announce, in print or broadcast advertising, the price of an item after deduction of a rebate unless the actual selling price is displayed or announced, and clear and conspicuous notice is given in the advertisement that a mail-in rebate is required to achieve the lower net price.

**Legislative History:**

History:

Add, L 1963, ch 813, eff Sept 1, 1963.
Amd, L 1988, ch 615, § 1, eff Sept 1, 1988.
Sub 1, formerly entire section, so designated and amd, L 1988, ch 615, § 1, eff Sept 1, 1988.
The 1988 act deleted at fig 1 "which" and at fig 2 "; and in" Sub 2, add, L 1988, ch 615, § 1, eff Sept 1, 1988.
Sub 3, add, L 1994, ch 107, § 1, eff May 24, 1995.

**Related Statutes & Rules:**

New York References:
This section referred to in § 350-d

Federal References:
False advertisement defined, 15 USCS § 55

# North Carolina

## NORTH CAROLINA

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| NC | Yes<br>NC General Statutes §§ 75-1. et seq | Yes.[1] |

**Are there any true conflicts of substantive law?**

No.

---

[1] South Atlantic Ltd. Partnership of Tennessee, L.P. v. Riese, 284 F.3d 518, 537-538 (4th Cir. 2002) (applying North Carolina law).

NC General Statutes §§ 75-1. et seq.

Chapter 75.

**Monopolies, Trusts and Consumer Protection.**

Article 1.

## § 75-1.1. Methods of competition, acts and practices regulated; legislative policy.

(a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

(b) For purposes of this section, "commerce" includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession.

(c) Nothing in this section shall apply to acts done by the publisher, owner, agent, or employee of a newspaper, periodical or radio or television station, or other advertising medium in the publication or dissemination of an advertisement, when the owner, agent or employee did not have knowledge of the false, misleading or deceptive character of the advertisement and when the newspaper, periodical or radio or television station, or other advertising medium did not have a direct financial interest in the sale or distribution of the advertised product or service.

(d) Any party claiming to be exempt from the provisions of this section shall have the burden of proof with respect to such claim. (1969, c. 833; 1977, c. 747, ss. 1, 2.)

## § 75-16. Civil action by person injured; treble damages.

If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict. (1913, c. 41, s. 14; C.S., s. 2574; 1969, c. 833; 1977, c. 707.)

# North Dakota

## NORTH DAKOTA

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| ND | Yes<br>N.D.C.C.<br>§§ 51-12-01,<br>51-15-02 | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] In a class action context under North Dakota's consumer fraud statutes, individual reliance was not an issue as plaintiffs' claims are based primarily on defendants' uniform failure to disclose material facts to members of the proposed class (*i.e.*, no reasonable person would have purchased or renewed the insurance policies at issue had the alleged facts been known, and consequently reliance may be inferred from the circumstances). Hanson v. Acceleration Life Insurance Co., 1999 WL 33282234 (D.N.D.).

NORTH DAKOTA CENTURY CODE
TITLE 51. SALES AND EXCHANGES
CHAPTER 51-12. FALSE ADVERTISING.

**→ 51-12-01 False and misleading advertising prohibited.**

1. No person with intent to sell, dispose of, increase the consumption of, or induce the public to enter an obligation relative to or to acquire title or interest in any food, drug, medicine, patent and proprietary product, merchandise, security, service, performance, medical treatment, paint, varnish, oil, clothing, wearing apparel, machinery, or anything offered to the public may make, publish, disseminate, circulate, or place before the public, or directly or indirectly shall cause to be made, published, disseminated, circulated, or placed before the public in a newspaper, or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, tab, label, letter, or in any other way, an advertisement that contains any assertion, representation, or statement of fact, including the price thereof, which is untrue, deceptive, or misleading regarding such food, drug, medicine, patent and proprietary product, merchandise, security, service, performance, medical treatment, paint, varnish, oil, clothing, wearing apparel, machinery, or anything offered to the public.

* * *

NORTH DAKOTA CENTURY CODE
TITLE 51. SALES AND EXCHANGES
CHAPTER 51-15. UNLAWFUL SALES OR ADVERTISING PRACTICES.

**→ 51-15-02 Unlawful practices - Fraud - Misrepresentation.**

The act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice.

Only the Westlaw citation is currently available.

United States District Court, D. North Dakota, Southeastern Division.

Harold HANSON, Nellie McIlroy, and Estate of Gladys Schimke, and the class of similarly situated North Dakota purchasers of Nursing Home Benefit Policies, Plaintiffs,

v.

ACCELERATION LIFE INSURANCE COMPANY, Interstate Service Insurance Agency, Inc., Benefit Plans II, and Commonwealth Life Insurance Company, Defendants.

**No. CIV A3-97-152.**

March 16, 1999.

*MEMORANDUM AND ORDER*

WEBB.

*1 Before the Court are various motions dealing with the issues of fraud, the **filed rate doctrine**, class certification and the pleading of exemplary damages. The matters have been fully briefed and oral argument was heard on February 26, 1999. For the reasons set out below, the Court rules as follows:

1. Motion by Defendants for Summary Judgment on All Claims (Fraud), (doc. # 94), is hereby DENIED except with respect to plaintiffs' Claim No. 6, for breach of implied warranty, which is hereby DISMISSED;
2. Motion by Plaintiffs for Leave to Amend Complaint, (doc. # 77), to the extent not already ruled upon by the Honorable Karen K. Klein, Magistrate Judge, i.e., to add a claim for exemplary damages, is hereby GRANTED, the plaintiffs are DIRECTED to forward the Amended Complaint to the Clerk of Court, and the amended complaint is hereby authorized and ORDERED FILED;
3. Motion by Plaintiffs for Partial Summary Judgment on the **Filed Rate Doctrine**,(doc. # 82), is hereby GRANTED;
4. Motion by Defendants for Summary Judgment on the **Filed Rate Doctrine**, (doc. # 83), is hereby DENIED;
5. Motion by ACLI for Leave to File an Amicus Curiae Brief on the **Filed Rate Doctrine**, (doc. # 102), is hereby GRANTED and the lodged brief ORDERED FILED, however ACLI is DIRECTED to make no further filings in this case;
6. Motion by Defendants to Strike the Class Allegations in the Complaint, (doc. # 13), is hereby DENIED; and
7. Motion by Plaintiffs to Certify Class Action, (doc. # 36), is hereby GRANTED, and plaintiffs are hereby DIRECTED to present within ten days of receipt of this Order a revised class definition.

In light of the Court's rulings, and given the Court's concerns regarding the ability of the parties to be adequately prepared for the scheduled May 3, 1999, trial date, the parties are hereby DIRECTED to confer and present to the Court a case management plan within ten days following receipt of this Order.

## I. BACKGROUND

Harold Hanson, Nellie McIlroy and Gladys Schimke were senior citizens when they first purchased nursing home insurance policies [FN1] from defendant Acceleration Life Insurance Company (Acceleration) in 1987. Said policies were apparently developed, marketed and administered by Interstate Service Insurance Agency, Inc., (Interstate). These policies were "guaranteed renewable for life" upon payment of the premiums, and were allegedly sold as "level premium policies."

FN1. The "policies" referred to throughout this memorandum are Acceleration Life Insurance Company-Nursing Care Benefit Policies forms 520, 521 and 522. They are also referred to as "long term care" policies as denominated by the applicable North Dakota statutes.

Commonwealth Life Insurance Company (Commonwealth) assumed all obligations and duties connected to Acceleration's nursing home policies. This was approved in North Dakota in 1990. Plaintiffs were notified that this was "good news" because of Commonwealth's "financial strength." Later, Commonwealth ceased selling these nursing home policies in North Dakota. Acceleration and Commonwealth eventually assumed all assets and liabilities of Interstate. Benefit Plans, a unit of Commonwealth, took over the administration of these policies.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*2 Although these policies were allegedly sold as "level premium policies," the premiums increased each year from 1989 to 1996. Plaintiffs allege that the increases were exorbitant and that policyholders were forced to pay or drop their coverage. Plaintiffs assert that defendants had a plan to defraud consumers and that it was the regular policy and practice of defendants to conceal certain material facts, e.g., the policies were initially underpriced for marketing advantages, the policies were poorly underwritten, the block was closed thus making large premium increases inevitable. It is further asserted that the defendants structured the increases to foster lapses. Plaintiffs allege actual and constructive fraud, consumer fraud, false advertising, misrepresentation and breach of implied warranty on behalf of the class of similarly situated North Dakota purchasers of Nursing Home Benefit Policies.

Plaintiffs initiated this action in state court and the cause was removed to federal court based on diversity jurisdiction. Defendants move for summary judgment asserting that plaintiffs' claims are precluded by the **filed rate doctrine**. Defendants also raise various defenses with respect to the merits of plaintiffs' claims. Plaintiffs move for class certification. Plaintiffs also move to amend the complaint to assert a claim for punitive damages.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is "material" if it might affect the outcome of a case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Churchill Bus. Credit, Inc. v. Pacific Mut. Door Co.,* 49 F.3d 1334, 1336 (8th Cir.1995).

The "basic inquiry" for purposes of summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." *Quick v. Donaldson Co., Inc.,* 90 F.3d 1372, 1376 (8th Cir.1996) (citing *Anderson,* 477 U.S. at 251-52). In making this inquiry, however, this Court will not "weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Id.* (citing *Anderson,* 477 U.S. at 249). Rather, this Court's function is to determine only whether a dispute is genuine, and "[i]f reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. *Id.* at 1377 (citing *Anderson,* 477 U.S. at 250). This determination is made by reading the record in the light most favorable to the non-moving party and drawing all "justifiable inferences" in the non-movant's favor. *Id.* (citing *Anderson,* 477 U.S. at 255); *Churchill,* 49 F.3d at 1336 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)).

*3 The moving party has the initial burden of demonstrating to the Court that there is no genuine issue as to any material fact. *Webb v. Lawrence County,* 144 F.3d 1131, 1134 (8th Cir.1998)(citing *Celotex Corp.,* 477 U.S. at 323). Once the moving party has met this burden, however, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings; rather, the non-movant must set forth specific facts showing that there is a general issue for trial. *Id.* (citing Fed.R.Civ.P. 56(e)).

## III. DISCUSSION

### A. FILED RATE DOCTRINE

Preliminarily, the Court acknowledges receipt of an amicus curiae brief lodged by the American Council of Life Insurance, (ACLI), and has read and considered the same. Although the Court is not convinced that it is obligated to allow the filing, no harm is done to plaintiffs by doing so. The motion by ACLI for leave to file an amicus curiae brief on the **filed rate doctrine** is hereby GRANTED, and the lodged brief ORDERED FILED. However, ACLI is DIRECTED to make no further filings in this case as the parties are capable of fully presenting the issues and ACLI participation is not necessary.

Defendants assert that plaintiffs' claims are precluded under the **filed rate doctrine** and that they are entitled to judgment as a matter of law. The Court does not agree. The Court concludes that the **filed rate doctrine** does not apply to the facts of this case and rejects the defense as a matter of law.

The question of whether the **filed rate doctrine** acts as an absolute bar to fraud based claims against insurers involving discussion of rate increases in the context of long term care insurance policies has not been previously determined under North Dakota law. "It is this court's duty in a diversity case not to formulate the legal mind of the state, but merely to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ascertain and apply it." *Simundson v. United Coastal Ins. Co.,* 951 F.Supp. 165, 167 (D.N.D.1997) (citations omitted). "Where neither the legislature nor the highest court in a state has addressed an issue, this court must determine what the highest state court would probably hold were it called upon to decide the issue." *Id.* (citations omitted). In making this determination, the Court "may consider relevant state precedent, analogous decisions, considered dicta, scholarly works and any other reliable data." *Anderson v. Nissan Motor Co., Ltd.,* 139 F.3d 599, 601-02 (8th Cir.1998) (citation omitted).

"Federal courts have applied the **filed rate doctrine** in a variety of contexts to bar recovery by those who claim injury by virtue of having paid a filed rate." *Taffet v. Southern Co.,* 967 F.2d 1483, 1488 (11th Cir.1992)(en banc) (citing *Keogh v. Chicago & Northwestern Ry.,* 260 U.S. 156 (1922)). In *Taffet,* utility customers brought a RICO action against the providers alleging that approval of rates was gained by fraud. 967 F.2d at 1486-87. The Eleventh Circuit *en banc* found that there was no legally cognizable injury by having paid a supposedly higher than reasonable rate. *Id.* at 1488. "[T]he **filed rate doctrine** recognizes that where a legislature has established a scheme for utility rate-making, the rights of the rate-payer in regard to the rate he pays are defined by that scheme." *Id.* at 1490 (discussing Supreme Court precedent). Upon examining the comprehensiveness of the rate setting schemes at issue, the court in *Taffet* concluded that the rate-payer had no right to pay other than the agency set rate, notwithstanding any allegations of fraud.

*4 The Eighth Circuit is in accord. In *H.J. Inc. v. Northwestern Bell Tel. Co.*, the court emphasized that "the focus for determining whether the **filed rate doctrine** applies is the impact the court's decision will have on agency procedures and rate determinations," not on underlying conduct such as fraud. 954 F.2d 485, 489 (8th Cir.1992)(discussing *Montana-Dakota Util. Co. v. Northwestern Pub. Servs. Co.,* 341 U.S. 246, 248-52 (1951); *Square D Co. v. Niagra Frontier Tariff Bureau, Inc.,* 476 U.S. 409, 415-23 (1986); *Keogh,* 260 U.S. at 159-65). The court distinguished cases involving situations where a plaintiff could show they had been fraudulently induced to enter contracts. *H.J. Inc.,* 954 F.2d at 490 (discussing *Gulf States Utils. Co. v. Alabama Power Co.,* 824 F.2d 1465, 1471-72 (5th Cir.1987)(noting that setting aside contracts because of fraud in the inducement would not interfere with agency rate-making authority), and *Nordlicht v. New York Tele. Co.,* 617 F.Supp. 220, 227-28 (S.D.N.Y.1985)(noting that the **filed rate doctrine** "is of no help to a defendant which fraudulently induces a plaintiff to pay a filed rate ... by fraud")).

To determine whether the plaintiffs here have alleged cognizable claims, or whether defendants have an absolute defense to plaintiffs' claims, this Court must "examine the rate-making *scheme*." *Taffet,* 967 F.2d at 1490 (emphasis added). The court in *Taffet* discussed several important factors including the elaborateness of the legislatively established administrative scheme, public participation in the rate making process, and the ability of the agency to provide a remedy. *Id.* at 1490-94. Unlike the regulatory schemes discussed in *Taffet,* North Dakota's regulation of long term care insurance is not comprehensive.

In North Dakota, there is no statutory language indicating that application of the **filed rate doctrine** is required; but there is statutory language inconsistent with its application, e.g., an insurer may make changes in premium rates in accordance with policy provisions. N.D. Cent.Code § 26.1-45-05.2 (1995). Further, there is a lack of statutory language requiring approval of rate increases. *See generally id.* Ch. 26.1-45. Further, the statutory scheme provides no mechanism for meaningful review of rates filed with the Insurance Commissioner or for public input in a rate determination, hearings or otherwise. *Id.* Simply put, the North Dakota Insurance Commissioner does not have the authority to establish long term care insurance policy rates. Defendants themselves have recognized this. *See* Letter from Dickinson to Foley of 8/28/97. The Court does not reach the conclusion as a matter of judicial estoppel, rather as one of good logic.

Further, the North Dakota Supreme Court has never applied the **filed rate doctrine** as a bar to a claim, although it has recognized the existence of the doctrine in the common carrier context. *See E.W. Wylie Corp. v. Menard, Inc.,* 523 N.W.2d 395, 398-99, 403 (N.D .1994)(discussing statutory **filed rate doctrine** and finding it inapplicable in contract carriage case). Defendants' arguments that the North Dakota Supreme Court would apply the **filed rate doctrine** in the present context of long term care insurance contracts are unpersuasive. This Court concludes that the North Dakota Supreme Court would not preclude the presentation of this case based on the **filed rate doctrine** defense.

*5 For the above discussed reasons, plaintiffs' motion for partial summary judgment on the **filed rate**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**doctrine** is hereby GRANTED, and defendants' motion for summary judgment on the **filed rate doctrine** is hereby DENIED.

B. ALL CLAIMS-FRAUD

Preliminarily, the Court finds that the plaintiffs' fraud based claims are not time-barred. Section 28-01-16 of the North Dakota Century Code provides that a fraud based claim "must be commenced within six years after the claim for relief has accrued," and the claim for relief in a fraud case is "not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." *See also Phoenix Assurance Co. v. Runck*, 366 N.W.2d 788, 791 (1985)("A fraud action is not barred by the passage of time until six years after discovery of the facts constituting the fraud."). Plaintiffs commenced the original state action against the defendants on or about October 27, 1997. *See* Notice of Removal (defense counsel states it was served on October 27, 1997), *compare* Original State Complaint (signed by plaintiffs' counsel October 21, 1997). If plaintiffs discovered the facts constituting the fraud before October 27, 1991, the cause of action would be barred by the statute of limitations. Plaintiffs have sufficiently alleged that facts constituting the fraud could not have been discovered by October 1991. For example, Mr. Hanson was not notified that the block of business was closed until February, 1996. Whether plaintiffs had sufficient knowledge under the discovery rule to trigger the limitation period is "ordinarily a fact question which is inappropriate for summary judgment." The Court is reluctant to dismiss these claims based on a statute of limitations defense, especially given the nature of the case, i.e., this is an omissions or failure to disclose case.

1. Actual Fraud

Defendants assert that plaintiffs cannot satisfy the elements of actual fraud and emphasize a lack of reliance. Plaintiffs disagree, highlight several examples of fraudulent representations and nondisclosures, and argue that reliance can be inferred from the circumstances.

In North Dakota, actual fraud is defined by statute, N.D. Cent.Code § 9-03-08, with which the parties are well familiar. "Fraud is never presumed, but must be proved by evidence that is clear and convincing." *Albrecht v. Walter*, 572 N.W.2d 809, 813 (N.D.1997)(citing *Kary v. Prudential Ins. Co.*, 541 N.W.2d 703, 705 (N.D.1996)). A key element of establishing fraud is reliance upon the false or misleading representations. *Kary*, 541 N.W.2d at 706. However, reliance, and inducement, may be inferred from the facts and circumstances surrounding a transaction. *Adams v. Little Missouri Minerals Ass'n*, 143 N.W.2d 659, 684 (N.D.1966). In *Adams*, the North Dakota Supreme Court noted that facts inferred from circumstances surrounding a transaction are often stronger and more satisfactory evidence of fraudulent inducement and reliance than direct testimony to the same effect. *Id.* at 683.

*6 In *Adams*, landowners contributed mineral rights to a corporation in exchange for stock not knowing that they would never have any opportunity to control the corporation. *Id.* Inferring inducement and reliance, the court concluded that since the landowners would not have exchanged their minerals for stock had the suppressed facts been given to them, the landowners were victims of fraud. *Id.* at 684. Here, if all of the alleged suppressed facts are accepted by a jury, (e.g., that the policies were experimental, that the policies were initially underpriced to gain market advantages, that the underwriting was faulty, that it was known that the rates would need to be drastically increased, that the block of business would be closed), it could be fairly concluded that the plaintiffs would not have purchased or renewed the long term care policies at issue from the defendants. It could reasonably be concluded that since pertinent and material facts were withheld, plaintiffs were victims of fraud.

Actual fraud is always a question of fact. *First State Bank of Buxton v. Thykeson*, 361 N.W.2d 613, 616 (N.D.1985)(quoting N.D. Cent.Code § 9-03-10). Whether or not there have been fraudulent representations or omission depends upon the facts of the case. *Gershman v. Engelstad*, 160 N.W.2d 80, 83 (N.D.1968). "Summary judgment cannot be granted merely because the court believes that the movant [may] prevail if the action is tried on the merits." *Thykeson*, 361 N.W.2d at 616 (citing Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2728). Reading the record in the light most favorable to the non-moving party and drawing all justifiable inferences in plaintiffs' favor, the Court finds a sufficient disagreement on genuine issues of material fact to require submission to a jury; it certainly is not so one sided that defendants must prevail as a matter of law. *See Quick*, 90 F.3d at 1376 (citations omitted). Thus, summary judgment is inappropriate on the actual fraud claim.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2. Constructive Fraud

Constructive fraud is defined by statute as any breach of duty which, without an actual fraudulent intent, gains an advantage to the person in fault by misleading another to his prejudice. N.D. Cent.Code 9-03-09. *See also Asleson v. West Branch Land Co.*, 311 N.W.2d 533 (N.D.1981)(discussing contours of constructive fraud claim). "Constructive fraud is based on a relationship between the parties which gives rise to a duty of disclosure." *Holcomb v. Zinke*, 365 N.W.2d 507, 511 (N.D.1985). Defendants assert that plaintiffs' constructive fraud claim fails because no fiduciary or confidential relationship existed between defendants and plaintiffs. While the duty of disclosure may arise from a fiduciary or other confidential relationship, which is not conspicuous in the present case, a duty of disclosure may also "arise from *other* circumstances." *Id.* (emphasis added)(imposing duty to disclose on seller of real estate as to condition of property being sold based on seller's superior position).

*7 Section 26.1-29-16 of the North Dakota Century Code imposes special duties upon parties to insurance contracts to communicate in good faith and to disclose facts material to the contract. This duty to disclose is obviously sufficient to create liability under the constructive fraud statute, and the Court so holds as a matter of law. *See Holcomb*, 365 N.W.2d at 511 ("whether or not a duty exists is a question of law"). As sufficient disagreement on genuine issues of material fact surround the constructive fraud claim, submission to a jury is required; summary judgment on the constructive fraud claim is inappropriate.

3. Consumer Fraud & False Advertising

The North Dakota Supreme Court has held that one injured by a violation of North Dakota's false advertising statutes (chapter 51-12, N.D. Cent.Code) may bring an action to recover damages. *Fargo Women's Health Org. v. FM Women's Help and Caring Connection*, 444 N.W.2d 683, 685 (N.D.1989). A private right of action is also apparent under North Dakota's consumer fraud statutes. N.D. Cent.Code § 51-15-09 (allowing private claims for relief for violations of the consumer fraud statutes); *see also State ex rel. Spaeth v. Eddy Furniture Co.*, 386 N.W.2d 901, 903 (N.D.1986)(noting that consumer protection statutes must be liberally construed). Furthermore, these claims are distinguishable from the claims of actual or constructive fraud, discussed above, because the alleged fraudulent conduct need only be proven by a preponderance of the evidence, as opposed to the clear and convincing standard otherwise required. *Eddy Furniture Co.*, 386 N.W.2d at 903 (adopting concept that consumer fraud is a cause of action separate and distinct from common law fraud). The Court concludes that the plaintiffs have sufficiently established that genuine issues of material fact exist precluding summary judgment on these fraud based claims, thus summary judgment is inappropriate.

4. Misrepresentation

The parties agree that negligent misrepresentation is a cognizable claim in North Dakota law under the provisions of section 9-03-08(2) of the North Dakota Century Code, the actual fraud statute. *Bourgois v. Montana-Dakota Util. Co.*, 466 N.W.2d 813, 817-18 (N.D.1991); *see also Cooperative Power Ass'n v. Westinghouse Elec. Corp.*, 60 F.3d 1336, 1342-43 (8th Cir.1995)(discussing negligent misrepresentation claim under North Dakota law). Further, the misrepresentation claim is distinguishable from a claim of actual or constructive fraud because intent to deceive is not a necessary element. *See Westinghouse*, 60 F.3d at 1342. The Court here notes that the negligent misrepresentation claim does have an "inducement to contract" requirement, *see id.*, and that it has been sufficiently pled by the plaintiffs. In light of the Court's conclusion that a sufficient genuine issue of material fact exists precluding summary judgment on the other fraud based claims, it follows that summary judgment is inappropriate on this claim as well.

5. Breach of Implied Warranty

*8 The implied warranty theory upon which plaintiffs rely in Claim No. 6 of the Amended Complaint applies to the sale of goods. The Uniform Commercial Code "does not apply to insurance contracts because insurance contracts are not for the sale of goods." *Nielsen v. United Servs. Auto. Ass'n*, 612 N.E.2d 526, 531 (Ill.App.Ct.1993)(agreeing that no implied warranty existed in context of sale of insurance)(citing *Elrad v. United Life and Accident Ins. Co.*, 624 F.Supp. 742, 744 (N.D.Ill.1985)(sale of life insurance is not the sale of goods under UCC)). *See also Bartley v. National Union Fire Ins. Co.*, 824 F.Supp. 624, 637 (N.D .Tex.1992) (declining to recognize novel implied warranty claim under UCC

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

because insurance contracts do not easily fit within definition of goods); *Mills v. Agrichemical Aviation, Inc.*, 250 N.W.2d 663, 672 (N.D.1977)(noting similarity between insurance and sale of services). Furthermore, if the UCC did apply in this context, any implied warranty claim here would be time-barred. *See* N.D. Cent .Code § 41-02-104 (1983 & Supp.1998)(providing for four year limitation period accruing when breach occurs regardless of complainant's lack of knowledge of breach). Thus, summary judgment in favor of the defendants is appropriate on plaintiffs' implied warranty claim.

6. Exemplary Damages

The Court concludes that plaintiffs have followed the proper procedure for the pleading of exemplary damages as required under North Dakota law. The plaintiffs' motion for leave to amend the complaint, to the extent not already ruled upon by the Honorable Karen K. Klein, Magistrate Judge, i.e., to add a claim for exemplary damages, is hereby GRANTED. The plaintiffs are directed to forward the amended complaint to the Clerk of Court, and the Amended Complaint is hereby ORDERED FILED.

## C. CLASS CERTIFICATION

### 1. Standards

The Court may only certify a class action if it satisfied, after a "rigorous analysis," that the prerequisites of Rule 23 are satisfied. *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *Bishop v. Committee on Professional Ethics*, 686 F.2d 1278, 1287 (8th Cir.1982). Nonetheless, the trial court does have broad discretion in determining whether a class action may be maintained. *Bishop*, 686 F.2d at 1287.

Federal Rule of Civil Procedure 23(a) sets out the following prerequisites to a class action: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." In addition, plaintiffs must show that the action is maintainable under Rule 23(b)(1), (2), or (3). *Amchem Products, Inc. v. Windsor*, 117 S.Ct. 2231, 2245 (1997). Rule 23(b)(3) "encompasses cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness." Fed.R.Civ.P. 23, Advisory Committee's Notes. The intent of Rule 23(b)(3) is the "vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.' " *Amchem*, 117 S.Ct. at 2246 (citation omitted). Further, class members may opt out under Rule 23(b)(3). *See* Fed.R.Civ.P. 23(c); *In re Federal Skywalk Cases*, 680 F.2d 1175, 1178 (8th Cir.1982).

*9 Certification under Rule 23(b)(3), which plaintiffs here seek, requires that the Court find "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23. Factors relevant to the inquiry include: "the interest of members of the class in individually controlling the prosecution ... of separate actions;" "the extent and nature of any litigation concerning the controversy already commenced by ... members of the class;" "the desirability or undesirability of concentrating the litigation of the clams in a particular forum;" and "the difficulties likely to be encountered in the management of a class action." *Id.*

### 2. Numerosity/Impracticality

The numerosity requirement of Rule 23(a)(1) requires an inquiry into whether the class is "so numerous that joinder of all members is impracticable." *Paxton v. Union National Bank*, 688 F.2d 552, 559 (8th Cir.1982). There is no arbitrary rule regarding the necessary size of class. *Id.* (citing *Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 54 (8th Cir.1977)). Relevant factors include the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the proposed class members. *Id.* at 559-60 (citing Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1762). The Court should determine whether impracticability exists based upon all the circumstances surrounding a case. *Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 55 (8th Cir.1977). Impracticable does not mean that joinder must be impossible, but it does require a showing that it would be extremely difficult or inconvenient to join

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

all members of the proposed class. Morgan v. United Parcel Service, 169 F.R.D. 349, 355 (E.D.Mo.1996).

Here, the named plaintiffs have demonstrated that the class may include up to approximately 2,000 members. The plaintiffs are not required to specify an exact number or prove the identity of each class member, but must only show a reasonable estimate of the number of class members. *See id.* Given the group's advanced age, with naturally increased health and other mental or physical concerns, the finite size of the individual claims, and the inconvenience of trying individual suits (not only to individual plaintiffs, but to the defendants and judicial system as well), the Court finds that joinder here is impracticable.

3. Commonality and Predominance of Common Questions

It is here noted that Rule 23(a)(2)'s commonality requirement is subsumed under the more stringent predominance requirement of Rule 23(b)(3). Amchem, 117 S.Ct. at 2243. The commonality requirement is satisfied when the common questions of law or fact "linking the class members is substantially related to the resolution of the litigation." *DeBoer v. Mellon Mortgage Co.*, 1171, 1174 (8th Cir.1995) (citing Paxton v. Union National Bank, 688 F.2d 552, 561 (8th Cir.1982)).

***10** Predominance is a test readily met in certain cases alleging consumer fraud. Amchem, 117 S.Ct. at 2250 (citing Advisory Committee's Notes). Where a common scheme of deceptive conduct is alleged, common question of law and fact will exist. Walco Investments, Inc. v. Thenen, 168 F.R.D. 315, 325 (S.D.Fla.1996)(citing Green v. Wolf Corp., 406 F.2d 291, 198 (2d Cir.1968)). This is so notwithstanding the need for separate determination of damages suffered by individuals within the class. Fed.R.Civ.P. 23, Advisory Committee's Notes.

An underlying allegation here is based on how the plaintiffs were treated *as a group*-i.e., the block of business to which they all belonged was closed and this fact, the events leading up to it, and its ramifications, were not disclosed. The contract language at issue is identical for each member of the proposed class, rate hikes were class wide, there is a singular state regulatory scheme involved, and defendants' defenses are asserted class-wide as well. The class action may not be the proper vehicle in certain fraud cases if there is significant variation in the representations made or in degrees of reliance by persons aggrieved. *See id.* However, that is not problematic here because, as addressed at length above, the plaintiffs' claims are based primarily on defendants' uniform failure to disclose to any and all members of the proposed class that which there was a duty to disclose, that the facts withheld were material in the sense that no reasonable person would have purchased or renewed the policies at issue had the alleged facts been known, and consequently reliance may be inferred from the circumstances. *See also cf.* Affiliated Ute Citizens v. United States, 406 U.S. 128, 153-54 (1972)(noting that where a claim involves primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery; "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision").

"Where the question of basic liability can be established readily by common issues, then it is apparent that the case is appropriate for class action." Gold Strike Stamp Co. v. Christensen, 436 F.2d 791, 796 (10th Cir.1970). Here, as in *Gold Strike Stamp*, the Court does not believe that the question of liability requires the "specific individualistic examination" proposed by the defendants. *See id.* That there may be individualized issues does not here outweigh the number, significance and predominance of the common questions of law and fact. The Court finds that the plaintiffs have met the commonality and predominance requirements.

4. Typicality

The typicality provision requires that plaintiffs show that other members of the proposed class have the same or similar grievances as the plaintiff. Alpern v. UtiliCorp United, Inc., 84 F.3d 1525, 1540 (8th Cir1996); Belles v. Schweiker, 720 F.2d 509, 515 (8th Cir.1983). The typicality requirement is "fairly easily met so long as other class members have claims similar to the named plaintiff." Alpern, 84 F.3d at 1540. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.* (citations omitted). A claim is typical if it challenges the same unlawful conduct affecting the named plaintiffs and the proposed class members. *Id.* (citation omitted).

***11** In the instant case, the Court finds that the named

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

plaintiffs have met the typicality requirement. Here, plaintiffs have alleged unlawful conduct by defendants similarly affecting them and the proposed class members. The named plaintiffs have asserted the same claims based upon the same legal theories on behalf of themselves as well as all of the proposed class members.

5. Adequacy of Representation

The Court must also confirm that the "representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The focus of Rule 23(a)(4) is whether the class representatives have common interests with the members of the class, and whether the class representatives will vigorously prosecute the interests of the class through qualified counsel. *Paxton,* 688 F.2d at 562-63. Class representatives must be part of the class and possess the same interest and suffer the same injury as the proposed class members. *Amchem,* 117 S.Ct. at 2236; *Bishop,* 686 F.2d at 1289. The first element, whether the class representatives have common interests with the members of the class, has been sufficiently addressed by the Court in its discussion of commonality and typicality-there are no antagonistic interests.

The Court also concludes that the class representatives will vigorously prosecute the interests of the class through qualified counsel. Defendants assert that the representative of Mrs. Schimke's estate has no personal knowledge regarding the issues in this lawsuit and thus is not an adequate class representative. Defendants further assert that Mrs. McIlroy, who suffers from dementia, is not an adequate class representative either. But, the class representatives need not be perfect or the best of all possible representatives, rather, they must act in the best interests of the class. *Dura Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 101 (S.D.N.Y.1981). *See also Umbriac v. American Snacks, Inc.,* 388 F.Supp. 265, 275 (E.D.Pa.1975)("It is in the nature of motion practice on class action determination issues that defendants, who naturally have no interest in the successful prosecution of the class suit against them, are called upon to interpose arguments in opposition to class determination motions verbally grounded upon a concern for the 'best' representation for the class, while the implicit, but nonetheless real objective of their vigorous legal assault is to insure 'no' representation for the class.")(cited in *Dura-Bilt* ). Further, it can be argued that the adequacy of representation depends more on the integrity, skill and industry of plaintiffs' counsel than on personal qualities of the named plaintiffs. *Dura-Bilt,* 89 F.R.D. at 101 n14.

Here, defendants do not challenge the competency or expertise of plaintiffs' counsel, and the Court notes that plaintiffs' counsel are experienced in class action litigation and have already demonstrated competent and vigorous representation in this case. Nonetheless, the implications of plaintiffs' old age and/or ill health on their ability to vigorously and competently prosecute a class action are of some concern to the Court. Despite the Court's earlier conclusion that in this case a jury may infer reliance from circumstances proven, the Court cannot dismiss the reliance defense as irrelevant or insignificant. The named plaintiffs' ability to testify and actively participate may become more important as trial approaches. This is not to say that, because there may be difficulties in this regard, plaintiffs should automatically be precluded from pursuing the class action. Plaintiffs' advanced ages and health concerns go to the very heart of this case and certainly should not act as a bar to the action. Should this litigation be drawn out any more, we would soon be without any "adequate" plaintiffs as defendants would have them defined.

***12** In any event, one representative is sufficient for the prosecution of a class action, and no objection has been raised as to Mr. Hanson as an adequate representative plaintiff. *See* Fed.R .Civ.P. 23(a)(providing "*[o]ne* or more members of a class may sue ... as representative")(emphasis added). The Court here certifies the three named plaintiffs as adequate representatives at this juncture; the issue may be revisited upon a proper showing of necessity, and the Court may need, at some future date, to take remedial measures such as substitution of a new representative. *See James v. Jones,* 148 F.R.D. 196, 202 (W.D.Ky.1993); *Moskowitz v. Lopp,* 128 F.R.D. 624, 635 (E.D.Penn.1989).

6. Superiority

Under Rule 23(b)(3), the class action must be superior to other available methods for the fair and efficient adjudication of the controversy. Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1779 (1986). As mentioned above, relevant factors include: "the interest of members of the class in individually controlling the prosecution ... of separate actions;" "the extent and nature of any litigation concerning the controversy already

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

commenced by ... members of the class;" "the desirability or undesirability of concentrating the litigation of the clams in a particular forum;" and "the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3). No single element is determinative, nor is the list exhaustive, and the Court has discretion to consider other factors when making the superiority determination. *Walco Investments, Inc. v. Thenen,* 168 F.R.D. 315, 337 (S.D.Fla.1996).

The class action device should achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness. Fed.R.Civ.P. 23, Advisory Committee's Notes. The Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternate available methods of adjudication." *Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 632 (3d Cir.1996); *see also* Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1779 (court should justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court). The economy consideration affects the time of judges and court personnel, as well as the parties.

A review of the (b)(3) factors indicates that a class action is the superior method of adjudicating this controversy. Initially, the Court is aware of no other actions filed by any of the individual class members. Thus, the interest of members of the class in individually controlling the prosecution of separate actions appears low. Further, the Court notes that it would be extremely costly, not to mention unnecessarily duplicative, for each proposed class member to try this action separately.

*13 The purposes behind class actions, "eliminating the possibility of repetitious litigation and providing small claimants with a means of obtaining redress for claims too small to justify individual litigation," *DeBoer,* 64 F.3d at 1175, are met here. *See also Amchem,* 117 S.Ct. at 2246 (Rule 23(b)(3) enables the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all"). The situation here is such that it may well be impossible for separate actions to proceed, i.e., the cost of doing so may exceed any recovery they might secure. Every class member is faced with the obstacle of having to establish the existence of the alleged fraud, whether it be actual, constructive, and/or fit the statutory strictures of consumer fraud or false advertising. This would not be a simple task for an individual. Although the potential individual recoveries here are not insignificant, the Court recognizes the considerable time, effort, and expense already invested by both parties and the Court related to discovery and pretrial motions. Certainly, the costs of pursuing these actions individually far outweigh any recovery any individual could hope to obtain. Certifying this class will prevent the duplication of effort and the possibility of inconsistent results.

Regarding the desirability of concentrating this action in this forum, the Court notes that this case has been actively litigated in this forum since its filing in 1997. In addition, given the nature of the class and the allegations, it can be safely presumed that most of the proposed class members, along with many of the witnesses, reside with the District of North Dakota.

Finally, the Court finds that there will be no major difficulties in the management of this case as a class action. There may be some minor difficulties, such as the reliance and individual recovery issues; but, these difficulties are nowhere near the magnitude of problems that will arise if this case were to be tried in several hundred separate trials. Thus, the Court finds that the existence of any individual issues will not make this case unmanageable as a class action.

The defendants propose no alternative, let alone preferable, method to litigate this controversy. Defendants do suggest that because treble damages and attorneys' fees are available under the consumer fraud statute, and punitive damages are available under the false advertising statute, there is sufficient incentive for proposed class members to pursue their claims individually. Mere feasibility of individual claims does not demonstrate that the method is preferable. Nor does the suggestion beget economies of time, effort and expense, and promote uniformity of result. The Court here suggests that the possibility of treble damages, attorneys' fees, and punitive damages would be an incentive for the defendants to keep plaintiffs' attorneys' fees in check, resolve the issue in one forum, and bind all proposed class members uniformly.

*14 Based on the above reasoning, the Court finds that a class action is the appropriate method for the action to proceed. The Court concludes that the superiority requirement is met in that the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

7. Conclusion and Definition of Class

For the reasons set forth above, the Court concludes that the prerequisites for class certification under Rule 23(a) and (b)(3) are satisfied. Plaintiffs' motion for class certification is GRANTED, and defendants' motion to strike the class allegations is DENIED. Nonetheless, the Court agrees that, as a ministerial matter, a more precise definition of the class than that which appears at paragraph 53 of the Amended Complaint should be drafted and proposed by the plaintiffs. The definition should be limited to North Dakota purchasers of specifically identified policies within a specific time-frame. The plaintiffs are hereby DIRECTED to present within ten days of receipt of this Order such class definition for the Court's acceptance or rejection.

IT IS SO ORDERED.

D.N.D.,1999.
Hanson v. Acceleration Life Ins. Co.
Not Reported in F.Supp.2d, 1999 WL 33283345 (D.N.D.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.