# Exhibit B

## Analytical Tables of State UDAP Laws

## Part III

# Ohio

## OHIO

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| OH | Yes<br>Ohio Rev. Code<br>§1345.02; 4165.02 | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] See, e.g. Delahunt v. Cytodyne Technologies, 241 F.Supp. 2d 827 (S.D. Ohio 2003).

BALDWIN'S OHIO REVISED CODE ANNOTATED
TITLE XIII. COMMERCIAL TRANSACTIONS
CHAPTER 1345. CONSUMER SALES PRACTICES
UNFAIR, DECEPTIVE, OR UNCONSCIONABLE ACTS OR PRACTICES

**→1345.02 Unfair or deceptive acts or practices**

(A) No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

(B) Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:

(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;

(2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;

* * *

BALDWIN'S OHIO REVISED CODE ANNOTATED
TITLE XLI. LABOR AND INDUSTRY
CHAPTER 4165. DECEPTIVE TRADE PRACTICES

**⇒4165.02 Deceptive trade practices**

(A) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:

* * *

(7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

* * *

(9) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

* * *

# Oklahoma

## OKLAHOMA

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| OK | Yes<br>Okla. Stat.<br>Ann. tit. 15, §752 (13) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] Okla. Stat. Ann. tit. 15,§ 752(13). "Deceptive trade practice" includes "omission . . . that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person."

OKLAHOMA STATUTES ANNOTATED
TITLE 15. CONTRACTS
CHAPTER 20. **CONSUMER PROTECTION**
CONSUMER PROTECTION ACT

### → § 752. Definitions

As used in the Oklahoma Consumer Protection Act:

* * *

13. "Deceptive trade practice" means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral;

14. "Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers;

* * *

# Oregon

## OREGON

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| OR | Yes<br>Or. Rev. Stat. §646.608 (1) (e), (g), (t), (u);<br>§ 646.608(2) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] Or. Rev. Stat. § 646.608(2). An unlawful trade practice embraces any manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact.

West's Oregon Revised Statutes Annotated Currentness
Title 50. Trade Regulations and Practices
Chapter 646. Trade Practices and Antitrust Regulation (Refs & Annos)
Unlawful Trade Practices (Refs & Annos)

**→646.608. Attorney General's rules; unlawful business; trade practices; proof**

(1) A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person does any of the following:

* * *

(e) Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that they do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have.

* * *

(g) Represents that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if they are of another.

* * *

(t) Concurrent with tender or delivery of any real estate, goods or services fails to disclose any known material defect or material nonconformity.

(u) Engages in any other unfair or deceptive conduct in trade or commerce.

* * *

(3) In order to prevail in an action or suit under ORS 646.605 to 646.652, a prosecuting attorney need not prove competition between the parties or actual confusion or misunderstanding.

# Pennsylvania

## PENNSYLVANIA

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| PA | Yes<br>73 Pa. Stat. Ann. §201-2(4) (xxi) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] Mertz v. Donzi Marine, Inc. , 2007 U.S. Dist Lexis 15708(WDPA2007; Commonwealth v. Manson, 903 A2d 69 (Pa.CommwCT.2006).

# PENNSYLVANIA STATUTE

Purdon's Pennsylvania Statutes and Consolidated Statutes Annotated Currentness
Purdon's Pennsylvania Statutes Annotated
Title 73. Trade and Commerce (Refs & Annos)
Chapter 4. Fair Trade, and Business Practices (Refs & Annos)
Unfair Competition, Acts or Practices (Refs & Annos)

**§ 201-1. Short title**

This act shall be known and may be cited as the "Unfair Trade Practices and Consumer Protection Law."

**§ 201-2. Definitions**

As used in this act.

***

(4) **"Unfair methods of competition"** and **"unfair or deceptive acts or practices"** mean any one or more of the following:

***

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

***

(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

***

(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

***

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

**§ 201-3. Unlawful acts or practices; exclusions**

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section

2 of this act and regulations promulgated under section 3.1 of this act are hereby declared unlawful. The provisions of this act shall not apply to any owner, agent or employe of any radio or television station, or to any owner, publisher, printer, agent or employe of a newspaper or other publication, periodical or circular, who, in good faith and without knowledge of the falsity or deceptive character thereof, publishes, causes to be published or takes part in the publication of such advertisement.

**→§ 201-9.2. Private actions**

(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

(b) Any permanent injunction, judgment or order of the court made under section 4 of this act shall be prima facie evidence in an action brought under section 9.2 of this act that the defendant used or employed acts or practices declared unlawful by section 3 of this act.

LexisNexis® Total Research System

Switch Client | Preferences | Sign Out | Help

My Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector | History

Service: Get by LEXSEE®
Citation: 903 a 2d 69

*903 A.2d 69, *; 2006 Pa. Commw. LEXIS 383, ***

Commonwealth of Pennsylvania, Acting by Attorney General Thomas W. Corbett, Jr. v. Lawrence C. Manson, Jr., individually and as Chief Executive Officer, Unclaimed Freight Company, LLC and Unclaimed Freight Company, LLC; Appeal of Lawrence C. Manson, Jr.

No. 1710 C.D. 2005

COMMONWEALTH COURT OF PENNSYLVANIA

903 A.2d 69; 2006 Pa. Commw. LEXIS 383

June 5, 2006, Argued
July 10, 2006, Decided
July 10, 2006, Filed

**PRIOR HISTORY: [**1]** Appealed from No. 2002-8399. Common Pleas Court of the County of Northampton. Judge GIORDANO.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Appellant chief executive officer (CEO) of a furniture company challenged an order of the Court of Common Pleas of Northampton County (Pennsylvania), entered in an action filed by appellee Commonwealth of Pennsylvania, that denied his motion for post-trial relief after the trial court found that he violated 73 Pa. Stat. Ann. § 201-2(4)(xxi) of the Unfair Trade Practices and Consumer Protection Law (Law), 73 Pa. Stat. Ann. §§ 201-1 to 201.9.3.

**OVERVIEW:** The Commonwealth, acting through the Pennsylvania Attorney General, alleged that the company engaged in deceptive conduct by taking orders that it knew it could not fulfill and that the CEO knew of and participated in the conduct. A default judgment was entered against the company. At trial against the CEO, the trial court permitted undisclosed consumer witnesses to testify after granting a continuance to permit the CEO to depose them. The appellate court affirmed the trial court order. The trial court properly used the personal participation theory in finding the CEO liable because he was aware of the company's wrongful practices and controlled its day-to-day operations. A negligence standard was appropriate because the test was whether conduct was deceptive to an ordinary consumer, a lesser standard than fraudulent conduct. The testimony of the company's former officers and employees provided sufficient evidence to support findings that the company and CEO knew or should have known that the orders could not be fulfilled. The undisclosed witnesses were properly allowed to testify because the continuance cured any prejudice, the trial was not disrupted, and there was no bad faith.

**OUTCOME:** The appellate court affirmed the trial court order.

**CORE TERMS:** consumer, deceptive, merchandise, customer, xxi, consumer protection, pre-trial, conf, fraudulent, corporate officer, participated, cooperated, undisclosed, inventory, ordinary consumer, deliver, unfair, refund, cure, evidence to support, furniture, discovery, local rule, personally liable, misrepresentation, misunderstanding, post-trial, defrauded, day-to-day, manifestly

**LEXISNEXIS® HEADNOTES** ⊟ Hide

Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices > State Regulation
Antitrust & Trade Law > Trade Practices & Unfair Competition > State Regulation > Coverage
Torts > Business Torts > Unfair Business Practices > General Overview

*HN1* 73 Pa. Stat. Ann. § 201-2(4)(xxi), or § 2(4)(xxi) of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. §§ 201-1 to 201.9.3, prohibits fraudulent or deceptive conduct that is likely to create confusion or misunderstanding. More Like This Headnote | *Shepardize:* Restrict By Headnote

Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices > State Regulation
Antitrust & Trade Law > Trade Practices & Unfair Competition > State Regulation > Coverage
Torts > Business Torts > Unfair Business Practices > Elements

*HN2* Section 3 of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Law), 73 Pa. Stat. §§ 201-1 to 201.9.3, declares unlawful unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by § 2(4)(i) through (xxi) of the Law. 73 Pa. Stat. Ann. § 201-3. Section 2(4)(xxi) of the Law defines unfair or deceptive acts or practices to include any fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. 73 Pa. Stat. Ann. § 201-2(4)(xxi). More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Judgments > Relief From Judgment > General Overview
Civil Procedure > Appeals > Standards of Review > Abuse of Discretion
Civil Procedure > Appeals > Standards of Review > Fact & Law Issues

HN3 When reviewing a trial court's denial of post-trial motions, the scope of review of the Commonwealth Court of Pennsylvania is limited to determining whether the trial court abused its discretion or committed an error of law. More Like This Headnote

Business & Corporate Law > Corporations > Directors & Officers > Management Duties & Liabilities > Causes of Action > General Overview
Business & Corporate Law > Corporations > Directors & Officers > Management Duties & Liabilities > Causes of Action > Misfeasance & Nonfeasance
Torts > Vicarious Liability > General Overview

HN4 Pennsylvania law recognizes the participation theory as a basis for the liability of corporate officers. The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort unless he specifically directed the particular act to be done or participated or cooperated therein. Liability under this theory attaches only where the corporate officer is an actor who participates in the wrongful acts; thus, corporate officers may be held liable for misfeasance. However, corporate officers may not be held liable for mere nonfeasance. More Like This Headnote | *Shepardize:* Restrict By Headnote

Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices > State Regulation
Antitrust & Trade Law > Trade Practices & Unfair Competition > State Regulation > Coverage
Torts > Business Torts > Unfair Business Practices > Elements

HN5 The 1996 amendments revise 73 Pa. Stat. Ann. § 201-2(4)(xxi), § 2 of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Law), 73 Pa. Stat. §§ 201-1 to 201.9.3, to prohibit fraudulent or deceptive conduct. More Like This Headnote | *Shepardize:* Restrict By Headnote

Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices > State Regulation
Antitrust & Trade Law > Trade Practices & Unfair Competition > State Regulation > Coverage
Governments > Legislation > Interpretation
Torts > Business Torts > Fraud & Misrepresentation > Actual Fraud > Elements
Torts > Business Torts > Unfair Business Practices > Elements

HN6 Even after the 1996 amendments to 73 Pa. Stat. Ann. § 201-2(4)(xxi), § 2(4)(xxi) of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Law), 73 Pa. Stat. §§ 201-1 to 201.9.3, became effective, the Pennsylvania Superior Court continues to interpret 73 Pa. Stat. Ann. § 201-2(4)(xxi), § 2(4)(xxi) of the Law, to require that a plaintiff establish the elements of common law fraud to prove a claim. However, the Commonwealth Court of Pennsylvania rejects that interpretation because (1) the Law is to be liberally construed to effectuate the legislative goal of consumer protection; (2) the legislature's addition of the words "or deceptive" signals a less restrictive interpretation; and (3) maintaining the pre-1996 requirement would render the words "or deceptive conduct" redundant and superfluous, contrary to the rules of statutory construction. The question, then, is not whether a company or corporate officer engaged in conduct that was intended to deceive consumers. Rather, the question is whether the company or corporate officer engaged in conduct that might be deceptive to the ordinary consumer. More Like This Headnote | *Shepardize:* Restrict By Headnote

Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices > State Regulation
Antitrust & Trade Law > Trade Practices & Unfair Competition > State Regulation > Coverage
Torts > Business Torts > Fraud & Misrepresentation > Actual Fraud > General Overview
Torts > Business Torts > Unfair Business Practices > Elements

HN7 The test for deceptive conduct under 73 Pa. Stat. Ann. § 201-2(4)(xxi), § 2(4)(xxi) of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Law), 73 Pa. Stat. §§ 201-1 to 201.9.3, is whether the conduct might be deceptive to the ordinary consumer, a lesser offense than fraudulent conduct. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Discovery > Disclosures > Mandatory Disclosures
Civil Procedure > Pretrial Matters > General Overview
Evidence > Testimony > Presentation of Evidence

HN8 Pa. R. Civ. P. 212.2(a)(3) requires that a pre-trial statement must contain a list of the names and addresses of all persons who may be called as witnesses by the party filing the statement, classifying them as liability or damage witnesses. Pa. R. Civ. P. 212.2(c) allows the trial judge to preclude or limit the testimony of any witness whose identity is not disclosed in the pre-trial statement if the trial judge determines that unfair prejudice will occur as a result. More Like This Headnote

Governments > Courts > Rule Application & Interpretation

HN9 The approach of the Commonwealth Court of Pennsylvania to the enforcement of procedural rules, whether local or state-wide, is dictated by the facts and circumstances in each individual case. To analyze otherwise would exalt procedural rules, which were created for efficiency and fairness, to a status far beyond their inherent power. It has been the Court's policy to overlook procedural errors when a party has substantially complied with the requirements of the rule and no prejudice would result. Procedural rules are not ends in themselves, but means whereby justice, as expressed in legal principles, is administered. They are not to be exalted to the status of substantive objectives. More Like This Headnote

Governments > Courts > Rule Application & Interpretation

HN10 Local procedural rules cannot be construed so as to be inconsistent with the prevailing state-wide rules. More Like This Headnote

Civil Procedure > Discovery > Disclosures > Mandatory Disclosures

Civil Procedure > Pretrial Matters > General Overview

Evidence > Testimony > Presentation of Evidence

HN11 In determining whether to allow the testimony of a witness who has not been included in a pre-trial memorandum, courts may consider (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against called unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; and (4) bad faith or willfulness in failing to comply with the rule. More Like This Headnote

Civil Procedure > Discovery > Disclosures > Mandatory Disclosures

Civil Procedure > Pretrial Matters > General Overview

Evidence > Testimony > Presentation of Evidence

HN12 Northampton County, Pa., C.P. Ct. R. Civ. P. N212B(c)(5) provides an exception to Pa. R. Civ. P. 212.2(a)(3), (c), which limits parties to witnesses disclosed in the pre-trial statement, in cases where it would be manifestly unjust to limit a party's presentation of evidence. More Like This Headnote

**COUNSEL:** Melissa M. Riahei, Chicago, IL, for appellant.

Howard G. Hopkirk, Harrisburg, for appellees.

**JUDGES:** BEFORE: HONORABLE BERNARD L. McGINLEY, Judge, HONORABLE DORIS A. SMITH-RIBNER, Judge, HONORABLE ROCHELLE S. FRIEDMAN, Judge.

**OPINION BY:** ROCHELLE S. FRIEDMAN

**OPINION**

**[*71]** OPINION BY JUDGE FRIEDMAN

Lawrence C. Manson, Jr., (Manson) appeals from the July 20, 2005, order of the Court of Common Pleas of Northampton County (trial court), which denied the Motion for Post-Trial Relief filed by Manson after the trial court found that he had violated the Unfair Trade Practices and Consumer Protection Law (Consumer Protection Law) [1] by engaging in deceptive conduct. We affirm.

**FOOTNOTES**

1 Act of December 17, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201-1 to 201.9.3.

Manson was the Chief Executive Officer (CEO) and lead investor of Unclaimed Freight Company, LLC, (Unclaimed Freight) from March **[**2]** 2001 to June 2002. (Findings of Fact, No. 2.) Unclaimed Freight was a company engaging in trade and commerce within the Commonwealth of Pennsylvania through the sale of furniture at several store locations. (Findings of Fact, No. 1.)

Unclaimed Freight took orders for merchandise and received payments from customers when Unclaimed Freight knew or should have known that the merchandise would not be delivered to those customers. (Findings of Fact, No. 3.) Unclaimed Freight provided neither furniture nor refunds to several customers. (Findings of Fact, No. 4.) When Unclaimed Freight took such actions, Manson had authority to control the company and, in fact, did control the company's day-to-day operations. (Findings of Fact, No. 5.) Thus, because Manson was aware that the company was taking orders and receiving funds for merchandise that it knew or should have known would not or could not be delivered to the customers, Manson participated in, took part in and cooperated in such conduct. (Findings of Fact, Nos. 6-8.)

On November 25, 2002, the Commonwealth of Pennsylvania (the Commonwealth), acting through the Attorney General, **[*72]** filed a complaint against Unclaimed Freight and Manson. In **[**3]** its complaint, the Commonwealth averred, *inter alia*, that the defendants violated HN1 section 2(4)(xxi) of the Consumer Protection Law, which prohibits fraudulent or deceptive conduct that is likely to create confusion or misunderstanding. [2]

**FOOTNOTES**

2 HN2 Section 3 of the Consumer Protection Law declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2 of this act." 73 P.S. § 201-3. Section 2(4)(xxi) of the Consumer Protection Law defines "unfair or deceptive acts or practices" to include any "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi).

The Commonwealth was unable to serve a copy of the complaint on Manson, who resided in Chicago, Illinois, until February 18, 2004. (O.R., Item 7, Certificate of Service.) Manson then filed an answer with new matter, and the Commonwealth filed a reply **[**4]** to the new matter. On October 20, 2004, the trial court entered default judgment against Unclaimed Freight, and the Commonwealth proceeded against Manson. [3]

**FOOTNOTES**

3 The parties conducted discovery until November 1, 2004. On December 3, 2004, the Commonwealth filed its pre-trial memorandum, and, on December 6, 2004, Manson filed his pre-trial memorandum. (O.R., trial court docket.)

At a pre-trial conference on December 8, 2004, the Commonwealth stated that it was seeking restitution for more than 400 consumers and was planning to either submit a stipulation as to the amount of damages or present testimony by the agent who reviewed the consumer complaints. (12/8/04 conf., N.T. at 10.) The trial court stated that an agent's testimony would be hearsay. The Commonwealth then offered to provide consumer affidavits. However, the trial court stated that the Commonwealth could not prove its case with affidavits. (12/8/04 conf., N.T. at 10-11.) The Commonwealth then suggested bifurcating the case and determining liability **[**5]** before damages, but Manson opposed bifurcation. (12/8/04 conf., N.T. at 11-13.) On February 7, 2005, the Commonwealth filed a second pre-trial memorandum, adding as witnesses the names of forty-three consumers who filed complaints. (O.R., Item 29.)

At a pre-trial conference on February 9, 2005, the Commonwealth formally moved to bifurcate the case. The Commonwealth stated that, to establish liability, it would be calling as witnesses a representative number of the consumers who filed complaints. (2/9/05 conf., N.T. at 6-7.) The Commonwealth stated that it sent affidavits to more than 400 consumers, that it gave a copy of the affidavit to opposing counsel and that twenty-three consumers had returned their affidavits, showing damages of $ 19,772.51. (2/9/05 conf., N.T. at 7.) Manson objected to the affidavits as hearsay and asserted that, because he was being held personally liable for each violation, he had the right to cross-examine each consumer. (2/9/05 conf., N.T. at 8.) The trial court denied the motion to bifurcate and ruled that the Commonwealth could present ten witnesses on both liability and damages, after which the trial judge would decide whether to grant a continuance **[**6]** so that the Commonwealth could present additional witnesses and establish further damages. (2/9/05 conf., N.T. at 17-18.)

On May 2, 2005, the first day of trial, the Commonwealth called ten consumer witnesses and then sought to present as witnesses fifty other consumers who were attending the trial but who had not been identified as witnesses in the Commonwealth's **[*73]** pre-trial memorandum. Manson sought to preclude their testimony under a local rule which limits parties to witnesses divulged prior to trial, unless the opposing counsel waives the restriction or the court finds the limitation to be manifestly unjust. (N.T. 5/2/05 at 115-16.) The trial court allowed one of the undisclosed consumer witnesses to testify but, afterward, continued the trial to allow Manson's attorney an opportunity to "do whatever [discovery] she's allowed to do" under the Pennsylvania Rules of Civil Procedure with respect to the others. (N.T. 5/2/05 at 131-32.) The trial judge stated, "I'm available to help with discovery disputes." (N.T. 5/2/05 at 133.)

On May 3, 2005, the Commonwealth reported to the trial judge that both parties had spoken to the undisclosed consumer witnesses and that the Commonwealth **[**7]** was ready to present its first witness. Manson objected, contending that he did not have enough time to conduct a meaningful interview with the undisclosed consumers. However, the trial judge stated, "I did not put any limitation [on the time]." (N.T. 5/3/05 at 7-8.) The trial judge then allowed the Commonwealth to present the undisclosed consumer witnesses.

After the trial, the trial court concluded from the evidence presented that Manson violated section 2(4)(xxi) by engaging in deceptive conduct likely to create confusion or misunderstanding. The trial court issued an order permanently enjoining Manson from further violations and directing him to pay $ 20,178.88 in restitution and $ 20,000.00 as a civil penalty. Manson filed a Motion for Post-Trial Relief, which the trial court denied. Manson now appeals to this court. [4]

**FOOTNOTES**

4 *HN3*When reviewing the trial court's denial of post-trial motions, our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *Ford v. Philadelphia Housing Authority*, 848 A.2d 1038 (Pa. Cmwlth. 2004), *appeal dismissed*, 583 Pa. 439, 879 A.2d 162 (2005).

**[**8] I. Personal Participation Theory**

Manson argues that the trial court erred in using a "personal participation" theory to conclude that Manson violated section 2(4)(xxi). We disagree.

*HN4*Pennsylvania law recognizes the participation theory as a basis for liability. *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 470 A.2d 86 (1983).

> The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort ... unless he specifically directed the particular act to be done or participated, or cooperated therein.

*Id.* at 621-22, 470 A.2d at 90. Liability under this theory attaches only where the corporate officer is an actor who participates in the wrongful acts; thus, corporate officers may be held liable for misfeasance. *Id.* However, corporate officers may not be held liable for mere nonfeasance. *Id.*

Here, Unclaimed Freight took orders and received funds from customers **[**9]** for merchandise when it knew or should have known that the merchandise would not be delivered to those customers. Manson was aware of this practice, controlled the company's day-to-day operations and the company's deceptive practice continued under his control. Thus, Manson participated in or cooperated in the wrongful act.

**II. Deceptive Conduct**

Manson next argues that the trial court erred in using a "should have [*74] known" negligence standard, instead of the standard for fraud, to conclude that Manson engaged in deceptive conduct in violation of section 2(4)(xxi). We disagree.

Prior to the 1996 amendments to the Consumer Protection Law, section 2(4)(xxi) merely prohibited "fraudulent conduct," and a plaintiff had to establish the elements of common law fraud to prove a claim. Commonwealth v. Percudani, 825 A.2d 743 (Pa. Cmwlth. 2003), *amended*, 851 A.2d 987 (2004). HN5The 1996 amendments revised the provision to prohibit "fraudulent or deceptive conduct." *Id.*

HN6Even after the 1996 amendments became effective, our superior court has continued to interpret section 2(4)(xxi) to require that a plaintiff establish the elements of common law fraud **[**10]** to prove a claim. *Id.* However, this court has rejected that interpretation because: (1) the statute is to be liberally construed to effectuate the legislative goal of consumer protection; (2) the legislature's addition of the words "or deceptive" signals a less restrictive interpretation; and (3) maintaining the pre-1996 requirement would render the words "or deceptive conduct" redundant and superfluous, contrary to the rules of statutory construction. *Id.*

The question, then, is not whether a company or corporate officer engaged in conduct that was intended to deceive consumers. [5] Rather, the question is whether the company or corporate officer engaged in conduct that might be "deceptive to the ordinary consumer." [6] *Id.* at 746.

**FOOTNOTES**

5 We note that to establish fraud, a plaintiff must prove: (1) the misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result. *Colaizzi v. Beck*, 2006 PA Super 41, 895 A.2d 36 (Pa. Super. 2006). Thus, if Manson misrepresented that he could deliver the merchandise to induce a payment, ***knowing*** that he could not deliver the merchandise, received customer payments made in justifiable reliance on the misrepresentation and failed to make a refund, Manson defrauded the customers. **[**11]**

6 In *Percudani*, a company added to its consumer contracts a paragraph stating that the contract could not be cancelled once the consumer's legal right of rescission had expired and that the consumer would be liable for liquidated damages for any subsequent breach or termination of the contract. This court stated that the language might be "deceptive to the ordinary consumer" because it could be interpreted to mean that the consumer has waived its right to assert legal defenses in a judicial action. *Percudani*, 825 A.2d at 746.

Here, the trial court found that Manson participated or cooperated in Unclaimed Freight's taking of orders and funds from customers when Unclaimed Freight knew ***or should have known*** that the merchandise would not be delivered to those customers. Assuming that Manson did not know, but should have known, that the customers would not receive their merchandise, ***the consumers still were deceived by the conduct in which Manson participated or cooperated***. Because this court has held that HN7the test for deceptive conduct is whether the conduct **[**12]** might be deceptive to the ordinary consumer, a lesser offense than fraudulent conduct, the trial court did not err in concluding that Manson engaged in deceptive conduct under section 2(4)(xxi) of the Consumer Protection Law. [7]

**FOOTNOTES**

7 We note that the Commonwealth has ***not*** charged Manson with theft by deception. Under section 3922 of the Crimes Code, a person is guilty of theft by deception if he or she intentionally obtains or withholds the property of another by ***intentionally*** creating a false impression. 18 Pa. C.S. § 3922.

Moreover, the action brought here does not involve the tort of deceit, which consists of four elements: (1) a false representation of fact; (2) made with ***knowledge*** of its falsity; (3) with the ***intention*** that the plaintiff act on it in a manner that results in damage to him; and (4) the plaintiff does act upon the false statement and sustain damage. Black's Law Dictionary 435 (8th ed. 2004).

Finally, in his brief, Manson makes arguments based on the economic loss doctrine in tort law. However, as indicated, tort law principles do not control here. Rather, this case involves the statutory construction of the words "deceptive conduct" in section 2(4)(xxi) of the Consumer Protection Law.

**[**13] [*75] III. Evidence**

Manson argues that the record lacks competent evidence to support the trial court's findings that: (1) Unclaimed Freight knew or should have known that the furniture ordered by its customers would not be delivered; and (2) Manson personally engaged in deceptive conduct.

In making these findings, the trial court relied upon the testimony of Robert Cuvo, a Director of Store Operations and Security; Andrew Eskow, a former CEO; and Raymond Petrilla, a Chief Financial Officer. [8]

**FOOTNOTES**

8 In his brief, Manson does not discuss Cuvo's or Eskow's testimony at all. Manson mentions testimony by Petrilla that Manson never engaged in any conduct that could be characterized as fraudulent or deceptive. (Manson's brief at 23.) However, this is the ultimate question before this court. Manson also refers to testimony by Petrilla that Unclaimed Freight

entered into an agreement with National Sales Consultants to provide the credit support and merchandise needed to fulfill all outstanding orders. (Manson's brief at 22.) Although such testimony might support a finding that there was no reason for Unclaimed Freight to believe that it could not deliver the merchandise, the question here is whether the record contains evidence to support the trial court's contrary finding.

**[**14]** Eskow testified that: (1) he worked at Unclaimed Freight from 1975 to March of 2001, (5/3/05 hearing, N.T. at 180); (2) Manson's firm bought the company in September 1999, (5/3/05 hearing, N.T. at 180); (3) Manson was a "very hands-on owner," was "involved in certainly all of the important decisions," and, as time went on, "really got involved much heavier and practically in every decision that was made for the company," "almost micro managing the business right down to the smallest detail," (5/3/05 hearing, N.T. at 182-83); (4) from January to March of 2001, Manson was at the store half the time, (5/3/05 hearing, N.T. at 181); and (5) "there were numerous, numerous, numerous conference calls, I'm not going to say on a daily basis but pretty close to it," and during the conference calls, Manson was apprised of the situation with the inventory at the stores and the company's sales practices, (5/3/05 hearing, N.T. at 185-86).

Cuvo testified that: (1) he worked at Unclaimed Freight from January of 2001 to February of 2002, (5/3/05 hearing, N.T. at 190); (2) in February of 2002, he discussed the day-to-day operations with Manson, including inventory problems, (5/3/05 hearing, N.T. at **[**15]** 200); (3) it was common knowledge that there were problems with the inventory levels, i.e., there was not enough merchandise to fill the orders, (5/3/05 hearing, N.T. at 200); (4) "you couldn't go a day without it - every store manager calling ... the customer calls that were coming in, the warehouse manager complaining there was not merchandise," (5/3/05 hearing, N.T. at 200-01); (5) Manson gave a directive that, as a matter of policy, the company would not sell floor displays, (5/3/05 hearing, N.T. at 194); and (6) Manson was the final step in giving refunds to consumers, (5/3/05 hearing, N.T. at 195).

Petrilla testified that: (1) he became Controller of Unclaimed Freight in November of 2000 and CFO in 2002, (5/3/05 hearing, N.T. at 220); (2) in 2002, Manson **[*76]** and senior staff tried to resolve the inventory issues by attempting to restructure the company's financing with First Union National Bank and by entering into an agreement with National Sales Consultants to fill outstanding orders with replacement merchandise and re-stimulate sales by providing credit support and merchandise, (5/3/05 hearing, N.T. at 213-15); (3) initially, National Sales Consultants was very successful but, **[**16]** at the end of May 2002, they terminated the relationship, (5/3/05 hearing, N.T. at 215); (4) Manson and senior staff talked to other sales promotion firms without success, (5/3/05 hearing, N.T. at 215-16); (5) Unclaimed Freight failed as a business at the end of June of 2002 because financing for furniture companies was cut back and because the sales "volume just wasn't there," (5/3/05 hearing, N.T. at 216-17); and (6) Manson was involved in all aspects of the business, a micro manager, (5/3/05 hearing, N.T. at 218).

This testimony constitutes substantial evidence to support the finding that Unclaimed Freight knew or should have known that it could not deliver all of the merchandise ordered by its customers. The testimony indicating that Manson was informed about inventory problems and sales practices, that Manson directed the company not to sell display merchandise, that Manson was the final step in the refund process and that Manson was involved in all aspects of the business constitutes substantial evidence to support the finding that Manson engaged in conduct that was deceptive to the ordinary consumer.

**IV. Additional Consumer Witnesses**

Finally, Manson argues that the **[**17]** trial court abused its discretion by allowing consumer witnesses who had not been previously identified to testify at trial. We disagree.

*HN8* Pa. R.C.P. No. 212.2(a)(3) requires that a pre-trial statement contain "a list of the names and addresses of all persons who may be called as witnesses by the party filing the statement, classifying them as liability or damage witnesses." Pa. R.C.P. No. 212.2(c) allows the trial judge to preclude or limit the testimony of any witness whose identity is not disclosed in the pre-trial statement if the trial judge determines that unfair prejudice will occur as a result.

Our supreme court has stated:

> *HN9* This Court's approach to the enforcement of procedural rules, whether local or state-wide, is dictated by the facts and circumstances in each individual case. To analyze otherwise would exalt procedural rules, which were created for efficiency and fairness, to a status far beyond their inherent power. "It has been our policy to overlook ... procedural errors when a party has substantially complied with the requirements of the rule and no prejudice would result. 'Procedural rules are not ends **[**18]** in themselves, but means whereby justice, as expressed in legal principles, is administered. They are not to be exalted to the status of substantive objectives.'"
>
> Additionally, this Court has previously held that *HN10* local rules cannot be construed so as to be inconsistent with the prevailing state-wide rules.

*Feingold v. Southeastern Pennsylvania Transportation Authority*, 512 Pa. 567, 572, 517 A.2d 1270, 1272 (1986) (citations omitted). *HN11* In determining whether to allow the testimony of a witness who has not been included in a pre-trial memorandum, courts may consider: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which **[*77]** waiver of the rule against called unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; and (4) bad faith or willfulness in failing to comply with the rule. *Id.*

Considering the *Feingold* factors, there can be no dispute that Manson was, in fact, surprised on the day of trial by the appearance of as many as fifty undisclosed witnesses. However, the trial **[**19]** court was able to cure any prejudice by allowing Manson an opportunity to depose the individuals. [9] As to the extent that the waiver of the rule disrupted the orderly and efficient trial of the case, the trial in this case was continued for only one afternoon to allow Manson an opportunity to depose the consumer witnesses. Finally, with respect to bad faith, the trial court had instructed the Commonwealth to present ten

consumer witnesses and then request permission to present additional witnesses. That is precisely what the Commonwealth did here, inviting consumers to attend the trial in the event that the trial judge was inclined to hear their testimony. [10]

FOOTNOTES

9 Although Manson objected that he had insufficient time to cure the prejudice, the trial court stated that it had not limited the amount of time that Manson could spend with the witnesses. Because Manson did not move for a continuance to conduct further discovery, Manson cannot now complain that the trial court denied him an opportunity to fully cure the prejudice.

10 The trial court actually allowed the additional consumer witnesses to testify as to damages based on HN12 Northampton County local rule N212B(c)(5), which provides an exception to the above rule in cases where it would be manifestly unjust to limit a party's presentation of evidence. We agree with the trial court that, because Manson was not unfairly prejudiced, it would have been manifestly unjust to preclude additional consumer witnesses from testifying.

[**20] Accordingly, we affirm.

ROCHELLE S. FRIEDMAN, Judge

ORDER

AND NOW, this 10th day of July, 2006, the order of the Court of Common Pleas of Northampton County, dated July 20, 2005, is hereby affirmed.

ROCHELLE S. FRIEDMAN, Judge

Service: Get by LEXSEE®
Citation: 903 a 2d 69
View: Full
Date/Time: Thursday, June 26, 2008 - 1:17 PM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

*My Lexis*™ | Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Switch Client | Preferences | Sign Out | Help

LexisNexis® About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# South Carolina

## SOUTH CAROLINA

| | Did SJM's material omissionsviolate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| SC | Yes<br>S.C. Code<br>§ 39-5-20(a)(b) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] Johnson v. Collins Entertainment Co., Inc., 564 S.E.2d 653, 666 (S.C. 2002) (describing omission as an "inherent misrepresentation").

Code of Laws of South Carolina 1976 Annotated
Title 39. Trade and Commerce
Chapter 5. Unfair Trade Practices
Article 1. General Provisions

**§ 39-5-20. Unfair methods of competition and unfair or deceptive acts or practices unlawful; application of interpretations of Federal act.**

(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

(b) It is the intent of the legislature that in construing paragraph (a) of this section the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to § 5(a) (1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.

* * *

**§ 39-5-140. Actions for damages.**

(a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, but not in a representative capacity, to recover actual damages. If the court finds that the use or employment of the unfair or deceptive method, act or practice was a willful or knowing violation of § 39-5-20, the court shall award three times the actual damages sustained and may provide such other relief as it deems necessary or proper. Upon the finding by the court of a violation of this article, the court shall award to the person bringing such action under this section reasonable attorney's fees and costs.

* * *

# South Dakota

## SOUTH DAKOTA

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| SD | Yes<br>South Dakota Codified Laws § 37-24-6(1) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] South Dakota Codified Laws § 37-24-6(1).

South Dakota Codified Laws
Title 37. Trade Regulation
Chapter 37-24. Deceptive Trade Practices and Consumer Protection

**37-24-6. Deceptive acts or practices--Each act as Class 2 misdemeanor--Subsequent acts**

It is a deceptive act or practice for any person to:

(1) Knowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been mislead, deceived, or damaged thereby;

* * *

**37-24-31. Action for damages brought by person adversely affected**

Any person who claims to have been adversely affected by any act or a practice declared to be unlawful by § 37-24-6 shall be permitted to bring a civil action for the recovery of actual damages suffered as a result of such act or practice.

# Tennessee

## TENNESSEE

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| TN | Yes<br>Tenn.Code 101, 102, 112, 115 | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] The Tennessee legislature explicitly called for its Consumer Protection Act to be interpreted and construed consistently with the interpretations given by the federal trade commission and the federal courts pursuant to § 5(A)(1) of the FTC Act. Tenn. Code § 47-18-115. Compare 15 U.S.C. § 45(a) with Tenn. Code § 104(a). Federal courts have long held that material omissions stand as violations of FTC Act. See, e.g., F.T.C. v. World Travel Vacation Brokers, Inc., 579 F.2d 1137, 1145 (9th Cir. 1978); F.T.C. v. Wilcox, 926 F. Supp. 1091, 1098 (S.D. Fla. 1995)

West's Tennessee Code Annotated
Title 47. Commercial Instruments and Transactions
Chapter 18. Consumer Protection
Part 1. Consumer Protection Act of 1977

**§ 47-18-101. Short title**

This part shall be known and may be cited as the "Tennessee Consumer Protection Act of 1977."

**§ 47-18-102. Construction of law**

The provisions of this part shall be liberally construed to promote the following policies:

(1) To simplify, clarify, and modernize state law governing the protection of the consuming public and to conform these laws with existing consumer protection policies;

(2) To protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state;

(3) To encourage and promote the development of fair consumer practices;

(4) To declare and to provide for civil legal means for maintaining ethical standards of dealing between persons engaged in business and the consuming public to the end that good faith dealings between buyers and sellers at all levels of commerce be had in this state; and

(5) To promote statewide consumer education.

**§ 47-18-103. Definitions**

As used in this part, unless the context otherwise requires:

* * *

(2) "Consumer" means any natural person who seeks or acquires by purchase, rent, lease, assignment, award by chance, or other disposition, any goods, services, or property, tangible or intangible, real, personal or mixed, and any

individually to recover actual damages.

* * *

(3) If the court finds that the use or employment of the unfair or deceptive act or practice was a willful or knowing violation of this part, the court may award three (3) times the actual damages sustained and may provide such other relief as it considers necessary and proper.

* * *

**§ 47-18-112. Remedies cumulative and supplementary**

The powers and remedies provided in this part shall be cumulative and supplementary to all other powers and remedies otherwise provided by law. The invocation of one power or remedy herein shall not be construed as excluding or prohibiting the use of any other available remedy.

* * *

**§ 47-18-115. Construction of law**

This part, being deemed remedial legislation necessary for the protection of the consumers of the state of Tennessee and elsewhere, shall be construed to effectuate the purposes and intent. It is the intent of the general assembly that this part shall be interpreted and construed consistently with the interpretations given by the federal trade commission and the federal courts pursuant to § 5(A)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)).

* * *

# Texas

TEXAS

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| TX | Yes.<br>Tex. Bus. & Com. Code §17.46 (b)(24); | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1]Tex. Bus. & Com. Code §17.45(b)(24) prohibits failure to disclose information concerning goods and services which was known at the time of the transaction. See also Tex. Bux & Com. Code § 17.45(c) (adopting F.T.C. Act). Willowbrook Foods v. Grinnell, 147 S.W.3d 492 (Tex. App. 2004).

BUSINESS AND COMMERCE CODE
TITLE 2. COMPETITION AND TRADE PRACTICES
CHAPTER 17. DECEPTIVE TRADE PRACTICES
SUBCHAPTER E. DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION

*Tex. Bus. & Com. Code § 17.46* (2005)

§ 17.46. Deceptive Trade Practices Unlawful

(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code.

(b) Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:

(1) passing off goods or services as those of another;

(2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

(4) using deceptive representations or designations of geographic origin in connection with goods or services;

(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

(6) representing that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, or secondhand;

(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(8) disparaging the goods, services, or business of another by false or misleading representation of facts;

(9) advertising goods or services with intent not to sell them as advertised;

(10) advertising goods or services with intent not to supply a

the sale or offer to sell of goods, merchandise, or anything of value, which uses the sales technique, plan, arrangement, or agreement in which the buyer or prospective buyer is offered the opportunity to purchase merchandise or goods and in connection with the purchase receives the seller's promise or representation that the buyer shall have the right to receive compensation or consideration in any form for furnishing to the seller the names of other prospective buyers if receipt of the compensation or consideration is contingent upon the occurrence of an event subsequent to the time the buyer purchases the merchandise or goods;

(20) representing that a guarantee or warranty confers or involves rights or remedies which it does not have or involve, provided, however, that nothing in this subchapter shall be construed to expand the implied warranty of merchantability as defined in Sections 2.314 through 2.318 and Sections 2A.212 through 2A.216 to involve obligations in excess of those which are appropriate to the goods;

(21) promoting a pyramid promotional scheme, as defined by Section 17.461;

(22) representing that work or services have been performed on, or parts replaced in, goods when the work or services were not performed or the parts replaced;

(23) filing suit founded upon a written contractual obligation of and signed by the defendant to pay money arising out of or based on a consumer transaction for goods, services, loans, or extensions of credit intended primarily for personal, family, household, or agricultural use in any county other than in the county in which the defendant resides at the time of the commencement of the action or in the county in which the defendant in fact signed the contract; provided, however, that a violation of this subsection shall not occur where it is shown by the person filing such suit he neither knew or had reason to know that the county in which such suit was filed was neither the county in which the defendant resides at the commencement of the suit nor the county in which the defendant in fact signed the contract;

(24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

(25) using the term "corporation," "incorporated," or an abbreviation of either of those terms in the name of a business entity that is not

# Utah

## UTAH

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| UT | Yes<br>Utah Code §13-11-4(1) | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1]No statute or case law has squarely addressed whether the omission of a material fact may constitute an unfair trade practice. In Wade v. Jobe, 818 P.2d 1006, 1014-15 (Utah 1991), the Utah Supreme Court found that Utah's statute should, if possible, be read consistently with the Federal Trade Commission Act. The FTC Act prohibits omissions of material facts. F.T.C. v. World Travel Vacation Brokers, 861 F.2d 1020, 1029 (7th Cir. 1988).

TITLE 13. COMMERCE AND TRADE
CHAPTER 11. CONSUMER SALES PRACTICES

*Utah Code Ann. § 13-11-4* (2005)

§ 13-11-4. Deceptive act or practice by supplier

(1) A deceptive act or practice by a supplier in connection with a consumer transaction violates this chapter whether it occurs before, during, or after the transaction.

(2) Without limiting the scope of Subsection (1), a supplier commits a deceptive act or practice if the supplier knowingly or intentionally:

(a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not;

(b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not;

(c) indicates that the subject of a consumer transaction is new, or unused, if it is not, or has been used to an extent that is materially different from the fact;

(d) indicates that the subject of a consumer transaction is available to the consumer for a reason that does not exist;

(e) indicates that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not;

(f) indicates that the subject of a consumer transaction will be supplied in greater quantity than the supplier intends;

(g) indicates that replacement or repair is needed, if it is not;

(h) indicates that a specific price advantage exists, if it does not;

(i) indicates that the supplier has a sponsorship, approval, or affiliation the supplier does not have;

(j) (i) indicates that a consumer transaction involves or does not involve a warranty, a disclaimer of warranties, particular warranty terms, or other rights, remedies, or obligations, if the representation is false; or

(ii) fails to honor a warranty or a particular warranty term;

(k) indicates that the consumer will receive a rebate, discount, or other benefit as an inducement for entering into a consumer transaction in return for giving the supplier the names of prospective consumers or otherwise helping the supplier to enter into other consumer transactions, if receipt of the benefit is contingent on an event occurring after the consumer enters into the transaction;

(l) after receipt of payment for goods or services, fails to ship the goods or furnish the services within the time advertised or otherwise represented or, if no specific time is advertised or represented, fails to ship the goods or furnish the services within 30 days, unless within the applicable time period the supplier provides the buyer with the option to:

(i) cancel the sales agreement and receive a refund of all previous payments to the supplier if the refund is mailed or delivered to the buyer within ten business days after the day on which the seller receives written notification from the buyer of the buyer's intent to cancel the sales agreement and receive the refund; or

(ii) extend the shipping date to a specific date proposed by the supplier;

(m) except as provided in Subsection (3)(b), fails to furnish a notice meeting the requirements of Subsection (3)(a) of the purchaser's right to cancel a direct solicitation sale within three business days of the time of purchase if:

(i) the sale is made other than at the supplier's established place of business pursuant to the supplier's personal contact, whether through mail, electronic mail, facsimile transmission, telephone, or any other form of direct solicitation; and

(ii) the sale price exceeds $ 25;

(n) promotes, offers, or grants participation in a pyramid scheme as defined under Title 76, Chapter 6a, Pyramid Scheme Act;

(o) represents that the funds or property conveyed in response to a charitable solicitation will be donated or used for a particular purpose or will be donated to or used by a particular organization, if the representation is false;

(p) if a consumer indicates the consumer's intention of making a claim for a motor vehicle repair against the consumer's motor vehicle insurance policy:

(i) commences the repair without first giving the consumer oral and written notice of:

(A) the total estimated cost of the repair; and

(B) the total dollar amount the consumer is responsible to pay for the repair, which dollar amount may not exceed the applicable deductible or other copay arrangement in the consumer's insurance policy; or

(ii) requests or collects from a consumer an amount that exceeds the dollar amount a consumer was initially told the consumer was responsible to pay as an insurance deductible or other copay arrangement for a motor vehicle repair under Subsection (2)(p)(i), even if that amount is less than the full amount the motor vehicle insurance policy requires the insured to pay as a deductible or other copay arrangement, unless:

(A) the consumer's insurance company denies that coverage exists for the repair, in which case, the full amount of the repair may be charged and collected from the consumer; or

(B) the consumer misstates, before the repair is commenced, the amount of money the insurance policy requires the consumer to pay as a deductible or other copay arrangement, in which case, the supplier may charge and collect from the consumer an amount that does not exceed the amount the insurance policy requires the consumer to pay as a deductible or other copay arrangement;

(q) includes in any contract, receipt, or other written documentation of a consumer transaction, or any addendum to any contract, receipt, or other written documentation of a consumer transaction, any confession of judgment or any waiver of any of the rights to which a consumer is entitled under this chapter;

(r) charges a consumer for a consumer transaction that has not previously been agreed to by the consumer;

(s) solicits or enters into a consumer transaction with a person who lacks the mental ability to comprehend the nature and consequences of:

(i) the consumer transaction; or

(ii) the person's ability to benefit from the consumer transaction; or

(t) solicits for the sale of a product or service by providing a consumer with an unsolicited check or negotiable instrument the presentment or negotiation of which obligates the consumer to purchase a product or service, unless the supplier is:

(i) a depository institution under Section 7-1-103;

(ii) an affiliate of a depository institution; or

(iii) an entity regulated under Title 7, Financial Institutions Act.

(3) (a) The notice required by Subsection (2)(m) shall:

(i) be a conspicuous statement written in dark bold with at least 12 point type on the first page of the purchase documentation; and

(ii) read as follows: "YOU, THE BUYER, MAY CANCEL THIS CONTRACT AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY (or time period reflecting the supplier's cancellation policy but not less than three business days) AFTER THE DATE OF THE TRANSACTION OR RECEIPT OF THE PRODUCT, WHICHEVER IS LATER".

(b) A supplier is exempt from the requirements of Subsection (2)(m) if the supplier's cancellation policy:

(i) is communicated to the buyer; and

(ii) offers greater rights to the buyer than Subsection (2)(m).

# Vermont

## VERMONT

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| VM | Yes<br>9 Vt Stat §2453(a), §2461 | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1]Federal Trade Commission Act seen as persuasive authority for interpretation of Vermont Act. Vermont v. International Collection Service, 594 A.2d 426 (Vt. 1990). *See Also* 9 Vt. Stat. §2453(b). FTC Act makes omission of material facts an unlawful trade practice. F.T.C. v. World Travel Vacation Brokers, 861 F.2d 1020, 1029 (7th Cir. 1988). Omission of material facts is a deceptive practice. Peabody v. Auto Village, 569 A.2d 460 (Vt. 1990).

TITLE NINE. COMMERCE AND TRADE
PART 3. SALES, ASSIGNMENTS AND SECURED TRANSACTIONS
CHAPTER 63. CONSUMER FRAUD
SUBCHAPTER 1. GENERAL PROVISIONS

*9 V.S.A. § 2453* (2005)

§ 2453. Practices prohibited; antitrust and consumer fraud

(a) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful.

(b) It is the intent of the legislature that in construing subsection (a) of this section, the courts of this state will be guided by the construction of similar terms contained in Section 5(a)(1) of the Federal Trade Commission Act as from time to time amended by the Federal Trade Commission and the courts of the United States.

(c) The attorney general shall make rules and regulations, when necessary and proper to carry out the purposes of this chapter, relating to unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce. The rules and regulations shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the federal courts interpreting the Federal Trade Commission Act.

(d) Violation of a rule or regulation as made by the attorney general is prima facie proof of the commission of an unfair or deceptive act in commerce.

(e) The provisions of subsections (a), (c) and (d) of this section shall also be applicable to real estate transactions.

TITLE NINE. COMMERCE AND TRADE
PART 3. SALES, ASSIGNMENTS AND SECURED TRANSACTIONS
CHAPTER 63. CONSUMER FRAUD
SUBCHAPTER 1. GENERAL PROVISIONS

*9 V.S.A. § 2461* (2005)

§ 2461. Civil penalty

(a) Any person who violates the terms of an injunction issued under section 2458 of this title shall forfeit and pay to the state a civil penalty of not more than $ 10,000.00 for each violation. For the purposes of this section, the court issuing such injunction shall retain jurisdiction, and the cause shall be continued, and in such cases the attorney general or a state's attorney acting in the name of the state may petition for recovery of such civil penalty.

(b) Any consumer who contracts for goods or services in reliance upon false or fraudulent representations or practices prohibited by section 2453 of this title, or who sustains damages or injury as a result of any false or fraudulent representations or practices prohibited by section 2453 of this title, or prohibited by any rule or regulation made pursuant to section 2453 of this title may sue for appropriate equitable relief and may sue and recover from the seller, solicitor or other violator the amount of his damages, or the consideration or the value of the consideration given by the consumer, reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by the consumer. Any language, written or oral, used by a seller or solicitor, which attempts to exclude or modify recovery of the penalty or reasonable attorney's fees shall be unenforceable.

(c) Any person alleged to have violated the terms of subsection (b) of this section shall be entitled to a trial by jury, unless waived according to law.

# Washington

## WASHINGTON

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| WA | Yes<br>Wash. Rev. Code<br>§19.86.020 | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

[1] Failure to disclose known defect in goods constitutes an unfair trade practice. Griffith v. Centex Real Estate, 969 P.2d 486 (Wash. App. 1998).

TITLE 19. BUSINESS REGULATIONS -- MISCELLANEOUS
CHAPTER 19.86. UNFAIR BUSINESS PRACTICES -- CONSUMER PROTECTION

*Rev. Code Wash. (ARCW) § 19.86.020* (2005)

§ 19.86.020. Unfair competition, practices, declared unlawful

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

# West Virginia

## WEST VIRGINIA

| | Did SJM's material omissions violate the consumer protection law? | Does the law prohibit material omissions? |
|---|---|---|
| MN | Yes | Yes |
| W.VA. | Yes<br>W.Va. Code § 46A-6-102(7) (M)<br>§46A-6-103 | Yes[1] |

**Are there any true conflicts of substantive law?**

No.

---

[1] W.Va. Code § 46A-6-102(7)(M) barring omissions with intent to deceive. West Virginia interprets its unfair trade statutes to conform, if possible, to federal law. W.Va. Code §46A-6-101(1); § 46A-6-103. The Federal Trade Commission Act bans omission of material facts as unfair trade practices. F.T.C. v. World Travel Vacation Brokers, 861 F.2d 1020, 1029 (7th Cir. 1988).

Chapter 46A West Virginia Consumer Credit and Protection Act
Article 6 General Consumer Protection

*W. Va. Code § 46A-6-102* (2005)

§ 46A-6-102 Definitions

When used in this article, the following words, terms and phrases, and any variations thereof required by the context, shall have the meaning ascribed to them in this article, except where the context indicates a different meaning:

(1) "Advertisement" means the publication, dissemination or circulation of any matter, oral or written, including labeling, which tends to induce, directly or indirectly, any person to enter into any obligation, sign any contract or acquire any title or interest in any goods or services and includes every word device to disguise any form of business solicitation by using such terms as "renewal", "invoice", "bill", "statement" or "reminder" to create an impression of existing obligation when there is none or other language to mislead any person in relation to any sought-after commercial transaction.

(2) "Consumer" means a natural person to whom a sale or lease is made in a consumer transaction and a "consumer transaction" means a sale or lease to a natural person or persons for a personal, family, household or agricultural purpose.

(3) "Cure offer" means a written offer of one or more things of value, including, but not limited to, the payment of money, that is made by a merchant or seller and that is delivered by certified mail to a consumer claiming to have suffered a loss as a result of a consumer transaction or to the attorney for such person.

(4) "Merchantable" means, in addition to the qualities prescribed in section three hundred fourteen [§ 46-2-314], article two, chapter forty-six of this code, that the goods conform in all material respects to applicable state and federal statutes and regulations establishing standards of quality and safety of goods and, in the case of goods with mechanical, electrical or thermal components, that the goods are in good working order and will operate properly in normal usage for a reasonable period of time.

(5) "Sale" includes any sale, offer for sale or attempt to sell any goods for cash or credit or any services or offer for services for cash or credit.

(6) "Trade" or "commerce" means the advertising, offering for sale, sale or distribution of any goods or services and shall include any trade or commerce, directly or indirectly, affecting the people of this state.

(7) "Unfair methods of competition and unfair or deceptive acts or practices" means and includes, but is not limited to, any one or more of the following:

(A) Passing off goods or services as those of another;

(B) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(C) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another;

(D) Using deceptive representations or designations of geographic origin in connection with goods or services;

(E) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

(F) Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand;

(G) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model if they are of another;

(H) Disparaging the goods, services or business of another by false or misleading representation of fact;

(I) Advertising goods or services with intent not to sell them as advertised;

(J) Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(K) Making false or misleading statements of fact concerning the reasons for, existence of or amounts of price reductions;

(L) Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;

(M) The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby;

(N) Advertising, printing, displaying, publishing, distributing or broadcasting, or causing to be advertised, printed, displayed, published, distributed or broadcast in any manner, any statement or representation with regard to the sale of goods or the extension of consumer credit including the rates, terms or conditions for the sale of such goods or the extension of such credit, which is false, misleading or deceptive or which omits to state material information which is necessary to make the statements therein not false, misleading or deceptive;

(O) Representing that any person has won a prize, one of a group of prizes or any other thing of value if receipt of the prize or thing of value is contingent upon any payment of a service charge, mailing charge, handling charge or any other similar charge by the person or upon mandatory attendance by the person at a promotion or sales presentation at the seller's place of business or any other location: Provided, That a person may be offered one item or the choice of several items conditioned on the person listening to a sales promotion or entering a consumer transaction if the true retail value and an accurate description of the item or items are clearly and conspicuously disclosed along with the person's obligations upon accepting the item or items; such description and disclosure shall be typewritten or printed in at least eight point regular type, in upper or lower case, where appropriate; or

(P) Violating any provision or requirement of article six-b [§ § 46A-6B-1 et seq.] of this chapter.

(8) "Warranty" means express and implied warranties described and defined in sections three hundred thirteen [§ 46-2-313], three hundred fourteen [§ 46-2-314] and three hundred fifteen [§ 46-2-315], article two, chapter forty-six of this code and expressions or actions of a merchant which assure the consumer that the goods have described qualities or will perform in a described manner.

Chapter 46A West Virginia Consumer Credit and Protection Act
Article 6 General Consumer Protection

*W. Va. Code § 46A-6-103* (2005)

§ 46A-6-103 Rules and regulations

The attorney general of the State of West Virginia may make rules and regulations interpreting and defining the provisions of section one hundred two [§ 46A-6-102] of this article. Such rules and regulations shall conform as nearly as practicable with the rules, regulations and decisions of the federal trade commission and the federal courts in interpreting the provisions of the "Federal Trade Commission Act," as from time to time amended.