# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

RECEIVED WALSH CLERK

LESTER GROVATT
635 Chatsworth Road
Tabernacle, New Jersey 08088

Plaintiff

vs.

ST. JUDE MEDICAL, INC.
1 Lillehei Plaza
St. Paul, Minnesota 55117

Defendant

CASE NO.

Civil Action 00CV2657(JBS)

ORIGINAL FILED
JUN 2 2000
WILLIAM T. WALSH, CLERK

**CLASS ACTION COMPLAINT**
**JURY TRIAL DEMAND**

Plaintiff, through counsel, and for his Complaint against the Defendant, states as follows:

1. Plaintiff, Lester Grovatt ("Grovatt") is a resident and citizen of the Town of Tabernacle, County of Burlington, State of New Jersey.

2. Defendant, St. Jude Medical, Inc. ("SJM" or the "Company"), at all times relevant hereto was and is a corporation organized and existing under the laws of the State of Minnesota, and engaged in the business of designing, formulating, producing, manufacturing and/or world-wide marketing of heart valve replacement and repair products incorporating its proprietary Silzone® coating on the sewing cuff fabric (hereinafter referred to as "Silzone products"). At all times material hereto, Defendant acted by and through its agents, servants, workers, employees, officers and directors, actual or apparent, any and all of which were acting through the course and scope of their agency, authority, duties or employment, active or apparent.

3. Defendant SJM, at all times relevant hereto, supplied and/or distributed and/or sold and/or otherwise placed into the stream of worldwide trade or commerce, mechanical heart valves with Silzone coating.

R 6-2-00

4. From 1997 to January 21, 2000, Defendant placed heart valve products with Silzone coating into the stream of worldwide commerce and interstate commerce within the United States. These valve products were defective. They were designed, manufactured and distributed without adequate testing and with no warning that the heart valve products with Silzone coating were defective, inherently dangerous and unfit for their intended use as described herein.

5. On or about February 19, 1999, Plaintiff Grovatt underwent surgery to correct an aortic aneurysm condition during which procedure he was implanted with a defective St. Jude mechanical heart valve with Silzone coating.

6. On January 21, 2000, St. Jude Mechanical, Inc. initiated a voluntary product recall involving all its heart valve products that have a Silzone coating.

7. The recall was initiated by Defendant after results concerning 792 patients enrolled as of January 6, 2000 in a clinical trial that was underway known as "AVERT" (Artificial Valve Endocarditis Reduction Trial) revealed an unacceptable level of explants due to paravalvular leakage in the Silzone arm of AVERT. Eight (8) explants for paravalvular leak were reported out of total of 398 patients enrolled in the Silzone "arm" of AVERT.

8. As a direct and proximate result of the defective products placed into the stream of commerce by Defendant, Plaintiff Grovatt, and members of the class (as defined in paragraph 13) have suffered or may suffer a severe latent injury and disability from the defect in the valve and other associated products made by Defendant using Silzone.

9. Plaintiff Grovatt, and members of the recipient class, will require, as a consequence, ongoing medical surveillance as more particularly described below.

## JURISDICTION AND VENUE

10. Plaintiff alleges an amount in controversy in excess of $75,000 each, exclusive of interest and costs.

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000 for each Plaintiff and because there is complete diversity of citizenship between the Plaintiff and Defendant. Venue is proper here as Defendant transacts business within this District.

## CLASS ACTION ALLEGATIONS

12. Plaintiff brings this class action pursuant to the Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) on behalf of a class consisting of:

> All persons in the United States and its territories who have had a heart valve replacement and/or repair procedure utilizing a product with a Silzone® coating manufactured, developed, designed, fabricated, sold, distributed or otherwise placed into the stream of commerce by Defendant, St. Jude Medical, Inc., excepting those who: (a) have already been medically diagnosed with a failure or injury associated with the implanted device to a level or degree that requires or required surgical replacement or repair of all of the Silzone® implants implanted in the person; have died as a result of a failure or injury associated with the implanted device(s); and/or (c) are or were officers, directors and employees (and their immediate family members) of the Defendant.

13. Plaintiff, Lester Grovatt, is a member of the recipient class he seeks to represent, and requires diagnostic and screening tests and procedures over and above that which he would ordinarily require as a result of Defendant's conduct and/or defective product.

14. The recipient class consists of at least 36,000 people and therefore is so numerous that joinder is impractical.

15. A class action is superior to all other available means for the fair and efficient adjudication of this controversy.

16. Plaintiff's claims are typical of the claims of the recipient class because Plaintiff Lester Grovett has had heart valve replacement and repair with a product or products with Silzone coating implanted into his body.

17. There are questions of law and fact common to the recipient class, including but not limited to:

(a) whether the heart valve replacement and repair products designed, developed, manufactured, distributed, fabricated, supplied, advertised, promoted and/or sold by the Defendant has a defect or defects;

(b) the nature of said defect(s);

(c) whether the heart valve replacement and repair products with Silzone coating are susceptible to unreasonable paravalvular leakage;

(d) whether the heart valve replacement and repair products with Silzone coating are susceptible to causing an increase risk of thromboembolic complications;

(e) when the Defendant knew or should have known that its heart valve replacement and repair products with Silzone coating were susceptible to paravalvular leakage;

(f) whether the Defendant conducted testing on the heart valve replacement and repair products with Silzone coating necessary to determine its safety prior to selling and/or distributing it;

(g) when Defendant conducted such testing, if at all;

(h) whether said testing was adequate and responsible;

(i) whether Defendant accurately reported its test results;

(j) whether Defendant failed to provide adequate warnings concerning its heart valve replacement and repair products with Silzone;

(k) whether the warnings, if any, given by Defendant were reasonable in light of what it knew or should have known;

(l) whether Defendant's failure to give adequate and timely warnings of the dangers of the heart valve replacement and repair products with Silzone constitutes negligence per se;

(m) whether consumers who were implanted with heart valve replacement and repair products with Silzone coating are at an increased risk of developing serious latent diseases or injuries;

(n) whether monitoring and testing procedures which make early detection and treatment of the serious illnesses caused by a paravalvular leak and/or increased thromboembolic complications are possible and beneficial;

(o) whether medical monitoring is appropriate;

(p) whether Defendant designed and manufactured heart valve replacement and repair products with Silzone coating that were dangerously defective because they had a tendency to have paravalvular leakage and/or increased thromboembolic complications which would lead to serious adverse health affects including endocarditis;

(q) whether Defendant concealed adverse information from Plaintiff Grovatt and the recipient class, and/or their physicians regarding the testing and safety of the heart valve replacement and repair products with Silzone coating;

(r) what steps, if any, Defendant took to cure or mitigate the defects in the heart valve replacement repair products with Silzone coating after it knew of the defects and of the injuries and risks associated with their use;

(s) whether Defendant is strictly liable to those injured by their defective heart valve replacement and repair products with Silzone coating;

(t) whether Defendant acted negligently towards Plaintiff and members of the class;

(u) whether the heart valve products with Silzone coating were safe for their intended use;

(v) whether Defendant made any express representations about the heart valve products with Silzone;

(w) whether Defendant actively concealed defects in the product and the risk of serious injury that could result;

(x) what is the proper mechanism for assessing and awarding damages and administering other relief, including relief to reduce the threat of future harm;

(y) whether Plaintiff and others similarly situated need and would benefit from a notice and registry program, a medical surveillance program, and/or medical research program designed to address the substantially increased risk of harm that Defendant's defective products have put them in.

18. The claims of Plaintiff are typical of the claims of the recipient class.

19. These and other questions of law and/or fact are common to the class and predominate over any questions affecting only individual class members.

20. Plaintiff will fairly and adequately represent and protect the interests of the members of the recipient class. Plaintiff has retained counsel competent and experienced in complex class actions, toxic tort, products liability and consumer fraud litigation. Plaintiff has no claims antagonistic to those of the recipient class.

21. Class certification pursuant to Rule 23(b)(1)(A) is appropriate because the prosecution of separate actions creates the risk of inconsistent or varying adjudications with

respect to individual members of the class which would establish incompatible standards of conduct for the Defendant.

22. Class certification pursuant to Rule 23(b)(1)(B) is appropriate because prosecution of separate actions by individual members of the recipient class would create a risk of adjudications with respect to individual members of the recipient class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

23. Class certification pursuant to Rule 23(b)(2) is appropriate because Defendant's course of dealing with members of the recipient class adversely affects all members of the recipient class thereby making appropriate final injunctive relief, including the creation of a medical monitoring and medical research trust funds.

24. Class certification pursuant to Rule 23(b)(3) is appropriate because common issues of law and fact relative to the effect of the Defendant's products and its course of dealing are common to the members of the class and said questions of law or fact predominate over any questions affecting only individual members, thereby rendering the class action superior to other available methods for the fair and efficient adjudication of this controversy.

25. No unusual difficulties are likely to be encountered in the management of this action as a class action.

26. Class certification is also appropriate because Defendant, St. Jude, has acted on grounds generally applicable to the class, making appropriate equitable injunctive relief with respect to Plaintiff and the class members. Specifically, Plaintiff seeks injunctive relief in the form of the creation of a medical monitoring program trust and a medical research program trust.

## FACTUAL BACKGROUND

27. Silzone technology was first introduced in 1997 with the potential to reduce the incidence of endocarditis in heart valve replacement or repair procedures.

28. The Silzone coated mechanical heart valves and associated products were coated with silver because it was believed that since silver has antibiotic properties, the coating of valves with silver would lead to fewer heart infections, a serious risk faced by all heart valve recipients.

29. The Food and Drug Administration ("FDA") allowed SJM to sell the Silzone coated valves and associated products even while it was trying to prove the infection theory by performing a strict clinical trial comparing patients with old valves and new valves.

30. That trial, known as AVERT (Artificial Valve Endocarditis Reduction Trial) was designed as the largest, most rigorous, prospective clinical trial ever in the prosthetic heart valve industry. It is an independent multi-year, multi-center, randomized study intended to follow 4,400 patients to determine the efficacy of Silzone coating on the valve sewing cuff fabric in reducing infection following valve replacement surgery. Follow up was to occur at discharge, three months, at one year and annually thereafter. Since 1997, it is estimated that, world wide, approximately 36,000 implants of the St. Jude Medical heart valve replacement and repair with Silzone coating have taken place.

31. On or about January 21, 2000 an Independent Data and Safety Monitoring Board based on its analysis of data from 792 patients enrolled in AVERT as of January 6, 2000, advised Defendant that further enrollment in the AVERT study was suspended because of an unacceptable level of explants due to paravalvular leakage in the Silzone "arm" of the AVERT study.

32. Eight (8) explants for paravalvular leak were reported out of a total of 198 patients enrolled in the Silzone "arm" of the AVERT study, while one (1) explant for paravalvular leakage has been reported out of a total of 394 patients in the non-Silzone "arm" of AVERT.

33. In or about November, 1999, the Medical Device Agency of the United Kingdom issued an alert to the United Kingdom's medical profession and authorities about a high rate of early thromboembolic complications associated with St Jude Medical's Silzone® (silver coated) mechanical heart valve, particularly among mitral valve patients. The alert further recommend that doctors:

> 1. Follow up all patients implanted with Silzone® mechanical heart valves to identify any signs of stroke or transient ischemic attack (TIA) and ensure adequate anticoagulation control.
>
> 2. Consider examining patients using Trans-[e]sophageal Echocardiography (TOE) to identify any signs of valve thrombus, recognizing that there are certain risks associated with TOE. Priority should be given to patients most likely to be at risk, i.e. those who have suffered thromboembolic complications, those with mitral valve implants, and those who received their implants within the last 6 months.

34. On January 21, 2000, Defendant issued a "Dear Doctor" letter which contained an urgent medical device recall and advisory.

35. Currently, an effective method of screening for and detecting a paravalvular leak or embolus situations is by frequent examination, laboratory tests and echocardiogram. If a valve is determined to be leaking, the patient must undergo open heart surgery to explant the leaking Silzone coated valve and replace it with a non-Silzone coated mechanical valve. Such repeat surgery procedure is extremely complicated and dangerous, and is generally preferred to be put off as long as possible and medically appropriate.

36. As a direct and proximate result of the defective product being placed into the stream of commerce by the Defendant, Plaintiff Grovatt and other members of the recipient class

require a medical monitoring program that in frequency and content is over and above that which they would have ordinarily required by virtue of their heart condition, including, but not limited to, periodic medical examinations for, *inter alia*, leaks, thrombus, stroke and/or transient ischemic attacks associated with the defective heart valves and products conducted by cardiology specialists, echocardiograms, and other testing and preventive screening measures, in addition to costs and reasonable attorneys fees.

37. As a direct and proximate result of Defendant's acts and the defective nature of the medical products at issue, the class faces an increased susceptibility to injuries, as described herein. This irreparable threat to their health can only be fully mitigated by the creation of one or more trust funds under the control and auspices of the Court to provide for appropriate and necessary medical monitoring and medical research, including: locating and notifying the class of the defects and the potential medical harm; the creation of a registry and a baseline database of Class members; the funding for the periodic monitoring and assessment of the Class members; the researching, gathering and forwarding of epidemiological and treatment/diagnostic modality information to Class members' treating physicians and other health care providers; the researching and assessment of the injuries or complications which are or may result from the subject products' defect's(s) existence, including the recognition and assessment of risks of explant versus no-explant alternatives; the research and development of modalities to aid in the diagnosis and treatment of resulting injuries; and development and implementation of appropriate psychological and emotional support and treatment programs for Class members and their spouses.

38. Plaintiff Grovatt and the recipient class have no adequate remedy at law in that monetary damages alone will not compensate for the insidious and continuing nature of the harm to them, and only an appropriate research and medical monitoring program, which notifies and

registers the recipient class and thereafter researches and collects information relating to their problems and risks can prevent the greater harms which may not occur immediately and which may be preventable or remedied if proper research is conducted, programs or treatment protocols developed, and such programs/protocols implemented or made available to Class members before the harm occurs or becomes worse.

## SUBSTANTIVE CAUSES OF ACTION

### COUNT I

### (STRICT LIABILITY UNDER COMMON LAW AND ACTS SIMILAR TO THE NEW JERSEY PRODUCTS LIABILITY ACT)

39. Plaintiff incorporates the allegations set forth above in paragraphs 1 through 38 of their Complaint as if fully set forth herein.

40. The heart valve replacement and repair products with Silzone ("Silzone products") manufactured and/or supplied by said Defendant were defective in design and/or formulation in that when they left the hands of the said Defendant, the foreseeable risks exceeded the benefits associated with the design and/or formulation.

41. Alternatively, the Silzone products supplied by the Defendant were defective in design and/or formulation in that they were more dangerous than an ordinary consumer would expect when used in their intended or reasonably foreseeable manner.

42. The Silzone products manufactured and/or supplied by the Defendant were defective due to inadequate warning or instruction in that, when they left the hands of said Defendant, Defendant knew or should have know that the product was such as to create a risk of harm to consumers and Defendant failed to exercise reasonable care to warn of said risk.

43. The Silzone products manufactured and/or supplied by the Defendant were defective due to inadequate post-marketing warnings and/or instructions in that when they left the hands of the Defendant, it knew or should have known the risk involved with the use of said

product and failed to exercise reasonable care to provide an adequate warning to the users of the product.

44. The Silzone products manufactured and/or supplied by the Defendant were defective in that they failed to conform to the representations of Defendant when they left its hands in that they were not safe for use by consumers.

45. The Silzone products manufactured and/or supplied by the said Defendant were defective in that the Defendant failed to adequately test the products before placing them into the stream of commerce.

46. As a direct and proximate result of the defective condition of the Silzone products, as manufactured by the said Defendant, Plaintiff Grovatt and members of the recipient class suffered and will continue to suffer the risk of possible injury, disability, death, expense and economic loss as previously described.

WHEREFORE, Plaintiff in his own right and on behalf of the Class demands judgment against the Defendant for the following relief and remedies:

(a) an order pursuant to Rule 23, F.R.C.P. permitting this action to be maintained as a class action on behalf of the class as specified herein, appointing Plaintiff as the representative of the class and Plaintiff's counsel as counsel for the class;

(b) a judgment and/or decree in favor of Plaintiff and the class against Defendant creating a trust fund paid for by Defendants which, under Court supervision, will design, pay for and manage the delivery of medical monitoring services, including, but not limited to, testing and preventative screening care of the adverse and latent conditions resulting from, or potentially resulting from, the implantation and use of defective medical products at issue in this suit;

(c) Judgment and/or decree in favor of Plaintiff and the class against Defendant creating a trust fund, paid for by Defendants, under Court supervision, to finance medical research on monitoring services, including, but not limited to, testing and preventative screening care of conditions resulting from, or potentially resulting from the defective medical products at issue in this suit;

(d) Judgment and/or order requiring defendants to bear the cost of publication to members of the Class and the medical community of advising and educating them of the need for appropriate medical screening and monitoring concerning the medical conditions that are at issue in this suit, the content, form and manner of such publication to be approved by the Court; and

(e) such further relief as this Court deems necessary, just, and proper.

## COUNT II – BREACH OF IMPLIED WARRANTY

47. Plaintiff incorporates the allegations set forth above in paragraphs 1 though 46 of their Complaint as if fully set forth herein.

48. Defendant is in the business of manufacturing and/or supplying and/or placing into the stream of commerce Silzone products for consumers.

49. By placing Silzone products into the stream of commerce, said Defendant impliedly warranted that the Silzone products were fit and safe for their intended use.

50. The Silzone products placed into the stream of commerce by said Defendant were defective in that they were not fit and safe for their intended use.

51. The defect in the Silzone products manufactured and/or supplied by said Defendant were present at the time the product left the hands of said Defendant.

52. Said Defendant breached the implied warranty for the Silzone products because said products were defective, unmerchantable and not fit for their intended purpose. Defendant

is on notice of the defect, and due to the nature of the defect and how it was discovered further notice of breach of warranty is not necessary.

83. Plaintiff Grovatt and members of the recipient class were foreseeable users of the Silzone products.

84. As a direct and proximate result of the Defendant's breach of implied warranty, Plaintiff Grovatt and members of the recipient class suffered and will continue to suffer the risk of possible injury, disability, death, expense and economic loss as previously described.

WHEREFORE, Plaintiff in his own right and on behalf of the Class demands judgment against the Defendant for the following relief and remedies:

(a) an order pursuant to Rule 23, F.R.C.P. permitting this action to be maintained as a class action on behalf of the class as specified herein, appointing Plaintiff as the representative of the class and plaintiff's counsel as counsel for the class;

(b) a judgment and/or decree in favor of plaintiff and the class against Defendant creating a trust fund paid for by Defendant which, under Court supervision, will design, pay for and manage the delivery of medical monitoring services, including, but not limited to, testing and preventative screening care of the adverse and latent conditions resulting from, or potentially resulting from, the implantation and use of defective medical products at issue in this suit;

(c) judgment and/or decree in favor of Plaintiff and the class against Defendant creating a trust fund, paid for by Defendant, under Court supervision, to finance medical research on monitoring services, including, but not limited to, testing and preventative screening care of conditions resulting from, or potentially resulting from the defective medical products at issue in this suit;

(d) judgment and/or order requiring defendants to bear the cost of publication to members of the Class and the medical community of advising and educating them of the need for appropriate medical screening and monitoring concerning the medical conditions that are at issue in this suit, the content, form and manner of such publication to be approved by the Court; and

(e) such further relief as this Court deems necessary, just and proper.

**COUNT III – BREACH OF EXPRESS WARRANTY**

55. Plaintiff incorporates the allegations set forth above in paragraphs 1 through 54 of their Complaint as if fully set forth herein.

56. Defendant expressly warranted in its literature and representations concerning the product to Plaintiff Grovatt and the recipient class (thorough their respective physicians) that the Silzone products which it designed, developed, manufactured and sold to Plaintiff Grovatt and the recipient class were of merchantable quality, fit and safe for use as mechanical heart valves or other heart valve replacement and repair products and otherwise not injurious to the recipient's health and well being.

57. The Silzone products implanted in Plaintiff Grovatt and the recipient class were unsafe, unmerchantable, unfit for use in the body and otherwise injurious to Plaintiff Grovatt and the recipient class.

58. Through its sale of the Silzone products, Defendant was a merchant pursuant to Section 2-314 of the Uniform Commercial Code.

59. Defendant breached the express warranties of merchantability in the sale of Silzone products to Plaintiff Grovatt and the recipient class in that said products were not fit for their ordinary purposes described above.

60. As a direct and proximate result of said Defendant's breach of express warranties, Plaintiff Grovatt and members of the recipient class, including spouses, suffered and will continue to suffer the risk of possible injury, disability, death, expense and economic loss as previously described. Defendant is on notice of the defect, and due to the nature of the defect and how it was discovered further notice of breach of warranty is not necessary.

WHEREFORE, Plaintiff in his own right and on behalf of the Class demands judgment against the Defendant for the following relief and remedies:

(a) an order pursuant to Rule 23, F.R.C.P. permitting this action to be maintained as a class action on behalf of the class as specified herein, appointing Plaintiff as the representative of the class and Plaintiff's counsel as counsel for the class;

(b) a judgment and/or decree in favor of Plaintiff and the class against Defendant creating a trust fund paid for by Defendant which, under Court supervision, will design, pay for and manage the delivery of medical monitoring services, including, but not limited to, testing and preventative screening care of the adverse and latent conditions resulting from, or potentially resulting from, the implantation and use of defective medical products at issue in this suit;

(c) judgment and/or decree in favor of Plaintiff and the class against Defendant creating a trust fund, paid for by Defendant, under Court supervision, to finance medical research on monitoring services, including, but not limited to, testing and preventative screening care of conditions resulting from, or potentially resulting from the defective medical products at issue in this suit;

(d) judgment and/or order requiring defendants to bear the cost of publication to members of the Class and the medical community of advising and educating them of the need for appropriate medical screening and monitoring concerning the medical conditions that are at

issue in this suit, the content, form and manner of such publication to be approved by the Court; and

(e) Such further relief as this Court deems necessary, just, and proper.

**Count IV**

**NEGLIGENCE/MEDICAL MONITORING**

61. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further allege as follows:

62. Defendant had a duty to exercise reasonable care in the manufacture, sale and/or distribution of the subject Silzone medical products it placed into the stream of commerce, including a duty to assure that the products did not cause users to suffer unreasonable or unnecessary injury, infection or unreasonable, dangerous side effects.

63. Defendant failed to exercise ordinary care in the warning about, design, manufacture, sale, testing, marketing, advertising, promoting and/or distribution into the stream of commerce of subject Silzone medical products in that Defendant knew or should have known that the subject Silzone medical products created a high risk of unreasonable, dangerous paravalvular leakage, valve failure, infections, and other side effects, some of which, e.g., can only be alleviated by open heart surgery or other invasive procedures and some of which, heart failure, stroke or embolism, can be fatal.

64. Defendant was negligent in the warning about, design, manufacture, sale, testing, marketing, advertising, promoting and/or distribution of the subject Silzone medical products in that it:

(a) Failed to use due care in designing, developing and manufacturing the Silzone medical products so as to avoid the aforementioned risks to individuals when they were being implanted or used;

(b) Failed to accompany their products with proper warnings regarding all possible adverse risks, effects or injuries associated with the use of the subject Silzone medical products;

(c) Failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of the subject Silzone medical products;

(d) Failed to provide adequate training to medical care providers for appropriate use of or monitoring of the subject Silzone medical products;

(e) Failed to warn Plaintiff and members of the class who have been implanted with the subject Silzone medical products about the following: (1) the need for comprehensive, regular medical monitoring to ensure early discovery of serious or potentially fatal pulmonary and cardiac and cardiovascular side effects; and/or (2) the possibility of becoming disabled as a result of the subject Silzone medical products and/or having to undergo repeat heart surgery in a shorter amount of time than ordinary associated with heart valve prosthetic implants;

(f) Failed to test and/or warn adequately about the reaction or interaction of one or more of the component parts in the subject Silzone medical products when implanted in the human body; and/or

(g) Placed an unsafe product into the stream of commerce.

65. Defendant knew or should have known that consumers such as Plaintiff could foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care as described above.

66. Defendant's negligence was a proximate cause of Plaintiff's and other class members suffering a significantly increased risk of serious injury and disease, which they will continue to suffer as previously described.

67. As a further result, Plaintiff may and probably will be required to pay sums to ascertain the existence, nature and extent of their injuries in the future.

WHEREFORE, Plaintiff in his own right and on behalf of the Class demands Judgment against the Defendant for the following relief and remedies:

(a) an order pursuant to Rule 23, F.R.C.P. permitting this action to be maintained as a class action on behalf of the class as specified herein, appointing Plaintiff as the representative of the class and Plaintiff's counsel as counsel for the class;

(b) a judgment and/or decree in favor of Plaintiff and the class against Defendant creating a trust fund paid for by Defendant which, under Court supervision, will design, pay for and manage the delivery of medical monitoring services, including, but not limited to, testing and preventative screening care of the adverse and latent conditions resulting from, or potentially resulting from, the implantation and use of defective medical products at issue in this suit;

(c) judgment and/or decree in favor of Plaintiff and the class against Defendant creating a trust fund, paid for by Defendant, under Court supervision, to finance medical research on monitoring services, including, but not limited to, testing and preventative screening care of conditions resulting from, or potentially resulting from the defective medical products at issue in this suit;

(d) judgment and/or order requiring Defendant to bear the cost of publication to members of the Class and the medical community of advising and educating them of the need for appropriate medical screening and monitoring concerning the medical conditions that are at issue in this suit, the content, form and manner of such publication to be approved by the Court; and

(e) such further relief as this Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on those issues so triable.

LEVY, ANGSTREICH, FINNEY, BALDANTE,
RUBENSTEIN & COREN, P.C.

BY: ______________________
STEVEN E. ANGSTREICH (4532)
MICHAEL COREN (3985)
CAROLYN C. LINDHEIM (8603)
Woodcrest Pavilion, Ste. 100
Ten Melrose Place
Cherry Hill, New Jersey 08003

BLANK ROME COMISKY & MCCAULEY

BY: ______________________
ADAM SHARE

Attorneys for Plaintiff