St. Jude Medical decided to recall all unimplanted Silzone® valves. It promptly alerted the FDA and sent overnight alert letters to physicians, cardiac surgeons, and other healthcare providers. (PA 125-26)

After the recall, the AVERT investigators continued to follow and evaluate study recipients. As more complete data has been obtained over the four years since the recall, the *only* complication for which the AVERT investigators have found any statistically significant increase over the expected background rate is early major paravalvular leak. Furthermore, that small increased risk has declined over time, to the point that the risk of major paravalvular leak for Silzone® valve recipients after 18 months is *no different* from the risk that non-Silzone® valve recipients bear.[3] Simply stated, Silzone® valve recipients today are at no greater risk for any complication than patients with conventional, non-Silzone coated heart valves, and there is no need for the increased level of medical monitoring that plaintiffs seek. (*Id.*)

**B. Plaintiffs Sue St. Jude Medical Claiming The Silzone® Heart Valve Is A Defective Product**

In the wake of the recall, patients filed lawsuits in various state courts, as well as filing some 40 federal cases that were then consolidated for MDL pretrial proceedings in the District of Minnesota. In their Consolidated

[3] In keeping with the results of the AVERT study, in the United States, no professional medical association, such as the American College of Cardiologists, no public agency, including the FDA, and no public health organization, such as the American Heart Association, has mandated or recommended any specialized or additional medical follow-up or monitoring for Silzone® valve recipients.

Amended Class Action Complaint—the operative pleading in this proceeding—plaintiffs alleged claims under the common law for strict liability, breach of warranty, negligence, and medical monitoring, and under certain of Minnesota's consumer protection statutes (specifically, the False Statements in Advertising Act, Minn. Stat. Ann. § 325F.67, the Deceptive Trade Practices Act, *id.* § 325D.44, and the Consumer Fraud Act, *id.* § 325F.69). (PA 4-29)

Plaintiffs then sought certification of two classes. First, plaintiffs argued for certification of a "personal injury class" of about 1,000 Silzone® heart valve recipients who had allegedly suffered personal injury, and sought damages under a variety of tort and warranty claims. Second, they asked for certification of a "medical monitoring class" of the more than 11,000 recipients of Silzone® heart valves, for diagnostic testing and preventative screening and for accumulation and study of epidemiological data. As an additional basis for both the personal injury and medical monitoring classes, plaintiffs alleged violations of the three Minnesota consumer protection statutes. (PA 30-100)

**C. The District Court Certifies Plaintiffs' Proposed Classes, But Immediately Recognizes That Differences Among The Claims And Claimants Requires Further Briefing And Revision To The Classes**

St. Jude Medical opposed certification of both classes. It provided an exhaustive, carefully detailed analysis demonstrating, among other things, why the significant differences in law and in fact among the putative class members' claims made class certification inappropriate under Rule 23. (PA 101-87) Nevertheless, on March 27, 2003, the district court issued its

first class certification order, essentially certifying two classes. (PA 374-413 (Exh. 7))

The district court initially certified a nationwide class of Silzone® heart valve recipients who allegedly suffered injuries leading to explant or death. Despite the individualized nature of the class members' claims, the court found that the class met Rule 23(a)'s requirements, that common issues predominated, and that class treatment was the superior method for resolution. (PA 378-95)

In connection with its personal injury certification, the district court made choice-of-law rulings that would eventually—and correctly—lead to the demise of the personal injury class. Applying Minnesota's choice-of-law principles, the court ruled that the law of the state where each class member's claim arose would govern that class member's tort and warranty claims, thus implicating the tort and warranty law of all the states. (PA 390-94) The court acknowledged the significant differences among the various states' laws, but ordered the parties to brief the question of how those differences could be handled. (PA 394-95)

When it came to the claims under Minnesota's consumer protection statutes, however, the court took a markedly different tack. In a ruling that too would have lasting effect, the court decided that the statutory claims were different from tort and warranty claims and that Minnesota's consumer protection statutes could apply *nationwide* without the need for any choice-of-law analysis. (PA 409-12) The result was a nationwide personal injury class

applying the tort and warranty law of all the states and the consumer protection law of only one—Minnesota—to the exclusion of all others. The district court then termed the certification "conditional," acknowledging the unresolved issues on divergent state law and potential subclasses. (PA 413)

The district court separately certified a class of all Silzone® heart valve recipients claiming funds for medical monitoring. (PA 396-408) Because the law on medical monitoring among the all the states differed, the court ruled that the class would include only those valve recipients from states that recognized medical monitoring claims. (PA 406-08) Once again, the court found that Minnesota's consumer protection statutes provided an additional basis for the nationwide medical monitoring class, just as they did for the personal injury class. (PA 409-12) Here too, the class certification was "conditional," pending further proceedings on which states belonged in the medical monitoring class. (PA 413)

**D. This Court Denies St. Jude Medical's Petition For Appeal Without Prejudice And The District Court Makes Further Class Rulings, Including Decertifying The Personal Injury Class**

St. Jude Medical petitioned this Court under Rule 23(f) to allow an appeal from the district court's March 27, 2003 class certification order. Plaintiffs responded that St. Jude Medical's petition was premature because the district court's order was conditional and subject to further proceedings. On May 6, 2003, this Court agreed with plaintiffs, and denied St. Jude Medical's petition. (PA 414) The Court made no ruling on the merits of St. Jude Medical's arguments, nor did it approve of the classes as certified by the district court. Rather, the Court stated that the petition was "premature" in

light of the contemplated further proceedings, and specifically noted that its denial was "without prejudice to [a] later reassertion after the discovery ordered by the district court has been completed and the court has entered its final class certification order." (*Id.*)

After this Court's denial, the parties submitted extensive briefing on whether the certified classes could survive the pronounced differences in state substantive law. For their part, plaintiffs described the differences as largely semantic and easily handled through subclasses. (PA 417-32) But just to account for these "semantic differences," plaintiffs required more than 25 subclasses. St. Jude Medical undertook a more comprehensive study of state law and contended that, when taking *all* of plaintiffs' liability theories into account, no two states applied the same law. There accordingly was no way to hold any kind of manageable, non-prejudicial classwide trial. (PA 433-93)

Following further oral argument, the district court issued its second conditional class certification order on January 5, 2004. (PA 628-53 (Exh. 13)) The court agreed with St. Jude Medical that "no two states' law is substantially alike when the Court considers all of plaintiffs' substantive claims" [PA 634], and thus it *decertified* the personal injury class insofar as it asserted tort and warranty claims [PA 632-35]. As the court put it: "Given the significant differences in state law and the number of plaintiffs' claims, combined with potential individual differences among the plaintiffs, the Court can no longer find that a class action would be the superior method of adjudication of these disputes." (PA 634)

The district court also limited the medical monitoring class to a subclass of Silzone® heart valve recipients implanted in states purportedly recognizing a stand-alone medical monitoring claim not requiring injury. (PA 635-39) (The court enumerated those states by name, resulting in a class of recipients from 14 states, later increased to 15 based on a letter that plaintiffs submitted.) Recipients implanted in states recognizing a claim other than a stand-alone non-injury claim would pursue those claims in their own individual civil actions.

Despite decertifying the personal injury class and significantly limiting the medical monitoring subclass, the court left intact the *nationwide* class asserting claims under Minnesota's consumer protection statutes, thus creating a redundant, dual-track resolution scheme—class members would pursue their tort claims (if any) in individual civil actions and their consumer protection claims in a classwide trial. (PA 629) The district court accordingly ordered plaintiffs to submit a proposed trial plan for classwide claims brought under those statutes. (PA 651)

**E. July 15, 2004: After All Parties Challenge The District Court's Order, The District Court Adds Three States To The Medical Monitoring Class And Declines To Decertify The Nationwide Consumer Protection Class**

After the January 5 order, both sides again briefed whether classwide resolution was feasible and, if so, on what issues and for whom. Plaintiffs disagreed with the district court's narrowing of their medical monitoring class and sought reconsideration. They asked the district court to add another 15 states. (PA 655-56, 665-78) Plaintiffs also filed a trial plan for a two-phase

consumer protection class trial—a first phase on liability and aggregated damages and a second phase for individual "proof of claim." The trial plan disclosed plaintiffs' intent to seek personal injury damages, specifically lost wages and medical expenses, even though the district court had decertified the personal injury class. Their plan also called for medical monitoring relief for every Silzone® heart valve recipient nationwide, despite the district court's decision limiting the medical monitoring class only to those states with a stand-alone medical monitoring claim. (PA 658-62)

As St. Jude Medical pointed out in response, plaintiffs' trial plan, when considered with the district court's prior rulings, offered a Byzantine resolution system which hopelessly fragmented the class and promised unwieldy and costly claim resolution. In a motion to decertify the consumer protection class, St. Jude Medical explained why plaintiffs' proposed classwide resolution was unlawful, unmanageable, wasteful, and posed a direct threat to the rights of the class members and St. Jude Medical alike. (PA 703-33)

Nevertheless, on July 15, 2004, the district court issued its third and final class certification order, expanding the medical monitoring class and endorsing a nationwide class action for personal injury and medical monitoring claims under Minnesota's consumer protection statutes. (PA 918-30 (**Exh. 24**)) The court subtracted one state from the medical monitoring class and added three (for a total of 17 states), finding that plaintiffs had provided authorities from those states supporting medical monitoring claims meeting the court's criteria. (PA 924-29) Notably, the court did not order plaintiffs to

submit a trial plan for their medical monitoring class, nor have they ever submitted such a plan.

The court also denied St. Jude Medical's motion to decertify the consumer protection class. In denying the motion, the court ruled summarily that "St. Jude does not raise new arguments, and the Court will not repeat its analysis of the consumer fraud law," even though St. Jude Medical raised issues prompted mainly by the court's subsequent rulings. (PA 923-24) Thus, although the district court entertained St. Jude Medical's motion, it did not address any of the significant shortcomings that St. Jude Medical identified, including those revealed by plaintiffs' recently filed trial plan.

## III

## CONSISTENT WITH RULE 23(f), THIS COURT IMMEDIATELY SHOULD ADDRESS THE COMPELLING CONSTITUTIONAL AND STATUTORY ISSUES THAT THE CLASS CERTIFICATION ORDERS PRESENT

Rule 23(f) provides that "[a] court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification . . . ." The rule's purpose is to make interlocutory review more readily available than by certification under 28 U.S.C. § 1292(b) or mandamus under 28 U.S.C. § 1651(a). Rule 23(f) comm. note (1998).

The "discretion" Rule 23(f) grants is "unfettered," and the court of appeals is accordingly entitled to exercise it "on the basis of any consideration that [it] finds persuasive." *Id.*; *see Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 833-35 (7th Cir. 1999) (reviewing the origins and purposes of Rule

23(f)). In light of these considerations, an appeal under Rule 23(f) is especially appropriate when a class certification order is "manifestly erroneous." *In re Lorazepam Litig.*, 289 F.3d 98, 105 (D.C. Cir. 2002); *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 145 (4th Cir. 2001). But courts of appeals have not insisted on manifest error and have indicated that appeal is warranted when an order is simply "erroneous," *Newton v. Merrill Lynch, Inc.*, 259 F.3d 154, 165 (3d Cir. 2001), or merely "questionable," *In re Lorazepam Litig.*, 289 F.3d at 105; *see also Prado-Steiman v. Bush*, 221 F.3d 1266, 1274 (11th Cir. 2000) (order revealed "substantial weakness" (emphasis in original)); *In re Delta Air Lines*, 310 F.3d 953, 960 (6th Cir. 2002) (order revealed "weakness").

Courts also have determined that an immediate appeal under Rule 23(f) is appropriate when a class certification order materially "raises the stakes of the litigation." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 293 (1st Cir. 2000); *Prado-Steiman*, 221 F.3d at 1272). A class certification order "can put considerable pressure on the defendant to settle, even when the plaintiff's probability of success on the merits is slight." *Blair*, 181 F.3d at 834. Thus, "when the stakes are large and the risk of a settlement . . . that does not reflect the merits of the claim is substantial, an appeal under Rule 23(f) is in order." *Id.* at 835; *In re Bridgestone/Firestone Inc.*, 288 F.3d 1012, 1016 (7th Cir. 2002) (main function of Rule 23(f) is to permit review before class certification coerces settlement); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (appeal under Rule 23(f) proper where class certification "puts a bet-your-company decision" to defendant and may induce a substantial settlement regardless of the merits).

As shown briefly in this petition's introduction and more fully in the arguments below, this proposed appeal readily meets Rule 23(f)'s criteria.[4]

## IV

## THE NATIONWIDE APPLICATION OF ONE STATE'S CONSUMER PROTECTION STATUTES TO DISPARATE PERSONAL INJURY CLAIMS OFFENDS THE CONSTITUTION AND RULE 23

### A. The Constitution Does Not Permit A Nationwide Personal Injury Class Action Applying The Consumer Protection Laws Of One State To The Exclusion Of All Others

Plaintiffs' nationwide consumer protection class is an unprecedented and unconstitutional effort to export Minnesota's laws to every other state, impermissibly displacing the other states' laws. This extraterritorial application of one state's law to support a nationwide class offends the Constitution in numerous ways.

---

[4] St. Jude Medical's Rule 23(f) petition is timely. Rule 23(f) states that such a petition must be submitted "within ten days after entry of the [class certification] order" from which appeal is sought. Although the district court entered orders on March 27, 2003 and January 5, 2004 relating to class certification in various respects, each was interim in nature and partial in scope. It was only on July 15, 2004 that the district court entered a class certification order that was definitive, comprehensive and final as to all disputed issues. On May 6, 2003, when this Court denied a prior petition submitted by St. Jude Medical as "premature," it stated it would entertain another petition "after the discovery ordered by the district court has been completed and the court has entered its final class certification order." (PA 414) That time has now come, with the district court's order of July 15, 2004 and with the parties' completion of related discovery.

**1. The Nationwide Class Offends The Commerce Clause Because It Purports To Use A Single State's Idiosyncratic Law To Regulate Commercial Activity Nationwide**

Each state has its own consumer protection law. *See, e.g.*, *Fink v. Ricoh Corp.*, 839 A.2d 942, 948, 974-82 (N.J. Super. Ct. Law Div. 2003) (surveying state laws on consumer fraud); *Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 352-55 (Tex. Ct. App. 2003) (surveying state laws on unlawful merchandising and related practices). These laws, as the Seventh Circuit noted in *In re Bridgestone/Firestone Inc.*, 288 F.3d at 1018, "vary considerably" and do so in many respects, including who may bring a claim, against whom, and on what grounds. *E.g.*, *Fink*, 839 A.2d at 974-82. None of these differences is mere happenstance. Each state's law is informed by its own mix of policies, with each state establishing the regime it deems appropriate for incentives and deterrents, benefits and burdens, for the producers and consumers of goods and services. As a result, as the Seventh Circuit further observed in *Bridgestone*, "courts must respect these differences [in state law] rather than apply one state's law." 288 F.3d at 1018.

Of the many reasons to prohibit using one state's law to displace all other law nationwide, the most basic is the Commerce Clause of the U.S. Constitution. In *Healy v. Beer Instit.*, 491 U.S. 324 (1989), the Supreme Court emphasized the Commerce Clause's "special concern both with the maintenance of a national economic union unfettered by state-imposed limitations on interstate commerce and with the autonomy of the individual States within their respective spheres." *Id.* at 335-36. To give controlling force throughout the nation to the law of any single state, in derogation of the

law of all the others, would be intolerable under the Commerce Clause. "This kind of potential . . . national regulation . . . is reserved by the Commerce Clause to the Federal Government and may not be accomplished piecemeal through the extraterritorial reach of individual state [laws]." *Id.* at 340.[5]

Under these seminal principles, the Commerce Clause will not tolerate a nationwide class action applying one state's consumer laws on an extraterritorial and exclusive basis. For example, faced with a proposed nationwide application of a Florida consumer fraud statute, the district court in *Montgomery v. New Piper Aircraft*, 209 F.R.D. 221, 228-31 (S.D. Fla. 2002), bluntly stated that the "Commerce Clause to the United States Constitution precludes the application of [the Florida statute] to each and every class member's claim." In so holding, the court cited Supreme Court authority, including *Healy*, holding that a state, through its courts, cannot export its legislation on a nationwide basis.

Here, the class certification order improperly embraces this prohibited result by exporting Minnesota's consumer statutes to jurisdictions nationwide, effectively imposing nationwide standards for commerce involving Silzone® valves. Under the aegis of Minnesota's statutes, the class certification order

---

[5] *See also BMW of North Am. Inc. v. Gore*, 517 U.S. 559, 571-72 (1996) ("[T]he Constitution has a 'special concern both with the maintenance of a national economic union unfettered by state-imposed limitations on interstate commerce and with the autonomy of the individual States within their respective spheres . . . .'"); *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 582-83 (1986) (one state "may not 'project its legislation into [others]'").

purports to offer nationwide remedies—including damages and medical monitoring—that other state legislatures have rejected or have allowed only under certain circumstances. The order operates on the premise that Minnesota statutory law can govern personal injury claims nationwide. The Court should intervene now to decide whether this questionable and sweeping proposition should be the law of this Circuit.

**2. The Nationwide Class Offends The Due Process And Full Faith And Credit Clauses Because Class Members (And St. Jude Medical) Have The Right To Proceed Under The Properly Chosen State Law**

Before a court can apply one state's law extraterritorially in a multistate class action, the Constitution requires proper analysis of which state law should apply to the various class members' claims. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816-17 (1985) (performing choice-of-law analysis first, before ruling that constitution forbid classwide application of Kansas law); *Georgine v. Amchem Prods.*, 83 F.3d 610, 627 (3d. Cir. 1996) (holding that class certification scrutiny includes "individualized choice of law analysis to each plaintiff's claims"), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521, U.S. 591 (1997)).[6] In performing that analysis, a district court cannot apply one state's law to a multistate class action unless the state has "a 'significant contact or significant aggregation of contacts' to the claims

[6] Under Minnesota's choice-of-law rules, a Minnesota-based court must look to certain "choice-influencing" factors, consisting of predictability of results, maintenance of interstate and international order, simplification of the judicial task, application of the better rule of law, and—crucially—advancement of the governmental interest of each possible forum. *See Nodak Mutual Ins. Co. v. American Family Mut. Ins. Co.*, 604 N.W.2d 91, 93-94 (Minn. 2000).