asserted *by each member of the plaintiff class*, contacts 'creating state interests,' in order to ensure that the choice of [its] law is not arbitrary or unfair.'" *Phillips Petroleum*, 472 U.S. at 821-22 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)) (plur. opn.) (emphasis added).[7]

A recent example again is *Montgomery*, 209 F.R.D. at 228-31. In that case, the district court cited due process as a separate reason to reject a nationwide class applying a Florida consumer statute, concluding that the "Due Process Clause of the Constitution prohibits application of [the Florida statute] to a nationwide class." *Id.* at 229. The district court acknowledged that the defendant manufactured the products at issue (airplanes) in Florida. *Id.* But that Florida-based activity was not sufficient to justify applying Florida law to every transaction nationwide. *Id.*; *see also Bridgestone*, 288 F.3d at 1016 (rejecting application of a single state's law exclusively to class members' claims nationwide: "Neither Indiana nor any other state has applied a uniform place-of-the-defendant's headquarters rule to products-liability cases."); *Lyon v. Caterpillar*, 194 F.R.D. 206, 213 (E.D. Pa. 2000)

---

[7] *See Georgine*, 83 F.3d at 627 (citing *Shutts*, 472 U.S. at 823, and stating that due process requires a trial court to "apply an individualized choice of law analysis to *each plaintiff's claims*" (emphasis added)); *accord In re Jackson Nat'l Life Ins. Litig.*, 183 F.R.D. 217, 223 (W.D. Mich. 1998) ("[C]hoice-of-law analysis is a matter of due process . . . not to be altered in a nationwide class action simply to [avoid] management difficulties."); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997) ("While it might be desirable, for the sake of efficiency, to settle upon one state . . . and apply its law in lieu of the 49 jurisdictions, due process requires individual consideration of the choice of law issues raised by each class member's case before certification.").

("Applying the Pennsylvania consumer fraud act to all the putative class members' claims would be a violation of the due process rights of those plaintiffs who do not live in Pennsylvania and/or who did not purchase their boats in Pennsylvania.").

Here, the district court's order is noteworthy—and erroneous—for its failure to conduct *any* choice-of-law analysis with respect to the consumer protection claims. Because consumer protection laws around the country differ from Minnesota's and because the vast majority of the class members' claims have no direct connection to Minnesota, a choice-of-law analysis for each class member's claims was a constitutional imperative.

But the district court avoided it, citing the "specific provisions" of Minnesota's consumer protection statutes as authorizing "any person" to bring a claim. (PA 410) Although this language broadly grants standing to sue, as consumer protection statutes typically do, it says nothing about the separate and conceptually distinct issue of what state law should apply. To be sure, the language in no way suggests—nor could it consistent with the Constitution—that the Minnesota statutes should be applied to the exclusion of all other laws. *See Fink*, 839 A.2d at 972-91 (New Jersey's Consumer Fraud Act does not displace the analogous law of other states); *Tracker Marine*, 108 S.W.3d at 352-63 (same as to Missouri's Unlawful Merchandising and Practices Act). Nor is there any indication that the Minnesota legislature intended such a radical application of its law-making authority. The district court's avoidance of the choice-of-law analysis is manifest error in and of itself.

Further, if the district court had confronted the choice-of-law issue, it would properly have concluded that Minnesota lacks sufficient contacts with each class member's claims to apply its consumer protection law to all Silzone® claims nationwide. St. Jude Medical manufactured parts of the Silzone® heart valves in Minnesota, but it sold them to medical providers in transactions nationwide. Physicians likewise used the Silzone® valves to treat thousands of patients across the country, the vast majority of which had no connection whatsoever to Minnesota. Under these circumstances, the district court's unilateral displacing of the laws of other interested states in favor of Minnesota cannot be reconciled with *Phillips Petroleum*, or the Due Process and Full Faith and Credit Clauses. In sum, the district court reached a legally indefensible result for legally erroneous reasons.

The district court below purported to find support in the recent opinion in *Peterson v. BASF Corp.*, 675 N.W.2d 57 (Minn. 2004), but that case is inapposite and offers no useful guidance. In *Peterson*, a Minnesota court certified a multistate class under the New Jersey Consumer Fraud Act. *Id.* at 63. On an initial appeal, the intermediate appellate court reversed summary judgment in the defendant's favor and affirmed the class certification. *It did not discuss* the trial court's choice of law. *Id.* at 64. After remand and a trial on the merits, the trial court entered judgment against the defendant, and the defendant appealed. *Id.* The intermediate appellate court affirmed, but again *did not discuss* choice of law. *Id.* at 65. The Minnesota Supreme Court also affirmed, but it too *did not address* the trial court's multistate application of New Jersey law, expressly ruling that the defendant had waived the issue. *Id.* at 67-68. The district court here drew an inference from the Minnesota

courts' judicial silence, even when the Minnesota Supreme Court rejects drawing such inferences. *See Willis v. County of Sherburne*, 555 N.W.2d 277, 282 (Minn. 1996) (Minnesota Court of Appeals decision "does not represent a definitive statement of the law of Minnesota until adopted by this court," even where the Minnesota Supreme Court denied review).

Again, the district court has created precedent in this Circuit for overlooking constitutional guarantees for the sake of convenience. That is to say, it has imposed one state's law where the several states' laws should apply without squarely confronting the constitutional quandary it has created along the way. This Court again should intervene to decide if this precedent should prevail in this Circuit.

**3. The Nationwide Class Offends The *Erie* Doctrine And The Rules Enabling Act Because It Purports To Invoke A Procedural Rule (Rule 23) To Create Substantive Rights For Class Members Outside Minnesota**

As the Supreme Court said in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1998), "[N]o reading of [Rule 23] can ignore the [Rules Enabling] Act's mandate that 'rules of procedure "shall not abridge, enlarge or modify any substantive right [under state law]."'" *Id.* at 848 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) and 28 U.S.C. § 2072(b)). Federal courts thus cannot invoke Rule 23 to create rights that do not otherwise exist under state law.

That prohibited result is precisely the one that the district court embraced. By certifying a class under Minnesota's consumer protection statutes, the district court has given the entire class claims that other states

deny. For example, Minnesota's private attorney general statute gives class members a potential claim for damages for consumer law violations. But other states' various consumer protection laws differ widely on if, when, and in what amount damages are available; some statutes do not allow damages at all. *E.g.*, Cal. Bus. & Prof. Code §§ 17200, 17203 (permitting only equitable remedies for unfair business practices); Iowa Code Ann. § 714.16(7) (same). The district court also has allowed a *nationwide* medical monitoring claim (discussed in more detail later), even though most states do not permit a medical monitoring remedy or cause of action.

Using a federal procedural rule to extend rights under one state's statutes beyond state borders starkly violates *Erie*, another constitutional infirmity in the district court's class certification orders. These infirmities are neither minor nor harmless, as they flow directly from the district court's projection of Minnesota's statutes beyond state borders in an unprecedented and uninvited way. They also implicate fundamental protections that the Supreme Court has established under core provisions of our Constitution. Because the district court's *laissez-faire* treatment of the Constitution should not be the law of this Circuit, this Court immediately should intervene.

**B. The Nationwide Class Action Certified Under Minnesota's Consumer Protection Statutes Violates Rule 23 Because It Threatens The Class Members' Rights And Is An Unmanageable Nationwide Products Liability Class Action In Disguise**

**1. The Consumer Protection Class Places The Class Representatives In An Irreconcilable Conflict Of Interest With The Class Members Because It Overtly Splits The Class Members' Claims**

In accepting plaintiff's proposed consumer fraud class separate and apart from the now-decertified personal injury class, the district court has placed the class representatives directly in conflict with the absent class members. It has done so by splitting the class members' claims and sending them on divergent paths to resolution.

Class representatives do not adequately represent the interests of absent class members when they selectively prosecute claims or limit their damages requests. The reason is that doing so creates the risk that a subsequent lawsuit by a putative class member raising those additional claims will be barred by the doctrine of res judicata. In *Thompson v. American Tobacco Co.*, 189 F.R.D. 544 (D. Minn. 1999), for example, plaintiffs sought to certify a statewide smoking class proceeding only with claims for injunctive relief and medical monitoring, while reserving their individual injury and damage claims for later lawsuits. The district court, however, denied class certification, partly because the class representatives were not adequate. *Id.* at 551. The court reasoned that, under Minnesota law, the doctrine of res judicata precludes subsequent litigation of not only those issues actually litigated in a prior suit but also those issues which might have been litigated. *Id.* at 550. The court also recognized that a subsequent court might not honor a

reservation of personal injury claims and damages. *Id.* at 551. As a result, the court found plaintiffs' scaled-down request for class treatment to be antagonistic to the interests of absent class members rendering them inadequate class representatives.

Similarly, in *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595 (S.D.N.Y. 1982), the plaintiffs sought certification of a class of tire owners. But they narrowed their claims to assert only breach of the implied warranty of merchantability and to claim only "economic" and punitive damages. *Id.* at 599. Under these circumstances, the district court denied class certification for reasons including that the class representatives were not adequate. *Id.* at 606-07. By pursuing selected claims, and assuming that class members could pursue other claims in other courts, the plaintiffs had "tailored the class claims in an effort to improve the possibility of demonstrating commonality." *Id.* at 606. The price, the court said, was that the plaintiffs were "presenting putative class members with significant risks of being told later that they had impermissibly split a single cause of action." *Id.*[8]

---

[8] *See also City of San Jose v. Superior Court*, 12 Cal. 3d 447, 464 (1974) (reversing class certification, holding that class representative's failure to assert claims reasonably expected to be raised by class members breached representative's fiduciary duty); *Linkous v. Medtronic, Inc.*, No. 84-1090, 1985 WL 2602, at *4-*5 (E.D. Pa. Sept. 4, 1985) (denying class certification despite plaintiffs' strategy of carving out claims for pain and suffering to eliminate individualized inquiry; "[t]he approach of the plaintiffs to exclude individual issues . . . undermines the raison d'etre of Rule 23").

Here, the district court has split the class members' claims. To begin with, the district court has certified only the plaintiffs' damages and injunctive relief claims under Minnesota's consumer protection statutes. The class members, according to the district court, will have to pursue damages claims (if any) under negligence, strict product liability, breach of warranty, etc. in individual civil actions. This course sets up a two-track system under which class members will be pursuing damages arising from the same events—the implantation of a Silzone® heart valve—in separate forums. Under the circumstances, a judgment binding the class will almost certainly preclude class members from bringing individual claims, which can only operate to the class members' detriment

In addition to splitting the class members' personal injury claims, plaintiffs also are seeking only selected elements of damages—"cost of all medical care" including the cost of the valve and the cost of explant surgery and "wage loss" because of hospitalization for explant surgery. (PA 658-62) They eschew other damages claims typical of personal injury lawsuits, such as emotional distress and pain and suffering. The authorities cited above show that class representatives cannot shave off elements of damages that class members would be expected to seek.

The class that plaintiffs' trial plan defines—a nationwide class of injured and non-injured patients pursuing damages and medical surveillance costs—clearly risks the class members' individual rights, as it purports to claim personal injury damages on behalf of all Silzone® patients. That includes the very class members that the district court determined should pursue personal

injury claims, if they have them, in individual civil actions. Those class members will almost certainly not be allowed to have it both ways. *See, e.g.*, *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 55-57 (1st Cir. 2004) (class settlement under 50 states' consumer protection laws precluded class members' subsequent individual actions for additional damages allegedly caused by same product); *Newton v. Southern Wood Piedmont Co.*, 163 F.R.D. 625, 634 (S.D. Ga. 1995) (finding that res judicata barred class representative's personal injury damages claim from chemical exposure because the representative previously settled suits for property damage, medical monitoring and personal injury stemming from exposure).

The district court's order unnecessarily risks the rights of the absent class members in pursuit of a claim resolution approach that defies logic and the law. Once again, this Court should intervene and determine if the law in this Circuit will tolerate such a incongruous result.

**2. The Consumer Protection Class Violates Rule 23 Because It Is An Unmanageable Morass, Just Like The Now-Decertified Tort-Based Personal Injury Class**

The district court rightly decertified a nationwide Silzone® personal injury class as unmanageable, insofar as the class asserted tort and warranty claims. It likewise should have refused to certify this nationwide consumer protection class as a poorly disguised attempt to resurrect that properly dispatched personal injury class. Because of the discrete issues inherent in nationwide product liability actions raising claims for personal injuries, the drafters of the 1966 revisions to Rule 23 explicitly stated that a class action is not an appropriate procedural vehicle for those kinds of cases:

> A "mass accident" resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, affecting the individuals in different ways. In this circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried.

*Amendments to Rules of Civil Procedure*, 39 F.R.D. 69, 103 (1966).

Federal courts therefore overwhelmingly have refused to certify nationwide product liability classes making claims for personal injuries. As the Ninth Circuit has observed in that context, "No single happening or accident occurs to cause similar types of physical harm . . . . No one set of operative facts establishes liability. No single proximate cause applies equally to each potential class member . . . . Furthermore, the alleged tortfeasor's affirmative defenses . . . may depend on facts peculiar to each plaintiff's case." *In re Northern Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 853 (9th Cir. 1982).

In the years that have followed these pronouncements, plaintiffs repeatedly have sought to certify personal injury cases as nationwide class actions. With rare exceptions, they have failed before the Supreme Court[9] and

---

[9] *Amchem Prods.*, 521 U.S. 591 (nationwide products liability class denied based on individual issues and differences in applicable state law).