# EXHIBIT 8

No. **04-8009**

# In the United States Court of Appeals for the Eighth Circuit

## In re St. Jude Medical, Inc. Silzone® Heart Valve Products Liability Litigation

Lester Grovatt, Beatrice Bailey, Levy D. Redden, Bonnie L. Sliger, and Joe W. Sanchez, on behalf of themselves and all others similarly situated, Plaintiffs and Respondents,

vs.

St. Jude Medical, Inc., Defendant and Petitioner.

---

**ST. JUDE MEDICAL, INC.'S REPLY TO RESPONDENTS' OPPOSITION TO THE PETITION UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(f) FOR PERMISSION TO APPEAL A CLASS CERTIFICATION ORDER**

---

From a Class Certification Order by the
United States District Court for the District of Minnesota
Multidistrict Litigation No. 01-1396 (JRT/FLN)
The Honorable John R. Tunheim

---

Steven M. Kohn
James C. Martin
Steven J. Boranian
REED SMITH LLP
1999 Harrison Street
Suite 2400
Oakland, CA 94612
Telephone: (510) 763-2000
Facsimile: (510) 273-8832

Michael T. Nilan
Tracy J. Van Steenburgh
HALLELAND, LEWIS, NILAN, SIPKINS & JOHNSON, P.A.
600 Pillsbury Center South
220 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 338-1838
Facsimile: (612) 338-7858

Eric J. Magnuson
RIDER BENNETT, LLP
333 South Seventh Street
Suite 2000
Minneapolis, MN 55402
Telephone: (612) 340-8900
Facsimile: (612) 340-7900

*Attorneys for Defendant and Petitioner*
*St. Jude Medical, Inc.*

## I. INTRODUCTION

Interlocutory review is appropriate here so that this Court can clarify whether the district court's novel and unprecedented class certification orders should stand as Eighth Circuit law. Unless the Court settles this issue now, the district court will begin to adjudicate a *nationwide* class action under the consumer fraud regime of a *single* state (Minnesota), possibly awarding both personal injury and medical monitoring damages. The district court also intends to try a separate multi-state medical monitoring class, even though highly individualized medical issues predominate. Both of these classes defy the Constitution, the Federal Rules, and well-established authority, and immediate appellate review is necessary to determine if other courts in the Eighth Circuit should be allowed to follow this risky course.

Respondents downplay the ruling below by making a jury argument on their liability claims and defending the district court's ruling on its merits. Even a cursory analysis reveals, however, that there is no record support for respondents' inflammatory allegations. The record also shows that Silzone® valve recipients face no greater risks than other heart valve patients. Further, respondents' legal defense, while vigorously advanced, is incomplete at best.

More fundamentally, though, respondents' opposition does not address the significance of the immediate issue facing this Court: Whether the district court's groundbreaking decision meets the requirements for Rule 23(f) review. For example, respondents do not refute (because they cannot) that the district court's class certification orders:

- Are unprecedented under Rule 23 and not supported by opinions from

this or any other Circuit;

- Implicate serious and novel questions under the *Erie* Doctrine, the Rules Enabling Act and the Constitution;
- Will create unwieldy, dual-track litigation; and
- Will threaten the rights and interests of absent class members and will force St. Jude Medical to endure multiple trials in multiple fora.

Class certification invariably raises the stakes in any litigation. It also requires courts to explore the outer limits of the Constitution, the Federal Rules, and longstanding jurisprudence. For these reasons, Rule 23(f) encourages interlocutory review so that our appellate courts can immediately settle complex or cutting-edge legal questions and correct manifest error, before the stakes become too great for the defendant to overcome. And while respondents would simply have this Court gloss over these serious concerns to deny St. Jude Medical's petition, Rule 23(f) counsels otherwise.

## II. THE FACTUAL AND LEGAL ARGUMENTS IN RESPONDENTS' OPPOSITION DO NOT ADDRESS WHETHER APPELLATE REVIEW IS APPROPRIATE UNDER RULE 23(F)

### A. Respondents' "Factual" Assertions Are Unsupported, Incorrect And Do Not Address Whether Rule 23(F) Review Is Appropriate

Respondents level a host of inflammatory factual allegations against St. Jude Medical and its Silzone® valve. (Opposition at 1-5) Respondents, however, do not cite to any portion of the record—or anything at all—supporting their allegations. Moreover, respondents never explain how their unsupported "facts" are germane to the issues raised in this petition and should be disregarded.

To set the record straight, St. Jude Medical simply notes that reality is quite different from respondents' rhetoric. Most significantly, the current data from the largest randomized, multinational clinical study (called AVERT) of the Silzone® valve shows that Silzone® recipients do not face any greater risk of death or complications from their Silzone® valves than patients with other heart valves. (Pet. at 4-5) Thus, Silzone patients face no greater need for medical monitoring than the average valve recipient. (*Id.*) In any event, all heart valve recipients (including Silzone®) need individually tailored, post-implant medical care. (PA 479-480) Respondents' assertion that a district court should usurp these patients' individualized treatment regimes is medically unnecessary and undesirable.

**B. Respondents' Legal Analysis Is Unsupportable, Incomplete And Does Not Address Whether Rule 23(F) Review Is Appropriate**

Respondents also suggest that this Court should deny immediate review because the district court's interpretation of controlling law is defensible. But regardless of whether the district court's class certification orders are correct (which they are not), St. Jude Medical's Rule 23 (f) petition raises a host of other issues, including whether such a novel interpretation of the Constitution, the Federal Rules, and caselaw should now stand as controlling precedent in this Circuit. *See* Fed. R. Civ. Proc. 23 advisory committee's note, 1998 Amendments ("Permission [for interlocutory appeal] is most likely to be granted when the certification decision turns on a novel or unsettled question of law . . . ."); *see also Waste Management Holdings v. Mowbray*, 208 F.3d 288, 293-94 (1st Cir. 2000) (holding that Rule 23(f) appeal should be granted in "those instances in which an appeal will permit the resolution of an unsettled legal issue that is important to the particular litigation as well as important in itself").

Even so, respondents' defense of the district court's orders does not provide

a basis to deny interlocutory review:

**Choice of Law** – Respondents (and the district court) try to distill the constitutional choice of law questions in this case to an issue "of simple standing." (Oppo. at 17, 21-25) But a broad grant of standing to "any person" under Minnesota's consumer fraud statutes does not, as respondents contend, relieve the district court from conducting the choice-of-law analysis that the Constitution requires. *See, e.g., Fink v. Ricoh Corp.*, 839 A.2d 942, 973-88, 991-93 (N.J. Super. Ct. Law Div. 2003) (even though New Jersey consumer fraud statutes conferred broad grant of standing, court conducted detailed choice of law analysis and denied class certification); *Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 352-54 (Tex. Ct. App. 2003) (same; claims brought under Missouri consumer fraud statute).[1]

**Commerce Clause** – Respondents also suggest that the district court's class certification decision is correct under the dormant commerce clause analysis. (Oppo. at 19-20) But St. Jude Medical's petition does not raise dormant commerce clause issues. As St. Jude Medical has shown, the district court's projection of Minnesota statutes into other states constitutes *direct* regulation of interstate commerce and should be struck down "without further inquiry." *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 578-79 (1980).

**Claim-Splitting** – Respondents also defend the district court's decision to split the class members' claims by contending that (1) there is an exception to

[1] Respondents' citation to the *Lutheran Brotherhood* case, 201 F.R.D. 456 (D. Minn. 2001), does not compel a different result. Although the defendant's due process challenge to certifying a multi-state class under Minnesota's consumer fraud statutes was declined in that case, Judge Magnuson quickly pointed out that his was yet another decision in a large body of "vanishing premium" insurance cases addressing class certification. *See id.* at 458. The case did not involve, as here, a medical monitoring class certified under Minnesota's consumer fraud laws. If anything, the collective force of Judge Magnuson's decision in *Lutheran Brotherhood* and Judge Tunheim's decision here makes an even more compelling case for granting St. Jude Medical's petition: this Court must clarify whether the Eighth Circuit is in line with other jurisdictions that require a constitutionally-mandated choice of law analysis before extraterritorial application of state statutes, or whether the Eighth Circuit will go it alone based on these two cases.

established claim preclusion rules for class actions, (2) the district court can expressly "reserve" claims for absent class members, and (3) proper class notice can resolve these problems. (Oppo. at 27-32). These arguments fail.

"There is of course no dispute that elementary principles of prior adjudication of a judgment in a properly entertained class action is binding on class members in any subsequent litigation. . . . *Basic principles of res judicata (merger and bar or claim preclusion) and collateral estoppel (issue preclusion) apply.*" *Cooper v. Federal Reserve Bank*, 467 U.S. 867, 875-76 (1984) (emphasis added). Moreover, no authority holds that a court can "reserve" claims for individual class members. The Eighth Circuit case respondents cite, *Marshall v. Kirkland*, 602 F.2d 2828 (8th Cir. 1979), does not involve any such blanket reservation, but merely holds that class members could pursue individual claims where the class representatives *did not* pursue individual relief and failed to notify class members that individual relief would be waived. *See id.* at 1298. No magic language in a class notice can cure this claim-splitting problem. Merely providing notice and the chance to opt-out "is insufficient to protect the rights of putative class members who would want to seek remedies other than those chosen by the [class] representatives." *Clark v. Experian Information Solutions, Inc.*, No. Civ. A. 8:00-1217-24, 2001 WL 1946329, at *4 (D.S.C. Mar. 19, 2001).[2]

More fundamentally, respondents' light regard for claim-splitting displaces the two most basic purposes of class actions. That is, respondents' class-mandated, dual track resolution system guarantees duplicative litigation—thereby

[2] Respondents' authority, *In re Universal Service Fund Telephone Billing Practices Litig.*, 219 F.R.D. 661 (D. Kan. 2004), does not hold otherwise and certainly does not hold that a properly drafted class notice can cure claim-splitting. Rather, the *Universal Service* court held that the risk of claim preclusion did *not* render the class representatives inadequate because they waived one theory of relief (fraud). *Id.* Although the court cautiously noted that the class notice should inform class members that a judgment might preclude individual fraud actions, the court *expressly declined* to hold that notice and opt out procedures could resolve conflicts between class members and named representatives. *Id.* at 670 n.5.

undermining "the efficiency and economy of litigation, which is a principal purpose of the [class action] procedure." *American Pipe & Constr. & Co. v. Utah*, 414 U.S. 538, 553 (1974). In addition, respondents' dual track mandate guarantees that St. Jude Medical cannot buy its peace from resolution by a classwide settlement or trial. This result too is at odds with long-recognized class action principles. *See Hansberry v. Lee,* 311 U.S. 32, 42 (1940) ("It is familiar doctrine of the federal courts that members of a class not present as parties to the litigation may be bound by the judgment . . . .").

**Medical Monitoring** – Respondents next urge that medical monitoring relief was properly certified because it can be administered without regard to the individualized needs of the patient. However, the cases respondents cite in support of their position (Oppo. at 36-39) are quickly dispatched. Both the *Diet Drug* and *Inter-Op Prosthesis* cases addressed an entirely different situation—the approval of settlement classes. In that context, when considering a settlement class, "individual issues which are normally present in personal injury litigation become irrelevant, allowing the common issues to predominate." *See In re Inter-Op Prosthesis Liab. Litig.*, 204 F.R.D. 330, 347 (N.D. Ohio 2001)(citing *In re Diet Drugs*, 2000WL 1222042 at *43 (E.D. Pa. 2000)). This rationale is unique to a settlement class and , where "the settlement's objective criteria provide for an objective compensation scheme." *Id.* These principles are of no moment here, where no settlement class is involved.

*In re Telectronics Pacing Systems, Inc.*, 172 F.R.D. 271 (S.D. Ohio 1997) is similarly inapplicable. The *Telectronics* court approved two subclasses of medical monitoring claims because the case before it involved a clearly diagnosable "signature wound"—a punctured blood vessel from a pacemaker wire. *See id.* at 289; *see also In re Paxil Litig.*, 212 F.R.D. 539, 547 (C.D. Cal. 2003) (noting that

*Telectronics* was "an exceptional case" in which general causation rules did not apply). However, the record here shows that complications allegedly suffered by Silzone® valve recipients are anything but signature. These complications are well known and can occur over time for many different reasons that have nothing to do with the valve itself. (PA 480-481)

Respondents' efforts to defend the district court's legal reasoning simply must fail. The need for Rule 23(f) review is particularly compelling in this instance. *See In re Lorazepam & Chlorazapate Antitrust Litig.*, 289 F.3d 98, 105-06 (D.C. Cir. 2002) (following the *Mowbray* case, discussed *ante* p. 4, and others approving interlocutory review when the certification decision presents an unsettled and fundamental issue of law relating to class actions).

## III. CONCLUSION

St. Jude Medical has advanced compelling reasons for this Court to grant interlocutory review, and respondents' opposition does nothing to change that. The district court's class certification orders defy well-established law, the Federal Rules, and the Constitution. If this course continues, St. Jude Medical will face a fractured, multi-track resolution scheme that offers, in reality, no resolution at all.

Rather than confront the significance of the district court's decision, respondents only offer what amounts to a jury argument on their liability claims. Respondents also try to defend the district court's decision on the merits. But respondents never address the real issue now before this Court: Whether the district court's unprecedented approach to class certification should receive immediate appellate review. In the end, regardless of whether this Court ultimately agrees with the district court's position, Rule 23(f) authorizes interlocutory review in exactly this circumstance—where class certification

involves issues of legal novelty, complexity and import. For these reasons, the Court must grant St. Jude Medical's Rule 23(f) petition.

DATED: August 18, 2004

Respectfully Submitted,

REED SMITH LLP

HALLELAND LEWIS NILAN
SIPKINS & JOHNSON, P.A.

RIDER BENNETT LLP

By______________________
Eric J. Magnuson

Attorneys for Defendant and Petitioner
St. Jude Medical, Inc.