# EXHIBIT 15

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| **IN RE: ST. JUDE MEDICAL, INC.,** | **:** | **MDL NO. 01-1396 (JRT/FLN)** |
| **SILZONE HEART VALVES PRODUCTS** | **:** | |
| **LIABILITY LITIGATION** | **:** | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR**
**MOTION TO CERTIFY CONSUMER PROTECTION CLASS**

# TABLE OF AUTHORITIES

## CASES

Curtis v. Philip Morris Companies, Inc., 2004 WL 2776228 (Minn. Dist. Ct. November 29, 2004) ..... 2

Davis v. Furlong, 328 N.W.2d 150 (Minn. 1983) ..... 8

Florida State Board of Administration v. Law Engineering and Environmental Services, Inc., 262 F. Supp. 2d. 1004 (D. Minn. 2003) ..... 8

Group Health Plan, Inc. v. Philip Morris Inc., 621 N.W.2d 2 (Minn. 2001) ..... 1, 10

Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1988) ..... 10

In re Lutheran Brotherhood Var. Ins. Prod. Co., Sales Practices Litig., 201 F.R.D. 456 (D. Minn. 2001) ..... 10

In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 61 (D. Mass. 2005) ..... 10

In re St. Jude Medical, Inc., Silzone Heart Valves Products Liability Litigation, No. 04-3117, 425 F.3d 1116, at 1120 (8th Cir. 2005) ..... 5

Int'l Union of Operating Eng'r Local No. 68 Welfare Fund v. Merck & Co., ____ A.2d ___, 2006 WL 827285 (N.J. Super. Ct. App. Div. March 31, 2006) ..... 2, 9

Kociemba v. G.D. Searle & Co., 680 F. Supp. 1293 (D. Minn. 1988) ..... 1

Phillips Petroleum v. Shutts, 472 U.S. 797 (1985) ..... 6, 10

St. Jude Medical ("SJM") filed a fifty-nine page brief opposing Plaintiffs' Motion to certify a nationwide UDAP class applying Minnesota's Consumer Fraud law. In essence, SJM recognizes that this Court correctly certified this case as a nationwide class action applying Minnesota's UDAP law because SJM illegally marketed Silzone-coated valves to plaintiffs. The marketing program was conceived, implemented and directed from SJM's St. Paul headquarters. SJM's recognition of this fact is implied by:

(1) the small portion of its brief that actually addresses the question that the Eighth Circuit directed this Court to determine, *i.e.*, whether under Minnesota's choice of law doctrine, Minnesota's consumer protection laws can and should apply nation-wide; and

(2) the protracted discourse SJM devotes to recasting this action solely as a products liability medical monitoring case masquerading as a consumer fraud action.

SJM's revisionist view and strident rhetoric notwithstanding, this case is neither controversial nor unheralded in what it alleges or seeks. Plaintiffs seek to find SJM liable for deceptive advertising of a medical product and for selling a misbranded, adulterated, and ineffective as well as unsafe product. Prosecuting this misconduct is hardly novel[1] and is within the purview of Minnesota's consumer protection (UDAP) laws. Group Health Plan, Inc. v. Philip Morris Inc., 621 N.W.2d 2 (Minn. 2001) (applying Minnesota's UDAP laws to recover medical costs associated with deceptive marketing); Kociemba v. G.D. Searle & Co., 680 F. Supp. 1293, 1303-1305 (D. Minn. 1988) (applying Minnesota's UDAP laws in interuterine device case); Curtis v. Philip Morris

[1] Indeed, this is the centennial anniversary of the Food, Drug and Cosmic Act of 1906 that prohibits, among other things, the sale of defective, misbranded and adulterated drugs.

Companies, Inc., 2004 WL 2776228 (Minn. Dist. Ct. November 29, 2004) (applying Minnesota's UDAP laws in a "light" tobacco class action case) (Exh. 111). Accord Int'l Union of Operating Eng'r Local No. 68 Welfare Fund v. Merck & Co., ____ A.2d ___, 2006 WL 827285 (N.J. Super. Ct. App. Div. March 31, 2006) (applying New Jersey's UDAP law to nationwide class action for payments on VIOXX prescriptions based on defendant's deceptive marketing practices) (Exh. 112).

## I. Plaintiffs Seek Only Minnesota's Consumer Fraud Remedies.

The relief Plaintiffs seek — which today is no different from the relief they sought when the action was first filed — is recovery for damages caused by deceptive advertising and misbranded products. In addition, Plaintiffs seek equitable relief in the nature of a medical monitoring program, an epidemiological study, or both to determine the long-term effects of the silver coating in their bodies. While SJM says otherwise, such equitable relief does not differ from an injunction to prevent further deceptive advertising or sale of a misbranded product. The statute is remedial and is intended not only to stop but to deter certain conduct. This Court has discretion to fashion the remedy that will best serve the statutory goals. The Court will ultimately determine what relief will be available to the fact-finder. The form of the relief, however, is not a factor in determining whether class certification is appropriate. If Minnesota law applies, class members will receive, consistent with Minnesota's choice of law doctrine, the relief that Minnesota law affords.[2]

[2] Of course, if a class member feels his or her local consumer law is more advantageous, he or she can opt-out of the class action litigation.

The Eighth Circuit directed that this Court consider only whether it could, in its discretion, certify a nationwide class under Minnesota's UDAP provisions. If the Eighth Circuit viewed this action solely as a "medical monitoring case," as Defendant would like to call it, the Eighth Circuit would have simply reversed the certification as it did the 17-state medical monitoring class. But, the Eighth Circuit only reversed class certification for the 17-state medical monitoring class and remanded for this Court to conduct a 50-state analysis to determine whether Minnesota's UDAP laws could apply nationwide. Thus, the only role for medical monitoring here is as one possible remedy in the event of a substantive finding of one or more violations of Minnesota's UDAP laws.

## II. The Court Need Not Re-Address the Elements of Rule 23.

SJM's long discourse on the Rule 23 elements is irrelevant because this Court already performed that analysis, which the Eighth Circuit accepted. The Eighth Circuit's mandate to this Court is to perform a 50-state analysis to determine whether the Court properly determined that application of Minnesota's UDAP was correct. The Eighth Circuit did not remand this case to reanalyze the Rule 23 factors and, more importantly, the Eighth Circuit implicitly recognized the appropriateness of a nationwide UDAP class because it ordered remand and not reversal. For SJM to assert that this Court should reconsider the appropriateness of certification on Rule 23 factors is to suggest that the Eighth Circuit erred in remanding rather than reversing. In issuing its clear and

unambiguous mandate, the Eighth Circuit did not direct this Court to revisit Rule 23 issues.[3]

Notwithstanding that SJM's attack of Lester Grovatt as an appropriate class representative is outside the scope of the mandate, the attack is preposterous. Mr. Grovatt, like everyone else in the class, has suffered damages because of SJM's deceptive advertising and misbranded product. While the amount of his monetary claim might differ from others, that difference does not militate against class certification for the same reason that securities and anti-trust class actions are routinely certified even though class members' damages differ. Thus, even assuming that the Eighth Circuit directed this Court to revisit typicality, commonality and superiority, which it did not, Mr. Grovatt continues to be an appropriate class representative for the UDAP class.

## III. SJM's Opposition Concedes by Silence the Constitutionality of Applying Minnesota Consumer Protection Laws to the Class Claims.

SJM's Opposition does not substantively respond to the threshold Constitutional issue remanded by the Eighth Circuit panel: whether Minnesota bears sufficient contacts to each class member's claims so as to permit the application of Minnesota law to each claim under the Due Process and Full Faith and Credit clauses. In re St. Jude Medical, Inc., Silzone Heart Valves Products Liability Litigation, No. 04-3117, 425 F.3d 1116,

[3] Much of SJM's brief rehashes the Rule 23 arguments this Court has already repeatedly rejected. Plaintiffs will thus not re-defeat them here. However, Plaintiffs' silence on these issues should not be construed as agreement with SJM's positions.

1120 (8th Cir. 2005). Plaintiffs set out in detail the undisputed facts and law demonstrating more than sufficient contacts applicable to ***every*** claim. (Pl. Memo. at 15-22.) This was precisely what the remand order called for. In re SJM at 1120 (stating the need to "analyze the côntacts between Minnesota and each plaintiff class members' claims" to show whether Minnesota has a "significant contact" with the claims). SJM has offered no response to the relevant evidence of Minnesota contacts with every claim (which indeed it has previously substantially admitted), or to the numerous federal cases explaining how the contacts meet the Constitutional threshold. It also declined to comment on the glaring paradox of its argument for a different Constitutional result in this class case than would obtain for each claim individually. (Pl. Memo. at 22-26.)

Instead, SJM's Opposition ignores the relevant law on how to demonstrate Due Process contacts, and merely suggests that application of a single state's consumer law to a nationwide class should be deemed to violate Due Process automatically, ***regardless of contacts.***[4] (Opp. Memo. at 58.) Besides contradicting settled law, this suggestion also completely ignores the Eighth Circuit's remand opinion, which noted that nationwide application of Minnesota consumer law "***ultimately may be proper***" and instructed this

[4] For authority, SJM cites only two district court cases, both involving defendants with no presence in the forum state. Plaintiffs addressed these cases at pp. 12-13 of their opposition brief in the Eighth Circuit (Exh. 113), where SJM's argument was unavailing. See also Pl. Memo. at 18 n.18.

Court on remand to assess the contacts between Minnesota and all the claims to determine whether Due Process is satisfied.[5] (Emphasis added.)

SJM's only remaining constitutional allusions consist of sporadic, vague references to the "individual" analysis of claims[6] – implying (in spite of voluminous contrary authority) that Plaintiffs' analysis was inadequate, but offering no alternative authority or methodology. SJM does not explain what it has in mind, and it does not perform any Due Process analysis of its own for comparison. Phillips Petroleum v. Shutts, 472 U.S. 797 (1985), does not direct a person by person analysis, but rather a state law-by-state law analysis. Thus, the 50-state analysis is proper. SJM does not even suggest what a member-by-member analysis would entail. If SJM means that Due Process contacts analysis requires separate paragraphs "discussing" each of 11,655 class members' claims, one-by-one, its assertion defies all known authority and common sense. If multiple individual claims meet the Due Process contacts test by virtue of something they clearly have in common – such as all the Minnesota contacts enumerated in Plaintiffs' memorandum – it serves no purpose to "discuss" each claim one at a time. Nothing addressed in such discussions logically could negate the threshold contacts already established. (Indeed, if it could, SJM presumably would have done it.) As discussed at length in Section I of Plaintiffs' Memorandum, the Due Process test is met

---

[5] SJM's Opposition also inexplicably reasserts (Opp. Memo. at 57-58) the Commerce Clause argument that went nowhere when SJM presented it as its primary constitutional argument to the Eighth Circuit panel. Plaintiffs addressed the Commerce Clause argument at pp. 6-10 of their opposition brief to the panel. (Exh. 113.)

[6] Plaintiffs also referenced the "individuality" concept in their opening Memorandum. (Pl. Memo. at 16 n.14; 23-26.)

by any state bearing minimally sufficient contacts with a claim, regardless of how many other states might also possess sufficient contacts.

SJM's Opposition presents no substantive response to Section I of Plaintiffs' Memorandum, nor any affirmative support for the proposition that the application of Minnesota consumer statutes to any of the Plaintiffs' claims is unconstitutional. It has effectively conceded, as it must, the Constitutionality of applying Minnesota law to all of the claims in light of undisputed facts and settled Due Process law. With this remanded Constitutional issue settled, all that remains is for this Court to select and apply the consumer law that a Minnesota state court would apply to each claim under Minnesota's choice of law rules. (Pl. Memo. at 22.)

**IV. SJM's Non-Existent 50-State Choice of Law Analysis Demonstrates that Plaintiffs' Analysis Is Well-Taken.**

Without realizing what it was truly seeking, Defendant begged and begged for a 50-state analysis. Now, faced with the realization that Minnesota's choice of law rules mandate application of Minnesota's consumer protection statutes to each class members' consumer protection claim, SJM goes back to inventing new rules. This Court should not credit such arguments.

SJM's own choice of law arguments are internally incongruous. On page 15 of its brief, SJM concedes that in the absence of substantive conflicts, Minnesota law applies, indicating that procedural conflicts and those relating to remedies are immaterial and need not be analyzed. "The applicable conflict-of-law rules are not in dispute…." Then, on page 17, SJM quibbles by observing that some states do not permit class actions. SJM

forgot that class actions are procedural devices wholly governed by the Federal Rules of Civil ***Procedure***. On pages 19 and 20, SJM points out conflicts in "types of relief" available under other states' statutes and differences in pre-lawsuit notice procedures. However, all of these statutory components address remedies and procedures, categories this Court need not consider because the law of the forum applies. Davis v. Furlong, 328 N.W.2d 150, 153 (Minn. 1983); Florida State Board of Administration v. Law Engineering and Environmental Services, Inc., 262 F. Supp. 2d. 1004, 1011 (D. Minn. 2003).

SJM also supplies a "survey" of the states' consumer protection statutes, and while those charts indeed identify similarities and differences between the statutes, the survey is meaningless for purposes of this Court's analysis. Van Steenburgh Affidavit, Exh. H. First, those charts carve out several categories that are completely irrelevant under Minnesota's choice of law rules. These categories include "damages," "civil penalties," "statute of limitations," "class actions," and "other," which includes items like notice requirements. Again, this Court need not consider any of these categories because they either relate to remedies or are procedural. See Davis; Florida State Board of Admin., *supra*. Second, and more importantly, SJM fails to supply even a shred of the mandatory Leflar analysis ***for any particular state***, let alone all of them, as Plaintiffs did. See generally Appendix of Individual Jurisdictions, attached to Plaintiffs' opening brief (for each state that enacted law with "substantive" conflict, Plaintiffs provide ***individual***, state-specific choice of law analysis). As a result, while SJM fills its pages with meaningless bluster about Plaintiffs' not conducting a "person-by-person" choice of law

analysis, SJM fails even to conduct the 50-state ***choice of law*** analysis requested by the Eighth Circuit.

When it gets around to paying lip service to Leflar, SJM simply argues that all the factors militate against application of Minnesota's consumer laws to each class member. In doing so, SJM inappropriately conflates a personal injury choice of law analysis with that applicable to consumer fraud and contract. Plaintiffs address this distinction fully in their opening brief and simply note here that SJM disingenuously fails to address it and instead misrepresents the appropriate analysis.

While SJM is fond of repeating two courts' *dicta* that consumer protection laws "vary considerably," Defendant fails to acknowledge that those courts did so without citation to any particular consumer protection regimes or any authority providing such analysis. More importantly, neither court analyzed the issues through the lens of Minnesota's choice of law doctrine. In fact, those courts did no *seriatim* analysis of the statutes at all. See Int'l Union of Operating Eng'r, ___ A.2d ___, 2006 WL 827285 (N.J. Super. Ct. App. Div. March 31, 2006) (affirming trial court's application of New Jersey's UDAP law to nationwide class action against New Jersey resident defendant based upon an analysis of the 50 states' UDAP laws under New Jersey's governmental interest test). All the Eighth Circuit did here, having refused to conclude whether one state's UDAP law could apply, was to raise a concern and to require ***this Court*** to provide the analysis. SJM self-servingly conceals the fact that other courts have held that the differences between various states' consumer protection laws are "idiosyncratic" at best, and "not sufficiently substantive" to predominate over common claims in a class

action as contemplated by Shutts. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1023 (9th Cir. 1988). See also In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 61, 85 (D. Mass. 2005) (permitting national UDAP class action certification to proceed on behalf of class of 40 million Medicare Part B beneficiaries who made co-payments where "[d]efendants point to no state where the intentional, fraudulent acts alleged would be permitted under the consumer protection statute."); Int'l Union of Operating Eng'r, *supra*. At the end of the day, however, what matters is not solely whether the laws conflict, but rather, of the conflicting laws, which one should apply under Minnesota's choice of law rules. SJM provides no such analysis.

Finally, SJM also claims that the doctors were defrauded, not the class members. But as Group Health makes abundantly clear, in order to be "injured by a violation" of Minnesota's consumer protection statute, the plaintiff may be damaged by ***another party being deceived*** by the statement or practice. In that case, smokers were allegedly deceived by cigarette advertising, but it was the smokers' health insurance companies who properly alleged money damages for reimbursing medical costs associated with smoking-related illnesses. There, smokers were deceived and their insurers were damaged. Here, doctors and hospitals were deceived and their patients were damaged. The cases are indistinguishable. SJM also fails to distinguish this case from In re Lutheran Brotherhood Var. Ins. Prod. Co., Sales Practices Litig., 201 F.R.D. 456 (D. Minn. 2001).

In essence, SJM believes that if it continues to misstate a fact, sooner or later people will come to believe it simply by virtue of repetition. Unfortunately for SJM, it

just does not work. Silzone was and continues to be dangerous; it did not conform to SJM's own representations and, according to its own former consultants, never should have been marketed. It would have been pointless for the Eighth Circuit to remand this consumer fraud class action if it were, as SJM asserts, merely a disguised medical monitoring case. SJM's recycled current arguments failed, in the past, at least three times and have been implicitly rejected by the Eighth Circuit based upon the remand.

## CONCLUSION

This Court's initial certification of this nationwide consumer fraud class action applying Minnesota's UDAP law was correct. Following the Eighth Circuit's mandate, and after reviewing Plaintiffs' 50-state analysis, this Court will be correct again in certifying this nationwide consumer fraud class action applying Minnesota's UDAP law.

Respectfully submitted,

**ZIMMERMAN REED, P.L.L.P.**

Dated: April 7, 2006

s/David M. Cialkowski
CHARLES S. ZIMMERMAN
J. GORDON RUDD, JR.
DAVID M. CIALKOWSKI
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402
(612) 341-0400

**LEVY, ANGSTREICH, FINNEY, BALDANTE, RUBENSTEIN & COREN, P.C.**
STEVEN E. ANGSTREICH
MICHAEL COREN
CAROLYN C. LINDHEIM
Woodcrest Pavilion, Suite 100
Ten Melrose Avenue
Cherry Hill, New Jersey 08003
(856) 424-8967

**CAPRETZ & ASSOCIATES**
JAMES T. CAPRETZ
5000 Birch Street, Suite 2500
West Tower
Newport Beach, CA 92660
(949) 724-3000

**GREEN, SCHAAF & JACOBSON, P.C.**
JOE D. JACOBSON
7733 Forsyth, Suite 700
St. Louis, MO 63105
(314) 862-6800

**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C**
DANIEL W. SIGELMAN
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
Ph. (202) 408-4600

Counsel for Plaintiffs