# EXHIBIT 16

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

IN RE ST. JUDE MEDICAL, INC. :
SILZONE® HEART VALVES PRODUCTS:
LIABILITY LITIGATION : MDL DOCKET NO. 1396

**DEFENDANT ST. JUDE MEDICAL, INC.'S SURREPLY TO PLAINTIFFS' RENEWED MOTION TO CERTIFY CONSUMER PROTECTION CLASS**

## I. INTRODUCTION

St. Jude Medical's Opposition explained how plaintiffs' proposed class fails. The main barrier is the Eighth Circuit's direct and controlling holding that a class of uninjured Silzone® recipients seeking medical monitoring and treatment cannot be certified under any prong of Rule 23. Also blocking class certification are the numerous differences in state consumer fraud law and the overwhelming connections that each putative class member's claims have with his or her home state. Despite the Eighth Circuit's clear mandate, plaintiffs still have offered no individualized conflicts-of-law analysis that can account for these differences.

Instead, plaintiffs disavow that the class they seek is really a medical monitoring class (like the medical monitoring class the Eighth Circuit reversed), brush Rule 23 aside as "irrelevant," and contend that the Eighth Circuit actually endorsed their proposed nationwide class while simultaneously *reversing* it. St. Jude Medical accordingly offers this surreply to make three discrete points exposing the material flaws in plaintiffs' approach to the class issues:

- Plaintiffs cannot explain their failure to conduct the individualized choice-of-law analysis that the Eighth Circuit mandated. They continue to paint the required due process analysis as a minimal "threshold" uniformly met by St. Jude Medical's business in Minnesota. But that is exactly what plaintiffs urged three years ago, and the Eighth Circuit expressly held that greater and individual analysis is required.

- Plaintiffs *have* proposed a nationwide class of uninjured Silzone® recipients seeking medical monitoring, a class that the Eighth Circuit has rejected. Plaintiffs base this proposed class on consumer protection laws, but that underlying

basis does not change the fact that a class seeking medical monitoring is not certifiable under Rule 23.

- Rule 23 *governs* plaintiffs' motion, and plaintiffs' continued failure to explain how their class meets Rule 23's demands warrants denial of their motion.

## II. DISCUSSION

### A. St. Jude Medical Conducted The Conflicts Of Law Analysis And Showed That Minnesota Law Cannot Apply To A Nationwide Class

Plaintiffs chide St. Jude Medical for not performing the required conflicts-of-law analysis under Minnesota law, even though St. Jude Medical dedicated 24 pages of its brief to conflicts-of-law. (Opp. at 12-36) But it was plaintiffs' burden, not St. Jude Medical's, to provide individualized analysis of the contacts between each putative class member's claims and Minnesota. *In re Silzone Heart Valve Litig.*, 425 F.3d at 1120 ("[A]n individualized choice-of-law analysis must be applied to each plaintiff's claims in a class action."). And, plaintiffs still have not provided the required analysis.

In its original class certification order, this Court acknowledged constitutional requirements and agreed "with plaintiffs that Minnesota has significant contacts by virtue of St. Jude having its headquarters and manufacturing facilities in Minnesota, and because many of the decisions regarding Silzone valve were made by St. Jude in Minnesota." (Order, March 27, 2003, at 18) The Eighth Circuit, however, explicitly rejected that approach and held that analysis of each class member's claims was required before Minnesota consumer fraud law could apply outside Minnesota.

Plaintiffs nevertheless still recommend exactly the same, inadequate analysis. First, plaintiffs do not properly account for the many differences in state

consumer fraud law. They do not deny that state laws differ. But whenever a conflict arises, plaintiffs state merely that Minnesota's law is more liberal and that there is no reason to deny class members additional protection. The obvious flaw in that approach is that whether Minnesota offers "more protection" than another state is *not* part of Minnesota's five-part conflicts test. The Minnesota Supreme Court and the Eighth Circuit have so held, with each of them determining in a published opinion that another state's more restrictive law applied. *See Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.*, 604 N.W.2d 91, 91-92 (Minn. 2000) (applying North Dakota law); *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 738-40 (8th Cir. 1995) (applying Nebraska law). Moreover, plaintiffs' approach nullifies policy decisions reflected in the various states' consumer fraud laws. Every legislative decision to ease standing requirements, or to mandate proof of strict reliance, or to require actual damages, etc., is a question of substantive law that reflects a policy judgment on where to strike a balance between competing interests and when to permit recovery. Proper conflicts-of-law analysis therefore must give each state's law equal dignity and requires analysis of each plaintiff's contacts and each state's interests.

Second, plaintiffs still fail to discuss a single putative class member and do not account for the many connections that each class member's claims have with his or her home state. (Opp. at 12-36) In that respect (and as St. Jude Medical *did* explain in detail (Opp. at 12-36)), the evidence shows that each putative class member has compelling connections to his or her home state, including that the Silzone® valve was implanted there, follow-up medical treatment is being provided there, and the treatment sought would be administered there. In addition, purchasing decisions regarding the Silzone® valve were made in those home states based on representations made by sales representatives and heard by physicians

based in those states. Recognizing those connections in light of Minnesota's five-part choice of law test results in the application of each putative class member's home state's law. (Opp. at 15-31) This Court previously reached the same conclusion in ruling on plaintiffs' proposed personal injury and medical monitoring classes – holding that each state has a paramount interest in applying its tort law to its residents. (Order, Mar, 27, 2003, at 20-21)

In response, plaintiffs blithely assert that "this case is neither controversial nor unheralded in what it alleges or seeks." But none of the four cases they cite supports their novel attempt to regulate health care nationwide using one state's consumer protection statutes. (Reply at 1-2) Two of plaintiffs' cases are *not* class actions and provide no guidance on the issues at hand. *See Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2 (Minn. 2001); *Kociemba v. G.D. Searle & Co.*, 680 F. Supp. 1293 (D. Minn. 1988). A third case, *Curtis v. Philip Morris Cos., Inc.*, No. PI 01-018042, 2004 WL 2776228, *5 (Minn. Dist. Ct. Nov. 29 2004), involved a consumer product (cigarettes), and the claimed injury was "economic and not a personal injury," which excludes medical monitoring. It also was a Minnesota-only class, seeking remedies under Minnesota law. *Id.* at *1, 5. That case therefore says nothing about the nationwide extension of Minnesota law and nothing about the propriety of using one state's law to interfere with medical care across the county.

The fourth case likewise involves purchasers seeking a refund, not patients seeking future medical surveillance and treatment. In *International Union of Operating Engineers Local #68 Welfare Fund v. Merck & Co., Inc.*, 2006 WL 827285, *6 -*7 (N.J.Super. Ct. A.D. Mar. 31, 2006), a New Jersey court affirmed a nationwide class of third party payors seeking restitution of money spent for prescription arthritis medicine (Vioxx). But again, the class sought a partial refund

of the purchase price, did not request medical monitoring, and did not seek to affect medical care and medical decisions made by individual physicians nationwide. Notably, just before certifying the Vioxx third party payor class, the same judge *rejected* a proposed nationwide class action on behalf of uninjured Vioxx users seeking medical monitoring. In *Sinclair v. Merck & Co., Inc.*, ATL–L–3771–04–MT 2005 WL 1278364, *8 (N.J. Super. Ct. May 19, 2005), the plaintiffs (similar to plaintiffs in this case) sought a class of "all persons residing in the United States who took Vioxx . . . and who have not filed an action for damages for personal injuries." The plaintiffs sought medical monitoring and an epidemiological study. The court, however, found that New Jersey law would not support medical monitoring under the circumstances and dismissed the complaint.

Conflicts-of-law analysis is required, whether analyzing one plaintiff or the claims of 11,000 putative class members. There is, however, a difference between allowing one person knowingly to invoke Minnesota's laws and, on the other hand, applying Minnesota law as a fait accompli to thousands of people with no connection to Minnesota and no interest in having Minnesota law govern their claims. Plaintiffs say that class members who don't like it can opt out. But opt-out rights cannot substitute for the constitutional right to have the appropriate law chosen in the first instance. Nor can opt-out rights smooth over an error of constitutional dimension. The Eighth Circuit's opinion reversing the Rule 23(b)(3) consumer protection opt-out class on the basis of inadequate choice-of-law analysis demonstrates this point.

**B. Plaintiffs' Proposed Class Is A Nationwide Medical Monitoring Class Flying Under A Consumer Fraud Banner**

Plaintiffs admit that their class seeks a "medical monitoring program, an epidemiological study, or both." (Reply at 2) They also have defined their

proposed class expressly to *exclude* anyone with a cognizable injury. (Pl. Memo. at 1: "[A]ll Silzone® prosthetic heart valve patients in the United States who have not undergone an explant of their Silzone® valve or developed a manifest and diagnosed injury from their Silzone® implant . . . .") This proposed class thus *is* a multistate class of uninjured Silzone® recipients seeking medical monitoring and treatment – a class that the Eighth Circuit held is uncertifiable.

Plaintiffs' persistent denial of this fact is difficult to comprehend. Plaintiffs state that they seek "recovery for damages caused by deceptive advertising."[1] (Reply at 2, 4) But with their proposed class of uninjured patients (not purchasers), the only "damages" they can claim is funds for future medical monitoring and treatment. Medical monitoring is by no means off the table. Plaintiffs also claim that the "form of relief . . . is not a factor in determining whether class certification is appropriate." (Reply at 2) Plaintiffs could not be more wrong. Rule 23 factors such as predominance, cohesiveness, and manageability depend on all the elements of the plaintiffs' claims, including the relief sought. The Eighth Circuit clearly so held when it reversed the prior medical monitoring class because a "patient who has been implanted with the Silzone® valve may or may not require additional monitoring, and whether he or she does is an individualized inquiry depending on that patient's medical history." *In re Silzone Heart Valve Litig.*, 425 F.3d at 1122. Thus, for the Eighth Circuit, the

[1] Plaintiffs' assertion that they are claiming damages is the first signal in their renewed motion that they are seeking certification of a damages class under Rule 23(b)(3), and not an injunctive relief class under Rule 23(b)(2). Indeed, in light of plaintiffs' vigorous insistence that they are claiming damages, a non-opt-out Rule 23(b)(2) class would be unconstitutional. *See Phillips Petroleum v. Shutts*, 472 U.S. 797, 811-12 (1985) (if forum state wishes to bind absent class members concerning a claim for monetary damages, each person "must receive notice plus an opportunity to be heard and participate in the litigation" and "be provided with an opportunity to remove himself from the class").

"form of relief" was not only relevant, it was dispositive, and it remains dispositive regarding the class that plaintiffs now propose.

**C. Rule 23 Governs All Class Actions And Plaintiffs' Failure To Address Its Requirements Is Alone Reason To Deny The Motion**

Plaintiffs assert that the Eighth Circuit remanded "only" for conflicts-of-law analysis and that this Court's analysis prior to reversal ends all inquiry under Rule 23. (Reply at 3) But the Eighth Circuit "reversed" both previously certified classes (despite plaintiffs' curious assertion that the 8th Circuit "implicitly recognized the [class's] appropriateness" (Reply at 3)). *See In re St. Jude Medical, Inc. Silzone Heart Valve Prods. Liab. Litig.*, 425 F.3d 1116, 1120-21 (8th Cir. 2005) (consumer protection class "reversed and remanded"). Thus, the previously certified classes no longer exist, and plaintiffs have the burden to prove that this Court can and should certify another class. *See In re American Medical Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (class proponent bears burden to show that proposed class meets Rule 23).

Plaintiffs chose to ignore their burden, preferring instead to rest on this Court's prior rulings. But this Court too is bound by the Eighth Circuit's holding, and that holding compels, at the very least, that this Court address issues not previously determined, in addition to the conflicts-of-law issues described above. For example:

- Plaintiffs have offered a newly defined class, asserting consumer protection claims, but excluding any person with a cognizable injury. This alone calls for renewed Rule 23 analysis.

- Mr. Grovatt is now the sole class representative, as the only plaintiff who meets the new class definition. This raises new issues of adequacy and typicality.

- The Eighth Circuit reversed the prior medical monitoring class because each Silzone patient "may or may not require additional monitoring, and whether he or she does is an individualized inquiry depending on that patient's medical history, the condition of the patient's heart valves at the time of the implantation, the patient's risk factors for heart valve complications, the patient's general health, the patient's personal choice, and other factors." 425 F.3d at 1121. To certify another medical monitoring class, this Court must consider each of these factors and the impact on commonality and predominance of individual issues. Plaintiffs ignore this analysis.

- Plaintiffs have offered, through Dr. Butchart, a new and complex medical monitoring proposal that is geared toward treating individual patients in an individual manner. Plaintiffs seek this remedy for the class, yet they do not account for its impact on adequacy, typicality, manageability, predominance, and superiority.

- Three years have passed since this Court first certified a consumer protection class, which implicates superiority. Many cases have been resolved, the MDL is winding down with few individual cases remaining, and there is no influx of new cases threatened. These events require reevaluation of the purported need for any kind of classwide relief, particularly where the class seeks to benefit individuals who have had their heart valves for at least six years without complication.

These are issues that plaintiffs had to address before this Court could begin to contemplate certifying plaintiffs' proposed class. More fundamentally, it was plaintiffs' burden to address them in their motion. Their election to set Rule 23 aside should result in denial of their motion.

## III. CONCLUSION

St. Jude Medical respectfully requests that this Court deny plaintiffs' renewed motion for certification.

DATED: April 19, 2006.

HALLELAND LEWIS NILAN & JOHNSON, P.A.

By s/Tracy J. Van Steenburgh

Tracy J. Van Steenburgh, # 141173
600 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402-4501
Telephone: (612) 338-1838

REED SMITH LLP
Steven M. Kohn
James C. Martin
Steven J. Boranian
1999 Harrison Street, Suite 2400
Oakland, CA 94612
Attorneys for Defendant