# EXHIBIT 18

No. ____________

# In the United States Court of Appeals for the Eighth Circuit

## In re St. Jude Medical, Inc. Silzone® Heart Valve Products Liability Litigation

Lester Grovatt, Beatrice Bailey, Levy D. Redden, Bonnie L. Sliger, and Joe W. Sanchez, on behalf of themselves and all others similarly situated,
Plaintiffs and Respondents,

vs.

St. Jude Medical, Inc.,
Defendant and Petitioner.

---

## ST. JUDE MEDICAL, INC.'S PETITION UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(f) FOR PERMISSION TO APPEAL A CLASS CERTIFICATION ORDER

---

From a Class Certification Order by the
United States District Court for the District of Minnesota
Multidistrict Litigation No. 01-1396 (JRT/FLN)
The Honorable John R. Tunheim

---

Steven M. Kohn
James C. Martin
Steven J. Boranian
REED SMITH LLP
1999 Harrison Street
Suite 2400
Oakland, CA 94612
Telephone: (510) 763-2000
Facsimile: (510) 273-8832

Tracy J. Van Steenburgh
HALLELAND, LEWIS, NILAN & JOHNSON, P.A.
600 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 338-1838
Facsimile: (612) 338-7858

Eric J. Magnuson
RIDER BENNETT, LLP
33 South Sixth Street
Suite 4900
Minneapolis, MN 55402
Telephone: (612) 340-8900
Facsimile: (612) 340-7900

*Attorneys for Defendant and Petitioner*
*St. Jude Medical, Inc.*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, St. Jude Medical, Inc. states that it has no publicly traded parent or subsidiary corporation, and no publicly held company owns 10 percent or more of its stock.

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. The District Court Initially Certified A Nationwide Class Seeking Damages Under Minnesota's Consumer Protection Statutes And A Multi-State Medical Monitoring Class – And This Court Reversed Both .......... 2

B. On Remand, Plaintiffs Requested A Class That This Court Already Rejected – A Class Of Uninjured Silzone Recipients Claiming Medical Monitoring – And Requested Nationwide Application of Minnesota Law Based On The Same Flawed Conflicts Analysis .......... 5

C. The District Court Certified A Nationwide Class Of Uninjured Silzone Heart Valve Patients Seeking Medical Monitoring, Despite The Law Of The Case And Without Further Addressing Rule 23 .......... 7

III. IMMEDIATE APPEAL IS NECESSARY TO CORRECT THE DISTRICT COURT'S MANIFESTLY ERRONEOUS CLASS CERTIFICATION RULING .......... 8

A. The Certified Class Of Uninjured Silzone Heart Valve Patients Is Directly Contrary To This Court's Prior Opinion In This Case .......... 8

B. The District Court Did Not Perform The Thorough Conflicts-Of-Law Analysis That This Court Mandated With Respect To Each Plaintiff Class Member; If It Had, The Proper Result Would Have Been Application Of The Fifty States' Laws .......... 9

C. Nationwide Application Of Minnesota Law Reflects A Misapplication Of Minnesota's Conflicts-Of-Law Rules .......... 11

D. The Certified Class Does Not Pass Muster Under Rule 23 .......... 15

1. The Class Definition Is Indefinite And Requires Resolution Of Disputed Liability Issues Just To Tell Who Is In The Class .......... 15

2. Plaintiffs Are Not Adequate Representatives And Their Claims Are Not Typical Because Of The Legal And Factual Diversity Among Class Members .......... 16

3. The Class Fails Because Individual Legal And Factual Issues Predominate On The Need For Medical Monitoring .......... 16

4. The Class Fails Because Individual Legal And Factual Issues Predominate On Liability And Causation .......... 17

5. Plaintiffs' Proposed Class Action Does Not Provide The Superior Method For Resolving What Is Left Of These Silzone Valve Cases .......... 18

E. The Certified Class Offends Principals Of Federalism And Constitutional Limitations On One State's Power To Export Its Law To The Exclusion Of Other States' Laws .......... 19

IV. CONCLUSION .......... 20

ADDENDUM OF ORDER AND RELATED OPINION

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Avery v. State Farm Mutual Automobile Insurance Co.*,
746 N.E.2d 1242 (Ill. App. Ct. 2001) .......... 14

*Avery v. State Farm Mutual Automobile Insurance Co.*,
835 N.E.2d 801 (Ill. 2005) .......... 14

*In re Baycol Products Litigation*,
218 F.R.D. 197 (D. Minn. 2003) .......... 13

*In re Bridgestone/Firestone, Inc.*,
288 F.3d 1012 (7th Cir. 2002) .......... 4, 14

*In re Rezulin Products Liability Litigation*,
210 F.R.D. 61, 66-67 (D.N.Y. 2002) .......... 14

*Chin v. Chrysler Corp.*,
182 F.R.D. 448 (D.N.J. 1998) .......... 14

*Danielson v. National Supply Co.*,
670 N.W.2d 1 (Minn. Ct. App. 2003) .......... 13

*In re Ford Motor Co. Ignition Switch Prod. Liability Litigation*,
174 F.R.D. 332 (D.N.J. 1997) .......... 14

*Forman v. Data Transfer, Inc.*,
164 F.R.D. 400 (E.D. Pa. 1995) .......... 16

*Gate City Federal Sav. & Loan Association v. O'Connor*,
410 N.W.2d 448 (Minn. Ct. App. 1987) .......... 11

*General Telegraph Co. v. Falcon*,
457 U.S. 147 (1982) .......... 15

*Georgine v. Amchem Products*,
83 F.3d 610 (3d Cir. 1996) .......... 9

*Group Health Plan, Inc. v. Philip Morris Inc.*,
621 N.W.2d 2 (Minn. 2001) .......... 17

*International Union of Operating Engineers Local #68 Welfare Fund v. Merck & Co., Inc.*, 894 A.2d 1136 (N.J. Super. Ct. App. Div. 2006) .......... 14

*Johnston v. HBO Film Management Inc.*, 265 F.3d 178 (3d Cir. 2001) .......... 19

*Lyon v. Caterpillar*, 194 F.R.D. 206 (E.D. Pa. 2000) .......... 20

*Montgomery v. New Piper Aircraft*, 209 F.R.D. 221 (S.D. Fla. 2002) .......... 14, 20

*Nesladek v. Ford Motor Co.*, 46 F.3d 734 (8th Cir. 1995) .......... 12

*Nodak Mutual Insurance Co. v. American Family Mutual Insurance Co.*, 604 N.W.2d 91 (Minn. 2000) .......... 11, 12, 13

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1998) .......... 19

*Perez v. Metabolife International Inc.*, 218 F.R.D. 262 (S.D. Fla. 2003) .......... 14

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .......... 3, 4, 9

*In re Prempro Products Liability Litigation*, 230 F.R.D. 555 (E.D. Ark. 2005) .......... 14

*Republican Party v. White*, 416 F.3d 738 (8th Cir. 2005) .......... 8

*In re St. Jude Medical Silzone Heart Valve Products Liability Litigation*, 425 F.3d 1116 (8th Cir. 2005) .......... passim

*Van West v. Midland National Life Insurance Co.*, 199 F.R.D. 448 (D.R.I. 2001) .......... 16

## STATUTES

N.J. Stat. § 56:8-2 .......... 16

N.J. Stat. § 56:8-19 .......... 16

## MISCELLANEOUS

Gary L. Grunkemeier et al., *Time-Related Risk of the St. Jude Silzone Heart Valve*, 30 European Journal of Cardio-Thoracic Surgery 20, 26 (2006) .......................................................... 18

# I. INTRODUCTION

In October of 2005, this Court issued a published opinion reversing certification of two classes in this case. *See In re St. Jude Medical Silzone Heart Valve Products Liability Litigation ("Silzone Heart Valve Litig.")*, 425 F.3d 1116 (8th Cir. 2005). The Court first reversed a nationwide class of all Silzone®-coated heart valve recipients claiming alleged injuries and asserting claims under Minnesota's consumer protection statutes. In reversing that class, the Court directed the district court to perform an "individualized choice-of-law analysis" for "each plaintiff's claim." The Court next reversed certification of a multi-state class of uninjured Silzone patients seeking future medical surveillance and care ("medical monitoring") on the grounds that the class presented "highly individualized" issues that destroyed the cohesion required for a class under Rule 23.

The district court now has newly certified a class that runs directly against this Court's opinion and other controlling authority in multiple ways. Most importantly, the district court again has certified a class of uninjured Silzone patients seeking medical monitoring – even though this Court held such a class presents too many individual issues and even though these individualized issues remain. The district court likewise has applied Minnesota consumer protection law to the entire nationwide class without analyzing the choice of law for each class member – even though this Court mandated that individualized analysis and even though that analysis reveals that Minnesota law cannot constitutionally be applied.

There are other, equally significant barriers to certification here – all of them apparent as a matter of fact and law on this record and all ignored by the district court. The district court's application of Minnesota law to the entire class is contrary to Minnesota's conflicts-of-law principles; the record undisputedly presents numerous factual and legal obstacles that make plaintiffs' nationwide class uncertifiable under Rule 23; and the certified class violates the Rules Enabling Act, the Erie Doctrine, and the Commerce Clause by using Rule 23 to create new substantive rights and extend them nationwide.

No court, no matter what the context, should be permitted to certify a class where the record, the controlling law, controlling rules, principles of federalism and the Constitution will not allow it. Yet, that is the exact circumstance presented here. For each of these independent and manifest reasons, St. Jude Medical requests that the Court grant this petition and allow an immediate appeal.

## II. BACKGROUND

### A. The District Court Initially Certified A Nationwide Class Seeking Damages Under Minnesota's Consumer Protection Statutes And A Multi-State Medical Monitoring Class – And This Court Reversed Both

This Court's prior published opinion details the history of this litigation. *Silzone Heart Valve Litig.*, 425 F.3d at 1117-19.[1] (Addendum 17-19, Petitioner's Appendix ("PA") 107-09) At that time, the district court had

[1] The prior appeal in this action garnered wide interest, and both sides were supported by multiple amici, including the Minnesota Chamber of Commerce, the Product Liability Advisory Council, the State of Minnesota, and Public Citizen, Inc.

issued three orders that collectively resulted in certification of two classes – one on behalf of Silzone recipients seeking damages under Minnesota's consumer protection statutes and a second comprised of Silzone patients with no injuries seeking medical monitoring. (PA 27-105)

This Court reversed both classes. *Silzone Heart Valve Litig.*, 425 F.3d at 1116. The Court rejected the nationwide consumer protection class because the district court had not sufficiently analyzed which law should apply to the respective class members' claims. Consistent with *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822-23 (1985), the Court ruled that an "individualized choice-of-law analysis must be applied to each plaintiff's claim in a class action" and rejected plaintiffs' argument that Minnesota's permissive standing requirements preempted that constitutional requirement. *Silzone Heart Valve Litig.*, 425 F.3d at 1119-21.

The Court specifically faulted the district court for conducting a one-sided analysis that emphasized the Minnesota contacts of only one party – St. Jude Medical:

> The [district] court conducted a cursory conflicts-of-law analysis as to the application of the Minnesota consumer protection statutes. The court concluded applying Minnesota law was proper because the parties, particularly SJM, had significant contacts with Minnesota, including SJM being headquartered in Minnesota, and the fact that "much of the conduct relevant" to the claims "occurred or emanated from Minnesota."
>
> . . . .
>
> The district court's class certification was in error because the district court did not conduct a thorough conflicts-of-law analysis with respect to each plaintiff class member before applying Minnesota law. The Supreme Court has held an

> individualized choice-of-law analysis must be applied to each plaintiff's claim in a class action. *Phillips Petroleum Co. v. Shutts*, . . . . We deem it unnecessary here to review each state's consumer protection laws, and rather rely on our sister circuit's conclusion that "[s]tate consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002).
>
> . . . . Here, we cannot determine whether the district court's choice of Minnesota law was arbitrary or unfair, because the court did not analyze the contacts between Minnesota and each plaintiff class member's claims.

*Silzone Heart Valve Litig.*, 425 F.3d at 1119-20. The Court also expressed skepticism that the required individualized analysis would result in the nationwide application of Minnesota law:

> Application of Minnesota law to all plaintiffs' claims ultimately may be proper, although we suspect Minnesota lacks sufficient contacts with all the parties' claims, and the different states have material variances between their consumer protection laws and Minnesota's. There is no indication out-of-state parties "had any idea that [Minnesota] law could control" potential claims when they received their Silzone-coated valves. *Phillips Petroleum*, 472 U.S. at 822, 105 S.Ct. 2965. Regardless, protection of out-of-state parties' constitutional rights requires an inquiry into their claims' contacts with Minnesota and their individual state laws before concluding Minnesota law may apply.

*Silzone Heart Valve Litig.*, 425 F.3d at 1120. The Court therefore reversed the class certification order and remanded for further proceedings. *Id.*

This Court likewise rejected the seventeen-state medical monitoring class on the ground that the class lacked the necessary cohesion required by

Rule 23. *Id.* at 1121-23. As the Court observed, courts routinely reject medical monitoring classes because medical monitoring, by its nature, presents individual factual and legal issues that make it unsuitable for class treatment. *Silzone Heart Valve Litig.*, 425 F.3d at 1122. The Court then reversed the medical monitoring class because each putative class member's need for medical monitoring was "highly individualized":

> In this case, . . . each plaintiff's need (or lack of need) for medical monitoring is highly individualized. Every patient in the 17-state class who has ever been implanted with a mechanical heart valve already requires future medical monitoring as an ordinary part of his or her follow-up care. A patient who has been implanted with the Silzone valve may or may not require additional monitoring, and whether he or she does is an individualized inquiry depending on that patient's medical history, the condition of the patient's heart valves at the time of implantation, the patient's risk factors for heart valve complications, the patient's general health, the patient's personal choice, and other factors. The plaintiffs concede the states recognizing medical monitoring claims as a separate cause of action have different elements triggering culpability. Simply put, the medical monitoring class presents a myriad of individual issues making class certification improper.

*Id.* at 1122.

### B. On Remand, Plaintiffs Requested A Class That This Court Already Rejected – A Class Of Uninjured Silzone Recipients Claiming Medical Monitoring – And Requested Nationwide Application of Minnesota Law Based On The Same Flawed Conflicts Analysis

On remand, plaintiffs filed a Renewed Motion to Certify Consumer Protection Class and defined their proposed class as:

> [A]ll Silzone prosthetic heart valve patients in the United States who have not undergone an explant of their Silzone valve or developed a manifest and diagnosed injury from their Silzone

> implant of degree or severity that would permit individual personal injury law suits to be commenced in their State of residence.

(Order at 4, Addendum 4, PA 573) Plaintiffs' proposed class definition differed from their prior consumer protection class in that it excluded injured Silzone patients. And, on behalf of the proposed class, plaintiffs sought nationwide application of Minnesota's consumer protection laws. Plaintiffs once again requested medical monitoring and submitted a new medical monitoring plan from their expert, Dr. Eric Butchart, who admitted, just as the record conclusively demonstrated, that the actual type and extent of treatment required for Silzone heart valve patients depended on highly individualized factors. (PA 201-02, 241-68, 291, 370-75) Plaintiffs' renewed motion therefore requested certification of the very class that this Court found uncertifiable under Rule 23 – a class of Silzone heart valve recipients with no injuries seeking highly individualized medical monitoring.

Plaintiffs similarly gave short shrift to this Court's mandate to provide a detailed analysis of each individual class member's particularized interest in having Minnesota law applied. Plaintiffs did not discuss any aspect of any individual's claims, not even their own. They instead focused only on St. Jude Medical's headquarters in Minnesota and its Silzone-related business activities in Minnesota – exactly the one-sided analysis that this Court found constitutionally deficient. (PA 135-37) Finally, plaintiffs requested certification of a class under Rule 23(b)(3), but dedicated not a word of their brief to explaining how their newly defined class met Rule 23's requirements.

St. Jude Medical opposed plaintiffs' renewed motion on several grounds. (PA 313-81) First and foremost, certification of plaintiffs' proposed class contradicted the law of this case that a class seeking medical monitoring presents numerous individual issues that preclude class certification. (PA 331-34) Second, application of Minnesota law to the class for the reasons plaintiffs' proposed contradicted the law of this case requiring consideration of each class member's claim. (PA 334-45) Third, neither due process nor Minnesota's conflicts-of-law rules permitted application of Minnesota law to Silzone heart valve patients nationwide. (PA 345-58) Fourth, even if Minnesota law somehow could be applied, numerous insuperable obstacles, including Rule 23's most basic requirements, compelled denial of a nationwide class. (PA 358-81)

### C. The District Court Certified A Nationwide Class Of Uninjured Silzone Heart Valve Patients Seeking Medical Monitoring, Despite The Law Of The Case And Without Further Addressing Rule 23

The district court concluded that Minnesota's consumer protection laws could apply to the entire nationwide class because "Minnesota has significant contacts with each class member by virtue of the domicile and claims-related activities of defendant." (Order at 6-7, Addendum 6-7, PA 575-76) This is a reprise of the *exact analysis* that this Court found wanting in reversing the former consumer protection class. And, despite this Court's mandate for an individualized, plaintiff-by-plaintiff analysis, the district court found that because of St. Jude Medical's Silzone-related contacts with Minnesota, it "need not specifically discuss Minnesota's contacts to each of over 11,000 class members' claims." (Order at 7-8, Addendum 7-8, PA 576-77) Finally, although St. Jude Medical had raised, and the record reflected, numerous

obstacles foreclosing certification of the class under Rule 23, the court simply deferred to its prior certification and refused to engage in any further analysis. (Order at 5, Addendum 5, PA 574)

## III. IMMEDIATE APPEAL IS NECESSARY TO CORRECT THE DISTRICT COURT'S MANIFESTLY ERRONEOUS CLASS CERTIFICATION RULING

### A. The Certified Class Of Uninjured Silzone Heart Valve Patients Is Directly Contrary To This Court's Prior Opinion In This Case

This Court reversed plaintiffs' former medical monitoring class because "diverse legal and factual issues preclude class certification." *Silzone Heart Valve Litig.*, 425 F.3d at 1121. That holding is the law of the case. *See Republican Party v. White*, 416 F.3d 738, 746 (8th Cir. 2005) (when appellate court remands for further proceedings, district court must determine the remaining issues "pursuant to the legal principles enunciated in the appellate court's opinion.").

In its October 13, 2006 ruling, the district court nevertheless re-certified the same class – the multistate medical monitoring class for uninjured Silzone patients that this Court rejected. The court acknowledged this point, but emphasized that plaintiffs' claims were now "based on Minnesota's consumer protection statutes." (Order at 5 n.1, Addendum 5, PA 574) That is a distinction without a difference. This Court reversed plaintiffs' former medical monitoring class under Rule 23 because of individual differences among the class members and the "medical monitoring" they would require, if any. Those individual differences do not depend on the proposed legal basis

for the class members' claims, and the now-certified class must be rejected for the same reasons as before. [2]

**B. The District Court Did Not Perform The Thorough Conflicts-Of-Law Analysis That This Court Mandated With Respect To Each Plaintiff Class Member; If It Had, The Proper Result Would Have Been Application Of The Fifty States' Laws**

This Court also held that the prior certification "was in error because the district court did not conduct a sufficient conflicts-of-law analysis with respect to each plaintiff class member before applying Minnesota law" and that the "Supreme Court has held that an individualized choice-of-law analysis must be applied to *each plaintiff's claim* in a class action." *Silzone Heart Valve Litig.*, 425 F.3d at 1120 (emphasis added, citing *Phillips Petroleum*, 472 U.S. at 822-23). In reversing for this reason, the Court concluded that "protection of out-of-state parties' constitutional rights requires an inquiry into their claims' contacts with Minnesota and their individual states laws before concluding Minnesota law may apply." *Id.*; *see also Georgine v. Amchem*

---

[2] The district court also observed that plaintiffs were seeking an epidemiological study "which is undoubtedly uniform across all class members and ideally suited for a class action." (Order at 5, n.1, Addendum 5, PA 574) But plaintiffs' request for an epidemiological study does not clear the way for any nationwide class. It does nothing to remove the individualized, class-defeating issues associated with medical monitoring relief, which plaintiffs admit they are seeking. Nor does the request for a study cure the errors in the court's choice-of-law analysis or negate the multiple barriers to class certification explained in the court below and highlighted here. Finally, while the district court provided no support for its sweeping conclusion, even plaintiffs' expert conceded that individual issues were inherent in such a study as well. (PA 270 (plaintiffs' expert explaining that "data collection" would require "[s]tratification of patients according to their risk of particular complications," which "would enable *some patients* to be reassured." (emphasis added)))

*Prods.*, 83 F.3d 610, 627 (3d Cir. 1996) (class certification scrutiny must include "individualized choice of law analysis to each plaintiff's claims").

These directives too are the law of the case, but the district court did not heed them. Rather than analyze each class member's claim, the district court simply repeated its former analysis relying only St. Jude Medical's contacts with Minnesota, and stated that in light of those contacts, it "need not specifically discuss Minnesota's contacts to each of the over 11,000 class members' claims." (Order at 7, Addendum 7, PA 576) The district court's truncated analysis leaves the constitutional choice-of-law inquiry in the same incomplete posture as when this Court reversed.

Moreover, if the district court had conducted the required analysis and analyzed the relevant contacts at the time of implant, the choice-of-law result would have been different for the very reasons that led this Court to "suspect Minnesota lacks sufficient contacts with all the parties' claims." *Silzone Heart Valve Litig.*, 425 F.3d at 1120. Of course, thousands of class members reside outside Minnesota, including the lone remaining class representative, Lester Grovatt.[3] For each one of them, an individualized inquiry would show that: Each had a Silzone-coated valve implanted outside Minnesota; any representation received by a treating physician regarding a Silzone valve was received outside Minnesota; each physician's decision to implant a Silzone valve occurred outside Minnesota; any harm attributed to a Silzone valve

---

[3] Plaintiffs Beatrice Bailey, Joe Sanchez, and Levy Redden allege injuries and are not members of the class. Plaintiff Bonnie Sliger has passed away for reasons unrelated to her Silzone valve, and her Silzone claims have been resolved and dismissed.

would occur outside Minnesota; follow up treatment following implantation of a Silzone valve is occurring outside Minnesota; and any medical monitoring ordered by the district court would occur outside Minnesota. Further, plaintiffs must prove elements of their consumer protection claims by reference to matters occurring entirely outside Minnesota as well – everything from the allegedly wrongful transaction, to the allegedly false statements, to the purported "causal nexus" with any alleged injury, to the remedy sought.

In short, each class member's claim is *not* connected solely to Minnesota. And it cannot be assumed – without proof – that any class member would expect a class representative to litigate his or her claim under the law of Minnesota, as opposed to litigating in his or her own state and under his or her own law. As this Court noted, "there is no indication out-of-state parties had any idea that Minnesota law could control potential claims when they received their Silzone-coated valves." *Silzone Heart Valve Litig.*, 425 F.3d at 1120. Plaintiffs' failure to offer that proof and the district court's unwillingness to require it compels reversal on the same grounds as before.

### C. Nationwide Application Of Minnesota Law Reflects A Misapplication Of Minnesota's Conflicts-Of-Law Rules

When actual conflicts in substantive law exist, Minnesota courts apply a five-factor "significant contacts" test to determine which state's law governs. *Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.*, 604 N.W.2d 91, 94 (Minn. 2000); *Gate City Fed. Sav. & Loan Ass'n. v. O'Connor*, 410 N.W.2d 448, 450 (Minn. Ct. App. 1987). The first time the district court conducted this analysis, it came to the right result and held that each class member's tort and warranty claims would be governed by his or her home-state law. In so

holding, the district court observed that it could not "ignore the interests of states in which class members were implanted with Silzone valves" and that those states "have strong interests in applying their relevant laws to the marketing, sale, and implantation of medical devices within their borders." (*See* Order, Mar. 27, 2003, at 20 (PA 46)) These "crucial" factors precluded Minnesota law from applying uniformly to the class. (*Id.* at 21 (PA 47))

This ruling followed controlling precedent. In *Nodak*, the Minnesota Supreme Court held that North Dakota law applied where an out-of-state insurance company sued a Minnesota company over an accident in North Dakota between a North Dakota resident and a Minnesota resident. 604 N.W.2d at 91-92. The location of the accident was the dispositive factor, as the court held "when all other relevant choice-of-law factors favor neither state's law, the state where the accident occurred has the strongest governmental interest; accordingly, the law of the state where the accident occurred should be applied." *Id.* at 96. To the same effect is this Court's opinion in *Nesladek v. Ford Motor Co.*, 46 F.3d 734 (8th Cir. 1995), where a Minnesota resident sued Ford over an accident that occurred in Nebraska while the plaintiff resided there. *Id* at 735-36. The allegedly defective Ford vehicle underwent final assembly in Minnesota, yet the Eighth Circuit held that Nebraska law applied. *Id.* at 738-40.

Here, the fact that consumer protection statutes are implicated does not change the analysis. At the time of implantation, Silzone patients could not have predicted that potential claims arising from their valve replacements would be decided under law different from where they reside and/or had surgery. They did not purchase their valves directly (hospitals or purchasing

organizations did), and they most likely had no idea what state they came from. *See Danielson v. National Supply Co.*, 670 N.W.2d 1, 7 (Minn. Ct. App. 2003) (predictability-of-results factor applies "primarily when parties desire advance notice of which state law will govern in future disputes."); *Nodak*, 604 N.W.2d at 94-95 (predictability of results "represents the ideal that litigation on the same facts, regardless of where the litigation occurs, should be decided the same to avoid forum shopping.").

Further, a consumer protection claim, just like a tort or warranty claim, implicates the same strong states' interests in applying their own laws to the "marketing, sale, and implantation of medical devices within their borders." (Order, Mar. 27, 2003, at 20 (PA 46)); *see In re Baycol Prods. Litig.*, 218 F.R.D. 197, 207 (D. Minn. 2003) (noting that under the maintenance-of-interstate-order factor, courts of different states should strive to sustain rather than subvert each other's interests). Similarly, the governmental-interest factor "generally weighs in favor of application of the state law in which the plaintiff lives and in which the injury occurred" [*In re Baycol*, 218 F.R.D. at 207], and where other choice-of-law factors are relatively equal, the Minnesota Supreme Court has held that "the state where the accident occurred has the strongest governmental interest." *Nodak*, 604 N.W.2d at 96.

Thus, under the requisite conflicts analysis, the various states' laws should apply to these consumer protection claims, as many other courts have held.[4] *See, e.g.*, *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th

[4] Plaintiffs attempted to homogenize the states' consumer protection laws with a series of charts purporting to compare Minnesota law to every other state's law. These charts, however, left out crucial legal elements upon which the

(continued...)

Cir. 2002) (holding that "courts must respect these differences [in state consumer law] rather than apply one state's law to sales in other states with different rules"); *In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555, 562 (E.D. Ark. 2005) (rejecting certification of a multi-state class of hormone patients asserting consumer protection and seeking medical monitoring, noting that choice of law "affects every aspect of class certification," and denying certification); *Montgomery v. New Piper Aircraft*, 209 F.R.D. 221, 228-31 (S.D. Fla. 2002) (rejecting nationwide application of Florida consumer fraud

(...continued)

various states' laws differ, including essential elements of proof and availability of remedies such as medical monitoring. As many courts have held, when these differences are properly analyzed, the various states' laws are not uniform. *See, e.g.*, *In re Bridgestone/Firestone*, 288 F.3d at 1018; *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 460-61 (D.N.J. 1998); *In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, 174 F.R.D. 332, 350-51 (D.N.J. 1997).

Indeed, if allowed to stand, the district court's class certification order would stand alone in sanctioning nationwide, classwide treatment of claims seeking medical monitoring. *See, e.g., Perez v. Metabolife Int'l Inc.,* 218 F.R.D. 262, 267 (S.D. Fla. 2003) (citing authorities and rejecting a nationwide medical monitoring class because of diverse state laws); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 66-67 (D.N.Y. 2002) (denying certification of nationwide medical monitoring class because there were diverse state laws and individual factual issues). Plaintiffs have cited only two cases involving any kind of nationwide class applying one state's consumer protection laws, and neither involved medical monitoring. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 746 N.E.2d 1242 (Ill. App. Ct. 2001); *International Union of Operating Engineers Local #68 Welfare Fund v. Merck & Co., Inc.*, 894 A.2d 1136 (N.J. Super. Ct. App. Div. 2006). The Illinois Supreme Court has overruled *Avery*, and the New Jersey Supreme Court has granted the defendant permission to appeal in *International Union*. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005); Order Granting Leave to Appeal, *International Union of Operating Engineers Local #68 Welfare Fund v. Merck & Co., Inc.*, No. A-22-06 (N.J. July 19, 2006).

statute because a state, through its courts, cannot export its legislation on a nationwide basis).

**D. The Certified Class Does Not Pass Muster Under Rule 23**

Following this Court's remand, no class was certified, and plaintiffs were compelled to make a new motion. In that motion, plaintiffs proposed a class defined differently from their previous consumer protection class (although plaintiffs sought the same relief on behalf of the same people as the already-reversed medical monitoring class). Plaintiffs also submitted new evidence, including a detailed medical monitoring plan. While this should have prompted a renewed examination of Rule 23's prerequisites, the district court refused to do so and simply deferred to its prior class certification order. (Order at 5, Addendum 5, PA 574) Because the district court was required to make a rigorous analysis into the propriety of class certification, its refusal to do so is error as well. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). A rigorous analysis of the record likewise would have and should have resulted in an order denying plaintiffs' motion for any one of the multiple reasons shown in the court below and highlighted here.

**1. The Class Definition Is Indefinite And Requires Resolution Of Disputed Liability Issues Just To Tell Who Is In The Class**

The new consumer protection class is defined to include all Silzone prosthetic heart valve recipients nationwide, except (1) those who have undergone an explant of their Silzone valve; and (2) those who have "developed a manifest and diagnosed injury from their Silzone implant of degree or severity that would permit individual personal injury law suits to be commenced" in their home states. (Order at 4, Addendum 4, PA 573) Thus, merely identifying the class members will require resolution of core legal and

factual questions, including whether a potential class member has an injury "from" (*i.e.*, caused by) a Silzone valve and whether the injury is "severe" enough to support a claim in that class member's home state. Such an indefinite class definition alone compels denial of class certification. *See Van West v. Midland Nat'l. Life Ins. Co.*, 199 F.R.D. 448, 451 (D.R.I. 2001) (a class must be defined such that the Court can ascertain its membership through the application of "stable and objective factors"); *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995) (rejecting class because determining class membership would require a "mini hearing on the merits" as to the central liability issue).

**2. Plaintiffs Are Not Adequate Representatives And Their Claims Are Not Typical Because Of The Legal And Factual Diversity Among Class Members**

Only one plaintiff, Lester Grovatt, appears to meet the current class definition. But he cannot be an adequate class representative, nor are his claims typical. Because Mr. Grovatt resides in New Jersey, the legal basis for his claims is different from other putative class members. New Jersey law, for example, requires him to show that St. Jude Medical knowingly and intentionally concealed information and that he suffered a loss. *See* N.J. Stat. §§ 56:8-2 and 56:8-19. Mr. Grovatt also has a long and complicated history of heart problems that predates his valve replacement and that no other class member is likely to replicate. (PA 363-64)

**3. The Class Fails Because Individual Legal And Factual Issues Predominate On The Need For Medical Monitoring**

The newly certified class is still a class seeking medical monitoring relief on behalf of Silzone patients with no injuries. The record, augmented

by the affidavit of plaintiffs' expert, Dr. Butchart, still demonstrates that individualized issues overcome any claim for medical monitoring. (PA 370-75) As a result, the predomination of individual issues still defeats any class certification. *See Silzone Heart Valve Litig.*, 425 F.3d at 1122.

### 4. The Class Fails Because Individual Legal And Factual Issues Predominate On Liability And Causation

Plaintiffs' burden of proof on liability issues further illustrates that individual factual issues predominate. Plaintiffs must prove a causal connection not only between St. Jude Medical's alleged representations and their use of the Silzone valve, but also between their use of the Silzone valve and their alleged need for enhanced medical monitoring.[5] Yet, because it is impossible to establish that any two physicians received the same information about the Silzone valve, plaintiffs cannot prove that St. Jude Medical made a misrepresentation or engaged in conduct on a classwide basis. There also is no uniformity in proof on the existence of a causal nexus between the alleged representations and their alleged need for enhanced monitoring on a classwide basis. (*See, e.g.*, PA 364-70, 494-98, 501-04, 508-09, 513-16, 519, 523-24, 526-29, 531-33, 538, 542-43)

Although ignored by the district court, the uncontradicted record shows that proof of either link requires patient-specific analysis, taking into account what each class member or physician heard about Silzone valves, the impact

---

[5] Under the Minnesota statutes, plaintiffs must prove (1) a representation or conduct violating of one of the three statutes, (2) injury, and (3) a "causal nexus" between the two). *See Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 13-14 (Minn. 2001)

of that knowledge on treatment decisions, and each class member's medical history and condition to show that the alleged need for enhanced medical monitoring is actually attributable to a Silzone valve. Nationwide class certification is not possible in these circumstances.

### 5. Plaintiffs' Proposed Class Action Does Not Provide The Superior Method For Resolving What Is Left Of These Silzone Valve Cases

Because of the number of individual issues on liability, causation, and remedies (including medical monitoring), a classwide trial will produce no economies for any one class member or for the class as a whole. This class action also will not provide any substantial benefits. The class consists of patients who have lived with their Silzone valves for at least six years, without complication. For Mr. Grovatt, it has been more than seven years. Each class member likewise can be monitored adequately by his or her own physician, and in the unlikely event any one of them suffers a complication that could be attributed to a Silzone valve, a civil action can be filed based on that particular alleged injury.[6] Given these realities, a costly and unnecessary

---

[6] Based upon data from the randomized clinical study comparing Silzone and non-Silzone valves, the only complication for which there was any statistically significant increase was early major paravalvular leak. That early, small increased risk has declined over time, to the point that the risk of major paravalvular leak for those currently implanted with Silzone valves is no different from the risk that non-Silzone valve recipients bear. (PA 415-15, 445-46) As one recent peer-reviewed study has noted, "The additional risks of the Silzone valve, compared to Control, diminish over time and disappear by 4 years after implant. The minimum time after implant of the patients currently alive with Silzone is now well beyond 5 years; thus, these current patients now have a risk profile similar to that of patients with a standard St. Jude valve." Gary L. Grunkemeier et al., *Time-Related Risk of the St. Jude*

(continued...)

classwide trial is anything but the superior method for resolving the class members' claims. *See Johnston v. HBO Film Mgmt. Inc.*, 265 F.3d 178, 194 (3d Cir. 2001) (holding that a class action must be the best method of resolution, not just a possible method or potentially good method of resolution).

**E. The Certified Class Offends Principals Of Federalism And Constitutional Limitations On One State's Power To Export Its Law To The Exclusion Of Other States' Laws**

There are additional errors in the district court's class certification order grounded in principles of federalism and the Constitution. "[N]o reading of [Rule 23] can ignore the [Rules Enabling] Act's mandate that 'rules of procedure "shall not abridge, enlarge or modify any substantive right [under state law]."'" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848 (1998). Here, plaintiffs cite no authority – because there is none – that any state's consumer protection law permits medical monitoring damages for anyone, let alone individuals with no injuries. The district court therefore has improperly invoked Rule 23 to create new substantive rights in the affected states.

The district court's reliance on Rule 23 to convert Minnesota law into the "Law of the Land" also cannot be squared with proper notions of federalism and other basic constitutional protections. As one district court stated, the "Commerce Clause to the United States Constitution precludes the application of [a state consumer protection statute] to each and every class

(...continued)

*Silzone Heart Valve*, 30 European Journal of Cardio-Thoracic Surgery 20, 26 (2006) (PA 585, 591).

member's claim." *Montgomery*, 209 F.R.D. at 221, 228-31; *see Lyon v. Caterpillar*, 194 F.R.D. 206, 213 (E.D. Pa. 2000) ("Applying the Pennsylvania consumer fraud act to all the putative members' claims would be a violation of the due process rights of those plaintiffs who do not live in Pennsylvania and/or did not purchase their boats in Pennsylvania."). This Court should intervene and grant this petition for these reasons as well.

## IV. CONCLUSION

This Court reversed the district court's initial class certification order and remanded with clear direction on the additional inquiries the district court had to undertake. Rather than following that direction, the district court gave only superficial attention to this Court's decision and engaged in flawed and incomplete analysis intended to reach a pre-conceived result – resurrection of class litigation that this Court had rejected. The court's order not only is contrary to this Court's mandate, but also is unprecedented and far reaching. St. Jude Medical's petition for appeal from that order should be granted.

DATED: October 27, 2006.

Respectfully submitted,

REED SMITH LLP
Steven M. Kohn
James C. Martin
Steven J. Boranian

HALLELAND, LEWIS, NILAN & JOHNSON, P.A.
Tracy J. Van Steenburgh

RIDER BENNETT, LLP

By ______________________
Eric J. Magnuson

Attorneys for Defendant and Petitioner
St. Jude Medical, Inc.