# EXHIBIT 19

No. 06-8019

# In the United States Court of Appeals for the Eighth Circuit

In re St. Jude Medical, Inc.
Silzone® Heart Valve Products Liability Litigation

Lester Grovatt, Beatrice Bailey, Levy D. Redden, Bonnie L. Sliger, and Joe W. Sanchez, on behalf of themselves and all other similarly situated,

*Plaintiffs and Respondents,*

v.

St. Jude Medical, Inc.,

*Defendant and Petitioner.*

From a Class Certification Order by the United States District Court for the District of Minnesota Multidistrict Litigation No. 01-1396 (JRT/FLN)
The Honorable John R. Tunheim

## RESPONDENTS' OPPOSITION TO ST. JUDE MEDICAL, INC.'S PETITION UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(f) FOR PERMISSION TO APPEAL A CLASS CERTIFICATION ORDER

ZIMMERMAN REED P.L.L.P.
J. Gordon Rudd, Jr. (#222082)
David M. Cialkowski (#0306526)
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402
(612) 341-0400

LEVY, ANGSTREICH, FINNEY, BALDANTE, RUBENSTEIN & COREN, P.C.
Steven E. Angstreich
Michael Coren
Carolyn C. Lindheim
1616 Walnut Street, Fifth Floor
Philadelphia, PA 10103
(215) 735-1616

CAPRETZ & ASSOCIATES
James T. Capretz
5000 Birch Street, Suite 2500
West Tower
Newport Beach, CA 92660
(949) 724-3000

GREEN, JACOBSON & BUTSCH, P.C.
Joe D. Jacobson
7733 Forsyth Boulevard, Suite 700
Clayton, MO 63105
(314) 862-6800

*Attorneys for Respondent continued on reverse of cover*

2006 – BACHMAN LEGAL PRINTING – FAX (612) 337-8053 – PHONE (612) 339-9518 or 1-800-715-3582

COHEN, MILSTEIN,
HAUSFELD & TOLL, P.L.L.C.
Daniel W. Sigelman
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
(202) 408-4600

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

COUNTER-STATEMENT OF THE CASE .......... 2

ARGUMENT .......... 4

I. The District Court's Certification Decision Fully and Correctly Complies with This Court's Prior Opinion and Remand Instructions. .......... 4

A. The Singular Issue to Consider Is Whether the District Court .. Followed This Court's Mandate. .......... 6

B. The District Court Properly Held That 32-States Had No Outcome-Determinative Conflicts, Resulting in Application of Minnesota Law with Respect to Each Class Member in Those States. .......... 7

C. Petitioner Concedes That There Are No Constitutional Deficiencies In the District Court's Due Process Contacts Analysis. .......... 10

D. Petitioner Does Not Point to Any Errors In the District Court's Application of Minnesota's Choice-of-Law Factors. .......... 12

1) Predictability of Results (See PA 167-70) .......... 13

2) Maintenance of Interstate and International Order (See PA 170-71) .......... 14

3) Simplification of the Judicial Task (See PA 171-72) .......... 14

4) Governmental Interest (See PA 172-74).. .......... 14

5) The Better Rule of Law (See PA 174-76). .......... 15

II. Petitioner's Other Reasons for Allowing an Appeal Do Not Warrant the Extraordinary Appeal It Requests. .......... 16

CONCLUSION .......... 18

## TABLE OF AUTHORITIES

**Cases**


Allstate Ins. Co. v. Hague,
449 U.S. 302, 101 S. Ct. 633 (1981) .......... 12, 14, 15

Avery v. State Farm Mutual Automobile Insurance Co.,
216 Ill. 2d 100, 835 N.E.2d 801 (2005) .......... 6, 7, 18

Barbara's Sales, Inc. v. Intel Corp.,
2006 Ill. App. LEXIS 650 (Ill. App. Ct. July 25, 2006) .......... 6, 7

Cf. Pfizer, Inc. v. Government of India,
434 U.S. 309 (1978) .......... 20

Chamberlan v. Ford Motor Co.,
402 F.3d 952 (9th Cir. 2005) .......... 1, 2

Clothesrigger, Inc. v. GTE Corp.,
191 Cal. App. 3d 605, 236 Cal. Rptr. 605 (1987) .......... 7

Curtis v. Philip Morris Companies, Inc.,
2004 WL 2776228 (Minn. Dist. Ct. November 29, 2004) .......... 6

Dal Ponte v. American Mortgage Express Corp.,
2006 U.S. Dist. LEXIS 57675 (D.N.J. Aug. 17, 2006) .......... 6

Danielson v. National Supply Co.,
670 N.W.2d 1 (Minn. Ct. App. 2003) .......... 9, 16

Davis v. Furlong,
328 N.W.2d 150 (Minn. 1983) .......... 9

Felder v. Casey,
487 U.S. 131 (1988) .......... 14

Ferris, Baker Watts, Inc. v. Deutsche Bank Securities,
2004 WL 2501563 (D. Minn. 2004) .......... 13

Franchise Tax Bd. of California v. Hyatt,
538 U.S. 488 (2003) .......... 14

Grace v. Perception Technology Corp.,
128 F.R.D. 165 (D. Mass. 1989) ....................................................................13

Group Health Plan, Inc. v. Philip Morris Inc.,
621 N.W.2d 2 (Minn. 2001) ..........................................................................5

Hughes v. Wal-Mart Stores, Inc.,
250 F.3d 618 (8th Cir. 2001) .........................................................................16

In re Activision Secs. Litig.,
1985 U.S. Dist. LEXIS 13271 (D. Cal. 1985) ...............................................13

In re Benedictin Litigation,
857 F.2d 290 (6th Cir. 1988) .........................................................................12

In re Lorazepam & Clorazepate Antitrust Litig.,
289 F.3d 98 (D.C. Cir. 2002) ..........................................................................2

In re St. Jude Silzone, Inc.,
425 F.3d 116 (8th Cir. 2005) ...........................................................................5

Instructional Sys. v. Computer Curriculum Corp.,
130 N.J. 324 (N.J. 1992) .................................................................................7

Int'l Union of Operating Eng'rs Local # 68 Welfare Fund v. Merck & Co.,
384 N.J. Super. 275, 894 A.2d 1136 (App. Div.) ..............................................7

Kociemba v. G.D. Searle & Co.,
680 F. Supp. 1293 (D. Minn. 1988) ..................................................................6

Lommen v. City of East Grand Forks,
522 N.W.2d 148 (Minn. App. 1994) .........................................................16, 17

Martin v. Heinold Commodities, Inc.,
117 Ill. 2d 67, 510 N.E.2d 840 .....................................................................6, 7

Miller v. Pilgrim's Pride Corp,
366 F.3d 672 (8th Cir. 2004) .........................................................................17

Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.,
590 N.W.2d 670 (Minn. Ct. App. 1999) ............................................................9

Northwest Airlines v. Astraea Aviation Services,
111 F.3d 1386 (8th Cir. 1997)....................12, 14

Pen Coal Corp.,
903 F. Supp. 980 (S.D. W.Va. 1995)....................16

Peterson v. BASF Corp.,
618 N.W.2d 821 (Minn. Ct. App. 2000)....................6

Petroleum v. Shutts,
472 U.S. 797 (1985)....................passim

Prado-Steiman v. Bush,
221 F.3d 1266 (11th Cir. 2000)....................2

Skiriotes v. Florida,
313 U.S. 69 (1941)....................7

Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.,
262 F.3d 134 (2nd Cir. 2001)....................2

Waste Management Holdings, Inc. v. Mowbray,
208 F.3d 288 (1st Cir. 2000)....................2

## INTRODUCTION

This Court should deny the current Rule 23(f) Petition for Leave to Appeal the District Court's October 13, 2006, Order ("Order") certifying a national consumer class action. Petitioner's Addendum, pp. 1-15. The District Court properly executed the mandate of this Court's October 12, 2005, order remanding for further analysis of Due Process considerations and Minnesota's choice-of-law rules.[1]

Petitioner St. Jude Medical Inc. ("SJM") grossly mischaracterizes the District Court's Order. This case does not assert a cause of action for medical monitoring. Instead, this class action exclusively seeks to recover monetary damages and equitable relief for SJM's violations of the consumer protection laws of Minnesota, SJM's home state and the state in which Petitioner conceived, directed, and executed the alleged misconduct.[2] SJM's attempts to recast it otherwise are unavailing.

The District Court faithfully conducted a step-by-step, legal and evidentiary analysis of outcome-determinative conflicts, Due Process contacts, and Minnesota choice-of-law factors, with reference to ***every*** state's statutory consumer law, in accordance with this Court's mandate. SJM's Petition simply does not address that detailed analysis. It is difficult to answer the Petition's "argument" at all because it fails to discuss the relevant legal or Rule 23(f) standards.[3] The Petition offers no

---

[1] The Court's order also completely reversed the District Court's other challenged certification ruling in which it certified a medical monitoring class comprised of a subset of Silzone patients who resided in one of seventeen (17) states that permit ***tort-based*** medical monitoring claims to be prosecuted without proof that an existing medical injury existed.

[2] The class action complaint before the District Court specially pled the consumer fraud count as violative of Minnesota's consumer fraud laws.

[3] Interlocutory review under Rule 23(f) is disfavored. Chamberlan v. Ford Motor Co., 402 F.3d 952 (9th Cir. 2005) ("[P]etitions for Rule 23(f) review should be

explanation as to how ***any*** step of the District Court's explicit analyses of the remanded issues was legally deficient (much less "manifestly" so). To invoke the extraordinary procedure of interlocutory appeal for a second time, SJM must have pointed to something the District Court did wrong with some supporting legal authority – or at least suggest why the existing authority the District Court followed should be disregarded. SJM is simply unable to allude to a specific legal error in its Petition.

## COUNTER-STATEMENT OF THE CASE

This class action is part of a multi-district litigation proceeding (MDL No. 1396) involving SJM's recalled mechanical prosthetic heart valves with Silzone-coated sewing cuffs. The claims asserted against SJM are essentially two-fold: 1) the Silzone valves were adulterated and misbranded, warranting their recall, and 2) SJM marketed the valves using false and misleading representations and

---

granted sparingly.") Prado-Steiman v. Bush, 221 F.3d 1266, 1276 (11th Cir. 2000) ("[I]interlocutory appeals are inherently 'disruptive, time-consuming, and expensive,' and consequently are generally disfavored."); Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd., 262 F.3d 134, 140 (2d Cir. 2001) (stating that Rule 23(f) standards will "rarely be met" and should not be used as a means to delay proceedings in the district court); In re Lorazepam & Clorazepate Antitrust Litig., 289 F.3d 98, 105 (D.C. Cir. 2002); Waste Management Holdings, Inc. v. Mowbray, 208 F.3d 288, 294 (1st Cir. 2000). The Ninth Circuit's recent decision in Chamberlan synthesizes the standards that have emerged:

> Review of class certification decisions will be most appropriate when: (1) there is a death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claims, coupled with a class certification decision by the district court that is questionable; (2) the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review; or (3) the district court's class certification decision is manifestly erroneous. This framework most closely approximates the standard adopted by the D.C. Circuit in In re Lorazepam, 289 F.3d at 99-100, 105.

Chamberlan, 402 F.3d at 959.

suppression of material facts about Silzone's safety and efficacy in violation of Minnesota's consumer fraud laws.

The discovery record repeatedly demonstrates that SJM misrepresented or suppressed core efficacy and safety information including, but not limited to 1) representing that the silver coating was a solid and permanent silver coating when SJM was aware that it was actually comprised of three metals of differing toxicity (silver, palladium and titanium) and that the silver leached from the valve's cuff once implanted into a patient's heart, 2) representing that the silver comprising Silzone was safe up to a threshold of 300 ppb of silver in human circulation notwithstanding that such threshold was wholly bereft of scientific support, 3) suppressing laboratory and animal study evidence that revealed the existence of serious safety and efficacy issues, and 4) concealing its awareness of mounting rates of disturbing cases of paravalvular leaks and thromboembolic events that far exceeded the frequencies of such events recorded for SJM valves not coated with Silzone.

On October 12, 2005, this Court remanded the consumer protection class previously certified by the District Court with specific instructions to analyze whether each class member's claim against SJM sufficed under Phillips Petroleum v. Shutts, 472 U.S. 797 (1985), to permit application of Minnesota's consumer protection laws to their claims and, if so, whether, under Minnesota's choice-of-law rules, Minnesota's laws could and should govern all of the proposed class members' claims. Following this Court's cue, Respondents renewed their motion for certification of the consumer class, and Judge Tunheim considered and decided these two narrow issues. In his Order, the District Court first found that Minnesota had numerous significant contacts to each class member's consumer protection claim which, consistent with Shutts, permits Minnesota's consumer fraud laws to apply constitutionally. The court then addressed the second remanded question,

whether under Minnesota's choice-of-law rules, the consumer protection law of Minnesota or of each class member's home state (or state of implantation) should control. Aided by extensive tables and appendices detailing each state's consumer protection laws and a side-by-side comparison of Minnesota's consumer protection laws with those submitted by Plaintiffs' counsel as part of their renewed motion for class certification — the accuracy of which SJM did not challenge — the District Court undertook a thorough and probing analysis of the consumer protection laws of the fifty states.[4] See RA ___-___.

The District Court determined that the majority of state consumer protection laws (32 states) were materially identical to Minnesota's and that only 18 states had outcome-determinative conflicts with Minnesota law. On further analysis, the court found that in each instance where a true conflict appeared, Minnesota's choice-of-law rules result in the conclusion that other states' conflicting elements were based on policies irrelevant to the facts of this case. Namely they were based on other states' desire to insulate their own local businesses from broader consumer relief. Order at 13.

## ARGUMENT

### I. The District Court's Certification Decision Fully and Correctly Complies with This Court's Prior Opinion and Remand Instructions.

SJM fills its Petition with conclusory claims and charges that the trial court ignored this Court's prior order and Rule 23 requirements on remand, and merely reinstated the very same medical monitoring class that this Court decertified. SJM's unfair and inaccurate portrayal of Judge Tunheim's decision must not receive audience.

---

[4] SJM failed in its duty to reproduce this portion of the relevant record.

In reality, the District Court's certification ruling is neither controversial nor unheralded. In fact, in its order remanding Plaintiffs' Minnesota consumer protection law claims to Judge Tunheim, this Court expressly recognized that "[a]pplication of Minnesota law to all plaintiffs' claims ultimately may be proper . . . ." In re St. Jude Silzone, Inc., 425 F.3d 116, 1120 (8th Cir. 2005). Here, Respondents seek to hold SJM liable for deceptively advertising and marketing a medical device and for selling a misbranded, adulterated, unsafe, and ineffective medical product. Prosecuting this type of misconduct is hardly novel and is well within the purview of Minnesota's consumer protection and UDAP laws. See Group Health Plan, Inc. v. Philip Morris Inc., 621 N.W.2d 2 (Minn. 2001) (applying Minnesota's UDAP laws to recover medical costs associated with deceptive marketing); Kociemba v. G.D. Searle & Co., 680 F. Supp. 1293, 1303-05 (D. Minn. 1988) (applying Minnesota's UDAP laws in intrauterine device case); Curtis v. Philip Morris Companies, Inc., 2004 WL 2776228 (Minn. Dist. Ct. November 29, 2004) (applying Minnesota's UDAP laws in a "light" tobacco class action case).

The District Court's decision is also in accord with the certification of other nationwide consumer claims applying one particularly interested state's consumer protection laws. Dal Ponte v. American Mortgage Express Corp., 2006 U.S. Dist. LEXIS 57675 (D.N.J. Aug. 17, 2006) (certification of a nationwide consumer class applying NJCFA); Barbara's Sales, Inc. v. Intel Corp., 2006 Ill. App. LEXIS 650 (Ill. App. Ct. 5th Dist. July 25, 2006) (applying California law); Peterson v. BASF Corp., 618 N.W.2d 821 (Minn. Ct. App. 2000), aff'd following remand and trial, 711 N.W.2d 470 (2006) (applying NJCFA in nationwide class); Martin v. Heinold Commodities, Inc., 117 Ill. 2d 67, 510 N.E.2d 840, 109 Ill. Dec. 772 (1987) (pre-Avery nationwide class case applying Illinois Consumer Fraud Act to nationwide

class)[5]; Clothesrigger, Inc. v. GTE Corp., 191 Cal.App.3d 605, 236 Cal. Rptr. 605 (1987) (holding California's law could apply to a nationwide class and remanding for further proceedings); Int'l Union of Operating Eng'rs Local # 68 Welfare Fund v. Merck & Co., 384 N.J. Super. 275, 894 A.2d 1136 (App. Div.), appeal pending, 188 N.J. 215, 902 A.2d 1232 (2006) (affirming the application of New Jersey's UDAP law to nationwide class action seeking repayment for VIOXX prescriptions based on New Jersey-based defendant's allegedly deceptive marketing practices emanating from within New Jersey). The certification ruling is also fully consistent with the long accepted principle in this nation that a State may regulate its own residents even when they are acting outside the state. Skiriotes v. Florida, 313 U.S. 69 (1941); Instructional Sys. v. Computer Curriculum Corp., 130 N.J. 324, 370 (N.J. 1992).

### A. The Singular Issue to Consider Is Whether the District Court Followed This Court's Mandate.

The relief Respondents seek – which does not differ from the relief they sought when their action was first filed – is recovery for damages caused by deceptive advertising and representations, misleading suppressions of material fact and the sale of misbranded and adulterated products. Respondents seek equitable ***relief*** in the form of a medical monitoring program and an epidemiological study to ascertain and evaluate the residual, long-term effects of the silver coating in their bodies. SJM's protestations to the contrary notwithstanding, the nature of such

[5] In Barbara's Sales, Inc., *supra* text, a decision handed down after the Illinois Supreme Court's opinion in Avery v. State Farm Mut. Auto. Ins. Co., 216 Ill. 2d 100, 835 N.E.2d 801 (2005) (holding Illinois' UDAP law applied only to consumer fraud occurring within Illinois), an Illinois intermediate appeals court held that the Illinois Supreme Court's earlier Martin decision, which approved the certification of a nationwide class, was still authoritative in cases where the subject state consumer law, such as California's, permitted extraterritorial effect and application.

equitable relief in no way differs from that of an injunction to prevent further deceptive advertising or sale of a misbranded product. Minnesota's remedial consumer statutes are intended to deter certain proscribed conduct. The District Court has discretion to fashion the remedy that will best serve these statutory goals and will ultimately determine what relief, if any, may be presented to the fact-finder. The final form of the ultimate relief, however, is never a factor in determining whether class certification is appropriate.

In its remand order, this Court directed the lower court to consider only whether it could, in its discretion and within the bounds of Shutts and Minnesota conflicts law, certify a nationwide class under Minnesota's consumer protection laws. Surely, if this Circuit viewed this action solely as a "medical monitoring case," as Defendants would have this Court believe, the panel would have simply reversed the certification, as it did the 17-state medical monitoring class, and have decided the consumer fraud class certification issue then and there. It would be pointless for this Court to remand this consumer fraud class action if it were, as SJM asserts, merely a disguised medical monitoring cause of action.

But, notably, while this Court fully reversed class certification of the 17-state medical monitoring class, it ordered the District Court to conduct a full Shutts and 50-state analysis to determine whether Minnesota's consumer protection laws could apply nationwide. Thus, the only role for medical monitoring here, as the District Court observed, is as one of several ***possible*** remedies in the event of a substantive finding of one or more violations of Minnesota's consumer protection laws. Order at 5 n.1.

**B. The District Court Properly Held That 32-States Had No Outcome-Determinative Conflicts, Resulting in Application of Minnesota Law with Respect to Each Class Member in Those States.**

Federal courts sitting in diversity apply the forum state's conflict of laws rules. Nesladek v. Ford Motor Co., 46 F.3d 734, 736 (8th Cir. 1995). If the law in question involves ***procedures or remedies***, the law of the forum applies, and the issue is resolved. Davis v. Furlong, 328 N.W.2d 150, 153 (Minn. 1983) (matters of procedure and remedies are governed by law of forum); Danielson v. National Supply Co., 670 N.W.2d 1, 5-6 (Minn. Ct. App. 2003) (same). Thus, "[a] conflict of law exists if choosing the law of one state over the law of another state would be '***outcome determinative***.'" Schumacher v. Schumacher, 676 N.W.2d 685, 689 (Minn. Ct. App. 2004) (quoting Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co., 590 N.W.2d 670, 672 (Minn. Ct. App. 1999) (emphasis added).

Below, Respondents correctly categorized the laws of every potentially relevant jurisdiction into five outcome determinative inquiries:

1) Did SJM's conduct violate the consumer protection law?
2) Is there a private cause of action?
3) Is there a scienter element requiring at least knowledge by defendant of the deceitfulness of its conduct?
4) Does the statute require proof of individualized reliance?
5) Does the law prohibit material omissions?

See PA 155-66 (providing basis for substantive elements of Minnesota's consumer fraud laws). The District Court agreed that these inquiries properly defined the elements of consumer protection statutes that were outcome determinative (i.e. substantive) and properly determined that 32 states[6] had no outcome determinative

[6] Alabama, Arizona, Arkansas, Colorado, Georgia, Indiana, Iowa, Maryland, Nevada, New Mexico, Oklahoma, Pennsylvania, South Dakota, Texas, Utah,

conflicts. Under Minnesota's conflict-of-law rules, Minnesota's consumer protection laws must apply to class members' claims in these 32 states. SJM does not address this requirement, other than to claim generally that it is unconstitutional to apply Minnesota law to any case other than a Minnesota class member's. This, despite the fact that this Court has held that applying the forum state's choice-of-law rules is not only acceptable, it is mandatory. Nesladek, 46 F.3d at 736.

Petitioner claims without supporting detail that the court below broad-brushed its 50-state analysis, shirking its responsibility to provide a detailed, sound analysis. But the Court's opinion expressly contradicts Defendant's rhetoric.

> Plaintiffs have provided the Court with a ***detailed analysis*** of consumer protection statutes across the United States. * * * ***Based on this sound analysis***, the Court concludes that 32 jurisdictions have no outcome determinative conflicts with Minnesota law.

Order at 9-10. Worse still, Defendant's Petition glaringly ***omits*** in its appendix ***the detailed 50-state analysis*** the District Court incorporated into its opinion by reference. Order at 13 n.6. Furthermore, while noting general agreement with Plaintiffs' analytical tables classifying the various states' laws, the District Court expressed disagreement with Plaintiffs' counsel's view and categorization of one state's law, finding that Plaintiffs' counsel had erroneously characterized Utah's consumer protection law as not conflicting with Minnesota's law. See Order at 10 n.3. This disagreement evidences clearly that the District Court did not merely rubber stamp Plaintiffs' conclusions, but instead audited the law of 50 states, conducted its own, independent analysis and drew its own conclusions. Defendant's vociferous objection that the 50-state analysis was erroneous,

---

Virginia, Wisconsin, and Wyoming. See generally RA 1-373 (except Utah, which District Court corrected).

combined with its efforts to conceal that analysis from this Court, should doom its Petition.

### C. Petitioner Concedes That There Are No Constitutional Deficiencies In the District Court's Due Process Contacts Analysis.

The Order below responded to this Court's instruction for a more detailed Shutts analysis on whether Minnesota possesses minimally sufficient contacts with each plaintiff's consumer claim for Due Process purposes. Yet remarkably, SJM's Petition does not even ***mention*** Due Process. Rather, in a rhetorical argument devoid of relevant authority, the Petition merely asserts that the past year of voluminous briefing and analysis in the District Court failed the "thoroughness" requirement. Petition at 9-11. This is a brash claim with no support in the Petition, and support will not magically arise if this Court grants permission for interlocutory appeal.

SJM's Petition does not acknowledge the applicable legal standards or even identify anything wrong with the trial court's Due Process analysis pertaining to choice of law. The Supreme Court requires that, whatever law a forum chooses to apply to a claim, it must be from one of the jurisdictions that has "a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary or fundamentally unfair." Allstate Ins. Co. v. Hague, 449 U.S. 302, 312-13, 101 S. Ct. 633 (1981). As found by the District Court, under longstanding federal law and the evidence presented on remand below, Minnesota bears more than sufficient contacts with ***every single plaintiff's*** individual (and identical) consumer claim, based on SJM's claim-related activities (specifically including the heart-valve design, engineering, manufacture, testing, marketing, distribution, labeling, and executive decision-making); its incorporation, headquarters, and principal place of business; its sales/consignment

contracts and its published invitations to communicate through Minnesota channels. Order at 6-8. Consequently, each individual plaintiff's consumer claim against SJM – without exception – was shown to bear sufficient contacts to support application of Minnesota law under the "modest restrictions" imposed by the Due Process clause. See, e.g., Northwest Airlines v. Astraea Aviation Services, 111 F.3d 1386, 1394 (8th Cir. 1997) (Due Process contacts established with each of two different states, based on respective headquarters of plaintiff and defendant, and publication or republication of statements in each of states); In re Benedictin Litigation, 857 F.2d 290, 303-06 (6th Cir. 1988) (applying the law of the state of manufacture to the claims of plaintiffs domiciled elsewhere); Ferris, Baker Watts, Inc. v. Deutsche Bank Securities, 2004 WL 2501563, *5 (D. Minn. Nov. 5, 2004) (application of New Jersey RICO Act to claims of non-New Jersey plaintiffs constitutionally supported by significant aggregation of contacts based on New Jersey domiciles of some of the defendants); Grace v. Perception Technology Corp., 128 F.R.D. 165, 171 (D. Mass. 1989) (Due Process contacts test met through defendants' domiciles and misrepresentations emanating from the forum state).

But instead of addressing the overwhelming controlling law, or the District Court's detailed 50-state analysis, SJM chastises the District Court for observing what is surely unassailable: the Supreme Court does ***not*** require a district judge to "discuss" each of over 11,000 class action plaintiffs separately as it determines choice of law. Yet SJM declares that this observation rendered the District Court's analysis "truncated." Petition at 10. One is bound to ask, "Truncated compared to what?" SJM cites no class action case in the history of Rule 23 that has involved its hypothesized plaintiff-by-plaintiff discussions (whatever they would look like). This makes sense, as such a procedure would instantly defeat the purpose of Rule 23, which is to address collective issues collectively. Accord In re Activision Secs.

Litig., 1985 U.S. Dist. LEXIS 13271 at *11-13 (D. Cal. 1985) (holding that Shutts does not require court in class action to conduct individualized inquiry into relative interests of each state *vis-a-vis* each individual plaintiff, observing: "[n]othing in Shutts suggests that the Supreme Court intended its holding to have such a broad application or such a crippling effect on nationwide class actions.").

Finally as to the Shutts analysis, while SJM correctly remarks that any given plaintiff's claim is not "solely" connected to Minnesota, Petition at 11, such fact has no significance here. As the Supreme Court has often recognized, more than one state can meet Due Process connection requirements to the same claim at the same time. Franchise Tax Bd. of California v. Hyatt, 538 U.S. 488, 496 (2003); Shutts, 472 U.S. at 823; Allstate, 449 U.S. at 307-08; see also Northwest Airlines, 111 F.3d at 1394. This is why a federal district court sitting in diversity must apply the choice-of-law methodology of the forum state to select (from among the various constitutional alternatives) the law that a state court of the forum would apply to each claim. Felder v. Casey, 487 U.S. 131, 150 (1988); Allstate, 449 U.S. at 307; Northwest Airlines, 111 F.3d at 1393. Minnesota clearly meets the Due Process contacts test for each of the individual claims.

### D. Petitioner Does Not Point to Any Errors In the District Court's Application of Minnesota's Choice-of-Law Factors.

The District Court properly performed the conflict of laws analysis in accordance with Minnesota's conflicts of law rules. SJM ***totally ignores*** the state by state analyses and state by state comparisons the court utilized, and instead cites a number of supposed conflicts that both the court's opinion and Plaintiffs' materials allegedly "overlooked." However, Defendant's irrelevantly cited individual state requirements related solely to procedures and remedies. Furthermore, SJM improperly balances only two of the five relevant Leflar factors (predictability and governmental interests). See Milkovich v. Saari, 203 N.W.2d

408, 412-416 (Minn. 1973) (adopting balancing of Leflar factors to resolve conflicts in applicable laws). Given Petitioner's obligation to show that the District Court's decision was "manifestly erroneous" in order to obtain the extraordinary review it now seeks, its missing analysis condemns its Petition. Respondents summarize the correct Milkovich-Leflar analysis here.

**1) Predictability of Results (See PA 167-70).** Citing only tort and warranty cases, and seizing on this Court's isolated use of the word "predict," SJM argues that no one could have possibly predicted that Minnesota law could apply because they might not have known where the valves and marketing were created. This argument is a bit silly. While laymen might not know that their credit card company has its principal place of business in California, they certainly know that, if there is a legal dispute over deceptive practices, they could bring suit in the corporation's home state. Finding out the domicile of the Defendant is a few phone calls or mouse clicks away.

The District Court also properly rejected SJM's contention that there could not be any expectation that Minnesota law could apply to an out of state plaintiff, finding:

> [D]efendant invited heart valve purchasers and recipients to solicit more product information ***from Minnesota*** by including a Minneapolis, ***Minnesota telephone number*** in journal advertisements worldwide.
>
> * * *
>
> [T]here is no indication that plaintiffs or defendant reasonably expected that another state's law would apply. Over 80 percent of defendant's medical contracts with hospital or clinic purchasers contain a provision in which Minnesota law was selected as the governing law. Moreover, defendant could easily predict that it would be subject to the laws of Minnesota, and it is less burdensome to expect defendant to understand and follow the laws of its home state than the consumer protection laws of all fifty states.

Order at 8, 11. Like other courts, the District Court expressly and correctly distinguished tort and warranty cases for purposes of predictability. See Lommen v. City of East Grand Forks, 522 N.W.2d 148, 150 (Minn. Ct. App. 1994) (auto accident case analyzed not as tort case but as one implicating governmental immunity); Pen Coal Corp., 903 F. Supp. 980, 983 (S.D.W. Va. 1995) ("For purposes of choice of law analysis, however, bad faith and unfair trade practices claims properly should be characterized as contract, not tort claims"). SJM relies ***solely*** on tort cases in its Leflar analysis.

**2) Maintenance of Interstate and International Order (See PA 170-71).** This element, which SJM fails to address, seeks to ensure that Minnesota has sufficient contacts with and interest in the facts and issues being litigated. Danielson, 670 N.W.2d at 8; see also Hughes v. Wal-Mart Stores, Inc., 250 F.3d 618, 620 (8th Cir. 2001). It also seeks "to minimize forum shopping designed to influence choice of law." Lommen, 522 N.W.2d at 151. The District Court properly determined that applying Minnesota law does not offend either of these concerns.

**3) Simplification of the Judicial Task (See PA 171-72).** This factor concerns the court's ability to discern and apply the law of a state other than Minnesota. Lommen, 522 N.W.2d at 152. Federal courts are particularly familiar with applying many states' laws. Miller v. Pilgrim's Pride Corp, 366 F.3d 672, 674 (8th Cir. 2004). The District Court correctly found that this factor weighed in favor of applying one state's law – Minnesota's.

**4) Governmental Interest (See PA 172-74).** As a unanimity of courts have done, the District Court put great importance on this factor. The District Court properly weighed the policy interests of Minnesota with those of other states with connections to this litigation. Order at 12-14. The court highlighted three compelling-interest guideposts in aid of its state-by-state finding that Minnesota

law should apply: 1) Minnesota has a compelling interest in redressing wrongs committed within its borders; 2) Minnesota has a moral interest in providing redress for injured parties; and 3) Minnesota has an economic interest in protecting the reputations of Minnesota businesses by protecting out-of-state persons harmed by other Minnesota businesses. Id. at 12-13. While it also acknowledged the ***strong interests other states have*** in regulating the marketing and sale of medical devices within their borders, id. at 13, the District Court determined that such interest was tempered by fact that the 18 conflicting states' laws had more stringent liability standards designed to protect ***local*** defendants, and were less protective of consumers than Minnesota's law. See generally RA 1-373. The District Court thus indicated that a policy supporting industry protectionism does not, and could not, rationally extend to support a finding that the conflicting states had an interest in seeking to prevent an action in Minnesota that would benefit their own citizens.

The District Court also rejected the same argument SJM makes here that, under tort law, this factor generally favors the locus of physical contact-causing injury. The court held that consumer protection statutes are far different than tort law because they focus on the behavior of the defendant, making it appropriate to apply the law where the defendant has the most contacts.

**5) The Better Rule of Law (See PA 174-76).** The District Court did not address this element because Minnesota courts rarely apply it.

Furthermore, and contrary to SJM's argument, Respondents did not, and could not "homogenize" states' consumer protection regimes.[7] In fact, Plaintiffs noted conflicts of substantive law between Minnesota and 17 other states. The

[7] SJM falsely indicates that, in their renewed motion for class certification, Plaintiffs relied upon Avery v. State Farm Mut. Auto. Ins. Co., 746 N.E.2d 1242 (Ill. App. Ct. 2001). Plaintiffs' counsel are not in the habit citing reversed case law, and did not do so here. Avery was reversed on grounds not applicable to SJM's petition.

District Court's independent analysis caused it to conclude that 18 states have conflicts of substantive law. Of course, there is no requirement of homogeneous law. If the laws were homogeneous, there would be no need to balance the Leflar factors for a choice-of-law analysis. Such analysis only occurs if there is a conflict of substantive law.

SJM also conveniently ignores the fact that Plaintiffs applied the relevant Leflar factors for ***each*** conflicting state vis-à-vis Minnesota. See, e.g., RA 19-21 (Arkansas) (Arkansas legislature's requirement that false representations be made knowingly, which conflicts with Minnesota's rejection of scienter, has as its purpose protectionism of businesses within Arkansas, a governmental interest not at issue when Minnesota's corporations are involved); RA 1-11 (Alabama) (because Alabama's governmental interest in stricter scienter standard is greater protection for local businesses, applying Minnesota law would not frustrate Alabama's public policy and would advance Minnesota's legitimate interests).

In short, the District Court's conflict of law analysis was well within the bounds of Minnesota's conflict analysis rules. SJM has not met the manifestly erroneous standard.

## II. Petitioner's Other Reasons for Allowing an Appeal Do Not Warrant the Extraordinary Appeal It Requests.

SJM's discourse on Rule 23 elements is irrelevant because this Court did not direct the District Court to revisit them. This Court's mandate was limited to performance of a Shutts and a 50-state analysis to determine whether the District Court properly determined the application of Minnesota's consumer statutes. SJM's assertion that this Court should reconsider the appropriateness of certification on Rule 23 factors is to suggest that this Court erred in remanding rather than reversing with prejudice.

Notwithstanding that SJM's attack of Lester Grovatt as an appropriate class representative is outside the scope of the mandate, the attack is preposterous. Mr. Grovatt, like everyone else in the class, has suffered damages because of SJM's deceptive advertising and misbranded product. While the amount of his monetary claim might differ from others, that difference does not militate against class certification for the same reason that securities and antitrust class actions are routinely certified even though class members' damages may vary. Thus, even assuming that this Court directed the District Court to revisit typicality, commonality, and superiority, which it did not, Mr. Grovatt continues to be an appropriate class representative for the UDAP class.

Nor is the Class definition improper or vague. SJM and patient records will identify Silzone patients to allow proper notice. The definition adopted by the District Court reflects a recognition of those Silzone patients either who have brought suit against SJM for bodily injury or who may bring such a suit if they know they have sustained a significant injury in support of an individual suit. Thus, it is a simple matter to give notice to the class and for each putative class member to determine his or her entitlement to participate in the class.

SJM offers two additional, make weight "federalism" arguments, citing both the Rules Enabling Act ("REA") and the Commerce Clause. Courts have repeatedly rejected these arguments, and they do not provide grounds for granting an interlocutory appeal. SJM's REA assertion is that procedural rules should not affect substantive rights; but here, Minnesota already offers the protection of its consumer statutes, including all appropriate equitable relief, to "any person" with applicable claims against a Minnesota corporation, so class certification affects no substantive rights for anyone. Cf. Pfizer, Inc. v. Government of India, 434 U.S. 309, 311-13, 320 (1978) (interpreting the term "any person" in the Clayton Act to enable even foreign nations to rely on protections of the Act). To the contrary, it is

SJM's position that procedural class treatment should ***cancel*** the substantive Minnesota consumer rights of non-Minnesota plaintiffs. Similarly, SJM's Commerce Clause claim makes no sense on its face; Minnesota law here is being applied ***equally*** to all Respondents and class members, much as Delaware corporate law routinely applies to shareholder suits against Delaware corporate defendants. To the contrary, it is SJM that argues that Minnesota consumer law should ***discriminate*** against out-of-state plaintiffs by stripping them of its explicit protections.

## CONCLUSION

Based on the foregoing points and authorities, and on those in the District Court's well-reason opinion certifying the class, this Court should **DENY** the Petition for extraordinary, interlocutory review.

Dated: November 7, 2006

**ZIMMERMAN REED, P.L.L.P.**

CHARLES S. ZIMMERMAN
J. GORDON RUDD, JR.
DAVID M. CIALKOWSKI
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402
612-341-0400

**LEVY, ANGSTREICH, FINNEY, BALDANTE, RUBENSTEIN & COREN, P.C.**
STEVEN E. ANGSTREICH
MICHAEL COREN
CAROLYN C. LINDHEIM
1616 Walnut Street, Fifth Floor
Philadelphia, PA 19103
215-735-1616

**CAPRETZ & ASSOCIATES**
JAMES T. CAPRETZ
5000 Birch Street, Suite 2500
West Tower
Newport Beach, CA 92660
(949) 724-3000

**GREEN, JACOBSON & BUTSCH, P.C.**
JOE D. JACOBSON
7733 Forsyth, Suite 700
St. Louis, MO 63105
314-862-6800

**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C**
DANIEL W. SIGELMAN
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
202-408-4600

Counsel for Respondents