# EXHIBIT 21

No. 06-3860

# In the United States Court of Appeals for the Eighth Circuit

# In re St. Jude Medical, Inc. Silzone® Heart Valve Products Liability Litigation

Lester Grovatt, Beatrice Bailey, Levy D. Redden, Bonnie L. Sliger, and Joe W. Sanchez, on behalf of themselves and all others similarly situated,
Plaintiffs and Appellees,

vs.

St. Jude Medical, Inc.,
Defendant and Appellant.

---

## APPELLANT'S OPENING BRIEF

---

From a Class Certification Order by the
United States District Court for the District of Minnesota
Multidistrict Litigation No. 01-1396 (JRT/FLN)
The Honorable John R. Tunheim

---

Steven M. Kohn
James C. Martin
Steven J. Boranian
REED SMITH LLP
1999 Harrison Street
Suite 2400
Oakland, CA 94612
Telephone: (510) 763-2000
Facsimile: (510) 273-8832

Tracy J. Van Steenburgh
HALLELAND, LEWIS, NILAN, & JOHNSON, P.A.
600 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 338-1838
Facsimile: (612) 338-7858

Eric J. Magnuson
RIDER BENNETT, LLP
33 South Sixth Street
Suite 4900
Minneapolis, MN 55402
Telephone: (612) 340-8900
Facsimile: (612) 340-7900

*Attorneys for Defendant and Appellant St. Jude Medical, Inc.*

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

This class action involves claims allegedly arising out of the implantation of FDA-approved mechanical heart valves – known as Silzone® heart valves – manufactured by St. Jude Medical, Inc. St. Jude Medical appeals an order certifying a nationwide class of uninjured Silzone patients seeking medical monitoring relief under certain Minnesota consumer protection statutes. The order conflicts with prior holdings of this Court in this very case, unlawfully projects Minnesota's consumer protection statutes into other jurisdictions, and fails to satisfy Rule 23's requirements.

Oral argument will assist the Court in addressing the legal issues presented. St. Jude Medical requests 30 minutes.

**CORPORATE DISCLOSURE STATEMENT**
**(Fed. R. App. Proc. 26.1)**

St. Jude Medical, Inc. has no publicly traded parent or subsidiary corporation. No publicly held company owns 10 percent or more of its stock.

# TABLE OF CONTENTS


Page

I INTRODUCTION ..... 1

II JURISDICTIONAL STATEMENT ..... 2

III STATEMENT OF THE ISSUES ..... 2

IV FACTUAL AND PROCEDURAL BACKGROUND ..... 4

A. The First Appeal: The District Court Certifies A Nationwide Consumer Protection Class And A Multi-State Medical Monitoring Class And This Court Reverses Class Certification In Its Entirety ..... 4

1. The District Court Issues Its First Class Certification Order Providing For Nationwide Personal Injury And Consumer Protection Classes And A Multi-State Medical Monitoring Class ..... 6

2. The District Court Issues Two Additional Class Certification Orders Eliminating The Personal Injury Class, Narrowing The Medical Monitoring Class, And Retaining The Nationwide Consumer Protection Class ..... 7

3. This Court Reverses The Consumer Protection Class Because The District Court Failed To Perform The Constitutionally Required Choice-Of-Law Analysis And Reverses The Class Seeking Medical Monitoring Relief Because It Presents Too Many Individual Issues ..... 8

B. The Second Appeal: The District Court Certifies A Class That This Court Already Rejected – A Class Of Uninjured Silzone Valve Recipients Claiming Medical Monitoring – And Applies Minnesota Law Nationwide Based On The Same Incomplete Conflicts Analysis .................................... 11

V SUMMARY OF THE ARGUMENT ............................................ 13

VI THE DISTRICT COURT'S FAILURE TO FOLLOW THIS COURT'S HOLDINGS ON THE UNCERTIFIABILITY OF A CLASS SEEKING MEDICAL MONITORING RELIEF AND ON THE NEED FOR A CLAIMANT-BY-CLAIMANT CONFLICT-OF-LAW ANALYSIS COMPELS REJECTION OF CLASS CERTIFICATION ...................................................... 15

A. The Certified Class Of Uninjured Silzone Recipients Seeking Medical Monitoring Relief Violates The Law Of The Case And The Attempted Certification Of That Class Under Minnesota's Consumer Protection Statutes Must Be Rejected ................................................................ 15

B. This Court's Prior Holding Requiring A Claimant-By-Claimant Conflict-Of-Law Analysis Is Law Of The Case And The District Court's Failure To Perform That Analysis Compels Rejection Of The Attempt To Certify A Nationwide Class Applying Minnesota Law ........................... 19

VII THE NATIONWIDE CLASS FAILS UNDER RULE 23 BECAUSE THE CONSTITUTION AND OTHER AUTHORITIES REQUIRE THE APPLICATION OF NUMEROUS STATES' LAW ................................................ 23

A. A Choice-Of-Law Analysis That Properly Accounts For Every Class Member And Every Other State's Interests In Adjudicating Its Residents' Claims Precludes Application Of Minnesota Law To An Entire Nationwide Class .................. 23

1. Minnesota Law Conflicts With Other States' Laws In Material Ways ........ 23

2. Because The Absent Class Members' Claims Are Not Sufficiently Connected To Minnesota, The Constitution Does Not Permit Application Of Minnesota Law To The Entire Nationwide Class........ 30

B. The Commerce Clause And The Rules Enabling Act Preclude Exclusive Application Of Minnesota Law To The Entire Nationwide Class ........ 35

C. Minnesota Conflicts-Of-Law Rules Preclude Exclusive Application Of Minnesota Law To The Entire Nationwide Class ........ 37

1. The Law Of Each Class Member's Home State Must Apply Because Of Those States' Compelling Interests In Providing Remedies For Their Residents And Governing Transactions Within Their Borders........ 37

2. The District Court Erred In The Conflicts Analysis By Relying Exclusively On St. Jude Medical's Minnesota Contacts And Improperly Invoking The "Beneficial" Nature Of Minnesota's Consumer Protection Statutes ........ 42

D. Because The Fifty States' Laws Must Apply To The Class Member's Various Claims, The Nationwide Class Presents Individual Legal Issues That Overwhelm Any Conceivable Common Issues ........ 44

VIII THE NATIONWIDE CLASS FAILS UNDER RULE 23 BECAUSE INDIVIDUALIZED ISSUES OVERWHELM EACH CLASS MEMBER'S CLAIM, EVEN IF MINNESOTA LAW COULD CONSTITUTIONALLY BE APPLIED TO THE CLASS ........ 47

A. Individual Legal And Factual Issues Will Thoroughly Overwhelm Any Common Questions .................................. 48

1. Plaintiffs' Proposed Medical Monitoring Scheme Is Permeated By Individual Questions Related To Each Class Member ................................................ 48

2. Liability Issues Arising Under Minnesota's Consumer Protection Statutes Will Be Permeated By Individual Questions Related To Each Class Member ..................... 50

B. A Classwide Trial For The Proposed Nationwide Class Would Be Unmanageable Because Of The Numerous Individual Issues On Medical Monitoring And Liability ............ 54

C. A Class Action Is Not The Superior Method For Resolving The Individual Claims And Creates Prejudicial Risks To The Class Members ................................................... 56

IX CONCLUSION ............................................................. 59

# TABLE OF AUTHORITIES

## CASES

Page

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 4

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (Ill. 2005) .......... 34

*BMW of North Am. Inc. v. Gore*,
517 U.S. 559 (1996) .......... 36

*Badillo v. American Brands, Inc.*,
16 P.3d 435 (Nev. 2001) .......... 27

*Beerman v. Toro Mfg. Corp.*,
615 P.2d 749 (Haw. App. 1980) .......... 25

*Blades v Monsanto*,
400 F.3d 562 (8th Cir. 2005) .......... 56

*Brown-Forman Distillers Corp. v. New York State Liquor Auth.*,
476 U.S. 573 (1986) .......... 35

*Camden Mach. & Tool, Inc. v. Cascade Co.*,
870 S.W.2d 304 (Tex. App. 1993) .......... 24

*Castano v. American Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) .......... 44, 55

*Chemtall Inc. v. Madden*,
607 S.E.2d 772 (W. Va. 2004) .......... 46

*Chin v. Chrysler Corp.*,
182 F.R.D. 448 (D.N.J. 1998) .......... 33, 46

*Danielson v. National Supply Co.*,
670 N.W.2d 1 (Minn. Ct. App. 2003) .......... 28, 39

*Debbs v. Chrysler Corp.*,
810 A.2d 137 (Pa. Super. Ct. 2002) .......... 24

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982) .......... 35

*Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Cooperatives, Inc.*,
896 F. Supp. 912 (E.D. Ark. 1995) .......... 15

*Feinstein v. Firestone Tire & Rubber Co.*,
535 F. Supp. 595 (S.D.N.Y. 1982) .......... 57

*Fink v. Ricoh Corp.*,
839 A.2d 942 (N.J. Super. Ct. Law Div. 2003) .......... 29, 34

*Forman v. Data Transfer, Inc.*,
164 F.R.D. 400 (E.D. Pa. 1995) .......... 54

*Foster v. St. Jude Medical, Inc.*,
229 F.R.D. 599 (D. Minn. 2005) .......... 27

*Fu v. Fu*,
733 A.2d 1133 (N.J. 1999) .......... 43

*Gate City Fed. Sav. & Loan Ass'n v. O'Connor*,
410 N.W.2d 448 (Minn. Ct. App. 1987) .......... 28

*Georgine v. Amchem Prods.*,
83 F.3d 610 (3d Cir. 1996) .......... 19, 22

*Glover v. Standard Federal Bank*,
283 F.3d 953 (8th Cir. 2002) .......... 2, 13

*Goasdone v. American Cyanamid*,
808 A.2d 159 (N.J. Super. Ct. Law Div. 2002) .......... 53

*Group Health Plan, Inc. v. Philip Morris Inc.*,
621 N.W.2d 2 (Minn. 2001) .......... 51

*Guaranty Trust Co. v. York*,
326 U.S. 99 (1945) .......... 36

*Hagen v. Winnemuca*,
108 F.R.D. 61 (D. Nev. 1985) .......... 54

*Hansen v. Mountain Fuel Supply Co.*,
858 P.2d 970 (Utah 1993) .......................................................... 26, 27

*Harding v. Tambrands*,
165 F.R.D. 623 (D. Kan. 1996) ....................................................... 56

*Healy v. Beer Instit.*,
491 U.S. 324 (1989) ...................................................................... 35

*Heindel v. Pfizer, Inc.*,
381 F. Supp. 2d 364 (D.N.J. 2004) .................................................. 43

*Hughes v. Wal-Mart Stores, Inc.*,
250 F.3d 618 (8th Cir. 2001) ........................................................... 41

*Hurd v. Monsanto Co.*,
164 F.R.D. 234 (S.D. Ind. 1995) ...................................................... 50

*In re American Medical Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ........................................................... 47

*In re Baycol Prods. Litig.*,
218 F.R.D. 197 (D. Minn. 2003) ................................................. 39, 41

*In re Bridgestone/Firestone*,
288 F.3d 1012 (7th Cir. 2002) ...................................................passim

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
174 F.R.D. 332 (D.N.J. 1997) ...................................................... 22, 46

*In re Northern Dist. Of Cal. Dalkon Shield IUD Prods. Liab. Litig.*,
693 F.2d 847 (9th Cir. 1982) ........................................................... 56

*In re Paxil Litig.*,
212 F.R.D. 539 (C.D. Cal. 2003) ................................................ 46, 53

*In re Prempro Prods. Liab. Litig.*,
230 F.R.D. 555 (E.D. Ark. 2005) ................................................ 45, 46

*In re Rezulin*,
210 F.R.D. 61 (D.N.Y. 2002) ....................................................... 46, 53

*In re School Asbestos Litig.*,
789 F.2d 996 (3d Cir. 1986) .......... 58

*In re St. Jude Medical Silzone Heart Valve Products Liability Litigation*,
425 F.3d 1116 (8th Cir. 2005) .......... passim

*In re Vioxx*,
MDL No. 1657, 2006 WL 3391432 (E.D. La. Nov. 22, 2006) .......... 32, 42, 45

*Jepson v. General Cas. Co.*,
513 N.W.2d 467 (Minn. 1994) .......... 37, 43

*Johnston v. HBO Film Mgmt. Inc.*,
265 F.3d 178 (3d Cir. 2001) .......... 56

*K.A.C. v. Benson*,
527 N.W.2d 553 (Minn. 1995) .......... 25, 57

*Klein v. Arkoma Production Co.*,
73 F.3d 779 (8th Cir. 1996) .......... 15

*Liberty Mut. Ins. Co. v. Tribco Constr. Co.*,
185 F.R.D. 533 (N.D. Ill. 1999) .......... 51

*Lockheed Martin Corp. v. Superior Court*,
63 P.3d 913 (Cal. 2003) .......... 53

*Lowrey v. Dingmann*,
86 N.W.2d 499 (Minn. 1957) .......... 28

*Ly v. Nystrom*,
615 N.W.2d 302 (Minn. 2000) .......... 25

*Lyon v. Caterpillar*,
194 F.R.D. 206 (E.D. Pa. 2000) .......... 33

*Meagher v. Kavli*,
88 N.W.2d 871 (Minn. 1958) .......... 28

*Milkovich v. Saari*,
203 N.W.2d 408 (Minn. 1973) .......... 37

*Montgomery v. New Piper Aircraft*,
209 F.R.D. 221 (S.D. Fla. 2002) .......... 33, 36

*National Western Life Ins. Co. v. Rowe*,
164 S.W.3d 389 (Tex. 2005) .......... 34

*Nesladek v. Ford Motor Co.*,
46 F.3d 734 (8th Cir. 1995) .......... 28, 38, 42

*Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.*,
604 N.W.2d 91 (Minn. 2000) .......... passim

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1998) .......... 36

*Parks v. Macro Dynamics, Inc.*,
591 P.2d 1005 (Ariz. 1979) .......... 24

*Perez v. Metabolife Int'l, Inc.*,
218 F.R.D. 262 (S.D. Fla. 2003) .......... 46, 53

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) .......... passim

*Pomianowski v. Merle Norman Cosmetics, Inc.*,
507 F. Supp. 435 (S.D. Ohio 1980) .......... 25

*Redland Soccer Club, Inc. v. Department of the Army*,
696 A.2d 137 (Penn. 1997) .......... 27

*Reimer v. City of Crookston*,
326 F.3d 957 (8th Cir. 2003) .......... 13

*Republican Party v. White*,
416 F.3d 738 (8th Cir. 2005) .......... 3, 15

*Rowlette & Assocs. v. Calphalon Corp.*,
No. C8-99-1667, 2000 WL 385502 (Minn. Ct. App. Apr. 18, 2000) .......... 28

*Schwartz v. Consolidated Freightways Corp.*,
221 N.W.2d 665 (Minn. 1974) .......... 40

*Spence v. Glock*,
227 F.3d 308 (5th Cir. 2000) .......................................................... 44

*Sprague v. General Motors Corp.*,
133 F.3d 388 (6th Cir. 1988) .......................................................... 50

*Theer v. Philip Carey Co.*,
628 A.2d 724 (N.J. 1993) .............................................................. 26

*Thompson v. American Tobacco Co.*,
189 F.R.D. 544 (D. Minn. 1999) ..................................................... 57

*Tracker Marine, L.P. v. Ogle*,
108 S.W.3d 349 (Tex. App. 2003) ............................................... 30, 34

*Tuttle v. Lorillard Tobacco Co.*,
377 F.3d 917 (8th Cir. 2004) .......................................................... 58

*Vanderbilt Mortg. & Fin., Inc. v. Posey*,
146 S.W.3d 302 (Tenn. Ct. App. 2004) ............................................ 34

*Von Grabe v. Sprint PCS*,
312 F. Supp. 2d 1285 (S.D. Cal. 2003) ............................................ 25

*Walsh v. Ford Motor Co.*,
807 F.2d 1000 (D.C. Cir. 1986) ....................................................... 44

*Zaretsky v. Molecular Biosystems, Inc.*,
464 N.W.2d 546 (Minn. Ct. App. 1990) ............................................ 28

*Zehel-Miller v. AstraZenaca Pharmaceuticals, LP*,
223 F.R.D. 659 (M.D. Fla. 2004) ..................................................... 53

*Zinser v. Accufix Research Instit.*,
253 F.3d 1180 (9th Cir. 2001) ......................................................... 53

**STATUTES**

28 U.S.C. § 1332(a) ................................................................................ 2

Ala. Code § 8-19-10(a)(1) ....................................................................... 25

Ala. Code § 8-19-10(f) ............................................................................ 24

Ala. Code § 8-19-13 .......... 26

Cal. Civ. Code § 1780(a)(1) .......... 25

Conn. Gen. Stat. § 42-110g(a) .......... 25

Fla. Stat. § 501.212(3) .......... 25

Ga. Code § 10-1-399(a) .......... 24

Haw. Rev. Stat. § 481A-5 .......... 25

815 Ill. Comp. Stat. § 505/10A .......... 25

815 Ill. Comp. Stat. § 510/4 .......... 26

Ind. Code § 24-5-0.5-4 .......... 24

Ind. Code § 24-5-0.5-6 .......... 26

Iowa Code § 714.16(7) .......... 25

La. Rev. Stat. § 51:1409(A) .......... 24

Md. Code Ann. Com. Law § 13-408(a) .......... 25

Mich. Comp. Laws § 445.904 .......... 26

Minn. Stat. § 325D.44-.45 .......... 24

Minn. Stat. § 325F.67 .......... 24

Minn. Stat. § 325F.68-70 .......... 24

Miss. Code § 75-24-15(4) .......... 24

Mont. Code § 30-14-133(1) .......... 24

S.C. Code § 39-5-140(a) .......... 24

## MISCELLANEOUS

Gary L. Grunkemeier et al., *Time-Related Risk of the St. Jude Silzone Heart Valve*, 30 European Journal of Cardio-Thoracic Surgery 20 (2006) ........................................................................5

# I

# INTRODUCTION

In 2005, this Court reversed certification of two classes in this case. *See In re St. Jude Medical Silzone Heart Valve Products Liability Litigation*, 425 F.3d 1116 (8th Cir. 2005). The Court first reversed a nationwide class of all Silzone-coated heart valve recipients asserting claims under Minnesota's consumer protection statutes and directed the district court to perform an "individualized choice-of-law analysis" for "each plaintiff's claim." The Court next reversed certification of a multi-state class of uninjured Silzone patients seeking future medical surveillance and care ("medical monitoring") because that class presented "highly individualized" issues that destroyed the cohesion Rule 23 requires.

After remand, the district court again has certified a class of uninjured Silzone patients seeking medical monitoring – even though this Court held such a class presents too many individual issues and even though these individualized issues undisputedly remain. And, the district court again has applied Minnesota consumer protection law to an entire nationwide class without analyzing the choice of law for each class member – even though this Court mandated such an individualized analysis and even though that analysis reveals that Minnesota law cannot constitutionally be applied. For each of these reasons, the district court's new class certification order should be reversed, and class certification rejected.

Even if this Court's prior directives are ignored, the district court's unprecedented certification of a nationwide class seeking medical monitoring relief under Minnesota's consumer protection statutes cannot survive under Rule 23. While the district court refused to address Rule 23's specific elements in its post-remand decision, the record shows that individualized factual and legal issues will arise in adjudicating each class member's claim, thereby negating Rule 23's essential requirements. Uniform and controlling law provides that class certification should be rejected in these circumstances. We urge this Court to so hold.

## II

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332(a). This Court has jurisdiction under Rule 23(f). *Glover v. Standard Federal Bank*, 283 F.3d 953, 959 (8th Cir. 2002). The Court granted permission for this appeal on November 17, 2006.

## III

## STATEMENT OF THE ISSUES

1. This Court reversed certification of a class of uninjured Silzone heart valve recipients from multiple states seeking funds for future medical monitoring. Where a district court, on remand, again certifies a class of uninjured Silzone heart valve recipients from multiple states seeking funds for

future medical monitoring, does that order contravene established law and does the law of this case compel rejection of class certification? Answer: yes.

Authorities: *In re St. Jude Medical Silzone Heart Valve Products Liability Litigation*, 425 F.3d 1116 (8th Cir. 2005); *Republican Party v. White*, 416 F.3d 738, 746 (8th Cir. 2005).

2. This Court reversed certification of a nationwide consumer protection class for the failure to perform a constitutionally required choice-of-law analysis for each class member. Where a district court, on remand, again certifies a nationwide consumer protection class without performing the requisite analysis, does that order contravene established law and does the law of this case compel rejection of class certification? Answer: yes.

Authorities: *Heart Valve Litig.*, 425 F.3d 1116; *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).

3. Where an individualized analysis of each putative class member's claim reveals that the fifty states' laws must be applied to a proposed nationwide consumer protection class, does that legal diversity defeat class certification under Rule 23? Answer: yes.

Authorities: *Heart Valve Litig.*, 425 F.3d 1116; *In re Bridgestone/Firestone*, 288 F.3d 1012 (7th Cir. 2002).

4. Where a nationwide consumer protection class action requires individual resolution of individual factual and legal issues on essential elements of proof – including the sought-after remedy of medical monitoring – does the need for these individualized determinations defeat class certification under Rule 23? Answer: yes.

Authorities: *Heart Valve Litig.*, 425 F.3d 1116; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

## IV

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The First Appeal: The District Court Certifies A Nationwide Consumer Protection Class And A Multi-State Medical Monitoring Class And This Court Reverses Class Certification In Its Entirety

The order on appeal results from nearly five years of litigation involving Silzone heart valve recipients. This Court's prior opinion sets forth much of its background. *See* 425 F.3d 1116.

Briefly, in March of 1998, the FDA approved St. Jude Medical's Silzone-coated heart valve as safe and effective for its intended use as a heart valve replacement. ((Appellant's Appendix ("AA")170-71) Approximately two years later, data from a randomized clinical study known as the Artificial Valve Endocarditis Reduction Trial ("AVERT") showed a small increased incidence of a single complication – paravalvular leak severe enough to

require valve explantation – among the study's Silzone valve recipients.[1] The incidence was small, about 2 percent, but statistically significant compared to the 0.25 percent incidence rate observed in non-Silzone valve recipients. St. Jude Medical immediately recalled all unimplanted Silzone valves. (AA171-72)

More complete AVERT data obtained since 2000 reveals that even that early, small increased risk has declined over time, to the point that the risk of any complications for those currently implanted with Silzone valves is no different from non-Silzone valve recipients. (AA3071-72,3101-02) Thus, as another recent peer-reviewed study has noted: "The additional risks of the Silzone valve, compared to Control, diminish over time and disappear by 4 years after implant. The minimum time after implant of the patients currently alive with Silzone is now well beyond 5 years; thus, these current patients now have a risk profile similar to that of patients with a standard St. Jude valve." Gary L. Grunkemeier et al., *Time-Related Risk of the St. Jude Silzone Heart Valve*, 30 European Journal of Cardio-Thoracic Surgery 20, 26 (2006) (reproduced at AA3663-70).

Shortly after the recall, Lester Grovatt filed a nationwide class action in New Jersey federal court, alleging that he suffered "latent injury" from implantation of the Silzone valve. He sought medical monitoring and other

---

[1] St. Jude Medical funded the AVERT study as part of the FDA approval process. The study investigators are independent medical specialists not connected to St. Jude Medical. (AA172)

relief under "common law and acts similar to the New Jersey Products Liability Act." (AA1-23)

After the Judicial Panel on Multidistrict Litigation transferred his action to the District of Minnesota, Mr. Grovatt joined four other plaintiffs and filed a Consolidated Amended Class Action Complaint on behalf of Silzone heart valve recipients nationwide. Plaintiffs initially requested certification of two classes — (1) a "personal injury class" of Silzone heart valve recipients who had allegedly suffered personal injury, and (2) a "medical monitoring class" of every Silzone heart valve recipient, except those who died or had their valves removed because of an injury "associated with" the valve. (AA24-49)

### 1. The District Court Issues Its First Class Certification Order Providing For Nationwide Personal Injury And Consumer Protection Classes And A Multi-State Medical Monitoring Class

In March 2003, the district court conditionally certified a nationwide class of Silzone heart valve recipients who allegedly suffered injuries. Applying Minnesota's choice-of-law principles, the court ruled that the law of the state where each class member's claim arose would govern his or her tort and warranty claims. (AA537-41) When it came to Minnesota's consumer protection statutes, however, the court decided that Minnesota law could apply nationwide without the need for a choice-of-law analysis. (AA556-58) The result was a nationwide personal injury class applying the tort and warranty law of every state and a nationwide consumer protection class applying only Minnesota law – to the exclusion of all others. The district court then

separately certified a class of Silzone heart valve recipients seeking funds for medical monitoring. (AA542-55) But, because state law on medical monitoring differed, choice-of-law principles again compelled that this latter class could include only those states that recognized stand-alone medical monitoring claims. (AA551-55)

### 2. The District Court Issues Two Additional Class Certification Orders Eliminating The Personal Injury Class, Narrowing The Medical Monitoring Class, And Retaining The Nationwide Consumer Protection Class

Following further briefing and argument, the court issued two additional class certification orders. (AA861,1204) It agreed with St. Jude Medical that "no two states' law is substantially alike when the Court considers all of plaintiffs' substantive claims," and thus it decertified the personal injury class insofar as it asserted tort and warranty claims. (AA868) As the court explained:

> Given the significant differences in state law and the number of plaintiffs' claims, combined with potential individual differences among the plaintiffs, the Court can no longer find that a class action would be the superior method of adjudication of these disputes.

(AA867) The court also limited the medical monitoring class to the 17 states that purportedly recognized stand-alone medical monitoring claims. (AA868-80,1216) Notwithstanding these rulings, the court left intact the nationwide class asserting claims under Minnesota's consumer protection statutes without conducting any choice-of-law inquiry. (AA885,1210)

### 3. This Court Reverses The Consumer Protection Class Because The District Court Failed To Perform The Constitutionally Required Choice-Of-Law Analysis And Reverses The Class Seeking Medical Monitoring Relief Because It Presents Too Many Individual Issues

This Court granted St. Jude Medical's petition to appeal and reversed both classes. 425 F.3d at 1119-22. The Court rejected the nationwide consumer protection class because the district court failed to analyze properly which law applied to the class members' claims. Consistent with *Shutts*, 472 U.S. 797, the Court ruled that an "individualized choice-of-law analysis must be applied to each plaintiff's claim in a class action" and rejected plaintiffs' argument that Minnesota's permissive standing requirements preempted that constitutional requirement. 425 F.3d at 1119-21.

In particular, the Court found that the district court's choice-of-law analysis came up short because it erroneously relied on the Minnesota contacts of only one party – St. Jude Medical:

> The court conducted a cursory conflicts-of-law analysis as to the application of the Minnesota consumer protection statutes. The court concluded applying Minnesota law was proper because the parties, particularly SJM, had significant contacts with Minnesota, including SJM being headquartered in Minnesota, and the fact that "much of the conduct relevant" to the claims "occurred or emanated from Minnesota."
>
> . . . .
>
> The district court's class certification was in error because the district court did not conduct a thorough conflicts-of-law

> analysis with respect to each plaintiff class member before applying Minnesota law. The Supreme Court has held an individualized choice-of-law analysis must be applied to each plaintiff's claim in a class action. *Phillips Petroleum Co. v. Shutts*, . . . . We deem it unnecessary here to review each state's consumer protection laws, and rather rely on our sister circuit's conclusion that "[s]tate consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002).
>
> . . . . Here, we cannot determine whether the district court's choice of Minnesota law was arbitrary or unfair, because the court did not analyze the contacts between Minnesota and each plaintiff class member's claims.

*Id.* at 1119-20.

This Court then expressed its skepticism over whether the required individualized analysis would result in the classwide application of Minnesota law:

> Application of Minnesota law to all plaintiffs' claims ultimately may be proper, although we suspect Minnesota lacks sufficient contacts with all the parties' claims, and the different states have material variances between their consumer protection laws and Minnesota's. There is no indication out-of-state parties "had any idea that [Minnesota] law could control" potential claims when they received their Silzone-coated valves.

*Id.* at 1120 (quoting *Shutts*, 472 U.S. at 822). The Court accordingly reversed the consumer protection class certification and remanded for further proceedings. *Id.*

The Court also reversed the medical monitoring class because the cohesion Rule 23 requires was lacking. *Id.* at 1121-23. As this Court observed, courts routinely reject medical monitoring classes because such relief, by its very nature, presents individual factual and legal issues that make it unsuitable for class treatment. *Id.* at 1122. The record here reflected that this case was no exception — each putative class member's need for medical monitoring was "highly individualized":

> In this case, . . . each plaintiff's need (or lack of need) for medical monitoring is highly individualized. Every patient in the 17-state class who has ever been implanted with a mechanical heart valve already requires future medical monitoring as an ordinary part of his or her follow-up care. A patient who has been implanted with the Silzone valve may or may not require additional monitoring, and whether he or she does is an individualized inquiry depending on that patient's medical history, the condition of the patient's heart valves at the time of implantation, the patient's risk factors for heart valve complications, the patient's general health, the patient's personal choice, and other factors. The plaintiffs concede the states recognizing medical monitoring claims as a separate cause of action have different elements triggering culpability. Simply put, the medical monitoring class presents a myriad of individual issues making class certification improper.

*Id.*

### B. The Second Appeal: The District Court Certifies A Class That This Court Already Rejected – A Class Of Uninjured Silzone Valve Recipients Claiming Medical Monitoring – And Applies Minnesota Law Nationwide Based On The Same Incomplete Conflicts Analysis

On remand, plaintiffs renewed their class certification motion and defined their proposed consumer protection class as:

> [A]ll Silzone prosthetic heart valve patients in the United States who have not undergone an explant of their Silzone valve or developed a manifest and diagnosed injury from their Silzone implant of degree or severity that would permit individual personal injury law suits to be commenced in their State of residence.

(AA1232) Plaintiffs' proposed class definition differed from their original because it now excluded injured Silzone valve recipients. However, plaintiffs once again requested medical monitoring relief pursuant to a nationwide application of Minnesota law. Plaintiffs also offered a new medical monitoring plan through an expert who admitted, as was true before, that the type and extent of medical monitoring needed by Silzone heart valve recipients depends on various individualized factors. (AA1747-48,1787-1817,1837,3174-76,3185-99)

Plaintiffs' renewed motion therefore requested class certification for the same people seeking the same relief as the class that this Court found uncertifiable – a multistate class of uninjured Silzone heart valve recipients seeking highly individualized medical monitoring. In addition, plaintiffs did not follow this Court's mandate to provide an analysis of each individual class

member's particularized interest in having Minnesota law applied. Instead, they maintained that St. Jude Medical's Minnesota contacts satisfied the choice-of-law analysis required by *Shutts*. (AA1248-53) Finally, although plaintiffs requested certification of a nationwide class, they did not explain how their class met Rule 23's requirements. They contended that Rule 23's requirements were "irrelevant" because this Court did not specifically direct the district court to analyze Rule 23 before certifying another class. (AA3555)

St. Jude Medical opposed plaintiffs' renewed motion on multiple grounds. (AA2846-2914) To begin with, the revised consumer protection class seeking medical monitoring relief presented the same individualized factual and legal issues as the class reversed on appeal. Nothing in plaintiffs' briefing or evidence suggested otherwise, and the record before the court confirmed as much. (AA2863-68) Similarly, St. Jude Medical's Minnesota contacts were precisely the same ones this Court held could not constitutionally support the application of Minnesota law consistent with *Shutts*. The proposed class accordingly embodied the same fundamental flaws that compelled this Court's prior reversal. Even if these flaws were ignored, controlling conflicts-of-law principles did not permit application of Minnesota law to Silzone heart valve patients nationwide and, even if Minnesota law somehow could be applied, the proposed nationwide class could not meet Rule 23's specific requirements. (AA2864-2914)

The district court granted plaintiffs' renewed motion, concluding that Minnesota law could apply to the entire nationwide class because "Minnesota

has significant contacts with each class member by virtue of the domicile and claims-related activities of defendant." (AA3653-54) Because of St. Jude Medical's contacts with Minnesota, the court further determined that it "need not specifically discuss Minnesota's contacts to each of over 11,000 class members' claims." (AA3654) The court then certified a nationwide class of uninjured Silzone valve recipients seeking medical monitoring relief without acknowledging the highly individualized issues raised in providing that relief. (AA3661) Finally, although St. Jude Medical had raised, and the record reflected, numerous obstacles foreclosing class certification, the court simply deferred to its original (but reversed) certification order and made no findings on Rule 23's requirements. (AA3652)

## V

## SUMMARY OF THE ARGUMENT

There are several independent reasons why the district court's novel and unprecedented class certification order again must be reversed.[2]

*First*, this Court already has held that a class of uninjured Silzone heart valve recipients seeking medical monitoring presents too many individual issues to be certified under Rule 23. This holding is law of the case and alone compels rejection of the class certified below. (*See infra* Part VI(A))

[2] This Court reviews interpretations of law de novo and reviews orders granting class certification for abuse of discretion. *See Reimer v. City of Crookston*, 326 F.3d 957, 961 (8th Cir. 2003); *Glover*, 283 F.3d at 959.

*Second*, this Court already has held that a claimant-by-claimant choice-of-law analysis must be applied before determining whether Minnesota law constitutionally can be applied to a nationwide class. This holding too is law of the case and also compels rejection of the certified class. (*See infra* Part VI(B))

*Third*, controlling law compels application of the fifty states' consumer protection laws to the nationwide class of Silzone valve recipients. That fifty-state application, in turn, results in legal diversity that prevents certification of the proposed nationwide class. (*See infra* Part VII)

*Fourth*, even if this Court's prior holdings could be ignored (and they cannot), and even if one state's law could apply to the nationwide class (and it cannot), individual issues inherent in the class members' claims foreclose class certification here under Rule 23's express requirements. (*See infra* Part VIII)

# VI

# THE DISTRICT COURT'S FAILURE TO FOLLOW THIS COURT'S HOLDINGS ON THE UNCERTIFIABILITY OF A CLASS SEEKING MEDICAL MONITORING RELIEF AND ON THE NEED FOR A CLAIMANT-BY-CLAIMANT CONFLICT-OF-LAW ANALYSIS COMPELS REJECTION OF CLASS CERTIFICATION

## A. The Certified Class Of Uninjured Silzone Recipients Seeking Medical Monitoring Relief Violates The Law Of The Case And The Attempted Certification Of That Class Under Minnesota's Consumer Protection Statutes Must Be Rejected

When an appellate court remands for further proceedings, the district court must determine the remaining issues "pursuant to the legal principles enunciated in the appellate court's opinion." *Republican Party v. White*, 416 F.3d 738, 746 (8th Cir. 2005). As this Court stated in *Klein v. Arkoma Production Co.*, 73 F.3d 779, 784-85 (8th Cir. 1996), a "district court is bound by [this Court's] decree and must carry it into execution according to the mandate" and may not feel free to "reject [its] legal conclusion." The lower court must implement "both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Cooperatives, Inc.*, 896 F. Supp. 912, 914 (E.D. Ark. 1995).

In its prior opinion, this Court held that providing for medical monitoring relief under Rule 23 was improper because "diverse legal and factual issues preclude class certification." 425 F.3d at 1121-22. This

holding is the law of this case, yet the district court now has certified a class comprising the same people seeking the same relief. As before, the class includes Silzone valve recipients from multiple states without injury. As before, the class is seeking relief in the form of future medical surveillance and treatment. And, as before, the proposed future medical surveillance and treatment relief raises numerous individual issues requiring patient-by-patient inquiry.

Indeed, neither the plaintiffs nor the district court contended otherwise. While plaintiffs pointed out they sought certification of a consumer protection class, as opposed to one asserted under common law, they provided no authority (and there is none) that a nationwide class of uninjured heart valve recipients seeking medical monitoring relief could be certified under Minnesota's consumer protection statutes. Nor did they argue, and the district court did not find, that the medical monitoring relief sought was any less complex or individualized than that previously sought under the common law. On the contrary, their new medical monitoring expert confirmed that the individualized inquiries remained. (AA1747-48,1787-1817,1837) So, while plaintiffs' alleged basis of liability might have been different, the medical monitoring relief they sought still was subject to all the individualized inquires that this Court identified in its prior opinion.

Plaintiffs also tried to distinguish this Court's prior holding by stating medical monitoring was just a remedy and "[t]he final form of the ultimate relief . . . is never a factor in determining whether class certification is

appropriate." (AA3554) But this Court reversed a class comprising these same class members seeking the same *relief* on the basis that *that relief* – proposed future medical monitoring – presented too many individual issues. 425 F.3d at 1122. Thus, the "final form of the ultimate relief" not only was a "factor," it was the *dispositive* factor in rejecting class certification. Further, an attempt to sweep up medical monitoring into a "consumer protection" or "remedial" label does not make these class certification-dispositive individual issues go away. As this Court observed, the very essence of a claim for medical monitoring raises these patient-specific injuries, and resort to labels like "consumer protection" or "remedial" cannot alter that fact.

For its part, the district court acknowledged this Court's prior ruling on the medical monitoring class, but dismissed its impact because this Court did not expressly conclude "that certification of the consumer protection class was not possible, just as it did for the medical monitoring class." (AA3652) Of course, this Court did not address the issue of whether the proposed consumer protection class actually could meet Rule 23's requirements because it reversed based on an inadequate choice-of-law analysis. Having reversed class certification for this reason, this Court appropriately did not opine on whether certification of a consumer protection class ultimately would be possible after a proper choice-of-law analysis. 425 F.3d at 1120 ("The due process and full faith and credit issues 'are dispositive, and we believe it prudent not to decide issues unnecessary to the disposition of the case,' especially given the numerous constitutional issues implicated in such an analysis."). That prudential decision, however, does not weaken the force and

effect of its companion holding that a class of uninjured Silzone patients seeking future medical monitoring relief presents too many individual issues to be certified.

The district court also noted, without analysis or citation to authority, that plaintiffs' request for an epidemiological study would be "ideally suited for a class action." (AA3652) Yet, that request does nothing to remove the individualized, class-defeating issues associated with plaintiffs' demand for medical monitoring relief – relief which plaintiffs have never abandoned, admit they are seeking, and which compels denial of class certification. Moreover, an epidemiological study is not an actual "remedy" for anything, and as plaintiffs' expert admits, a study's data collection and conclusions would raise individualized questions in any event in this diverse group of heart valve patients.[3] (AA1815-17 (plaintiffs' expert explaining that "data collection" would require "[s]tratification of patients according to their risk of particular complications," which "would enable some patients to be reassured."))

This Court's prior holding that Rule 23 will not support certification of a multistate class of uninjured Silzone heart valve recipients seeking medical

[3] There likewise is no demonstrable need to certify a nationwide class action to provide for such a study. The AVERT study already exists, and its latest results indicate that Silzone valve patients are not at a greater risk for any medical complications conceivably associated with the valve. (AA3071-72,3101-02) The patients also are being followed by their own physicians. (AA1787-1837,3174-76,3190-3199)

monitoring is the law of the case and dispositive. The Court should reject plaintiffs' attempted class certification for this reason alone.

**B. This Court's Prior Holding Requiring A Claimant-By-Claimant Conflict-Of-Law Analysis Is Law Of The Case And The District Court's Failure To Perform That Analysis Compels Rejection Of The Attempt To Certify A Nationwide Class Applying Minnesota Law**

This Court held that the prior certification "was in error" because the "Supreme Court has held that an individualized choice-of-law analysis must be applied to each plaintiff's claim in a class action." 425 F.3d at 1120 (*citing Shutts*, 472 U.S. at 822-23). The Court concluded that "protection of out-of-state parties' constitutional rights requires an inquiry into their claims' contacts with Minnesota and their individual states laws before concluding Minnesota law may apply." *Id.*; *see also Georgine v. Amchem Prods.*, 83 F.3d 610, 627 (3d Cir. 1996) (class certification scrutiny must include "individualized choice of law analysis to each plaintiff's claims"), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

These directives too are the law of this case, and they correctly reflect "constitutional limitations on choice of law" grounded in the Due Process and Full Faith and Credit Clauses. *See Shutts*, 472 U.S. at 816. In *Shutts*, the plaintiffs sued a defendant in Kansas alleging claims arising from leases in other states and asserting class action on behalf of investors nationwide. The Kansas state court certified the nationwide class and applied Kansas law to every putative class member's claims, even though less than one percent of the

leases and less than three percent of the class members had any connection to Kansas. *Id.* at 814-16. The Supreme Court reversed and held that applying Kansas law to all the transactions violated the Constitution. *Id.* at 823. According to the Court:

> Kansas must have a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of Kansas law is not arbitrary. *Allstate*, 449 U.S. at 312-313, 101 S.Ct., at 639-640. Given Kansas' lack of "interest" in claims unrelated to that State, and the substantive conflict with [other] jurisdictions . . . , we conclude that application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional limits.

*Shutts*, 472 U.S. at 821-22. In short, Kansas "may not abrogate the rights of parties beyond its borders having no relation to anything done or to be done within them." *Id.* at 822.

Here, the district court's class certification order could not be more contrary to this Court's prior holding, or to *Shutts*. Despite both, the district court still found it unnecessary to analyze each class member's claims and instead relied only on St. Jude Medical's contacts with Minnesota in making its choice-of-law determination. (AA3654-55: "[N]o one would doubt that an individual class member could sue defendant in Minnesota and apply Minnesota law. Similarly, the Court concludes that it is constitutionally permissible to apply Minnesota law in the class action context." The court "need not specifically discuss Minnesota's contacts to each of the over 11,000 class members' claims.")

Yet, this Court condemned that precise analysis in reversing the prior class certification order, and *Shutts* fully supports that holding. The *Shutts* defendant "own[ed] property and conduct[ed] substantial business in Kansas," but it was constitutional error nonetheless to rely only on those forum contacts to apply Kansas law to claims arising outside Kansas. 472 U.S. at 819. In other words, "minimum contacts" establishing personal jurisdiction did not alone support application of the forum law.

Moreover, according to *Shutts*, while an individual plaintiff can show his or her "obvious wish for forum law by filing there," that wish *cannot be imputed* to an absent class member, who does not "consent" to another's forum choice merely by virtue of being a class member, even if he or she declines to opt out. 472 U.S. at 820 ("We also give little credence to the idea that Kansas law should apply to all claims because the plaintiffs, by failing to opt out, evinced their desire to be bound by Kansas law."). As the Supreme Court said, a court may not use its "assumption of jurisdiction [over absent class members' claims] as an added weight in the scale when considering the permissible constitutional limits on choice of substantive law." *Id.* at 821.

Finally, the district court's order cited the supposed difficulty and burden of the required choice-of-law analysis. As the district court put it, "It is difficult for the Court to imagine how over 11,000 individual consumer fraud cases could be handled effectively against the defendant. It is equally difficult to try to apply the consumer protection statutes of the various states in a manner than can efficiently resolve this litigation." (AA3661-62) But in

*Shutts* the Court held that the choice-of-law calculus "is not altered by the fact that it may be more difficult or more burdensome to comply with the constitutional limitations because of the large number of transactions which the State proposes to adjudicate and which have little connection with the forum." 472 U.S. at 821. If, as the district court suggests, it is too burdensome to apply fifty states' laws, it should have denied plaintiffs' class certification motion. *See Georgine*, 83 F.3d at 627 (individualized choice-of-law analysis for each claim resulted in "proliferation of disparate factual and legal issues" leading to "colossal" number of individual issues); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997) (denying class certification; choice of law in nationwide products liability class action invariably leads into "thicket" of applying each state's law, which itself "creates problems for class certification").

In this case, the district court impermissibly elevated efficiency over what the substantive law — here the Constitution — requires. The refusal to follow this Court's directives and properly address the conflicts of law issue should be seen for what it is: A concession by plaintiffs and the court below that if the required analysis is performed, class certification is not possible. A third attempt at certification need not be afforded just to prove the rule. Class certification should be rejected here for this reason as well.

# VII

# THE NATIONWIDE CLASS FAILS UNDER RULE 23 BECAUSE THE CONSTITUTION AND OTHER AUTHORITIES REQUIRE THE APPLICATION OF NUMEROUS STATES' LAW

Even if this Court's prior holdings are ignored (and they should not be), the certified class cannot survive under Rule 23 because a proper choice-of-law analysis results in the application of fifty states' laws, making it impossible for common issues to predominate in this proposed nationwide class action. The district court's ruling to the contrary reflects reversible error both in its method and its result.

## A. A Choice-Of-Law Analysis That Properly Accounts For Every Class Member And Every Other State's Interests In Adjudicating Its Residents' Claims Precludes Application Of Minnesota Law To An Entire Nationwide Class

### 1. Minnesota Law Conflicts With Other States' Laws In Material Ways

The court below found that Minnesota's consumer protection law conflicted with other states' laws [AA3656-57], and there is ample support for that finding. There are profound differences among the consumer protection laws nationwide, ranging from who can recover and how suit is initiated, to the elements and burden of proof, and available remedies. The following examples underscore the point.

*First*, Minnesota law differs from other state's laws on whether its consumer protection statutes permit class action.[4] Minnesota permits class actions under its statutes, but many states including Alabama, Georgia, Louisiana, Mississippi, Montana and South Carolina expressly prohibit consumer class actions or "representative" actions brought by anyone other than the attorney general. Ala. Code § 8-19-10(f); Ga. Code § 10-1-399(a); La. Rev. Stat. § 51:1409(A); Miss. Code § 75-24-15(4); Mont. Code § 30-14-133(1); and S.C. Code § 39-5-140(a).

*Second*, Minnesota requires proof of a "causal nexus" between a statutory violation and resulting injury, a standard that plaintiffs have argued is different from traditional reliance. Other states, such as Indiana and Pennsylvania, require that plaintiffs prove reliance upon the alleged misrepresentation or conduct. Ind. Code § 24-5-0.5-4; *Debbs v. Chrysler Corp.*, 810 A.2d 137, 156 (Pa. Super. Ct. 2002). States such as Arizona require proof of reliance, but do not require reasonable reliance. *Parks v. Macro Dynamics, Inc.*, 591 P.2d 1005, 1008 (Ariz. 1979). Still others require no showing of reliance at all. *Camden Mach. & Tool, Inc. v. Cascade Co.*, 870 S.W.2d 304, 311 (Tex. App. 1993).

---

[4] Plaintiffs allege claims under three Minnesota statutes: The Deceptive Trade Practices Act, Minn. Stat. § 325D.44-.45; the False Statement in Advertising Act, *id.* § 325F.67; and the Prevention of Consumer Fraud Act, *id.* § 325F.68-.70.

*Third*, Minnesota's consumer protection statutes permit injunctive relief, but authorize damage recovery only in actions that involve an actual injury and benefit the public. *See K.A.C. v. Benson*, 527 N.W.2d 553, 562 (Minn. 1995); *Ly v. Nystrom*, 615 N.W.2d 302, 313-14 (Minn. 2000). Other states provide different remedies. Alabama, Connecticut and Maryland, for example, permit recovery of damages, but not injunctive relief. Ala. Code § 8-19-10(a)(1); Conn. Gen. Stat. § 42-110g(a); Md. Code Ann. Com. Law § 13-408(a). California and Illinois permit the recovery of both damages and equitable relief. Cal. Civ. Code § 1780(a)(1); 815 Ill. Comp. Stat. § 505/10A. There are states, such as Iowa, where injunctive relief is the sole remedy and damages cannot be recovered. Iowa Code § 714.16(7).

*Fourth*, Minnesota does not require pre-lawsuit notice to potential defendants in a consumer protection action. By contrast, statutes like the California Consumer Legal Remedies Act impose pre-filing notice requirements that preclude suit if plaintiffs fail to comply with them. *See, e.g.*, *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285 (S.D. Cal. 2003).

*Fifth*, states recognize different defenses. Florida, Ohio, and Hawaii exempt personal injury lawsuits from the scope of protection under their consumer protection statutes. Fla. Stat. § 501.212(3); *Pomianowski v. Merle Norman Cosmetics, Inc.*, 507 F. Supp. 435 (S.D. Ohio 1980); *Beerman v. Toro Mfg. Corp.*, 615 P.2d 749 (Haw. App. 1980). Some states exempt conduct in compliance with federal law, while others exempt only conduct federal law requires or specifically authorizes. *Compare* Haw. Rev. Stat.

§ 481A-5 (Haw. UDTPA) and 815 Ill. Comp. Stat. § 510/4 (Ill. UDTPA) *with* Ind. Code § 24-5-0.5-6 ("required or expressly permitted") and Mich. Comp. Laws § 445.904 ("specifically authorized")). And then, some states, but not others, recognize lack of knowledge as a defense. *See e.g.*, Ala. Code § 8-19-13.

*Sixth*, Minnesota differs from other states in how it treats plaintiffs' claimed remedy – medical monitoring. No Minnesota case of which St. Jude Medical is aware even suggests, much less provides, that its consumer protection statutes would authorize a class of uninjured Silzone valve recipients to pursue claims for future medical monitoring relief. Indeed, it is doubtful that *any* state would recognize medical monitoring as relief authorized under consumer fraud statutes, particularly for plaintiffs who are uninjured. States permitting medical monitoring absent actual injury do so under tightly prescribed elements to ensure the remedy, if allowed, will address an actual need (an "injury in fact") and will promise benefit, and not harm, to those who claim it. *See, e.g.*, *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 978-80 (Utah 1993) (enumerated elements for medical monitoring recovery prevent unwarranted recoveries, limit recovery to plaintiffs who actually need extraordinary monitoring, prevent plaintiffs from receiving windfalls, and ensure that monitoring is beneficial); *Theer v. Philip Carey Co.*, 628 A.2d 724, 733 (N.J. 1993) (medical monitoring is a remedy not "easily invoked" because it is a "special compensatory remedy" designed to address a unique type of harm, toxic exposure).

Permitting medical monitoring relief under the guise of consumer protection brushes aside those state law-based safeguards and negates the policy decisions of every state to have considered the issue. As the district court here previously acknowledged, the states are not uniform on whether, how, and under what circumstances a plaintiff can claim medical monitoring. (AA1210-16); *see also Foster v. St. Jude Medical, Inc.*, 229 F.R.D. 599, 602 (D. Minn. 2005) ("The states are not uniform in their treatment of medical monitoring claims."); *Badillo v. American Brands, Inc.*, 16 P.3d 435, 439 (Nev. 2001) (although some courts have recognized medical monitoring, "this is far from an 'overwhelming majority of jurisdictions'"); *Redland Soccer Club, Inc. v. Department of the Army*, 696 A.2d 137, 143-46 (Penn. 1997) (permitting medical monitoring upon proof of seven enumerated elements); *Hansen*, 858 P.2d 970 at 978 (permitting medical monitoring upon proof of enumerated elements, including the unique requirement that the proposed monitoring provide actual benefit to the patient).

Below, plaintiffs' two-fold response to this legal diversity was first to try to minimize it, and then to attempt to dismiss it. Plaintiffs began by parsing the various state statutes, broadly categorizing certain portions as simply "procedural" or "remedial." Plaintiffs asserted that Minnesota law would apply automatically to these aspects of the statutes, with the conflict-of-law analysis being reserved for "substantive" portions of the statutes addressing "what conduct is prohibited" and "whether plaintiffs have standing." (AA1254-80) But Minnesota defines substantive law as "that part of law which creates, defines, and regulates rights as opposed to 'adjective or

remedial' law, which prescribes [the] method of enforcing the rights or obtaining redress for their invasion." *Zaretsky v. Molecular Biosystems, Inc.*, 464 N.W.2d 546, 548 (Minn. Ct. App. 1990) (quoting *Meagher v. Kavli*, 88 N.W.2d 871, 879-80 (Minn. 1958)). Stated differently, substantive law is that which will substantially affect the result. *Gate City Fed. Sav. & Loan Ass'n v. O'Connor*, 410 N.W.2d 448, 450 (Minn. Ct. App. 1987).

Under that controlling standard, plaintiffs' attempt to characterize the various aspects of the state statutes as "procedural" leads nowhere. Every part of every statute that plaintiffs carved out prescribed a method for enforcing rights or obtaining redress, thereby affecting who could recover, when, how, and how much. Each state's statutory scheme, in all its particulars, represents that state's public policy on what consumers can recover and under what conditions they can recover it. And every provision within those schemes affects the result – everything from pre-filing notice requirements to available remedies. The various statutory provisions are, in short, the essence of "substantive" and they belonged in the choice-of-law calculus, not out of it. *See Nesladek v. Ford Motor Co.*, 46 F.3d 734, 736-37 (8th Cir. 1995) (statute of repose was substantive law); *Lowrey v. Dingmann*, 86 N.W.2d 499, 503 (Minn. 1957) ("proper measure of damages in a fraud action is a matter of substantive law, governed by the law of the place where the wrongful act occurred"); *Danielson v. National Supply Co.*, 670 N.W.2d 1, 6 n.2 (Minn. Ct. App. 2003) (statutory limitation period is substantive rather than procedural because it is a condition of the right); *Rowlette & Assocs. v. Calphalon Corp.*, No. C8-99-1667, 2000 WL 385502, at * 3

(Minn. Ct. App. Apr. 18, 2000) (differences in pre-termination notice requirements are substantive and require a choice-of-law analysis).

After erroneously narrowing the analysis, plaintiffs gave broad assurances that the various states' laws are not "materially different" because "all consumer protection regimes share a common chord" and "all of them in one fashion or another outlaw misleading and deceptive conduct." (AA1263-68) But even if the various states' laws regulate similar conduct, they do so in different ways under different conditions and standards. Notably, plaintiffs came by their observations to the contrary by failing to discuss the elements required to prove a consumer protection claim in any state other than Minnesota. Plaintiffs further supported their attempt at homogenization with a series of charts that left out crucial legal elements upon which the various states' laws differ, including essential elements of proof and availability of relief such as medical monitoring. (AA1293-1718)

St. Jude Medical's charts, on the other hand, exposed the material differences [AA2971-3041], and the relevant case law has uncovered them as well. Numerous authorities have found material differences among the fifty states' consumer fraud laws and have accorded respect to the laws of those jurisdictions in the conflicts analysis. That result should have been reached here. *See Bridgestone/Firestone*, 288 F.3d at 1018 (consumer protection laws "vary considerably" and "courts must respect these differences rather than apply one state's law"); *Fink v. Ricoh Corp.*, 839 A.2d 942, 948, 974-82 (N.J. Super. Ct. Law Div. 2003) (surveying state laws on consumer fraud);

*Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 352-55 (Tex. App. 2003) (surveying state laws).

### 2. Because The Absent Class Members' Claims Are Not Sufficiently Connected To Minnesota, The Constitution Does Not Permit Application Of Minnesota Law To The Entire Nationwide Class

Under a proper conflicts analysis – one that recognizes the foregoing material differences in the various states' laws and focuses on the expectations of the class members at the time their valves were implanted – application of Minnesota law to every class member is arbitrary and unfair and goes beyond what due process will tolerate.

As the Supreme Court expressly provided in *Shutts*: "When considering fairness in this [choice-of-law] context, an important element is the expectation of the parties." 472 U.S. at 822. The expectations relevant to the choice-of-law analysis are those formed at the time of the transaction [*id.*], and this Court cited that very factor in reversing the prior nationwide consumer fraud class: "There is no indication out-of-state parties 'had any idea that [Minnesota] law could control' potential claims *when they received their Silzone-coated valves*." 425 F.3d at 1120 (quoting *Shutts*, 472 U.S. at 822) (emphasis added).

Although the plaintiffs and the district court refused to undertake the inquiry, the record indicates that out-of-state class members would not have expected application of Minnesota law to their claims at the time of

implantation and that application of Minnesota law to every one of their claims is arbitrary and unfair. For example:

- Thousands of class members reside outside Minnesota, including the lone class representative, Lester Grovatt. He filed his lawsuit in his home state of New Jersey under "acts similar to the New Jersey Products Liability Act," revealing his own expectation that New Jersey law would apply to his claim;

- Each out-of-state class member had a Silzone-coated valve implanted outside Minnesota by surgeons practicing outside Minnesota, providing no indication of any connection to Minnesota at the time of implantation;

- Decisions to purchase out-of-state class members' Silzone valves were made outside Minnesota by purchasers outside Minnesota who received various information regarding Silzone valves, which likely did not reveal any connection to Minnesota;

- Because out-of-state class members received their valves in surgery after selection by hospital purchasing agents and/or treating physicians, they most likely did not know, at the time their valves were implanted, who manufactured their valves, much less where they were manufactured;

- Each out-of-state class member underwent treatment outside Minnesota following implantation of his or her Silzone valve, any harm allegedly attributable to the valve would occur outside Minnesota, and any required medical monitoring would occur outside Minnesota as well; and

- Each class member necessarily must prove elements of his or her consumer protection claims by reference to matters occurring entirely outside Minnesota – everything from the allegedly wrongful transaction, to the allegedly false statements, to the purported "causal nexus" with any alleged injury, to the remedy sought.

Given these circumstances, the absent class members, at the time of implantation, would not have expected – and there was (and is) no reason for them to have expected – that Minnesota law would govern their claims arising from that procedure. As one district judge put it in rejecting nationwide application of New Jersey law in a proposed Vioxx class action, "To the extent that any of the plaintiffs knew that Merck was the manufacturer of Vioxx, which is in most cases is unlikely, it is even more doubtful that any of the plaintiffs knew that Merck was incorporated in and operated out of New Jersey." *In re Vioxx*, MDL No. 1657, 2006 WL 3391432, at *6 (E.D. La. Nov. 22, 2006).

Perhaps more importantly, there is no evidence in this record to the contrary because plaintiffs consciously made no attempt to provide it and the district court affirmatively did not require it. But in the absence of such

claimant-specific record evidence, the Due Process and Full Faith and Credit Clauses prohibit application of Minnesota law to every class member's claims.

*Shutts* again is illustrative. There, the defendant had "substantial" contacts with Kansas, but the Supreme Court focused on the "claims asserted by each member of the plaintiff class." 472 U.S. at 821-22. Kansas lacked "interest" in the plaintiffs and lease transactions outside Kansas, so applying Kansas law to claims arising from those leases was unfair and exceeded constitutional limits. *Id.*

Similarly, the district court in *Montgomery v. New Piper Aircraft*, 209 F.R.D. 221, 228-31 (S.D. Fla. 2002), rejected a nationwide class applying a Florida consumer statute, concluding that "under *Shutts*, the Due Process Clause of the Constitution prohibits application of [the Florida statute] to a nationwide class." *Id.* at 229. The defendant's "home state" was Florida, and it manufactured the products at issue (airplanes) in Florida. *Id.* But those Florida connections could not support applying Florida law to every transaction nationwide. *Id.*; *see also Lyon v. Caterpillar*, 194 F.R.D. 206, 213 (E.D. Pa. 2000) ("Applying the Pennsylvania consumer fraud act to all the putative class members' claims would be a violation of the due process rights of those plaintiffs who do not live in Pennsylvania and/or who did not purchase their boats in Pennsylvania."); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 460-61 (D.N.J. 1998) (rejecting nationwide application of New Jersey consumer protection law).

Several recent state-court decisions are in accord. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850-857 (Ill. 2005) (holding that Illinois consumer fraud act did not apply to out-of-state plaintiffs where overwhelming majority of claim-related transactions occurred elsewhere); *Tracker Marine, L.P.*, 108 S.W.3d at 352-55 (Missouri consumer protection law could not apply to nationwide class because "if Missouri's law satisfied the interests of all other states, it is strange they choose to enact laws that were different. Moreover, taking this argument to its logical conclusion, the most extreme law would always apply. This might simplify choice-of-law analyses, but it reflects a simplistic view of the policies behind such laws."); *Vanderbilt Mortg. & Fin., Inc. v. Posey*, 146 S.W.3d 302 (Tenn. Ct. App. 2004) (reversing certification of a 44-state class asserting Tennessee consumer protection law because inadequate conflicts-of-law analysis and observing that it "will be a rare circumstance" when one state will have the most significant contacts with all transactions); *National Western Life Ins. Co. v. Rowe*, 164 S.W. 3d 389, 393 (Tex. 2005) (reversing nationwide consumer class asserting Texas law because the lower "court did not explain why class members in another state should not have the benefit of that state's law"); and *Fink*, 839 A.2d at 948, 974-82 (holding that New Jersey's Consumer Fraud Act did not displace analogous law of other states, stating that "[w]ith the need to litigate individual issues of fact inherent in a class action and those necessitated by application of the consumer fraud laws of up to 50 states, plaintiffs have failed to satisfy their burden to demonstrate a predominance of common issues").

The district court, nevertheless, embraced plaintiffs' broad-brush approach and applied Minnesota law to a nationwide class of uninjured Silzone valve recipients seeking medical monitoring relief. That unprecedented holding should be reversed.

**B. The Commerce Clause And The Rules Enabling Act Preclude Exclusive Application Of Minnesota Law To The Entire Nationwide Class**

Any attempt to apply a single state's laws to the consumer protection claims brought here runs into other equally fundamental legal barriers – namely, the Commerce Clause and the Rules Enabling Act.

The Commerce Clause holds "special concern both with the maintenance of a national economic union unfettered by state-imposed limitations on interstate commerce and with the autonomy of the individual States within their respective spheres." *Healy v. Beer Instit.*, 491 U.S. 324, 335-36 (1989). One state's law therefore cannot have nationwide impact, as "[t]his kind of potential . . . national regulation . . . is reserved by the Commerce Clause to the Federal Government and may not be accomplished piecemeal through the extraterritorial reach of individual state [laws]." *Id.* at 340; *see also Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 582-83 (1986) (rejecting New York's attempt to "project its legislation" into other states as a violation of the Commerce Clause's prohibition of direct regulation of interstate commerce); *Edgar v. MITE*

*Corp.*, 457 U.S. 624, 644-45 (1982) (plur. opn.) (under Commerce Clause, state has no legitimate interest in applying its law to protect non-residents).

The Commerce Clause does not permit a nationwide class action applying one state's consumer laws on an extraterritorial and exclusive basis. *See Montgomery*, 209 F.R.D. at 228-31 (stating that the "Commerce Clause to the United States Constitution precludes the application of [the Florida statute] to each and every class member's claim."); *see also BMW of North Am. Inc. v. Gore*, 517 U.S. 559, 571-72 (1996) (only Congress can enact a policy for the entire nation). The certified class of Silzone recipients embraces this prohibited result by exporting Minnesota's consumer statutes to jurisdictions nationwide and effectively imposing nationwide standards for commerce involving Silzone valves.

In addition, "no reading of [Rule 23] can ignore the [Rules Enabling] Act's mandate that 'rules of procedure "shall not abridge, enlarge or modify any substantive right [under state law]."'" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848 (1998). However, by certifying a nationwide class asserting claims exclusively under Minnesota's consumer protection statutes, the district court effectively has invoked Rule 23 to overrule, or at least render moot, the public policy choices of each of every jurisdiction that has rejected or limited medical monitoring. The Rules Enabling Act prohibits altering or expanding state substantive law in that fashion. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 108-109 (1945) (district court sitting in diversity is "only another

court of the state" and may not "substantially affect the enforcement of a right as given by the State.").

### C. Minnesota Conflicts-Of-Law Rules Preclude Exclusive Application Of Minnesota Law To The Entire Nationwide Class

#### 1. The Law Of Each Class Member's Home State Must Apply Because Of Those States' Compelling Interests In Providing Remedies For Their Residents And Governing Transactions Within Their Borders

There is yet another barrier to applying Minnesota law to the entire nationwide class – Minnesota's own conflicts-of-law rules, which recognize every other state's interest in regulating patients and transactions within state borders.

When substantive state laws conflict as they undisputedly do here, Minnesota-based courts apply a five-factor test to determine which law should govern. *Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.*, 604 N.W.2d 91, 94 (Minn. 2000) (choice of substantive law depends on: (1) predictability of results; (2) maintenance of interstate order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; (5) application of the better rule of law); *Jepson v. General Cas. Co.*, 513 N.W.2d 467, 470 (Minn. 1994); *Milkovich v. Saari*, 203 N.W.2d 408, 411-13 (Minn. 1973).

Applying these five factors, Minnesota rejects the idea that its law can apply nationwide merely because the defendant resides there or a product

originated there. In *Nodak*, for example, an out-of-state insurance company sued a Minnesota company over an accident in North Dakota between a North Dakota resident and a Minnesota resident. 604 N.W.2d at 91-92. Applying Minnesota's five-part conflicts-of-law test, the Minnesota Supreme Court held that North Dakota law applied, even though the plaintiffs sued in Minnesota courts and the defendant insurer was a Minnesota company. *Id.* at 94-96. The location of the accident was the dispositive factor, as the court held "that when all other relevant choice-of-law factors favor neither state's law, the state where the accident occurred has the strongest governmental interest; accordingly, the law of the state where the accident occurred should be applied." *Id.* at 96.

This Court applied Minnesota choice-of-law rules to the same effect in *Nesladek*, 46 F.3d 734, where a Minnesota resident sued Ford over an accident that occurred in Nebraska while the plaintiff resided there. *Id.* at 735-36. The allegedly defective Ford vehicle underwent final assembly in Minnesota, yet the Eighth Circuit held that Nebraska law applied. *Id.* at 738-40. Again, the accident's location and the plaintiff's residence at the time of the accident were the deciding factors.

In its initial order on class certification, the district court similarly held that it could not "ignore the interests of states in which class members were implanted with Silzone valves" and that states "have strong interests in applying their relevant laws to the marketing, sale, and implantation of medical devices within their borders." (AA537-41). These "crucial" factors

precluded Minnesota law from applying uniformly to those now-decertified personal injury and medical monitoring classes. (AA537-41,868-80) That was the correct conclusion at the time, and the district court should have applied the same reasoning and reached the same result when considering plaintiffs' consumer protection class:

**Predictability of results**. This factor "represents the ideal that litigation on the same facts, regardless of where the litigation occurs, should be decided the same to avoid forum shopping." *Nodak*, 604 N.W.2d at 94-95. As one Minnesota court put it, this factor applies "primarily when parties desire advance notice of which state law will govern in future disputes." *Danielson*, 670 N.W.2d at 7. Here, as this Court noted, "there is no indication out-of-state parties had any idea that Minnesota law could control potential claims when they received their Silzone-coated valves." 425 F.3d at 1120. Thus, Silzone patients could not have predicted that potential claims arising from their valve replacements would be decided under law different from where they reside and/or had surgery. Nor could they have predicted that their substantive rights could be affected, even extinguished, because other patients they do not know decided to sue and had their actions transferred to Minnesota.

**Maintenance of Interstate Order**. This factor is concerned with "whether the application of Minnesota law would manifest disrespect" for another state's sovereignty or impede interstate commerce. *See In re Baycol Prods. Litig.*, 218 F.R.D. 197, 207 (D. Minn. 2003) (noting that courts of

different states should strive to sustain rather than subvert each other's interests). Put another way, the maintenance-of-interstate-order factor weighs in favor of the state which has the most significant contact with the facts relevant to the litigation. *Id.* Here, each putative class member's home state still has the most significant contacts with each putative class member's claims. That is where each plaintiff sought medical care leading to implantation of a Silzone valve; where each surgeon and/or plaintiff received and considered information about St. Jude Medical's products (if at all); where each surgeon made the decision to implant a Silzone valve; where each implantation procedure was performed; where each plaintiff continues to receive medical treatment; and where plaintiffs' proposed treatment program would be implemented.

**Simplification of the Judicial Task.** This factor encompasses a court's ability to apply one state's law versus another state's, but it "has not been given much weight in [the Minnesota Supreme Court's] precedent." *Nodak*, 604 N.W.2d at 94-95. It too favors application of each class member's home state's law, or is at least neutral. A district court is certainly capable of applying any one state's law to any one person's claim. In a class action, however, a court may not "simplify" its task by using Rule 23 to paper over differences in state law. *See Shutts*, 472 U.S. at 821.

**Governmental Interests.** This factor examines each forum's policies and evaluates the factual circumstances of the litigation. *Schwartz v. Consolidated Freightways Corp.*, 221 N.W.2d 665, 668 (Minn. 1974) (noting

governmental interest factor "contemplates application both in terms of factual contacts with the forum and in terms of the state's policy considerations relevant to its choice of law"). The governmental interest factor "generally weighs in favor of application of the state law in which the plaintiff lives and in which the injury occurred." *In re Baycol*, 218 F.R.D. at 207. Further, where other choice-of-law factors are relatively equal, the Minnesota Supreme Court has stated flatly that "the state where the accident occurred has the strongest governmental interest." *Nodak*, 604 N.W.2d at 96. This factor weighs heavily against choosing Minnesota law. The class members reside in other states; they received their implants in other states; and they are receiving medical care and being monitored in other states. Each of those states has a paramount interest in a situation, such as this, that would interfere with its residents' medical care under the guise of a "consumer protection" regime. As this Court held in *Hughes v. Wal-Mart Stores, Inc.*, "[W]e fail to see how any important . . . governmental interest is significantly furthered by ensuring that nonresidents are compensated for injuries that occur in *another state*." 250 F.3d 618, 621 (8th Cir. 2001).

**The Better Rule of Law**. Minnesota courts have stated that this factor carries essentially no weight. *Nodak*, 604 N.W.2d at 96 (recognizing that "this court has not placed any emphasis on this factor in nearly 20 years and conclude that it is likewise unnecessary to reach it here."). It should have carried no weight here, yet the district court discounted other states' laws as "more stringent" and substituted Minnesota law based partly on its conclusion that other states would not object to "an action that would benefit their own

citizens." (AA3660) In other words, the district court judged Minnesota law to be better (*i.e.*, more "beneficial"). That consideration, however, should not have played into the analysis.

**2. The District Court Erred In The Conflicts Analysis By Relying Exclusively On St. Jude Medical's Minnesota Contacts And Improperly Invoking The "Beneficial" Nature Of Minnesota's Consumer Protection Statutes**

Minnesota's own conflicts-of-law rules thus require that each class member's claims should be governed by the law of his or her home state. The district court came to the opposite conclusion relying mainly on the fact that St. Jude Medical is headquartered in Minnesota, conducted Silzone-related business in Minnesota, would have expected Minnesota law to apply, and that it would be less burdensome and "simpler" to apply one state's law. (AA3659) The district court acknowledged other states' interests in having their law apply to their resident's claims, but dismissed those interests because Minnesota provided broader remedies. (AA3660) Each part of this analysis is in error.

To begin with, the defendant's residence is not the dispositive factor under Minnesota's choice-of-law rules, as applied by both the Minnesota Supreme Court and this Court. *See Nodak*, 604 N.W.2d at 95-97; *Nesladek*, 46 F.3d at 739-740; *see also, e.g.*, *Bridgestone/Firestone, Inc.*, 288 F.3d at 1016-17 (rejecting application of law of place of defendant's headquarters to nationwide class); *In re Vioxx*, 2006 WL 3391432 at *6 (rejecting application of law of defendant's headquarters (New Jersey) to nationwide class,

observing that "the plaintiffs reside in fifty-one jurisdictions, fifty of which are not New Jersey").

Further, the district court also erred in dismissing those sister states' interests because Minnesota consumer protection law provides more generous remedies. *See Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364, 378 (D.N.J. 2004) (declining to extend New Jersey consumer protection statutes to Pennsylvania plaintiffs despite greater protection of New Jersey law in deference to Pennsylvania's interests); *Fu v. Fu*, 733 A.2d 1133, 1141 (N.J. 1999) (stating consumer fraud laws "that deny liability are entitled to equal consideration in choice-of-law determinations as are rules imposing liability"). The Minnesota Supreme Court has made it clear that a proper conflicts analysis – which is intended to inhibit forum shopping not promote it – cannot emphasize the munificence of Minnesota law. *See Jepson*, 513 N.W.2d at 471-72 (noting that when considering choice of law factors Minnesota does not have an interest in encouraging forum shopping to allow plaintiffs to "take advantage" of Minnesota law).

In sum, proper analysis of Minnesota's own choice-of-law principles supports the application of the law of the fifty states to this controversy.

**D. Because The Fifty States' Laws Must Apply To The Class Member's Various Claims, The Nationwide Class Presents Individual Legal Issues That Overwhelm Any Conceivable Common Issues**

Because "variations in state law may swamp any common issues and defeat predominance" [*Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996)], it is plaintiff's burden to demonstrate that variations among the fifty states' laws do not "pose 'insuperable obstacles' to certification." *Spence v. Glock*, 227 F.3d 308, 313 (5th Cir. 2000) (quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986)).

Here, Mr. Grovatt based his motion for class certification solely on the application of one state's law and did not offer any explanation of how his proposed class could be certified if numerous states' laws applied. This is no surprise. The need to apply fifty states' law to a nationwide class action is fatal to class certification under Rule 23(b)(3) because common questions will not predominate in the face of that legal diversity. It also comes as no surprise, therefore, that overwhelming and well-reasoned authority holds that a nationwide class applying different states' laws cannot be certified under Rule 23.

In *In re Bridgestone/Firestone Inc.*, for example, the plaintiffs urged application of one state's consumer protection laws based on the defendant's residence, but the court stated succinctly "[n]either Indiana nor any other state has applied a uniform place-of-the-defendant's headquarters rule to product liability cases." 288 F.3d at 1016. The court therefore rejected a nationwide

consumer fraud class under Rule 23(b)(3) because "[n]o class action is proper unless all litigants are governed by the same legal rules." *Id.* at 1015. The court further observed that "because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable." *Id.* at 1018.

More recently, a district court in Louisiana cited conflicts of law in denying certification of a proposed nationwide class of pain medication patients. *In re Vioxx*, 2006 WL 3391432 at *8-*9. In *Vioxx*, the court refused to apply the defendant's home state law to an entire nationwide class, then concluded that the need to apply fifty states' law destroyed typicality and caused individual issues to predominate. *Id.*

Similarly, a district court in Arkansas recently rejected certification of a multistate class of hormone patients asserting consumer protection and seeking medical monitoring. *In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555 (E.D. Ark. 2005). In *Prempro*, the plaintiffs argued that differences among the states' consumer protection statutes were not "substantial enough to preclude class certification" and promised to "come up with common instructions that provide for the base from which lesser-included offenses might be carved out." *Id.* at 563. The district court rejected the argument, stating:

> Plaintiffs' argument that the variations in state laws are not substantial is unduly sanguine. In an attempt to show that the laws are generally uniform, Plaintiffs have presented a listing of states' laws for consumer fraud, unfair competition, and unjust

> enrichment. But a study of this listing leads me to a conclusion contrary to the one urged by Plaintiffs.

*Id.* Because choice of law "affects every aspect of class certification," the district court denied certification before even reaching the requirements of Rule 23. *Id.* at 562, 564-65.

These and other similar decisions clearly articulate the insuperable obstacles to class certification here.[5] The need to apply the laws of the fifty states forecloses certification of the nationwide class plaintiffs propose, and certification of that class should be rejected on this ground also.

---

[5] *See also In re Ford Motor Co. Ignition Switch*, 174 F.R.D. at 350-51 (rejecting nationwide consumer protection class because of "a multitude of different standards and burdens of proof" and because plaintiffs had "not explained how their multiple causes of action could be presented to a jury for resolution in a way that fairly represents the law of the fifty states while not overwhelming jurors with hundreds of interrogatories and a verdict form as large as an almanac"); *In re Paxil Litig.*, 212 F.R.D. 539, 551 (C.D. Cal. 2003) (denying certification of nationwide class because of diverse legal and factual issues); *In re Rezulin*, 210 F.R.D. 61, 66-67 (D.N.Y. 2002) (denying certification of nationwide medical monitoring class because of diverse state laws and individual factual issues); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 267 (S.D. Fla. 2003) (denying certification of multistate medical monitoring class because "differences and uncertainties" in state law, diverse issues of liability and causation); *Chin*, 182 F.R.D. at 457-61 (denying certification of nationwide class because application of numerous states' laws precluded predominance of common issues); *Chemtall Inc. v. Madden*, 607 S.E. 2d 772, 783-84 (W. Va. 2004) (reversing certification of multi-state medical monitoring class because differing state law caused class to fail commonality and typicality requirements).

## VIII

## THE NATIONWIDE CLASS FAILS UNDER RULE 23 BECAUSE INDIVIDUALIZED ISSUES OVERWHELM EACH CLASS MEMBER'S CLAIM, EVEN IF MINNESOTA LAW COULD CONSTITUTIONALLY BE APPLIED TO THE CLASS

Even if one state's law hypothetically could govern all the class members' claims (which cannot be the case here), the nationwide consumer protection class certified below still must be reversed because individual issues pervade the claims. Although St. Jude Medical explained why, the district court refused to make any findings on Rule 23's specific requirements and deferred instead to its prior certification of the consumer protection class.[6] This too was reversible error. The record here demonstrates that individualized issues would overwhelm any attempt at a class-wide trial.

[6] Plaintiffs claimed Rule 23 was "irrelevant" because this Court did not expressly direct the district court to consider Rule 23 elements [AA3555]. Yet, Rule 23 is never "irrelevant" to class certification, and this Court did not need to "direct" the district court to consider whether plaintiffs' proposed class met Rule 23's requirements before certifying another class. This Court "reversed" both previously certified classes, and on remand, it was plaintiffs' burden to prove that the district court could and should certify another. *See In re American Medical Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

## A. Individual Legal And Factual Issues Will Thoroughly Overwhelm Any Common Questions

### 1. Plaintiffs' Proposed Medical Monitoring Scheme Is Permeated By Individual Questions Related To Each Class Member

In vacating the prior medical monitoring class, this Court held that the need for medical monitoring depended on myriad individual issues, and nothing has changed. Individual issues still predominate.

Plaintiffs' expert now recommends a three-part medical monitoring regime: (1) various levels of enhanced surveillance; (2) preventive measures for certain patients; and (3) management of identified complications in individual patients. (AA1747-48) Thus, for each Silzone patient, plaintiffs would seek a detailed risk factor assessment. For some Silzone recipients who will undergo this initial, invasive battery of tests, there will be no need for further enhanced monitoring. For others, plaintiffs propose an elaborate risk-scoring system using sixteen different patient-specific factors to evaluate the thromboembolic risk that each patient faces and the type and extent of monitoring that is appropriate for each. (AA1848-50) All of these factors must be considered in combination for each patient, and because they can change over time, a continual reassessment of these factors will be necessary. (AA1747-48,1848-50)

And that is just the first phase. For the recommended second "preventive measures" phase, plaintiffs' expert recommends risk factor

modification and the use of anticoagulants to prevent thrombosis. (AA1797) However, he recognizes that different plaintiffs must be treated differently depending their post-operative complications and risk factors. (AA1797-1802) Finally, when it comes to the third "postoperative management" phase, plaintiffs' expert frankly acknowledges that any change in therapy "must be undertaken at the discretion and direction of the patient's own informed cardiologist and cardiac surgeon who are best placed to determine the risks and benefits of each course of action for the individual patient." (AA1748,1787)

The lone class representative, Mr. Grovatt, exemplifies the individualize nature of each class member's medical history and monitoring needs.[7] He first underwent a surgical repair of his native aortic valve in 1966, and in early February 1999, was diagnosed with an enlarged aortic root, aortic stenosis, and an aortic aneurysm. He underwent a long and very complicated surgery involving implantation of a Silzone aortic valve, replacement of his ascending and transverse thoracic aorta with a woven Dacron graft, and a coronary artery bypass procedure. During this surgery, Mr. Grovatt experienced a brain stem infarction due to hypothermia, a type of brain injury that is a recognized risk of this procedure. (AA587-88)

---

[7] Plaintiffs Beatrice Bailey, Joe Sanchez, and Levy Redden allege various injuries and are not members of the certified class. Plaintiff Bonnie Sliger passed away from causes unrelated to her valve, and her claims have been settled on an individual basis.

Nevertheless, Mr. Grovatt recovered relatively well from this complex surgery, and now eight years later, he has not experienced any complication that can be attributed to his Silzone valve. (AA588) But under plaintiffs' expert's proposed medical treatment program, Mr. Grovatt's monitoring must take into account his specific experience and resulting risk factors. (AA1747-48,1787-1817) Simply stated, the undisputed record establishes that proof of Mr. Grovatt's claims cannot substitute for proof of any other Silzone patient's claims.[8] This Court therefore could not have been more correct in finding that medical monitoring is "highly individualized" and not suitable for class treatment.

### 2. Liability Issues Arising Under Minnesota's Consumer Protection Statutes Will Be Permeated By Individual Questions Related To Each Class Member

To prove their consumer protection claims, plaintiffs must introduce evidence sufficient to show that St. Jude Medical made a representation or engaged in conduct in violation of one of the three statutes, that they sustained injury, and that there is a "causal nexus" between these alleged representations

---

[8] Apart from their impact on predominance, these unique facts show that Mr. Grovatt's claims do not satisfy Rule 23(a)'s typicality prong. As one court explained, "[t]he premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1988); *Hurd v. Monsanto Co.*, 164 F.R.D. 234, 238-39 (S.D. Ind. 1995) (no typicality where no one set facts established liability for every class member).

and their alleged injuries. *See Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 13-14 (Minn. 2001).

In the district court, St. Jude Medical introduced evidence – which plaintiffs did not contradict – that each Silzone heart valve implantation was an individual transaction based on individual buying decisions made by buyers or physicians who received differing information regarding Silzone valves. Under these undisputed facts, plaintiffs cannot prove who said what to whom or the existence of a "causal nexus" on a classwide basis. *See Liberty Mut. Ins. Co. v. Tribco Constr. Co.*, 185 F.R.D. 533, 538-39 (N.D. Ill. 1999) (finding class treatment inappropriate because the case involved alleged misrepresentations that were likely to vary such that individual questions predominate).

*First*, because Mr. Grovatt's claims are idiosyncratic in nature, resolution of his claims does not speak to the proper resolution of any other class member's claims. Classwide proof of liability thus is not possible with these Silzone claims.

*Second*, plaintiffs also cannot prove that St. Jude Medical made a misrepresentation or engaged in conduct on a classwide basis. St. Jude Medical did not market directly to patients, but distributed Silzone heart valves through a network of sales representatives who met with hospital purchasing staff and treating physicians to provide information about the product. Physicians also received information in different forms from sources other

than St. Jude Medical: Some received information from medical conferences, others obtained information from medical journals and research, and yet others talked with their colleagues. (AA3436-72) Finally, while some physicians may have discussed with their patients the use of Silzone technology, others likely did not. Indeed, Mr. Grovatt testified that he did not discuss St. Jude Medical or the Silzone technology with his surgeon. (AA3431-32) Given these facts, any one treating physician or Silzone recipient could have said or heard or seen any number of things (or nothing at all) about Silzone heart valves from any number of sources. The ultimate decision to use a Silzone valve in a given instance rested with the implanting physician, who made the decision based on available information and individual patient factors.

*Third*, there is no uniformity in proof on the existence of a causal nexus between the alleged representations and their alleged "injury" on a classwide basis. Plaintiffs must prove a causal connection not only between St. Jude Medical's alleged representations and their use of the Silzone valve, but also between their use of the Silzone valve and their need for enhanced medical monitoring. Plaintiffs cannot prove the first link in the causal chain on a classwide basis, where physicians did not receive information uniformly and where some class members may have received information about the Silzone valve, but others admittedly did not. (AA3432,3475,3480) Also, as explained above, plaintiffs cannot prove on a uniform basis any link between their Silzone valves and any need for additional medical monitoring. (AA1747-48,1787-1802)

Where as here, individual issues of proof predominate on questions related to liability and sought-after relief, Rule 23 will not support class certification. This Court correctly reached that conclusion in its prior decision. 425 F.3d at 1121 (reversing previously certified medical monitoring class because "the diverse legal and factual issues preclude class certification"). Compelling additional authority also supports that result. *See Zinser v. Accufix Research Instit.*, 253 F.3d 1180, 1189-90 (9th Cir. 2001) (affirming denial of class certification because of predominating individual issues and variances in state law); *Zehel-Miller v. AstraZenaca Pharmaceuticals, LP*, 223 F.R.D. 659, 663-64 (M.D. Fla. 2004) (denying certification of nationwide medical monitoring class of pharmaceutical users because individual issues overwhelmed common questions and class lacked cohesiveness); *Perez*, 218 F.R.D. at 267 (denying certification of multistate medical monitoring class because of "differences and uncertainties" in state law and diverse issues of liability and causation); *In re Paxil Litig.*, 212 F.R.D. at 551 (finding divergent standards of liability required under different states' laws defeated finding common issues predominated); *In re Rezulin*, 210 F.R.D. at 66-67 (denying certification of nationwide medical monitoring class because there were diverse state laws and individual factual issues); *Lockheed Martin Corp. v. Superior Court*, 63 P.3d 913, 918-922 (Cal. 2003) (rejecting certification of medical monitoring class because "individual issues of causation and damages predominated over common issues"); *Goasdone v. American Cyanamid*, 808 A.2d 159, 170-171 (N.J. Super. Ct. Law Div. 2002) (rejecting certification of medical monitoring class because there were "so many individual factors").

**B. A Classwide Trial For The Proposed Nationwide Class Would Be Unmanageable Because Of The Numerous Individual Issues On Medical Monitoring And Liability**

The manageability of a class action is judged by how the putative class members' claims would be resolved in a classwide trial, taking into account the plaintiffs' burden of proof and the defendant's right to raise any available defenses. In this action, because of the predominance of individual legal and factual issues related to each plaintiff's burden of proof, a classwide trial would be unmanageable.

At the outset, there is no workable way to determine the class members and give class notice. Class certification is improper where the proposed class is not sufficiently definite or where a merits determination is required to decide who is a class member. *See Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995) (rejecting class because determining class membership would require "mini hearing on the merits" as to the central liability issue); *Hagen v. Winnemuca*, 108 F.R.D. 61, 63 (D. Nev. 1985) (rejecting class definition requiring the court "to pass on the merits of the claim at the class certification stage" to determine class membership).

Here, the certified class is defined by reference to a disputed issue – whether a potential class member has "developed a manifest and diagnosed injury from their Silzone implant of degree or severity that would permit individual personal injury law suits to be commenced in their state of residence." (AA3651,62) Thus, merely identifying the class members will

require the resolution of threshold legal and factual questions that go to the heart of the liability and causation issues in this case: (1) whether a potential class member has an injury "from" (*i.e.*, caused by) a Silzone valve, which is a contested liability issue in every case; and (2) whether the injury is "severe" enough to support a claim in that class member's home state, which will require individualized adjudication. Going forward with such an indefinite class definition would defeat the principal purposes for class litigation – to achieve economies of time and expense.

Any classwide trial also would need to provide for separate adjudication of individualized issues on liability and the need for medical monitoring. The uncontroverted evidence demonstrated that each Silzone implantation was a unique and separate occurrence, and each Silzone recipient likewise has a unique medical history and risk factors. As a result, any classwide trial will require adjudication of specific facts regarding potentially thousands of transactions. Under the applicable burden of proof, every class member will need to present individual evidence on whether St. Jude Medical's conduct resulted in the implantation of a Silzone valve, and each will also have to present individualized evidence on the need (if any) for additional medical monitoring.

Where individual issues overtake the class members' proof of their particular claims, as they do here, class litigation becomes unmanageable, providing another reason to reject class certification. *See Castano*, 84 F.3d at 744-52 (reversing certification of nationwide class of tobacco users, noting

that the district court could not assume common issues would predominate where resolution of individual factual issues such as proof of reliance was required); *Blades v Monsanto*, 400 F.3d 562, 571-72 (8th Cir. 2005) (affirming denial of certification of class of seed purchases because class members' claims presented individual issues that could not be proved on a classwide basis); *In re Northern Dist. Of Cal. Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 853 (9th Cir. 1982) (denying certification because "[n]o one set of operative facts establishes liability. No single proximate cause applies equally to each potential class member . . . . Furthermore, the alleged tortfeasor's affirmative defenses . . . may depend on facts peculiar to each plaintiff's case."); *Harding v. Tambrands*, 165 F.R.D. 623, 630-32 (D. Kan. 1996) (denying certification of toxic shock syndrome class because "advantages of a class action do not outweigh the problems of case manageability and jury confusion" inasmuch as "each individual . . . class member would still have to have her own trial on the individual issues applicable specifically to her").

**C. A Class Action Is Not The Superior Method For Resolving The Individual Claims And Creates Prejudicial Risks To The Class Members**

A class action cannot simply be a method of relief, it must be the superior one. *See Johnston v. HBO Film Mgmt. Inc.*, 265 F.3d 178, 194 (3d Cir. 2001) (holding that a class action must be the best method of resolution, not just a possible or potentially good method of resolution). Here, it plainly is not. Rather, the most efficient and effective method of resolution is for this

Court to allow the MDL to run its proper course and leave any plaintiff who desires to do so to prosecute his or her own individual claim.

First, Mr. Grovatt is bringing only one particular claim under one set of statutes, leaving the class members to their own devices to pursue other Silzone-related claims, if any. Splitting claims in this manner jeopardizes the class members' ability to bring those later claims, should they ever accrue, and places their rights at risk. Rule 23 does not tolerate that sort of risk. *See Thompson v. American Tobacco Co.*, 189 F.R.D. 544, 550-51 (D. Minn. 1999) (denying class certification because class asserted claims for injunctive relief and medical monitoring, while reserving individual injury claims for later lawsuits, because res judicata could preclude bringing later claims); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 606-07 (S.D.N.Y. 1982) (denying class certification because plaintiffs asserted only breach of implied warranty of merchantability and claimed only "economic" and punitive damages, creating "significant risks of [class members] being told later that they had impermissibly split a single cause of action.").

Alternatively, Mr. Grovatt is putting the class members' interests at risk by pursuing a claim that likely does not even exist under Minnesota law. Here, Mr. Grovatt defined the class to include only Silzone patients who have not suffered actual injuries. Yet, Minnesota's consumer fraud statutes require proof of "actual damages," which requires proof of an actual injury; not a speculative risk of injury. *K.A.C.*, 527 N.W.2d at 561-62 ("undisclosed, miniscule risk of HIV exposure" could not support a consumer fraud damages

claims; "Unable to establish an 'injury,' plaintiff has no basis for recovery under the Consumer Fraud Act."); *see also Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 926-27 (8th Cir. 2004) (affirming summary judgment for tobacco manufacturer on Minnesota consumer fraud claim where plaintiff could not show physical injury in reliance on manufacturer's representation).

A class action with no clear basis in law threatens the putative class members' rights to recover. Such a class cannot be superior and should be rejected.[9] *In re School Asbestos Litig.*, 789 F.2d 996, 1007 (3d Cir. 1986) (where federal court "cannot make a reasonable prediction that state courts" will accept a novel theory, it should not certify a class).

Even if the class members' claims go forward, actually resolving those claims will require numerous individual trials. Because no two class members' claims are alike, individual trials will be required on issues such as whether St. Jude Medical's alleged wrongful conduct or communications actually led to the implantation of a Silzone valve and whether each class member actually requires extraordinary medical monitoring. A class action, therefore, produces no economy for any class member or for the class as a whole, since individual claims will require individual resolution even under a class action resolution program.

---

[9] By placing the class members' rights at risk in this fashion, Mr. Grovatt also has a conflict of interest with the rest of the class making him *per se* an inadequate class representative who therefore cannot meet that requirement under Rule 23(a).

Finally, classwide resolution also will provide no substantial benefits. The proposed class consists of patients who had their diseased heart valves replaced and have lived with the benefit of their Silzone valves for at least seven years without complication. For Mr. Grovatt, it has been eight, and data from the AVERT study confirms that neither he nor any other Silzone patient is at any higher risk of complication than a recipient of a non-Silzone valve. The putative class members likewise are being monitored by their own physicians, and in the event any of them suffers a complication that he or she attributes to a Silzone valve, he or she is free to pursue available remedies under the laws of his or her home state.

## IX

## CONCLUSION

This Court carefully considered the significant obstacles to class certification in this case, reversed the district court's certification decision, and remanded the case for the district court to conduct further analysis. On remand, the district court, at plaintiffs' urging, essentially ignored this Court's analysis and direction and once again certified a nationwide class under the law of one state seeking a remedy that is inherently and unavoidably individual in nature.

Class treatment of the claims asserted here is not possible under the law of this case, the Constitution, controlling principles of federalism, and the plain language of Rule 23. This Court should declare that efforts to force this

case into a class action mold must end. The district court's order should be reversed, the class certification vacated, and the matter remanded with instructions to proceed with litigation of individual claims in accordance with standard MDL procedures.

DATED: January 22, 2007.

Respectfully submitted,

HALLELAND, LEWIS, NILAN, & JOHNSON, P.A.

RIDER BENNETT, LLP

REED SMITH LLP

By: /S/ Steven J. Boranian
Steven J. Boranian

Attorneys for Defendant and Appellant St. Jude Medical, Inc.

## CERTIFICATE OF COMPLIANCE

I certify that this brief conforms to Federal Rule of Appellate Procedure 32(a)(7)(B) for a brief using a proportional serif font of 14-point typeface or larger. The length of this brief is 13,951 words, and it was prepared using Microsoft Word 2003.

DATED: January 22, 2007.

/S/ Steven J. Boranian
Steven J. Boranian
REED SMITH LLP
1999 Harrison Street
Suite 2400
Oakland, CA 94610
(510) 763-2000