# EXHIBIT 23

No. 06-3860

# In the United States Court of Appeals for the Eighth Circuit

# In re St. Jude Medical, Inc. Silzone® Heart Valve Products Liability Litigation

Lester Grovatt, Beatrice Bailey, Levy D. Redden, Bonnie L. Sliger, and Joe W. Sanchez, on behalf of themselves and all others similarly situated,
Plaintiffs and Appellees,

vs.

St. Jude Medical, Inc.,
Defendant and Appellant.

## APPELLANT'S REPLY BRIEF

From a Class Certification Order by the
United States District Court for the District of Minnesota
Multidistrict Litigation No. 01-1396 (JRT/FLN)
The Honorable John R. Tunheim

Steven M. Kohn
James C. Martin
Steven J. Boranian
REED SMITH LLP
1999 Harrison Street
Suite 2400
Oakland, CA 94612
Telephone: (510) 763-2000
Facsimile: (510) 273-8832

Tracy J. Van Steenburgh
HALLELAND, LEWIS, NILAN, & JOHNSON, P.A.
600 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 338-1838
Facsimile: (612) 338-7858

Eric J. Magnuson
RIDER BENNETT, LLP
33 South Sixth Street
Suite 4900
Minneapolis, MN 55402
Telephone: (612) 340-8900
Facsimile: (612) 340-7900

*Attorneys for Defendant and Appellant*
*St. Jude Medical, Inc.*

# TABLE OF CONTENTS

Page

I INTRODUCTION ........................................................................1

II ARGUMENT ..............................................................................3

A. Plaintiffs Cannot Avoid The Mandate Of This Court's Prior Opinion Either By Recharacterizing Their Request For Medical Monitoring Relief Or By Asserting (Again) That St. Jude Medical's Forum Contacts Alone Support Universal Application Of Minnesota Law ..............................3

1. The District Court's Order Certifying A Class Of The Same People Seeking The Same Relief As The Already-Reversed Medical Monitoring Class Violates The Law Of This Case ..............................................3

2. Plaintiffs' Argument That Minnesota Law Can Apply To The Entire Nationwide Class Based Only On St. Jude Medical's Forum Contacts Is Likewise Contrary To The Law of This Case ..........................................8

3. Plaintiffs' Cited Authorities And Those Of Their Amici Do Not Avoid The Dispositive Effect Of Law-Of-The-Case Principles On Plaintiffs' Proposed Nationwide Medical Monitoring Class ......................14

B. The District Court's Projection Of A Medical Monitoring Remedy Into Numerous States That Do Not Recognize Such Relief Violates Core Principles Of Federalism – An Error That Is Compounded By Plaintiffs' First-Time-On-Appeal Request To Apply A "Fraud On The Market" Theory ...........................................................................19

C. Plaintiffs' Treatment Of Minnesota's Choice-Of-Law Rules Overstates Minnesota's Interest In Applying Its Law To Out-Of-State Class Members And Fails To Overcome The Need To Apply The Law Of All Fifty States To The Class Members' Claims ........ 22

D. Even If Minnesota Law Could Apply To The Entire Nationwide Class, Plaintiffs Still Cannot Meet Their Burden To Prove That Their Proposed Class Meets Rule 23's Requirements ........ 26

1. Plaintiffs Characterize Their Case As A Consumer Fraud Class, But Continue To Ignore That Individual Issues Will Predominate In Proving The Elements Of The Class Members' Consumer Fraud Claims ........ 27

2. Plaintiffs' Belated Attempt To Satisfy Rule 23 Ignores Key Issues And Underscores Why The Certified Class Does Not Meet Rule 23's Requirements ........ 31

III CONCLUSION ........ 38

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 3, 38

*In re American Medical Sys.*,
75 F.3d 1069 (6th Cir. 1996) .......... 22

*Barbara's Sales, Inc. v. Intel Corp.*,
No. 5-05-0078, 2006 WL 2105656 (Ill. App. July 25, 2006) .......... 17

*Barnes v. American Tobacco Co.*,
161 F.3d 127 (3d Cir. 1998) .......... 5

*In re Baycol Prods. Litig.*,
218 F.R.D. 197 (D. Minn. 2003) .......... 5, 17, 22

*Blades v Monsanto*,
400 F.3d 562 (8th Cir. 2005) .......... 33

*In re Bridgestone/Firestone*,
288 F.3d 1012 (7th Cir. 2002) .......... 24

*Chin v. Chrysler Corp.*,
182 F.R.D. 448 (D.N.J. 1998) .......... 24, 26

*In re Computer Memories Securities Litigation*,
111 F.R.D. 675 (N.D. Cal. 1986) .......... 10, 11

*Dal Ponte v. American Mortg. Exp. Corp.*,
No. 04-2152 (JEI), 2006 WL 2403982 (D.N.J. Aug. 17, 2006) .......... 17-18

*Eisen v. Carlisle & Jacquelin et al.*,
417 U.S. 156 (1974) .......... 32

*Elizabeth M. v. Montenez*,
458 F.3d 779 (8th Cir. 2006) .......... 33

*Elkins v. Equitable Life Ins.*,
No. CivA96-296-Civ-T-17B, 1998 WL 133741
(M.D. Fla. Jan. 27, 1998) ........................................ 17

*Erie Railroad Co. v. Tompkins*,
304 U.S. 64 (1938) ........................................ 19, 20, 21, 22

*Ferens v. John Deere Co.*,
494 U.S. 516 (1990) ........................................ 13

*Ferris, Baker Watts, Inc. v. Deutsche Bank Sec. Ltd.*,
Nos. 02-3682, 02-4845, 2004 WL 2501563
(D. Minn. Nov. 5, 2004) ........................................ 16

*Flynn v. American Home Prods. Corp.*,
627 N.W.2d 342 (Minn. Ct. App. 2001) ........................................ 30-31

*In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*,
174 F.R.D. 332 (D.N.J 1997) ........................................ 24, 26

*Fu. v. Fu*,
733 A.2d 1133 (N.J. 1999) ........................................ 24

*Georgine v. Amchem Prods.*,
83 F.3d 610 (3d Cir. 1996) ........................................ 7, 14

*In re Great Southern Life Ins. Co. Sales Practices Litig.*,
192 F.R.D. 212 (D. Tex. 2000) ........................................ 17

*Group Health Plan, Inc. v. Philip Morris Inc.*,
621 N.W.2d 2 (Minn. 2001) ........................................ 4, 27, 31, 37

*Group Health Plan, Inc. v. Philip Morris USA, Inc.*,
344 F.3d 753 (8th Cir. 2003) ........................................ 29

*Grove v. Principal Mut. Life Ins. Co.*,
14 F. Supp. 2d 1101 (D. Iowa 1998) ........................................ 17

*Gruber v. Price Waterhouse*,
117 F.R.D. 75 (E.D. Pa. 1987) ........................................ 16

*Heindel v. Pfizer, Inc.*,
381 F. Supp. 2d 364 (D.N.J. 2004) ........................................ 24

*Hughes v. Wal-Mart Stores, Inc.*,
250 F.3d 618 (8th Cir. 2001) .......................................... 22, 24

*International Union v. Merck & Co.*,
894 A.2d 1136 (N.J. Super. Ct. 2006) .......................................... 18

*Jepson v. General Casualty Co.*,
513 N.W.2d 467 (Minn. 1994) .......................................... 25

*Jones ex rel. Jones v. Winnebago Indus., Inc.*,
460 F. Supp. 2d 953 (N.D. Iowa 2006) .......................................... 15

*Karas v. American Family Ins. Co.*,
33 F.3d 995 (8th Cir. 1994) .......................................... 22

*Klein v. Arkoma Prod. Co.*,
73 F.3d 779 (8th Cir. 1996) .......................................... 7-8

*Lerch v. Citizens First Bancorp, Inc.*,
144 F.R.D. 247 (D.N.J. 1992) .......................................... 16

*Lobo Exploration Co. v. Amoco Prod. Co.*,
991 P.2d 1048 (Okla. Civ. App. 1999) .......................................... 18

*Martin v. Heinold Commodities, Inc.*,
510 N.E.2d 840 (Ill. 1987) .......................................... 16

*McLennan v. American Eurocopter Corp.*,
245 F.3d 403 (5th Cir. 2001) .......................................... 15

*Mooney v. Allianz Life Insurance Co.*,
No. 06-545, 2007 WL 128841 (D. Minn. Jan. 12, 2007) .......................................... 29, 30

*Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.*,
604 N.W.2d 91 (Minn. 2000) .......................................... 22, 23

*Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.*,
111 F.3d 1386 (8th Cir. 1997) .......................................... 15

*In re ORFA Sec. Litig.*,
654 F. Supp. 1449 (D.N.J. 1987) .......................................... 17

*Perez v. Metabolife Int'l, Inc.*,
218 F.R.D. 262 (S.D. Fla. 2003) ........................................................6

*Peterson v. BASF Corp.*,
618 N.W.2d 821 (Minn. App. 2000) ..........................................18

*Phillips Petroleum v. Shutts*,
472 U.S. 797 (1985)......................................................*passim*

*In re Pizza Time Theatre Sec. Litig.*,
112 F.R.D. 15 (N.D. Cal. 1986).......................................... 16-17

*In re Prempro Prods Liab. Litig.*,
230 F.R.D. 555 (E.D. Ark. 2005) ..........................................25

*In re Rezulin*,
210 F.R.D. 61 (S.D.N.Y 2002) ........................................ 6, 7, 26

*Simon v. Philip Morris, Inc.*,
124 F. Supp. 2d 46 (E.D.N.Y. 2000) ................................... 25, 26

*In re St. Jude Medical, Inc. Silzone Heart Valve Litig.*,
425 F.3d 1116 (8th Cir. 2005) ..........................................*passim*

*Thompson v. American Tobacco Co.*,
189 F.R.D. 544 (D. Minn. 1999) .......................................21, 22

*In re Vioxx Prods. Liab. Litig.*,
239 F.R.D. 450 (E.D. La. 2006).............................................24

*In re Vioxx Prods. Liab. Litig.*,
MDL No. 1657, 2007 WL 879078 (E.D. La. Mar. 22, 2007).............13

*In re Warfarin Sodium Antitrust Litig.*,
212 F.R.D. 231 (D. Del. 2002) ..............................................18

*Washkoviak v. Student Loan Mktg. Ass'n*,
900 A.2d 168 (D.C. 2006) ....................................................16

*Wershba v. Apple Computer, Inc.*,
110 Cal. Rptr. 2d 145 (Ct. App. 2001) .....................................18

*Wiegand v. Walser Automotive Groups, Inc.*,
683 N.W.2d 807 (Minn. 2004) .......... 37

*Yarrington v. Solvay Pharmaceuticals, Inc.*,
No. A05-2288, 2006 WL 2729463 (Minn. Ct. App. Sept. 26, 2006) .......... 37

*Zehel-Miller v. AstraZeneca Pharmaceuticals, LP*,
223 F.R.D. 659 (M.D. Fla. 2004) .......... 6, 25

## STATUTES AND RULES

28 U.S.C. § 2071 *et seq.* (the Rules Enabling Act) .......... 19

Fed. R. Civ. P. 23 .......... *passim*

## OTHER AUTHORITIES

Larry Kramer, *Choice of Law in Complex Litigation*, 71 N.Y.U. L. Rev. 547 (1996) .......... 15

Robert A. Sedler and Aaron D. Twerski, *The Case Against All Encompassing Federal Mass Tort Legislation: Sacrifice Without Gain*, 73 Marq. L. Rev. 76 (1989) .......... 15

Robert A. Sedler, *The Complex Litigation Project's Proposal for Federally-Mandated Choice of Law in Mass Torts Cases: Another Assault on State Sovereignty*, 54 La. L. Rev. 1085 (1994) .......... 15

# I

# INTRODUCTION

St. Jude Medical's arguments for reversal are built on well-settled principles reflected in numerous cases that underscore the impropriety of what occurred below. Simply put, the district court's order certifying a nationwide class of Silzone® heart valve recipients under one state's consumer protection statutes cannot be reconciled with this Court's prior opinion, with constitutional limits on the projection of Minnesota's law beyond its boundaries, with choice-of-law principles, or with Rule 23's most basic requirements. Each one of these legal principles, in turn, compels reversal of plaintiffs' certified class.

The response of plaintiffs (and their amici) to St. Jude Medical's arguments for reversal is best described as "de ja vu all over again." They seek certification of the *same* class seeking the *same* medical monitoring relief that this Court previously held presented too many factual issues to support class certification. They advance the *same* choice-of-law analysis based on the *same* cases that this Court previously found to be constitutionally insufficient. And, while they belatedly attempt to address Rule 23's requirements on appeal, plaintiffs have *no case* on point that justifies certification under Minnesota law of a nationwide consumer fraud class seeking medical monitoring relief for uninjured people implanted with an FDA-approved

medical device.[1] Plaintiffs' request for class certification likewise finds *no support* in the record even if Minnesota law somehow could apply nationwide.

Lacking support in this Court's prior opinion, the relevant law, or the record, plaintiffs and their amici retreat to an attack on St. Jude Medical and its product. They further point to the alleged judicial efficiencies and purported benefits that would be achieved by providing a complex and invasive medical monitoring protocol for those who already are being monitored by their own physicians.

But the class certification question before this Court does not turn on whether St. Jude Medical allegedly should be punished for making a bad product or whether it would be desirable in the abstract to provide any perceived benefits under Minnesota's consumer fraud statute. Thus, while St. Jude Medical vigorously disputes plaintiffs' characterization of its conduct and its product, the place for these sorts of merits-based arguments is in the ongoing lawsuits that St. Jude Medical is defending. In addition, a unanimous

---

[1] Although this Court's prior opinion left no class certified, plaintiffs made the strategic decision below to treat Rule 23 as irrelevant. (Appellant's Appendix ("AA") 3551-64) By that election, they now have presented this Court with *no record* on which to affirm the order granting class certification. In any event, the record made by St. Jude Medical below, which gave due consideration to Rule 23, establishes that the Rule's requirements cannot be met. (AA2846-3914) The factual complexity inherent in the medical monitoring claims that this Court previously held foreclosed class certification indisputably remains. The same goes for the proof applicable to the legal elements of the plaintiffs' consumer fraud claim as well. (Appellant's Opening Brief ("AOB") at 48-52; AA1747-48,1787-1817,1837,3436-72)

Supreme Court made it clear in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621-22 (1997), that notions of judicial efficiency or professed class member benefits, no matter how compelling, cannot displace rigorous adherence to the specific requirements of Rule 23.

On the relevant question – can the class certified below meet the requirements of Rule 23 – after seven years of litigation, it is apparent that there is no basis for certification of a nationwide class in these heart valve cases. St. Jude Medical urges this Court to reverse the ruling below and so hold.

## II

## ARGUMENT

### A. Plaintiffs Cannot Avoid The Mandate Of This Court's Prior Opinion Either By Recharacterizing Their Request For Medical Monitoring Relief Or By Asserting (Again) That St. Jude Medical's Forum Contacts Alone Support Universal Application Of Minnesota Law

#### 1. The District Court's Order Certifying A Class Of The Same People Seeking The Same Relief As The Already-Reversed Medical Monitoring Class Violates The Law Of This Case

This Court reversed a class of uninjured Silzone heart valve recipients seeking future medical monitoring relief because the class "presents a myriad of individual issues" making class certification "improper." *In re St. Jude Medical, Inc. Silzone Heart Valve Litig.*, 425 F.3d 1116, 1122 (8th Cir.

2005). Despite this clear holding, the district court certified another class comprising the same individuals (uninjured Silzone valve recipients) seeking the same relief (future medical monitoring). Given these core similarities, there is no way to reconcile this certified class with this Court's holding that such a class is not certifiable.

The attempts of plaintiffs and their amici to distinguish the currently certified class from the already-reversed class rely on fiction, not on fact. Plaintiffs' major theme is that they seek certification of a "consumer fraud class seeking medical monitoring relief" under Rule 23(b)(3), which supposedly is "different" from the prior "class asserting a medical monitoring claim" under Rule 23(b)(2). (Appellees' Br. at 24) According to plaintiffs, that distinction frees them (and the district court) from the force and effect of this Court's prior holding. Plaintiffs' amicus curiae AARP sounds a similar theme. (AARP Br. at 26-27)

But neither plaintiffs nor their amici ever adequately explain how a consumer fraud class "seeking medical monitoring relief" differs in any meaningful way from a common-law class "asserting a medical monitoring claim." In both cases, the sought-after relief is medical monitoring. In both cases, the need for such relief is an essential element plaintiffs would have to prove as part of their case-in-chief. And in both cases, plaintiffs would have to prove an alleged injury and legal causation before any such relief could be awarded. *See Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 13-14 (Minn. 2001) (elements of consumer protection claim are (1) conduct

offending one of the statutes, (2) an actual injury, and (3) a causal nexus between the two). It is the undisputed need for that proof – on the issues of injury and causation – before any sought-after medical monitoring could be provided that this Court held gave rise to more individualized issues than class adjudication could tolerate.[2]

The efforts of plaintiffs and their amici to distinguish between a Rule 23(b)(3) class and one brought under Rule 23(b)(2) fare no better, since the need for individualized determinations forecloses class certification just as readily under either rule. Plaintiffs correctly state that Rule 23(b)(2) requires "cohesiveness," while Rule 23(b)(3) requires that individual issues predominate and that a class action be the superior resolution method. The two standards, however, are comparable, if not the same. *See Barnes v. American Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998) ("While 23(b)(2) class actions have no predominance or superiority requirements, it is well established that the class claims must be cohesive."). And, as a Minnesota federal district court recently has held, the individualized issues raised by requests for medical monitoring relief defeat class certification under both standards. *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 213 (D. Minn. 2003) (holding medical monitoring class could not be certified under 23(b)(2) or

---

[2] The initial class certification proceedings, as this Court found, exposed the myriad factual complexities generated by a request for medical monitoring relief. 425 F.3d at 1122. The protocol provided by plaintiffs' expert in their renewed class certification motion gives rise to more complexity, not less, and simply confirms the soundness of this Court's prior holding. (AA1747-48,1787-1817,1837; AOB11)

23(b)(3) because "[a]s the individual issues undermine the cohesiveness of a (b)(2) certification, such individual issues also predominate over the common issues rendering class certification under (b)(3) inappropriate"); *see also Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 267 (S.D. Fla. 2003) (denying certification of multistate medical monitoring class under both 23(b)(2) and (3) because of differences in state law and diverse issues of liability and causation); *In re Rezulin*, 210 F.R.D. 61, 66-67 (S.D.N.Y 2002) (denying certification of medical monitoring class under Rule 23(b)(3) because individual legal and factual issues would predominate); *Zehel-Miller v. AstraZeneca Pharmaceuticals, LP*, 223 F.R.D. 659, 663-64 (M.D. Fla. 2004) (denying certification of nationwide medical monitoring class where there were overwhelming legal and factual issues).

For that same reason, labeling the medical monitoring relief as simply a "remedy" or just "damages" is unpersuasive as well. For Silzone valve recipients, any request for medical monitoring, no matter how couched, presents the multiple individualized class-defeating medical treatment issues that this Court previously identified. Thus, applying the "remedy" or "damages" label does not reduce or eliminate the individualized inquiries that must be made *before* determining either the need for any medical monitoring relief or the nature of the relief itself. Plaintiffs' expert's own monitoring protocol confirms as much. (AA1747-48,1787-1817,1837) And, as the

Court's prior opinion and the foregoing authorities provide, it is this sort of factual complexity that is incompatible with class certification.[3]

Plaintiffs finally maintain, as they did below, that if this Court intended its medical monitoring holding to extend beyond the (b)(2) class, it would have said so in its prior opinion with respect to the consumer protection class. (Appellees' Br. at 12) But as St. Jude Medical noted in its opening brief [AOB16-17], this Court prudently did not reach that issue, leaving it to the district court to address it if necessary, depending on the outcome of a proper choice-of-law analysis.[4] Once the district court (erroneously to be sure) found the choice-of-law issue to be unproblematic, it then had to deal with this Court's holding that the complexities of proof presented by a request for medical monitoring relief failed Rule 23's requirements. Because this Court had addressed that question directly, its reasoning could not be ignored under controlling law of the case principles. *Klein v. Arkoma Prod. Co.*, 73 F.3d

---

[3] Indeed, no matter what the context, where both the existence and amount of the "remedy" or "damage" are disputed matters of fact, as they undisputedly are here, class certification is not available. *Georgine v. Amchem Prods.*, 83 F. 3d 610, 620-29 (3d Cir. 1996) (denying class certification due to individual causation, comparative fault, and damages issues), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *In re Rezulin*, 210 F.R.D. at 66-67 (same).

[4] The Court's prudential limitation in its reversal of the consumer protection class was especially appropriate given the class certification order under review at the time. The district court had not yet made any specific findings on whether medical monitoring relief could be provided under Minnesota's consumer protection statutes. (AA0521-0560,0861-0886,1204-1216) Nor was it clear what relief plaintiffs might seek, or for whom, in any renewed attempt to certify a consumer protection class.

779, 784-85 (8th Cir. 1996) (reversing district court because it failed to follow the law of the case and stating when a higher court has decided an issue of law a lower court may not feel free to "reject [its] legal conclusion.")

In sum, because of these individualized inquiries a request for medical monitoring relief inevitably engenders, no amount of repackaging can blunt the force and effect of this Court's reasoning on why a class of uninjured heart valve patients seeking medical monitoring relief cannot be certified under Rule 23. Reversal is warranted here for this reason alone.

**2. Plaintiffs' Argument That Minnesota Law Can Apply To The Entire Nationwide Class Based Only On St. Jude Medical's Forum Contacts Is Likewise Contrary To The Law of This Case**

In reversing the prior class, this Court concluded that "protection of out-of-state parties' constitutional rights requires an inquiry into their claims' contacts with Minnesota and their individual states laws *before* concluding Minnesota law may apply." 425 F.3d at 1120 (emphasis added). The Supreme Court also has declared that "[w]hen considering fairness in this [choice-of-law] context, an important element is the expectation of the parties." *Phillips Petroleum v. Shutts*, 472 U.S. 797, 822 (1985). Regarding the parties' expectations, this Court observed – on virtually the same record as presented here – that "there is no indication that out-of-state parties 'had any idea that [Minnesota] law could control' potential claims when they received their Silzone-coated valves." 425 F.3d at 1120 (quoting *Shutts*, 472 U.S. at 822). Finally, by remanding for the proper analysis of "contacts between

Minnesota and each plaintiff class member's claims," the Court intimated that an individualized analysis of each class member's claim was in fact required, without regard to the burden that the analysis might impose. *Id.*; *see also Shutts*, 472 U.S. at 821 (choice-of-law calculus "is not altered by the fact that it may be more difficult or burdensome to comply with the constitutional limitations because of the large number of transactions").

This Court's reading of *Shutts* is clear. First, St. Jude Medical's Minnesota contacts are not dispositive of whether Minnesota law constitutionally can be applied to the claims of the absent class members. Second, what is critical to that analysis is consideration of whether the absent class members, at the time of their implants, would have expected Minnesota law to be applied to their own heart valve claims. And third, the fact that this class-member-driven inquiry might be burdensome or difficult is not a reason to avoid it. Before a class representative can act as a proxy for someone else's professed interests, a court must be satisfied that those particularized interests are accounted for. Due process demands no less.

Despite these directives, neither plaintiffs nor the district court saw fit to directly address the expectations or interests of the out-of-state class members. (AOB30-34) Rather, the district court concluded, and plaintiffs continue to insist now, that any "expectations" the out-of-state class members might have

regarding the application of Minnesota law are taken care of by St. Jude Medical's contacts with Minnesota.[5] (AA3653-57)

If the reasoning provided by plaintiffs, and embraced by the district court, looks familiar, it is not surprising. It is the same analysis, emphasizing the same contacts, that this Court confronted previously when it reversed the prior class certification order. Plaintiffs also cite numerous cases purportedly approving the one-sided, defendant-forum-contacts analysis they employ. (*See* discussion *infra* pp. 14-18) These authorities too should look familiar. They largely are the same cases that plaintiffs and their amici offered to justify the district court's previous choice of Minnesota law. But none of these authorities supports plaintiffs' attempt to marginalize, and ultimately ignore, the absent class members' own expectations in cases like this one.[6]

---

[5] In the court below, plaintiffs did not provide any direct evidence of the absent class members' *expectations at the time of implant* regarding what law would govern any claim arising from their heart valve procedures. For its part, St. Jude Medical both briefed and argued the facts that would influence those expectations and explained their significance to the required choice-of-law analysis. (AOB30-34; AA0148-0241,0589-0651,2846-2914)

[6] Plaintiffs rely mainly on *In re Computer Memories Securities Litigation*, 111.F.R.D. 675 (N.D. Cal. 1986), for the proposition that "general" contacts with one state can meet constitutional demands, without analysis of individual class members or their claims. But that case does not insulate plaintiffs from this Court's mandate. First, although class certification was contested in that case, the defendants did not request that the court apply the law of another jurisdiction. *Id.* at 685. The opinion accordingly neither addresses nor considers the controlling class member expectations analysis mandated by *Shutts*. Second, the class certification order was conditional, and the district court expressly noted that "[o]bviously, if the defendants, or for that matter

(continued...)

To meet *Shutts*' constitutional threshold, plaintiffs were obligated to supply evidence about what law the class members would have expected to apply to any kind of claim arising from the implantation of their heart valves at the time of implant. That inquiry cannot fairly be answered by adding up – after the fact – an array of St. Jude Medical's contacts with Minnesota and then speculating – after the fact – that the class members therefore could have expected a consumer fraud lawsuit to be brought at some later time in Minnesota under Minnesota law. If that was all there is to it, the defendant's Kansas contacts would have carried the day in *Shutts*. (AOB32-33)

Nor is there any basis in this record to accept plaintiffs' after-the-fact speculation as a substitute for the evidence needed to meet *Shutts'* expectations analysis. Particularly with respect to the medical treatment issues at the heart of this matter, it is far more likely that, at the time of implant, a class member would expect a claim to be resolved at home under local law. (AOB30-34; AA2846-2914)

---

(…continued)

the plaintiffs, subsequently raise choice-of-law questions that render this action inappropriate for class treatment, the Court will decertify the class or make other necessary modifications in the structure of the litigation." 111 F.R.D. at 686 n.8. Third, like many of plaintiffs' authorities, *Computer Memories* is a securities case which, as shown below, creates an entirely different set of expectations from those raised by these heart valve cases. Finally, and most importantly, *Computer Memories* is not binding authority on this Court and it predates, by nineteen years, this Court's mandate that "individualized choice-of-law analysis must be applied to each plaintiff's claim in a class action." 425 F.3d at 1120.

At the time of implant, a prospective class member would be unlikely to know who made his or her heart valve and equally unlikely to have heard any representations from the manufacturer regarding its use. (AA3432,3475,3480) These factors render the contacts relied on by plaintiffs and the district court largely, if not completely, irrelevant to the expectations analysis contemplated by *Shutts* and this Court. On the other hand, there is every reason to conclude that a prospective class member who had a problem with his or her valve implicating the need for medical treatment would expect that controversy to be resolved in a local court under local law. Mr. Grovatt's situation was, in fact, evocative of why a further inquiry was necessary. He brought his lawsuit in his home state of New Jersey, asserting the application of New Jersey law. (AOB31; AA1-23)

Plaintiffs further contend that St. Jude Medical's analysis of class member expectations goes beyond what due process requires because the district court did not have to "discuss" each class member. According to plaintiffs, the district court only had to consider the "claims asserted" by each class member. (Appellees' Br. at 26) But plaintiffs' distinction makes no real difference here, since the district court gave no apparent consideration, even in general terms, to any individual class member or any class member's expectations regarding their potential claims at the time of implant – not even Mr. Grovatt's. Fundamentally, however, *Shutts* requires a balancing of interests, with particular focus on what interests there might be on the part of the absent class members in litigating in their home states as opposed to the

forum the class representative has chosen. The failure to address those class member interests, even generally, does not comply with *Shutts*.

The same goes for plaintiffs' repeated contention that St. Jude Medical somehow conceded that Minnesota law should apply to all Silzone-related claims when it opposed MDL consolidation, but offered Minnesota as a suitable transferee district in the event an MDL was created. This contention too misses the point. First, the need for individualized choice-of-law analysis is grounded in the absent class members' constitutional rights, which St. Jude Medical cannot waive, especially in a pleading filed in a different forum addressing a decidedly different issue. Second, it is black-letter law that MDL transfer has no impact on choice of law. An MDL transferee court sitting in diversity has to apply the substantive law of the forum where the action was originally filed. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2007 WL 879078, at *3 (E.D. La. Mar. 22, 2007) (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 524 (1990)). As a result, in urging (as an alternative) that Minnesota would be an appropriate transferee district, St Jude Medical was *not* commenting in any way on what law ultimately should apply. Rather, it was suggesting Minnesota as a convenient forum for pretrial proceedings, such as discovery. Third, at every juncture in this litigation, St. Jude Medical has urged the need to apply each claimant's home state law when attempting to adjudicate the class members' claims, thereby foreclosing any attempt at class certification. (AA0148-0241,0589-0651,2846-2914)

On this record, there is no principled way to suggest that the constitutional due process inquiry this Court required as part of the relevant choice-of-law analysis has been satisfied and thus no basis on which to hold that Minnesota law can be applied uniformly to all the class members. Under recognized principles of law of the case, the failure to comply with this Court's mandate compels a reversal without the need for any further inquiry. And any further inquiry simply confirms that the Court got it right the first time, and the same result must obtain here.

### 3. Plaintiffs' Cited Authorities And Those Of Their Amici Do Not Avoid The Dispositive Effect Of Law-Of-The-Case Principles On Plaintiffs' Proposed Nationwide Medical Monitoring Class

Even if this Court were to ignore the law of this case and replow the ground it covered before, and there is no reason for it to do so, none of plaintiffs' (or their amici's) arguments or authorities compel a different result. To start with, not one of these authorities purports to override (nor could it override) the constitutional imperative behind the required class member-specific expectations analysis. That constitutional imperative unambiguously requires analysis of "contacts between Minnesota and each plaintiff class member's claims." 425 F.3d at 1120; *see also Georgine*, 83 F.3d at 627 (class certification scrutiny must include "individualized choice of law analysis to each plaintiff's claims"). Put another way, none of plaintiffs' cases suggests that this Court was wrong to include the expectations and interests of

the individual absent class members in the choice-of-law analysis in these heart valve cases.[7]

In addition, most of plaintiffs' cited authorities fall into three categories that are distinguishable from these heart valve cases and provide no useful guidance on the choice-of-law issue. To begin with, plaintiffs' cite to several *individual* actions, as opposed to *class* actions.[8] Those cases are not even a

---

[7] Several commentators echo this Court's view that any attempt to apply a single state's law to a nationwide class action raises significant constitutional concerns, requiring an evaluation of the interests of the absent class members. Robert A. Sedler and Aaron D. Twerski, *The Case Against All Encompassing Federal Mass Tort Legislation: Sacrifice Without Gain*, 73 Marq. L. Rev. 76, 79-82 (1989) (noting that "[constitutional] limits become restrictive when an effort is made to apply the substantive law of a 'single designated jurisdiction' in a 'mass tort' case" and "*Shutts* makes clear, . . .[that] the fact that a 'nationwide class action' was involved is irrelevant with respect to constitutional limitations on selection of the applicable law. The constitutional limitations on selection of a state's law apply to the claim of each individual party"); Larry Kramer, *Choice of Law in Complex Litigation*, 71 N.Y.U. L. Rev. 547, 575 (1996) (citing Shutts and arguing against single law approach for complex litigation based on observation that "an individual's rights should not change just because his or her claim is adjudicated together with the claims of others"); Robert A. Sedler, *The Complex Litigation Project's Proposal for Federally-Mandated Choice of Law in Mass Torts Cases: Another Assault on State Sovereignty*, 54 La. L. Rev. 1085, 1090-92 (1994) (detailing constitutional impediments to applying a single state's law in mass tort context and observing "[t]he 'mass' nature of the tort has nothing to do with the consequences of the tort for the individual victim or with the interest of the victims' home states in applying their law to determine the rights of the victims.").

[8] *E.g.*, *Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386 (8th Cir. 1997); *Jones ex rel. Jones v. Winnebago Indus., Inc.*, 460 F. Supp. 2d 953 (N.D. Iowa 2006); *McLennan v. American Eurocopter Corp.*, 245 F.3d 403 (5th Cir. 2001).

rough approximation of the nationwide class pursued here, and they do not implicate the same due process concerns that this nationwide class action raises.

As noted, in the class action context, due process calls for an individualized analysis of each class member's claims to protect the rights of the absent class members, not those of a plaintiff who voluntarily elects to sue in another jurisdiction. The concern is that the absent class members' claims potentially will be adjudicated by someone they have not selected to represent them and without their participation. It is this litigation-by-proxy element inherent in class litigation that lies behind the class member expectation analysis required by *Shutts*. Indeed, in one case that plaintiffs prominently cite, the district court specifically noted that it was not considering class certification and that it was expressing no opinion on "choice of law analysis made within the context of a motion for class action certification brought on behalf of a nationwide class." *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 176 n.11 (D.C. 2006).

The vast bulk of plaintiffs' (and their amici's) remaining citations are to cases involving securities fraud or the purchase of other financial products, which likewise are inapposite.[9] Securities cases involve the knowing purchase

---

[9] *E.g.*, *Ferris, Baker Watts, Inc. v. Deutsche Bank Sec. Ltd.*, Nos. 02-3682, 02-4845, 2004 WL 2501563 (D. Minn. Nov. 5, 2004); *Lerch v. Citizens First Bancorp, Inc.*, 144 F.R.D. 247 (D.N.J. 1992); *Martin v. Heinold Commodities, Inc.*, 510 N.E.2d 840 (Ill. 1987); *Gruber v. Price Waterhouse*, 117 F.R.D. 75 (E.D. Pa. 1987); *In re Pizza Time Theatre Sec. Litig.*, 112

(continued...)

of a security from an identified selling defendant. In such cases, the interests of the class members at the time of purchase with respect both to the alleged violations and the specific relief sought can be perceived as uniform and aligned. In these heart valve cases, by comparison, there is no comparable course of dealing nor cohesiveness of interests. The heart valve patients have no direct contact with the manufacturer of the valve and are unlikely to know who manufactured it. Nor is it likely that the uninjured valve recipients' interests at the time of their implants are aligned with respect to their potential claims against the defendant or the relief sought. And, as already noted, with respect to the medical monitoring relief pursued here, the paramount interests lie in the state where the valve was implanted each plaintiff resides, thereby giving added impetus for the class member-by-class member analysis *Shutts* mandates. *See, e.g., In re Baycol*, 218 F.R.D. at 207 (states of plaintiffs' residences where product was ingested and alleged injury occurred had greatest interest in adjudicating claims for medical monitoring).

Plaintiffs' remaining authority in the consumer fraud context consists of five cases, none of which provides a valid analogy or otherwise supports the district court's order.[10] (Appellees' Br. at 27 n.22) None is a published

(...continued)

F.R.D. 15 (N.D. Cal. 1986); *In re ORFA Sec. Litig.*, 654 F. Supp. 1449 (D.N.J. 1987); *In re Great Southern Life Ins. Co. Sales Practices Litig.*, 192 F.R.D. 212 (D. Tex. 2000); *Grove v. Principal Mut. Life Ins. Co.*, 14 F. Supp. 2d 1101 (D. Iowa 1998); *Elkins v. Equitable Life Ins.*, No. CivA96-296-Civ-T-17B, 1998 WL 133741 (M.D. Fla. Jan. 27, 1998).

[10] *E.g., Barbara's Sales, Inc. v. Intel Corp.*, No. 5-05-0078, 2006 WL 2105656 (Ill. App. July 25, 2006); *Dal Ponte v. American Mortg. Exp. Corp.*,

(continued...)

federal opinion. More importantly, none of them involves claims dealing with the expectations of individuals implanted with heart valves or requesting medical monitoring relief. Like the cited securities cases, all of them deal solely with economic damages, not medical treatment. Finally, to the extent that any of the courts certified or affirmed a nationwide class asserting claims under a single state's law over a defendant's objection – and not all of them did[11] – such a holding cannot be reconciled with this Court's controlling mandate.

In the final analysis, plaintiffs' and amici's rehash of previously cited authorities and arguments cannot cure the fundamental failing in this record on the choice-of-law issue. This Court reversed certification of the prior nationwide class because there was "no indication" that absent class members had any idea that Minnesota law could apply to lawsuits arising from their

(…continued)

No. 04-2152 (JEI), 2006 WL 2403982 (D.N.J. Aug. 17, 2006); *Wershba v. Apple Computer, Inc.*, 110 Cal. Rptr. 2d 145 (Ct. App. 2001); *Peterson v. BASF Corp.*, 618 N.W.2d 821 (Minn. App. 2000); *International Union v. Merck & Co.*, 894 A.2d 1136 (N.J. Super. Ct. 2006) (appeal pending). Plaintiffs cite two other consumer protection cases (Appellees' Br. at 55 n.44) for a different proposition; these cases however are distinguishable on the same grounds set forth above. *See Lobo Exploration Co. v. Amoco Prod. Co.*, 991 P.2d 1048 (Okla. Civ. App. 1999); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002).

[11] *Wershba v. Apple Computer, Inc.*, 110 Cal. Rptr. 2d at 153, involved certification of a settlement class, where the parties agreed on the application of California law.

heart valve implantation. Those "indications" still are not present, and the same result should follow now.

**B. The District Court's Projection Of A Medical Monitoring Remedy Into Numerous States That Do Not Recognize Such Relief Violates Core Principles Of Federalism – An Error That Is Compounded By Plaintiffs' First-Time-On-Appeal Request To Apply A "Fraud On The Market" Theory**

Plaintiffs and their amici are content to describe the district court's order as a routine application of Rule 23. In considering the propriety of that suggestion, it is worth remembering what plaintiffs have asked the district court to do under Rule 23's auspices: Use Minnesota's consumer fraud statutes to export medical monitoring relief under a purportedly "relaxed" "fraud on the market" standard to claimants in every other United States jurisdiction. Thus, whether plaintiffs or their amici admit it or not, they are asking a district court to use Rule 23 to "federalize" the law of the several states in a novel and unprecedented way, without regard for any other state's expressions of its own public policy or its own remedial interests.

In response to St. Jude's objection, plaintiffs make the facile argument (as they did in the last appeal) that Minnesota's statutes allow "any person" to sue, thus making Minnesota law available to all who care to invoke it. (Appellees' Br. at 55-56) This Court expressly rejected that argument when it held that a state-law standing provision cannot overrule federal law, which includes the Constitution, the Rules Enabling Act, and *Erie Railroad Co. v. Tompkins*. *See* 425 F.3d at 1121 (citing the Supremacy Clause and holding

that "consumer protection standing statutes do not extinguish federal constitutional rights or relieve courts from performing the analysis required to safeguard those rights").

Here, the class certification order runs afoul of the limits imposed by the *Erie* doctrine on several levels. For example, Minnesota's consumer fraud statutes require proof of actual injury to recover damages, which should make medical monitoring relief unavailable to this entire class of *uninjured* heart valve recipients. The district court's certification order, however, presumes that medical monitoring relief *is* available under Minnesota's statute, which expands Minnesota's statutory law without any controlling precedent justifying the extension.

To compound the error, the district court then applies its unwarranted expansion of Minnesota law to each one of the several states without conducting any *Erie* analysis at all. No regard is given for the interests of those states that reject medical monitoring under any circumstances, as a claim or a remedy. (AA3653-57) Nor is any regard given for the absence of authority in any jurisdiction allowing recovery of medical monitoring relief for an alleged violation of the state's consumer protection law.[12]

---

[12] The district court's truncated and incomplete conflict-of-law analysis cannot be substituted for a proper *Erie* analysis on the issues relevant here. The district court purported only to compare each state's consumer fraud statute to Minnesota's, looking for conflicts in the statute's provisions. (AA3657-62) It never engaged in an independent analysis of whether or how Minnesota's or

(continued...)

In fact, plaintiffs' brief on appeal introduces yet another way in which the certified class would violate the *Erie* doctrine, if plaintiffs have their way. For the first time on appeal, plaintiffs argue that they are entitled to prove their consumer protection claims using a "fraud on the market" theory, under which they need not prove any kind of individual causation and can meet their burden vis-à-vis every class member by proving that St. Jude Medical deceived "the medical community at large." (Appellees' Br. at 46)

Plaintiffs' sole authority in support of their argument does not even adopt a "fraud on the market theory" and underscores the perils of abandoning the state-law-based analysis the *Erie* doctrine otherwise requires. In *Thompson v. American Tobacco Co.*, 189 F.R.D. 544 (D. Minn. 1999), the district court ***denied*** certification of a class asserting consumer protection claims because proof of causation presented too many individual issues. In making its ruling, the district court found that individual proof of reliance was required to recover damages under Minnesota's consumer fraud statutes, but not necessarily to recover injunctive relief. *Id.* at 552-53. In a footnote, the court used "fraud on the market" to describe a paradigm under which individual proof of reliance is "not always require[d]." *Id.* at 552 & n.4.

---

(...continued)

any other state's consumer fraud statute could be construed to provide for medical monitoring relief. (AA3654-62) Nor did the district court consider or analyze whether its exportation of medical monitoring relief in reliance on Minnesota law was in accordance with the laws of those states that have rejected or limited such relief, or have taken no position on it at all. (AA3654-62)

Beyond that passing observation, however, the district court did not purport to adopt a "fraud on the market" rule in Minnesota and did not apply any "fraud on the market" theory in the case before it. *Id.* at 553. *Thompson* therefore does not support the *Erie* extension which plaintiffs demand for the law of Minnesota, much less the law of the remaining states.

It surely is not the business of the federal courts to homogenize the law of the various states in this manner, particularly without looking at whether the various states' laws and public policies would support such a result. The mandate under *Erie* is exactly the opposite -- federal courts instead are directed to *apply what law there is*. *E.g., Karas v. American Family Ins. Co.*, 33 F.3d 995, 1000 (8th Cir. 1994); *see In re American Medical Sys.*, 75 F.3d 1069, 1085 (6th Cir. 1996) (class certification overturned where district court sitting in diversity failed to consider law of various states as required by *Erie*). The class certification order should be reversed for this reason as well.

**C. Plaintiffs' Treatment Of Minnesota's Choice-Of-Law Rules Overstates Minnesota's Interest In Applying Its Law To Out-Of-State Class Members And Fails To Overcome The Need To Apply The Law Of All Fifty States To The Class Members' Claims**

St. Jude Medical demonstrated in its opening brief how in this case Minnesota's conflicts-of-law rules require the application of each class member's home-state law in every instance of conflict. (AOB37-43) St. Jude Medical's residence in Minnesota is *not* a dispositive factor. *See Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 621 (8th Cir. 2001); *see also In re Baycol*, 218 F.R.D.at 207; *Nodak Mut. Ins. Co. v. American Family Mut. Ins.*

*Co.*, 604 N.W.2d 91, 94-96 (Minn. 2000). Moreover, when the competing interests are closely balanced, the jurisdiction where the injury occurred has the stronger interest in having its law apply. *Nodak*, 604 N.W.2d at 96. Thus, under the applicable rules, each Silzone class member's home state – where each class member resides, where each decision to purchase a Silzone valve was made, where each Silzone valve was implanted, where each class member receives follow-up medical care, and where any additional medical monitoring would be implemented -- has the stronger interest in having its law govern each class member's Silzone-related claims.

In trying to defend the district court's contrary ruling, plaintiffs and their amici significantly overstate Minnesota's interest in imposing its laws on other states' citizens, who have manifested no intent to be subject to Minnesota's statutory regime. As plaintiffs describe it, Minnesota has a paramount interest in enforcing its consumer protection laws against its resident corporations, no matter where the alleged transaction or alleged harm occurred. (Appellees' Br. at 38-39) In a familiar refrain, plaintiffs and their amici see no possible offense in displacing other states' laws because Minnesota law is thought to be more generous to consumers. (Appellees' Br. at 39-40; AARP Br. at 17-18; State of Minnesota Br. at 10-11)

Of course, if plaintiffs and their amici are right, then a choice-of-law analysis always will come down to which state's law is the more munificent. But that view is too narrow. Every other state has an interest in having its own consumer protection laws applied to transactions involving its residents

and occurring within the state. *See In re Bridgestone/Firestone*, 288 F.3d 1012, 1016-17 (7th Cir. 2002) ("Neither Indiana nor any other state has applied a uniform place-of-the-defendant's headquarters rule to product liability cases."); *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 458-59 (E.D. La. 2006) (refusing to apply defendant's home state law to an entire nationwide class); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998) (rejecting nationwide application of New Jersey law because "[e]ach Plaintiff's home state has an interest in protecting its consumers from in-state injuries"); *In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J 1997) (same). That another state's statute might offer "more protection" neither diminishes that interest nor makes each state's public policy choices, as reflected in their consumer protection statutes, any less valid. *See Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364, 378 (D.N.J. 2004) (declining to extend New Jersey consumer protection statutes to Pennsylvania plaintiffs despite greater protection of New Jersey law in deference to Pennsylvania's interests); *Fu. v. Fu*, 733 A.2d 1133, 1141 (N.J. 1999) (laws "that deny liability are entitled to equal consideration in choice-of-law determinations as are rules imposing liability").

Plaintiffs' focus on the purported benefits of applying Minnesota law also ignores that a proper conflict analysis under Minnesota's factorial test requires consideration of *all* competing governmental interests. It is equally improper under Minnesota law to elevate the forum's purported interest in compensating for injuries that occur in another state to the principal factor in the conflicts analysis. *Hughes*, 250 F.3d at 622 (governmental interest in

enforcing state's laws against corporate residents is "tenuous" where action seeks to compensate non-residents for injuries that occur in another state); *Jepson v. General Casualty Co.*, 513 N.W.2d 467, 471-72 (Minn. 1994) (Minnesota has little interest in compensating non-residents for injuries occurring in another state, particularly where it would send a message to them to take advantage of "Minnesota's greater willingness to compensate tort victims" and would promote forum shopping).

Only by skewing the relevant conflicts inquiry can plaintiffs and their amici make even a colorable case for ignoring the diversity in the consumer protection laws of the various states and for preferring the law of Minnesota to the law of the state where the valve was implanted. Because proper application of Minnesota's choice-of-law rules results in the application of numerous states' laws to this nationwide class, the district court erred in ruling otherwise and erred in certifying the nationwide class. (AOB37-46) *See also Zehel-Miller*, 223 F.R.D. at 663-64 (denying certification of nationwide medical monitoring class where fifty states' law applied); *In re Prempro Prods Liab. Litig.*, 230 F.R.D. 555 (E.D. Ark. 2005) (rejecting multistate consumer fraud and medical monitoring claims where law of plaintiffs' residence would apply).[13]

---

[13] Plaintiffs argue in passing that the need to apply the law of the fifty states is relevant only in cases involving multiple defendants, citing *Simon v. Philip Morris, Inc.*, 124 F. Supp. 2d 46 (E.D.N.Y. 2000). The *Simon* order, however, is irrelevant to this proceeding for at least two reasons. First, the complexities raised by trying to manage a classwide trial under fifty states'

(continued...)

## D. Even If Minnesota Law Could Apply To The Entire Nationwide Class, Plaintiffs Still Cannot Meet Their Burden To Prove That Their Proposed Class Meets Rule 23's Requirements

Even if Minnesota law could lawfully be applied here, and it cannot, consideration of Rule 23's express requirements also compels rejection of class certification. The undisputed record demonstrates that plaintiffs have no viable argument to the contrary. Indeed, St. Jude Medical chronicled, in detail, the many individual issues on liability and remedies that will predominate if this nationwide class action is permitted to go forward.

---

(...continued)

laws are as compelling in a single-defendant case as in a multiple-defendant case, and several courts have denied class certification in single-defendant cases for that very reason. *See, e.g.*, *Chin*, 182 F.R.D. at 457 (rejecting nationwide application of New Jersey consumer protection law, applying 50 states' law against single defendant); *In re Ford Motor Co.*, 174 F.R.D. at 350 (same); *In re Rezulin*, 210 F.R.D. at 66-67 (same). Second, the *Simon* order came to the wrong result for the wrong reason. The district court applied New York law to a nationwide class of tobacco purchasers partly because "*Shutts* leaves open the possibility that the choice of a single law . . . is constitutionally permissible if the mechanical application of multiple laws threaten[s] the rational adjudication that lies at the heart of due process." *Simon*, 124 F. Supp. 2d at 71 (citing a law review article). In other words, the district court found that administrative convenience could support the application of a single state's law; an approach that *Shutts* expressly condemns. As the Supreme Court held, the constitutionally required choice-of-law calculus "is not altered by the fact that it may be more difficult or more burdensome to comply with the constitutional limitations because of the large number of transactions which the State proposes to adjudicate and which have little connection with the forum." 472 U.S. at 821. The district court in *Simon* thus took a step that the Constitution prohibits: It extended one state's law beyond state boundaries to make it administratively (or "mechanically") easier to manage numerous claims.

(AOB48-56) Plaintiffs' main response is to claim broadly that St. Jude Medical "largely ignores the fact that this is a *consumer fraud* class action." (Appellees' Br. at 47) This assertion is, however, as mystifying as it is ineffectual. All of St. Jude Medical's arguments were tailored to issues covered by plaintiffs' consumer fraud class, and there is nothing about a consumer fraud class that exempts it from meeting Rule 23's specific requirements.

**1. Plaintiffs Characterize Their Case As A Consumer Fraud Class, But Continue To Ignore That Individual Issues Will Predominate In Proving The Elements Of The Class Members' Consumer Fraud Claims**

Throughout this litigation, St. Jude Medical consistently has tied its analysis of class certification to the elements of a claim under Minnesota's consumer protection statutes. To make such a claim, plaintiffs must prove that St. Jude Medical made a representation or engaged in conduct in violation of one of the three statutes, that they sustained injury, and that there is a "causal nexus" between the alleged representations and their alleged injuries. *See Group Health*, 621 N.W.2d at 13-14. While freely characterizing their case as a "consumer fraud class action," plaintiffs have *never* explained with any specificity how proving these elements for Mr. Grovatt can substitute for proof on behalf of every class member nationwide. In fact, it is impossible to fashion such an explanation. On every element, each class member's claims present individual issues that will predominate over any attempt to resolve this class action:

**Proof of an offending representation requires individual analysis.** It is undisputed that St. Jude Medical distributed Silzone heart valves through a network of sales representatives who met with hospital purchasing staff and treating physicians to provide information about the product. (AA3436-72) Here there is no evidence of a persistent "national" marketing campaign aimed at each potential purchaser and no evidence that any such campaign reached, much less influenced, the purchasers of the valve. (AA3432-72) Even accepting plaintiffs' conclusory assertions of "pitches, labels, and manuals" – which are refuted and which this Court need not take as true – the actual use, if any, of sales materials depended on each sales representative and varied with each sales call. Whether these sales materials, if used, made any difference likewise depended on each purchasing decisionmaker. In short, proof of whether St. Jude Medical made any representation in violation of Minnesota's statutes would require inquiry into the sale and purchase of each Silzone valve. (AOB51-52)

**Proof of "injury" requires individual analysis.** Regarding injury, the certified class includes only patients whose Silzone heart valves have performed *without complication* for at least seven years. The only conceivable "injury" that a class member can assert is the purported need for medical monitoring above and beyond what each class member already is receiving as a mechanical heart valve recipient. This purported need is, by its nature, incapable of classwide proof. Rather, as this Court has expressly held, "each plaintiff's need (or lack of need) for medical monitoring is highly individualized." 425 F.3d at 1122. Plaintiffs' own expert likewise confirmed

that each class member's monitoring regime depends on numerous individual factors. (AA1747-48,1787-1817,1837)

**Proof of a "causal nexus" requires individual analysis.** Minnesota's consumer protection statutes undisputedly require proof of causation, which entails "proof of causation of harm, injury in fact, and damages resulting from" the defendant's actions. *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 757 (8th Cir. 2003). Under this "causal nexus" standard, plaintiffs must prove that St. Jude Medical's representations *caused* their alleged increased need for medical monitoring, and that proof will require individual inquiry at multiple levels. Plaintiffs must prove a causal connection not only between St. Jude Medical's alleged representations and their use of the Silzone valve, but also between their use of the Silzone valve and their need for enhanced medical monitoring.

Here, plaintiffs cannot even prove the first link in the causal chain on a classwide basis. As noted, there is no uniformity in the information physicians received about the heart valve, no uniformity in what physicians and sales representatives communicated about the valves (if anything), and no uniformity in the information (if any) the class members themselves received about the valve.[14] (AA3432,3475,3480) Nor, as explained above, will there

[14] This factor alone distinguishes this action from all the authorities plaintiffs and their amici cite involving the sale and purchase of financial instruments, including the unpublished order in *Mooney v. Allianz Life Insurance Co.*, No. 06-545, 2007 WL 128841 (D. Minn. Jan. 12, 2007). In that case, the district court preliminarily found that common issues would predominate in a class

(continued...)

ever be classwide proof on the second link either – plaintiffs cannot prove on a uniform basis that any alleged representations concerning Silzone valves are linked to an alleged need for additional medical monitoring. (AA1747-48,1787-1802) As this Court recognized, every mechanical heart valve patient "already requires future medical monitoring as an ordinary part of his or her follow-up care." 425 F.3d at 1122. Whether any Silzone valve recipient requires *additional* monitoring therefore depends on "myriad" individual issues. *Id.*

On this point, plaintiffs emphasize repeatedly that they do not have to prove "reliance," as though that eliminates the need for class member-by-class member inquiries. (Appellees' Br. at 45-46,48-49) But plaintiffs still must prove causation, and proof of that "causal nexus" requires direct or circumstantial evidence that is relevant and probative "'as to the relationship between the claimed damages and the alleged prohibited conduct.'" *Flynn v.*

(...continued)

action involving annuities based largely on evidence of standardized sales materials, including a sales brochure and a uniform "statement of understanding." *Id.* at *8-9. Notably, the district court did *not* certify the proposed class, but deferred to this Court's opinion in *In re St. Jude Medical* and ordered further briefing on whether it could apply Minnesota law to the entire proposed nationwide class. *Id.* at *9-10. In any event, the district court's preliminary finding that common issues predominated in *Mooney* provides no support here, since there is no evidence that St. Jude Medical made uniform representations in connection with the sale of Silzone-coated heart valves. Indeed, the uncontroverted evidence shows exactly the opposite. (AA3436-72,3680)

*American Home Prods. Corp.*, 627 N.W. 2d 342, 351 (Minn. Ct. App. 2001). As the Minnesota Supreme Court explained:

> Moreover, where, as here, the plaintiffs alleged that their damages were caused by deceptive, misleading, or fraudulent statements or conduct . . . , as a practical matter it is not possible that the damages could be caused by a violation without reliance on the statements or conduct alleged to violate the statutes. Therefore, in a case such as this, it will be necessary to prove reliance on those statements or conduct to satisfy the causation requirement.

*Group Health*, 621 N.W.2d at 13. Even under the "relaxed" reliance standard on which plaintiffs so heavily rely, they still have to prove that St. Jude Medical's representations caused their alleged increased need for medical monitoring, which raises numerous class-defeating individual issues.

In short, contrary to plaintiffs' assertion, St. Jude Medical has directly confronted plaintiffs' "consumer fraud class action" and has shown through evidence that plaintiffs do not and cannot contest that each element will require individualized proof, thereby foreclosing class certification.

### 2. Plaintiffs' Belated Attempt To Satisfy Rule 23 Ignores Key Issues And Underscores Why The Certified Class Does Not Meet Rule 23's Requirements

Plaintiffs have backed away from their prior position that Rule 23 was "irrelevant" to the district court's certification order, and they now admit that Rule 23 is the controlling authority. However, when all is said and done,

plaintiffs' attempted defense of the certified class shows that the order below is erroneous both in its method and its result.

There is error in method because the district court, at plaintiffs' urging, certified a class with no express analysis of whether that class met Rule 23. In the Court below, plaintiffs made the strategic decision following remand to ignore Rule 23. As a result, their defense of the class on appeal consists of repeating what the district court ruled *before this Court reversed and remanded* and asserting blithely that "SJM had given [the district court] no reason to repeat or revisit its Rule 23 analysis. . . . Nor is there any reason to conclude . . . that this Court . . . expected the district court to re-do its Rule 23 analysis from scratch." (Appellees' Br. at 47)

This contention is difficult to fathom. It was not St. Jude Medical's burden to show why the district court should *not* certify plaintiffs' proposed class, and there is every reason to believe that this Court expected a full analysis of Rule 23 when it unambiguously "reversed" the district court's prior class certification order, leaving no class in place. Nor was it clear what plaintiffs' newly proposed class would encompass or how that class would surmount the medical monitoring and choice-of-law holdings set forth in this Court's opinion. Finally, St. Jude Medical provided an exhaustive record showing why the district court needed to "revisit" class certification as a matter of both fact and law.[15] (AA2846–3550) Although ignored by the

[15] Plaintiffs argue that St. Jude Medical's factual and legal analysis is an improper inquiry into the merits citing the Supreme Court's opinion in *Eisen*.
(continued...)

district court and discounted in a single sentence by plaintiffs, the record made by St. Jude Medical is compelling. For example:

- Plaintiffs offered a newly defined class, asserting consumer protection claims, but excluding any person with a cognizable injury. Further, the class sought nationwide, classwide relief in the form of medical monitoring, which this Court had expressly rejected. 425 F.3d at 1121. These factors alone called for renewed Rule 23 analysis and denial of class certification. (AA2885-2904)

- Mr. Grovatt was now the sole class representative, down from the original five representatives. This raised issues of adequacy and typicality, which the district court did not address and which defeat certification of this class. (AA2885-2904)

- Plaintiffs offered a new and complex medical monitoring proposal geared toward treating individual patients in an individual manner, but the

(...continued)

(Appellees' Br. at 33) But St. Jude's Medical's arguments below were simply directed at what the parties would be required to prove (on claims and defenses) and how they would go about proving it. This is well within the proper scope of a class certification inquiry under Rule 23. *Elizabeth M. v. Montenez*, 458 F.3d 779, 785-87 (8th Cir. 2006) (district court erred by certifying an "unmanageable class action" because it failed to consider evidence necessary for each claim); *Blades v Monsanto*, 400 F.3d 562, 571-72 (8th Cir. 2005) (affirming denial of certification of class of seed purchasers because class members' claims presented individual issues that could not be proved on a classwide basis).

district court did not address its impact on adequacy, typicality, manageability, predominance, and superiority. (AA2885-2904)

- St. Jude Medical offered additional evidence showing that proof of key liability issues would require individualized inquiry into each Silzone-related transaction. St. Jude Medical, for example, did not market Silzone-coated valves directly to patients; physicians did not receive information regarding Silzone valves in any uniform fashion; and physicians did not inform their patients regarding Silzone valves in the same way. (AA3436-3480)

- Three years passed between the district court's initial order certifying a class and its most recent order. The passage of time implicated superiority. Many cases had been resolved, the MDL was winding down with few individual cases remaining, and there had been no influx of new cases. These events required reevaluation of the purported need for any kind of classwide relief, particularly where the class sought to benefit individuals who had their heart valves for at least six years without complication. (AA2885-2904)

Yet, even if this Court were to look beyond the district court's error in method, it will see that the district court's *result* was equally in error and that plaintiffs cannot explain how the certified class meets Rule 23:

**Plaintiffs admit the class definition is indefinite, leaving no workable way to determine who is in the class.** St. Jude Medical has established that the certified class fails because merely identifying the class membership will require determining, for every Silzone valve recipient, whether he or she has "developed a manifest and diagnosed injury from their Silzone implant of degree or severity that would permit individual personal injury law suits to be commenced in their state of residence." (AA1225-1718) Plaintiffs' only rejoinder is to revise their class definition to include "every Silzone valve recipient who has not filed a personal injury claim." (Appellees' Br. at 52) This attempted amendment should not be entertained for the first time on appeal and amounts to a concession that the operative class is unsuitable for certification. In any event, the revised class creates its own inherent contradiction because it applies to the allegedly injured as well as the uninjured, causing further proof complications confounding class certification. Lastly, with respect to plaintiffs' consumer fraud burden of proof and the medical monitoring relief sought, the new definition eliminates none of the individualized issues that foreclose class certification.

**Plaintiffs cite no evidence – because they submitted none – that Mr. Grovatt is an adequate class representative and his claims are typical.** According to plaintiffs, Mr. Grovatt is an adequate class representative because he had a Silzone valve implanted and "alleges that the Silzone valve is neither safe nor effective" and because "all members of the consumer fraud class remain united." (Appellees' Br. at 44-45) Bare allegations and vague platitudes cannot support class certification, and the facts surrounding Mr.

Grovatt confirm that he cannot possibly stand in for this entire class. (AOB46-50) As St. Jude Medical explained in its opening brief, determining Mr. Grovatt's need for medical monitoring would require examining his unique and complicated medical history. (AOB48-51) Moreover, the record is silent – because plaintiffs made it that way – on how and why his Silzone valve was purchased, whether anything St. Jude Medical said or did influenced that purchase, and how proof of those factors for Mr. Grovatt would replicate the required proof for any other class member's claims.

**Plaintiffs' argument that individual issues will not predominate relies entirely on the nationwide application of Minnesota law, which is error, and on a "relaxed" causation standard that misstates Minnesota law.** Plaintiffs' argument on how the certified class meets Rule 23(b)(3) makes only two points: Common issues will predominate because (1) Minnesota law applies uniformly to the entire class and (2) plaintiffs do not have to prove direct reliance. (Appellees' Br. at 45-46) On the latter point, plaintiffs assert for the first time that they are entitled to prove consumer fraud under an undefined "fraud on the market" theory. (*Id.* at 49)

To start, for all the reasons discussed above, Minnesota law cannot apply to the entire class, and the need to apply the law of the fifty states ends any discussion about predominance of common issues. As also noted, however, even if Minnesota law uniformly could be applied, the predominance requirement still cannot be met here either. While plaintiffs may not have to plead or prove strict common-law reliance, they still have to prove causation

under the *Group Health* standard.[16] As discussed above, "fraud on the market" is not the law under the Minnesota statutes, and even if it were, such a theory could not eliminate the many individualized causation issues that permeate this nationwide class. Still further, plaintiffs' discussion of their causation burden and their attempt to lower it beyond recognition does not take into account the other elements required for a recovery under Minnesota's statutes. They cannot prove an offending representation on a classwide basis, nor establish a right to medical monitoring relief without individual examination of each class member's circumstances.

**Plaintiffs concede that the class, as currently certified, is unmanageable and not superior to available alternatives**. St. Jude Medical has explained at length why nationwide litigation of plaintiffs' consumer fraud claim is unmanageable, no matter what law is applied. (AOB48-58) St. Jude Medical also demonstrated why there is no need for this class action and why classwide resolution cannot fairly be labeled as the superior means for resolving what little is left of this controversy. (AOB56-59)

---

[16] Asserting that they have met "Minnesota's pleading requirements," plaintiffs cite *Wiegand v. Walser Automotive Groups, Inc.*, 683 N.W.2d 807, 811 (Minn. 2004). That case, however, merely echoes the *Group Health* standard; it does not excuse plaintiffs from proving causation. *Id.* (quoting *Group Health* and acknowledging the "casual nexus" requirement); *see also Yarrington v. Solvay Pharmaceuticals, Inc.*, No. A05-2288, 2006 WL 2729463 at *5 (Minn. Ct. App. Sept. 26, 2006) (cited by plaintiffs, quoting *Group Health* and stating that "[a]lthough a plaintiff need not plead reliance . . ., 'causation remains an element of such a claim.'").

In response to these arguments, plaintiffs simply assert that the district court "remains free to use a 'variety of management devices,' . . . including severing liability and damages determinations" to make classwide resolution work. (Appellees' Br. at 49-50) This is too little, too late. Plaintiffs did not request partial certification; they did not request the use of any "device" to manage this class action; and they refused to address manageability in any way in the district court. (AA1225-1718,3551-3564) Nor could the problems of proof be "worked out" here in any event. No passing references to case management can dispel the immutable truth that providing medical monitoring relief under the burdens of proof imposed by Minnesota's consumer fraud statutes gives rise to individualized class member-by-class member inquiries. Rule 23 does not permit class certification in these circumstances, and as *Amchem* made clear, there is no way to "manage around" Rule 23's express requirements. *See Amchem*, 521 U.S. at 622. The order below therefore should be reversed on the independent ground that the class fails to satisfy Rule 23's demands.

## III

## CONCLUSION

After years of litigation, it is apparent that this class action has run its course, and plaintiffs should not get another chance to prolong it. This Court should reverse the district court's order, vacate class certification on every ground that St. Jude Medical has identified, and remand this action with

instructions to proceed with individual adjudication of the handful of remaining claims.

DATED: April 20, 2007.

Respectfully submitted,

HALLELAND, LEWIS, NILAN, & JOHNSON, P.A.

RIDER BENNETT, LLP

REED SMITH LLP

By: James C. Martin
James C. Martin

Attorneys for Defendant and Appellant St. Jude Medical, Inc.

## CERTIFICATE OF COMPLIANCE

The length of this brief is 10,051 words, and it was prepared using Microsoft Word 2003. I certify that this brief conforms to Federal Rule of Appellate Procedure 32(a)(7)(B) for a brief using a proportional serif font of 14-point typeface or larger, subject to St. Jude Medical's accompanying motion to exceed applicable word limitations.

DATED: April 20, 2007.

James C. Martin
Steven J. Boranian
REED SMITH LLP
1999 Harrison Street
Suite 2400
Oakland, CA 94610
(510) 763-2000