**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| IN RE: ST. JUDE MEDICAL, INC., SILZONE HEART VALVES PRODUCTS LIABILITY LITIGATION | : : : | MDL No. 01-1396 (JRT/FLN) |

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO STRIKE AND IN SUPPORT OF SECOND RENEWED CLASS CERTIFICATION MOTION

## I. Introduction

As forecasted during the July 29, 2008, status conference when St. Jude Medical Inc. ("SJM") sought leave to file its motion under Rule 23(d)(1)(D), it does not properly challenge the Complaint's class action allegations but simply opposes Plaintiff's renewed class certification motion. *See* Transcript of July 29, 2008, Status Conference, pp. 4, *et seq*. The so-called motion is not directed at the class action allegations in the Complaint, nor is it really an attempt to establish that those class allegations are improper. SJM thus improperly attempts, without authorization under the Rules, to obtain "two bites at the apple" and the last word via a reply brief.

SJM also unnecessarily protracts the resolution of class certification of a viable class-wide damage claim recognized by the Eighth Circuit in its recent opinion—restitution of the cost of the valve. *In re St. Jude Medical, Inc.*, 522 F.3d 836, 841 (8th Cir. 2008). Restitution is recoverable on a class basis owing to SJM's numerous material omissions concerning the safety of the Silzone valve. For these reasons, as well as the ones that follow, SJM's purported Rule 23(d)(1)(D) motion should be denied as it is

legally and factually meritless and procedurally insupportable. Furthermore, as SJM is not entitled to two bites of the apple, Plaintiff respectfully requests that the Court deem SJM's present submission to constitute its complete opposition to class certification and rule that Plaintiff's motion proceed to hearing and disposition without further delay.

## II. Argument

### A. The Eighth Circuit Expressly Recognized that a Refund Class Was Certifiable.

SJM's strident rhetoric that "the parties and this Court already have spent years and significant resources to adjudicate the class certification issues," Def. Br. at 3, is ironic here, where Defendant has at every juncture delayed and serially petitioned for piecemeal appeals of interlocutory orders. The fact is that the two appeals in this case have left unfinished business. The Court of Appeals expressly carved out what it viewed as a certifiable class, and SJM's failure to obtain an unequivocal ban on class certification is the direct result of its own strategy to triangulate issues for fragmentary review. While SJM has spent significant resources to filter out these fragments, the size of its bill does not equate to the breadth of reversal. This is one of the many reasons why courts disfavor extraordinary review of interlocutory orders.

The first order from the appellate court directed this court to analyze the narrow issue of the jurisdictional reach of Minnesota's consumer protection statutes. When that was done properly, St. Jude petitioned for a second extraordinary review. In reversing, the Court of Appeals ignored the jurisdictional and constitutional issues it had asked the district court to analyze and instead reached back to the analysis this Court had done in

2003 regarding predominance. This time, the court held that it would not be possible to certify a class where the plaintiffs' Complaint sought "the cost of the medical care arising out of the use of the product together with any and all consequential damages recoverable under the law including, but not limited to, both past and future medical expenses, past wage loss, loss of future earning capacity, past and future pain, suffering, disability and emotional distress." *In re St. Jude Medical,* 522 F.3d at 841.

However, the court also opined,

> We recognize that plaintiffs may present certain issues that are common to all of their claims, assuming it is proper under Minnesota choice of law principles and the Constitution to apply Minnesota law to every claim. Whether a certain published representation by St. Jude was materially false may be amenable to common resolution. If liability were established, then the entitlement of plaintiffs to restitution (i.e., a refund of the cost of the valve) or to a trust fund for financing medical research (assuming this is a proper remedy under the Minnesota statutes) may be decided on a class-wide basis.

522 F.3d at 841. The reason the court gave for reversal, despite these possibilities, was "the requested relief of medical monitoring and damages" as asserted in the Complaint. *Id.* These statements by the court are a far cry from concluding that class certification issues have been "conclusively determined." Def. Br. at 3. Rather, because Plaintiff has restricted his request for class relief to a refund of the cost of the valve, the proposed class is ripe for certification in a well-defined order from this Court that should be viewed in the words of the Eighth Circuit as appeal-proof. If this Court agrees that the class should be certified, it appears from the Court of Appeals' decision that the order should describe which *claims* as well as which *requests for relief* are being certified. The class definition can be altered without having to amend the Complaint. *See In re Select*

*Comfort Corp. Sec. Litig.*, 202 F.R.D. 598, 606 (D. Minn. 2001) (holding that district court has broad authority to define or redefine class until judgment is entered or to otherwise alter or amend any class certification order before decision on merits).

**B. The Eighth Circuit Neither Addressed Nor Decided Whether a Class Action Could Be Certified on the Basis of Material Omissions, and, Therefore, the Issue of Recertifying the Class Based on SJM's Material Omissions of Safety Information is Properly Before the Court on Plaintiff's Second Renewed Class Certification Motion.**

SJM's legal arguments build upon several false premises, the first two of which are that the Eighth Circuit's consideration of and decision on the issue of class certification encompassed material omissions and that it ruled that a statutory consumer fraud act class action for restitution and other economic damages predicated upon such omissions was not possible. A review of the Eighth Circuit's opinion shows that it did neither.

The Circuit Court only addressed whether SJM had affirmatively misrepresented Silzone's attributes to doctors, in the class context, but not whether SJM had omitted material safety information, which is the basis, in part, for the Second Renewed Motion for Certification. The Circuit Court's opinion repeatedly refers to "representations" and "misrepresentation(s)," and *not* to "omissions." *In re St. Jude Medical, Inc.*, 522 F.3d at 838-39. Indeed, Defendant's culled quotations from that opinion at page 15 of its brief bear this out, *e.g.*: "Whether the information on which physicians relied can be traced to a *representation* by St. Jude undoubtedly will vary by individual physicians." (Emphasis added.) The Eighth Circuit never referred to or discussed the vast amount of omitted material negative safety information presented to this Court.

That the Eighth Circuit did not preclude certification based on claims of omitted safety information is additionally evidenced by the fact it did not cite, much less discuss, any of the pertinent case law on material omissions, such as *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-154 (1972); *Cashman v. Allied Prod. Corp.*, 761 F.2d 1250, 1255 (8th Cir. 1985); *Hatch v. Fleet Mortgage Corp.*, 158 F. Supp. 2d 962, 967 (D. Minn. 2001); *Chutich v. Green Tree Acceptance, Inc.*, No. 3-88-869, 1990 WL 82385, *5 (D. Minn. Feb. 22, 1990) ("Plaintiff also allege omissions regarding material facts were made by defendants. Where omissions are present in a securities action, the predominance requirement is met"). This absence is not only telling, but material, as, unlike affirmative representations that a class member's prescribing surgeons must be shown to have received and relied upon, omissions do not require individualized proof of reliance. *See, e.g., Edens v. Goodyear Tire & Rubber Co.*, 858 F.2d 198, 206-07 (4th Cir. 1988) ("the actionable independent fraudulent act here was ... [Goodyear's] affirmative concealment of the extension of the completion date. And, direct proof of reliance on the concealment was not required for it was practically impossible to prove, by direct evidence, reliance on that which had been intentionally concealed"); *Sollenbarger v. Mountain States Tel. & Tel. Co.*, 121 F.R.D. 417, 434 (D.N.M. 1988) (in action alleging fraudulent inducement of a contract, the court reasoned: "An inference of reliance is logical in an omission of material facts situation because of the difficulty in proving what the party would have done if it had had the relevant information").

In short, the Eighth Circuit's last ruling on certification did not reject the concept that a Minnesota state-law-based consumer fraud class action focused solely on material omissions of safety information could be certified as a class action seeking to recover economic loss damages.

### C. The Alleged Material Omissions Present a Certifiable Class Action Claim under Minnesota's Consumer Protection Laws.

SJM's motion exhibits Defendant's stubborn refusal to accept that, because the law views and treats material omissions differently from affirmative misrepresentations, this case can proceed as a class action premised upon longstanding law establishing that class-wide transactions and loss causation can be determined on the basis of objective materiality of the non-disclosed information. This is especially so where the omitted information involves core safety information that, if properly disclosed, would cause a reasonable doctor or surgeon not to want to use (and the patient on proper informed consent not to want to use) a medical device for which numerous safer alternatives were available, including, in the context of this case, the identical (and non-premium priced) St. Jude prosthetic heart valve without Silzone coating.

Plaintiff is not simply trying to re-dress his misrepresentation claims as omissions claims—*i.e.*, "putting lipstick on the pig," as Defendant maintains. This case has always had an omissions component, which, in view of the Eighth Circuit's opinion suggesting that restitution of the price paid is an appropriate class-wide remedy, constitutes a proper and appropriate basis upon which the Court may proceed to recertify a class under Minnesota law.

SJM's argument that omissions are no different from misrepresentations for purposes of evaluating class certification is just wrong. The law on deceit and deceptive conduct as it relates to the certifiability of a class action materially distinguishes between affirmative misrepresentations and omissions. The Supreme Court recognized this distinction in the seminal case of *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-154 (1972). Acknowledging the difficult evidentiary situation with which nondisclosure of material information confronts an injured plaintiff, the Court in this securities fraud case created a substitute for the traditional reliance element:

> Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision…. *This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact.*

(Citations omitted and emphasis added.) *Affiliated Ute's* holding has since been widely followed and applied by both State and Federal courts, including cases that do not involve securities fraud. *See*, *e.g.*, *Edens*, 858 F.2d at 206 (in action alleging breach of franchise agreement based on fraudulent conduct, court held: "Direct proof of reliance on the concealment [is] not required for it [is] practically impossible to prove, by direct evidence, reliance on that which [has] been intentionally concealed"); *Sollenbarger*, 121 F.R.D. at 434 (in action alleging fraudulent inducement of a contract, court reasoned: "An inference of reliance is logical in an omission of material facts situation because of the difficulty in proving what the party would have done if it had had the relevant information"); *Cullen v. Whitman Medical Corp.*, 188 F.R.D. 226, 234-35 (E.D. Pa.

1999) (excusing plaintiffs from proving individual reliance or causation on claim that sham vocational school defrauded students; student not informed nor aware of shortcomings in school); *Sargent County Bank v. Wentworth*, 500 N.W.2d 862, 875 (N.D. 1993) (recognizing rule that inducement and reliance may be inferred when there is nondisclosure of a material fact); *Trimble v. American Savings Life Ins. Co.*, 152 Ariz. 548, 733 P.2d 1131, 1136 (Ariz. Ct. App. 1986) ("Proof of each plaintiff's reliance on the misrepresentations or omissions is not a prerequisite to recovery… If omissions or nondisclosures meet the standards of materiality to a reasonable investor, causation and reliance can be assumed.") (citation omitted)).

It follows from *Affiliated Ute* and its progeny that SJM's effort to claim that omissions do not change the analysis or the determination of class certifiability in this case is misplaced. It does and does so dramatically in the context of the record before the Court. Here, there is overwhelming evidence that throughout the product life cycle of Silzone, SJM withheld material safety information from the medical profession (as well as the FDA and other regulatory bodies) that directly bears upon the decision to use a Silzone valve. Simply stated, based upon the required objective standard, no reasonable physician would prescribe a demonstrably-unsafe product such as SJM's Silzone-coated heart valve, when safer alternatives were available at a lower price.

**D. Plaintiff and All Members of the Class Were Economically Harmed And Injured by SJM's Failure to Disclose Material Safety Information about the Silzone Coated Valves.**

Relying on so-called "no-injury–no claim" cases, such as *O'Neil v Simplicity, Inc.*, 553 F. Supp. 2d 1110 (D. Minn. 2008) (Kyle, J.) ("*Simplicity*"), SJM maintains that a

class action is not warranted because its recalled, premium-priced Silzone heart valve has not caused class members any recoverable harm or loss as they cannot establish a manifest bodily injury supporting their claims. Defendant's argument is misplaced. It ignores material facts, relies upon distinguishable authorities, and, in the case of its lead authority, *Simplicity,* advances a legal analysis and conclusion that do not comport with Minnesota's public policy, as embodied in its consumer protection statutes, to provide a remedy where and when a consumer purchases an unsafe product as a consequence of a defendant's suppression of material safety information.

As a factual matter, SJM's argument ignores the fact that all class members still have a defective, toxic valve in their heart that puts them at an increased risk of harm given the toxicity of the Silzone coating and the inability of class members to easily remove and replace the valve. *See* Reports of Mr. Eric Butchart. M.D. and Dr. Kevin Healy, Ph.D. filed of record in this matter. That Defendant disputes the existence of such risk does not dispose of the matter and, in fact, serves to raise a common question of fact that only a trial can determine.[1] The import of this for present purposes, however, is that

[1] Based on a 2006 article published by Gary Grunkemeier, *et al*., referred to at Def. Br. at 22 n.3, presenting and analyzing data from the AVERT study, SJM contends that "there is no evidence that patients with Silzone valves are currently at any greater risk of experiencing complications above that faced by non-Silzone valve recipients." Should a class be recertified, Plaintiff is fully prepared to prove to the contrary at trial. SJM neglects to inform the Court, *inter alia*, that plaintiffs in the Canadian Silzone class action recently submitted a report to SJM prepared by Professor David Madigan, Professor and Chair of Statistics at Columbia University who, based on his statistical analysis of AVERT data, found that they provide no evidence that the risks of thromboembolism and bleeding (TEB) and paravalvular leak have abated and, if anything, point in the direction of increasing risk. In any event both arguments present common evidence for adjudication.

the increased risk of complications Silzone recipients have incurred bears on whether the class members received what they and their cardiothoracic surgeons expected them to receive in payment for the Silzone valve—an appropriately and adequately tested and safe prosthetic heart valve.

SJM's argument also conveniently ignores that its failure to disclose material safety information enabled it to charge and receive a premium price for its Silzone valve. Given the existence of safer alternative valves, including the very same SJM models with conventional cuffs that did not carry a premium price, SJM cannot realistically claim that class members did not sustain *an economic loss* occasioned by implantation of a dangerously defective Silzone valve. The failure of all class members to get at least a comparably safe, if not safer, valve they reasonably expected and were entitled to receive constitutes injury and loss that is redressable under Minnesota's consumer fraud statutes.

SJM argues, based on *Simplicity* and a few other cases, that no actionable claim will lie where the injury was either nonexistent or speculative. SJM fails to cite, much less discuss, however, any of the case law from Minnesota and elsewhere upholding a plaintiff's claim for restitution of the price paid for a defective product or for the cost of correcting a defective product's dangerous defect where the product presented an appreciable risk of serious harm to the consumer that the defendant failed to disclose. *State by Humphrey v. Alpine Air Prods., Inc.*, 500 N.W.2d 788, 790, 793 (Minn. 1993) (affirming $64 million restitution relief awarded consumers who purchased air purifier machines emitting unsafe levels of ozone on finding that manufacturer misrepresented safety of machines; no proof that any consumer was actually injured by high levels of

toxic ozone required by Court); *Yarrington v. Solvay Pharms., Inc.*, No. A-05-2288, 2006 WL 2729463, *5 (Minn. Ct. App. Sep. 26, 2006) (allegation that information provided by drug manufacturer published in *Physicians Desk Reference* that deceives physicians and consumers into believing that drug had FDA approval, coupled with allegation that deception causes drug's prescription, held to satisfy causation element of Minnesota's consumer fraud statutes); *Gonzalez v. PepsiCo, Inc.*, 489 F. Supp. 2d 1233, 1250-1249 (D. Kan. 2007) (given defendant's concealment of fact that interaction of certain ingredients in diet soda product could form benzene in concentrations exceeding EPA safety criteria, consumers who purchased the product had actionable consumer protection law claim even though they did not sustain a personal injury); *In re Bridgestone/Firestone, Inc.*, 155 F. Supp. 2d 1069, 1097-98 (S.D. Ind. 2001), *rev'd on other grounds*, 288 F.3d 1012 (7th Cir. 2002) (consumer fraud for failing to disclose defective tires safety issues actionable even though tires had not failed or plaintiffs physically injured); *Lloyd v. General Motors Corporation*, 916 A.2d 257, 272-73, 275, 281 (Md. 2007) (where manufacturer did not disclose safety information relating to car seat backs, plaintiff class may recover in tort and under Maryland consumer fraud statute if jury found defect creating a substantial and unreasonable risk of death or personal injury).

In this line of cases, the fact that reasonable consumer product safety expectations were not met or that consumers would not have purchased the products had safety issues been properly disclosed were found to constitute an actionable injury warranting remedy In *Gonzalez v. PepsiCo, Inc.*, for example, the court reasoned:

> Here, as noted above, plaintiffs have sufficiently alleged a defect in defendants' beverage products which made those products unfit for their ordinary purpose and reduced their value so as to cause plaintiffs economic loss. The Court finds nothing in established case law which suggests that a claim under the KCPA cannot be maintained on the basis of economic harm. In light of plaintiffs' claimed economic loss, the Court finds Porter's reliance on a lack of personal injury unpersuasive.
>
> Defendants further argue that even if plaintiffs suffered a loss or injury, they have not alleged any causal connection between that harm and defendants' conduct which would make them aggrieved consumers under the KCPA. To the contrary, plaintiffs allege that they would not have purchased defendants' beverage products but for defendants' wrongful failure to disclose the tendency of those products to contain benzene. This allegation sufficiently states that plaintiffs' economic injury resulted from defendants alleged violations of the KCPA. Accordingly, the Court overrules defendants' motion on the ground that plaintiffs are not aggrieved consumers under the KCPA.

489 F. Supp.2d at 1248-49.

Defendant's heavy reliance on the *Simplicity* decision is misplaced. On one level, *Simplicity* is an aberration given Minnesota case law such as *Alpine* and *Yarrington* that allowed restitutionary relief to be recovered by or on behalf of consumers under Minnesota's consumer protection statutes when no significant personal injury was alleged or was proven to have occurred as a result of non-disclosed safety information. Indeed, requiring a manifest injury is inimical to the policy underlying Minnesota's remedial consumer laws. Notably, save for one unreported trial court decision, the *Simplicity* court did not cite Minnesota precedent in its analysis but rather relied on authorities from other jurisdictions.

On another level, *Simplicity,* as well as the other "no injury–no claim" cases Defendant cites, are materially distinguishable from the situation here. In *Simplicity,*

Judge Kyle was unwilling to find an injury on the benefit-of-the-bargain theory because in his view the representative plaintiffs could have rectified the defect and eliminated the risk of harm by retrofitting the product with a kit *the manufacturer voluntarily supplied* under the recall, but the representative plaintiffs refused to do so. Obviously, here, absent undergoing explant surgery, the risk cannot be readily eliminated; nor has SJM offered to provide a "retrofit"-like solution.

Similarly unavailing are the string of other cases SJM cites. In *K.A.C. v. Benson*, 527 N.W. 2d 553 (Minn. 1995), the plaintiff had come into contact with an HIV-positive doctor because the doctor failed to disclose he was HIV-positive and misled her as to the nature of sores on his arms. However, the plaintiff could not allege and establish any detrimental exposure to the doctor's bodily fluids and her HIV blood tests results were negative. By contrast, proof of exposure here is not an issue as all class members were and remain exposed to the toxic silver coating on the valves' sewing cuffs. Moreover, SJM's citation to *K.A.C. v. Benson* is ironic because Defendant has successfully defeated medical monitoring that would have alleviated class members' justifiable concern that they remain implanted with the recalled valves.

The case of *D.A.B. v. Brown*, 570 N.W.2d 168, 173 (Minn. Ct. App. 1997), involved payment of undisclosed kickbacks to prescribing doctors. In upholding the dismissal of the patients' claims, the appellate court found the following facts to be significant: there were no allegations in the case that health insurance premiums or co-payments increased solely due to the plaintiffs' purchase of the subject prescription drug; no price differential between the subject drug and another drug was alleged; and there

was no contention that the patients would have stopped treatment with the subject drug or would have instead purchased and been treated with another drug had the doctors disclosed the kickback scheme. Here the circumstances are markedly different. All class members paid a premium for their Silzone-cuffed valves over the price of SJM's conventional-cuffed valves. Furthermore, it can be proven that reasonable surgeons would not have used Silzone valves (and class members would not have consented to their implantation) had SJM not failed to disclose material safety information.[2]

Finally, *Blades v. Monsanto Co*. is not a consumer fraud case involving the omission of material safety information. 400 F. 3d 562 (8th Cir. 2005). It was an antitrust case. It is also further distinguishable on the basis that, unlike *Blades,* here there was essentially one product, the Silzone coated valve line, and all class members were charged a premium price for their Silzone valves.

In sum, the element of injury and loss, in fact, is satisfied here and can be proven on a class-wide basis. Defendant's motion to strike based on its assertion that class members have no claim under Minnesota's consumer protection laws because they are not injured should be denied.

### E. The Failure to Disclose Material Information Establishes the Causal Nexus in Omissions Cases, Making Individual Inquiries Irrelevant

Plaintiff agrees that *Group Health* requires that the class demonstrate a legal nexus between SJM's deceptive conduct and consumers' injuries. However, SJM is simply

[2] By contrast, the issue of nondisclosure of adverse safety information was not even before the court in *D.A.B.*

wrong when it states that the causal nexus for misrepresentations and omissions or other types of deceptive conduct is the same. For example, when common evidence shows that a defendant has spent proportionally large sums of money on marketing a message that is found to be deceptive, the causal link is established under Minnesota's private attorney general statute. *See Group Health*, 621 N.W.2d 2, 15 n.11 (Minn. 2001) (citing *U-Haul Int'l, Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1041 (9th Cir. 1986). Additionally, in contrast to mere misrepresentations, "[i]f a statement is actually false, relief can be granted on the court's own findings without reference to the reaction of the buyer or consumer of the product." *PPX Enters., Inc. v. Audiofidelity Enters., Inc.*, 818 F.2d 266 (2d Cir. 1987) (cited with approval by *Group Health*, 721 N.W.2d at 15, n. 11). Thus, the standard for causation changes dramatically depending on the type of deceptive conduct at issue.

Material omissions are a prime example. This District has already squarely determined the causation standard applicable to omissions: "the omission must be material, meaning it must *naturally affect* the person's decision or conduct." *Hatch v. Fleet Mortgage Corp.*, 158 F. Supp. 2d 962, 967 (D. Minn. 2001) (citations omitted; emphasis added). Unlike reliance on misrepresentations, there is no element of subjectivity in determining materiality. Thus, "fraud claims based on failures to disclose *material* facts to purchasers are necessarily common to the class." *McMerty v. Burtness*, 72 F.R.D. 450, 455 (D. Minn. 1976) (emphasis added). The jury applies a reasonable person standard.

Not surprisingly, SJM makes no attempt to confront these clear authorities, and instead cites *Flynn v. Am. Home Prods. Corp.*, 627 N.W.2d 342 (Minn. Ct. App. 2001).

That case involved a single plaintiff with no class allegations. But more to the point, the plaintiff in *Flynn* had not even purchased or taken the defendant's drug but rather purchased another company's *generic* version of the defendant's brand name product.[3] *Id.* at 345, 350 (plaintiff "did not purchase or use respondents' product, and therefore, there was no direct relationship between them"). Thus, the court determined that the record was completely devoid of "any deposition testimony, affidavits, interrogatory answers, or other evidence connecting respondents' drug Pondimin to the alleged injury she sustained by ingesting a *generic* compound of fen-phen." *Flynn*, 627 N.W.2d at 351-52 (emphasis added).

Accordingly, the plaintiff in *Flynn* failed to provide *any* evidence that the defendant's omission was material to her purchase of a competitor's generic version. The court's summarizing dicta related to reliance "on the physician's desk reference, any representations, or the absence of representations made by respondents concerning Pondimin in the course of deciding that a *generic* phen-fen [*sic*] compound would be an appropriate treatment," was not intended to create a new causation standard in omissions cases. *Id.* at 352 (emphasis added). Rather, the point was to emphasize that there could be no causal link because she took a generic rather than the defendant's brand name drug. The court did not raise or analyze whether plaintiffs needed to plead and prove reliance

[3] To bring American Home Products Corporation into the litigation, the plaintiff based her theory of relief against the defendant by claiming that its fraud on the FDA injured her because it paved the way for "physicians nationwide [to prescribe] both brand name and generic versions of fen-phen without knowing the true risks to their patients." *Id.* at 345. In essence, the plaintiff claimed that the defendant had been responsible for all fen-phen injuries and purchases, regardless of whether patients even purchased its product.

on omissions, and the court cited no authority for its "absence of representations" remark.[4]

Contrary to the plaintiff in *Flynn*, who produced no evidence at all, Plaintiff in the present case has produced ample evidence of materiality of the information withheld from all doctors. Pltf. Br. at 10, Affidavit of Eric G. Butchart, ¶¶ 3-4, 7-8 (Ex. C to Hedberg Declaration). *See Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 757-58 (8th Cir. 2003) (causation may also be established by expert testimony). The problem for SJM is that it cannot claim in the omissions context that it has the right to question the individual musings of each doctor or patient with respect to omissions withheld. Because the standard is "materiality," the question is not whether an individual

[4] There are two categories of dictum: judicial dictum (entitled to considerable weight) and obiter dictum (may be disregarded). *Brink v. Smith Cos. Const., Inc.*, 703 N.W.2d 871 (Minn. Ct. App. 2005). In order to qualify as judicial dictum under Minnesota precedent, the statement must involve "a court's expression of its 'opinion on a question directly involved and argued by counsel though not entirely necessary to the decision.'" *Id.* at 877 (quoting *State v. Rainer*, 258 Minn. 168, 177, 103 N.W.2d 389, 396 (1960)). "Obiter dicta in State Court opinions are not authoritative decisions and not binding on Federal Courts." *Mutual Benefit Health & Accident Ass'n v. Cohen*, 194 F.2d 232, 241 (8th Cir. 1952).

When it actually discussed and analyzed *Group Health*'s causal nexus standard the court in *Flynn* said absolutely nothing about material omissions. Rather, after analyzing *Group Heath*, the court stated, "Thus, for appellant to prove causation, a necessary element of her statutory consumer fraud claims, she must at least present circumstantial evidence of some reliance on respondents' alleged *misrepresentations*." *Flynn*, 627 N.W.2d at 351. Omissions were never squarely addressed nor analyzed in this manner with respect to the consumer fraud statutes.

To the extent doubt remains over the question of the causal nexus required for omissions under the consumer statutes, it should be resolved by the Minnesota Supreme Court. Plaintiffs have already requested that, in the alternative, this Court certify those questions to that court, and SJM has not opposed that request.

doctor may have thought in retrospect that the omissions would not have affected his or her decision. Rather, the question is whether the nature of the omission "naturally affects" doctors' judgments. SJM may be able to attach a competing expert affidavit to this effect, but raising the specter of individualized inquiries is as baseless as it is irrelevant.

### F. The Public Benefit Test Does Not Stand in the Way of Plaintiffs' Ability to Prosecute Their Consumer Protection Claims or to Collect Attorneys Fees if Successful.

#### 1) The Public Benefit Test Is Relevant Only to the Issue of Whether Attorneys Fees Should Be Granted.

Despite misinterpretations from lower courts, the Minnesota Supreme Court has held, time and again, that the public benefit test is only relevant to the question of the availability of attorneys' fees, and does not apply to the accrual of a cause of action under Minnesota consumer protection statutes. In *Ly v. Nystrom*, the Minnesota Supreme Court delivered two holdings. 615 N.W.2d 302 (Minn. 2000). In Part I of the opinion, the court held that a restaurant purchaser in a one-on-one transaction was a "consumer" and could assert a claim under Minnesota's Consumer Fraud Act ("CFA"), Minn. Stat. § 325F.69, subd. 1. *Id*. at 304, 308-10. In Part II, the court held that attorneys' fees are not available under that statute unless the lawsuit benefited the public. *Id*. at 310-14.

Likewise, in *Collins v. Minnesota School of Business, Inc.*, the Supreme Court reversed the district court's denial of attorneys fees under section 8.31, subdivision 3a,

because a public benefit had been shown. 655 N.W.2d 320, 330 (Minn. 2003).[5] Although only 18 people had joined the suit, the court determined that, because the defendant's deceptively-advertised Sports Medicine Technician program had enrolled 1,200 students and because the school offered its program to the general public, the lawsuit served a public purpose. *Id.* at 322. The court indicated that it was inappropriate to limit awards of attorneys' fees under the remedial statutes where the benefit to the public was dictated solely by reference to how many people actually sued. *Id.* at 330. The issue had nothing to do with whether Plaintiffs have stated a claim for relief under the consumer protection statutes. Thus, SJM's assertion that a lack of public benefit bars any suit under the statutes is wrong.

Some courts other than the Minnesota Supreme Court have held that there is no "private right of action" under the CFA where there is no "public benefit". These decisions, however, impermissibly expand upon the Court's holdings. *Compare Ly*, 615 N.W.2d at 310 (holding, "[E]ven though the unlawful practices respondent engaged in here were in the context of an isolated one-on-one transaction, *coverage under the CFA* [§ 325F.69, subd. 1] ***may still be afforded***," and reversing appellate court's "ruling that appellant had no cause of action under the CFA") (emphasis added), *with id.* at 314 ("public interest must be demonstrated to state a claim *under the Private AG Statute* [§ 8.31, subd. 3a,] … a statute where attorney fees and additional costs and expenses would be awarded"), and *Collins*, 655 N.W.2d at 330 ("We hold that respondents' successful

[5] Again, the question was not whether there was a public benefit so that a claim could go forward, but whether an award of attorneys' fees should have been given.

prosecution of their claims benefited the public and *therefore respondents are entitled to reasonable attorney fees*") (emphasis added); *see also Cavanaugh v. Hometown Am., LLC*, No. A05-595, 2006 WL 696259, *4 (Minn. Ct. App. Mar. 21, 2006), *review denied*, (May 24, 2006) ("An individual injured by a violation of [a law enumerated in section 8.31, subd. 1] may also bring a private civil action for damages. Attorney fees are available under this statute to those private citizens who can demonstrate that their claim furthers the public interest") (citations omitted). Thus, even if, *arguendo*, a public benefit is not established, SJM is still subject to suit under the CFA, irrespective of whether attorneys' fees are awarded.

**2) A Successful Suit in This Case Will Benefit the Public**.

Even if the public benefit test were capable of completely stamping out a CFA claim, any success these Plaintiffs realize will benefit the public because SJM's deceptive marketing practices were aimed at the valve-purchasing market at large, and a significant number of those people would receive benefits from the lawsuit. Although the Supreme Court has not articulated a boilerplate "test" establishing when a lawsuit benefits the public, one clearly emerges from the holdings of *Ly* and *Collins*: public benefit is established when a private plaintiff establishes that (1) a practice violated laws enumerated in section 8.31, subdivision 1, (2) the practice was directed at the public at large, and (3) successful prosecution of the claim advances state interests, even if the group of persons benefiting from actual relief is small. This narrow test is borne out by the language of the passages that follow:

> [T]he legislature could not have intended to sweep every *private* dispute based on fraud, and falling within the CFA, into a statute where attorney fees and additional costs and expenses would be awarded… . * * * Appellant was defrauded in a single one-on-one transaction in which *the fraudulent misrepresentation*, while evincing reprehensible conduct, *was made only to appellant*. A *successful prosecution* of his fraud claim does not *advance state interests and enforcement* has no public benefit… .

*Id.* at 314 (emphasis added). The court in *Collins* contrasted the holding in *Ly v. Nystrom* with what happens when violative conduct is directed toward the public at large and actually harms a group of people suing for relief, however small.

> Applying *Nystrom,* the district court found that *only a relatively small group of persons were injured* by MSB's fraudulent activities; thus, respondents failed to demonstrate a public benefit. In determining whether respondents' claims benefited the public, the court focused on the number of "persons who were injured." In doing so, the court misapplied the holding in *Nystrom* by ignoring the fact that *MSB misrepresented the nature of its program to the public at large*.

655 N.W.2d at 330 (emphasis added).

Courts routinely award attorneys' fees for proving injury under violations of Minnesota's consumer protection statutes when the lawsuit benefits a certified class. In fact, no court has ever held that a certified class injured by such a violation did not merit an award of attorneys' fees under section 8.31, subdivision 3a. *See* Prentiss Cox, *Minnesota Progressive? Goliath Has the Slingshot: Public Benefit and Private Enforcement of Minnesota Consumer Protection Laws*, 33 Wm. Mitchell L. Rev. 163, 181-86 (2006) (collecting cases and demonstrating that in all instances where class or group of joined plaintiffs succeeded in proving harm under consumer statutes, plaintiffs passed public-benefit test); *Collins*, 655 N.W.2d at 330 (public benefit test satisfied where defendant enrolled 1,200 students, advertised to public at large, and where 18

students joined in suit for relief); *Burtch v. Oakland Park, Inc.*, No. A05-1588, 2006 WL 1806196, *3-7 (Minn. Ct. App. July 3, 2006), *review denied*, (Sep. 27, 2006) (class action prosecuted on behalf of elderly homeowners benefited the public, and attorneys were entitled to fees, whereas collateral claims by individual parties in related actions did not support fee awards); *Cavanaugh*, 2006 WL 696259 at *4 (public-benefit requirement satisfied where plaintiffs prosecuted class action under law "which was enacted to protect manufactured homeowners, who are members of the public. Accordingly, the public interest is served here and the district court properly awarded attorney fees"); *Schaff v. Chateau Communities, Inc.*, No. A04-1246, 2005WL 1734031 (Minn. Ct. App. Jul. 26, 2005), *review denied*, (Sep. 28, 2005) (where defendant made unilateral change to lease agreement affecting 400 households for which class certification was appropriate, public interest was served and attorneys' fees were properly awarded). Thus, courts have always regarded the public benefit requirement as satisfied where a damages class has been certified.

SJM does not cite a single case where a certified damages class failed the public benefit test under the private attorney general statute. Rather, SJM turns to a non-class case where an individual was suing for damages only for himself, *Berczyk v. Emerson Tool Co.*, 291 F. Supp. 2d 1004 (D. Minn. 2003). Because neither class damages nor the damages of multiple, joined parties were alleged, the only potential public benefit would have been through an injunction. But the plaintiff, who had his fingers cut off by a rotary saw, admitted in that case that the defendant had already recalled the product, mooting injunctive relief. *Id.* at 1020 n.18. Thus, in the absence of both multiple-party damages

and an injunction, the Court denied the plaintiff's motion to add a consumer fraud claim. *Id.* at 1020.[6] In the present case, Plaintiff will achieve a public benefit by obtaining damages from a Minnesota defendant on behalf of all others similarly situated. When such damages are available to every patient who purchased the valve, this Court should not countenance SJM's contention that the relief would only benefit "plaintiffs and their counsel".

### G. Reconsideration of a Misrepresentation Class Is Warranted by the Supreme Court's Decision in *Bridge*.

SJM's contention that *Bridge v. Phoenix Bond & Indemnity Co.*, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008), does not change the law applicable to plaintiff's claims is in error. SJM misses the forest for the trees, looking too closely at the fact that different statutes are involved, while overlooking the general legal principles that inform the decision. Thus, while *Bridge* and the present case do involve different statutes—the federal RICO statute in *Bridge*, and the Minnesota Consumer Protection Act here—the legal *principles* adopted by the unanimous Supreme Court in *Bridge* are equally applicable here.

In *Bridge*, plaintiffs brought a civil RICO action against competitors who obtained an unfair advantage in buying property tax liens from a county by filing false certifications with the county. The predicate act was mail fraud. The false certifications

---

[6] *Behrens v. United Vaccines, Inc.*, a case SJM cites to argue lack of public benefit, had a fact pattern substantively identical to *Berczyk*: neither class damages nor damages claimed by multiple, joined parties were present, and injunctive relief was mooted by product recall. 228 F. Supp. 2d 965, 972 (D. Minn. 2002).

were never sent to, seen by, or relied upon by the plaintiffs: they were only sent to, seen by, and relied upon by the county, which allocated the liens to buyers based in part upon the certifications.

Defendant contended that plaintiffs could not state a cause of action under civil RICO because reliance was purportedly an element of the claim. The Supreme Court rejected that contention because the statute only requires that the plaintiff be injured "by reason of" a violation. The statute does not include "reliance" as an element of the cause of action, and the Supreme Court refused to read this common law element in as part of the elements of the cause of action under a remedial statute. *Id.*, 128 S. Ct. at 2138-39, 170 L. Ed. 2d at 1021. Similarly, here, the Minnesota statute is also remedial and does not include "reliance" as an expressly-listed element of the cause of action. Indeed, the Minnesota statute is to the contrary:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, *whether or not any person has in fact been misled, deceived, or damaged thereby*, is enjoinable as provided in section 325F.70.

Minn. Stat. § 325F.69 (emphasis added). Similarly:

> In order to prevail in an action under sections 325D.43 to 325D.48, a complainant *need not prove* competition between the parties or *actual confusion or misunderstanding*.

Minn. Stat. § 325D.44 (emphasis added).

Reliance is no more an element of the cause of action under the Minnesota statute than it is under federal RICO. The defendant in *Bridge* then attempted, as does SJM here, to import reliance "in through the back door," by contending that the proximate-

cause analysis of RICO precisely tracks the proximate-cause analysis applicable to common law fraud. The Supreme Court rejected this second argument as well, *id.*, 128 S. Ct. at 2142, 170 L. Ed. 2d at 1025, holding:

> Reliance is not a general limitation on civil recovery in tort; it is a specialized condition that happens to have grown up with common law fraud. That "specialized condition," whether characterized as an element of the claim or as a prerequisite to establishing proximate causation, simply has no place in a remedial scheme keyed to the commission of mail fraud, a statutory offense that is distinct from common-law fraud and that does not require proof of reliance.

*Id.*, 128 S. Ct. at 2142-43, 170 L. Ed. 2d at 1025-26 (citations and internal quotations omitted).

That "specialized condition" similarly has no place in Minnesota's remedial statutory scheme, a scheme which, like RICO, is also distinct from common-law fraud and does not require proof of reliance.[7] *Bridge*, therefore, establishes that the Eighth Circuit went in the wrong direction when it imported reliance into its analysis of the Minnesota Consumer Protection Act as part of what must be shown to establish proximate causation under the Act.

---

[7] SJM's assertion that *Bridge* establishes that a plaintiff must show that "someone relied on the defendant's misrepresentations," is also wrong. Rather, the Court held that "[i]n most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation… But that fact that proof of reliance is often used to prove an element of the plaintiff's cause of action, such as the element of causation, does not transform reliance itself into an element of the cause of action." *Id.*, 128 S. Ct. at 2144, 170 L. Ed. 2d at 1027 (citations and internal quotations omitted). Furthermore, SJM's contention ignores that long-established law, *see supra*, that in cases of omissions, as opposed to positive misrepresentations, reliance is presumed if *objectively* expected.

With the landscape change brought about by the Supreme Court's decision, this Court can and should revisit the issue of class certification based upon SJM's material misrepresentations because the defense of individual reliance has been rejected in the context of claims brought under a remedial statute.

## III. Conclusion

Based on the foregoing points and authorities, and on those advanced in Plaintiff's Second Renewed Motion for Class Certification, SJM's Motion to Strike should be DENIED and Plaintiffs' motion should be GRANTED.

Respectfully submitted,

**ZIMMERMAN REED, P.L.L.P.**

Dated: September 18, 2008

s/David M. Cialkowski
CHARLES S. ZIMMERMAN
J. GORDON RUDD, JR.
DAVID M. CIALKOWSKI
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402
(612) 341-0400

**LEVY, ANGSTREICH, FINNEY, BALDANTE, RUBENSTEIN & COREN, PC**
STEVEN E. ANGSTREICH
MICHAEL COREN
CAROLYN C. LINDHEIM
Woodcrest Pavilion, Suite 100
Ten Melrose Avenue, Suite 450
Cherry Hill, New Jersey 08003
(856) 424-8967

**GREEN, JACOBSON & BUTSCH, P.C.**
JOE D. JACOBSON
7733 Forsyth, Suite 700
St. Louis, MO 63105
(314) 862-6800

**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C**
DANIEL W. SIGELMAN
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
(202) 408-4600

**MURPHY SMALL & ASSOCIATES**
PATRICK J. MURPHY
MICHAEL R. SMALL
1100 East Bridger
Las Vegas NV 89101
(702) 259-4600

**THE LAW OFFICE OF FLETCHER M. JOHNSON LLC**
FLETCHER M. JOHNSON, JR.
14 Westbury Park Way, Suite 100
Bluffton, South Carolina 29910
(843) 757-6444

Counsel for Plaintiff Lester Grovatt