# Exhibit A

Burtch v. Oakland Park, Inc.
Minn.App.,2006.
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION IS DESIGNATED AS UNPUBLISHED AND MAY NOT BE CITED EXCEPT AS PROVIDED BY MINN. ST. SEC. 480A.08(3).

Court of Appeals of Minnesota.
Keith BURTCH, et al., Appellants (A05-1585),
James Retterath, et al., Appellants (A05-1587),
v.
OAKLAND PARK, INC., Respondents,
andOakland Park, Inc., et al., Respondents,
v.
Keith Burtch, Appellant (A05-1588),
Linnea Burtch, et al., Appellants (A05-1589).
**Nos. A05-1585, A05-1589, A05-1587, A05-1588.**

July 3, 2006.
Review Denied Sept. 27, 2006.

Mower County District Court, File Nos. C6-99-1550, C8-00-1041, C8-02-1920, CX-00-490.

Donaldson V. Lawhead, Brandon V. Lawhead, Lawhead Law Offices, Austin, MN, for appellants.
L.J. Rotman, Thomas P. Kane, Mark T. Berhow, Hinshaw & Culbertson, L.L.P., Minneapolis, MN, for respondents.
Charles H. Thomas, Law Offices of Southern Minnesota Regional Legal Services, Inc., Mankato, MN, for amicus curiae.
Allen H. Gibas, Allen H. Gibas, P.A., Minneapolis, MN, pro se amicus curiae.

Considered and decided by SHUMAKER, Presiding Judge; KLAPHAKE, Judge; and ROSS, Judge.

**UNPUBLISHED OPINION**

SHUMAKER, Judge.
*1 Mobile-home park residents challenge the amount of the district court's award of attorney fees under the private-attorney-general statute as having been improperly calculated. The park owner contends that the court improperly awarded fees for aspects of the litigation that conferred no public benefit. Because the district court neither abused its discretion nor committed clear error in its attorney-fee award, we affirm.

**FACTS**

These are consolidated appeals from four related district-court actions by residents of a mobile-home park against the owner of the park, Oakland Park, Inc., a closely held corporation whose sole shareholders and officers are Michael Myers and Michael Pagliai.

The initial lawsuit, known as the Burtch Litigation, was started on November 5, 1999, and alleged violations of Minn.Stat. §§ 327C.02 to .15 (1998), governing manufactured-home-park lot rentals. After ruling on various motions, the district court bifurcated the trial, tried one count in the action, and found that Oakland Park had violated various statutory provisions in its operation of the mobile-home park. There followed further motions, and the residents appealed and petitioned the court of appeals for discretionary review. The appeal was dismissed and the petition denied.

On July 10, 2003, the residents moved for leave to amend their complaints to add as defendants the officers, shareholders, and employees of Oakland Park and to assert against them claims of personal liability. Ruling that the motion was untimely, that the residents had not shown good cause for the untimely amendment, that Oakland Park would be prejudiced if the motion were granted, and that the proceedings would be significantly delayed if parties were added, the district court denied the motion on October 8, 2003.

By August 23, 2004, the residents had reached a settlement with Oakland Park. One group of residents settled in July 2003, and the court entered its judgment on July 19, 2004, dismissing the action in its entirety with prejudice and on the merits but "reserving claims for attorneys' fees, costs, disbursements and sanctions as may be awarded by

this Court."On August 23, 2004, the court entered a similar order as to the remaining residents, except those who were deceased, with a similar reservation of fees, costs, disbursements, and sanctions.

After a hearing that began on April 25, 2005, the court awarded to the residents attorney fees, costs, and disbursements under Minn.Stat. §§ 327C.15, 8.31, subd. 3(a) (2004), the so-called "private attorney general" statute, as follows: $298,775 as attorney fees, $13,000 as paralegal fees, and $30,334.56 as costs and disbursements.

On appeal, the residents challenge the district court's denial of their motion to amend their complaints to add individual defendants and challenge the amount of the fee award. By notice of review, Oakland Park challenges that portion of the attorney-fees award relating to litigation that allegedly did not benefit the public.

**DECISION**

*Motion to Amend*

***2** Rulings on motions to amend pleadings rest within the discretion of the district court and will not be reversed absent a showing of a clear abuse of that discretion. *Warrick v. Giron,* 290 N.W.2d 166, 169 (Minn.1980). Similarly, the district court's ruling on a request to modify a pretrial order, such as a scheduling order, is reviewed for an abuse of discretion. *Cotroneo v. Pilney,* 343 N.W.2d 645, 648 (Minn.1984).

The residents urge that amendments of pleadings are to be liberally allowed and that a pleading can be amended during or even after a trial. Their amended complaints would assert individual liability on the part of the Oakland Park officers, shareholders, and employees for corporate violations of Minn.Stat. §§ 327C.02 to .15 (1998). The residents acknowledge that the manufactured-home-park statutes do not provide a cause of action against individuals, but they analogize to other corporate litigation in which corporate officers and managing agents have been held personally liable for corporate obligations.

Although it is doubtful that individual liability can be predicated on corporate violations of Minn.Stat. § 327C.02, et. seq ., the district court denied the motion because it was untimely and to grant it would substantially prejudice Oakland Park.

The court noted that the motion, heard on July 10, 2003, was brought in contravention of the scheduling order of February 5, 2001, and that several dispositive motions had been decided, the first part of the bifurcated trial had been completed, several amendments to the complaints had already been made, and the court was ready to move to the jury-trial stage of the litigation. The court explained that if the amendment were allowed, four new parties would be added, discovery deadlines would be extended, the scheduling order would be altered, and the next stage of trial would not occur until late 2005 or 2006. This would be approximately a two-year delay in a matter already four years old. The court also indicated that Oakland Park would suffer prejudice not only from the substantial delay that would result but also from the "vacation of current judgments." Finally, the court stated that the residents had not shown good cause for the amendment, considering that they had opportunities to make their motion when they filed other motions on July 14, 2000; January 10, 16, and 25, 2001; April 4, 2001; September 25, 2001; February 14, 2002; and May 1 and 9, 2002.

Appellate courts give considerable deference to the district court in determining case-calendar issues. *Rice v. Perl,* 320 N.W.2d 407, 412 (Minn.1982). And although the district court ordinarily should be reasonably liberal about granting a motion to amend a pleading, the court may properly consider the stage of the proceeding at which the motion is made and whether there is good cause for leave to amend. *See Tomlinson Lumber Sales v. J.P. Harrold Co.,* 263 Minn. 470, 474-75, 117 N.W.2d 203, 207 (1962) (holding that "the liberality to be shown in the allowance of amendments depends in part upon the stage of the action" (quotation omitted)); *In re Milk Prods. Antitrust Litig.,* 195 F.3d 430, 437 (8th Cir.1999) (applying the federal counterpart to Minn. R. Civ. P. 16 and holding that the district court "may properly require that good cause be shown for leave to file an amended pleading that is substantially out of time under that [court's scheduling] order").

***3** The residents argue that the two corporate officers who would be added to the lawsuit, Myers and Pagliai, "not only had notice of this lawsuit, but also

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

actually participated in it over its six-year duration."Thus, adding them would not be a surprise. But because the residents knew the identities and involvement of these parties from the outset of the litigation six years earlier, and because claims against them would implicate the very same statute as the claims against the corporation, it is difficult to understand why a motion to join these individuals could not have been made in a timely manner. The residents offer no explanation for their failure to make their motion earlier, concentrating instead on demonstrating why they believe the statute allows claims against individuals.

The principle regarding the liberal grant of leave to amend pleadings should not be interpreted to override the authority of the district court to manage its caseload in a reasonable manner, the need for orderly case processing, the obviation of additional litigation burdens to the current parties, and the right of the current parties to have the issues determined with reasonable despatch. The propriety of a refusal to grant leave to add parties is especially compelling when, as here, the residents could have made their motions within the period allotted for such motions and have given no reason for their failure to do so. The district court did not abuse its discretion in denying the residents' motion for leave to amend their complaints.

*Attorney Fees in General*

The district court labeled the four actions by the residents as the Burtch Litigation, the Retterath Litigation, the Defamation Litigation, and the Eviction Litigation. The residents sought attorney fees in all of the actions. The court awarded fees only for the Burtch litigation. The residents do not challenge that award per se but dispute the amount of the award, contending that the court should have applied the current hourly rate and a multiplier in computing the fees. The residents also contend that the court erred as a matter of law by not awarding fees for the other three cases, which the residents call collectively the "Retaliatory Litigation," arguing that those cases were intertwined with the Burtch case and that all matters arose out of common facts. Oakland Park does not dispute the award of reasonable attorney fees for the Burtch litigation but asserts that the court's award exceeded that portion of the Burtch litigation that was maintained for the benefit of the public. Oakland Park seeks a remand for the district court's determination of what fees related to a public benefit.

When a violation of Minn.Stat. § 327C.15 (2004) is found, the district court may award reasonable attorney fees under Minn.Stat. § 8.31, subd. 3a (2004), the "private attorney general" statute. In determining an award of attorney fees, the court must consider both general and special factors.

***4** The general factors include "the time and labor required; the nature and difficulty of the responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and the client."*State by Head v. Paulson,* 290 Minn. 371, 373, 188 N.W.2d 424, 426 (1971).

The special factors to be considered in determining a fee award under section 8.31, subd. 3a, are the need to provide incentive to counsel to act as a private attorney general so as to eliminate financial barriers to the vindication of citizens' rights, and "the degree to which the public interest is advanced by the suit."*Liess v. Lindemyer,* 354 N.W.2d 556, 558 (Minn.App.1984). The supreme court has held that the private-attorney-general statute under which the residents seek the fee awards "applies only to those claimants who demonstrate that their cause of action benefits the public."*Ly v. Nystrom,* 615 N.W.2d 302, 314 (Minn.2000). Only matters of public interest are within the scope and intent of Minn.Stat. § 8.31, subd. 3a, and when the conduct complained of, no matter how reprehensible, affects only individuals, an award of fees under that statute is not permitted. *Id.*

An award of attorney fees under the private-attorney-general statute is reviewed on appeal for an abuse of discretion. *State by Humphrey v. Alpine Air Prods., Inc.,* 490 N.W.2d 888, 896 (Minn.App.1992), *aff'd,*500 N.W.2d 788 (Minn.1993). An appellate court will not reverse the district court's award of attorney fees unless its findings of fact were clearly erroneous or there was an "abuse as to the discretional margin involved in its allowance."*Reome v. Gottlieb,* 361 N.W.2d 75, 77 (Minn.App.1985).

*Attorney Fees and Costs for Appeal*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In its "Verdict" filed on August 20, 2001, the district court held that new lease provisions requiring residents to be responsible for their own sewer and water utilities were substantial modifications of a preexisting rule. Oakland Park thereafter argued in its motion for a new trial that the lease provisions were not a "rule" as defined by statute. In its "Amended Verdict" filed February 1, 2001, the court reversed its earlier determination and held that the lease provisions were not a "rule" and thus were not subject to the statutory requirements for rules.

Relying on advice in 2 David F. Herr & Roger S. Haydock, *Minnesota Practice* § 54.17 (2004); the district court's statement that it would be best to resolve the liability issues, including appellate review, before trying the damages issues; and on the district court's order that judgment be entered immediately "so as to begin tolling the parties' right to perfect an appeal," the residents appealed from the judgment entered on the Amended Verdict.

Upon receipt of the appeal, this court questioned jurisdiction and ordered the parties to submit informal memoranda addressing the jurisdictional issue. In that order, this court cited Minn. R. Civ. P. 54.02 and *In re Commodore Hotel Fire & Explosion Case,* 318 N.W.2d 244, 246-47 (Minn.1982). Only the residents submitted a memorandum, and they acknowledged that the partial judgment was not appealable as of right. But they requested discretionary review. This court held that the residents failed to show "a compelling reason for discretionary review," and denied the request and dismissed the appeal.

***5** The residents argue that, despite the dismissal of the appeal, they should be awarded attorney fees and costs for the appeal, for had they not made the challenge the court would have lost jurisdiction. They requested an award of attorney fees for approximately 79 hours of legal services. Because the appeal was dismissed, the district court found that none of the expenditures related to the appeal were reasonable and awarded neither fees nor costs as to that matter.

Attorney fees for time not reasonably expended should not be included in a fee award. *Specialized Tours, Inc. v. Hagen,* 392 N.W.2d 520, 542 (Minn.1986). Although we understand the residents' claim that they relied on a secondary authority in a practice manual and on language in the district court's order, caselaw research would readily have demonstrated that what existed was a partial adjudication of a claim and not a partial judgment disposing of an entire claim, and that Minn. R. Civ. P. 54.02, cited by the district court, does not apply to a partial adjudication of a single claim. *See In re Commodore Hotel Fire & Explosion Case,* 318 N.W.2d at 246-247.It is not reasonable to require Oakland Park to pay for legal work performed unnecessarily and as a result of a misunderstanding of the law. Thus, the district court did not abuse its discretion in denying fees and costs related to the attempted appeal of the utilities issue.

*Attorney Fees for Retterath, Eviction, and Defamation Actions*

The district court denied all attorney fees related to the Retterath, Eviction, and Defamation litigation because it found that none of those actions conferred a public benefit, as required under the private-attorney-general statute.

The residents argue that those actions were aimed at preventing Oakland Park's retaliatory conduct and that they were intertwined with a common core of facts in the Burtch litigation, which the court found to have conferred a substantial public benefit. The court acknowledged a similarity among the four cases but noted that they differed in legal theories and that it was easy to separate the work and time attributable to each case. The court also found that the residents alleged that Oakland Park retaliated because of the Burtch litigation and that the benefits of the other actions extended only to the involved residents.

As previously noted, attorney fees are available only for actions that demonstrably benefit the public. *Ly,* 615 N.W.2d at 314.In exercising its discretion to award attorney fees, the district court must determine "the degree to which the public interest is advanced by the suit."*Lies,* 354 N.W.2d at 558.We recognize that lawsuits brought solely to redress private injuries might have an abstract public benefit, insofar as they serve as a warning to others not to engage in similarly injurious conduct. So, a lawsuit for damages for a dog bite against an owner who has failed to restrain his dog might "warn" others of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

consequences of that conduct, but the public benefit is tangential to the principal purpose of the action, namely, the redress of a private wrong. Attorney fees would not be recoverable in that case because the public benefit is only incidental.

*6 The residents argue that Minn.Stat. § 327C.12 (2004) prohibits Oakland Park from engaging in retaliatory conduct, and they argue that the deterrence against retaliation confers a public benefit. But the alleged retaliation pertained to certain individuals and to particular matters relating to the unique circumstances of those individuals, rather than to the residents as a whole or to the general public.

The Retteraths complained about Oakland Park's misrepresentations and interference with their attempts to sell their mobile home. The defamation litigation involved allegedly defamatory statements by certain residents regarding Oakland Park. And the eviction action involved an effort by Oakland Park to evict Linnea Burtch for failure to pay for utilities. The district court ruled that the benefits of these respective actions extended only to the parties involved. The Retterath and the eviction lawsuits were focused principally on the particular circumstances of the individual parties and those parties sought redress of their specific injuries. Although it could be argued that success by the residents who were parties to those actions might serve to teach Oakland Park that it could not violate residents' rights with impunity, the principal purpose of each matter was to deal with particular problems encountered by particular individuals rather than a general "public" issue. The court did not abuse its discretion in declining to award attorney fees for the Retterath and eviction litigations and did not commit clear error by concluding that those actions did not confer the type of public benefit contemplated by applicable statues and caselaw.

The defamation action presents a closer question because it involved Linnea Burtch and an association consisting of the individual residents in the Burtch action. Oakland Park commenced this action, alleging that Linea Burtch and the association of residents made false statements about Oakland Park to the department of commerce. In their counterclaim, the residents alleged that the lawsuit was retaliatory because of the Burtch litigation.

We note first that the mere fact that this action involves all of the residents in the Burtch action does not support the conclusion that the litigation was for the benefit of the public. *See* Ly, 615 N.W.2d at 314 (holding that matters involving a finite group of shareholders did not extend benefit to the general public). The defamation action involved a claim that specific individuals made defamatory statements about Oakland Park. The resident-defendants contended that the lawsuit was brought as a retaliation against them for having sued Oakland Park. Except in a tangential sense, there seems to be no demonstrable public benefit from the residents' counterclaim in this litigation. Neither the lawsuit nor its outcome would affect anyone except the parties, except in the broad, incidental way explained above. This action is similar to *Heaven & Earth, Inc. v. Wyman Props. Ltd. P'ship,* 2003 WL 22680935 (D.Minn. Oct.21, 2003), in that the mere fact that certain misrepresentations would affect a finite group of tenants was not enough from which to infer that the general public would be benefited by the action. The residents here have not demonstrated the essential analytical link between an alleged retaliation and general public benefit. Thus, the district court did not err in concluding that attorney fees for this litigation were not appropriate.

*Rate of Awarded Attorney Fees*

*7 The residents in the Burtch litigation moved for an award of attorney fees and costs. The court awarded reduced amounts. The residents do not challenge the reductions per se but contend that the court abused its discretion in improperly calculating the amount of attorney fees to which the residents are entitled, given the purposes of the private-attorney-general statute.

The district court acknowledged the dual purpose of the private-attorney-general statute to eliminate financial barriers for plaintiffs seeking to vindicate their rights and to give incentive to legal counsel to act as a private attorney general. The court then concluded that an award of attorney fees must be based both on the policies underlying the private-attorney-general statute and the factors in *Paulson,* 290 Minn. at 373, 188 N.W.2d at 426.The residents do not appear to challenge this conclusion.

Considering the *Paulson* factors, the court found that the reasonable amount of time the residents' attorneys

spent was 471.6 hours by Donaldson Lawhead and 1,926.65 hours by Brandon Lawhead; that the residents prevailed in the lawsuit; that the residents, primarily elderly, low-income people, would not have the financial ability to pursue their claims without an award of attorney fees; that an award of fees is necessary to give incentive to legal counsel to take such a case; that the litigation conferred a significant public benefit; that the payment of fees had been delayed; that there were considerable risks for the residents' attorneys in accepting this litigation; that the attorneys had "average" reputations in the legal community; that the case was not complex but was time-consuming; that counsel billed at conservative rates for the region; and that the "results of the Burtch litigation were positive, but not exceptional."The court's findings and conclusions clearly demonstrate that it considered both the purposes of the private-attorney-general statute and the *Paulson* factors in determining whether any award was appropriate and what that award should be.

The court then calculated the award by applying the "lodestar" method set forth in *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). Doing so, the court multiplied Donaldson Lawhead's hourly rate of $225 by 471.6 hours and awarded fees of $106,110. The court found that Brandon Lawhead's hourly rate increased from $95 an hour at the outset of the litigation to $150 an hour at the time of the award. The court found that, for Brandon Lawhead's legal services, "$100 per hour is reasonable and appropriate within the prevailing market rates" in the region for lawyers of comparable experience. The court multiplied $100 by 1,926.65 hours and awarded a fee of $192,665. The combined fee award for the Burtch litigation was $298,775. The court also determined that a 1.0 multiplier was warranted.

The residents contend that, even though the court found that the payment of attorney fees was delayed, it did not apply any enhancement factor to compensate for the delay. They also argue that the court should have used current, rather than historical, fee rates. They further urge that inflation eroded the fee recovery and that the court should have applied at least a 1.3 multiplier.

***8** The record shows that the Burtch case was aggressively litigated on both sides. That approach in and of itself appears to have accounted for some delay. Oakland Park's defensive tactics contributed to delays to some degree, but not more so than the residents' approach that entailed untimely submissions; continuances; the removal of the assigned judge; and a failed, improvident appeal. Furthermore, the acrimony of the respective parties appears to have fueled tactics that otherwise likely would not have been employed in a case involving straightforward issues. This is not a case in which it is reasonably clear that the residents' best efforts to prosecute their claims expeditiously were thwarted by the conduct of Oakland Park and its attorneys. Rather, there was complicity by the residents and their attorneys in procedures that produced delays. The district court did not abuse its discretion in declining to apply an enhancement factor to the fee award so as to account for the delay in payment.

Nor did the court abuse its discretion in awarding fees based on a rate of $100 an hour for Brandon Lawhead, despite his rate of $150 an hour during the last two and one-half years of the litigation. The residents cite *Lightfoot v. Walker,* 826 F.2d 516 (7th Cir.1987), and *Standley v. Chilhowee R-IV Sch. Dist.,* 5 F.3d 319 (8th Cir.1993), for the proposition that current fee rates must be used to account for payment delays, or, if historical rates are used, an adjustment must be made. But those cases are not authority that current rates or adjusted historical rates are required in attorney-fee awards. The *Paulson* factors create a broad perspective against which to test the reasonableness of fees. The district court applied the *Paulson* factors and explained their application. The ultimate question is, "What fee is reasonable when all factors are applied?"Delay in the fee payment is a consideration but it is not an especially strong consideration when the delay has been contributed to by the prevailing parties. The residents do not acknowledge on appeal their role or that of their counsel in the delay that occurred.

The court found that average attorneys did accept risks, litigated a not particularly complex case to a positive but not exceptional conclusion, and received a fee award based on a rate that was conservative but yet within the prevailing range in the community. Although the court could have calculated fees at a higher rate, we are unable to conclude that it abused its discretion in declining to do so, considering all of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the *Paulson* factors.

The residents argue that inadequate fee awards, such as that here, will give no incentive to lawyers to take risky cases under the private-attorney-general statute. As we have indicated, the award was not inadequate when all appropriate factors are considered, and a legal fee of nearly $300,000 is by no means so small that other lawyers would be unwilling to accept a similar case in the current highly competitive attorney-business market, or in the future.

*Respondents' Issue*

***9** Oakland Park contends that much of the Burtch litigation was devoted to pursuing benefits only to the residents and not to the general public. Oakland Park argues that the case should be remanded so that the district court can eliminate those portions for attorney fees and costs not related to a public benefit. Specifically, Oakland Park urges that August 17, 2001, the date of the court's “verdict” resolving Count I of the amended complaint, is the last date on which any public benefit was conferred by the litigation.

A “public benefit” should be viewed not only as a determination of liability but also as a determination of the consequences of that liability. The most significant aspect of the Burtch litigation was its deterrent effect on mobile-park owners from future similar violations of residents' rights. That effect is not complete merely upon a resolution of liability. Rather, potential future violators must be shown that the consequence of a violation could be a significant monetary award. This effect did not come about until the Burtch litigation was completed. The mere fact that individuals might also obtain personal damages awards does not detract from the overall public benefit of the completed litigation. Thus, we find no merit in Oakland Park's contention that the law requires that attorney fees and costs be limited as they suggest.

**Affirmed.**

Minn.App.,2006.
Burtch v. Oakland Park, Inc.
Not Reported in N.W.2d, 2006 WL 1806196 (Minn.App.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit B

Cavanaugh v. Hometown America, LLC
Minn.App.,2006.
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION IS DESIGNATED AS UNPUBLISHED AND MAY NOT BE CITED EXCEPT AS PROVIDED BY MINN. ST. SEC. 480A.08(3).

Court of Appeals of Minnesota.
Richard CAVANAUGH, et al., Respondents,
v.
HOMETOWN AMERICA, LLC, f.k.a Chateau Communities, Inc., d/b/a Cimarron Manufactured Home Park, Appellant.
**No. A05-595.**

March 21, 2006.
Review Denied May 24, 2006.

**Background:** Tenants of brought class action against landlord alleging violation of the Manufactured Home Park Rental law by installing meters and charging separately for sewer and water. The District Court, Washington County, certified the class and later entered judgment for tenants. Landlord appealed.

**Holdings:** The Court of Appeals, Worke, J., held that:
(1) tenants satisfied "typicality" and "representivity" requirements;
(2) tenants satisfied "predominance" requirement;
(3) tenants satisfied "superiority" requirement;
(4) evidence was sufficient to support jury award;
(5) refusal to admit testimony by landlord's expert was not an abuse of discretion;
(6) tenants were entitled to award of attorney fees;
(7) attorney fee award was not an abuse of discretion; and
(8) landlord was entitled to offset for foregone rent increase.

Affirmed.

West Headnotes

**[1] Parties 287 35.79**

287 Parties
287III Representative and Class Actions
287III(C) Particular Classes Represented
287k35.79 k. Landowners; Tenants; Condominium Interests. Most Cited Cases

Tenants satisfied "typicality" and "representivity" requirements for certification of class in action alleging landlord violated Manufactured Home Park Rental law, given that tenants alleged that landlord installed meters and charged tenants separately for sewer and water, although those charges varied from tenant to tenant, and all claims involved the same legal determination of whether landlord's conduct was a violation of the Manufactured Home Park Rental law, and landlord failed to refute the allegations and failed to show that attorneys for tenants were not qualified, experienced, and capable of conducting the litigation. M.S.A. § 327C.15; 48 M.S.A., Rules Civ.Proc., Rule 23.01.

**[2] Parties 287 35.79**

287 Parties
287III Representative and Class Actions
287III(C) Particular Classes Represented
287k35.79 k. Landowners; Tenants; Condominium Interests. Most Cited Cases

Common issues predominated as required for certification of class in tenants' action against landlord for alleged violation of the Manufactured Home Park Rental law, given that landlord was alleged to have substantially modified all the leases of park tenants by charging them separately for sewer and water, which significantly diminished landlord's material obligations, and tenants sought a common legal remedy that did not require individualized proof. M.S.A. § 327C.01; 48 M.S.A., Rules Civ.Proc., Rule 23.02.

**[3] Parties 287 35.79**

287 Parties
287III Representative and Class Actions
287III(C) Particular Classes Represented
287k35.79 k. Landowners; Tenants;

Condominium Interests. Most Cited Cases
Tenants satisfied the "superiority" requirement for class certification of claim that landlord violated Manufactured Home Park Rental law by making substantial modification in the leases of all tenants by charging them separately for sewer and water, given that class certification allowed issues to be given a meaningful hearing and to be tried efficiently in a single action. M.S.A. § 327C.01 et seq.; 48 M.S.A., Rules Civ.Proc., Rule 23.02(c).

**[4] Landlord and Tenant 233 386**

233 Landlord and Tenant
233XII Mobile Homes and Mobile Home Parks
233k383 Rent and Other Charges
233k386 k. Proceedings and Relief. Most Cited Cases
Evidence was sufficient to support jury's award of $288,697 in damages in tenants' class action against landlord for violations of the Manufactured Home Park Rental law; tenants introduced evidence regarding increased costs after landlord changed metering and made separate charges for sewer and water and calculated the damages at $400,000 based on the increased costs.

**[5] Evidence 157 146**

157 Evidence
157IV Admissibility in General
157IV(D) Materiality
157k146 k. Tendency to Mislead or Confuse. Most Cited Cases

**Trial 388 56**

388 Trial
388IV Reception of Evidence
388IV(A) Introduction, Offer, and Admission of Evidence in General
388k56 k. Cumulative Evidence in General. Most Cited Cases
Trial court's refusal to admit trial testimony of landlord's expert real estate appraiser regarding rental rates at other manufactured-home parks was not an abuse of discretion, given that testimony would confuse jury regarding true issue, which was whether landlord violated Manufactured Home Park Rental law by unilaterally charging tenants separately for sewer and water, and the testimony was cumulative. M.S.A. § 327C.02; 50 M.S.A., Rules of Evid., Rule 403; 50 M.S.A., Rules of Evid., Rule 702.

**[6] Costs 102 194.42**

102 Costs
102VIII Attorney Fees
102k194.42 k. Public Interest and Substantial Benefit Doctrine; Private Attorney General. Most Cited Cases
Tenants were entitled to award of attorney fees as prevailing party under the private attorney general statute in class action against landlord for violation of the Manufactured Home Park Rental law, given that law was enacted to protect manufactured home owners, who were members of the public, and suit furthered the public interest. M.S.A. §§ 8.31, 327C.01 et seq.

**[7] Costs 102 194.42**

102 Costs
102VIII Attorney Fees
102k194.42 k. Public Interest and Substantial Benefit Doctrine; Private Attorney General. Most Cited Cases
Attorney fee award under the private attorney general statute of one-half of the fees requested in class action brought by tenants for landlord's violation of the Manufactured Home Park Rental law was not an abuse of discretion, given that under one-third contingency fee agreement, attorney's would received approximately the amount awarded by the trial court, trial court considered attorneys' experience, time and labor involved, and deducted fees requested for an unsuccessful interlocutory appeal. M.S.A. §§ 8.31, 327C.15.

**[8] Landlord and Tenant 233 386**

233 Landlord and Tenant
233XII Mobile Homes and Mobile Home Parks
233k383 Rent and Other Charges
233k386 k. Proceedings and Relief. Most Cited Cases
Landlord was entitled to offset of foregone rent increase by charging tenants separately for sewer and water from tenant's damages for landlord's violation of Manufactured Home Park Rental law by the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

unilateral imposition of the charges, given that landlord sent tenants a notice that the separate charges were made in lieu of an increase in rent. M.S.A. § 327C.06.

Washington County District Court, File No. C4-02-2886.
Kay Nord Hunt, Barry A. O'Neil, Valerie Sims, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, MN, for respondents.
John F. Bonner, III, Thomas F. DeVincke, Bonner & Borhart, LLP, Minneapolis, MN, for appellant.

Considered and decided by WRIGHT, Presiding Judge; DIETZEN, Judge; and WORKE, Judge.

**UNPUBLISHED OPINION**

WORKE, Judge.
***1** On appeal in this class-action suit, appellant argues that (1) the district court should not have allowed this action to proceed as a class action when individualized questions existed regarding damages, and the record did not show typicality of circumstances of the class members; (2) the district court abused its discretion by disallowing certain expert testimony; (3) the district court erred in awarding attorney fees to respondents under Minn.Stat. § 8.31 (2004) (private attorney-general statute) when appellant's conduct was a violation of Minn.Stat. § 327C.15 (2004) and directed at tenants rather than the public at large; and (4) the record does not support the damages awarded by the jury. We affirm.

**DECISION**

***Class Certification***

This issue was raised in *Schaff v. Chateau Communities, Inc.*, No. A04-1246 (Minn.App. July 26, 2005), *review denied* (Minn. Sept. 28, 2005) a companion case to this matter. Under the same reasoning in *Schaff,* we conclude that the district court did not abuse its discretion in determining class certification was appropriate here.

Appellant argues that the district court abused its discretion because respondents cannot satisfy the class-certification requirements of Minn. R. Civ. P. 23 (1989) (amended 2006). District courts have considerable discretion when determining whether a class action is maintainable. *Peterson v. BASF Corp.,* 618 N.W.2d 821, 825 (Minn.App.2000), *review denied* (Minn. Jan. 26, 2001). A district court may not certify a class unless the class satisfies the requirements of rule 23. *Lewy 1990 Trust ex rel. Lewy v. Inv. Advisors, Inc.,* 650 N.W.2d 445, 451 (Minn.App.2002), *review denied* (Minn. Nov. 19, 2002)."Class certification under rule 23 is a two-step process."*Id.* The class must satisfy all four mandatory requirements of rule 23.01, and the class must satisfy the requirements of one of the subdivisions of rule 23.02. *Id.* at 451-52.

[1] Respondents argue that the class satisfies the typicality and representative requirements of Minn. R. Civ. P. 23.01. Rule 23.01 provides, in pertinent part:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if
>
> ...
>
> (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (d) the representative parties will fairly and adequately protect the interests of the class.

The prerequisites of typicality and representivity exist "to insure that the claims of the class members are fully presented and vigorously prosecuted."*Streich v. Am. Family Mut. Ins. Co.,* 399 N.W.2d 210, 215 (Minn.App.1987), *review denied* (Minn. Mar. 25, 1987). Typicality looks at whether the interests of the representative parties are compatible with those of the putative class that they seek to represent. *Id.* Representivity "means the representative parties' interests must coincide with the interests of other class members and the parties and their counsel will competently and vigorously prosecute the lawsuit."*Id.* Factors used to determine if the representivity requirement is satisfied include:

> ***2** (1) whether the representatives' interests are sufficiently identical to those of absent class members so that the representatives will vigorously prosecute the suit on their behalf; (2) whether the

attorneys are qualified, experienced, and capable of conducting the litigation; and (3) whether the representatives have any interests in conflict with the objective of the class they represent.

*Id.*

Here, appellant allegedly injured all of the class members in the same manner. Therefore, respondents' claims are based on the same legal theories. While the class members were not all injured to the same degree, their injuries arose from appellant's unilateral change to the terms of the parties' leases. All of the claims also involve the same legal determination: whether appellant violated Minn.Stat. § 327C (2004). Appellant offers no evidence to refute the assertion that the attorneys for the representative class members are capable of conducting a vigorous class-action litigation. Because respondents' claims as the representative members of the class are compatible with those of the other class members and because appellants failed to show that the attorneys are not qualified, experienced, and capable of conducting the litigation, the requirements of typicality and representivity are met.

[2] Respondents argue further that the requirement under Minn. R. Civ. P. 23.02 that common issues "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy" has been met. "No bright-line rules determine whether common questions predominate."*Lewy 1990 Trust,* 650 N.W.2d at 455.Instead, a district court must consider "whether the generalized evidence will prove or disprove an element on a simultaneous, class-wide basis that would not require examining each class member's individual position. *Id.* Thus, a class action is appropriate when common questions representing a significant issue in a case can be resolved in a single action. *Id*.

Here, the district court was required to make a preliminary determination of whether class-action status was appropriate to resolve respondents' claims that appellant violated Minn.Stat. § 327C. Under section 327C, " '[s]ubstantial modification' means any change in a rule which: (a) significantly diminishes or eliminates any material obligation of the park owner; (b) significantly diminishes or eliminates any material right, privilege or freedom of action of a resident; or (c) involves a significant new expense for a resident."Minn.Stat. § 327C.01, subd. 11. There is no individualized proof requirement in subsection (a). The rule requires only that a material obligation of the park owner be significantly diminished or eliminated. Thus, because one of the elements here is common to the class and predominates, certification is appropriate. *See Lewy 1990 Trust,* 650 N.W.2d at 455.

*3 In addition, respondents seek to remedy a common legal grievance. Appellant created a single, uniform change to the leases of all of the park tenants. The change was widespread and not limited to the named respondents. Thus, the common issues relating to respondents' claim here predominate over questions affecting individual class members, and individualized proof is unnecessary to prove the elements of substantial modification, as defined by Minn.Stat. § 327C.01.

[3] Finally, for certification under rule 23.02(c), a district court must find that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy."Factors to consider in a "superiority" analysis include "manageability, fairness, efficiency, and available alternatives."*Streich,* 399 N.W.2d at 218.A class action is most often needed in litigation when the individual claims are small. *Id.*"When collective adjudication ... makes it possible for class members with small claims to bring suit and enforce the substantive law, a class action is superior to other available methods for the fair adjudication of the controversy."*Lewy 1990 Trust,* 650 N.W.2d at 457.We conclude that certifying the class action here (1) allows the issues raised to be given a meaningful hearing; (2) allows the common issues to be tried efficiently in a single action; and (3) avoids inundating the district courts with individual lawsuits that would burden the state's judicial resources. Therefore, the district court did not abuse its discretion in determining class certification was appropriate.

***Sufficiency of Evidence***

Appellant argues that it is entitled to a new trial because the jury's award of damages is not supported by sufficient evidence and is excessive and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

inconsistent. This court will set aside a damages award if it is "manifestly and palpably contrary to the evidence."*Levienn v. Metro. Transit Comm'n,* 297 N.W.2d 272, 273 (Minn.1980). But this court must consider the evidence in the light most favorable to the verdict. *Rayford v. Metro. Transit Comm'n,* 379 N.W.2d 161, 165 (Minn.App.1985), *review denied* (Minn. Feb. 14, 1986). An award of damages is excessive when it "so greatly exceed[s] what is adequate as to be accountable on no other basis than passion and prejudice."*Dallum v. Farmers Union Cent. Exch., Inc.,* 462 N.W.2d 608, 614 (Minn.App.1990), *review denied* (Minn. Jan. 14, 1991).

[4] Here, the damages award was based on charges by appellant for sewer and water as a result of a change to metering and the imposition of monthly bills pursuant to this metering. A number of witnesses testified regarding the additional expense incurred as a result of appellant's action, and documents were introduced regarding past billing amounts. During closing arguments, respondents presented their calculations of damages and asserted that they were entitled approximately $400,000 in damages. Because the record supports the jury's award of damages, the district court did not abuse its discretion in denying appellant's motion for a new trial.

***4** Appellant next argues that the district court abused its discretion by excluding the expert testimony of Roger Skare. Evidentiary rulings are within the district court's sound discretion and will be reversed only if there has been an abuse of discretion. *Bahl v. Country Club Mkt., Inc.,* 410 N.W.2d 916, 919 (Minn.App.1987). The admission of expert testimony is within the broad discretion of the district court. *State v. Ritt,* 599 N.W.2d 802, 810 (Minn.1999)."If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."Minn. R. Evid. 702. If the expert testimony is acceptable under rule 702, the testimony could still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Minn. R. Evid. 403. To constitute reversible error, an evidentiary ruling must be prejudicial. *Kroning v. State Farm Auto. Ins. Co.,* 567 N.W.2d 42, 46 (Minn.1997).

[5] Roger Skare is a licensed real estate appraiser. Respondents objected to Skare's testimony regarding rental rates at other manufactured-home parks as being irrelevant and potentially confusing to the jury. The district court reviewed Skare's report and considered counsels' arguments before precluding Skare's testimony. The district court ruled that Skare's report and testimony would be prejudical because it would tend to confuse the jury as to the true issue in the case "together with the fact that the testimony can come in through [appellant's] witnesses first-hand without the necessity of an expert."The district court also ruled that Skare's proposed testimony, in part, be cumulative. The issue in this matter was whether appellant's unilateral decision to impose water and sewer charges on residents per the installation of metering devices constituted a substantial modification of the residents' lease agreements in violation of Minn.Stat. § 327C.02 (2004). Skare's report and testimony went to the issue of rent, not utility charges. Skare's testimony would likely confuse the jury about the true issue in the matter and, therefore, its prejudical effect would outweigh any purported probative value. The district court did not abuse its discretion in excluding Skare's testimony.

***Attorney Fees***

Appellant argues that the district court erred in awarding respondents attorney fees and costs under the private attorney general statute because this action involves no state interest or public rights, and no public benefit was realized by its outcome. This is a legal issue, and a reviewing court is not bound by, and need not give deference to, a district court's decision on a purely legal issue. *Frost-Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

[6] The attorney general is authorized to investigate and enforce violations of unfair and unlawful business and commerce practices, including violations of the Minnesota Consumer Fraud Act. Minn.Stat. § 8.31, subds. 1, 2 (2004). An individual injured by a violation of this law may also bring a private civil action for damages. Minn.Stat. § 8.31, subd. 3a (2004). Attorney fees are available under this statute to those private citizens who can

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

demonstrate that their claim furthers the public interest. *Ly v. Nystrom,* 615 N.W.2d 302, 314 (Minn.2000). This claim was brought under Minn.Stat. §§ 327C.01 to 327C. 15 (2004), which was enacted to protect manufactured homeowners, who are members of the public. Accordingly, the public interest is served here and the district court properly awarded attorney fees.

***5**[7] Respondents argue that the district court abused its discretion when it awarded respondents only one-half of the attorney fees incurred."[A]ttorney fees are not recoverable in litigation unless there is a specific contract permitting or a statute authorizing such recovery."*Barr/Nelson, Inc. v. Tonto's, Inc.,* 336 N.W.2d 46, 53 (Minn.1983).Minn.Stat. § 327C.15 authorizes recovery of attorney fees and costs under Minn.Stat. § 8.31, subd. 3a. When awarding attorney fees, the court should take the following factors into consideration: "time and labor required; the nature and difficulty of the responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and the client."*State v. Paulson,* 290 Minn. 371, 373, 188 N.W.2d 424, 426 (1971).

Respondents' retainer agreement with counsel provided for a 33.3% contingency fee award in the event no fee award was made. Based on the jury verdict of $288,697.21, respondents' counsel's contingency fee would be $96,136.17 (the district court order reflects $96,232.40). Respondents' counsel sought recovery of $356,820.35 in fees and costs. The district court found that "after examining the factors set forth in Paulson that the attorney's fees charged by [respondents'] counsel are excessive. The fees are almost four times the amount to be paid under the contingency fee agreement." Further, the district court found "that the $49,111.01 for fees and costs relating to [respondents'] unsuccessful appeal cannot be awarded unless authorized by the Appellate Court and since these fees were not awarded or authorized, they must be deducted prior to any attorney fee award by this Court ($356,820.35-$49,111.01 = $307,709.34)."

If successful in bringing an action, a person may petition "the court" for reimbursement for reasonable attorney fees incurred in bringing the action.Minn.Stat. § 117.045 (2004). This court has concluded that there is conflicting authority on which is the proper court. *Johnson v. City of Shorewood,* 531 N.W.2d 509, 511 (Minn.App.1995), *review denied* (Minn. July 7, 1995). But the court in *Johnson* held that when there is no delegation by the district court in order to avoid the problem of apportioning costs between trial and appeal, a claim for attorney fees on appeal is properly addressed to the appellate courts. *Id.* The district court did not abuse its discretion in failing to award respondents the attorney fees incurred on the interlocutory appeal.

After deducting the amount of fees and costs relating to the appeal, the district court determined that respondents' attorney fees request was $307,709.34. The district court found "that based upon counsel's experience and the time and labor involved[,] that [respondents'] counsel shall be awarded one-half of the applicable fees, or $153,854.67 ($307,709.34 divided by 2 = $153,854.67)." Respondents argue that the district court's award was arbitrary and was unsupported by any reasoned explanation about what work was excessive or duplicative.

***6** Respondents argue that this case is similar to *Liess v. Lindemyer,* 354 N.W.2d 556 (Minn.App.1984). In *Liess,* this court vacated a district court's award of attorney fees under the private attorney general statute when the district court set the award at a contingency rate of one-third of the recovery and ignored the attorney's detailed hourly account of fees. The decision in *Liess,* however, provides that "[t]he record must reflect that the attorney's fees award was arrived at after consideration of both the factors set forth in *State v. Paulson* and the policies that support the Minnesota private attorney general statute."*Id.* at 558.Here, the district court took into consideration the contingency agreement in the retainer agreement, counsel's experience, and the time and labor involved, as well as the policies that support Minn.Stat. § 8.31. The district court did not abuse its discretion in the amount of attorneys fees awarded to respondents.

***Damages***

Respondents argue that the district court erred in allowing appellant to assert an offset in damages despite respondents' alleged objection. Respondents claim they objected to an offset during trial and again

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

posttrial; but respondents fail to provide any citation to the record for their objections and the brief in support of the motion for a new trial does not contain any reference to this issue. This court generally considers "only those issues that the record shows were presented and considered by the [district] court in deciding the matter before it."*Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). An appellate court may exercise its discretion to consider a new theory on appeal if justice requires. *Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 390 (Minn.1992).

[8] Respondents argue that the district court permitted appellant to argue, and the jury to consider, mitigation of respondents' damages by the $5 per month rent reduction and the purported $21 per month rent increase. Respondents argue that the district court erred because no notice of the rent increase was given as required under Minn.Stat. § 327C.06 (2004). Respondents claim that it was only after this lawsuit had commenced that appellant claimed it had purportedly foregone a $21 per month rent increase. Respondents contend that without written notice, no such rent increase ever existed and could not be considered as a purported offset. Due to this, respondents maintain that as the nonbreaching party, they are entitled to receive the benefit of the bargain and be placed in the same position that they would have enjoyed if the contract had not been breached. *See* *Lesmeister v. Dilly*, 330 N.W.2d 95, 103 (Minn.1983). The October 30, 2001 notice from appellant to respondents, however, specifically states, "In replace of a rent increase...." This statement lends credence to the argument that appellant had foregone a monthly rent increase when it implemented the rule change. Further, while the notice does not specifically state that the rent increase was $21, the amount of the increase was an issue for the jury to decide. The district court did not err in allowing appellant to assert an offset to damages.

***7Affirmed.**

Minn.App.,2006.
Cavanaugh v. Hometown America, LLC
Not Reported in N.W.2d, 2006 WL 696259 (Minn.App.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.