# Exhibit C

H Chutich v. Green Tree Acceptance, Inc.
D.Minn.,1990.

United States District Court, D. Minnesota.
CHUTICH, et al.,
v.
GREEN TREE ACCEPTANCE, INC., et al.
**CIV. No. 3-88-869.**

Feb. 22, 1990.

Opinion

CUDD, United States Magistrate.

REPORT AND RECOMMENDATION

***1** Plaintiffs contend defendant Green Tree fraudulently induced them to purchase Green Tree stock at artificially inflated prices as a result of fraudulent, deceptive and negligent misrepresentations and omissions of material facts pertaining to Green Tree's business operations and financial situation. Specifically, plaintiffs point to the concealment by defendants of the deterioration and collapse of Green Tree's relationship with Midwest Federal.

Plaintiffs argue that the requirements of Rule 23, Federal Rules of Civil Procedure, have been satisfied and that the class period should run from May 20, 1985, through March 28, 1989.

On May 20, 1985, Midwest Federal purchased, at a price of $192 million, Green Tree's rights to receive finance income from contracts sold by Green Tree. The parties also agreed that Midwest Federal would continue to purchase Green Tree contracts annually for at least $300 million a year through 1987.

Plaintiffs maintain that the 1985 sale was defective from its inception. Plaintiffs argue Green Tree sold the receivables to Midwest Federal at a grossly inflated price.

Plaintiffs further contend that in May, 1987, when Midwest Federal brought the overstatement to Green Tree's attention, Green Tree agreed to reduce the servicing fees it charged Midwest Federal to resolve the conflict. Plaintiffs argue that neither the reduction in servicing income nor the overvaluation of receivables was disclosed to Green Tree's shareholders or the investing public.

According to plaintiffs, the relationship between Green Tree and Midwest Federal collapsed in 1988 when Midwest Federal failed to honor its $300 million contract with Green Tree. Plaintiffs argue this also was not made public.

In October, 1988, the relationship between Green Tree and Midwest Federal was made public after Midwest Federal sued Green Tree over the receivable on September 30, 1988. Plaintiffs also note that Green Tree was sued by at least three purchasers of pools of contracts. The suits involved assurances by Green Tree to the purchasers of pools of contracts. The suits involved assurances by Green Tree to the purchaser that even if loss reserves were exhausted, Green Tree would continue to make the agreed payments to investors. Plaintiffs contend Green Tree also publicly assured the shareholders that recourse against Green Tree was generally limited to the extent of reserves for credit losses. Plaintiffs argue Green Tree never informed the shareholders of the arrangement with the purchasers, and that on June 30, 1988, shareholders were finally made aware of the situation.

On March 28, 1989, Green Tree publicly announced a restatement of financial statements for the fiscal year ending December 31, 1988. Green Tree stated that the $39 million decrease was a deferral of income recognition, designed to match the cash flows from the sale of contracts by Green Tree from 1985 to 1988. Plaintiffs argue that from May 1985 to March 1989, Green Tree overstated its operation and earnings by almost $40 million.

***2** Plaintiffs also argue that the class period in this matter should run from May 20, 1985, the date of Green Tree's fraudulent sale of receivables to Midwest Federal, through March 28, 1989, the date Green Tree publicly released its restatement writing

off over $39 million in earnings.

Defendants argue that the May 1985 sale to Midwest Federal did not involve a grossly inflated price by Green Tree and did not lead to a collapse of the relationship between Green Tree and Midwest Federal. Defendants also contend that the facts pertaining to Midwest Federal's refusal to honor its $300 million contract were not withheld from the public. Further, defendants maintain Green Tree informed its shareholders of the practice of assuming losses.

Finally, defendants argue as a result of a change in accounting methods, Green Tree announced a one-time after tax change in 1989. This change in accounting methods, defendants argue, was not false or misleading, but rather reflected a deferral of income recognition.

Rule 23 provides:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

***3** Rule 23, Fed.R.Civ.P.

The burden of proof in class certification motions rests with the plaintiffs. *Bishop v. Committee on Professional Ethics & Conduct of the Iowa State Bar Ass'n.,* 686 F.2d 1278, 1288 (8th Cir.1982). Furthermore, the court has discretion in determining whether or not a class action will be certified. *Shapiro v. Midwest Rubber Reclaiming Co.,* 626 F.2d 63, 71 (8th Cir.1980).

Plaintiffs argue that the requirements of Rule 23(a) and (b)(3) have been satisfied in this case. This Court agrees that class certification is proper in this case.

The first element of Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. Impracticability of joinder does not mean impossibility, but rather inconvenience to the court. *Jensen v. Continental Financial Corp.,* 404 F.Supp. 806, 809 (D.Minn.1975); *Vernon J. Rockler & Co. v. Graphic Enterprises, Inc.,* 52 F.R.D. 335, 339 (D.Minn.1971). Here, the potential size of the class makes joinder impracticable. The precise number of class members is not essential to Rule 23(a)(1) satisfactions. Further, courts have held that

when a stock is publicly traded, as in the case at hand, it is presumptive that numerosity is met for a fraud on the market theory. This, Court, therefore, concludes that the potential class makes joinder impracticable and the numerosity requirement of Rule 23(a)(1) is satisfied.

The second element to Rule 23(a)(2) requires that a common question of law or fact for all members of the class exist. Plaintiffs allege that there existed a common and continuous course of conduct by defendants to misrepresent and omit information to shareholders and the investing public, thus, constituting fraud on the market. Defendants contend the events in question were separate and unrelated. This Court concludes that the events were interrelated and that common questions of law or fact common to all potential class members existed.

The scope of common questions in security actions is determined primarily by the period of time in which defendants allegedly deceived or mislead class members by standardized misrepresentations. *Cameron v. EM Adams & Co.,* 547 F.2d 473, 478 (9th Cir.1976). Further, allegations of a common pattern of fraudulent misconduct directed against a class of investors need not be demonstrated by events closely related in either time or circumstance. *Green v. Wolf Corp.,* 406 F.2d 291, 300 (2d Cir.1968). A common pattern of misconduct or "common nucleus of operative fact" may be found based on cumulative or interrelated misstatements or omissions which have the overall tendency to mislead investors as to the value of a security. *Peil v. Speiser,* 97 F.R.D. 657 (E.D.Pa.1983). Such a common and continuous plan to defraud may be considered ended when the defendants communicate to class members information previously misstated or withheld.

Here, the Court concludes the alleged common pattern of misconduct by defendants includes defendants' statements and reports and omissions concerning Green Tree's relationship with Midwest Federal, and alleged omissions by Green Tree to its shareholders and the investing public. The named plaintiffs are all connected by their reliance on the "common nucleus" of allegedly misleading and fraudulent statements by defendants.

***4** Defendants went public on March 28, 1989, regarding their financial status. Accordingly, the commonality element of Rule 23(a)(2) is satisfied through March 28, 1989.

Typicality under Rule 23(a)(3) requires that the claims or defenses of the representative parties by typical of the claims or defenses of the class. The interests of the representative plaintiffs, therefore, must align with the interests of the representative class. In order to satisfy the typicality requirements, the claims by the plaintiffs must arise from the same event, practice or course of conduct. *Dirks v. Clayton Brokerage Co. of St. Louis, Inc.,* 105 F.R.D. 125, 132-33 (D.Minn.1985) (MacLaughlin, J.).

Plaintiffs argue that defendants conduct constituted fraud on the market commencing with the May 20, 1985, overvaluation. This fraud continued to March 28, 1989, plaintiffs allege, and all named plaintiffs show similar interests and claims.

After viewing the evidence before the Court, the undersigned concludes that the typicality requirement is satisfied concerning the named plaintiffs. Furthermore, the defenses of the represenative parties are typical of the defenses of the class.

Defendants argue that if plaintiffs made idyosyncratic choices and relied on sources other than the integrity of the market, then these plaintiffs are not suitable under Rule 23. *See Jaroslawicz v. Engelhard Corp.,* 724 F.Supp. 294 (D.N.J.1989). Defendants argue several plaintiffs relied on the "Growth Stock Outlook" published by Charles Allman. The reliance on this newsletter by several plaintiffs makes them not typical or suitable as class members defendants argue. The Court concludes, however, that if defendants overstated their income, then reliance on the newsletter should not disqualify plaintiffs. The allegedly fraudulent scheme by defendants would have affected the market price and all investors.

Defendants claim some plaintiffs have unique defenses, and are, therefore, precluded from class membership. The Court disagrees. The claims by the plaintiffs are essentially the same and subject to the same defenses. A sophisticated investor may be just as likely to have been fooled by misleading statements or omission as to unsophisticated investor, especially when fraud on the market is claimed. *Wilson v. Great American Industries, Inc.,* 94 F.R.D. 570, 576 (N.D.NY 1982).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

The Court also concludes that the plaintiffs relied on the alleged misrepresentations and omissions by defendants. Although the individual plaintiffs relied on varying fact patterns, the typicality requirement is still satisfied as long as plaintiffs' complaints are similar to each other. *Metge v. Baehler*, 77 F.R.D. 470, 475 (S.D.Iowa 1978).

Such is the case here. All plaintiffs in this matter alleged fraud on the market stemming from the same set of events. Therefore, the court concludes the claims or defenses of the plaintiffs are typical of the class and Rule 23(a)(3) is satisfied.

***5** Rule 23(a)(4) requires that the representative parties will fairly and adequately protects the interests of the class. There must exist the assurance of vigorous prosecution and plaintiffs must not have interests which conflict with the interests of the class. *Griffin v. Carlin*, 755 F.2d 1516, 1532 (11th Cir.1985); *see also In re: Endotronics*, [1987-88 Transfer Binder], FED.SEC.REP. (CCH), § 93,664 (D.Minn.1988) (Rosenbaum, J.).

The Court finds plaintiffs' counsel are experienced and qualified and able to properly litigate the case.

The Court also concludes that plaintiffs do not present any individual interests in conflict with the class interest. A conflict that would prevent a plaintiff from being a class member must be fundamental and go to the specific issues in controversy. *Green v. Santa Fe Industries*, 88 F.R.D. 575, 576 (S.D.NY 1980). The interests of plaintiffs in this case are similar and all allege fraud on the market stemming from the same "common nucleus" of events and action by defendants. The Court concludes, therefore, that Rule 23(a)(4) is satisfied by plaintiffs.

Rule 23(b)(3) requires that questions of law or fact common to the members of the class predominate over questions affecting only individual members, and that a class action is superior to other methods for fair and efficient adjudication of the case. The Court concludes that where alleged fraud involves reports to the public, common questions predominate. *Dirks*, 105 F.R.D. at 136.

Here, plaintiffs allege fraud involving publicized filings and reports. Plaintiff also allege omissions regarding material facts were made by defendants. Where omissions are present in a securities action, the predominance requirement is met. *Austell v. Smith*, 634 F.Supp. 326, 333-34 (W.D.N.C.1986).

The Court concludes that common question of law or fact predominate over any individual questions that might exist, and Rule 23(b)(3) is satisfied. Plaintiffs, therefore, have met their burden under Rule 23 for class certification.

Plaintiffs also argue that the Class Period in this case should run from May 20, 1985, through March 28, 1989. The Court agrees.

Plaintiffs allege that defendants fraudulent actions began with the May 20, 1985, Green Tree and Midwest Federal transaction, and ended with Green Tree's public announcement on March 28, 1989. Plaintiffs maintain the commonality of events continued during the entire period. Furthermore, defendants were aware of the faltering relationship between Green Tree and Midwest Federal and did nothing to inform shareholders or the investing public.

The Court concludes a common core of interelated events has occurred and May 20, 1985, through March 28, 1989, are logical dates for the Class Period in this case.

Finally, defendant Greenwood seeks to limit his liability in this case. Defendant Greenwood claims he is not liable for any actions or events by the other defendants in this matter which occurred subsequent to his resignation on October 8, 1987. Defendant Greenwood argues that the plaintiffs have not satisfied the Rule 23 requirements, and in the alternative that the closing date for the Class Period should be October 8, 1987.

***6** The arguments against class certification have been dealt with in the preceding analysis. Defendant Greenwood also attempts to shorten the Class Period by arguing that fraud on the market cannot be relied upon by shareholders who purchased in the public offering in 1985; that the market was not sufficiently developed until June 28, 1985; and that the market was not sufficiently developed to support a fraud-on-the-market theory until April 1986. This Court finds

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

that defendant Greenwood's argument concerning the fraud on the market theory is premature at the class certification stage. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 171 (1974).

Defendant Greenwood also attempts to limit the Class Period to the date of his resignation. The Court disagrees with defendant Greenwood and finds the Class Period shall run until March 28, 1989. Defendant Greenwood was Chairman of Green Tree Board and Chairman of Midwest Federal Board up until his resignation. Defendant Greenwood never revealed to the shareholders or investing public any information concerning Green Tree or Midwest Federal while he was director or after his resignation.

The Court adds that defendant Greenwood's resignation did not halt or rectify the events plaintiffs complain of, and only after the public announcement on March 28, 1989, was the public made aware of the situation. Further, defendant Greenwood's resignation had no effect on the alleged fraud and defendant Greenwood has not provided any evidence to support his conclusions.

Therefore, the Court finds defendant Greenwood must remain a defendant in this matter for the Class Period from May 20, 1985, through March 28, 1989. The Court finds plaintiffs' motion for class certification is granted for the Class Period previously stated.

Before the Court is plaintiffs' motion for class certification. The motion was heard by the undersigned on November 30, 1989.

Based on the arguments and memorandums of counsel and all the files, records and proceedings, this Court finds plaintiffs' motion should be granted. The undersigned also finds the class period running from May 20, 1985, to March 28, 1989, is proper.

IT IS HEREBY RECOMMENDED THAT:

Plaintiffs' motion for class certification be GRANTED. The class period should run from May 20, 1985, to March 28, 1989. The Court also finds defendant Greenwood should remain a defendant in this matter for the class period previously stated.

D.Minn.,1990.
Chutich v. Green Tree Acceptance, Inc.
Not Reported in F.Supp., 1990 WL 82385 (D.Minn.), Fed. Sec. L. Rep. P 95,237

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# Exhibit D

Schaff v. Chateau Communities, Inc.
Minn.App.,2005.
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION IS DESIGNATED AS UNPUBLISHED AND MAY NOT BE CITED EXCEPT AS PROVIDED BY MINN. ST. SEC. 480A.08(3).

Court of Appeals of Minnesota.
Ronald SCHAFF, et al., Respondents,
v.
CHATEAU COMMUNITIES, INC., d/b/a Cedar Knolls Manufactured Home Park, Appellant.
**No. A04-1246.**

July 26, 2005.
Review Denied Sept. 28, 2005.

Dakota County District Court, File No. CX-03-6402.

Kay Nord Hunt, Barry A. O'Neil, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, MN, for respondents.
John F. Bonner, III, Robyn K. Johnson, Thomas F. DeVincke, Bonner & Borhart LLP, Minneapolis, MN, for appellant.
Margaret Kaplan, Timothy Thompson, St. Paul, MN, for amicus curiae All Parks Alliance for Change.
Charles N. Nauen, William A. Gengler, Lockridge Grindal Nauen, P.L.L.P., Minneapolis, MN, for amicus curiae Minnesota Manufactured Housing Association.

Considered and decided by KALITOWSKI, Presiding Judge; TOUSSAINT, Chief Judge; and DIETZEN, Judge.

**UNPUBLISHED OPINION**

KALITOWSKI, Judge.
*1 Appellant, Chateau Communities, Inc., challenges the district court's decision to grant class certification and award attorney fees to respondents, who are residents of appellant's mobile-home community. Appellant also contends: (1) the district court erred in a number of evidentiary rulings; and (2) the jury award is not supported by sufficient evidence and is excessive and inconsistent. We affirm.

**DECISION**

**I.**

**1. Class certification**

Appellant argues that the district court abused its discretion because respondents cannot satisfy the class-certification requirements of Minn. R. Civ. P. 23. District courts have considerable discretion when determining whether a class action is maintainable. *Peterson v. BASF Corp.,* 618 N.W.2d 821, 825 (Minn.App.2000), *review denied* (Minn. Jan. 26, 2001). And a Minnesota court may not certify a class unless the class satisfies the requirements of rule 23. *Lewy 1990 Trust ex rel. Lewy v. Inv. Advisors, Inc.,* 650 N.W.2d 445, 451 (Minn.App.2002), *review denied* (Minn. Nov. 19, 2002). Class certification under rule 23 is a two-step process. *Id.* First, the class must satisfy all four mandatory requirements of rule 23.01, and, second, the class must also satisfy the requirements of one of the subdivisions of rule 23.02. *Id.* at 451-52.

**A. Rule 23.01**

Appellants argue that the class fails to satisfy the typicality and representative requirements of Minn. R. Civ. P. 23.01. Rule 23.01 provides, in pertinent part:

One or more members of a class may sue or be sued as representative parties on behalf of all only if:

....

(c) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(d) the representative parties will fairly and adequately protect the interests of the class.

The prerequisites of typicality and representivity

exist "to insure that the claims of the class members are fully presented and vigorously prosecuted."*Streich v. Am. Family Mut. Ins. Co.,* 399 N.W.2d 210, 215 (Minn.App.1987) (quotation omitted), *review denied* (Minn. Mar. 25, 1987). Typicality looks at whether the interests of the representative parties are compatible with those of the putative class that they seek to represent. *Id.* And representivity "means the representative parties' interests must coincide with the interests of other class members and the parties and their counsel will competently and vigorously prosecute the lawsuit."*Id.* Factors used to determine if the representivity requirement is satisfied include:

(1) whether the representatives' interests are sufficiently identical to those of absent class members so that the representatives will vigorously prosecute the suit on their behalf; (2) whether the attorneys are qualified, experienced, and capable of conducting the litigation; and (3) whether the representatives have any interests in conflict with the objective of the class they represent.

***2***Id.*

Here, appellant allegedly injured all of the class members in the same manner. Therefore, respondents' claims are based on the same legal theories. While the class members were not all injured to the same degree, their injuries arose out of the same conduct on the part of appellant: a unilateral change to the terms of the parties' leases. And all claims involve the same legal determination: whether there was a violation of Minn.Stat. § 327C (2004). And appellant offers no evidence to refute the assertion that the attorneys for the representative class members are capable of conducting a vigorous class-action litigation. Because the claims of respondents as the representative members of the class are compatible with those of the other class members and because appellants have failed to show that the attorneys here are not qualified, experienced, and capable of conducting the litigation, we conclude that the requirements of typicality and representivity are met.

**B. Rule 23.02**

Appellant argues further that respondents failed to meet the requirement under Minn. R. Civ. P. 23.02 that common issues "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."We disagree.

No bright-line rule exists to determine whether common questions predominate.*Lewy 1990 Trust,* 650 N.W.2d at 455 (citing *Lockwood Motors, Inc. v. Gen. Motors Corp.,* 162 F.R.D. 569, 580 (D.Minn.1995)). Instead, a court must consider whether generalized evidence will prove or disprove an element on a simultaneous, class-wide basis that would not require examining each class member's individual position. *Id.* Thus, a class action is appropriate when common questions representing a significant issue in a case can be resolved by a single action. *Id.*

Here, the district court was required to make a preliminary determination of whether class-action status was appropriate to resolve respondents' claims that appellant violated Minn.Stat. § 327C. Under section 327C, "substantial modification" is defined as,

any change in a rule which: (a) significantly diminishes or eliminates any material obligation of the park owner; (b) significantly diminishes or eliminates any material right, privilege or freedom of action of a resident; or (c) involves a significant new expense for a resident.

Minn.Stat. § 327C.01, subd. 11. In subsection (a) there is no individualized proof requirement. The rule requires only that a material obligation of the park owners be significantly diminished or eliminated. Thus, because one of the elements here is common to the class and predominates, certification is appropriate. *Lewy 1990 Trust,* 650 N.W.2d at 456-57.

In addition, respondents seek to remedy a common legal grievance. Appellant created a single, uniform change to the leases of all the tenants in the park. The change was widespread and not limited to the named respondents. Thus, we conclude that common issues relating to respondents' claim here predominate over questions affecting individual class members, and individualized proof is unnecessary to prove the elements of substantial modification, as defined by Minn.Stat. § 327C.01, on this record.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*3 Finally, for certification under rule 23.02(c), a court must find that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Factors to consider in a "superiority" analysis include "manageability, fairness, efficiency, and available alternatives."*Streich,* 399 N.W.2d at 218. The class action is most often needed in litigation where the individual claims are small. *Id.* (citing *Forcier v. State Farm Mut. Auto. Ins. Co.,* 310 N.W.2d 124, 130 (Minn.1981))."When collective adjudication ... makes it possible for class members with small claims to bring suit and enforce the substantive law, a class action is superior to other available methods for the fair adjudication of the controversy."*Lewy 1990 Trust,* 650 N.W.2d at 457.

We conclude that certifying the class action here (1) allows the issues raised to be given a meaningful hearing; (2) allows the common issues to be tried efficiently in a single action; and (3) avoids inundating the district courts with individual lawsuits that would burden the state's judicial resources. Therefore, the district court did not abuse its discretion in determining class certification was appropriate to this set of facts.

**2. Attorney fees**

Appellant argues that the district court erred in awarding respondents attorney fees and costs under the private attorney general statute because this action involves no state interest or public rights, and no public benefit was realized by its outcome. This is a legal issue, and a reviewing court is not bound by, and need not give deference to, a district court's decision on a purely legal issue. *Frost-Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

The attorney general is authorized to investigate and enforce violations of unfair and unlawful business and commerce practices, including violations of the Minnesota Consumer Fraud Act. Minn.Stat. §§ 8.31, subd. 1, .32, subd. 2(a) (2004). An individual injured by a violation of this law may also bring a private civil action for damages. Minn.Stat. § 8.31, subd. 3a (2004). Attorney fees are available under Minn.Stat. § 8.31, subd. 3a, to those private citizens who can demonstrate that their claim furthers the public interest. *Ly v. Nystrom,* 615 N.W.2d 302, 314 (Minn.2000).

Appellant relies on *Nystrom* and argues that because there was no public benefit attorney fees were inappropriate. We disagree. In *Nystrom,* a *single* plaintiff brought an action under the Consumer Fraud Act and sought attorney fees under the private attorney general statute. *Id.* at 307.The defendant made numerous fraudulent representations concerning its restaurant business, but made the representations only to the plaintiff. *Id.* at 305-06.Emphasizing that the misrepresentations were made to only one person and that the fraudulent transaction was completed on a one-on-one basis, the *Nystrom* court concluded that the plaintiff did not demonstrate that his claim furthered the public interest. *Id.* at 314.The facts here are thus distinguishable from the facts in *Nystrom.*

*4 Importantly, the statute here allows the attorney general to bring an action for noncompliance. *See*Minn.Stat. § 327C.02, subd. 5. Further, there were 400 households affected by appellant's actions. As discussed above, appellant made a unilateral change to a lease agreement affecting a large group of people for which class certification was appropriate. Moreover, appellant is in a business that has the potential to affect an even larger number of people, and the resolution of this case could extend to residents of other manufactured-home parks. Accordingly, we conclude that the public interest is served here and that the district court properly awarded attorney fees.

**II.**

Appellant argues that the district court abused its discretion when it denied appellant's request for a new trial based on a number of the court's evidentiary and discovery rulings. "The granting of a new trial rests in the discretion of the [district court], and the [district court's] decision will be reversed only for a clear abuse of discretion."*Boschee v. Duevel,* 530 N.W.2d 834, 840 (Minn.App.1995) (quotation omitted), *review denied* (Minn. June 14, 1995). The supreme court has stated that:

A new trial should not be granted unless the verdict is so contrary to the preponderance of the evidence as to imply that the jury failed to consider all the evidence or acted under some mistake or from some improper

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

motive, bias, feeling or caprice, instead of honestly and dispassionately exercising its judgment.

*Lamb v. Jordan,* 333 N.W.2d 852, 855-56 (Minn.1983) (quotation omitted). Further, "[e]ntitlement to a new trial on the grounds of improper evidentiary rulings rests upon the complaining party's ability to demonstrate prejudicial error."*Kroning v. State Farm Auto. Ins. Co.,* 567 N.W.2d 42, 46 (Minn.1997) (quoting *Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn.1990)).

**1. Damages**

Appellant argues that the district court abused its discretion when it allowed respondents to proceed to trial without disclosing the amount of damages they were claiming and without disclosing their calculation methodologies, when such information was requested months earlier and was central to defending against respondents' claims.

But as respondents note, the damage amounts relied on by respondents were already in the hands of appellant; the damages were calculated based on appellant's monthly charges for sewer and water after the change to metering. And the record reflects that the jury was fully apprised of these charges. In addition, appellant has failed to meet its burden of establishing that it was prejudiced by respondents' alleged lack of disclosure. We therefore conclude that the district court did not abuse its discretion in its evidentiary ruling regarding damages. And finally, on this record, we cannot say the district court erred in giving a general damage instruction and rejecting appellant's request for a special instruction on unjust enrichment.

**2. Amendment to pleading**

***5** Appellant argues that the district court erred when it allowed respondents to amend their special verdict form one business day prior to trial. A party may amend a pleading by leave of court, and amendments should be freely granted, except where to do so would result in prejudice to the other party. Minn. R. Civ. P. 15.01; *Hughes v. Micka,* 269 Minn. 268, 275, 130 N.W.2d 505, 510 (1964). Whether a party is prejudiced is a question of fact.*Fedie v. Mid-Century Ins. Co.,* 631 N.W.2d 815, 820 (Minn.App.2001), *review denied* (Minn. Oct. 16, 2001). The district court has wide discretion to grant or deny an amendment, and its determination will not be reversed absent a clear abuse of that discretion. *LaSalle Cartage Co. v. Johnson Bros. Wholesale Liquor Co.,* 302 Minn. 351, 357-58, 225 N.W.2d 233, 238 (1974).

Here, the amended special verdict form set forth a claim for violation of Minn.Stat. § 327C.04, based on differences in utility rates charged by appellant and the City of Apple Valley. Appellant claims that it had no notice of such a claim prior to respondents' submission of the special verdict form and, therefore, it was prejudiced by this late disclosure. But the record indicates that appellant knew of this claim prior to the amended form. The complaint from January 30, 2003, states that "[u]pon information and belief, [appellant] is improperly charging class members based on inaccurate readings and calculations."And, in paragraph 29 of the complaint, respondents specifically refer to violations of Minn.Stat. § 327C.04. The joint statement of the case also reflects that appellant was well aware of the section 327C.04 claim. We conclude that because appellant was notified of this claim prior to the amendment of the form, appellant has failed to show that it was prejudiced when the district court allowed respondents to amend the special verdict form. Accordingly, the district court did not abuse its discretion in allowing the amendment.

**3. Exhibits**

Appellant argues that the district court abused its discretion by admitting into evidence a number of prejudicial, inflammatory, and irrelevant exhibits. The admission of "evidence rests within the broad discretion of the trial court and its ruling will not be disturbed unless it is based on an erroneous view of the law or constitutes an abuse of discretion."*Uselman,* 464 N.W.2d at 138.

Exhibits 23, 24, and 27 were offered by respondents at trial and admitted into evidence over appellant's objection. Exhibit 23 is a bill summary and exhibit 24 is a senate committee memorandum from 1982, which was drafted with respect to the ratification of Minn.Stat. § 327C. Appellant argues that the legislative intent behind the enactment of Minn.Stat. § 327C should not have been given to the jury because there was no question of statutory

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

construction or ambiguity. Exhibit 27 is a press release printed from the internet concerning appellant's acquisition by another company entitled "Hometown America to Acquire Chateau Communities in $2.2 Billion Transaction."

*6 While we agree that the exhibits at issue were of questionable relevance and that their admission may have been error, we conclude that appellant has failed to demonstrate how admission of this evidence might reasonably have influenced the jury and changed the results of the trial. *See W.G.O. ex rel. A.W.O. v. Crandall,* 640 N.W.2d 344, 349 (Minn.2002). Accordingly, appellant is not entitled to a new trial.

**4. Closing argument**

Appellant objects to respondents' argument, during closing, that appellant should have asked its residents to change the terms of the lease and to agree to the rule change for utilities billing and argues that the district court's failure to sustain its objection at trial or give a curative instruction was an abuse of discretion that warrants a new trial. "The decision whether to grant a new trial due to improper argument by counsel rests almost entirely within the discretion of the trial court and should not be reversed on appeal absent a clear abuse of discretion."*Jewett v. Deutsch,* 437 N.W.2d 717, 721 (Minn.App.1989)."A new trial is not warranted unless the misconduct of counsel clearly resulted in prejudice to the losing party."*Sather v. Snedigar,* 372 N.W.2d 836, 839 (Minn.App.1985). And the district court is in a much better position than an appellate court to determine whether improper arguments by counsel resulted in prejudice. *Ellingson v. Burlington N. R.R. Co.,* 412 N.W.2d 401, 404 (Minn.App.1987), *review denied* (Minn. Nov. 13, 1987).

While appellant argues that respondents' closing was a misstatement of the law *by implication,* this is not a basis for reversal on the grounds of improper argument. And because appellant also has failed to show how it was substantially prejudiced by the argument, we conclude that the district court did not abuse its discretion.

**III.**

Appellant argues it is entitled to a new trial because the jury's damage award is not supported by sufficient evidence and is excessive and inconsistent. This court will set aside a damage award if it is "manifestly and palpably contrary to the evidence."*Levienn v. Metro. Transit Comm'n,* 297 N.W.2d 272, 273 (Minn.1980). But this court must consider the evidence in the light most favorable to the verdict. *Rayford v. Metro. Transit Comm'n,* 379 N.W.2d 161, 165 (Minn.App.1985), *review denied* (Minn. Feb. 14, 1986). An award of damages is excessive when it "so greatly exceed[s] what is adequate as to be accountable on no other basis than passion and prejudice."*Dallum v. Farmers Union Cent. Exch., Inc.,* 462 N.W.2d 608, 614 (Minn.App.1990) (quotation omitted), *review denied* (Minn. Jan. 14, 1991).

Here, the damage award was based on charges for sewer and water by appellant as a result of the change to metering and the imposition of monthly bills pursuant to this metering. A number of witnesses testified regarding the additional expense incurred as a result of appellant's action, and documents were introduced regarding past billing amounts. During closing arguments, respondents presented their calculations of damages and asserted that they were entitled to damages in excess of $500,000. Accordingly, we conclude that because the record contains support for the jury's damage award, the district court did not abuse its discretion in denying appellant's motion for a new trial.

*7 Appellant also argues that there was insufficient evidence to support the jury's determination that there was a substantial modification to the lease, and that the modification was unreasonable. Minn.Stat. § 327C.02, subd. 1(c), requires a manufactured-home park rental agreement to specify "all rules applicable to the resident."A "rule" is a "provision, regulation, rule or policy through which a park owner ... seeks to control or affect the behavior of residents."Minn.Stat. § 327C.01, subd. 10. And a new or amended rule is unenforceable against a resident with an existing rental agreement unless the "rule is reasonable and is not a substantial modification of the original agreement."Minn.Stat. § 327C.02, subd. 2. As stated above, substantial modification is defined by section 327C as,

any change in a rule which: (a) significantly diminishes or eliminates any material obligation of the park owner; (b) significantly diminishes or

eliminates any material right, privilege or freedom of action of a resident; or (c) involves a significant new expense for a resident.

Minn.Stat. § 327C.01, subd. 11.

We reject appellant's argument that the verdict must be reversed because the jury erroneously determined that all three definitions under Minn.Stat. § 327C.01 had been met. For a substantial modification finding, the statute requires that only one of the three subsections has been violated. And the first definition of substantial modification, under subsection (a), requires a rule change that "significantly diminishes or eliminates any material obligation of the park owner."Minn.Stat. § 327C.01, subd. 11. The jury found that appellant's decision to install water meters and begin charging residents for water and sewer services significantly diminished or eliminated a material obligation of appellant; namely that it would provide those services. We cannot say, on this record, that such a finding was "manifestly and palpably contrary to the evidence."*Levienn,* 297 N.W.2d at 273. Accordingly, we will not disturb the jury's verdict.

**Affirmed.**

Minn.App.,2005.
Schaff v. Chateau Communities, Inc.
Not Reported in N.W.2d, 2005 WL 1734031 (Minn.App.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit E

**Yarrington** v. Solvay Pharmaceuticals, Inc.
Minn.App.,2006.

NOTICE: THIS OPINION IS DESIGNATED AS UNPUBLISHED AND MAY NOT BE CITED EXCEPT AS PROVIDED BY MINN. ST. SEC. 480A.08(3).

Court of Appeals of Minnesota.
Judith **YARRINGTON**, Appellant,
v.
SOLVAY PHARMACEUTICALS, INC., et al., Respondents.
**No. A05-2288.**

Sept. 26, 2006.

**Background:** Consumer sued drug maker and its parent company alleging negligent misrepresentation, fraud, breach of warranties, and violation so several consumer-fraud statutes, all resulting from health disorders allegedly arising from her use of drug that was not approved by Food and Drug Administration (FDA). Defendants moved to dismiss complaint. The District Court, Dakota County, dismissed claims against parent company for lack of personal jurisdiction and dismissed fraud-related and warranty claims against drug maker. Consumer appealed.

**Holdings:** The Court of Appeals, Ross, J., held that:
(1) consumer was entitled to jurisdictional discovery;
(2) consumer alleged fraud and negligent misrepresentation with particularity;
(3) consumer failed to allege reliance as to support her common-law fraud claims;
(4) consumers allegations were sufficient to allege causation required for consumer-fraud claims; and
(5) consumer failed to give drug maker notice required to maintain breach of implied and express warranty claims.

Affirmed in part, reversed in part, and remanded.

West Headnotes

**[1] Pretrial Procedure 307A 36.1**

307A Pretrial Procedure
307AII Depositions and Discovery
307AII(A) Discovery in General
307Ak36 Particular Subjects of Disclosure
307Ak36.1 k. In General. Most Cited Cases
Consumer was entitled to jurisdictional discovery before trial court ruled on motion by drug maker's non-resident parent company to dismiss for lack of personal jurisdiction, given that district court relied on affidavit by parent company's vice-president in dismissing complaint. 48 M.S.A., Rules Civ.Proc., Rule 12.02.

**[2] Pleading 302 18**

302 Pleading
302I Form and Allegations in General
302k18 k. Certainty, Definiteness, and Particularity. Most Cited Cases
Consumer of menopause drug made specific allegations of drug maker's misrepresentation that drug was approved by Food and Drug Administration (FDA) and "indicated" for certain menopausal symptoms, as required to state with particularity her claims of fraud and negligent misrepresentation, given that consumer referred to various websites and reference publication making the misrepresentation and identified a specific misrepresentation of FDA approval on a U.S. Department of Defense form. 48 M.S.A., Rules Civ.Proc., Rule 9.02.

**[3] Fraud 184 20**

184 Fraud
184I Deception Constituting Fraud, and Liability Therefor
184k19 Reliance on Representations and Inducement to Act
184k20 k. In General. Most Cited Cases
Consumer failed to allege that she or her doctor relied on any alleged false representation by drug maker regarding federal approval of its menopause drug and indications for use, as required to support common-law claims of fraud and negligent misrepresentation.

**[4] Antitrust and Trade Regulation 29T 358**

29T Antitrust and Trade Regulation
29TIII Statutory Unfair Trade Practices and Consumer Protection
29TIII(E) Enforcement and Remedies
29TIII(E)5 Actions
29Tk356 Pleading
29Tk358 k. Particular Cases. Most Cited Cases

Consumer's allegations that drug maker's information to physician's reference book that deceived physicians and consumers that menopause drug was approved by Food and Drug Administration (FDA), together with allegations that the deception caused the drug's prescription, were sufficient to allege causation to support claims of violation of consumer-fraud statutes. M.S.A. §§ 325D.09, 325D.44, 325F.67, 325F.69.

**[5] Sales 343 285(1)**

343 Sales
343VI Warranties
343k285 Notice to Seller of Defects
343k285(1) k. Necessity and Effect of Notice in General. Most Cited Cases

Consumer of menopause drug failed to give drug maker required notice of alleged breach of implied and express warranties as required to maintain her warranty claims, even though consumer asserted that drug maker was aware that the drug was not approved by the Food and Drug Administration (FDA); breach of warranty claim was not based on lack of FDA approval, but on alleged promise that drug was FDA approved, and consumer failed to allege that drug was unfit for its intended use. M.S.A. §§ 336.2-313(1)(a), 336.2-314(1), (2)(c).

Dakota County District Court, File No. C9-04-7261.
Daniel E. Gustafson, Jason S. Kilene, Amanda M. Martin, Gustafson Gluek PLLC, Minneapolis, MN; and Michael W. Sobol (pro hac vice), Leiff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA, for appellant.
Michael A. Lindsay, Surya Saxena, Dorsey & Whitney LLP, Minneapolis, MN; and Phillip A. Bradley (pro hac vice), McKenna Long & Aldridge LLP, Atlanta, GA, for respondents.

Considered and decided by ROSS, Presiding Judge; SHUMAKER, Judge; and WRIGHT, Judge.

**UNPUBLISHED OPINION**

ROSS, Judge.
***1** This case concerns alleged misrepresentation in the sale of a pharmaceutical product. Judith Yarrington appeals the dismissal of her action against respondent Solvay Pharmaceuticals, Inc., and respondent Solvay America, Inc. Yarrington argues that the district court erred by dismissing her claims against Solvay America for lack of personal jurisdiction and by dismissing her claims against Solvay Pharmaceuticals for failure to state a claim on which relief can be granted. We affirm in part, reverse in part, and remand.

**FACTS**

Solvay Pharmaceuticals manufactures and markets prescription drugs, including Estratest and half-strength Estratest H.S. (collectively referred to as Estratest).Estratest is a combination of estrogen and androgen prescribed to manage moderate to severe vasomotor symptoms associated with menopause. Solvay Pharmaceuticals has manufactured and marketed Estratest since 1964. The Food and Drug Administration has never approved Estratest as safe and effective, or suitable for marketing, distribution, or sale to the public.

Solvay Pharmaceuticals is incorporated in Georgia. Its principal place of business is in Georgia, but it maintains an office in Baudette, Minnesota. Solvay Pharmaceuticals is a wholly owned subsidiary of respondent Solvay America (collectively referred to as Solvay), which is incorporated in Delaware and has its principal place of business in Texas.

In March 2004, Judith Yarrington filed a class-action complaint in Dakota County district court against Solvay alleging negligent misrepresentation, fraud, breach of express and implied warranties, and violations of several of Minnesota's consumer-fraud statutes. Yarrington alleges that the FDA has not approved the prescription of Estratest. She claims that a physician prescribed Estratest to her in January 2004 and that its ingestion caused her to suffer from several non-life-threatening health disorders. On behalf of herself and others similarly situated, Yarrington sought an injunction directing Solvay to

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

conduct a national media campaign to inform purported class members and physicians that Estratest is not FDA approved, to pay compensatory damages in excess of $50,000, and to pay disgorgement of Solvay's profits from the sale of Estratest, with restitution. Solvay removed the case to federal district court, which remanded the case to Minnesota district court for lack of federal subject-matter jurisdiction.

Solvay America then moved for dismissal on the basis that the Minnesota district court lacked personal jurisdiction. Solvay Pharmaceuticals also moved for dismissal, arguing that Yarrington failed to state a claim upon which relief can be granted and failed to plead her claims of fraud with sufficient particularity. Yarrington argued that Minnesota has derivative jurisdiction over Solvay America and that Solvay Pharmaceuticals' motion to dismiss is without merit.

The district court found that “Solvay America and Solvay Pharmaceuticals are separate entities and are not so intertwined as to create sufficient contacts between Solvay America and Minnesota,” and it granted Solvay America's motion to dismiss for lack of personal jurisdiction. It dismissed six of Yarrington's eight claims-the fraud-based claims-for failure to plead with sufficient particularity to satisfy the pleading requirements of the Minnesota Rules of Civil Procedure. The district court noted that Yarrington's complaint failed to identify any specific fraudulent statement or omission, failed to allege when or where either defendant made any fraudulent statement, and failed to allege that she or her physician ever saw or relied upon any alleged misrepresentation regarding FDA approval. The district court dismissed Yarrington's warranty claims because Yarrington did not provide notice to Solvay to satisfy a prerequisite for suit and because Yarrington failed to plead facts that establish the existence of a warranty. Yarrington's appeal from the dismissal of her claims follows.

**DECISION**

*Lack of Personal Jurisdiction*

*2 Yarrington first challenges the district court's dismissal of her claims against Solvay America for lack of personal jurisdiction over Solvay America. Whether personal jurisdiction exists is a question of law, which we review de novo. *Juelich v. Yamazaki Mazak Optonics Corp.,* 682 N.W.2d 565, 569 (Minn.2004). To establish personal jurisdiction, a plaintiff has the burden to prove that a defendant has sufficient contacts with the forum state. *Id.* at 570.When considering a pretrial jurisdiction challenge, the district court assumes that the plaintiff's allegations and supporting evidence are true.*Id.* The plaintiff need only make a prima facie showing of jurisdiction to survive a motion to dismiss for lack of personal jurisdiction. *Hardrives, Inc. v. City of LaCrosse,* 307 Minn. 290, 296, 240 N.W.2d 814, 818 (1976).

Yarrington's complaint alleges that the “Defendants ... purposefully availed themselves of the privilege of conducting activities within the State of Minnesota and, in fact, maintain regular and continuous business contacts within the State.”Accepting these allegations as true, we conclude that Yarrington's complaint presents a prima facie showing of jurisdiction sufficient to survive Solvay America's motion to dismiss.

The district court did not limit its consideration to the facts alleged in the complaint. Solvay America supported its motion to dismiss for lack of personal jurisdiction with an affidavit from its vice president and general counsel, Edwin Buckingham. The Buckingham affidavit tends to demonstrate that Solvay America lacks sufficient contacts with Minnesota to establish personal jurisdiction and that Solvay Pharmaceuticals is not “an instrumentality or alter-ego” of Solvay America. *See* *Zimmerman v. Am. Inter-Ins. Exch.,* 386 N.W.2d 825, 828 (Minn.App.1986) (noting that a nonresident corporation may be subject to personal jurisdiction in Minnesota by virtue of the contacts of a subsidiary corporation if the two corporations are “organized and operated so that one corporation is an instrumentality or alter-ego of the other corporation”), *review denied* (Minn. July 31, 1986).

Yarrington attempted to counter the Buckingham affidavit by requesting that the district court allow jurisdictional discovery, contending that factual weaknesses in the affidavit could be exposed on cross examination and through unspecified other discovery. The district court denied Yarrington's request for jurisdictional discovery. It nevertheless based its dismissal of Yarrington's claims against Solvay

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

America for lack of personal jurisdiction on factual findings that depend entirely on the assertions in the Buckingham affidavit.

[1] We agree with Yarrington that the district court should have allowed her to conduct jurisdictional discovery of facts relevant to the court's jurisdiction over Solvay America. On a rule 12.02 motion to dismiss for lack of personal jurisdiction, the district court may look beyond the complaint and consider other facts in evidence. *See* *Hardrives,* 307 Minn. at 293, 240 N.W.2d at 816 (noting that a plaintiff need only make a prima facie case through the complaint and other supporting evidence). The decision to grant jurisdictional discovery is within the district court's broad discretion.*Behm v. John Nuveen & Co.,* 555 N.W.2d 301, 305 (Minn.App.1996). As this court has expressed, however, "[j]urisdictional discovery generally is permitted before a court rules on a motion to dismiss for lack of personal jurisdiction."*Id.*

***3** Solvay America criticizes Yarrington's failure to carry her burden to prove sufficient contacts with the state to justify the court's exercise of personal jurisdiction. But Solvay America's contention that the "evidence clearly establishes that Solvay America does not have sufficient minimum contacts with Minnesota" would be much more persuasive had Yarrington not been denied the opportunity to collect relevant jurisdictional evidence through discovery before dismissal. Solvay America is generally correct that jurisdictional discovery is unnecessary if the discovery is unlikely to lead to evidence establishing personal jurisdiction. *See id.* at 305.But Solvay America's reliance on *Behm* for the proposition that jurisdictional discovery is unnecessary here is not well founded. In *Behm,* we saw no abuse of discretion in the district court's tacit denial of a plaintiff's request to supplement the record in support of personal jurisdiction. *Id.* But in that case, the district court and this court concluded that supplementing the record would have been materially unproductive only after each court reviewed the proposed supplemental information and determined that the information could not prove the requisite minimum contacts for personal jurisdiction. *Id.* Here, Yarrington is not challenging the district court's refusal to consider evidence; she challenges its refusal to allow the discovery of evidence. Because the district court considered and relied exclusively on information that Solvay America supplied to rebut the jurisdictional allegations in the complaint, we conclude that it should have allowed Yarrington limited discovery to provide support for those allegations. At the very least, Yarrington should have been allowed an opportunity to depose Buckingham to test the veracity of his affidavit. Solvay America's contention that there are insufficient facts to connect it to the state as it regards Yarrington's cause of action may ultimately prove to be accurate. The district court abused its discretion, however, by resolving this factual dispute against Yarrington's jurisdictional allegations based on Solvay America's factual representations while foreclosing jurisdictional discovery. We therefore reverse the district court's dismissal of Yarrington's claims against Solvay America and remand for jurisdictional discovery as limited at the discretion of the district court.

*Failure to State a Claim*

Yarrington also argues that the district court erred by dismissing her lawsuit for failure to state a claim upon which relief can be granted. We review the dismissal de novo to consider whether the complaint sets forth a legally sufficient claim for relief. *Barton v. Moore,* 558 N.W.2d 746, 749 (Minn.1997). We must accept the allegations in the pleadings as true and draw all inferences in favor of Yarrington as the non-moving party. *Bodah v. Lakeville Motor Express, Inc.,* 663 N.W.2d 550, 553 (Minn.2003).

***4** Yarrington raised, and the district court dismissed, several claims arising out of Solvay's alleged misrepresentations and fraud. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."Minn. R. Civ. P. 9.02. Recitation of the elements of fraud without specific factual allegations is insufficient.*Stubblefield v. Gruenberg,* 426 N.W.2d 912, 914 (Minn.App.1988). Failure to plead fraud with sufficient particularity justifies dismissal of the claim. *See* *Westgor v. Grimm,* 318 N.W.2d 56, 58 (Minn.1982).

[2] The district court applied this heightened pleading requirement to Yarrington's common-law fraud, negligent misrepresentation, and statutory consumer-fraud claims. Yarrington's complaint alleges several specific representations by Solvay about Estratest. It

alleges that Solvay made representations that Estratest is "indicated" for the management of vasomotor symptoms associated with menopause and that this information was included in the Physician's Desk Reference (PDR) and on various websites, including Solvay's. The complaint specifically asserts that the information Solvay provided the PDR "deceives physicians and consumers into believing that Estratest is an FDA approved drug."Yarrington identifies only one, alleged actual misrepresentation by Solvay concerning Estratest's FDA approval status. She alleges that Solvay checked a box on a Department of Defense form indicating that Estratest is FDA approved. Although her 104-paragraph complaint otherwise lacks allegations of fraudulent statements by Solvay, it does make these specific allegations of misrepresentation, and we conclude that Yarrington alleged the circumstances constituting fraud with sufficient particularity to satisfy the heightened pleading requirement in rule 9.02.

But it does not follow from the satisfaction of the heightened pleading requirement in rule 9.02 that Yarrington stated claims for which relief can be granted. On careful review of her complaint, we conclude that four of Yarrington's eight claims should have survived Solvay's motion to dismiss.

[3] We first consider Yarrington's two common-law misrepresentation claims. The elements of common-law fraud are (1) a false representation of a material fact; (2) knowledge by the person making the representation of its falsity; (3) an intention that another person act on the false representation or circumstances justifying reliance on the false representation; (4) reliance in fact on the false representation; and (5) damages attributable to the false representation. *In re Strid,* 487 N.W.2d 891, 893-94 (Minn.1992). Negligent misrepresentation requires the same proof as fraud, minus scienter.*Florenzano v. Olson,* 387 N.W.2d 168, 173 (Minn.1986). Both common-law fraud and negligent misrepresentation require that a plaintiff prove reliance on the allegedly false representation. *Strid,* 487 N.W.2d at 894;*Florenzano,* 387 N.W.2d at 174 n. 4. Yarrington's complaint does not allege that she or her doctor relied on any representation by Solvay. Because Yarrington failed to allege reliance on Solvay's allegedly false representations, we conclude that Yarrington failed to state a common-law fraud or negligent-misrepresentation claim upon which relief can be granted. The district court did not err by dismissing these two claims.

***5** We next turn to Yarrington's statutory consumer-fraud claims. Yarrington's complaint alleges consumer fraud, in violation of Minn.Stat. § 325F.69 (2002); unlawful trade practices, in violation of Minn.Stat. § 325D.09 (2002); deceptive trade practices, in violation of Minn.Stat. § 325D.44 (2002); and false statement in advertising, in violation of Minn.Stat. § 325F.67 (2002). These four claims require Yarrington to show that Solvay made a false representation, misled, or caused confusion in its marketing of Estratest. *See*Minn.Stat. §§ 325D.09, .44, 325F.67, .69 (2002).

The Minnesota legislature passed the consumer-fraud statutes to "make it easier to sue for consumer fraud than it had been to sue for fraud at common law."*State by Humphrey v. Alpine Air Prods., Inc.,* 500 N.W.2d 788, 790 (Minn.1993). It did so by eliminating the common-law requirement that a plaintiff show reliance on an alleged misrepresentation. *Id.* It is, therefore, not necessary to plead individual consumer reliance on an alleged misrepresentation in a complaint of violations of Minnesota's consumer-fraud statutes. *See Group Health Plan, Inc. v. Philip Morris Inc.,* 621 N.W.2d 2, 12-13 (Minn.2001).

[4] Although a plaintiff need not plead reliance in a statutory consumer-fraud claim, "causation remains an element of such a claim ."*Id.* at 13.Yarrington's allegation that "information provided by [Solvay] that is published in the PDR deceives physicians and consumers into believing that Estratest is an FDA approved drug," coupled with the allegation that this deception causes the drug's prescription, sufficiently alleges causation. These allegations, along with other similar causal references throughout her complaint, satisfy the pleading requirement for her statutory consumer-fraud claims. Our determination does not address the merit of these allegations; but because Yarrington did not fail to state consumer-fraud claims upon which relief can be granted, we conclude that the district court erred by dismissing these claims at this preliminary stage.

We next address the district court's dismissal of Yarrington's express- and implied-warranty claims.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

The district court also dismissed these two claims for failure to state a claim upon which relief can be granted. Yarrington's complaint alleges that by falsely representing Estratest to be FDA approved, Solvay made warranties that Estratest is safe, effective, and suitable for sale. The district court determined that Yarrington's warranty claims fail because she did not give Solvay the required notice of the alleged warranty breaches, because Yarrington did not allege that Solvay made specific claims or promises about Estratest being FDA approved, and because Yarrington did not allege any facts establishing a link between the alleged nonconformity and her damages. We agree with the district court's decision to dismiss Yarrington's warranty claims.

To succeed on a claim of breach of warranty, a plaintiff must prove (1) the existence of a warranty; (2) breach of the warranty; and (3) causation of damages. *Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 393 (Minn.App.2004) (citing *Peterson v. Bendix Home Sys., Inc.*, 318 N.W.2d 50, 52-53 (Minn.1982)), *review denied* (Minn. Aug. 25, 2004). When a seller makes "[a]ny affirmation of fact or promise" about a product to a purchaser, an express warranty arises that the product will conform to that promise.Minn.Stat. § 336.2-313(1)(a) (2004). An implied warranty of merchantability arises automatically when a seller is in the business of furnishing a product to the consumer; the implied warranty provides that the product is fit for its ordinary and intended use. *Id.*,§ 336.2-314(1), (2)(c) (2004). But notice must generally precede a successful warranty-breach claim: Minnesota law requires that a buyer who discovers a breach of warranty "must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of [the] breach or be barred from any remedy."*Id.* § 336.2-607(3)(a) (2004).

***6** [5] Yarrington does not allege that she ever gave notice to Solvay or to any direct seller of Estratest that Solvay was falsely representing Estratest as having FDA approval and was unsuitable for use. She argues instead that notice is unnecessary because Solvay was aware that Estratest did not have FDA approval. *See Church of the Nativity v. Watpro, Inc.*, 491 N.W.2d 1, 5 (Minn.1992), *overruled on other grounds by Ly v. Nystrom*, 615 N.W.2d 302, 314 n. 25 (Minn.2000). But Yarrington's warranty claims are not based on Estratest not being approved by the FDA but on Solvay's alleged promise that Estratest is FDA approved and on Solvay's marketing of Estratest as being fit for sale and for the indicated uses. Solvay's knowledge that Estratest lacked FDA approval has no bearing on whether Solvay promised that Estratest was FDA approved or whether Estratest is allegedly not fit for its indicated uses. We are not persuaded by Yarrington's contention that she need not provide notice of the alleged warranty breaches.

Yarrington's complaint also fails to allege that Solvay made an affirmation of fact or a promise about Estratest's FDA approval to her or her doctor. She has therefore failed to allege facts establishing the existence of an express warranty. *See*Minn.Stat. § 336.2-313(1)(a). Additionally, Yarrington's complaint does not allege that Estratest is unfit for its indicated uses, except to claim that the lack of FDA approval establishes lack of fitness. Because fitness for an intended use does not depend on FDA approval, Yarrington has failed to allege facts establishing the existence of an implied warranty. *See id.*§ 336.2-314(1), (2)(c). We conclude that the district court did not err by dismissing Yarrington's claims for breach of express and implied warranty.

**Affirmed in part, reversed in part, and remanded.**

Minn.App.,2006.
Yarrington v. Solvay Pharmaceuticals, Inc.
Not Reported in N.W.2d, 2006 WL 2729463 (Minn.App.), 60 UCC Rep.Serv.2d 1090

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.